April 1, 2006

Honorable Judge Douglas P. Woodlock
John Joseph Moakley
U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA  02210

> Re:  Janice W. Stevenson vs. Neighborhood House Charter School
>        Case 1:05-CV-11584-DPW

Dear Honorable Judge Woodlock:

I am bringing this matter before this Honorable Court because I have questions and
concerns that have not been assayed by the Defendant, Neighborhood House Charter
School. Furthermore, I feel that the Defendant has interfered with my attorney
relationship in constructing a settlement and release agreement. Specifically, the
Defendant threatened to speed up discovery if I did not drop an administrative claim I
had with the US Department of Labor [ARB Case No. 05-156; ALJ Case No. 2005-SOX-
00087], against the Defendant. My attorney of record has nothing to do with this
administrative claim; yet Defendant threatened Mr. Davis with expedited discovery.

1. In Section 2 of the Settlement and Release Agreement, I am not able to read the
   language and understand the meaning and effect of this section. Section 2 of the
   Settlement and Release Agreement violates The Older Workers Benefit
   Protection Act of 1990 (OWBPA). I am not sure whether Section 2 specifically
   refers to ADEA rights or claims. Also, it appears that this Settlement and
   Release Agreement requires me to waive rights or claims that may arise in the
   future.

   Furthermore, the Defendant is not willing to write a statement in plain English
   that will assist me in understanding the full meaning and effect of Section 2 of the
   Settlement and Release Agreement.

2. I am uncomfortable in signing a settlement agreement that I feel the Defendant
   will use to establish a safe haven under Section 530 of the 1978 Revenue Act
   from its liability for employment taxes arising from an employment relationship
   and to continue to deny my employee status.

3. Defendant has not been willing to address my concerns since I received the
   Settlement and Release Agreement in December 2005.

Therefore, I am filing a Motion and Memorandum for Partial Summary Judgment with
1A) Settlement and agreement Release

    1) Listing of the dates of my overtime work,

    2) A letter from the IRS SS-8 Unit dated December 29, 2005, and

    3) A copy of the Defendant's answer to my amendment complaint as
       attachments.

Sincerely,

*Janice W Stevenson*

Janice W. Stevenson
P.O. Box 400372
Cambridge, MA  02140
617 721 2638

Certificate of Service

I certify that a copy of this letter and motion with all attachments have been sent to the attorneys of record of the defendant Neighborhood House Charter School this day april 4 2006

*Janice W Stevenson*

# ATTACHMENT 1

# Overtime Register

| Date | Day | Description of Transaction | Overtime Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|---------------------------|--------------------|---------------|---------|
| 8/26/2004 | Thursday | Development Office | 0.0 | | | |
| 8/27/2004 | Friday | Development Office | 0.0 | | | |
| 8/28/2004 | Saturday | Development Office | 0.0 | | | $0.00 |
| | | | | | | |
| 8/29/2004 | Sunday | Development Office | 0.0 | 0.0 | $37.50 | |
| 8/30/2004 | Monday | Development Office | 4.0 | | | |
| 8/31/2004 | Tuesday | Development Office | 4.0 | | | |
| 9/1/2004 | Wednesday | Development Office | 5.0 | | | |
| 9/2/2004 | Thursday | Development Office | 5.0 | | | |
| 9/3/2004 | Friday | Development Office | 2.0 | | | |
| 9/4/2004 | Saturday | Development Office | 0.0 | | | |
| | | | | 20.0 | $37.50 | $750.00 |
| 9/5/2004 | Sunday | Development Office | 0.0 | | | |
| 9/6/2004 | Monday | holiday | 0.0 | | | |
| 9/7/2004 | Tuesday | Development Office | 5.0 | | | |
| 9/8/2004 | Wednesday | Development Office | 3.0 | | | |
| 9/9/2004 | Thursday | Development Office | 4.0 | | | |
| 9/10/2004 | Friday | Development Office | 5.0 | | | |
| 9/11/2004 | Saturday | Development Office | 0.0 | | | |
| | | | | 17.0 | $37.50 | $637.50 |
| 9/12/2004 | Sunday | | 0.0 | | | |
| 9/13/2004 | Monday | out | 0.0 | | | |
| 9/14/2004 | Tuesday | Finance Office | 5.0 | | | |
| 9/15/2004 | Wednesday | Finance Office | 4.0 | | | |
| 9/16/2004 | Thursday | Finance Office | 5.0 | | | |
| 9/17/2004 | Friday | Finance Office | 1.0 | | | |
| 9/18/2004 | Saturday | Finance Office | 0.0 | | | |
| | | | | 15.0 | $37.50 | $562.50 |

| Date | Day | Description of Transaction | Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|-------------------|--------------------|--------------:|--------:|
| 9/19/2004 | Sunday | Finance Office | 0.0 | | | |
| 9/20/2004 | Monday | Finance Office | 5.0 | | | |
| 9/21/2004 | Tuesday | Finance Office | 5.0 | | | |
| 9/22/2004 | Wednesday | Finance Office | 5.0 | | | |
| 9/23/2004 | Thursday | Finance Office | 5.0 | | | |
| 9/24/2004 | Friday | Finance Office | 1.0 | | | |
| 9/25/2004 | Saturday | Finance Office | 0.0 | 21.0 | $37.50 | $787.50 |
| 9/26/2004 | Sunday | Finance Office | 0.0 | | | |
| 9/27/2004 | Monday | Finance Office | 0.0 | | | |
| 9/28/2004 | Tuesday | Finance Office | 5.0 | | | |
| 9/29/2004 | Wednesday | Finance Office | 5.0 | | | |
| 9/30/2004 | Thursday | Finance Office | 5.0 | | | |
| 10/1/2004 | Friday | Finance Office | 5.5 | | | |
| 10/2/2004 | Saturday | Finance Office | 0.0 | 20.5 | $37.50 | $768.75 |
| 10/3/2004 | Sunday | Finance Office | 0.0 | | | |
| 10/4/2004 | Monday | Finance Office | 5.0 | | | |
| 10/5/2004 | Tuesday | Finance Office | 5.0 | | | |
| 10/6/2004 | Wednesday | Finance Office | 5.0 | | | |
| 10/7/2004 | Thursday | Finance Office | 5.0 | | | |
| 10/8/2004 | Friday | Finance Office | 5.0 | | | |
| 10/9/2004 | Saturday | Finance Office | 5.5 | 30.5 | $37.50 | $1,143.75 |
| 10/10/2004 | Sunday | Finance Office | 0.0 | | | |
| 10/11/2004 | Monday | Finance Office | 5.5 | | | |
| 10/12/2004 | Tuesday | Finance Office | 6.0 | | | |
| 10/13/2004 | Wednesday | Finance Office | 4.0 | | | |
| 10/14/2004 | Thursday | Finance Office | 5.5 | | | |
| 10/15/2004 | Friday | Finance Office | 3.0 | | | |
| 10/16/2004 | Saturday | Finance Office | 5.0 | 29.0 | $37.50 | $1,087.50 |

| Date | Day | Description of Transaction | Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|---|---|---|---|---|---|---|
| 10/17/2004 | Sunday | Finance Office | 6.0 | | | |
| 10/18/2004 | Monday | Finance Office | 4.0 | | | |
| 10/19/2004 | Tuesday | Finance Office | 2.0 | | | |
| 10/20/2004 | Wednesday | Finance Office | 4.0 | | | |
| 10/21/2004 | Thursday | Finance Office | 5.0 | | | |
| 10/22/2004 | Friday | Finance Office | 1.5 | | | |
| 10/23/2004 | Saturday | Finance Office | 5.0 | 27.5 | $37.50 | $1,031.25 |
| | | | | | | |
| 10/24/2004 | Sunday | Finance Office | 0.0 | | | |
| 10/25/2004 | Monday | Finance Office | 5.0 | | | |
| 10/26/2004 | Tuesday | Finance Office | 5.0 | | | |
| 10/27/2004 | Wednesday | Finance Office | 5.0 | | | |
| 10/28/2004 | Thursday | Finance Office | 5.0 | | | |
| 10/29/2004 | Friday | Finance Office | 5.5 | | | |
| 10/30/2004 | Saturday | Finance Office | 0.0 | 25.5 | $37.50 | $956.25 |
| | | | | | | |
| 10/31/2004 | Sunday | Finance Office | 0.0 | | | |
| 11/1/2004 | Monday | Finance Office | 5.5 | | | |
| 11/2/2004 | Tuesday | Finance Office | 5.5 | | | |
| 11/3/2004 | Wednesday | Finance Office | 5.5 | | | |
| 11/4/2004 | Thursday | Finance Office | 5.5 | | | |
| 11/5/2004 | Friday | Finance Office | 5.5 | | | |
| 11/6/2004 | Saturday | Finance Office | 0.0 | 27.5 | $37.50 | $1,031.25 |
| | | | | | | |
| 11/7/2004 | Sunday | Finance Office | 0.0 | | | |
| 11/8/2004 | Monday | Finance Office | 5.5 | | | |
| 11/9/2004 | Tuesday | Finance Office | 5.5 | | | |
| 11/10/2004 | Wednesday | Finance Office | 5.5 | | | |
| 11/11/2004 | Thursday | Finance Office | 5.5 | | | |
| 11/12/2004 | Friday | Out | 0.0 | | | |
| 11/13/2004 | Saturday | Finance Office | 0.0 | 22.0 | $37.50 | $825.00 |

