# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MASSACHUSETTS

JANICE STEVENSON
Plaintiff,

v.                                    No. 05-CV-11584-DPW

NEIGHBORHOOD HOUSE CHARTER SCHOOL,
Defendant

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR EXTENSION OF TIME IN WHICH TO RESPOND TO PLAINTIFF'S APRIL 6, 2006, FILING

Plaintiff Janice W. Stevenson ("Plaintiff" or the "the Employee") hereby moves that this Honorable Court deny defendant Neighborhood House Charter School ("NHCS") their motion for an extension of time through May 15, 2006, to respond to the documents filed by the Employee on April 6, 2006, as amended by the documents she filed on April 19, 2006. As grounds for this motion, the Employee states as follows.

1. Shortly after the Scheduling Conference in this case in November 2005, NHCS threatened the Employee's counsel with expedited discovery if the Employee's did not cease her involvement in an administrative matter against NHCS that Davis was neither involved in nor authorized to discuss with NHCS.

2. Also shortly after NHCS Scheduling Conference tactic, the Employee's counsel notified her of a possible settlement of this matter.

3. Prior to December 31, 2005, the IRS issued to NHCS a final determination to a SS-8 request by the Employee.

4. This Employee reported to her counsel specific concerns about the Older Workers Benefit Protection Act (OWBPA), which is highly material provision of the document that the parties had drafted to memorialize their settlement agreement. Specifically I continually requested a plain language statement of Section 2 of the settlement agreement. [Attachment 1] This Employee also reported to her counsel specific concerns of the now conflicting language in NHCS' settlement agreement with the December 2005 IRS SS-8 final determination. [Attachment 2]

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR EXTENSION OF TIME IN WHICH TO RESPOND TO PLAINTIFF'S APRIL 6, 2006, FILING

Page 2 of 3

5. My termination is a directed result of Dean Jagdish Chokshi's unauthorized payments of cash to his girlfriend, Lynn Clark, a younger, white female, who was then an undocumented employee/intern of NHCS.

In 1990, Congress enacted the OWBPA to protect older workers from discrimination by employers based on age, when providing employee benefits, including severance benefits. The Act, which amends the Age Discrimination in Employment Act (ADEA), ensures that older workers are not compelled or pressured into waiving their rights under the ADEA.

NHCS's counsel never attempted to provide this plain language statement of Section 2 regarding a material provision of the parties' settlement agreement.

6. The Employee failed to sign the settlement agreement without an understanding of Section 2.

7. Thereafter, on April 6, 2006, Attorney John Davis ("Davis") requested NHCS's assent to his withdrawal of his appearance on behalf of the Employee in this matter. The same day, this Employee filed legal documents with the Court, because of unanswered requests and questions, consisting of a letter addressed to the Honorable Judge Woodlock and several attachments. The Court docketed Stevenson's April 6 filing as a "Letter/request (non-motion) from Janice Stevenson."

8. Davis filed a motion to withdraw as Stevenson's counsel on April 18, 2006, citing the deterioration of the attorney-client relationship. On April 19, 2006, the Court Clerk docketed another letter that Stevenson apparently also filed without Davis' involvement in which she makes representations regarding, among other things, her interest in retaining successor counsel.

9. The legal documents this Employee filed are

1) A letter to Judge Woodlock,
2) A motion
3) The settlement agreement, which NHCS drafted,
5) The IRS letter dated December 29, 2005 of final determination of the SS-8 request of the Employee which NHCS has had in its possession since January 2006.
6) Defendant's Answer to Plaintiff's Amended Complaint, which defendant wrote.
7) Overtime register which represents the Employee daily overtime hours totaled by week for each month worked

The only questions the judge may wrestle with are: how much time does it take to respond to one Motion and Memorandum in Support of Partial Summary Judgment on Liability? And haven't these folks either threatened expedited discover or asked for delay after delay after delay already? Is there a pattern here?

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR EXTENSION OF TIME IN WHICH TO RESPOND TO PLAINTIFF'S APRIL 6, 2006, FILING**

Page 3 of 3

10. NHCS has had plenty of time. This employee's has waited for responses to requests and questions from NHCS since December 2005.

WHEREFORE the Employee, Janice W. Stevenson, prays that this Honorable Court will deny NHCS motion for an extension of time through May 15, 2006, to respond to the documents filed by the Employee on April 6, 2006.

DATED: April 22, 2006
Respectfully submitted,

Janice W. Stevenson
P.O. Box 400372
Cambridge, MA 02140


Certificate of Compliance with Local Rule 7.1

I hereby certify that I was contacted by NHCS via phone and email. I did not gather from either the phone message or the email any attempt by NHCS to resolve or narrow the issues presented in the Employee's motion. Since NHCS provided no grounds or justification for an extension, I declined Defendant's request to the extension of time sought by this motion via e-mail. [Attachment 3] This Employee has been informed NHCS' legal representation strategy is to stall and extend litigation. I would prefer a speedy trial.

