FILED
AT CLERKS OFFICE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS** 2006 MAY 11  P 2: 06

JANICE STEVENSON,
Plaintiff,

U.S. DISTRICT COURT
DISTRICT OF MASS.

v.

NEIGHBORHOOD HOUSE CHARTER
SCHOOL,
Defendant.

CIVIL ACTION NO. 05-CV-11584-DPW

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS

Plaintiff Janice Stevenson ("Plaintiff") hereby moves the Honorable court to deny

for summary judgment all claims asserted by Defendant Neighborhood House Charter

School.

At no time did I ever accept the settlement agreement from NHCS. I deny all

allegations in their affidavit and Motion for Summary Judgment that is not favorable to

Plaintiff and contend that their argument is not legally sufficient.

The FLSA defines "employee" as "any individual employed by an employer."

To "employ" includes "to suffer or permit to work." 29 U.S.C. ss 203(e) (1), 203(g).

"The definition is necessarily a broad one in accordance with the remedial purpose of the

Act." Superior Care, 840 F.2d at 1058. Whether an individual is an "employee" within

the meaning of the FLSA is a legal question. See Herman v. RSR Sec. Servs. Ltd.,

172 F.3d 132, 139 (2d Cir. 1999); Castillo v. Givens, 704 F.2d 181, 185 (5th Cir. 1983).

In Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961), the Supreme

Court directed courts to look at "economic reality" rather than "technical concepts" to

determine employment status under the FLSA. The "test considers the extent to which typical employer prerogatives govern the relationship between the putative employer and employee." Henthorn v. Department of Navy, 29 F.3d 682, 684 (D.C. Cir.1994). In Henthorn the court ask "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (citation omitted). In Superior Care, the Second Circuit case relied upon by the magistrate judge, the court set forth a different, although similar, set of factors. These include: (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship and (5) the extent to which the work is an integral part of the employer's business. Superior Care, 840 F.2d at 1058-59. No one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence. See Herman, 172 F.3d at 139; Superior Care, 840 F.2d at 1059; see also Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1311-12 (5th Cir. 1976) ("It is dependence that indicates employee status. Each test must be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of the FLSA or are sufficiently independent to lie outside its ambit." (emphasis original)).

Facile labels such as TuckNT by NHCS and subjective factors are only relevant to the extent that they mirror 'economic reality.'

## FACTUAL BACKGROUND

NHCS admits to an employment relationship with Plaintiff commencing in or about August 2004. NHCS also describes Plaintiffs duties as "administrative functions to support the School's educational mission."

However, NHCS fails to tell the Court that

(1) Plaintiff was paid sick and vacation days. [Att 1].

(2) NHCS exerted control as to work schedule and daily duties [Att 2]

(3) Plaintiff was given business cards [Att 3]

(4) Plaintiff reported accounting fraud and FLSA violations to Board of Trustees [Att 4]

(5) Plaintiff salary was charged to NHCS personnel expenses [Att 5]

(6) Plaintiff was provided training for payroll duties and access to payroll system [Att 6]

(7) Plaintiff was not a decision maker. (Att 7)

WHEREFORE, Plaintiff requests that the Court deny summary judgment in

Defendant's favor on all counts of Plaintiff Janice Stevenson's Amended Complaint and

grant Plaintiff's Motion for Partial Summary Judgment on Liability in its entirety.

DATED: May 11, 2006

Respectfully submitted,

*Janice Stevenson*

Janice W. Stevenson
P.O. Box 400372
Cambridge, MA 02140
617-721-2638 – ph
201-622-4890 - fax

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on NHCS by email or facsimile to:

NEIGHBORHOOD HOUSE CHARTER SCHOOL,
Lynn A. Kappelman (BBO # 642017)
Barry J. Miller (BBO # 661596)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Telecopier: (617) 946-4801

