## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANICE STEVENSON, )<br>　)<br>　　　　Plaintiff, )<br>　)<br>v. )<br>　)<br>NEIGHBORHOOD HOUSE CHARTER )<br>SCHOOL, )<br>　)<br>　　　　Defendant. )<br>　) | CIVIL ACTION NO.  05-CV-11584-DPW |

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S
### SECOND MOTION FOR SUMMARY JUDGMENT

Defendant Neighborhood House Charter School ("NHCS" or the "School") hereby opposes Plaintiff Stevenson's ("Plaintiff" or "Stevenson") June 5, 2006 motion for summary judgment (the "Motion").[1]  In her Motion, Plaintiff argues that determinations by two administrative agencies, the Internal Revenue Service ("IRS") and the Massachusetts Division of Unemployment Assistance ("DUA"), are binding on this Court and establish that Plaintiff was an employee of NHCS within the meaning of the Fair Labor Standards Act ("FLSA").[2]  This argument is fatally flawed in several respects.  First, neither agency addressed the same legal issue that Plaintiff's FLSA claim presents.  Second, neither of the administrative determinations on which Plaintiff relies were issued by an agency acting in a judicial capacity.  Both agencies

---

[1] Since her counsel moved to withdraw his appearance in this matter, Plaintiff has filed two motions for summary judgment on a *pro se* basis.  In her first motion (docket no. 11), Plaintiff moved for partial summary judgment on liability, apparently seeking a determination that she was an employee as a matter of law for purposes of the Fair Labor Standards Act.   Defendant included an opposition to this motion in its own Motion for Summary Judgment on All Counts, which it filed on April 27, 2006.  Defendant now opposes Plaintiff's second motion (docket no. 21), which she filed on or about May 26, 2006.  At a hearing in this matter on June 1, 2006, the Court allowed Defendant an extension of time through and including June 19, 2006, to respond to that motion.

[2] The procedural histories of the several administrative proceedings that Stevenson has initiated against NHCS are set forth in detail in Defendant's Memorandum Regarding Ancillary Administrative Proceedings, filed contemporaneously herewith.

made determinations based on nothing more than letters from the respective parties, and neither undertook proceedings that would meet minimum due process standards. Finally, neither administrative determination was intended as a final adjudication of the legal issues presented. The DUA matter is the subject of an ongoing administrative appeal, and the IRS determination is merely an advisory finding in the absence of a binding audit. In light of these numerous legal failings, the Court should reject Plaintiff's collateral estoppel and *res judicata* arguments and deny her Motion.

### I. Neither Agency Addressed the Legal Issue Presented By Plaintiff's FLSA Claim

The two determinations on which Stevenson relies have no preclusive effect on her FLSA claim in this matter because both of those administrative determinations involved different legal issues. In order for any prior proceeding to have a preclusive effect on a legal issue before this Court, the issue addressed by the prior tribunal must be *identical* to the issue before the Court. *See Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 600-01 (1948) (where "the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation . . . "); *Faigin v. Kelley*, 184 F.3d 67, 78 (1st Cir. 1999) ("the mere presence of a modicum of factual commonality does not establish the requisite identity of issues for purposes of collateral estoppel"). In this case, neither of the administrative determinations on which Stevenson relies addressed the same legal issue as her FLSA claim in this case, and neither determination has any bearing on her claims before this Court.

The IRS's response to Stevenson's filing of a Form SS-8 does not address her status as an employee for purposes of the FLSA. The IRS determination merely addressed Stevenson's susceptibility to federal income and employment tax withholding during the time that her company, TuckNT, provided services to NHCS. *See* IRS correspondence dated December 29,

2005 (copy attached as Exhibit A), p.5.  In assessing a worker's status for purposes of the federal income tax laws, the IRS applies a 20-factor common law test.  *See* IRS Revenue Ruling 87-41.  In contrast, employee status under the FLSA is subject to an "economic realities" test, which looks to a smaller set of factors having only a limited overlap with the common law test.  *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 ( 2d Cir. 2003) (discussing application of economic realities test in detail); *Donovan v. Agnew*, 712 F.2d 1509, 1513-14 (1st Cir. 1983).  Courts have recognized that the economic realities test and the common law test are not identical.  *See, e.g., Speen v. Crown Clothing Corp.*, 102 F.3d 625, 631-32 (1st Cir. 1996) (differentiating common law test from economic realities test and noting incompatibility of two tests in certain contexts); *McGuiggan v. CPC Int'l, Inc.*, 84 F. Supp. 2d 470, 467-77 (2d Cir. 2000).  In light of these differences, courts have declined to give preclusive effect to an IRS determination of employee status in response to a Form SS-8 filing in a subsequent FLSA suit.  *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 9-10 (D.C. Cir. 2001) (where worker who had provided services under contract to defendant subsequently filed Form SS-8 and FLSA lawsuit against defendant, IRS response to Form SS-8 not given preclusive effect in FLSA lawsuit); *see also Donovan v. Tastee Freez (Puerto Rico), Inc.*, 520 F. Supp. 899, 904 (D. P.R. 1981) (IRS's formal concession of workers' independent contractor status not given preclusive effect in subsequent FLSA suit).  In fact, the *Morrison* court recognized that the relationship between the plaintiff's federal tax status and her FLSA claim was so tenuous that documents pertaining to the IRS's determination were properly excluded from evidence as irrelevant.  253 F.3d at 10.  Therefore, the IRS determination on which Stevenson relies is not binding on this Court for purposes of her FLSA claim.