| Date | Day | Description of Transaction | Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|-------------------|--------------------|--------------|---------|
| 11/14/2004 | Sunday | Finance Office | 0.0 | | | |
| 11/15/2004 | Monday | Finance Office | 5.5 | | | |
| 11/16/2004 | Tuesday | Finance Office | 5.5 | | | |
| 11/17/2004 | Wednesday | Finance Office | 5.5 | | | |
| 11/18/2004 | Thursday | Finance Office | 5.5 | | | |
| 11/19/2004 | Friday | Finance Office | 5.5 | | | |
| 11/20/2004 | Saturday | Finance Office | 0.0 | 27.5 | $37.50 | $1,031.25 |
| 11/21/2004 | Sunday | Finance Office | 0.0 | | | |
| 11/22/2004 | Monday | Finance Office | 0.0 | | | |
| 11/23/2004 | Tuesday | Finance Office | 0.0 | | | |
| 11/24/2004 | Wednesday | Finance Office | 0.0 | | | |
| 11/25/2004 | Thursday | Finance Office | 0.0 | | | |
| 11/26/2004 | Friday | Finance Office | 0.0 | | | |
| 11/27/2004 | Saturday | Finance Office | 0.0 | 0.0 | $37.50 | $0.00 |
| 11/28/2004 | Sunday | Finance Office | 0.0 | | | |
| 11/29/2004 | Monday | Finance Office | 5.5 | | | |
| 11/30/2004 | Tuesday | Finance Office | 5.5 | | | |
| 12/1/2004 | Wednesday | Finance Office | 5.5 | | | |
| 12/2/2004 | Thursday | Finance Office | 5.5 | | | |
| 12/3/2004 | Friday | Finance Office | 5.5 | | | |
| 12/4/2004 | Saturday | Finance Office | 4.0 | 31.5 | $37.50 | $1,181.25 |
| 12/5/2004 | Sunday | Finance Office | 2.0 | | | |
| 12/6/2004 | Monday | Finance Office | 5.5 | | | |
| 12/7/2004 | Tuesday | Finance Office | 2.0 | | | |
| 12/8/2004 | Wednesday | Finance Office | 5.5 | | | |
| 12/9/2004 | Thursday | Finance Office | 4.5 | | | |
| 12/10/2004 | Friday | Finance Office | 4.0 | | | |
| 12/11/2004 | Saturday | Finance Office | 0.0 | 23.5 | $37.50 | $881.25 |

| Date | Day | Description of Transaction | Overtime Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|----------------------------|--------------------|---------------|---------|
| 12/12/2004 | Sunday | Finance Office | 0.0 | | | |
| 12/13/2004 | Monday | Finance Office | 4.0 | | | |
| 12/14/2004 | Tuesday | Finance Office | 5.0 | | | |
| 12/15/2004 | Wednesday | Finance Office | 5.0 | | | |
| 12/16/2004 | Thursday | Finance Office | 5.0 | | | |
| 12/17/2004 | Friday | Finance Office | 5.0 | | | |
| 12/18/2004 | Saturday | Finance Office | 0.0 | 24.0 | $37.50 | $900.00 |
| 12/19/2004 | Sunday | Finance Office | 0.0 | | | |
| 12/20/2004 | Monday | Finance Office | 1.0 | | | |
| 12/21/2004 | Tuesday | Finance Office | 1.0 | | | |
| 12/22/2004 | Wednesday | Finance Office | 1.0 | | | |
| 12/23/2004 | Thursday | Finance Office | 1.0 | | | |
| 12/24/2004 | Friday | Finance Office | 0.0 | | | |
| 12/25/2004 | Saturday | Finance Office | 0.0 | 4.0 | $37.50 | $150.00 |
| 12/26/2004 | Sunday | Finance Office | 0.0 | | | |
| 12/27/2004 | Monday | Finance Office | 1.0 | | | |
| 12/28/2004 | Tuesday | Finance Office | 1.0 | | | |
| 12/29/2004 | Wednesday | Finance Office | 1.0 | | | |
| 12/30/2004 | Thursday | Finance Office | 1.0 | | | |
| 12/31/2004 | Friday | Finance Office | 1.0 | | | |
| 1/1/2005 | Saturday | Finance Office | 0.0 | 5.0 | $37.50 | $187.50 |
| 1/2/2005 | Sunday | Finance Office | 0.0 | | | |
| 1/3/2005 | Monday | Finance Office | 0.0 | | | |
| 1/4/2005 | Tuesday | Finance Office | 5.0 | | | |
| 1/5/2005 | Wednesday | Finance Office | 5.0 | | | |
| 1/6/2005 | Thursday | Finance Office | 5.0 | | | |
| 1/7/2005 | Friday | Finance Office | 5.0 | | | |
| 1/8/2005 | Saturday | Finance Office | 0.0 | 20.0 | $37.50 | $750.00 |

| Date | Day | Description of Transaction | OVERTIME Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|---------------------------|--------------------|---------------|---------|
| 1/9/2005 | Sunday | Finance Office | 0.0 | | | |
| 1/10/2005 | Monday | Finance Office | 5.0 | | | |
| 1/11/2005 | Tuesday | Finance Office | 5.0 | | | |
| 1/12/2005 | Wednesday | Finance Office | 5.0 | | | |
| 1/13/2005 | Thursday | Finance Office | 5.0 | | | |
| 1/14/2005 | Friday | Finance Office | 3.0 | | | |
| 1/15/2005 | Saturday | Finance Office | 0.0 | 23.0 | $37.50 | $862.50 |
| 1/16/2005 | Sunday | Finance Office | 0.0 | | | |
| 1/17/2005 | Monday | Finance Office | 0.0 | | | |
| 1/18/2005 | Tuesday | Finance Office | 5.5 | | | |
| 1/19/2005 | Wednesday | Finance Office | 5.5 | | | |
| 1/20/2005 | Thursday | Finance Office | 4.5 | | | |
| 1/21/2005 | Friday | Finance Office | 3.0 | | | |
| 1/22/2005 | Saturday | Finance Office | 0.0 | 18.5 | $37.50 | $693.75 |
| 1/23/2005 | Sunday | Finance Office | 0.0 | | | |
| 1/24/2005 | Monday | Finance Office | 4.0 | | | |
| 1/25/2005 | Tuesday | Finance Office | 4.0 | | | |
| 1/26/2005 | Wednesday | Finance Office | 4.0 | | | |
| 1/27/2005 | Thursday | Finance Office | 4.0 | | | |
| 1/28/2005 | Friday | Finance Office | 4.0 | | | |
| 1/29/2005 | Saturday | Finance Office | 0.0 | 20.0 | $37.50 | $750.00 |
| 1/30/2005 | Sunday | Finance Office | 0.0 | | | |
| 1/31/2005 | Monday | Finance Office | 4.0 | | | |
| 2/1/2005 | Tuesday | Finance Office | 5.0 | | | |
| 2/2/2005 | Wednesday | Finance Office | 5.0 | | | |
| 2/3/2005 | Thursday | Finance Office | 5.0 | | | |
| 2/4/2005 | Friday | Finance Office | 5.0 | | | |
| 2/5/2005 | Saturday | Finance Office | 5.0 | 29.0 | $37.50 | $1,087.50 |

| Date | Day | Description of Transaction | Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|-------------------|--------------------|---------------|---------|
| 2/6/2005 | Sunday | Finance Office | 0.0 | | | |
| 2/7/2005 | Monday | Finance Office | 4.0 | | | |
| 2/8/2005 | Tuesday | Finance Office | 4.5 | | | |
| 2/9/2005 | Wednesday | Finance Office | 4.5 | | | |
| 2/10/2005 | Thursday | Finance Office | 4.5 | | | |
| 2/11/2005 | Friday | Finance Office | 3.0 | | | |
| 2/12/2005 | Saturday | Finance Office | 0.0 | 20.5 | $37.50 | $768.75 |
| 2/13/2005 | Sunday | Finance Office | 0.0 | | | |
| 2/14/2005 | Monday | Finance Office | 0.0 | | | |
| 2/15/2005 | Tuesday | Finance Office | 5.0 | | | |
| 2/16/2005 | Wednesday | Finance Office | 5.0 | | | |
| 2/17/2005 | Thursday | Finance Office | 4.5 | | | |
| 2/18/2005 | Friday | Finance Office | 3.0 | | | |
| 2/19/2005 | Saturday | Finance Office | 0.0 | 17.5 | $37.50 | $656.25 |
| 2/20/2005 | Sunday | Finance Office | 0.0 | | | |
| 2/21/2005 | Monday | Finance Office | 1.0 | | | |
| 2/22/2005 | Tuesday | Finance Office | 1.0 | | | |
| 2/23/2005 | Wednesday | Finance Office | 1.0 | | | |
| 2/24/2005 | Thursday | Finance Office | 1.0 | | | |
| 2/25/2005 | Friday | Finance Office | 1.0 | | | |
| 2/26/2005 | Saturday | Finance Office | 0.0 | 5.0 | $37.50 | $187.50 |
| 2/27/2005 | Sunday | Finance Office | 0.0 | | | |
| 2/28/2005 | Monday | Finance Office | 4.5 | | | |
| 3/1/2005 | Tuesday | Finance Office | 4.5 | | | |
| 3/2/2005 | Wednesday | Finance Office | 4.0 | | | |
| 3/3/2005 | Thursday | Finance Office | 4.5 | | | |
| 3/4/2005 | Friday | Finance Office | 2.0 | | | |
| 3/5/2005 | Saturday | Finance Office | 0.0 | 19.5 | $37.50 | $731.25 |