Janice W. Stevenson
P.O. Box 400372
Cambridge, MA 02140
617-721-2638 – phone/voice
201-622-4890 – fax
janicestevensonus@gmail.com

Lynn A. Kappelman (BBO # 642017)
Barry J. Miller (BBO # 661596)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Telecopier: (617) 946-4801

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed and that a true copy of the above document was served on Barry Miller, BMiller@seyfarth.com, and Lynn Kappelman, LKappelman@seyfarth.com, by electronic mail on April 22, 2006.

Janice W. Stevenson
P.O. Box 400372
Cambridge, MA 02140
617-721-2638 – phone/voice
201-622-4890 – fax
janicestevensonus@gmail.com

# ATTACHMENT 1

## SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT is made and entered into this __ day of November 2005, by and between the following parties: Janice Stevenson and TuckNT (collectively, "Stevenson" or "Plaintiff") on the one hand; and Neighborhood House Charter School ("NHCS" or "Defendant") on the other hand.

WHEREAS, Janice Stevenson filed a complaint in the United States District Court for the District of Massachusetts entitled Janice Stevenson v. Neighborhood House Charter School, No. 05-11584, alleging, inter alia, violation of (i) the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; (ii) Massachusetts' Wage and Hour Laws, G.L. ch. 149 § 148; and (iii) Massachusetts' Personnel Records Statute, G.L. c. 149 § 52C (the "Action"); and

WHEREAS, NHCS denies that it has violated any of Stevenson's rights or that it owes her any monies for any of her claims; and

WHEREAS, the parties wish to avoid the expense and burden of further litigation and resolve any and all other issues and disputes between them, whether or not asserted in the Action or in any other proceeding, arising with respect to any relationship between Plaintiff and Defendant;

IT IS, THEREFORE, agreed that in consideration of the mutual promises and covenants herein set forth, the parties covenant and agree as follows.

1.     NHCS agrees to pay Stevenson the gross sum of Eleven Thousand Dollars ($11,000.00) (the "Settlement Proceeds") and other valuable consideration as set forth below. NHCS shall disburse the Settlement Proceeds as follows. Within thirty (30) days after the Effective Date (as defined in Section 3(f) below) and delivery by Plaintiff of the executed Agreement and a signed Stipulation of Dismissal (as required by Section 3) to NHCS's attorney, Lynn A. Kappelman, Esq., Seyfarth Shaw, Two Seaport Lane, Suite 300, Boston, MA 02210, NHCS shall:

    (a)     Deliver to Janice Stevenson's attorney a check payable to "TuckNT" in the amount of Eight Thousand Two Hundred Fifty and 00/100 Dollars ($8,250.00). NHCS shall report this payment to state and federal tax authorities on IRS Form 1099-MISC.

    (b)     Make and deliver a check payable to "Attorney John Davis" as compensation for Stevenson's attorneys' fees, in the amount of Two Thousand Seven Hundred Fifty and 00/100 Dollars ($2,750.00). NHCS will report this payment to state and federal tax authorities as income to John Davis and to TuckNT on separate forms.

2.     (a) Each of Janice Stevenson, TuckNT and her or its heirs, successors, executors, beneficiaries, legal representatives, and assigns (collectively referred to as the "Releasors"), hereby unconditionally and irrevocably release, remise, and forever discharge NHCS, its predecessors, successors, and related entities (including, without limitation, Neighborhood House Charter School Foundation (the "Foundation")), and all of their respective past, present,

1

and future officers, directors, board members, trustees, stockholders, employees, representatives, attorneys, agents, and insurers (collectively referred to as the "Releasees") or any of them, of and from any and all suits, claims, demands, interest, costs (including attorneys' fees and costs actually incurred), expenses, actions and causes of action, rights, liabilities, obligations, promises, agreements, controversies, losses and debts, of any nature whatsoever, which the Releasors now have, own or hold, or at any time heretofore ever had, owned or held, or could have owned or held, whether known or unknown, suspected or unsuspected, from the beginning of the world to this date, including, without limiting the generality of the foregoing: any claims in law or equity, in a court or administrative or arbitration tribunal, arising out of or in connection with Stevenson's alleged employment by and TuckNT's contractual relationship with NHCS or its predecessors, any claims arising under Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act, as amended; the Older Workers' Benefit Protection Act; the Employee Retirement Income Security Act, as amended; the Americans with Disabilities Act, as amended; the Family and Medical Leave Act; the National Labor Relations Act; the Fair Labor Standards Act, as amended; the Sarbanes-Oxley Act; the Massachusetts Fair Employment Practices Act; the Massachusetts Wage and Hour Laws; the Massachusetts Personnel Records Statute; and any other statutory, common law or other claims of any nature whatsoever including but not limited to retaliation, breach of implied or express contract, misrepresentation, negligence, fraud, estoppel, defamation, infliction of emotional distress, violation of public policy, wrongful or constructive discharge, or any other employment-related tort, or any claim for costs, fees, or other expenses, including attorneys' fees, or any other federal, state, or local law against any of the Releasees. Releasors, their heirs, executors, beneficiaries, legal representatives, and assigns, individually and/or in their beneficial capacity, further agree never to institute against any of the Releasees any lawsuit with respect to any claim or cause of action of any type arising or which may have existed at any time prior to the date of the execution of this Agreement. Releasors further waive their rights to any monetary recovery or other relief should any federal, state, or local administrative agency pursue any claim or cause of action of any type on its behalf arising at any time prior to the present date. This Agreement is intended to comply with the Older Workers Benefit Protection Act of 1990 ("OWBPA") with regard to Janice Stevenson's waiver of rights under the ADEA.