*Janice Stevenson*

# Attachment 1

# Attachment 2

ATT 2

## Stevenson, Janice W.

| | |
|---|---|
| **From:** | Jagdish Chokshi [jug@thenhcs.org] |
| **Sent:** | Tuesday, May 24, 2005 9:37 PM |
| **To:** | Janice W. Stevenson |
| **Cc:** | Kevin Andrews |
| **Subject:** | Next Few days |

Janice
Over the next few days, while I'm gone:
1. First, while I'm gone, you should notify Kevin (as you would me) of any time off, lateness, early departures etc.
2. I'll approve Rich's timesheet and complete mine next Wed, June 1, my first day back.
3. Pls order some food and drinks for a 4 pm finance comm meeting here at the school on June 1 (8 people).
4. Pls do NOT transmit payroll for next week until I return and approve the payroll.
5. I saw a $1500 stipend for Monica L signed by Mark J; DO NOT PAY that stipend. Pls return the stipend letter to me and I will follow-up after I get back.
6. When I return I'd like to know the following CRITICAL info:
-Where do we stand with the food revenue?
-Where do we stand on other public funding for FY05 - what's left to bill?
7. Genevieve may be here next Tues, but she has keys so she should be all set.
8. As always, pls call my cell if there are any emergencies.

Thanks
Jug

*Jug Chokshi*
*Dean of Administration*
*Neighborhood House Charter School*
*197A Centre Street*
*Dorchester, MA 02124*
*t. 617.825.0703 x271*
*f. 617.474.1103*
*www.theNHCS.org*

8/29/2005

# Attachment 3

A H 3

*The Neighborhood House*
CHARTER SCHOOL



Janice W. Stevenson
*Finance Manager*

197A Centre Street,
Dorchester, MA  02124

p: 617-825-0703 ext. 272
f: 617-474-1103
jstevenson@thenhcs.org
www.thenhcs.org

# Attachment 4

*ATT 4*

May 27, 2005
P.O. Box 400372
Cambridge, MA  02140


Mr. Robert Melzer
Vice President of the Board of Trustees
  Of the Neighborhood House Charter School
61 Monmouth Street
Brookline, MA  02446

Dear Vice President Melzer:

Thank you for speaking with me by telephone on May 27, 2005. During that telephone call I informed you I suspected Dean Jagdish Chokshi of misuse of NHCS' petty cash and ATM/Credit Card. My suspicion was based on conversations and observations of Dean Jagdish Chokshi. Both Genevieve Davis, another consultant hired by NHCS', and myself have noted the lack of documentation of petty cash.

The ATM/Credit card was obtained for online access of NHCS' school's operating account with Bank of America to assist administration in confirming MDOE payments, deposits, and bank reconciliation. I was told by Dean Chokshi to never give the card's number to the staff to order or pay for merchandise. Dean Chokshi reminded me that the card directly accessed NHCS' monies in its operating account. However, approximately March 2005, the Dean informed me that he had purchased a digital camera over the weekend with NHCS' ATM/credit card. He stated, "I did not have my card on me."

There are no written internal procedures in place to deter fraud and/or insure compliance with state and federal laws in Human Resources, Finance, Payroll, Public Funding etc. Dean Chokshi has continually advised me verbally and in writing that he is not concerned with the "letter of the law".


1. I started to suspect Dean Chokshi in April 2005 of illegally using petty cash, when he informed me that he was paying Ms. Lynn Clark, an intern, $20 hours from petty cash. However, my concern is should Ms. Clark be paid through petty cash?

   According to Dean Chokshi, Ms. Clark, went to graduate school with him. Her current duties are to inventory the financial files. Dean Chokshi and Ms. Clark vacationed together in May 2005 in North Carolina.

ATT 4

One morning, Dean Chokshi stated to me that Mr. Austin Smith and you advised him to obtain additional help. This advice was the result of your observation of Dean Chokshi's lack of preparation for a BoT committee meeting.

2. Dean Chokshi has continually directed me to pay employees who did not turn in a signed timesheet to payroll. FLSA requires a timesheet for nonexempt employees and NHCS policy directs employees to turn in timesheets. NHCS currently has misclassified certain employees who are nonexempt as exempt to avoid paying overtime.