The DUA correspondence on which Stevenson relies also has no bearing on her status as an employee under the FLSA. The agency's determination relates exclusively to her status for purposes of the state unemployment insurance scheme, a question of law entirely separate from her status under the FLSA. Employee status for purposes of Massachusetts unemployment insurance law is subject to a so-called "ABC Test" that differs from both the common law and economic realities test. Mass. Gen. Laws ch. 151A, § 2; *Athol Daily News v. Bd. of Review of Div. of Employment and Training*, 439 Mass. 171, 175 (2003). In contrast to both the FLSA's economic realities test and the IRS's common law test, in which the presence or absence of any one factor is not determinative, failure to meet any element of the ABC Test is dispositive of a worker's employee status. *Athol*, 439 Mass. at 175. The structure of the ABC Test alone makes it clear that the DUA's determination of Stevenson's status for purposes of the state's unemployment insurance scheme does not address the same legal issue presented by her FLSA claims. The Massachusetts Attorney General has formally stated his view that the ABC Test is broader than the FLSA's economic realities test. *See* Attorney General Advisory 2004/2, p. 2 (ABC Test "excludes far more workers from independent contractor status than are disqualified under the traditional state and federal law tests, including the 20 Factors Test . . ., the Fair Labor Standards Act . . . and the Massachusetts common law.") Similarly, in examining an unemployment insurance statute identical to the Massachusetts law, the *Donovan* court recognized that the ABC Test is not identical to the economic realities test and can have no preclusive effect on an FLSA claim. 520 F. Supp. at 902, 905. In fact, the DUA noted the limitations on the scope of its finding regarding Stevenson's status and stated in its correspondence, "this determination applies only to [NHCS's] liability under the Massachusetts Unemployment Insurance Law. It has no bearing on [the School's] obligation under any other

law, federal or state." *See* DUA correspondence dated April 20, 2006 (copy attached as Exhibit B). The DUA's determination, therefore, has no preclusive effect for purposes of Stevenson's claim that she was an employee of NHCS under the FLSA.

### II.   The Administrative Determinations Were Not Issued by An Agency Acting In A Judicial Capacity

Neither of the administrative determinations on which Stevenson relies can be given a preclusive effect as to her FLSA claim in this matter because they were not made in a judicial capacity. An administrative agency's determination of an issue may only be given preclusive effect if the agency afforded the parties a fact finding process that approximated that of a court, including by observing fair standards of evidence and an adjudication of facts after a full and fair hearing. *Cruz v. Melecio*, 204 F.3d 14, 19 (1st 2000); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 39 (1st Cir. 1998). Neither of the agency proceedings at issue afforded any such process. To the contrary, both agencies made determinations based exclusively on the basis of letters submitted by the parties; neither agency held a hearing of any kind. The IRS even expressly recognized the limitations of its administrative procedures and included in its correspondence a disclaimer that its, "determination is based on the application of law to the information presented to us . . .; however, we are not in a position to personally judge the validity of the information submitted." *See* Exhibit A, p.5. NHCS has had no opportunity to challenge the representations that Stevenson made to the IRS or DUA. In fact, the School has only limited knowledge of what she has submitted to those agencies.[3] NHCS has also had no opportunity to cross-examine Stevenson regarding the representations she made to the IRS and DUA. The agency proceedings on which Stevenson relies cannot be given preclusive effect as to her FLSA

---

[3] At the June 1, 2006, hearing in this matter, Stevenson stated that she had recently engaged in conferences with DUA personnel of which the School had no prior knowledge, and that DUA had made some changes to the benefits Stevenson received based on her representations and submissions to the agency.

-5-

claims in this matter because those proceedings did not meet even the most minimal standards of due process.