| Date | Day | Description of Transaction | Overtime Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|---------------------------|--------------------|---------------|---------|
| 3/6/2005 | Sunday | Finance Office | 0.0 | | | |
| 3/7/2005 | Monday | Finance Office | 4.0 | | | |
| 3/8/2005 | Tuesday | Finance Office | 4.0 | | | |
| 3/9/2005 | Wednesday | Finance Office | 4.0 | | | |
| 3/10/2005 | Thursday | Finance Office | 4.0 | | | |
| 3/11/2005 | Friday | Finance Office | 4.0 | | | |
| 3/12/2005 | Saturday | Finance Office | 0.0 | 20.0 | $37.50 | $750.00 |
| 3/13/2005 | Sunday | Finance Office | 0.0 | | | |
| 3/14/2005 | Monday | Finance Office | 5.0 | | | |
| 3/15/2005 | Tuesday | Finance Office | 0.0 | | | |
| 3/16/2005 | Wednesday | Finance Office | 5.0 | | | |
| 3/17/2005 | Thursday | Finance Office | 0.0 | | | |
| 3/18/2005 | Friday | Finance Office | 0.0 | | | |
| 3/19/2005 | Saturday | Finance Office | 0.0 | 10.0 | $37.50 | $375.00 |
| 3/20/2005 | Sunday | Finance Office | 0.0 | | | |
| 3/21/2005 | Monday | Finance Office | 3.0 | | | |
| 3/22/2005 | Tuesday | Finance Office | 3.0 | | | |
| 3/23/2005 | Wednesday | Finance Office | 3.0 | | | |
| 3/24/2005 | Thursday | Finance Office | 3.0 | | | |
| 3/25/2005 | Friday | Finance Office | 3.0 | | | |
| 3/26/2005 | Saturday | Finance Office | 0.0 | 15.0 | $37.50 | $562.50 |
| 3/27/2005 | Sunday | Finance Office | 4.0 | | | |
| 3/28/2005 | Monday | Finance Office | 0.0 | | | |
| 3/29/2005 | Tuesday | Finance Office | 3.0 | | | |
| 3/30/2005 | Wednesday | Finance Office | 2.5 | | | |
| 3/31/2005 | Thursday | Finance Office | 3.0 | | | |
| 4/1/2005 | Friday | Finance Office | 3.0 | | | |
| 4/2/2005 | Saturday | Finance Office | 0.0 | 15.5 | $37.50 | $581.25 |

| Date | Day | Description of Transaction | Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|-------------------|--------------------|---------------|---------|
| 4/3/2005 | Sunday | Finance Office | 0.0 | | | |
| 4/4/2005 | Monday | Finance Office | 0.0 | | | |
| 4/5/2005 | Tuesday | Finance Office | 5.0 | | | |
| 4/6/2005 | Wednesday | Finance Office | 6.0 | | | |
| 4/7/2005 | Thursday | Finance Office | 3.0 | | | |
| 4/8/2005 | Friday | Finance Office | 3.0 | | | |
| 4/9/2005 | Saturday | Finance Office | 0.0 | | | |
| 4/10/2005 | Sunday | Finance Office | 0.0 | 17.0 | $37.50 | $637.50 |
| 4/11/2005 | Monday | Finance Office | 5.0 | | | |
| 4/12/2005 | Tuesday | Finance Office | 5.0 | | | |
| 4/13/2005 | Wednesday | Finance Office | 5.0 | | | |
| 4/14/2005 | Thursday | Finance Office | 5.0 | | | |
| 4/15/2005 | Friday | Finance Office | 5.0 | | | |
| 4/16/2005 | Saturday | Finance Office | 0.0 | | | |
| 4/17/2005 | Sunday | Finance Office | 0.0 | 25.0 | $37.50 | $937.50 |
| 4/18/2005 | Monday | OUT | 0.0 | | | |
| 4/19/2005 | Tuesday | OUT | 0.0 | | | |
| 4/20/2005 | Wednesday | OUT | 0.0 | | | |
| 4/21/2005 | Thursday | OUT | 0.0 | | | |
| 4/22/2005 | Friday | OUT | 0.0 | | | |
| 4/23/2005 | Saturday | | 0.0 | 0.0 | $37.50 | $0.00 |
| 4/24/2005 | Sunday | | 0.0 | | | |
| 4/25/2005 | Monday | | 4 | | | |
| 4/26/2005 | Tuesday | | 4 | | | |
| 4/27/2005 | Wednesday | | 4 | | | |
| 4/28/2005 | Thursday | | 4 | | | |
| 4/29/2005 | Friday | | 4.5 | | | |
| 4/30/2005 | Saturday | | 0 | 20.5 | $37.50 | $768.75 |

| Date | Day | Description of Transaction | Break 2 Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|---------------------------|--------------------|---------------|---------|
| 5/1/2005 | Sunday | | 0 | | | |
| 5/2/2005 | Monday | | 0 | | | |
| 5/3/2005 | Tuesday | | 0 | | | |
| 5/4/2005 | Wednesday | | 0 | | | |
| 5/5/2005 | Thursday | | 0 | | | |
| 5/6/2005 | Friday | | 0 | | | |
| 5/7/2005 | Saturday | | 0 | 0.0 | $37.50 | $0.00 |
| 5/8/2005 | Sunday | | 0 | | | |
| 5/9/2005 | Monday | | 0 | | | |
| 5/10/2005 | Tuesday | | 0 | | | |
| 5/11/2005 | Wednesday | | 0 | | | |
| 5/12/2005 | Thursday | | 0 | | | |
| 5/13/2005 | Friday | | 0 | | | |
| 5/14/2005 | Saturday | | 0 | 0.0 | $37.50 | $0.00 |
| 5/15/2005 | Sunday | | 0 | | | |
| 5/16/2005 | Monday | | 0 | | | |
| 5/17/2005 | Tuesday | | 0.0 | | | |
| 5/18/2005 | Wednesday | | 0.0 | | | |
| 5/19/2005 | Thursday | | 0.0 | | | |
| 5/20/2005 | Friday | | 0.0 | | | |
| 5/21/2005 | Saturday | | 0.0 | 0.0 | $37.50 | $0.00 |
| 5/22/2005 | Sunday | | 0.0 | | | |
| 5/23/2005 | Monday | | 2.0 | | | |
| 5/24/2005 | Tuesday | | 0.0 | | | |
| 5/25/2005 | Wednesday | | 0.0 | | | |
| 5/26/2005 | Thursday | | 0.0 | | | |
| 5/27/2005 | Friday | | 3.0 | | | |
| 5/28/2005 | Saturday | | 0.0 | 5.0 | $37.50 | $187.50 |

| Date | Day | Description of Transaction | OVERTIME Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|---------------------------|--------------------|---------------|---------|
| 5/29/2005 | Sunday | | 0.0 | | | |
| 5/30/2005 | Monday | | 0.0 | | | |
| 5/31/2005 | Tuesday | | 0.0 | | | |
| 6/1/2005 | Wednesday | | 0.0 | | | |
| 6/2/2005 | Thursday | | 0.0 | | | |
| 6/3/2005 | Friday | | 0.0 | | | |
| | | TOTAL OVERTIME HOURS AND OVERTIME PAY | 0.0 | 0.0 | $37.50 | $0.00 |
| | | | | 672.0 | $37.50 | $25,200.00 |

# ATTACHMENT 1A

## SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT is made and entered into this __ day of November 2005, by and between the following parties:  Janice Stevenson and TuckNT (collectively, "Stevenson" or "Plaintiff") on the one hand; and Neighborhood House Charter School ("NHCS" or "Defendant") on the other hand.

WHEREAS, Janice Stevenson filed a complaint in the United States District Court for the District of Massachusetts entitled Janice Stevenson v. Neighborhood House Charter School, No. 05-11584, alleging, inter alia, violation of (i) the federal Fair Labor Standards Act, 29 U.S.C. § 201, et seq.; (ii) Massachusetts' Wage and Hour Laws, G.L. ch. 149 § 148; and (iii) Massachusetts' Personnel Records Statute, G.L. c. 149 § 52C (the "Action"); and

WHEREAS, NHCS denies that it has violated any of Stevenson's rights or that it owes her any monies for any of her claims; and

WHEREAS, the parties wish to avoid the expense and burden of further litigation  and resolve any and all other issues and disputes between them, whether or not asserted in the Action or in any other proceeding, arising with respect to any relationship between Plaintiff and Defendant;

IT IS, THEREFORE, agreed that in consideration of the mutual promises and covenants herein set forth, the parties covenant and agree as follows.

1.      NHCS agrees to pay Stevenson the gross sum of Eleven Thousand Dollars ($11,000.00) (the "Settlement Proceeds") and other valuable consideration as set forth below. NHCS shall disburse the Settlement Proceeds as follows.  Within thirty (30) days after the Effective Date (as defined in Section 3(f) below) and delivery by Plaintiff of the executed Agreement and a signed Stipulation of Dismissal (as required by Section 3) to NHCS's attorney, Lynn A. Kappelman, Esq., Seyfarth Shaw, Two Seaport Lane, Suite 300, Boston, MA 02210, NHCS shall:

   (a)      Deliver to Janice Stevenson's attorney a check payable to "TuckNT" in the amount of Eight Thousand Two Hundred Fifty and 00/100 Dollars ($8,250.00). NHCS shall report this payment to state and federal tax authorities on IRS Form 1099-MISC.

   (b)      Make and deliver a check payable to "Attorney John Davis" as compensation for Stevenson's attorneys' fees, in the amount of Two Thousand Seven Hundred Fifty and 00/100 Dollars ($2,750.00).  NHCS will report this payment to state and federal tax authorities as income to John Davis and to TuckNT on separate forms.