Each of Janice Stevenson and TuckNT expressly agree and understand that the release of claims contained in this Agreement is a **GENERAL RELEASE**, and that any reference to specific claims arising out of or in connection with Janice Stevenson's alleged employment and TuckNT's contractual relationship is not intended to limit the release of claims. Each of Janice Stevenson and TuckNT also expressly agree and understand that this **GENERAL RELEASE** means that the Releasors irrevocably are releasing, remising, and discharging the Releasees from and with respect to all claims, whether known or unknown, asserted or unasserted, and whether or not the claims arise out of or in connection with Janice Stevenson's employment, TuckNT's contractual relationship and/or the termination of either, or otherwise, arising up to the date of the signing of this Agreement.

2

(b)     Janice Stevenson is specifically waiving rights and claims under the ADEA.

(c)     The waiver of rights and claims under the ADEA does not extend to any rights or claims arising after the date Janice Stevenson executes this Agreement.

(d)     Plaintiff acknowledges being advised by NHCS in writing to consult with an attorney of her or its choice prior to signing this Agreement. Plaintiff further acknowledges that she and it has had the opportunity to consult with an attorney of their choice with respect to all terms and conditions set forth in this Agreement and to have the advice of counsel with respect to the decision to sign and enter into this Agreement.

(e)     Janice Stevenson acknowledges that NHCS has offered twenty-one (21) days to consider the terms and conditions of this Agreement, to consult with counsel of her choice, and to decide whether to sign and enter into this Agreement.

(f)     Janice Stevenson has seven (7) days after her execution of this Agreement to revoke her acceptance of it. Any such revocation must be received in writing within the 7-day revocation period by Lynn Kappelman, counsel for NHCS. The parties acknowledge and agree that this Agreement is neither effective nor enforceable and neither party is obligated to perform the promises contained herein in the event that the Agreement is revoked or until expiration of the 7-day revocation period (the "Effective Date").

3.     Contemporaneously with the execution of this Agreement, Janice Stevenson shall execute a Stipulation of Dismissal of the Complaint in the form attached hereto as Exhibit A and a Request for Dismissal of any action currently pending before any Department Labor Administrative Judge, in the form attached hereto as Exhibit B. Stevenson also hereby agrees to file any other such withdrawals, stipulations, affidavits, and other documents as may be required to accomplish each such dismissal, and to withdraw, with prejudice and without attorneys' fees or costs, any other action or legal proceeding, administrative or judicial, now pending concerning any claim any the Releasors may have made against any of the Releasees.

4.     Plaintiff agrees and acknowledges that the terms of this Agreement are confidential. Plaintiff warrants that she or it will not further individually, jointly, or through her or its attorneys or other representatives, or those acting on her or its behalf in any manner publish, publicize, or otherwise make known to any person the underlying facts of the matters covered by this Agreement, the allegations set forth in her Complaint, the fact of this Agreement and/or the terms and conditions of this Agreement, and the settlement discussions that led up to it, except to state that all such issues have been "resolved to the satisfaction of all parties" or as may be required by law, or to her or its financial or tax advisors; and then only after said advisor(s) have agreed to be bound by the provisions of this paragraph to make no further disclosure.

5.     Plaintiff agrees that she/it will not take any action or make any statement that disparages NHCS, the Foundation, any member of the Board of Trustees of either, any employee of either, including without limitation Kevin Andrews and Jagdish Chokshi, and/or any of the

3

other Releasees, or that has the intended or foreseeable effect of harming the business and/or personal reputation of any such person or entity or of disrupting NHCS' usual business operations. Plaintiff further agrees to refrain from disclosing any information about any employee of NHCS or the Foundation acquired in connection with the performance of services for NHCS or the Foundation and with respect to which such employee has a reasonable expectation of privacy.

NHCS agrees that, in response to inquiries from third parties about the relationship between NHCS and Stevenson or TuckNT, it will state only that TuckNT had an agreement to perform services for NHCS between approximately August 2004 and June 2005, NHCS has been informed that Stevenson was an employee of TuckNT, and TuckNT assigned Stevenson to perform services pursuant to its agreement with NHCS.