3. In addition, the master payroll file is not in compliance, human resource files are not in compliance, NHCS has unreported wages of employees L&DA over $50,000, etc.


Sincerely,

Janice W. Stevenson

Janice Wilson Stevenson, C.P.M.

# Attachment 5

A# 5

Void after 90 days

TuckNT
Personnel Costs - Salaries:Salaries
Personnel Costs - Fringe

5/25/2005

2675

2,333.34
2,000.00

Bank of America

0430-510320-9050-02

4,333.34

# Attachment 6

*A H 6*

## Janice Stevenson

**From:** Keck, Mary [Mary.Keck@Ceridian.com]

**Sent:** Thursday, November 11, 2004 4:26 PM

**To:** Janice Stevenson

**Cc:** Jagdish Chokshi

**Subject:** Powerpay Passwords client # 35507

November 11, 2004

Dear Janice,

Let me take this opportunity to welcome you to the world of Powerpay. Attached you will find the number of passwords you requested for your company. Please keep your passwords in a confidential place, as anyone will have access to your payroll with them.
Powerpay has many payroll processing related functions available for your use. However there are some items which can only be changed via telephone or fax. They are as follows:

Disability Adjustments
Any type of company level changes (i.e.: address changes, adding states)

If you should have any of the above changes, please fax or phone them to me by 1:00pm EST on the day your payroll is scheduled for processing.

Please contact me so I can set up a time that would be convenient for us both to do your first payroll on Powerpay .

If you should have any questions, please do not hesitate to contact me at 1-800-537-9448 Option #9 then dial by last name or my e-mail address is mary.keck@ceridian.com.

Regards,

Mary A Keck, CPP
Installation Consultant

mak
Attachment

### **\*\*REMINDER\*\***
PAYROLL NEEDS TO BE TRANSMITTED BY 4:OOPM (EST) FOR DELIVERY THE
NEXT BUSINESS DAY (if applicable)

\*Additional walkthroughs on  Powerpay are billed at $100/session

 **Powerpay Online Payroll**

COMPANY NAME: Neighborhood House Charter School
COMPANY NUMBERS: 35507

https://hrpayroll-sa.ceridian.com

*Please find below your designated passwords for Powerpay*

**Login information is case sensitive**

| Company Number | Company Password | User Code Name | User Code Password |
|----------------|------------------|----------------|--------------------|
| 35507 | 9apeyk | jstevenson | Kezp3c |

 **Powerpay Online Payroll**

COMPANY NAME: Neighborhood House Charter School
COMPANY NUMBERS: 35507

https://hrpayroll-sa.ceridian.com

*Please find below your designated passwords for Powerpay*

**Login information is case sensitive**

| Company Number | Company Password | User Code Name | User Code Password |
|---|---|---|---|
| 35507 | 9apeyk | jstevenson | Kezp3c |

# Attachment 7

*A # 7*

Brookline Medical has reported to me a positive drug test results for marijuana for a prob...    Page 1 of 3

## Stevenson, Janice W.

| | |
|---|---|
| **From:** | Janice Stevenson [jstevenson@thenhcs.org] |
| **Sent:** | Thursday, May 19, 2005 5:46 AM |
| **To:** | jstevenson@tucknt.com |
| **Subject:** | FW: NHCS Policy 4.2 page 10 |

**Attachments:** Janice Stevenson.vcf

**From:** Janice Stevenson
**Sent:** Wed 5/18/2005 1:37 PM
**To:** Kevin Andrews
**Cc:** Jagdish Chokshi
**Subject:** RE: NHCS Policy 4.2 page 10

Headmaster Andrews

**RESPECTFULLY** may I say that my actions were directed by NHCS personnel policy, page 9, paragraph 3? Those policies are all I have for reference.