### III. The Administrative Determinations are Not Final

The administrative findings on which Stevenson relies cannot be given preclusive effect because they are not final determinations. In order to be given preclusive effect, an administrative determination must be terminated, such that an order has been entered and no further appeals or reconsideration is available. *NLRB v. Donna-Lee Sportswear Co.*, 836 F.2d 31, 33-34 (1st Cir. 1987) (to have preclusive effect "determination must result in a valid and final judgment.") (citing Restatement of Judgments, 2d. § 27, p. 250). In this case, neither agency has reached a final determination as to Stevenson's status as a putative employee of NHCS.

The IRS determination on which Stevenson relies is advisory in nature and does not constitute a final and binding action by the agency. The IRS's correspondence notes that NHCS will "not be receiving a bill" from the agency for any taxes owed and states that, if the School wishes to fully preserve its rights, it "should NOT amend [its] returns at this time." Exhibit A, p. 5-6 (emphasis in original). The agency's correspondence also notes that its "determination is not related to an IRS audit." Exhibit A, p. 6. The IRS's correspondence is clearly not a final determination of Stevenson's status for purposes of federal employment taxes, which could come about only through some later and more formal audit proceeding. The IRS's correspondence, therefore, cannot have a preclusive effect on Stevenson's status under the FLSA.

The DUA determination at issue is only preliminary and is presently the subject of an administrative appeal. The agency's correspondence invites the parties to request a full hearing

-6-

on its initial determination.[4] NHCS has submitted a timely notice of its appeal of the DUA's preliminary findings, and the agency is in the process of scheduling an appeal hearing.[5] *See* Exhibit C. It is, therefore, clear that the DUA determination on which Stevenson relies is not final and cannot have a preclusive effect on her status for purposes of the FLSA in the proceedings before this Court.

### IV. Even if Stevenson Were An Employee of NHCS, She Cannot Establish FLSA Liability as a Matter of Law

As noted in NHCS's response to Stevenson's first motion for summary judgment, Stevenson is not entitled to judgment in this matter because the School has asserted other complete defenses to her FLSA claims that Stevenson's motion does not address. Among the School's affirmative defenses in this matter, NHCS has asserted that, even if Stevenson had been an employee of the School, she was not entitled to overtime pay because she was subject to the FLSA's white collar exemptions. *See* 29 U.S.C. § 213(a)(1) (FLSA's overtime pay provisions inapplicable to individuals employed in bona fide executive, administrative, or professional capacity). In order to prevail on her motion for summary judgment as to liability, Stevenson must show that NHCS has no reasonable expectation of establishing this defense. *See, e.g., Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997). Stevenson cannot meet this burden at this stage of the litigation because the parties have taken no discovery whatsoever in this matter that would allow her to proffer evidence as to her putative job duties as an alleged employee of the School. Therefore, Stevenson cannot establish that she is owed overtime pay as a matter of law.

---

[4] The DUA's determination states that either party may "REQUEST IN WRITING THAT THE DIRECTOR GRANT A HEARING FOR THE PURPOSE OF RECONSIDERING THE FACTS SUBMITTED AND TO CONSIDER ANY ADDITIONAL INFORMATION." Exhibit B.

[5] The DUA initially scheduled an appeal hearing for June 2, 2006. The agency has postponed that date and is in the process of rescheduling the hearing.

## CONCLUSION

The prior administrative proceedings on which Stevenson relies cannot be given preclusive effect as to her employee status for purposes of her FLSA claims in this matter. Those proceedings concerned different legal issues, did not include sufficient judicial processes to render a binding determination, and are not final determinations of the respective agencies.

WHEREFORE, Defendant Neighborhood House Charter School request that the Court deny Stevenson's motion for summary judgment in its entirety.

Respectfully submitted,
NEIGHBORHOOD HOUSE CHARTER SCHOOL,

/s/ Barry J. Miller
Lynn A. Kappelman (BBO # 642017)
Barry J. Miller (BBO # 661596)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Telecopier: (617) 946-4801

DATED: June 19, 2006

### CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the Court's ECF system and that a true copy of the above document was served on John W. Davis, Esq., by first class U.S. mail to Davis & Davis, P.C., 77 Franklin St., 3rd Floor, Boston, MA 02110, and on Janice Stevenson by first class U.S. mail to P.O. Box 400372, Cambridge, MA 02140 on June 19, 2006.