2.      (a) Each of Janice Stevenson, TuckNT and her or its heirs, successors, executors, beneficiaries, legal representatives, and assigns (collectively referred to as the "Releasors"), hereby unconditionally and irrevocably release, remise, and forever discharge NHCS, its predecessors, successors, and related entities (including, without limitation, Neighborhood House Charter School Foundation (the "Foundation")), and all of their respective past, present,

1

and future officers, directors, board members, trustees, stockholders, employees, representatives, attorneys, agents, and insurers (collectively referred to as the "Releasees") or any of them, of and from any and all suits, claims, demands, interest, costs (including attorneys' fees and costs actually incurred), expenses, actions and causes of action, rights, liabilities, obligations, promises, agreements, controversies, losses and debts, of any nature whatsoever, which the Releasors now have, own or hold, or at any time heretofore ever had, owned or held, or could have owned or held, whether known or unknown, suspected or unsuspected, from the beginning of the world to this date, including, without limiting the generality of the foregoing: any claims in law or equity, in a court or administrative or arbitration tribunal, arising out of or in connection with Stevenson's alleged employment by and TuckNT's contractual relationship with NHCS or its predecessors, any claims arising under Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act, as amended; the Older Workers' Benefit Protection Act; the Employee Retirement Income Security Act, as amended; the Americans with Disabilities Act, as amended; the Family and Medical Leave Act; the National Labor Relations Act; the Fair Labor Standards Act, as amended; the Sarbanes-Oxley Act; the Massachusetts Fair Employment Practices Act; the Massachusetts Wage and Hour Laws; the Massachusetts Personnel Records Statute; and any other statutory, common law or other claims of any nature whatsoever including but not limited to retaliation, breach of implied or express contract, misrepresentation, negligence, fraud, estoppel, defamation, infliction of emotional distress, violation of public policy, wrongful or constructive discharge, or any other employment-related tort, or any claim for costs, fees, or other expenses, including attorneys' fees, or any other federal, state, or local law against any of the Releasees. Releasors, their heirs, executors, beneficiaries, legal representatives, and assigns, individually and/or in their beneficial capacity, further agree never to institute against any of the Releasees any lawsuit with respect to any claim or cause of action of any type arising or which may have existed at any time prior to the date of the execution of this Agreement. Releasors further waive their rights to any monetary recovery or other relief should any federal, state, or local administrative agency pursue any claim or cause of action of any type on its behalf arising at any time prior to the present date. This Agreement is intended to comply with the Older Workers Benefit Protection Act of 1990 ("OWBPA") with regard to Janice Stevenson's waiver of rights under the ADEA.

Each of Janice Stevenson and TuckNT expressly agree and understand that the release of claims contained in this Agreement is a **GENERAL RELEASE**, and that any reference to specific claims arising out of or in connection with Janice Stevenson's alleged employment and TuckNT's contractual relationship is not intended to limit the release of claims. Each of Janice Stevenson and TuckNT also expressly agree and understand that this **GENERAL RELEASE** means that the Releasors irrevocably are releasing, remising, and discharging the Releasees from and with respect to all claims, whether known or unknown, asserted or unasserted, and whether or not the claims arise out of or in connection with Janice Stevenson's employment, TuckNT's contractual relationship and/or the termination of either, or otherwise, arising up to the date of the signing of this Agreement.

2

(b)     Janice Stevenson is specifically waiving rights and claims under the ADEA.

(c)     The waiver of rights and claims under the ADEA does not extend to any rights or claims arising after the date Janice Stevenson executes this Agreement.

(d)     Plaintiff acknowledges being advised by NHCS in writing to consult with an attorney of her or its choice prior to signing this Agreement. Plaintiff further acknowledges that she and it has had the opportunity to consult with an attorney of their choice with respect to all terms and conditions set forth in this Agreement and to have the advice of counsel with respect to the decision to sign and enter into this Agreement.

(e)     Janice Stevenson acknowledges that NHCS has offered twenty-one (21) days to consider the terms and conditions of this Agreement, to consult with counsel of her choice, and to decide whether to sign and enter into this Agreement.

(f)     Janice Stevenson has seven (7) days after her execution of this Agreement to revoke her acceptance of it. Any such revocation must be received in writing within the 7-day revocation period by Lynn Kappelman, counsel for NHCS. The parties acknowledge and agree that this Agreement is neither effective nor enforceable and neither party is obligated to perform the promises contained herein in the event that the Agreement is revoked or until expiration of the 7-day revocation period (the "Effective Date").

3.     Contemporaneously with the execution of this Agreement, Janice Stevenson shall execute a Stipulation of Dismissal of the Complaint in the form attached hereto as Exhibit A and a Request for Dismissal of any action currently pending before any Department Labor Administrative Judge, in the form attached hereto as Exhibit B. Stevenson also hereby agrees to file any other such withdrawals, stipulations, affidavits, and other documents as may be required to accomplish each such dismissal, and to withdraw, with prejudice and without attorneys' fees or costs, any other action or legal proceeding, administrative or judicial, now pending concerning any claim any the Releasors may have made against any of the Releasees.

4.     Plaintiff agrees and acknowledges that the terms of this Agreement are confidential. Plaintiff warrants that she or it will not further individually, jointly, or through her or its attorneys or other representatives, or those acting on her or its behalf in any manner publish, publicize, or otherwise make known to any person the underlying facts of the matters covered by this Agreement, the allegations set forth in her Complaint, the fact of this Agreement and/or the terms and conditions of this Agreement, and the settlement discussions that led up to it, except to state that all such issues have been "resolved to the satisfaction of all parties" or as may be required by law, or to her or its financial or tax advisors; and then only after said advisor(s) have agreed to be bound by the provisions of this paragraph to make no further disclosure.

5.     Plaintiff agrees that she/it will not take any action or make any statement that disparages NHCS, the Foundation, any member of the Board of Trustees of either, any employee of either, including without limitation Kevin Andrews and Jagdish Chokshi, and/or any of the

3

other Releasees, or that has the intended or foreseeable effect of harming the business and/or personal reputation of any such person or entity or of disrupting NHCS' usual business operations. Plaintiff further agrees to refrain from disclosing any information about any employee of NHCS or the Foundation acquired in connection with the performance of services for NHCS or the Foundation and with respect to which such employee has a reasonable expectation of privacy.

NHCS agrees that, in response to inquiries from third parties about the relationship between NHCS and Stevenson or TuckNT, it will state only that TuckNT had an agreement to perform services for NHCS between approximately August 2004 and June 2005, NHCS has been informed that Stevenson was an employee of TuckNT, and TuckNT assigned Stevenson to perform services pursuant to its agreement with NHCS.

6.    Plaintiff does hereby knowingly covenant and agree that neither she nor it will knowingly seek or accept employment or any other remunerative relationship with, or undertake to provide services to, either directly or indirectly, NHCS, the Foundation or any of either NHCS's or the Foundation's affiliated or related entities. Plaintiff also further agrees that the execution of this Agreement is good and sufficient cause for NHCS, the Foundation and any affiliate of either to reject any application by the Janice Stevenson for employment.

7.    Nothing contained in this Agreement shall be construed as an admission of any liability by NHCS, and it is agreed that Plaintiff will not offer this Agreement as evidence in any judicial or administrative proceeding, except that this Agreement may be introduced in any proceeding for the sole purpose of enforcing its terms.

8.    This Agreement contains the entire agreement and understanding by and between the parties with respect to the matters herein referred to, and no representations, promises, agreements, or understandings, written or oral, not herein contained shall be valid or binding unless the same is in writing and signed by the parties. No waiver of any provision of this Agreement at any time shall be deemed a waiver of any other provision of this Agreement.

9.    This Agreement may be executed in two counterparts, and each executed counterpart shall have the same force and effect as an original instrument, as if all of the parties to all of the counterparts had signed the same instrument.

10.    This Agreement shall be construed in accordance with, and governed by, the laws of the Commonwealth of Massachusetts.

BOI 15749388.1

11.    Other than as stated herein, the undersigned parties warrant that no representation, promise, or inducement has been offered or made to induce any party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement is intended as a final expression of the parties' Agreement and as a complete and exclusive statement of the terms thereof. This Agreement shall supersede all prior understandings, oral and written, between the parties concerning the matters referred to herein. Any amendments to this agreement shall be in writing and signed by all parties.

12.    The parties further represent that they are able to read the language and understand the meaning and effect of this Agreement, that they have read and understand this Agreement and the effect thereof, and that their attorneys have explained the same to them.

IN WITNESS WHEREOF, the parties voluntarily and without coercion set forth their hands on this _____ of November, 2005, as their free acts and deeds.

Date: _____        By: _____
                                       Janice Stevenson

Date: _____        By: _____
                                       Janice Stevenson on behalf of TuckNT

Date: _____        By: _____
                                       Neighborhood House Charter School

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JANICE STEVENSON, | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) CIVIL ACTION NO. 05-CV-11584-DPW |
|  | ) |
| NEIGHBORHOOD HOUSE CHARTER | ) |
| SCHOOL, | ) |
| Defendant. | ) |

**STIPULATION OF DISMISSAL**

Pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, Plaintiff Janice

Stevenson and Defendant Neighborhood House Charter School hereby stipulate to the voluntary

dismissal of all of Plaintiff's claims against Defendant in this action with prejudice and without

costs or attorneys' fees to any party. The Plaintiff and Defendant hereby waive all rights of

appeal from the entry of such dismissal.