6.      Plaintiff does hereby knowingly covenant and agree that neither she nor it will knowingly seek or accept employment or any other remunerative relationship with, or undertake to provide services to, either directly or indirectly, NHCS, the Foundation or any of either NHCS's or the Foundation's affiliated or related entities. Plaintiff also further agrees that the execution of this Agreement is good and sufficient cause for NHCS, the Foundation and any affiliate of either to reject any application by the Janice Stevenson for employment.

7.      Nothing contained in this Agreement shall be construed as an admission of any liability by NHCS, and it is agreed that Plaintiff will not offer this Agreement as evidence in any judicial or administrative proceeding, except that this Agreement may be introduced in any proceeding for the sole purpose of enforcing its terms.

8.      This Agreement contains the entire agreement and understanding by and between the parties with respect to the matters herein referred to, and no representations, promises, agreements, or understandings, written or oral, not herein contained shall be valid or binding unless the same is in writing and signed by the parties. No waiver of any provision of this Agreement at any time shall be deemed a waiver of any other provision of this Agreement.

9.      This Agreement may be executed in two counterparts, and each executed counterpart shall have the same force and effect as an original instrument, as if all of the parties to all of the counterparts had signed the same instrument.

10.     This Agreement shall be construed in accordance with, and governed by, the laws of the Commonwealth of Massachusetts.

4

11.    Other than as stated herein, the undersigned parties warrant that no representation, promise, or inducement has been offered or made to induce any party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement is intended as a final expression of the parties' Agreement and as a complete and exclusive statement of the terms thereof. This Agreement shall supersede all prior understandings, oral and written, between the parties concerning the matters referred to herein. Any amendments to this agreement shall be in writing and signed by all parties.

12.    The parties further represent that they are able to read the language and understand the meaning and effect of this Agreement, that they have read and understand this Agreement and the effect thereof, and that their attorneys have explained the same to them.

IN WITNESS WHEREOF, the parties voluntarily and without coercion set forth their hands on this _____ of November, 2005, as their free acts and deeds.

Date: _____       By: _____
                                            Janice Stevenson

Date: _____       By: _____
                                            Janice Stevenson on behalf of TuckNT

Date: _____       By: _____
                                            Neighborhood House Charter School

5

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| JANICE STEVENSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  05-CV-11584-DPW |
| | ) | |
| NEIGHBORHOOD HOUSE CHARTER | ) | |
| SCHOOL, | ) | |
| Defendant. | ) | |
| | ) | |

## STIPULATION OF DISMISSAL

Pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, Plaintiff Janice

Stevenson and Defendant Neighborhood House Charter School hereby stipulate to the voluntary

dismissal of all of Plaintiff's claims against Defendant in this action with prejudice and without

costs or attorneys' fees to any party. The Plaintiff and Defendant hereby waive all rights of

appeal from the entry of such dismissal.

Respectfully submitted,
JANICE STEVENSON,
By her attorney,


 /s/ John W. Davis
John W. Davis (BBO# 648399)
Davis & Davis, P.C.
77 Franklin Street, 3rd Floor
Boston, MA 02110
Telephone:    (617) 933-3838
Telecopier:    (617) 933-3839

DATED: November __, 2005

NEIGHBORHOOD HOUSE CHARTER
SCHOOL
By its attorneys,


 /s/ Lynn A. Kappelman
Lynn A. Kappelman (BBO # 642017)
Barry J. Miller (BBO # 661596)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801

1

**UNITED STATES OF AMERICA**
**DEPARTMENT OF LABOR**

|  |  |  |
|---|---|---|
| JANICE WILSON STEVENSON | ) | |
| | ) | |
| Complainant, | ) | |
| | ) | ARB Case No. 05-156 |
| V. | ) | |
| | ) | ALJ Case No. 2005-SOX-00087 |
| NEIGHBORHOOD HOUSE CHARTER | ) | |
| SCHOOL, | ) | |
| | ) | |
| Respondent. | ) | |

## REQUEST FOR DISMISSAL

Plaintiff, Janice Wilson Stevenson, hereby requests that the Department of Labor and all of its divisions, including without limitation the Occupational Safety and Health Administration and the Administrative Review Board, dismiss all charges she has brought against Neighborhood House Charter School ("NHCS"). This request includes without limitation all charges Plaintiff has brought against NHCS alleging violations of Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, *et seq*.

Plaintiff further requests that all appeals and petitions for review she has filed regarding the Department of Labor's dismissals of her claims against NHCS be withdrawn or dismissed.

Respectfully submitted,

_____
JANICE WILSON STEVENSON
P.O. Box 400372
DATED: November __, 2005                Cambridge, MA 02140

1

BO1 15749388.1

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Request for Dismissal was sent via facsimile, electronic, or regular mail to all parties listed below on November __, 2005.