Only two designations are listed in that handbook for disclosure of sensitive personnel matters: the Headmaster and Human Resources Director. It further states that "Under no circumstances should these matters be discussed with anyone else."

May I recommend a three-week-at-home-paid project to recommend updates of the employee handbook?

Janice
p - 617-825-0703, X-272
f - 617-474-1103

-----Original Message-----
**From:** Kevin Andrews
**Sent:** Wednesday, May 18, 2005 12:10 PM
**To:** Janice Stevenson
**Cc:** Jagdish Chokshi
**Subject:** RE: NHCS Policy 4.2 page 10

Janice
This issue and other issues like this should be brought to the attention of your supervisor first. He will then make the decision of what are the next steps will be.
Thank You,
Kevin

-----Original Message-----
**From:** Janice Stevenson
**Sent:** Wednesday, May 18, 2005 10:47 AM
**To:** Kevin Andrews
**Subject:** NHCS Policy 4.2 page 10

Headmaster Andrews: I attempted to call you this morning regarding this matter.

9/1/2005

However, I am sorry to heard that your mobile unit does not function properly in certain areas.

Janice



The Neighborhood House
CHARTER SCHOOL

TO:    Kevin Andrews
       Headmaster

FROM:    Janice Stevenson
         Human Resource Manager
DATE:    May 18, 2005
SUBJECT:    Positive Drug Test Results

Brookline Medical has reported  a positive drug test results for marijuana for a probationary employee.  Brookline Medical does not have a Medical Review Officer, who acts as the advocate for both the probationary employee [donor] and the employer [NHCS].  The probationary employee has not been contacted by Brookline Medical. I suggest that NHCS investigate all possibilities for this positive test results before any personnel action is considered.

## DRUG TESTING AND THE ADA

**1.  Is this employee in a supervised drug-rehabilitation program and should disclosure be provided in NHCS' application process under reasonable accommodation inquiry?**

Within Section 1630.3(b) of the ADA, individuals who have successfully completed or who are participating in a supervised drug-rehabilitation program and who are no longer engaging in the illegal use of drugs, or individuals who are erroneously regarded as engaging in illegal drug use, are not automatically excluded from the definition of the term ``qualified individual with a disability.'' This distinction is an operational issue to explore.

**2.  Did NHCS violate its pre-employment, drug-testing program?**
If NHCS had consistently administered its pre-employment, drug-testing program, this probationary employee's positive drug-test results would have rejected her/him from further employment consideration. Then there is no apparent operational problem in complying with the ADA. Post-offer, pre-employment medical examinations are permitted, provided that these examinations are administered to **ALL** entering employees.

**3.  Should NHCS initiate drug testing as part of an applicant screening process?**

Given that under the final regulations (Section 1630.16(c) of Title I) a drug test is not considered a medical examination, NHCS should consider administering a drug test as a separate and earlier element of the applicant-screening process. Earlier elimination of an

9/1/2005

applicant, based on positive drug-test results, eliminates the later need for a medical examination and significantly reduces overall employment selection costs.

### 4. NHCS has to give the probationary employee the opportunity to provide any medically verifiable reason for this result.

An interview should be provided to allow the probationary employee the opportunity to discuss any medically qualified reason or medically acceptable explanation for the substance(s) to be in the specimen they provided.

If the probationary employee provides verifiable medical documentation in a reasonable time period following notification of a result to NHCS designated personnel the documentation will be reviewed; if the documentation substantiates the result as legitimate medical use the positive result will be replaced with a result of negative. This result will then be reported or re-reported in NHCS personnel records.

### 5. Can this employee now enroll in a counseling program under NHCS' insurance and seek protection under the ADA?

NHCS Policy 4, **Life-Threatening or Chronic Illnesses, page 9,** states that "participation by itself does not protect an employee from appropriate disciplinary action should there be a breach of the conditions of employment, a violation of general NHCS guidelines, policies and procedures or should job performance fall below an acceptable level.

If an individual is protected under federal disability law, NHCS should provide assistance to that person.

9/1/2005