/s/ Barry J. Miller
Barry J. Miller

-8-

**Internal Revenue Service**
SB/SE, Compliance
BIRSC, SS-8 Unit

**Department of the Treasury**
40 Lakemont Road
Newport, VT 05855-1555

**December 29, 2005**

Kevin Andrews, Headmaster
Neighborhood House Charter School
197A Centre Street
Dorchester, MA 02124-2331-976

Form: SS-8

Person to Contact:
Laramie Bliven, #03-00292

Telephone Number: 802-751-4424
Facsimile Number: 802-751-4455

Refer Reply to: Case # 41957

Dear Mr. Andrews:

This is in response to a Form SS-8 that was submitted to request a determination of employment status for Federal employment tax purposes, between Neighborhood House Charter School, hereafter referred to as the school, and Janice W. Stevenson, hereafter referred to as the worker, for services performed in 2004 and 2005.

We hold the worker to have been an employee of the school. In the rest of this letter, we will explain the facts, law, and rationale that form the basis for this finding.

Information submitted indicated that the school is a nonprofit public charter school that serves children in grades pre-kindergarten to eighth grade. The worker was initially engaged by the school to provide the processing of grant applications but shortly thereafter her role expanded to cover more general accounting and administrative tasks including human resources, payroll, and employee benefits. Prior to this arrangement, the worker performed accounting and administrative duties for the school through an employment agency. The school publicly posted a job for a grants manager. The worker expressed an interest in the position and the school agreed to retain her so she ended her relationship with the employment agency. The school stated that the worker insisted that she be retained and paid through her own company as an independent contractor. The worker disagreed and said that the school encouraged her to open a business that included a website for validity as the services she was going to provide would be treated as contracted services. The worker acknowledged she agreed with this arrangement and felt that this might be something she could develop for her future. The school stated that the arrangement with the worker was temporary.

The worker received her assignments from the Dean of Administration. The school utilized her expertise and only minimal oversight was needed. The worker was required

to act in accordance with the decisions of the Dean and reported to him with any problems that occurred. The worker was sent by the school to conferences and seminars and was also trained in the payroll system used. She was responsible for providing many internal reports that were used by the school's staff. She worked a substantially full-time schedule at the school's location. The school stated that she also occasionally performed services from her home. The worker performed her services personally and attended staff meetings when it related to finance or human resource matters.

All materials and supplies the worker needed at the school were provided. The worker was reimbursed for incidental expenses she incurred for the school. She incurred no other expenses. The worker was paid a set weekly amount by the school. She submitted invoices for her services which were approved by the Dean of Administration before payment was issued. The checks were issued to the worker under her business name. The worker did not receive any benefits although the school stated she was allowed some flexibility in her schedule. The school further stated in its response that the Dean and the worker colloquially referred to the flexibility as "vacation and sick time". The worker had a website that advertised her company. She stated that this was done upon the request of the school to legitimize her business presence. The school said she did this on her own and the school just utilized the services she was offering to the public. No other evidence of advertising was submitted. The website is no longer available. The worker performed her services full-time for the firm and stated she did not have time to perform any services for others. Either party could have terminated the relationship without liability.

Section 3121(d)(2) of the Internal Revenue Code provides that the term "employee" means any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of employee.

The question of whether an individual is an independent contractor or an employee is one of fact to be determined upon consideration of the facts and the application of the law and regulations in a particular case. Guides for determining the existence of that status are found in three substantially similar sections of the Treasury Regulations. They are sections 31.3121(d)-1, 31.3306(i)-1, and 31.3401(c)-1 relating to the Federal Insurance Contributions Act (FICA), the Federal Unemployment Tax Act (FUTA), and Federal income tax withholding on wages at source, respectively.

Section 31.3121(d)-1(c)(2) of the regulations provides that generally, the relationship of employer and employee exists when the person for whom the services are performed has the right to control and direct the individual who performs the services not only as to the results to be accomplished by the work, but also as to the details and means by which the result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done, but also as to how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which services are performed; it is sufficient if he or she has the right to do so. In general, if an individual is subject to the control or direction of another merely as

to the result to be accomplished and not as to the means and methods for accomplishing the result, he or she is an independent contractor.

In determining whether an individual is an employee or an independent contractor under the common law, all evidence of both control and lack of control or autonomy must be considered. In doing so, one must examine the relationship of the worker and the business. Facts that illustrate whether there is a right to direct or control how the worker performs the specific tasks for which he or she is hired, whether there is a right to direct or control how the financial aspects of the worker's activities are conducted, and how the parties perceive their relationship provide evidence of the degree of control and autonomy.

Section 31.3121(d)-1(a)(3) of the regulations provides that if the relationship of an employer and employee exists, the designation or description of the parties as anything other than that of employer and employee is immaterial. Thus, if an employer-employee relationship exists, any contractual designation of the employee as a partner, coadventurer, agent, or independent contractor must be disregarded.