Respectfully submitted,
JANICE STEVENSON,
By her attorney,


   /s/ John W. Davis
John W. Davis (BBO# 648399)
Davis & Davis, P.C.
77 Franklin Street, 3rd Floor
Boston, MA 02110
Telephone:    (617) 933-3838
Telecopier:    (617) 933-3839

DATED: November __, 2005

NEIGHBORHOOD HOUSE CHARTER
SCHOOL
By its attorneys,


      /s/ Lynn A. Kappelman
Lynn A. Kappelman (BBO # 642017)
Barry J. Miller (BBO # 661596)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

1

UNITED STATES OF AMERICA
DEPARTMENT OF LABOR

JANICE WILSON STEVENSON )
)
Complainant, )
)                    ARB Case No. 05-156
V. )
)                    ALJ Case No. 2005-SOX-00087
NEIGHBORHOOD HOUSE CHARTER )
SCHOOL, )
)
Respondent. )

## REQUEST FOR DISMISSAL

Plaintiff, Janice Wilson Stevenson, hereby requests that the Department of Labor and all of its divisions, including without limitation the Occupational Safety and Health Administration and the Administrative Review Board, dismiss all charges she has brought against Neighborhood House Charter School ("NHCS"). This request includes without limitation all charges Plaintiff has brought against NHCS alleging violations of Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, *et seq*.

Plaintiff further requests that all appeals and petitions for review she has filed regarding the Department of Labor's dismissals of her claims against NHCS be withdrawn or dismissed.

Respectfully submitted,

_____
JANICE WILSON STEVENSON
P.O. Box 400372
DATED: November __, 2005          Cambridge, MA 02140

1

BOl 15749388.1

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Request for Dismissal was sent via facsimile, electronic, or regular mail to all parties listed below on November __, 2005.

_____
Janice W. Stevenson

Administrative Review Board
Room S-4309
200 Constitution Avenue, N.W.
Washington, D.C. 21210
Telephone: (202) 693-6200
Fax: (202) 693-6220

Chief ALJ, OALJ
USDOL, Suite 400 North
800 K Street, NW
Washington, DC 20001-8002
(202) 693-7542
(202) 693-7365 (FAX)

Assistant Secretary
OSHA, Div FLSA
USDOL, Room S-2002
200 Constitution Avenue, N.W.
Washington, DC 20210
(202) 693-2000-p
(202) 693-1340-f

Howard M. Radzely
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
Room N-2716, FPB
200 Constitution Avenue, N.W.
Washington, DC 20210
202-693-5260-p
202-693-5538-f

Mr. Richard E. Fairfax
U.S. DOL/OSHA Room: N-3119
200 Constitution Avenue, N.W.
Washington, D.C. 20210
(202) 693-2100 Phone
(202) 693-1681 Fax

Honorable Daniel F. Sutton
District Chief ALJ, OALJ
O'Neill Federal Building – Room 411
10 Causeway Street
Boston, MA 02222
(617) 223-9335-phone
(617) 223-4254-fax

Lynn A. Kappelman
Seyfarth Shaw, LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02110-2028
617-946-4800-phone
617-946-4801-fax

Ilene Sunshine
Sullivan & Worcester, LLP
One Post Office Square
Boston, MA 02109
617-338-2880-p
617-338-2883-f

2

BOI 15749388.1

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MASSACHUSETTS

**JANICE STEVENSON**

**Plaintiff,**

v.

**No. 05-CV-11584-DPW**

**NEIGHBORHOOD HOUSE CHARTER SCHOOL,**

**Defendant**

_____/

## PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF PARTIAL SUMMARY JUDGMENT ON LIABILITY

### Introduction

The plaintiff, Janice W. Stevenson, moves the Court for a partial summary judgment as to liability against defendant Neighborhood House Charter School (herein "Neighborhood) for unpaid overtime compensation premium pay under the Fair Labor Standards Act, 29 U.S.C. '201 *et seq.* (FLSA). In addition to the independent contractor/FLSA liability issue raised in plaintiff's motion, Neighborhood's initial response raises additional issues with respect to the scope of relief sought under the FLSA in plaintiff's complaint and the availability of liquidated damages to plaintiff. These issues regarding relief, in turn, require the Court to determine the willfulness,

reasonableness, and good faith of Neighborhood's actions in failing to pay plaintiff overtime premiums.

Plaintiff has no objection to the defendant's expansion in the scope of issues submitted for determination by the Court. Plaintiff does agree that their determination by the Court at the time will promote resolution of the case in my favor, and for that, reason raises no objection to their consideration at this time.

Plaintiff first responds to Neighborhood's arguments regarding my employee status. Next, plaintiff discusses the willfulness, reasonableness, and good faith of Neighborhood's failure to pay overtime to plaintiff under the guise of her designation as an "independent contractor". For the reasons stated herein, plaintiff asks the Court to grant her summary judgment as to Neighborhood's FLSA liability and to rule that she is entitled to liquidated damages and unpaid overtime premiums.

**Argument**

**I. I Was An Employee of Neighborhood House Charter School Because In Reality I Was Economically Dependent Upon Neighborhood for My Livelihood.**

Neighborhood's response agrees that the "economic realities" test applies here. Defendant's Response at 3-6. When it is examined closely, Neighborhood's "inconclusive" argument all but concedes that it loses under the economic realities test. It is uncontested as a matter of fact that plaintiff made no investment to speak of in her work at Neighborhood. The fact that it would not be easy for Neighborhood to arrange otherwise does not mean the factor of the test is "inapplicable or "inconclusive." Instead, the factor of the test strongly indicates plaintiff was not, in reality, an independent

contractor making a meaningful investment in the education field, but an employee of Neighborhood dependent upon it.

In ***Baker v. Flint Engineering & Construction,*** 137 F.3d 1436 (10th Cir. 1998), the Tenth Circuit recently observed with respect to "rig welders" that "[a]lthough plaintiffs are the most skilled workers on the job site, *they are not asked to exercise their discretion in applying their skills; they are told what to do and when to do it.*" 137 F.3d at 1444 (emphasis added). In the case, the record is clear that plaintiff worked directly under the supervision of Neighborhood's Dean of Administration, Jagdish Chokshi, In short, I hardly had the sort of unique or special skills that support a finding of independent contractor status, but instead had administrative skills requiring "no special technical knowledge or skill." ***Real v. Driscoll Strawberry Associates***, 603 F.2d 748, 755 (9th Cir.1979). I could not use my personal initiative as to when and for whom I would exercise my skills. ***Usery v Pilgrim***, 527 F.2d 1308, 1314 (5th Cir. 1976). For these reasons, the reality of my exercise of administrative skills in my working situation at Neighborhood supports a finding of employee status.

My job duties performing human resources, payroll, benefits administration, public funding, account payables, and account receivable were so integral to Neighborhood's day-to-day operations that it attempts to use that very integration into its business as a reason why it is not a relevant factor here.

However, the factor has been utilized by the Sixth Circuit, and according to the court in ***Real v. Driscoll***, is one of the factors utilized by the Supreme Court when it enunciated the economic reality test in 1947. 603 F.2d at 754 n. 14. The number of

factors is not critical, since they are interrelated and no one factor is deemed determinative. All support the plaintiff here.

In addition, Neighborhood's response again confuses Neighborhood's practical inability to provide conditions sufficient to lawfully justify an independent contractor status with a valid argument for that status when those conditions did not exist in reality. The factors of the "economic reality" test looks to how a worker was treated, in fact, and not to how an employer should have treated him or her if it wanted to lawfully treat the worker as an independent contractor.

As to the remaining factors, clearly, I did not control what projects I worked on for Neighborhood's employees. For example, in *Thomas v. Brock*, 617 F.Supp. 526 (W.D.N.C. 1985), a candy dealer had freedom to set her own hours, hire children to sell the candy and determine with which crew managers he worked. Nevertheless, the court deemed these powers as "illusory," noting that the candy seller used materials furnished by the candy supplier, followed the supplier's recommended prices, and filed weekly reports on sales. Here, I worked at Neighborhood's office, for Neighborhood's employees, on Neighborhood's equipment, and pursuant to the direction and supervision of Jagdish Chokshi and Kevin Andrews.

As in *Thomas*, the economic reality is that Neighborhood exercised significant control over me. Neighborhood did pay me sick pay and vacation time to cover absences. The factor of profit and loss is also wholly in plaintiff's favor. As a factual matter, I was paid on an hourly basis, not on a profit basis, and I bore no risk of any losses. As pointed out by Judge Cohn in the *Fegley* case, where the worker simply made prototype auto parts as required by the alleged employer and had no control over the

number and size of the alleged employer's parts contracts, the worker "had no control over her own profit and loss." *Fegley v. Higgins*, 760 F.Supp. 617, 621 (E.D. Mich. 1991) aff'd in part, reversed in part, 19 F.3d 1126 (6th Cir. 1994). Here, plaintiff had no ultimate control over the direction of Neighborhood's business. I had virtually no investment to lose and profits "on a piecemeal basis" do not take a worker "out of the status of an employee." *Thomas*, supra at 534. I worked late, on weekends, at home and was doing so to perform work needed by Neighborhood.

In any event, under the terms of the Act, the employer is responsible legally for all hours worked, since Section 3(g) of the FLSA defines "employ" to include "to suffer or permit to work." 29 U.S.C. ' 203(g). Moreover, the Secretary of Labor's regulations state that "Work not requested but suffered or permitted is work time." 29 C.F.R. '785.11. The regulations continue, "In all cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them." 29 C.F.R. '785.13. *See also* *Tennessee Coal, Iron and Railroad v. Muscoda Local No. 123*, 321 U.S. 590, 64 S.Ct. 698 at 700, 88 L.Ed. 949 (1944) (defining work or employment as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and her business").