_____

Janice W. Stevenson

Administrative Review Board
Room S-4309
200 Constitution Avenue, N.W.
Washington, D.C. 21210
Telephone: (202) 693-6200
Fax: (202) 693-6220

Chief ALJ, OALJ
USDOL, Suite 400 North
800 K Street, NW
Washington, DC 20001-8002
(202) 693-7542
(202) 693-7365 (FAX)

Assistant Secretary
OSHA, Div FLSA
USDOL, Room S-2002
200 Constitution Avenue, N.W.
Washington, DC 20210
(202) 693-2000-p
(202) 693-1340-f

Howard M. Radzely
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
Room N-2716, FPB
200 Constitution Avenue, N.W.
Washington, DC 20210
202-693-5260-p
202-693-5538-f

Mr. Richard E. Fairfax
U.S. DOL/OSHA Room: N-3119
200 Constitution Avenue, N.W.
Washington, D.C. 20210
(202) 693-2100 Phone
(202) 693-1681 Fax

Honorable Daniel F. Sutton
District Chief ALJ, OALJ
O'Neill Federal Building – Room 411
10 Causeway Street
Boston, MA 02222
(617) 223-9335-phone
(617) 223-4254-fax

Lynn A. Kappelman
Seyfarth Shaw, LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02110-2028
617-946-4800-phone
617-946-4801-fax

Ilene Sunshine
Sullivan & Worcester, LLP
One Post Office Square
Boston, MA 02109
617-338-2880-p
617-338-2883-f

2

# ATTACHMENT 2

**Internal Revenue Service**
SB/SE, Compliance
BIRSC, SS-8 Unit

**Department of the Treasury**
40 Lakemont Road
Newport, VT  05855-1555

**December 29, 2005**

Kevin Andrews, Headmaster
Neighborhood House Charter School
197A Centre Street
Dorchester, MA  02124-2331-976

Form: SS-8

Person to Contact:
Laramie Bliven, #03-00292

Telephone Number: 802-751-4424
Facsimile Number:  802-751-4455

Refer Reply to: Case # 41957

Dear Mr. Andrews:

This is in response to a Form SS-8 that was submitted to request a determination of employment status for Federal employment tax purposes, between Neighborhood House Charter School, hereafter referred to as the school, and Janice W. Stevenson, hereafter referred to as the worker, for services performed in 2004 and 2005.

We hold the worker to have been an employee of the school. In the rest of this letter, we will explain the facts, law, and rationale that form the basis for this finding.

Information submitted indicated that the school is a nonprofit public charter school that serves children in grades pre-kindergarten to eighth grade. The worker was initially engaged by the school to provide the processing of grant applications but shortly thereafter her role expanded to cover more general accounting and administrative tasks including human resources, payroll, and employee benefits. Prior to this arrangement, the worker performed accounting and administrative duties for the school through an employment agency. The school publicly posted a job for a grants manager. The worker expressed an interest in the position and the school agreed to retain her so she ended her relationship with the employment agency. The school stated that the worker insisted that she be retained and paid through her own company as an independent contractor. The worker disagreed and said that the school encouraged her to open a business that included a website for validity as the services she was going to provide would be treated as contracted services. The worker acknowledged she agreed with this arrangement and felt that this might be something she could develop for her future. The school stated that the arrangement with the worker was temporary.

The worker received her assignments from the Dean of Administration. The school utilized her expertise and only minimal oversight was needed. The worker was required

2

to act in accordance with the decisions of the Dean and reported to him with any problems that occurred. The worker was sent by the school to conferences and seminars and was also trained in the payroll system used. She was responsible for providing many internal reports that were used by the school's staff. She worked a substantially full-time schedule at the school's location. The school stated that she also occasionally performed services from her home. The worker performed her services personally and attended staff meetings when it related to finance or human resource matters.

All materials and supplies the worker needed at the school were provided. The worker was reimbursed for incidental expenses she incurred for the school. She incurred no other expenses. The worker was paid a set weekly amount by the school. She submitted invoices for her services which were approved by the Dean of Administration before payment was issued. The checks were issued to the worker under her business name. The worker did not receive any benefits although the school stated she was allowed some flexibility in her schedule. The school further stated in its response that the Dean and the worker colloquially referred to the flexibility as "vacation and sick time". The worker had a website that advertised her company. She stated that this was done upon the request of the school to legitimize her business presence. The school said she did this on her own and the school just utilized the services she was offering to the public. No other evidence of advertising was submitted. The website is no longer available. The worker performed her services full-time for the firm and stated she did not have time to perform any services for others. Either party could have terminated the relationship without liability.

Section 3121(d)(2) of the Internal Revenue Code provides that the term "employee" means any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of employee.

The question of whether an individual is an independent contractor or an employee is one of fact to be determined upon consideration of the facts and the application of the law and regulations in a particular case. Guides for determining the existence of that status are found in three substantially similar sections of the Treasury Regulations. They are sections 31.3121(d)-1, 31.3306(i)-1, and 31.3401(c)-1 relating to the Federal Insurance Contributions Act (FICA), the Federal Unemployment Tax Act (FUTA), and Federal income tax withholding on wages at source, respectively.