We have applied the law, regulations, and principles as cited above to the information submitted. As is the case in almost all worker classification cases, some facts point to an employment relationship while other facts indicate independent contractor status. The determination of the worker's status, therefore, rests on the weight given to the factors under the common law, keeping in mind that no one factor is determinative of a worker's status. The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed. In weighing the evidence, careful consideration has been given to the factors outlined below.

Under the common law, the relationship of employer and employee exists when the person for whom the services are performed has the right to control not only what is done, but also how it is done. Evidence of control generally falls into three categories: behavioral controls, financial controls, and relationship of the parties, which are collectively referred to as the categories of evidence.

Factors that illustrate whether there is a right to control how a worker performs a task include training and instructions. In this case, the school retained the right to change the worker's methods and to direct the worker to the extent necessary to protect its financial investment. A worker who is required to comply with another person's instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the right to require compliance with instructions. Some employees may work without receiving instructions because they are highly proficient and conscientious workers or because the duties are so simple or familiar to them. Furthermore, the instructions that show how to reach the desired results may have been oral and given only once at the beginning of the relationship. See, for example, Revenue Ruling 68-598, 1968-2 C.B. 464, and Rev. Rul. 66-381, 1966-2 C.B. 449. The worker was provided with training and given daily instruction by the school. The worker performed

her services personally and devoted substantially full-time to the school and, therefore, was restricted from doing other gainful work. She received her assignments from the Dean of Administration and reported to him with any problems she encountered. These factors show that the school exercised its right to direct and control the worker in the performance of her services.

Factors that illustrate whether there is a right to direct and control the financial aspects of the worker's activities include significant investment, unreimbursed expenses, the methods of payment, and the opportunity for profit or loss. In this case, the worker did not invest capital or assume business risks, and therefore, did not have the opportunity to realize a profit or incur a loss as a result of her services. A person who can realize a profit or suffer a loss as a result of his or her services is generally an independent contractor, while the person who cannot is an employee. See Rev. Rul. 70-309, 1970-1 C.B. 199. "Profit or loss" implies the use of capital by a person in an independent business of his or her own. The risk that a worker will not receive payment for his or her services, however, is common to both independent contractors and employees and, thus, does not constitute a sufficient economic risk to support treatment as an independent contractor. If a worker loses payment from the firm's customer for poor work, the firm shares the risk of such loss. Control of the firm over the worker would be necessary in order to reduce the risk of financial loss to the firm. The opportunity for higher earnings or of gain or loss from a commission arrangement is not considered profit or loss. The school provided all the materials and supplies the worker needed to perform her services. She was reimbursed both incidental expenses that she incurred and for the purchase of any supplies for the school. The worker received a set weekly amount from the school for the services she performed. These factors show the school maintained financial control over the worker.

Factors that illustrate how the parties perceive their relationship include the intent of the parties as expressed in written contracts; the provision of, or lack of employee benefits; the right of the parties to terminate the relationship; the permanency of the relationship; and whether the services performed are part of the service recipient's regular business activities. In this case, the worker was not engaged in an independent enterprise, but rather the services performed by the worker were a necessary and integral part of the school. Both parties retained the right to terminate the work relationship at any time without incurring a liability. Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business. The worker's administrative services were a necessary part of keeping the school operational. While the worker performed her services she was under the complete direction and control of the school.

In evaluating the facts in this case, it is clear that the worker performed services in a manner consistent with an employer-employee relationship. Applying the law, regulations, and principles set forth in various revenue rulings and court cases noted

above, as well as the categories of evidence outlined above, we conclude that the worker was an employee of the school for Federal employment tax purposes, and not an independent contractor engaged in her own trade or business. Although there was evidence submitted to suggest the worker had a business of her own, she did not perform any services of an independent nature for the school.

Many religious, charitable, educational, or other nonprofit organizations are exempt from Federal income tax. However, they must withhold Federal income tax from their employees' pay and report each employee's compensation on Form W-2. If an employee is paid $100 or more during a calendar year, his/her wages are also subject to FICA taxes (social security and Medicare). Payments for services performed by an employee of a nonprofit organization described in section 501(c)(3) are not subject to FUTA taxes.

Section 530 of the 1978 Revenue Act established a safe haven from an employer's liability for employment taxes arising from an employment relationship. This relief may be available to employers who have misclassified workers if they meet certain criteria. This is explained more fully in the enclosed fact sheet.