Finally, my own work history demonstrates that my employment as an employee was terminable at will by Neighborhood. I worked in some status for Neighborhood between 2004 and 2005.

As noted by Judge Cohn in *Fegley*, where the status of both employee and independent contractor was "at-will", the permanency factor does not lead to a finding against employee status. 760 F.Supp. at 621. Here, both employees and independent contractors work at the will of Neighborhood House Charter School. Properly considered, and considering the factors overall, the economic reality test clearly establishes that I was an employee of Neighborhood, not an independent contractor. For these reasons, I ask the Court to award me partial summary judgment as to Neighborhood's liability under the Fair Labor Standards Act for unpaid overtime compensation premiums.

## II. If I Was Its Employee During The Relevant Time Period, Neighborhood Must Pay Liquidated Damages In The Form of Double Overtime Premiums.

Section 7(a) of the FLSA provides that: [N]o employer shall employ any of her employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. '207(a).

Section 16(b) of the Act provides a cause of action to employees and requires that "Any employer who violates the provisions of . . . section 207 of the title shall be liable to the employee . . . affected in the amount . . . of their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. '216(b). The FLSA provision, in turn, is qualified by Section 11 of the Portal-to-Portal Pay Act, which permits a court, in its discretion, to reduce or eliminate liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such

action was in good faith and that he had reasonable grounds for believing that her act or omission was not a violation of the Fair Labor Standards Act. . . ." 29 U.S.C. '260.

According to longstanding Supreme Court precedent, liquidated damages under the FLSA are compensatory, not punitive, and was intended to eliminate problems relating to proof of damages for non-payment of statutorily-required wages, where "damages [are] too obscure and difficult of proof for estimate other than by liquidated damages." *Overnight Motor Transport v Missel*, 316 U.S. 572, 583-584; 62 S.Ct. 1216, 1223; 86 L.Ed. 1682 (1942).

By it literal terms, the good faith provision of Section 11 permits relief from liquidated damages "if and only if" the employer proves both that its actions or omissions were made in good faith and that it had reasonable grounds for believing that it was acting in conformity with the FLSA.

*Dole v Elliott Travel & Tours*, 942 F.2d 962, 967 (6th Cir. 1991)(emphasis in original). These two elements under Section 11 require that the employer's conduct be evaluated on both subjective and objective grounds.

The good faith requirement is a subjective one that requires that the employer have an honest intention to ascertain and follow the dictates of the Act. . . The Reasonableness requirement impose an objective standard by which to judge the employer's conduct. . . . Ignorance alone will not exonerate the employer under the objective reasonableness test. . . .Moreover, the employee need not establish an intentional violation of the Act to recover liquidated damages. *Williams v Tri-County Growers*, 747 F.2d 121, 129 (3rd Cir. 1984)(citations and text omitted). The burden of proof is on the employer to avoid liquidated damages under Section 11. *Elliott*

*Travel*, *supra*, 968 (citation omitted). The employer's burden is not light: For the court's discretion [under Section 11] to be invoked . . .the delinquent employer must sustain a plain and substantial burden of persuading the court by proof that her failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.. . .  In the absence of such proof, a District Court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages. *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971). Significantly, even if Neighborhood could show that its acts and omissions here were both in good faith and reasonable, the Court "nevertheless may award full liquidated damages equal to, and in addition to, the unpaid back wages." *Id.*, 323. For the reason, "double damages are the norm, and single damages the exception" in FLSA cases. *Watson v. United Consumers*, 786 F.2d 303, 310 (7th Cir. 1986); *Reich v Newspapers of New England*, 834 F.Supp. 530, 542 (D.N.H. 1993), *aff'd* 44 F.3d 1060 (1st Cir. 1995).

Here, Neighborhood's answer did not raise good faith under Section 11 as an affirmative defense.

Neighborhood has presented no affirmative evidence or affidavit to support statements in its response brief regarding its good faith; namely that there is an industry practice regarding employment of independent contractors and that it received guidance from its attorneys or accountants on my status. Defendant's Response at 15, 16.

Moreover, Neighborhood has an established practice of misclassifying employees so as to not pay overtime premiums to any employee. Moreover, Neighborhood knew that I would not be paid additional overtime premiums at the time. Indeed, when I was

classified as a leased employee I was paid overtime premiums in compensation for hours over forty a week, but was not so paid when treated as an independent contractor. Defendant's Answer 15. Therefore, Neighborhood had knowledge that my independent contractor classification had FLSA implications.

In closing on the particular point, plaintiff would note that Defendant did not cite an authority with respect to the good faith test in Defendant's Response at page 4.

In light of these facts and the controlling law, it cannot be argued that Neighborhood had either a good faith "intention to ascertain and follow the dictates of the Act" with respect to my classification as an independent contractor by Neighborhood, or "reasonable grounds for believing that it was acting in conformity with the FLSA" when it did so. For these reasons, Neighborhood is not entitled to any relief under the good faith provision of Section 11 of the Portal-to-Portal Pay Act, and, if plaintiff is awarded partial summary judgment on the FLSA liability issue, the Court should also order that plaintiff receive full liquidated damages for unpaid overtime premium compensation.

### III. Neighborhood's Violations of the FLSA Were Willful Within the Meaning of the Act.

As originally enacted, FLSA contained no limitations period. The Portal-to-Portal Pay Act added a two-year statute of limitations in 1947 and in 1966 Congress enacted a three-year statute of limitations for willful violations of the Act. *McLaughlin v. Richland Shoe*, 486 U.S. 128, 108 S.Ct. 1677, 1680-1681, 100 L.Ed.2d 115 (1988). The provision is found in Section 6(a) of the Portal-to-Portal Pay Act, 29 U.S.C. '255, which states in relevant part: Any action . . . for unpaid overtime compensation, or liquidated damages,

under the Fair Labor Standards Act . . . may be commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. *McLaughlin* decided a split in the circuit courts of appeals by defining "willfulness" under the FLSA as requiring a showing that "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." 486 U.S. at 133; 108 S.Ct. at 1681.

The Court employed the language in light of its adoption of the willfulness standard for liquidated damages under the Age Discrimination in Employment Act in *TWA v Thurston*, 469 U.S. 111, 127; 105 S.Ct. 613, 625; 83 L.Ed.2d 523 (1985), where it defined a "willful" employer for liquidated damages purposes as one who shows a "disregard for the governing statute and an indifference to its requirements." *Accord Dole v. Elliott Travel*, 942 F.2d at 966-967.

The legal standards for willfulness for purposes of the statute of limitations and the good faith defense under Section 11 are different. It is possible to find that a party has not met the good faith standard under Section 11, but has not acted willfully in doing so. *Reich v Newspapers of New England*, 834 F.Supp. at 542. The converse is not true. A party acting willfully in violation of FLSA cannot act in good faith and with reasonableness under Section 11. *EEOC v. City of Detroit Health Dept.*, 920 F.2d 355, 358 (6th Cir. 1990) (Equal Pay Act case).

The willfulness standard was applied in a case involving purported independent contractor gasoline station operators in *Martin v. Selker Brothes*, 949 F.2d 1286 (3rd Cir. 1991). There, the owner of a number of gasoline stations ran six of them as if the

operators were "independent contractors." In affirming the district court's determination that the scheme was a willful violation of FLSA, the court in *Selker Brothes* noted testimony that the owner knew thee was a "fine line" regarding the legality of paying her independent contractors on a commission basis, overlooked concern expressed by her counsel, and adopted the scheme because it was too expensive to pay station operators on an hourly basis. 949 F.2d at 1296. The court concluded, "Selker's evident indifference toward the requirements imposed by the FLSA is fully consistent with the district court's determination that Bernard Selker had willfully violated the Act." *Id.*

Here, Neighborhood adopted the independent contractor arrangement to avoid the cost of paying me overtime compensation, and made no affirmative effort to through its lawyers or accountants to determine if the arrangement was lawful under the Act. For these reasons, a finding that Neighborhood acted willfully is warranted on the record and the plaintiff asks the Court to award her summary judgment on the issue as well.

**Conclusion**

For the reasons stated in my initial motion and this motion and memorandum for partial summary judgment, I asks the Court to grant me summary judgment as to Neighborhood's liability for unpaid overtime premium compensation, award in full liquidated damages for all sums found due and owing.

Respectfully submitted,

*Janice W Stevenson*

Janice Wilson Stevenson
P.O. Box 400372
Cambridge, MA 02140
Dated: April 1, 2006

# ATTACHMENT 2

**Internal Revenue Service**

SB/SE, Compliance
BIRSC, SS-8 Unit

**Department of the Treasury**

40 Lakemont Road
Newport, VT 05855-1555

December 29, 2005

Kevin Andrews, Headmaster
Neighborhood House Charter School
197A Centre Street
Dorchester, MA 02124-2331-976

Form: SS-8

Person to Contact:
Laramie Bliven, #03-00292

Telephone Number: 802-751-4424
Facsimile Number: 802-751-4455

Refer Reply to: Case # 41957

Dear Mr. Andrews:

This is in response to a Form SS-8 that was submitted to request a determination of employment status for Federal employment tax purposes, between Neighborhood House Charter School, hereafter referred to as the school, and Janice W. Stevenson, hereafter referred to as the worker, for services performed in 2004 and 2005.

We hold the worker to have been an employee of the school. In the rest of this letter, we will explain the facts, law, and rationale that form the basis for this finding.