Section 31.3121(d)-1(c)(2) of the regulations provides that generally, the relationship of employer and employee exists when the person for whom the services are performed has the right to control and direct the individual who performs the services not only as to the results to be accomplished by the work, but also as to the details and means by which the result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done, but also as to how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which services are performed; it is sufficient if he or she has the right to do so. In general, if an individual is subject to the control or direction of another merely as

3

to the result to be accomplished and not as to the means and methods for accomplishing the result, he or she is an independent contractor.

In determining whether an individual is an employee or an independent contractor under the common law, all evidence of both control and lack of control or autonomy must be considered. In doing so, one must examine the relationship of the worker and the business. Facts that illustrate whether there is a right to direct or control how the worker performs the specific tasks for which he or she is hired, whether there is a right to direct or control how the financial aspects of the worker's activities are conducted, and how the parties perceive their relationship provide evidence of the degree of control and autonomy.

Section 31.3121(d)-1(a)(3) of the regulations provides that if the relationship of an employer and employee exists, the designation or description of the parties as anything other than that of employer and employee is immaterial. Thus, if an employer-employee relationship exists, any contractual designation of the employee as a partner, coadventurer, agent, or independent contractor must be disregarded.

We have applied the law, regulations, and principles as cited above to the information submitted. As is the case in almost all worker classification cases, some facts point to an employment relationship while other facts indicate independent contractor status. The determination of the worker's status, therefore, rests on the weight given to the factors under the common law, keeping in mind that no one factor is determinative of a worker's status. The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed. In weighing the evidence, careful consideration has been given to the factors outlined below.

Under the common law, the relationship of employer and employee exists when the person for whom the services are performed has the right to control not only what is done, but also how it is done. Evidence of control generally falls into three categories: behavioral controls, financial controls, and relationship of the parties, which are collectively referred to as the categories of evidence.

Factors that illustrate whether there is a right to control how a worker performs a task include training and instructions. In this case, the school retained the right to change the worker's methods and to direct the worker to the extent necessary to protect its financial investment. A worker who is required to comply with another person's instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the right to require compliance with instructions. Some employees may work without receiving instructions because they are highly proficient and conscientious workers or because the duties are so simple or familiar to them. Furthermore, the instructions that show how to reach the desired results may have been oral and given only once at the beginning of the relationship. See, for example, Revenue Ruling 68-598, 1968-2 C.B. 464, and Rev. Rul. 66-381, 1966-2 C.B. 449. The worker was provided with training and given daily instruction by the school. The worker performed

4

her services personally and devoted substantially full-time to the school and, therefore, was restricted from doing other gainful work. She received her assignments from the Dean of Administration and reported to him with any problems she encountered. These factors show that the school exercised its right to direct and control the worker in the performance of her services.

Factors that illustrate whether there is a right to direct and control the financial aspects of the worker's activities include significant investment, unreimbursed expenses, the methods of payment, and the opportunity for profit or loss. In this case, the worker did not invest capital or assume business risks, and therefore, did not have the opportunity to realize a profit or incur a loss as a result of her services. A person who can realize a profit or suffer a loss as a result of his or her services is generally an independent contractor, while the person who cannot is an employee. See Rev. Rul. 70-309, 1970-1 C.B. 199. "Profit or loss" implies the use of capital by a person in an independent business of his or her own. The risk that a worker will not receive payment for his or her services, however, is common to both independent contractors and employees and, thus, does not constitute a sufficient economic risk to support treatment as an independent contractor. If a worker loses payment from the firm's customer for poor work, the firm shares the risk of such loss. Control of the firm over the worker would be necessary in order to reduce the risk of financial loss to the firm. The opportunity for higher earnings or of gain or loss from a commission arrangement is not considered profit or loss. The school provided all the materials and supplies the worker needed to perform her services. She was reimbursed both incidental expenses that she incurred and for the purchase of any supplies for the school. The worker received a set weekly amount from the school for the services she performed. These factors show the school maintained financial control over the worker.

Factors that illustrate how the parties perceive their relationship include the intent of the parties as expressed in written contracts; the provision of, or lack of employee benefits; the right of the parties to terminate the relationship; the permanency of the relationship; and whether the services performed are part of the service recipient's regular business activities. In this case, the worker was not engaged in an independent enterprise, but rather the services performed by the worker were a necessary and integral part of the school. Both parties retained the right to terminate the work relationship at any time without incurring a liability. Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business. The worker's administrative services were a necessary part of keeping the school operational. While the worker performed her services she was under the complete direction and control of the school.