If you think you are not eligible for section 530 relief, section 3509 of the Code provides that if an employer fails to deduct and withhold any tax under chapter 24 (income tax withholding) or subchapter A of Chapter 21 (employee portion of FICA tax) with respect to any employee by reason of treating an employee as not being an employee, the employer's liability is 1.5 percent of the employee's wages plus 20 percent of the **employee's** portion of the FICA tax. The employer's liability is doubled in cases where the employer failed to meet the reporting requirements of sections 6041(a) or 6051 consistent with the treatment of the employees as independent contractors. You must pay the full amount of the **employer's** share of FICA taxes.

Section 3509(c) provides that the reduced rates of section 3509 do not apply in cases of an employer's intentional disregard of the requirement to deduct and withhold such tax.

This determination is based on the application of law to the information presented to us and/or discovered by us during the course of our investigation; however, we are not in a position to personally judge the validity of the information submitted. This ruling is directed only to the taxpayer to whom it is addressed, however, it may be applicable to any other individuals engaged by the firm under similar circumstances. Section 6110(k)(3) of the Code provides it may not be used or cited as precedent.

You are responsible for complying with this determination by filing/amending your employment tax returns accordingly. You will not be receiving a bill from this office. Your immediate handling of this correction and your prompt payment of the tax may reduce any related interest and penalties. For information regarding your tax liabilities, your eligibility for section 3509 rates, and instructions concerning the filing/amendment of your employment tax returns, please see the enclosed Information Guide,

"Frequently Asked Questions When IRS Reclassifies Workers as Employees." However, if you deem that your firm would meet the criteria for section 530 relief as outlined in the enclosure, and you do not want to jeopardize this potential relief for any tax periods, both prior and future, you should NOT amend your returns at this time. Alternatively, you may abide by this determination and reclassify your worker to employee status now, from this time forward, without jeopardizing any relief for prior tax periods, if qualified. Note that once you begin treating a worker in this class as an employee, section 530 relief will not be available to you for any future periods for this class of workers.

If you need further assistance in filing/amending your employment tax returns due to the reclassification of your worker, please call the IRS help line at 1-800-829-4933. Call 1-866-455-7438 for assistance in preparing or correcting Forms W-2, W-3, 1099, 1096, or other information returns.

Internal Revenue Code section 7436 concerns reclassifications of worker status that occur during IRS examinations. As this determination is not related to an IRS audit, it does not constitute a notice of determination under the provisions of section 7436.

Sincerely,

*Peggy D'Amico*
Peggy D'Amico
Operations Manager

Enclosures:  Section 530 Fact Sheet
            Notice of IRS Compliance Expectations
            Information Guide
            Forms: 941 and 941c
            2004: 1099-MISC, 1096, W-2, W-3
*To order forms and publications, please call 1-800-TAX-FORM or visit us online at www.irs.gov.

cc: Janice W. Stevenson

Letter 3711(CG) (Rev. 9-2003)
Catalog Number 36629P

2006 WED 14:01 FAX                                                                                          002/002



THE COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF WORKFORCE DEVELOPMENT
DIVISION OF UNEMPLOYMENT ASSISTANCE

JANE C. EDMONDS
DIRECTOR, DEPARTMENT OF
WORKFORCE DEVELOPMENT

EDWARD T. MALMBORG
ACTING DIRECTOR

**MITT ROMNEY**
GOVERNOR

**KERRY HEALEY**
LT. GOVERNOR

Neighborhood House Charter School
21 Queen Street
Dorchester, MA   02124

April 20, 2006
Status Determination Unit
Telephone: 617.626.5050
Employer #:78-506380

Dear Employer:

Based on information received by this Division, it has been determined that the services performed by:
      Name: Janice W. Stevenson     sS# 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

And others similarly employed, <u>does</u> constitute "employment" within the meaning of Section 2 of the Massachusetts Unemployment Insurance Law. It appears that you retained sufficient right to direct and control the performance of services to make her your employee and not an independent contractor.

Therefore, you are required to report her wages and pay contributions thereon. Forms 0735 for this purpose are enclosed.

**THIS DETERMINATION IS FINAL UNLESS, WITHIN TEN DAYS, AFTER DATE SHOWN ON THIS LETTER, YOU REQUEST IN WRITING THAT THE DIRECTOR GRANT A HEARING FOR THE PURPOSE OF RECONSIDERING THE FACTS SUBMITTED AND TO CONSIDER ANY ADDITIONAL INFORMATION.**

You are further advised that this determination applies only to your liability under the Massachusetts Unemployment Insurance Law. It has no bearing on your obligation under any other law, federal or state.

Please feel free to call me if you require any additional information at (617) 626-5026.