Information submitted indicated that the school is a nonprofit public charter school that serves children in grades pre-kindergarten to eighth grade. The worker was initially engaged by the school to provide the processing of grant applications but shortly thereafter her role expanded to cover more general accounting and administrative tasks including human resources, payroll, and employee benefits. Prior to this arrangement, the worker performed accounting and administrative duties for the school through an employment agency. The school publicly posted a job for a grants manager. The worker expressed an interest in the position and the school agreed to retain her so she ended her relationship with the employment agency. The school stated that the worker insisted that she be retained and paid through her own company as an independent contractor. The worker disagreed and said that the school encouraged her to open a business that included a website for validity as the services she was going to provide would be treated as contracted services. The worker acknowledged she agreed with this arrangement and felt that this might be something she could develop for her future. The school stated that the arrangement with the worker was temporary.

The worker received her assignments from the Dean of Administration. The school utilized her expertise and only minimal oversight was needed. The worker was required

2

to act in accordance with the decisions of the Dean and reported to him with any problems that occurred. The worker was sent by the school to conferences and seminars and was also trained in the payroll system used. She was responsible for providing many internal reports that were used by the school's staff. She worked a substantially full-time schedule at the school's location. The school stated that she also occasionally performed services from her home. The worker performed her services personally and attended staff meetings when it related to finance or human resource matters.

All materials and supplies the worker needed at the school were provided. The worker was reimbursed for incidental expenses she incurred for the school. She incurred no other expenses. The worker was paid a set weekly amount by the school. She submitted invoices for her services which were approved by the Dean of Administration before payment was issued. The checks were issued to the worker under her business name. The worker did not receive any benefits although the school stated she was allowed some flexibility in her schedule. The school further stated in its response that the Dean and the worker colloquially referred to the flexibility as "vacation and sick time". The worker had a website that advertised her company. She stated that this was done upon the request of the school to legitimize her business presence. The school said she did this on her own and the school just utilized the services she was offering to the public. No other evidence of advertising was submitted. The website is no longer available. The worker performed her services full-time for the firm and stated she did not have time to perform any services for others. Either party could have terminated the relationship without liability.

Section 3121(d)(2) of the Internal Revenue Code provides that the term "employee" means any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of employee.

The question of whether an individual is an independent contractor or an employee is one of fact to be determined upon consideration of the facts and the application of the law and regulations in a particular case. Guides for determining the existence of that status are found in three substantially similar sections of the Treasury Regulations. They are sections 31.3121(d)-1, 31.3306(i)-1, and 31.3401(c)-1 relating to the Federal Insurance Contributions Act (FICA), the Federal Unemployment Tax Act (FUTA), and Federal income tax withholding on wages at source, respectively.

Section 31.3121(d)-1(c)(2) of the regulations provides that generally, the relationship of employer and employee exists when the person for whom the services are performed has the right to control and direct the individual who performs the services not only as to the results to be accomplished by the work, but also as to the details and means by which the result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done, but also as to how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which services are performed; it is sufficient if he or she has the right to do so. In general, if an individual is subject to the control or direction of another merely as

3

to the result to be accomplished and not as to the means and methods for accomplishing the result, he or she is an independent contractor.

In determining whether an individual is an employee or an independent contractor under the common law, all evidence of both control and lack of control or autonomy must be considered. In doing so, one must examine the relationship of the worker and the business. Facts that illustrate whether there is a right to direct or control how the worker performs the specific tasks for which he or she is hired, whether there is a right to direct or control how the financial aspects of the worker's activities are conducted, and how the parties perceive their relationship provide evidence of the degree of control and autonomy.

Section 31.3121(d)-1(a)(3) of the regulations provides that if the relationship of an employer and employee exists, the designation or description of the parties as anything other than that of employer and employee is immaterial. Thus, if an employer-employee relationship exists, any contractual designation of the employee as a partner, coadventurer, agent, or independent contractor must be disregarded.

We have applied the law, regulations, and principles as cited above to the information submitted. As is the case in almost all worker classification cases, some facts point to an employment relationship while other facts indicate independent contractor status. The determination of the worker's status, therefore, rests on the weight given to the factors under the common law, keeping in mind that no one factor is determinative of a worker's status. The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed. In weighing the evidence, careful consideration has been given to the factors outlined below.

Under the common law, the relationship of employer and employee exists when the person for whom the services are performed has the right to control not only what is done, but also how it is done. Evidence of control generally falls into three categories: behavioral controls, financial controls, and relationship of the parties, which are collectively referred to as the categories of evidence.

Factors that illustrate whether there is a right to control how a worker performs a task include training and instructions. In this case, the school retained the right to change the worker's methods and to direct the worker to the extent necessary to protect its financial investment. A worker who is required to comply with another person's instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the right to require compliance with instructions. Some employees may work without receiving instructions because they are highly proficient and conscientious workers or because the duties are so simple or familiar to them. Furthermore, the instructions that show how to reach the desired results may have been oral and given only once at the beginning of the relationship. See, for example, Revenue Ruling 68-598, 1968-2 C.B. 464, and Rev. Rul. 66-381, 1966-2 C.B. 449. The worker was provided with training and given daily instruction by the school. The worker performed

4

her services personally and devoted substantially full-time to the school and, therefore, was restricted from doing other gainful work. She received her assignments from the Dean of Administration and reported to him with any problems she encountered. These factors show that the school exercised its right to direct and control the worker in the performance of her services.

Factors that illustrate whether there is a right to direct and control the financial aspects of the worker's activities include significant investment, unreimbursed expenses, the methods of payment, and the opportunity for profit or loss. In this case, the worker did not invest capital or assume business risks, and therefore, did not have the opportunity to realize a profit or incur a loss as a result of her services. A person who can realize a profit or suffer a loss as a result of his or her services is generally an independent contractor, while the person who cannot is an employee. See Rev. Rul. 70-309, 1970-1 C.B. 199. "Profit or loss" implies the use of capital by a person in an independent business of his or her own. The risk that a worker will not receive payment for his or her services, however, is common to both independent contractors and employees and, thus, does not constitute a sufficient economic risk to support treatment as an independent contractor. If a worker loses payment from the firm's customer for poor work, the firm shares the risk of such loss. Control of the firm over the worker would be necessary in order to reduce the risk of financial loss to the firm. The opportunity for higher earnings or of gain or loss from a commission arrangement is not considered profit or loss. The school provided all the materials and supplies the worker needed to perform her services. She was reimbursed both incidental expenses that she incurred and for the purchase of any supplies for the school. The worker received a set weekly amount from the school for the services she performed. These factors show the school maintained financial control over the worker.

Factors that illustrate how the parties perceive their relationship include the intent of the parties as expressed in written contracts; the provision of, or lack of employee benefits; the right of the parties to terminate the relationship; the permanency of the relationship; and whether the services performed are part of the service recipient's regular business activities. In this case, the worker was not engaged in an independent enterprise, but rather the services performed by the worker were a necessary and integral part of the school. Both parties retained the right to terminate the work relationship at any time without incurring a liability. Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business. The worker's administrative services were a necessary part of keeping the school operational. While the worker performed her services she was under the complete direction and control of the school.

In evaluating the facts in this case, it is clear that the worker performed services in a manner consistent with an employer-employee relationship. Applying the law, regulations, and principles set forth in various revenue rulings and court cases noted

5

above, as well as the categories of evidence outlined above, we conclude that the worker was an employee of the school for Federal employment tax purposes, and not an independent contractor engaged in her own trade or business. Although there was evidence submitted to suggest the worker had a business of her own, she did not perform any services of an independent nature for the school.

Many religious, charitable, educational, or other nonprofit organizations are exempt from Federal income tax. However, they must withhold Federal income tax from their employees' pay and report each employee's compensation on Form W-2. If an employee is paid $100 or more during a calendar year, his/her wages are also subject to FICA taxes (social security and Medicare). Payments for services performed by an employee of a nonprofit organization described in section 501(c)(3) are not subject to FUTA taxes.

Section 530 of the 1978 Revenue Act established a safe haven from an employer's liability for employment taxes arising from an employment relationship. This relief may be available to employers who have misclassified workers if they meet certain criteria. This is explained more fully in the enclosed fact sheet.

If you think you are not eligible for section 530 relief, section 3509 of the Code provides that if an employer fails to deduct and withhold any tax under chapter 24 (income tax withholding) or subchapter A of Chapter 21 (employee portion of FICA tax) with respect to any employee by reason of treating an employee as not being an employee, the employer's liability is 1.5 percent of the employee's wages plus 20 percent of the **employee's** portion of the FICA tax. The employer's liability is doubled in cases where the employer failed to meet the reporting requirements of sections 6041(a) or 6051 consistent with the treatment of the employees as independent contractors. You must pay the full amount of the **employer's** share of FICA taxes.

Section 3509(c) provides that the reduced rates of section 3509 do not apply in cases of an employer's intentional disregard of the requirement to deduct and withhold such tax.

This determination is based on the application of law to the information presented to us and/or discovered by us during the course of our investigation; however, we are not in a position to personally judge the validity of the information submitted. This ruling is directed only to the taxpayer to whom it is addressed, however, it may be applicable to any other individuals engaged by the firm under similar circumstances. Section 6110(k)(3) of the Code provides it may not be used or cited as precedent.