In evaluating the facts in this case, it is clear that the worker performed services in a manner consistent with an employer-employee relationship. Applying the law, regulations, and principles set forth in various revenue rulings and court cases noted

5

above, as well as the categories of evidence outlined above, we conclude that the worker was an employee of the school for Federal employment tax purposes, and not an independent contractor engaged in her own trade or business. Although there was evidence submitted to suggest the worker had a business of her own, she did not perform any services of an independent nature for the school.

Many religious, charitable, educational, or other nonprofit organizations are exempt from Federal income tax. However, they must withhold Federal income tax from their employees' pay and report each employee's compensation on Form W-2. If an employee is paid $100 or more during a calendar year, his/her wages are also subject to FICA taxes (social security and Medicare). Payments for services performed by an employee of a nonprofit organization described in section 501(c)(3) are not subject to FUTA taxes.

Section 530 of the 1978 Revenue Act established a safe haven from an employer's liability for employment taxes arising from an employment relationship. This relief may be available to employers who have misclassified workers if they meet certain criteria. This is explained more fully in the enclosed fact sheet.

If you think you are not eligible for section 530 relief, section 3509 of the Code provides that if an employer fails to deduct and withhold any tax under chapter 24 (income tax withholding) or subchapter A of Chapter 21 (employee portion of FICA tax) with respect to any employee by reason of treating an employee as not being an employee, the employer's liability is 1.5 percent of the employee's wages plus 20 percent of the **employee's** portion of the FICA tax. The employer's liability is doubled in cases where the employer failed to meet the reporting requirements of sections 6041(a) or 6051 consistent with the treatment of the employees as independent contractors. You must pay the full amount of the **employer's** share of FICA taxes.

Section 3509(c) provides that the reduced rates of section 3509 do not apply in cases of an employer's intentional disregard of the requirement to deduct and withhold such tax.

This determination is based on the application of law to the information presented to us and/or discovered by us during the course of our investigation; however, we are not in a position to personally judge the validity of the information submitted. This ruling is directed only to the taxpayer to whom it is addressed, however, it may be applicable to any other individuals engaged by the firm under similar circumstances. Section 6110(k)(3) of the Code provides it may not be used or cited as precedent.

You are responsible for complying with this determination by filing/amending your employment tax returns accordingly. You will <u>not</u> be receiving a bill from this office. Your immediate handling of this correction and your prompt payment of the tax may reduce any related interest and penalties. For information regarding your tax liabilities, your eligibility for section 3509 rates, and instructions concerning the filing/amendment of your employment tax returns, please see the enclosed Information Guide.

6

"Frequently Asked Questions When IRS Reclassifies Workers as Employees."
However, if you deem that your firm would meet the criteria for section 530 relief as
outlined in the enclosure, and you do not want to jeopardize this potential relief for any
tax periods, both prior and future, you should <u>NOT</u> amend your returns at this time.
Alternatively, you may abide by this determination and reclassify your worker to
employee status now, from this time forward, without jeopardizing any relief for prior tax
periods, if qualified.  Note that once you begin treating a worker in this class as an
employee, section 530 relief will not be available to you for any future periods for this
class of workers.

If you need further assistance in filing/amending your employment tax returns due to
the reclassification of your worker, please call the IRS help line at 1-800-829-4933. Call
1-866-455-7438 for assistance in preparing or correcting Forms W-2, W-3, 1099, 1096,
or other information returns.

Internal Revenue Code section 7436 concerns reclassifications of worker status that
occur during IRS examinations. As this determination is not related to an IRS audit, it
does not constitute a notice of determination under the provisions of section 7436.

Sincerely,

Peggy D'Amico
Operations Manager

Enclosures:  Section 530 Fact Sheet
Notice of IRS Compliance Expectations
Information Guide
Forms:  941 and 941c
2004:  1099-MISC, 1096, W-2, W-3
*To order forms and publications, please call 1-800-TAX-FORM or visit us online at www.irs.gov.

cc: Janice W. Stevenson

Letter 3711(CG) (Rev. 9-2003)
Catalog Number 36629P

# ATTACHMENT 3



Forbes.com Most Popular Stories - Can You Trust Ben Bernanke? - 4 days ago  < >

**« Back to "NHCS Litigation"**   [ Remove label "NHCS Litigation" ]
[ Report Spam ]   [ Delete ]

More actions...                                                        1 of 55 Older ›

## ph message   NHCS Litigation

**Stevenson Janice** to bmille More options  Apr 12

Mr. Miller,

I have received your voice message. My fax
number is 201-622-4890. My address is listed
below. Please feel free to discuss any matter on
this account as you wish.

--
Janice W. Stevenson
P.O . Box 400372
Cambridge, MA  02140

**Reply** **Forward**

**Miller, Barry** to **Lynn**, me   More options  Apr 12

Ms. Stevenson,

As I stated in my voicemail message to you
earlier today, we represent Neighborhood
House Charter School ("NHCS") in its defense
of your lawsuit against NHCS currently
pending in federal court in Boston.  We
understand that Attorney John Davis no longer
represents you for purposes of that suit, and to
the best of our knowledge, no other attorney
has made an appearance on your behalf in
that matter.  Please let us know if you consider
yourself to be represented by any attorney for
purposes of your claims against NHCS, and
we will address future communications to him
or her.