Sincerely,

*[signature]*

Stephen Chawner, Status Analyst
*Contributions Department*

Enc:0735 ( )
(1893)

CHARLES F. HURLEY BUILDING • 19 STANIFORD STREET • GOVERNMENT CENTER • BOSTON, MA 02114

GREATER BOSTON REGION
CHARLES F. HURLEY BUILDING
BOSTON, MA.          02114
617-626-6561
TDD 1-800-438-0471
FAX 617-727-9329

Massachusetts Department of
Hearings Department
**Workforce**
*Development*
Division of Unemployment Assistance

Date Mailed: 05/20/06

## NOTICE OF HEARING

*APPEAL NOTICE*OPEN IMMEDIATELY*

NEIGHBOR HOUSE CHARTER SCHOOL
21 QUEEN ST.

DORCHESTER          MA 02124-0000

EMPLOYER: 78506380
NEIGHBOR HOUSE CHARTER SCHOOL
21 QUEEN ST.
DORCHESTER      MA 021240000

CLAIMANT: 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
JANICE     W STEVENSON
P.O. BOX 400372
CAMBRIDGE        MA 021400000

The **EMPLOYER** has appealed a determination issued on 04/20/06.

A HEARING is now scheduled:                                    DOCKET NUMBER: 441582

LOCATION*:   D.U.A. HEARINGS DEPARTMENT
             HURLEY BUILDING, FIRST FLOOR
             19 STANIFORD STREET
             BOSTON

DATE: 06/02/06                    TIME: 11:00 AM EASTERN TIME

* * * ALL VISITORS TO THE HURLEY BUILDING MUST HAVE A PHOTO I.D. * * *
POSTPONEMENT REQUEST DEADLINE: 05/26/06

The ISSUES to be heard are whether:

*THE CLAIMANT PERFORMED SERVICES AS AN EMPLOYEE AND SUCH SERVICES CONSTITUTE EMPLOYMENT.
MGL 151A, S. 2

SPECIAL MESSAGES:
*PLEASE NOTIFY ANY REPRESENTATIVES AND/OR WITNESSES THAT YOU WISH TO HAVE PRESENT.
*ARRIVING AFTER 10 MINUTES RESULTS IN DEFAULT/DISMISSAL. COME EARLY TO RVIEW EXHIBITS.
*TIME ALLOWED FOR HEARING IS ONE HOUR.

*DIRECTIONS TO LOCATION OF HEARING:

FROM NORTH,SOUTH: 93 S. EXIT 26A (LEVERETT CONNECTOR), 93 N. EXIT 26, FOLLOW SIGNS TO
NORTH STATION. AT STANIFORD/CAUSEWAY ST. LIGHTS (FRIDAY'S) TURN RIGHT. 19 ON LEFT.
FROM WEST: MA PIKE TO ALLSTON/CAMBRIDGE EXIT, SIGNS TO STORROW DR. TAKE GOV'T CTR EXIT,
STRAIGHT TO CAMBRIDGE ST. LEFT AT OLD WEST CHURCH. 19 ON RIGHT. VERY LIMITED PARKING.
BY "T" LINES: GREEN-GOV'T CTR. BLUE-BOWDOIN, ORANGE-NORTH STATION, RED-CHARLES.
BY COMMUTER RAIL TO NORTH STATION.

*Commonwealth of Massachusetts*
Form 3702-M Rev. 02-22-06

(over)

GREATER BOSTON REGIONAL OFFICE
CHARLES F. HURLEY BUILDING
19 STANIFORD STREET
BOSTON, MA.            02114

   PHONE: 617-626-6561
     TDD: 1-800-438-0471
MAIL DATE:     05/18/06

**Massachusetts Department of**
**Workforce**
*Development*
Division of Unemployment Assistance

Hearings Department                    47

*APPEAL NOTICE\*OPEN IMMEDIATELY*

NEIGHBOR HOUSE CHARTER SCHOOL
21 QUEEN ST.

DORCHESTER          MA
02124-0000

## HEARINGS DEPARTMENT

## APPEAL ACKNOWLEDGEMENT

Docket Number:   441582

SSN:   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

Appeal Filed:   04/28/06

Appellant:   NEIGHBOR HOUSE CHARTER SCHOOL

Employer:   NEIGHBOR HOUSE CHARTER SCHOOL

Claimant:   JANICE W STEVENSON

Your appeal has been received by the Hearings Department. A hearing will be scheduled as soon as possible and you will be notified of the date, place, and time of the hearing.

YOU MUST BEGIN PREPARATION FOR THE UPCOMING HEARING NOW.

It is important that you read the enclosed materials, which describe your rights and responsibilities in the hearing process.