You are responsible for complying with this determination by filing/amending your employment tax returns accordingly. You will not be receiving a bill from this office. Your immediate handling of this correction and your prompt payment of the tax may reduce any related interest and penalties. For information regarding your tax liabilities, your eligibility for section 3509 rates, and instructions concerning the filing/amendment of your employment tax returns, please see the enclosed Information Guide,

6

"Frequently Asked Questions When IRS Reclassifies Workers as Employees."
However, if you deem that your firm would meet the criteria for section 530 relief as
outlined in the enclosure, and you do not want to jeopardize this potential relief for any
tax periods, both prior and future, you should <u>NOT</u> amend your returns at this time.
Alternatively, you may abide by this determination and reclassify your worker to
employee status now, from this time forward, without jeopardizing any relief for prior tax
periods, if qualified. Note that once you begin treating a worker in this class as an
employee, section 530 relief will not be available to you for any future periods for this
class of workers.

If you need further assistance in filing/amending your employment tax returns due to
the reclassification of your worker, please call the IRS help line at 1-800-829-4933. Call
1-866-455-7438 for assistance in preparing or correcting Forms W-2, W-3, 1099, 1096,
or other information returns.

Internal Revenue Code section 7436 concerns reclassifications of worker status that
occur during IRS examinations. As this determination is not related to an IRS audit, it
does not constitute a notice of determination under the provisions of section 7436.

Sincerely,

Peggy D'Amico
Operations Manager

Enclosures:  Section 530 Fact Sheet
             Notice of IRS Compliance Expectations
             Information Guide
             Forms: 941 and 941c
             2004: 1099-MISC, 1096, W-2, W-3
*To order forms and publications, please call 1-800-TAX-FORM or visit us online at www.irs.gov.

cc: Janice W. Stevenson

Letter 3711(CG) (Rev. 9-2003)
Catalog Number 36629P

# ATTACHMENT 3

**United States District Court**
**For the District of Massachusetts**

| | |
|---|---|
| JANICE STEVENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No.  05-CV-11584-DPW |
| | ) |
| NEIGHBORHOOD HOUSE CHARTER | ) |
| SCHOOL, | ) |
| | ) |
| Defendant. | ) |

<u>Answer to Plaintiff's Amended Complaint</u>

As and for its Answer to Plaintiff's Amended Complaint, Defendant Neighborhood House Charter School ("NHCS") states as follows:

<u>Parties</u>

1.  Defendant states that it lacks sufficient knowledge and information to respond to the allegations in paragraph 1 of Plaintiff's Complaint and leaves Plaintiff to her proof.

2.  Defendant admits the allegations in paragraph 2 of Plaintiff's Complaint.

<u>Facts</u>

3.  Defendant denies the allegations in paragraph 3 of Plaintiff's Complaint, except to admit that Stevenson was a temporary employee of Ace Employment agency and placed in a position at NHCS from May 11, 2004 until August 19, 2004, and the school paid Ace Employment agency for her services during this period.

4.  Defendant denies the allegations in paragraph 4 of Plaintiff's Complaint, except to admit that in August 2004 the NHCS Finance Department began considering the manner in which they would transition the School's Human Resources functions away from Federated and in-house.

5.  Defendant denies the allegations in paragraph 5 of Plaintiff's Complaint and states that it lacks sufficient knowledge and information concerning when Plaintiff created her independent Contracting company TUCKNT.

6.  Defendant denies the allegations in paragraph 6 of Plaintiff's Complaint, except to admit that NHCS hired TUCKNT on or about August 20, 2004.

7. Defendant denies the allegations in paragraph 7 of Plaintiff's Complaint, except to admit that NHCS hired TUCKNT on or about August 20, 2004.

8. Defendant denies the allegations in paragraph 8 of Plaintiff's Complaint.

9. Defendant denies the allegations in paragraph 9 of Plaintiff's Complaint.

10. Defendant denies the allegations in paragraph 10 of Plaintiff's Complaint, except to admit that Plaintiff and Chokshi collaborated on certain Human Resources tasks.

11. Defendant denies the allegations in paragraph 11 of Plaintiff's Complaint.

12. Defendant denies the allegations in paragraph 12 of Plaintiff's Complaint, except to admit that Chokshi and Stevenson discussed the method by which they would compensate Ms. Clark.

13. Defendant denies the allegations in paragraph 13 of Plaintiff's Complaint, except to admit that on June 3, 2005, Chokshi communicated NHCS's decision to terminate Ms. Stevenson to her.

14. Defendant denies the allegations in paragraph 14 of Plaintiff's Complaint.

15. Defendant denies that NHCS was obligated to pay Stevenson overtime as alleged in paragraph 15 of her Complaint.

16. Defendant denies that NHCS was obligated to either withhold taxes from Stevenson's check or to pay Stevenson overtime as alleged in paragraph 16 of her Complaint.

## FIRST CAUSE OF ACTION

17. Paragraph 17 of Plaintiff's Complaint states a legal conclusion and Defendant need not respond.

18. Defendant denies the allegations in paragraph 18 of Plaintiff's Complaint

19. Defendant denies the allegations in paragraph 19 of Plaintiff's Complaint.

20. Defendant denies the allegations in paragraph 20 of Plaintiff's Complaint.

21. Defendant denies the allegations in paragraph 21 of Plaintiff's Complaint.

22. Defendant denies the allegations in paragraph 22 of Plaintiff's Complaint.

23. Defendant denies the allegations in paragraph 23 of Plaintiff's Complaint.

## SECOND CAUSE OF ACTION

24. Paragraph 24 of Plaintiff's Complaint states a legal conclusion and Defendant need not respond.

2

25. Defendant denies the allegations in paragraph 25 of Plaintiff's Complaint

26. Defendant denies the allegations in paragraph 26 of Plaintiff's Complaint.

27. Defendant denies the allegations in paragraph 27 of Plaintiff's Complaint.

28. Defendant denies the allegations in paragraph 28 of Plaintiff's Complaint.

29. Defendant states that it lacks sufficient knowledge and information to respond to the allegations in paragraph 29 of Plaintiff's Complaint, and leaves Plaintiff to her proof.

30. Defendant denies the allegations in paragraph 30 of Plaintiff's Complaint.

### THIRD CAUSE OF ACTION

31. Paragraph 31 of Plaintiff's Complaint states a legal conclusion and Defendant need not respond.

32. Defendant admits the allegations in paragraph 32 of Plaintiff's Complaint.

33. Defendant denies the allegations in paragraph 33 of Plaintiff's Complaint, except to admit that Plaintiff requested a copy of her personnel file from NHCS.

34. Defendant denies the allegations in paragraph 34 of Plaintiff's Complaint.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under the doctrines of waiver, estoppel and/or acquiescence.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because at all times relevant to this action, Defendant has

acted in good faith and not in a knowing or willfully unlawful manner.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Defendant's conduct was not the cause in fact or the

proximate cause of damages alleged by Plaintiff.

3

1.   BO1 15736324.1

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery because she failed to mitigate her damages, if any.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has acquiesced or consented to the matters alleged in the Complaint.

### EIGHTH AFFIRMATIVE DEFENSE

At all times relevant and material to this matter, Plaintiff was exempt from the FLSA's

minimum wage and overtime compensation requirements pursuant to 29 U.S.C. § 213(a).

### NINTH AFFIRMATIVE DEFENSE

Defendant states that part or all of any time Plaintiff alleges should be paid to her is

properly preliminary or postliminary time under the Portal-to-Portal Pay Act, 29 U.S.C. § 254(a),

and therefore not compensable.

### TENTH AFFIRMATIVE DEFENSE

Defendant states that if it in fact has failed to pay Stevenson for work in excess of 40

hours in a workweek, any uncompensated time was *de minimis*.

### ELEVENTH AFFIRMATIVE DEFENSE

Defendant states that even if Plaintiff was not paid for any activities performed while

performing services for Defendant, such activities do not constitute compensable work under the

Fair Labor Standards Act, and furthermore, such activities were not an integral and indispensable

part of Plaintiff's principal activities of employment and are not compensable.

4

### TWELFTH AFFIRMATIVE DEFENSE

Defendant states that its actions with respect to Plaintiff were taken in good faith in

conformity with and in reliance on a written administrative regulation, order, ruling, approval,

interpretation, and/or administrative practice or policy pursuant to 29 U.S.C. § 259.

### THIRTEENTH AFFIRMATIVE DEFENSE

Defendant states that its actions with respect to Plaintiff were taken in good faith with

reasonable grounds to believe such conduct comported with the Fair Labor Standards Act or

interpretations of the Fair Labor Standards Act pursuant to 29 U.S.C. § 260.

### FOURTEENTH AFFIRMATIVE DEFENSE

The statute on which Plaintiff's third cause of action is based, Mass. Gen. Laws ch. 149,

§ 52C, creates no private right of action.

### FIFTEENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to assert additional affirmative defenses as they become

known.

WHEREFORE, Defendant requests that this Court:

1.  Dismiss this action in its entirety and render judgment in Defendant's favor on each and every count asserted in Plaintiff's Complaint;
2.  Award Defendant its costs and reasonable attorneys' fees incurred in defending this action; and
3.  Award Defendant such further and additional relief as the court deems just and appropriate.

1.   BO1 15736324.1

Respectfully submitted,
NEIGHBORHOOD HOUSE CHARTER
SCHOOL
By its attorneys,

Lynn A. Kappelman (BBO # 642017)
Barry J. Miller (BBO # 661596)
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on John W. Davis, Davis & Davis, P.C., 77 Franklin Street, 3rd Floor, Boston, MA 02110, as counsel for the plaintiff by first class mail, postage prepaid, on September 13, 2005.

Lynn A. Kappelman

6

1.    BO1 15736324.1