Due to other commitments in our schedules,
we would like to request your assent to an
extension of time in which to respond to the
papers that you filed with the Court last week.
We believe that an extension of time through
Monday, May 15, 2005, would give us
sufficient time to fully respond to your filing,
without unduly delaying the proceedings.

Please let us know if you will assent to this
extension.

Thank you,

Barry J. Miller
*Seyfarth Shaw LLP*
Two Seaport Lane, Suite 300
Boston, MA 02210
office phone: (617) 946-4800
direct phone: (617) 946-4806
office fax: (617) 946-4801
direct fax: (617) 790-6753

- Hide quoted text -

> -----Original Message-----
> **From:** Stevenson Janice
> [mailto:janicestevensonus@gmail.com]
> **Sent:** Wednesday, April 12, 2006 4:24 PM
> **To:** Miller, Barry
> **Subject:** ph message
>
> Mr. Miller,
>
> I have received your voice message. My fax
> number is 201-622-4890. My address is listed
> below. Please feel free to discuss any matter
> on this account as you wish.
>
> --
> Janice W. Stevenson
> P.O . Box 400372
> Cambridge, MA  02140

Any tax information or written tax advice contained
herein (including any attachments) is not intended to
be and cannot be used by any taxpayer for the
purpose of avoiding tax penalties that may be
imposed on the taxpayer. (The foregoing legend has
been affixed pursuant to U.S. Treasury Regulations
governing tax practice.)

The information contained in this transmission is
attorney privileged and/or confidential information
intended for the use of the individual or entity named
above. If the reader of this message is not the
intended recipient, you are hereby notified that any
dissemination, distribution or copying of this
communication is strictly prohibited.

**Reply    Reply to all    Forward    Invite Barry to Gmail**

✉ **Stevenson Janice** to Barry, Lynı More options  Apr 14

I do not assent to an extension of time in which to
respond to the papers that I filed with the Court last
week.
- Hide quoted text -

On 4/12/06, **Miller, Barry**
<BMiller@seyfarth.com> wrote:
Ms. Stevenson,

As I stated in my voicemail message to you
earlier today, we represent Neighborhood
House Charter School ("NHCS") in its
defense of your lawsuit against NHCS
currently pending in federal court in Boston.
We understand that Attorney John Davis no
longer represents you for purposes of that
suit, and to the best of our knowledge, no
other attorney has made an appearance on
your behalf in that matter.  Please let us
know if you consider yourself to be
represented by any attorney for purposes of
your claims against NHCS, and we will
address future communications to him or
her.

Due to other commitments in our schedules,
we would like to request your assent to an
extension of time in which to respond to the
papers that you filed with the Court last
week.  We believe that an extension of time
through Monday, May 15, 2005, would give
us sufficient time to fully respond to your
filing, without unduly delaying the
proceedings.  Please let us know if you will
assent to this extension.

Thank you,

Barry J. Miller
*Seyfarth Shaw LLP*
Two Seaport Lane, Suite 300
Boston, MA 02210
office phone: (617) 946-4800
direct phone: (617) 946-4806
office fax: (617) 946-4801
direct fax: (617) 790-6753

-----Original Message-----
**From:** Stevenson Janice [mailto:
janicestevensonus@gmail.com]
**Sent:** Wednesday, April 12, 2006
4:24 PM
**To:** Miller, Barry
**Subject:** ph message

Mr. Miller,

I have received your voice message.
My fax number is 201-622-4890.  My
address is listed below.  Please feel
free to discuss any matter on this
account as you wish.

--
Janice W. Stevenson

P.O . Box 400372
Cambridge, MA 02140

Any tax information or written tax advice
contained herein (including any attachments)
is not intended to be and cannot be used by
any taxpayer for the purpose of avoiding tax
penalties that may be imposed on the
taxpayer. (The foregoing legend has been
affixed pursuant to U.S. Treasury Regulations
governing tax practice.)

The information contained in this transmission
is attorney privileged and/or confidential
information intended for the use of the
individual or entity named above. If the reader
of this message is not the intended recipient,
you are hereby notified that any dissemination,
distribution or copying of this communication is
strictly prohibited.

--
Janice W. Stevenson
P.O. Box 400372
Cambridge, MA 02140

**Reply   Reply to all   Forward**

« **Back to "NHCS Litigation"**    Remove label "NHCS Litigation"

Report Spam    Delete

More actions...                                          1 of 55 Older ›

Use **Google Desktop** to access your Gmail messages even when you're
offline.

Gmail view: **standard with chat** | standard without chat | basic HTML  Learn more

Terms of Use - Privacy Policy - Program Policies - Google Home
©2006 Google