*Commonwealth of Massachusetts*
Form 3712 Rev. 2-22-06

Regional Hearings Office
GREATER BOSTON REGIONAL OFFICE
CHARLES F. HURLEY BUILDING
BOSTON, MA.                02114
617-626-6561
TDD 1-800-438-0471

**Massachusetts Department of**
**Workforce**
**Development**
Division of Unemployment Assistance

**Hearings Department**

## NOTICE OF POSTPONEMENT

*APPEAL NOTICE\*OPEN IMMEDIATELY*

SEYFARTH SHAW LLP
ATTN: BARRY J. MILLER
TWO SEAPORT LANE   SUITE 300
BOSTON              MA
02210-2028

```
         SSN:            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
DOCKET NUMBER:           441582
     CLAIMANT:           JANICE    W STEVENSON
     EMPLOYER:           NEIGHBOR HOUSE CHARTER SCHOOL
 HEARING DATE:           06/02/06
         TIME:           11:00
        PLACE:           BOSTON
  DATE MAILED:           05/25/06
```

THIS NOTICE IS TO INFORM YOU THAT THE ABOVE SCHEDULED HEARING WAS POSTPONED ON 05/25/06 AT THE REQUEST OF THE     EMPLOYER   . YOU WILL BE NOTIFIED OF THE DATE, PLACE, AND TIME OF THE NEW HEARING. PLEASE CALL 1-617-626-6561 FOR INQUIRIES REGARDING THE SCHEDULING OF YOUR UPCOMING HEARING.

---

**IMPORTANT**
This notice contains information about your rights or obligations, and should be translated immediately. If you need a translator, ask for a listing of translation services at your DUA office.

**ВАЖНОЕ СООБЩЕНИЕ**
В этом сообщении содержится информация о Ваших правах и обязанностях, и оно должно быть срочно переведено Вам. Если Вам нужен переводчик, попросите список переводческих компаний в своем DUA офисе.

**IMPORTANTE**
Este aviso incluye información sobre sus derechos y obligaciones, y debe traducirse de inmediato. Si necesita un traductor, solicite el listado de servicios de traducción en la oficina de la DUA correspondiente.

**IMPORTANTE**
Questo avviso contiene informazioni sui Suoi diritti ed obblighi e deve essere tradotto immediatamente. Se ha bisogno di un traduttore, chieda l'elenco dei servizi di traduzione presso la DUA.

**IMPORTANTE**
Este comunicado contém informações sobre os seus direitos ou obrigações. Ele deve ser traduzido prontamente. Se precisar de um tradutor, solicite no escritório DUA mais próximo uma lista dos serviços de tradução.

**ສຳຄັນ**
ຫນັງສືແຈ້ງນີ້ມີຂໍ້ມູນກ່ຽວກັບສິດຫຼືຂໍ້ຜູກພັນຂອງທ່ານ, ແລະ ຄວນຈະແປເປັນພາສາຂອງທ່ານທັນທີ. ຖ້າທ່ານຕ້ອງການນາຍແປພາສາ, ໃຫ້ຂໍລາຍການບໍລິການແປພາສາຈາກຫ້ອງການ DUA ຂອງທ່ານ.

**ប្រយ័ត្ន**
សេចក្តីជូនដំណឹង: មានព័ត៌មានអំពីសិទ្ធិ ឬ កាតព្វកិច្ចរបស់អ្នក។ សូមបកប្រែភ្លាមៗ។ បើអ្នកត្រូវការអ្នកបកប្រែ សូមសុំបញ្ជីឈ្មោះសេវាបកប្រែនៅការិយាល័យ DUA របស់អ្នក។

**ENPÒTAN**
Nòt sa a genyen enfòmasyon sou dwa w oubyen obligasyon ke ou genyen, epi ou fèt pou ou fè tradwi l konnyè a. Si ou bezwen on moun ki pou tradwi pou ou, mande on lis ki genyen sèvis ke yo ofri pou tradiksyon nan biwo DUA ke ou konn ale a.

**QUAN TRỌNG**
Thông báo này bao gồm thông tin về quyền hạn hoặc trách nhiệm của quý vị và phải được thông dịch ngay. Nếu cần một thông dịch viên, hãy yêu cầu một danh sách dịch vụ thông dịch tại văn phòng DUA của quý vị.

**重要**
本通知包含有關閣下權利或義務的資訊, 應即刻翻譯。如果閣下需要翻譯人員, 請到閣下的DUA辦事處要求一份翻譯社的名單。

---

*Commonwealth of Massachusetts*
Form 3703 Rev. 02-22-06

17