# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANICE STEVENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO.  05-CV-11584-DPW |
| | ) |
| NEIGHBORHOOD HOUSE CHARTER | ) |
| SCHOOL, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S MEMORANDUM REGARDING
## ANCILLARY ADMINISTRATIVE PROCEEDINGS

Defendant Neighborhood House Charter School ("NHCS" or the "School") hereby

submits the following list of state and federal administrative proceedings to which Plaintiff

Stevenson ("Plaintiff" or "Stevenson") and the School are (or were) parties, pursuant to the

Court's instructions at the hearing in this matter on June 1, 2006, and the Court's June 2, 2006

minute order.  As explained below, none of these administrative proceedings have any bearing

on the claims Plaintiff has asserted in the case now pending before the Court.

Defendant states that, to its knowledge, Plaintiff has initiated the following administrative

proceedings against the School:

**I.    Stevenson's filing with the U.S. Department of Labor's Occupational Safety and Health Administration**

On or about June 30, 2005, Stevenson filed a Charge against NHCS with the U.S.

Department of Labor's Occupational Safety and Health Administration ("OSHA") alleging that

the School had violated Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1514A,

("SOX"), which protects certain types of whistleblowing activity by employees of publicly

traded companies.  In her Charge, Stevenson alleged that she had been an employee of NHCS

and that her employment had been terminated because she had made internal complaints about one of the School's Deans using an NHCS debit card to buy materials for the School in a manner she disagreed with and her expression of other concerns about petty cash handling procedures at the School.  A copy of Ms. Stevenson's OSHA Charge is attached as Exhibit A.

On July 8, 2005, OSHA dismissed Stevenson's Charge *sua sponte*, explaining that SOX is applicable only to publicly traded companies and not to a small, non-profit charter school like NHCS.  Having found that Stevenson's claim was outside the scope of the statue, OSHA did not reach any of the factual allegations raised in her Charge.  A copy of OSHA's initial dismissal of Stevenson's Charge is attached  as Exhibit B.

On or about July 24, 2005, Stevenson filed a document captioned "Objections to the Findings and the Preliminary Order and Request for Hearing," seeking review of OSHA's dismissal of her claim by an Administrative Law Judge ("ALJ").  A copy of Stevenson's filing is attached as Exhibit C.  NHCS filed a Motion to Dismiss Stevenson's claim with the ALJ on August 15, 2005, again arguing that SOX facially does not apply to the likes of a non-profit charter school and that, even if the statute applied, the allegations in Stevenson's Charge would not constitute a violation of the statute.  A copy of the Schools' Motion to Dismiss is attached as Exhibit D.  On September 7, 2005, the ALJ issued a decision dismissing Stevenson's SOX claims on the grounds that the statute does not apply to the School.  A copy of the ALJ's decision is attached as Exhibit E,

Stevenson filed a Petition for Review of the ALJ's decision with the Department of Labor's Administrative Review Board ("ARB") on or about September 11, 2005.  A copy of Stevenson's petition is attached as Exhibit F.  The ARB established a briefing schedule for Stevenson's appeal, which required her to submit an initial brief on or before October 24, 2005.

A copy of the ARB scheduling notice is attached as Exhibit G.  Stevenson failed to file a brief by the date that ARB established, and her appeal was dismissed.[1]  A copy of the ARB's Final Decision and Order Dismissing Appeal is attached as Exhibit H.

## II. Stevenson's filing with the Internal Revenue Service

Stevenson filed a Form SS-8 with the Internal Revenue Service ("IRS"), seeking an advisory determination of her status for purposes of federal employment taxes and income tax withholding.[2]  At the IRS's request, NHCS provided information and documentation pertaining to Stevenson's independent contractor status to the agency.  A copy of NHCS's submission to the IRS is attached as Exhibit J.

On December 29, 2005, an Operations Manager from a subdivision of the IRS issued a letter in response to Stevenson's Form SS-8.  A copy of the IRS's letter is attached as Exhibit K.  The letter stated the IRS's finding, based only on the limited documentary evidence submitted to it, that the services Stevenson provided to NHCS constituted employment for purposes of federal income tax withholding law.  *See* Exhibit K, p. 5 ("This determination is based on the application of law to the information presented to us . . .; however, we are not in a position to personally judge the validity of the information submitted.").  The letter also expressly noted that the IRS's determination did not constitute a binding audit, that NHCS was not required to amend its federal tax filings, and that the School would not receive a bill for back taxes as a result of the IRS's determination.  *See* Exhibit K, pp. 5-6.

---

[1] After her deadline had passed, Stevenson filed a request for an extension of time in which to file her initial brief with ARB, a copy of which is attached as Exhibit I.  In its ultimate dismissal of her claim, the agency explained that Stevenson's late-filed request for an extension provided no adequate justification for her failure to file a brief.  See Exhibit H, pp. 2-3.

[2] NHCS understands that Stevenson also may have made attempted to file some type of claim against the School with the U.S. Department of Labor's Employee Benefits Security Administration ("EBSA").  NHCS was informed that an employee of EBSA told Stevenson that she had no claim that was within the agency's purview and referred her to the IRS.

BO1 15783293.1

The IRS's administrative procedures provide no avenue by which to appeal the agency's response to Stevenson's Form SS-8. The IRS's administrative proceedings relating Stevenson's Form SS-8 filing are, therefore, terminated.

### III. Stevenson's filing with the Massachusetts Division of Unemployment Assistance

On or about April 6, 2006, the Massachusetts Department of Workplace Development Division of Unemployment Assistance ("DUA"), issued a request for information to NHCS pertaining to services that Stevenson performed for the School. A copy of DUA's request is attached as Exhibit L. NHCS responded to DUA's request for information on or about April 17, 2006. A copy of NHCS's response is attached at Exhibit M. On or about April 20, 2006, DUA issued a preliminary determination that, based on the documentary evidence submitted to the agency, the services that Stevenson performed for NHCS constituted employment for purposes of the state's unemployment insurance scheme as set forth in Mass. Gen. Laws ch. 151A, § 2. The DUA's determination includes a notification of the School's right to appeal DUA's findings and states, "this determination applies only to [NHCS's] liability under the Massachusetts Unemployment Insurance law. It has no bearing on [NHCS's] obligation under any other law, federal or state." A copy of DUA's initial determination is attached as Exhibit N.

NHCS timely appealed DUA's preliminary determination, and the agency scheduled an appeal hearing for June 2, 2006. A copy of a notice of the appeal hearing is attached as Exhibit O. The DUA subsequently postponed the hearing, and is currently in the process of rescheduling it. A copy of a notice of the postponement and rescheduling is attached as Exhibit P.

### CONCLUSION

None of Stevenson's administrative filings against the School have any bearing on the claims she has asserted in the case pending before the Court. Two of those administrative

proceedings are final; Stevenson's filing with OSHA has been conclusively dismissed, and no

further action is forthcoming on the advisory determination that the IRS issued in response to her

inquiry.  Moreover, none of the administrative proceedings that Stevenson has initiated against

the School have any bearing on the legal issues presented by her Complaint in this matter.

Though her filings with the IRS and DUA nominally relate to whether or not Stevenson was an

"employee" of NHCS, both proceedings involve definitions of the term "employee" under

entirely different statutes than those on which she relies in this case.

<div style="margin-left:50%">

Respectfully submitted,
NEIGHBORHOOD HOUSE CHARTER
SCHOOL,

_____/s/ Barry J. Miller_____
Lynn A. Kappelman (BBO # 642017)
Barry J. Miller (BBO # 661596)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Telecopier:    (617) 946-4801

</div>

DATED:  June 19, 2006

---

<div style="border:1px solid">

### CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the Court's ECF system
and that a true copy of the above document was served
on John W. Davis, Esq., by first class U.S. mail to Davis & Davis, P.C., 77
Franklin St., 3rd Floor, Boston, MA 02110, and on Janice Stevenson by first
class U.S. mail to P.O. Box 400372, Cambridge, MA 02140 on June 19, 2006.

_____/s/ Barry J. Miller_____
Barry J. Miller

</div>

BO1 15783293.1

# Tab A

2005-07-01 03:51:50 (GMT)

14136387997  From: Janice Stevenson

June 30, 2005
P. Box 400372
Cambridge, MA 02140

Occupational Safety & Health Administration
Regional Office
JFK Federal Building, Room E340
Boston, Massachusetts 02203
(617) 565-9860
(617) 565-9827 FAX

Sarbanes-Oxley Act of 2002 Section 806 Complaint

This is a complaint pursuant to Section 806 of the Sarbanes-Oxley Act of 2002.

## (1): complainant engaged in a protected activity

On May 27, 2005, I reported suspected fraudulent financial activity by the Dean of Administration of the Neighborhood House Charter School, Jagdish Chokshi, to Robert Melzer, a member of the Board finance committee and Vice President of the Board of Trustees.

The specific complaint to Vice President Robert Melzer is:

Dean Chokshi's illegal use of petty cash

1. Specifically, paying Ms. Lynn Clark, an intern, $20 hours from petty cash starting approximately April 11, 2005. Dean Chokshi told me about the payments personally.

   As of June 3, 2005, petty cash cannot be accounted for: there are no written procedures or policies for the finance office. The finance department was not structured to keep certain responsibilities separate to prevent confusion and fraud.

   Both Genevieve Davis, another consultant hired by NHCS', and myself had noted the lack of documentation of petty cash.

Dean Chokshi's

2. inappropriate use of NHCS' ATM/Credit card on or around March 2005 through approximately May 2005.

Occupational Safety & Health Administration            2.            June 30, 2005

### (2): complainant was subjected to adverse action

I thought my suspected fraudulent financial activity complaint was anonymous but somehow Dean Chokshi found out about my complaint when he returned from a personal trip on June 1, 2005. On June 3, 2005, the Dean Jagdish Chokshi terminated me.

### (3) respondent was aware of the protected activity when it took the adverse action

The charter school legislation imposes certain duties on the Board of Trustees, including the hiring and dismissal of staff and the oversight of the management of the charter school. Even if there is the allocation of powers, the Board of Trustees is ultimately responsible for the management and control of the charter school. Robert Melzer and the Board of Trustees were aware of my complaint on June 3, 2005 when I was terminated. Through an attorney, the Board threatened to sue me if I did "not immediately cease" my complaining of my termination for reporting suspected financial fraudulent activity of Dean Chokshi.

During my thirteen-month employment, the Board of Trustees had no procedure for the receipt, retention and treatment of complaints… regarding accounting, internal accounting controls or auditing matters," including anonymous employee reports. In addition, the Board of Trustees failed to adopt policies and procedures to prevent retaliation against employees who report problems or raise questions regarding financial affairs.

### (4) the evidence is sufficient to raise a reasonable inference that the protected activity was the likely reason for the adverse action.

I worked for this employer [TIN 04-3288541] from May 2004 to June 2005. There have been no previous written warnings and/or written negative evaluations of me by Dean Chokshi. The catalyst for my termination is my complaint of suspected fraudulent financial activity of Dean Jagdish Chokshi to Mr. Melzer.

To this day, I have not received any notice of an investigation or status of my complaint of suspected fraudulent financial activity of Dean Jagdish Chokshi by Mr. Melzer or the Board of Trustees of the Neighborhood House Charter School.

I can provide additional evidence as required. Please do not hesitate to contact me any time or use my name as needed to any investigation or inquiry.

Sincerely,

*Janice W. Stevenson*

Janice Wilson Stevenson
617-721-2638 – p
413-638-7997 – f, v
jstevenson@tucknt.com

# Tab B

**U.S. Department of Labor**   Occupational Safety and Health Administ
J.F.K. Federal Building, Room E340
Boston, MA  02203
Telephone  (617) 565-9860
Fax          (617) 565-9827



**Reply to the Attention of:**  /OSHA/BOS/EPTS

July 8, 2005

Janice W. Stevenson
P.O. Box 400372
Cambridge, MA 02140

Re:   Neighborhood House Charter School//Stevenson/1-1270-05-013

Dear Ms. Stevenson:

This letter will acknowledge receipt of your complaint against Neighborhood House Charter School alleging violations of Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1514A, et seq., also known as the Sarbanes-Oxley Act.  Your complaint was received in the Boston Regional Office on July 1, 2005.

The Act requires the Secretary of Labor to notify the party named in the complaint about the filing of the complaint. We are providing the named party (Neighborhood House Charter School) with a copy of your complaint and information concerning the Occupational Safety and Health Administration's responsibilities under the law.  Enclosed is a copy of the pertinent section of the Act and a copy of the investigative regulations, 29 C.F.R. Part 1980, for your information.

Section 806 of the Sarbanes Oxley Act provides protection for employees of publicly traded companies. It specifically states that, "No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 781), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 780(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee." Because Neighborhood House Charter School neither has securities registered under section 12 nor is a company required to file reports under section 15(d) of the Securities Exchange Act of 1934, it is not subject to the provisions of 18 U.S.C. Section 1514A of the Sarbanes-Oxley Act.

Therefore, the Secretary of Labor, acting through her agent, the Regional Administrator for the Occupational Safety and Health Administration, Region 1, finds that since Respondent is not subject to the provisions of the Sarbanes Oxley Act, the U.S. Department of Labor/OSHA has no jurisdiction in this matter. Accordingly, we are declining to investigate this complaint and it is hereby dismissed.

If you wish to appeal the above findings, you have the right to a formal hearing on the record. To exercise this right you must, **within five (5) business days of receipt of this letter**, file your request for a hearing by facsimile (fax), hand delivery, or overnight/next day delivery mail or telegram to:



www.osha.gov

Beverly Queen, Chief Docket Clerk
Office of Administrative Law Judges
U.S. Department of Labor
Suite 400 North
800 K Street, NW,
Washington, D.C. 20001-8002
(202)693-7300
(202) 693-7365 (FAX)

and to:

Marthe B. Kent
Regional Administrator
USDOL/OSHA
JFK Federal Building, Room E340
Boston, MA 02203

Unless a request for appeal is received by the Administrative Law Judge within the five-day period, this notice of determination will become the Final Order of the Secretary of Labor. Complainant is being advised of the determination in this case and the right to a hearing. A copy of this letter has also been sent to the Chief Administrative Law Judge with your complaint. If you decide to request a hearing, it will also be necessary for you to send copies of the request to Neighborhood House Charter School. After copies of your request are received, appropriate preparations can be made. If you have any questions, please do not hesitate to call Investigator Carole Horowitz at (413) 785-0123.

It should be made clear to all parties that the U.S. Department of Labor does not represent any of the parties in a hearing. The hearing is an adversarial proceeding in which the parties will be allowed an opportunity to present their evidence for the record. The Administrative Law Judge who conducts the hearing will issue a recommended decision to the Secretary based on the evidence, testimony, and arguments presented by the parties at the hearing. The Final Order of the Secretary will then be issued after consideration of the Administrative Law Judge's recommended decision and the record developed at the hearing, and will either provide for appropriate relief or dismiss the complaint.

Sincerely,

Marthe B. Kent
Regional Administrator

Enclosures

cc:   Jagdish Chokshi, Dean, Neighborhood House Charter School
      Chief Administrative Law Judge
      Linda Thompsen, Deputy Director, Division of Enforcement, Securities    Exchange
      Commission

# Tab C

July 24, 2005
P.O. Box 400372
Cambridge, MA  02140


Beverly Queen, Chief Docket Clerk
Office of Administrative Law Judges
U.S. Department of Labor
Suite 400 North
800 K Street, NW,
Washington, D.C. 20001-8002
(202) 693-7300
(202) 693-7365 (FAX)

Objections to the Findings and the Preliminary Order and Request for Hearing

On July 23, 2005, complainant received the attached letter from OSHA.  OSHA states that Neighborhood House Charter School is not subject to the provisions of 18 U.S.C. Section 1514A of the Sarbanes-Oxley Act.  OHSA errs in its literal and narrow interpretation of Section 806 of the Sarbanes Oxley Act.  .  In support thereof, complainant states the following:

1.  This employer meets the criteria as its has a retirement plan having benefit plans which are subject to the Reporting and Disclosure requirements of the Employee Retirement Income Security Act of 1974 ("ERISA").

The whistleblower provisions of the Act apply to any company which has issued a class of securities registered with the Securities and Exchange Commission (SEC) or which is required by the federal securities laws to file reports with the SEC.  In addition, a civil action for violation of the whistleblower provisions of the Act may be filed against any officer, employee, contractor, subcontractor, or agent of any such company.   The amended criminal statutory provisions of the Act are applicable to "anyone," including any employer or individual "who takes any action harmful to any person," including any "interference with the lawful employment or livelihood of the person," for providing "truthful information" to a "law enforcement officer." The new restrictions on executive compensation plans and retirement plans apply to the issuers of equity and other securities under the federal securities laws and to employers having benefit plans which are subject to the Reporting and Disclosure requirements of the Employee Retirement Income Security Act of 1974 ("ERISA").

2.  NHCS has public debt from the issuance of a Qualified Zone Academy Bond (QZAB).  These are **Secure, flexible, ZERO INTEREST 14-year** tax-credit bonds the federal government pays all of the interest.  QZAB can only be issued if the school district secures a private entity partner willing to contribute cash or in-

kind services or materials having an **acceptable present fair market value** as of the date of the QZAB bond issuance of not less than 10% of the net present value of the amount of money borrowed. The monies for this bond were raised from individual donors pledges who bought into this bond as shareholders buy into a company's stock. The **Qualified Buyer"** (bank, insurance company etc.), who is willing to take the debt and a Federal tax credit instead of an interest check, is a usually a public company subject to the Sarbanes-Oxley Act of 2002; this employer provides services to this public company and the Sarbanes-Oxley Act of 2002 has a significant impact on all employment decisions of employer who provide services to public companies.

3. Albeit, individual monies are deposited into the Neighborhood House Charter School Foundation's bank account. However, there is a shared management and function between the foundation and the school. If the original complaint should have included the school's foundation as a Respondent, complainant requests this Honorable Court to permitted the amendment of the complaint under 29 C.F.R. § 18.5(e) and FRCP 15(c).

Two sections of the Sarbanes-Oxley Act of 2002 apply to all companies, public and nonpublic. On May 27, 2005, I reported suspected fraudulent financial activity by the Dean of Administration of the Neighborhood House Charter School, Jagdish Chokshi, to Robert Melzer, a member of the Board finance committee and Vice President of the Board of Trustees. On June 3, I was fired by Dean Jagdish Chokshi when he suspected that I would contact the Board of Trustees regarding his suspicious fraudulent financial activities. Suspicious financial activities that he, in confidence, informed me of.

OSHA never investigated this complaint per procedures and time frames for the handling of discrimination complaints under Title VIII of Sarbanes-Oxley. This failure to investigate has caused complainant to lose intended protections created by this Act. Without such investigation, OSHA's abused its discretion by it determination that Neighborhood House Charter School is not subject to the Act was premature.

Therefore, complainant requests that OSHA's Preliminary Order is reversed and this Honorable Court grant all relief necessary to make the Complainant whole," including (1) reinstatement with all seniority rights, (2) back pay with interest, and (3) any "special damages" incurred, including reasonable attorney fees, expert witness fees and other "litigation costs."

Sincerely,

*Janice W. Stevenson*

Janice Wilson Stevenson

# Tab D

U.S. DEPARTMENT OF LABOR

Case No.: 2005-SOX-00087

In the Matter of:

**JANICE WILSON STEVENSON**

       Complainant

   v.

**NEIGHBORHOOD HOUSE CHARTER SCHOOL**

       Respondent

**RESPONDENT NEIGHBORHOOD HOUSE CHARTER SCHOOL'S MOTION TO DISMISS COMPLAINANT JANICE W. STEVENSON'S APPEAL**

     Respondent Neighborhood House Charter School ("NHCS") hereby moves to dismiss the appeal filed by Complainant Janice Wilson Stevenson ("Stevenson") from an order of the United States Department of Labor, Occupational Safety and Heath Administration's ("OSHA") dismissing Stevenson's complaint and amended complaint on the grounds that NHCS is not subject to the provisions of the Sarbanes-Oxley Act ("SOA") § 806, codified as 18 U.S.C. § 1514A.

**I.   PROCEDURAL HISTORY**

     On or about June 30, 2005, Stevenson filed a complaint pursuant to § 806 of the SOA. See Exhibit A, attached hereto. On July 5, 2005, Stevenson filed an amended complaint. On or about July 8, 2005, a Regional Administrator of OSHA ruled in pertinent part that:

> Because Neighborhood House Charter School neither has securities registered under § 12 nor is a company required to file reports under § 15(d) of the Securities Exchange Act of 1934, it is not subject to the provisions of 18 U.S.C. § 1514A of the Sarbanes-Oxley Act. Therefore . . . [OSHA] finds that since Respondent is not subject to the provisions of the Sarbanes Oxley Act, the U.S. Department of Labor/OSHA has no jurisdiction in this matter. Accordingly, we are declining to investigate this complaint and it is hereby dismissed.

See Exhibit B (emphasis added). On July 24, 2005, Stevenson filed objections to the findings and the preliminary order and requested a hearing. See Exhibit C.

## II.    ARGUMENT

### A.    OSHA Has No Jurisdiction Over Stevenson's Complaint Because NHCS is Not Covered by SOA § 806.

SOA § 806 provides certain whistleblower protection for employees of publicly traded companies, which are defined as any "company with a class of securities registered under § 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l), or that is required to file reports under § 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d))". 18 U.S.C. 1514A(a). NHCS is a charter school organized under and in accordance with Mass. G.L. c. 71 § 89 whose principal business purpose is the education of children from kindergarten through grade 8. NHCS is not a publicly traded company, it does not have any securities registered under § 12 of the Securities Exchange Act and is not required to file reports under § 15(d) of the Securities Exchange Act. See Affidavit of Kevin Andrews ("Andrews Aff.") at ¶¶ 2-4, attached hereto at Exhibit D. Accordingly, NHCS is not subject to the provisions of § 806 and OSHA properly dismissed Stevenson's complaint for lack of jurisdiction.

Stevenson's appeal asserts three arguments to support her contention that this public educational institution is covered by SOA. None of these have any basis in law or logic. First, Stevenson argues that NHCS is covered by SOA § 806 because it maintains an employee retirement plan that is subject to the reporting and disclosure requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"). Whether NHCS is covered by SOA depends solely on whether it meets the definitional requirement of a "publicly traded company", that is, an entity with requirements under § 15(d) of the Securities Exchange Act of 1934. The fact that NHCS has reporting requirements under any other federal law is wholly irrelevant to this inquiry and nothing in the statute or its legislative history suggests otherwise.

Second, Stevenson appears to argue that NHCS is covered by SOA because it raised monies for a bond from individual donor pledges[1] (which individuals she would liken to shareholders of a public company) and because NHCS borrowed money from a bank, which she asserts may be some type of "public" entity. As to the first point, there is nothing in the language of SOA § 806 or in its extensive legislative history that even purports to extend the statute's coverage to private companies simply because they may have private donors. Stevenson's second point is even more farfetched because extending SOA coverage to any person or entity simply because they or it borrow money from a bank would subject potentially every business, and many private citizens individually, to OSHA jurisdiction. This was not the intent of the drafters.

Stevenson's third argument is simply unintelligible. It appears she is arguing that NHCS is subject to SOA merely because it deposits money into a bank account. This contention has no basis in law or logic.

---

[1] Stevenson's contention actually is wrong. Donor pledges on behalf of NHCS were made to NHCS Foundation, an entirely separate legal entity whose primary purpose is to support NHCS.

**B.    Even If The Administrative Law Judge ("ALJ") Were to Find That NHCS Is a "Public Company" for Purposes of SOA § 806, Stevenson's Claims Fail as the Alleged Wrongful "Acts" Do Not Fall Under the Statute and Stevenson Has No Standing to Assert Any Claims.**

SOA § 806 extends protection to a very limited class of complaints. A complainant alleging wrongful acts must prove that she reasonably believed that the respondent violated 18 U.S.C. § 1341 (mail fraud - frauds and swindles), 1343 (mail fraud - fraud by wire, radio or tv), 1344 (mail fraud - bank fraud), 1348 (mail fraud - securities fraud), any rule of the SEC, or any provision of federal law relating to fraud against shareholders. The wrongdoings alleged by Stevenson on their face do not fall under <u>any</u> of these categories.

The wrongful acts alleged by Stevenson are that a manager of NHCS misused $20 in petty cash and inappropriately used NHCS's credit card. At most, these allegations implicate minor internal administrative matters that could never reasonably be deemed to rise to the level of fraud and illegality contemplated by SOA. Moreover, as Stevenson worked in human resources at NHCS and was responsible for payroll and benefits administration, she was well aware that NHCS was not a publicly traded company and had no shareholders, thus she could not have reasonably thought that these acts fell under any SEC rule or any federal law relating to fraud against shareholders (of which there were none). See Exhibit D (Andrews Aff. at ¶ 7). Likewise, she could not have reasonably believed that any mail fraud or securities fraud occurred; if she had, she would have made such allegations with specificity.

In any event, Stevenson has no standing to assert claims under SOA § 806 because she was not an employee of NHCS. 18 U.S.C. § 1514A is "[w]histleblower protection for employees of publicly traded companies". Stevenson's consulting company, TuckNT, was hired by NHCS as an independent contractor. See <u>id.</u> at ¶ 6. Even after she was fired, Stevenson acknowledged that she was an independent contractor and <u>not</u> an employee. See Exhibit E at ¶ 2 ("[m]y focus as an independent contractor . . ."). As the provider of services to NHCS from TuckNT, she had numerous human resources responsibilities, including payroll and benefits administration. Significantly, however, she did not treat herself as or ever hold herself out to be an employee of NHCS. It was not until sometime after she was fired that she began describing herself as a "common law employee".[2]

**C.    The ALJ Should Dismiss the Appeal and Stay the Hearing on the Merits Scheduled for September 7, 2005.**

The ALJ should affirm OSHA's dismissal of this action for the reasons previously set forth in this motion. If the ALJ should determine that OSHA has jurisdiction over Stevenson's complaint, the matter should be remanded to OSHA to investigate and determine whether Stevenson has set forth a prima facie case, and to give NHCS its full and fair opportunity to rebut

---

[2] As Stevenson was hired as an independent contractor and did not claim to be a "common law employee" until after she was fired, it is quite transparent that Stevenson is now simply couching her status to be that of an employee solely to assert that NHCS falls under the jurisdiction of SOA. As a matter of law, Stevenson would be estopped from claiming that she was not an independent contractor.

such allegations before OSHA.  See Exhibit F (49 U.S.C. § 42121(b)).  OSHA is supposed to investigate these claims in the first instance.  Because it dismissed the case with no such investigation, the case should be sent back so that the matter can be processed in accordance with the statutory safeguard.  Accordingly, the currently scheduled hearing on the merits scheduled for September 7, 2005, as well as the discovery order relative to that hearing, should be canceled.

Respectfully submitted,

NEIGHBORHOOD HOUSE CHARTER SCHOOL,

By its attorneys,

Ilene Robinson Sunshine (BBO No. 423000)
Beth L. Jacobson (BBO No. 644718)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800

Dated:  August 15, 2005

- 4 -

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2005, a copy of the above-referenced document was sent by first-class mail, postage prepaid, and facsimile where so noted, to the following:

Marthe B. Kent
U.S. Department of Labor – OSHA
Room E-340
JFK Federal Building
Boston, MA 02203

Regional Administrator
Region I
U.S. Department of Labor, OSHA
Room E340
JFK Federal Building
Boston, MA 02203

Free State Reporting
1324 Cape St. Clair Road
Annapolis, MD 21401

Regional Solicitor
U.S. Department of Labor
Room E-375
JFK Federal Building
Boston, MA 02203

Directorate of Enforcement Programs
U.S. Department of Labor, OSHA
Room N-3603, FPB
200 Constitution Avenue, N.W.
Washington, DC 20210

Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
Room N-2716, FPB
200 Constitution Avenue, N.W.
Washington, DC 20210

Janice W. Stevenson
P.O. Box 400372
Cambridge, MA 02140
*(Served by Fax: (413) 638-7997 and
certified mail, return receipt requested)*

Dated: Aug. 15, 2005

-5-

# EXHIBIT A

June 30, 2005
P. Box 400372
Cambridge, MA. 02140


Occupational Safety & Health Administration
Regional Office
JFK Federal Building, Room E340
Boston, Massachusetts 02203
(617) 565-9860
(617) 565-9827 FAX


<div align="center">Sarbanes-Oxley Act of 2002 Section 806 Complaint</div>

This is a complaint pursuant to Section 806 of the Sarbanes-Oxley Act of 2002.

<div align="center">**(1): complainant engaged in a protected activity**</div>

On May 27, 2005, I reported suspected fraudulent financial activity by the Dean of Administration of the Neighborhood House Charter School, Jagdish Chokshi, to Robert Melzer, a member of the Board finance committee and Vice President of the Board of Trustees.

The specific complaint to Vice President Robert Melzer is:

Dean Chokshi's illegal use of petty cash

1.  Specifically, paying Ms. Lynn Clark, an intern, $20 hours from petty cash starting approximately April 11, 2005.  Dean Chokshi told me about the payments personally.

    As of June 3, 2005, petty cash cannot be accounted for: there are no written procedures or policies for the finance office.  The finance department was not structured to keep certain responsibilities separate to prevent confusion and fraud.

    Both Genevieve Davis, another consultant hired by NHCS', and myself had noted the lack of documentation of petty cash.

Dean Chokshi's

2.  inappropriate use of NHCS' ATM/Credit card on or around March 2005 through approximately May 2005.

Occupational Safety & Health Administration          2.            June 30, 2005

### (2): complainant was subjected to adverse action

I thought my suspected fraudulent financial activity complaint was anonymous but somehow Dean Chokshi found out about my complaint when he returned from a personal trip on June 1, 2005. On June 3, 2005, the Dean Jagdish Chokshi terminated me.

### (3) respondent was aware of the protected activity when it took the adverse action

The charter school legislation imposes certain duties on the Board of Trustees, including the hiring and dismissal of staff and the oversight of the management of the charter school. Even if there is the allocation of powers, the Board of Trustees is ultimately responsible for the management and control of the charter school. Robert Melzer and the Board of Trustees were aware of my complaint on June 3, 2005 when I was terminated. Through an attorney, the Board threatened to sue me if I did "not immediately cease" my complaining of my termination for reporting suspected financial fraudulent activity of Dean Chokshi.

During my thirteen-month employment, the Board of Trustees had no procedure for the receipt, retention and treatment of complaints... regarding accounting, internal accounting controls or auditing matters," including anonymous employee reports. In addition, the Board of Trustees failed to adopt policies and procedures to prevent retaliation against employees who report problems or raise questions regarding financial affairs.

### (4) the evidence is sufficient to raise a reasonable inference that the protected activity was the likely reason for the adverse action.

I worked for this employer [TIN 04-3288541] from May 2004 to June 2005. There have been no previous written warnings and/or written negative evaluations of me by Dean Chokshi. The catalyst for my termination is my complaint of suspected fraudulent financial activity of Dean Jagdish Chokshi to Mr. Melzer.

To this day, I have not received any notice of an investigation or status of my complaint of suspected fraudulent financial activity of Dean Jagdish Chokshi by Mr. Melzer or the Board of Trustees of the Neighborhood House Charter School.

I can provide additional evidence as required. Please do not hesitate to contact me any time or use my name as needed to any investigation or inquiry.

Sincerely,

*Janice W. Stevenson*

Janice Wilson Stevenson
617-721-2638 – p
413-638-7997 – f, v
jstevenson@tucknt.com

To Nick Ciaccio

# FAX COVER SHEET

| FAX NUMBER | 14137850136 |
|---|---|
| FROM | Janice Stevenson |
| DATE | 2005-07-05 13:02:41 GMT |
| RE | Sarbanes Oxley Act 2002 Whistleblower Complaint |

## COVER MESSAGE

On July 1, 2005, I received a phone call from Carol
Horowitz of the OSHA office in Springfield, MA. Ms.
Horowitz stated "I don't believe that your school is
covered by SOX."

Ms. Horowitz called me from the Springfield office.  I
live in Cambridge, MA.  I am puzzled as to how my
complaint I faxed to the Regional Office in Boston, MA is
in a field office in Springfield, MA. I cannot visit and
talk face to face with the determination officer.

However, I believe her initial conclusion is incorrect.

Two provisions of Sarbanes-Oxley currently apply to
not-for-profits: Section 802, which prohibits the
destruction of documents under certain circumstances and
Section 1107, which protects employees who report
suspicious activities (i.e. whistleblowers).
Not-for-profits should demonstrate compliance with these
provisions by adopting records retention/document
destruction and whistleblower policies.

I have submitted an amended complaint which is the same
complaint previously submitted on June 30, 2005 but with a
generic whislteblower complaint title in case the section
I originally referenced is inaccurate.

If Ms. Horowitz initial conclusion is final, please fax me
a copy of OHSA determination prior to mailing it. I will
raise my objections of OHSA's determination to the ALJ
level.

Thank you for your time and attention to this matter.

Janice Stevenson
617-721-2638 - p
413-638-7997 - f,v
jstevenson@tucknt.com

08/10/2005  10:26   4132563105                     OSHAHOROWITZ                                        PAGE  02
To: Manager Carol Horowitz    Page 2 of 5              2005-07-05 12:48:26 (GMT)                     14135387007  From: Janice Stevenson

June 30, 2005
P. Box 400372
Cambridge, MA 02140


Occupational Safety & Health Administration
Regional Office
JFK Federal Building, Room E340
Boston, Massachusetts 02203
(617) 565-9860
(617) 565-9827 FAX

**AMENDED** Sarbanes-Oxley Act of 2002 Whistleblower Complaint

This is a complaint pursuant to Section 806 of the Sarbanes-Oxley Act of 2002.

**(1): complainant engaged in a protected activity**

On May 27, 2005, I reported suspected fraudulent financial activity by the Dean of Administration of the Neighborhood House Charter School, Jagdish Chokshi, to Robert Melzer, a member of the Board finance committee and Vice President of the Board of Trustees.

The specific complaint to Vice President Robert Melzer is:

Dean Chokshi's illegal use of petty cash

1.  Specifically, paying Ms. Lynn Clark, an intern, $20 hours from petty cash starting approximately April 11, 2005. Dean Chokshi told me about the payments personally.

As of June 3, 2005, petty cash cannot be accounted for: there are no written procedures or policies for the finance office. The finance department was not structured to keep certain responsibilities separate to prevent confusion and fraud.

Both Genevieve Davis, another consultant hired by NHCS', and myself had noted the lack of documentation of petty cash.

Dean Chokshi's

2.  inappropriate use of NHCS' ATM/Credit card on or around March 2005 through approximately May 2005.

08/10/2005  10:26   4132563105                    OSHAHOROWITZ                          PAGE  03
To: Manager Carol Horowitz    Page 4 of 6         2005-07-05 12:45:25 (GMT)          14136567007  From: Janice Stevenson

Occupational Safety & Health Administration          2.          June 30, 2005

### (2); complainant was subjected to adverse action

I thought my suspected fraudulent financial activity complaint was anonymous but somehow Dean Chokshi found out about my complaint when he returned from a personal trip on June 1, 2005.  On June 3, 2005, the Dean Jagdish Chokshi terminated me.

### (3) respondent was aware of the protected activity when it took the adverse action

The charter school legislation imposes certain duties on the Board of Trustees, including the hiring and dismissal of staff and the oversight of the management of the charter school.  Even if there is the allocation of powers, the Board of Trustees is ultimately responsible for the management and control of the charter school.  Robert Melzer and the Board of Trustees were aware of my complaint on June 3, 2005 when I was terminated.  Through an attorney, the Board threatened to sue me if I did "not immediately cease" my complaining of my termination for reporting suspected financial fraudulent activity of Dean Chokshi.

During my thirteen-month employment, the Board of Trustees had no procedure for the receipt, retention and treatment of complaints… regarding accounting, internal accounting controls or auditing matters," including anonymous employee reports.  In addition, the Board of Trustees failed to adopt policies and procedures to prevent retaliation against employees who report problems or raise questions regarding financial affairs.

### (4) the evidence is sufficient to raise a reasonable inference that the protected activity was the likely reason for the adverse action.

I worked for this employer [TIN 04-3288541] from May 2004 to June 2005.  There have been no previous written warnings and/or written negative evaluations of me by Dean Chokshi.  The catalyst for my termination is my complaint of suspected fraudulent financial activity of Dean Jagdish Chokshi to Mr. Melzer.

To this day, I have not received any notice of an investigation or status of my complaint of suspected fraudulent financial activity of Dean Jagdish Chokshi by Mr. Melzer or the Board of Trustees of the Neighborhood House Charter School.

I can provide additional evidence as required.  Please do not hesitate to contact me any time or use my name as needed to any investigation or inquiry.

Sincerely,

Janice W. Stevenson

Janice Wilson Stevenson
617-721-2638 – p
413-638-7997 – f, v
jstevenson@tucknt.com

# EXHIBIT B

**U.S. Department of Labor**   Occupational Safety and Health Administ
                                J.F.K. Federal Building, Room E340
                                Boston, MA 02203
                                Telephone (617) 565-9860
                                Fax      (617) 565-9827

                                Reply to the Attention of: /OSHA/BOS/EPTS



July 8, 2005


Janice W. Stevenson
P.O. Box 400372
Cambridge, MA 02140

Re:   Neighborhood House Charter School//Stevenson/1-1270-05-013

Dear Ms. Stevenson:

This letter will acknowledge receipt of your complaint against Neighborhood House Charter School alleging violations of Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. §1514A, et seq., also known as the Sarbanes-Oxley Act. Your complaint was received in the Boston Regional Office on July 1, 2005.

The Act requires the Secretary of Labor to notify the party named in the complaint about the filing of the complaint. We are providing the named party (Neighborhood House Charter School) with a copy of your complaint and information concerning the Occupational Safety and Health Administration's responsibilities under the law. Enclosed is a copy of the pertinent section of the Act and a copy of the investigative regulations, 29 C.F.R. Part 1980, for your information.

Section 806 of the Sarbanes Oxley Act provides protection for employees of publicly traded companies. It specifically states that, "No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 780(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee." Because Neighborhood House Charter School neither has securities registered under section 12 nor is a company required to file reports under section 15(d) of the Securities Exchange Act of 1934, it is not subject to the provisions of 18 U.S.C. Section 1514A of the Sarbanes-Oxley Act.

Therefore, the Secretary of Labor, acting through her agent, the Regional Administrator for the Occupational Safety and Health Administration, Region 1, finds that since Respondent is not subject to the provisions of the Sarbanes Oxley Act, the U.S. Department of Labor/OSHA has no jurisdiction in this matter. Accordingly, we are declining to investigate this complaint and it is hereby dismissed.

If you wish to appeal the above findings, you have the right to a formal hearing on the record. To exercise this right you must, within five (5) business days of receipt of this letter, file your request for a hearing by facsimile (fax), hand delivery, or overnight/next day delivery mail or telegram to:



OSHA   Occupational
       Safety and Health
       Administration
       www.osha.gov

Beverly Queen, Chief Docket Clerk
Office of Administrative Law Judges
U.S. Department of Labor
Suite 400 North
800 K Street, NW,
Washington, D.C. 20001-8002
(202)693-7300
(202) 693-7365 (FAX)

and to:

Marthe B. Kent
Regional Administrator
USDOL/OSHA
JFK Federal Building, Room E340
Boston, MA 02203

Unless a request for appeal is received by the Administrative Law Judge within the five-day period, this notice of determination will become the Final Order of the Secretary of Labor. Complainant is being advised of the determination in this case and the right to a hearing. A copy of this letter has also been sent to the Chief Administrative Law Judge with your complaint. If you decide to request a hearing, it will also be necessary for you to send copies of the request to Neighborhood House Charter School. After copies of your request are received, appropriate preparations can be made. If you have any questions, please do not hesitate to call Investigator Carole Horowitz at (413) 785-0123.

It should be made clear to all parties that the U.S. Department of Labor does not represent any of the parties in a hearing. The hearing is an adversarial proceeding in which the parties will be allowed an opportunity to present their evidence for the record. The Administrative Law Judge who conducts the hearing will issue a recommended decision to the Secretary based on the evidence, testimony, and arguments presented by the parties at the hearing. The Final Order of the Secretary will then be issued after consideration of the Administrative Law Judge's recommended decision and the record developed at the hearing, and will either provide for appropriate relief or dismiss the complaint.

Sincerely,

Marthe B. Kent
Regional Administrator

Enclosures

cc:    Jagdish Chokshi, Dean, Neighborhood House Charter School
       Chief Administrative Law Judge
       Linda Thompsen, Deputy Director, Division of Enforcement, Securities    Exchange
       Commission

# EXHIBIT C

July 24, 2005
P.O. Box 400372
Cambridge, MA  02140


Beverly Queen, Chief Docket Clerk
Office of Administrative Law Judges
U.S. Department of Labor
Suite 400 North
800 K Street, NW,
Washington, D.C. 20001-8002
(202) 693-7300
(202) 693-7365 (FAX)

Objections to the Findings and the Preliminary Order and Request for Hearing

On July 23, 2005, complainant received the attached letter from OSHA.  OSHA states that Neighborhood House Charter School is not subject to the provisions of 18 U.S.C. Section 1514A of the Sarbanes-Oxley Act.  OHSA errs in its literal and narrow interpretation of Section 806 of the Sarbanes Oxley Act.  .  In support thereof, complainant states the following:

1.  This employer meets the criteria as its has a retirement plan having benefit plans which are subject to the Reporting and Disclosure requirements of the Employee Retirement Income Security Act of 1974 ("ERISA").

    The whistleblower provisions of the Act apply to any company which has issued a class of securities registered with the Securities and Exchange Commission (SEC) or which is required by the federal securities laws to file reports with the SEC.  In addition, a civil action for violation of the whistleblower provisions of the Act may be filed against any officer, employee, contractor, subcontractor, or agent of any such company.  The amended criminal statutory provisions of the Act are applicable to "anyone," including any employer or individual "who takes any action harmful to any person," including any "interference with the lawful employment or livelihood of the person," for providing "truthful information" to a "law enforcement officer." The new restrictions on executive compensation plans and retirement plans apply to the issuers of equity and other securities under the federal securities laws and to employers having benefit plans which are subject to the Reporting and Disclosure requirements of the Employee Retirement Income Security Act of 1974 ("ERISA").

2.  NHCS has public debt from the issuance of a Qualified Zone Academy Bond (QZAB).  These are Secure, flexible, ZERO INTEREST 14-year tax-credit bonds the federal government pays all of the interest.  QZAB can only be issued if the school district secures a private entity partner willing to contribute cash or in-

kind services or materials having an acceptable present fair market value as of the date of the QZAB bond issuance of not less than 10% of the net present value of the amount of money borrowed. The monies for this bond were raised from individual donors pledges who bought into this bond as shareholders buy into a company's stock. The **Qualified Buyer**" (bank, insurance company etc.), who is willing to take the debt and a Federal tax credit instead of an interest check, is a usually a public company subject to the Sarbanes-Oxley Act of 2002; this employer provides services to this public company and the Sarbanes-Oxley Act of 2002 has a significant impact on all employment decisions of employer who provide services to public companies.

3.  Albeit, individual monies are deposited into the Neighborhood House Charter School Foundation's bank account. However, there is a shared management and function between the foundation and the school. If the original complaint should have included the school's foundation as a Respondent, complainant requests this Honorable Court to permitted the amendment of the complaint under 29 C.F.R. § 18.5(e) and FRCP 15(c).

Two sections of the Sarbanes-Oxley Act of 2002 apply to all companies, public and nonpublic. On May 27, 2005, I reported suspected fraudulent financial activity by the Dean of Administration of the Neighborhood House Charter School, Jagdish Chokshi, to Robert Melzer, a member of the Board finance committee and Vice President of the Board of Trustees. On June 3, I was fired by Dean Jagdish Chokshi when he suspected that I would contact the Board of Trustees regarding his suspicious fraudulent financial activities. Suspicious financial activities that he, in confidence, informed me of.

OSHA never investigated this complaint per procedures and time frames for the handling of discrimination complaints under Title VIII of Sarbanes-Oxley. This failure to investigate has caused complainant to lose intended protections created by this Act. Without such investigation, OSHA's abused its discretion by it determination that Neighborhood House Charter School is not subject to the Act was premature.

Therefore, complainant requests that OSHA's Preliminary Order is reversed and this Honorable Court grant all relief necessary to make the Complainant whole," including (1) reinstatement with all seniority rights, (2) back pay with interest, and (3) any "special damages" incurred, including reasonable attorney fees, expert witness fees and other "litigation costs."

Sincerely,

*Janice W. Stevenson*

Janice Wilson Stevenson

# EXHIBIT D

U.S. DEPARTMENT OF LABOR

Case No.: 2005-SOX-00087

In the Matter of:

**JANICE WILSON STEVENSON,**

        Complainant

    v.

**NEIGHBORHOOD HOUSE CHARTER SCHOOL**

        Respondent

## AFFIDAVIT OF KEVIN ANDREWS

    I, Kevin Andrews, do hereby state under the pains and penalties of perjury, as follows:

1.     I am the Headmaster of Neighborhood House Charter School ("NHCS") and I have been for the past ten years.

2.     NHCS is not a publicly traded company.

3.     NHCS has no class of securities registered under section 12 of the Securities Exchange Act of 1934.

4.     To the best of my knowledge, NHCS is not required to file reports under section 15(d) of the Securities Exchange Act of 1934.

5.     NHCS has no shareholders or investors.

6.     NHCS hired Janice Stevenson's company, TuckNT, as an independent contractor.

7.     Ms. Janice Stevenson's responsibilities while at NHCS included many human resources functions including, but not limited to, managing payroll and enrolling employees in and terminating them from benefit plans. At no time, to my knowledge, did Ms. Stevenson treat herself as an employee.

{B0431796; 1}

8.     Ms. Janice Stevenson was fired for reasons separate and apart from any allegations she made as the contracted relationship was not in the best interest of the school.

Signed under the pains and penalties of perjury this 12th day of August 2005.

Kevin Andrews

# EXHIBIT E



Page 1 of 1

## Guadagnoli, David

| | |
|---|---|
| **From:** | Janice W. Stevenson [jstevenson@tucknt.com] |
| **Sent:** | Friday, June 03, 2005 4:35 PM |
| **To:** | all_nhcs@thenhcs.org; "Al Wallis \(Business Fax\)"; Austin Smith; Carol Downs; Charles Grigsby; Daniel Gerrity; Guadagnoli, David; Frederic E. Wittmann; Kristen McCormack; Martin Walsh; Peter Chernis; Robert Melzer; Sherry Leventhal; Theodore Haviland III; Tom Hunnewell |
| **Cc:** | tom@fdnh.org |
| **Subject:** | Termination of contract |

I have attached my final invoices and a copy of a letter I received from Dean Jagdish Chokshi regarding the termination of my contract with NHCS. I have enjoyed working at NHCS and I will have fond memories of NHCS. I have worked hard for my reputation of a hard worker.

My focus as an independent contractor has been compliance with state and federal law. Why have I sent this email? I want my concerns and complaint to be an open forum. My last written communicate with Dean Chokshi warn him not to slander my reputation. I am a small business person. My services rendered at NHCS are how I make my living.

I am upset that my reputation and character has to be slandered and misrepresented my Dean Chokshi to divert attention from his illegal conduct.

I do not want to be held liable for illegal use of school money. I will seek legal advice to obtain indemnification from Dean Chokshi fraud and negligence.

I just want to say that I strongly suspect that my contract termination is the result of a complaint I have filed against Dean Chokshi, specifically,

1.   His illegal use of petty cash, specifically, paying Ms. Lynn Clark, an intern, $20 hours from petty cash. To date petty cash cannot be account for.   According to Dean Chokshi, Ms. Clark, went to graduate school with him. Her current duties are to inventory the financial files. Dean Chokshi and Ms. Clark vacationed together in May 2005 in North Carolina.

     Dean Chokshi stated to me that Robert Melzer and Austin Smith advised him to obtain additional help. However, my concern is should Ms. Clark be paid through petty cash?

     Both Genevieve Davis, another consultant hired by NHCS', and myself have noted the lack of documentation of petty cash.

2.   His inappropriate use of NHCS' ATM/Credit card. I don't feel that NHCS' ATM/Credit card should carried in the Dean's wallet and used to directly purchase merchandise for NHCS.

I am also concerned of Dean Chokshi refusal to comply with FLSA. NHCS currently has employees misclassified as exempt to avoid paying overtime, the master payroll file is not in compliance, human resource files are not in compliance, NHCS has unreported wages of employees L&DA over $50,000, etc.

Another area of my concern is the removal from personnel files and suspension of Darol Ware's complaint against his supervisor and NHCS' retention of a non teaching employee who tested positive for marijuana.

In April 2005, Dean Chokshi advised me of NHCS' financial problems. This financial crisis is not connected with the new school's construction delay. This concerned me very much. However, there were "deals" made by the Dean that directly impacted payroll, which impacted the present budget. There are no written procedures in place for Human Resources, Finance, Payroll, Public Funding etc. My observation of Dean Chokshi's experience is that he has never had unlimited control. He is totally unfamiliar with the areas he has management over. I have never seen any organization give such a wide range of managerial responsibility to such a limited person.

6/20/2005

# EXHIBIT F

Westlaw.

49 U.S.C.A. § 42121

C

**Effective: April 05, 2000**

United States Code Annotated <u>Currentness</u>
  Title 49. Transportation <u>(Refs & Annos)</u>
    Subtitle VII. Aviation Programs
      Part A. Air Commerce and Safety <u>(Refs & Annos)</u>
        Subpart II. Economic Regulation <u>(Refs & Annos)</u>
          <u>Chapter 421.</u> Labor-management Provisions
            <u>Subchapter III.</u> Whistleblower Protection Program

→ **§ 42121. Protection of employees providing air safety information**

(a) **Discrimination against airline employees.**--No air carrier or contractor or subcontractor of an air carrier may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)--

(1) provided, caused to be provided, or is about to provide (with any knowledge of the employer) or cause to be provided to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States;

(2) has filed, caused to be filed, or is about to file (with any knowledge of the employer) or cause to be filed a proceeding relating to any violation or alleged violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of Federal law relating to air carrier safety under this subtitle or any other law of the United States;

(3) testified or is about to testify in such a proceeding; or

(4) assisted or participated or is about to assist or participate in such a proceeding.

(b) **Department of Labor complaint procedure.**--

(1) **Filing and notification.**--A person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) may, not later than 90 days after the date on which such violation occurs, file (or have any person file on his or her behalf) a complaint with the Secretary of Labor alleging such discharge or discrimination. Upon receipt of such a complaint, the Secretary of Labor shall notify, in writing, the person named in the complaint and the Administrator of the Federal Aviation Administration of the filing of the complaint, of the allegations contained in the complaint, of the substance of evidence supporting the complaint, and of the opportunities that will be afforded to such person under paragraph (2).

(2) **Investigation; preliminary order.**--

(A) **In general.**--Not later than 60 days after the date of receipt of a complaint filed under paragraph (1) and after affording the person named in the complaint an opportunity to submit to the Secretary of Labor a written response to the complaint and an opportunity to meet with a representative of the Secretary to present statements from witnesses, the Secretary of Labor shall conduct an investigation and determine whether there is reasonable cause to believe that the complaint has merit and notify, in writing, the complainant and the person alleged to have committed a violation of subsection (a) of the Secretary's findings. If the Secretary of Labor

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 42121

concludes that there is a reasonable cause to believe that a violation of subsection (a) has occurred, the Secretary shall accompany the Secretary's findings with a preliminary order providing the relief prescribed by paragraph (3)(B). Not later than 30 days after the date of notification of findings under this paragraph, either the person alleged to have committed the violation or the complainant may file objections to the findings or preliminary order, or both, and request a hearing on the record. The filing of such objections shall not operate to stay any reinstatement remedy contained in the preliminary order. Such hearings shall be conducted expeditiously. If a hearing is not requested in such 30-day period, the preliminary order shall be deemed a final order that is not subject to judicial review.

**(B) Requirements.--**

   **(i) Required showing by complainant.--**The Secretary of Labor shall dismiss a complaint filed under this subsection and shall not conduct an investigation otherwise required under subparagraph (A) unless the complainant makes a prima facie showing that any behavior described in paragraphs (1) through (4) of subsection (a) was a contributing factor in the unfavorable personnel action alleged in the complaint.

   **(ii) Showing by employer.--**Notwithstanding a finding by the Secretary that the complainant has made the showing required under clause (i), no investigation otherwise required under subparagraph (A) shall be conducted if the employer demonstrates, by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior.

   **(iii) Criteria for determination by Secretary.--**The Secretary may determine that a violation of subsection (a) has occurred only if the complainant demonstrates that any behavior described in paragraphs (1) through (4) of subsection (a) was a contributing factor in the unfavorable personnel action alleged in the complaint.

   **(iv) Prohibition.--**Relief may not be ordered under subparagraph (A) if the employer demonstrates by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior.

**(3) Final order.--**

  **(A) Deadline for issuance; settlement agreements.--**Not later than 120 days after the date of conclusion of a hearing under paragraph (2), the Secretary of Labor shall issue a final order providing the relief prescribed by this paragraph or denying the complaint. At any time before issuance of a final order, a proceeding under this subsection may be terminated on the basis of a settlement agreement entered into by the Secretary of Labor, the complainant, and the person alleged to have committed the violation.

  **(B) Remedy.--**If, in response to a complaint filed under paragraph (1), the Secretary of Labor determines that a violation of subsection (a) has occurred, the Secretary of Labor shall order the person who committed such violation to--

   (i) take affirmative action to abate the violation;

   (ii) reinstate the complainant to his or her former position together with the compensation (including back pay) and restore the terms, conditions, and privileges associated with his or her employment; and

   (iii) provide compensatory damages to the complainant.

   If such an order is issued under this paragraph, the Secretary of Labor, at the request of the complainant, shall assess against the person against whom the order is issued a sum equal to the aggregate amount of all costs and expenses (including attorneys' and expert witness fees) reasonably incurred, as determined by the Secretary of Labor, by the complainant for, or in connection with, the bringing the complaint upon which the order was issued.

  **(C) Frivolous complaints.--**If the Secretary of Labor finds that a complaint under paragraph (1) is frivolous or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 42121

has been brought in bad faith, the Secretary of Labor may award to the prevailing employer a reasonable attorney's fee not exceeding $1,000.

(4) Review.--

(A) Appeal to Court of Appeals.--Any person adversely affected or aggrieved by an order issued under paragraph (3) may obtain review of the order in the United States Court of Appeals for the circuit in which the violation, with respect to which the order was issued, allegedly occurred or the circuit in which the complainant resided on the date of such violation. The petition for review must be filed not later than 60 days after the date of the issuance of the final order of the Secretary of Labor. Review shall conform to chapter 7 of title 5, United States Code. The commencement of proceedings under this subparagraph shall not, unless ordered by the court, operate as a stay of the order.

(B) Limitation on collateral attack.--An order of the Secretary of Labor with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review in any criminal or other civil proceeding.

(5) Enforcement of order by Secretary of Labor.--Whenever any person has failed to comply with an order issued under paragraph (3), the Secretary of Labor may file a civil action in the United States district court for the district in which the violation was found to occur to enforce such order. In actions brought under this paragraph, the district courts shall have jurisdiction to grant all appropriate relief including, but not limited to, injunctive relief and compensatory damages.

(6) Enforcement of order by parties.--

(A) Commencement of action.--A person on whose behalf an order was issued under paragraph (3) may commence a civil action against the person to whom such order was issued to require compliance with such order. The appropriate United States district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such order.

(B) Attorney fees.--The court, in issuing any final order under this paragraph, may award costs of litigation (including reasonable attorney and expert witness fees) to any party whenever the court determines such award is appropriate.

(c) Mandamus.--Any nondiscretionary duty imposed by this section shall be enforceable in a mandamus proceeding brought under section 1361 of title 28, United States Code.

(d) Nonapplicability to deliberate violations.--Subsection (a) shall not apply with respect to an employee of an air carrier, contractor, or subcontractor who, acting without direction from such air carrier, contractor, or subcontractor (or such person's agent), deliberately causes a violation of any requirement relating to air carrier safety under this subtitle or any other law of the United States.

(e) Contractor defined.--In this section, the term "contractor" means a company that performs safety-sensitive functions by contract for an air carrier.

CREDIT(S)

(Added Pub.L. 106-181, Title V, § 519(a), Apr. 5, 2000, 114 Stat. 145.)

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

2000 Acts. House Conference Report No. 106-513 and Statement by President, see 2000 U.S. Code Cong. and Adm. News, p. 80.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 42121

References in Text

Chapter 7 of Title 5, referred to in subsec. (b)(4)(A), is classified to 5 U.S.C.A. § 701 et seq.

Effective and Applicability Provisions

. 2000 Acts. Section applicable only to fiscal years beginning after September 30, 1999, see section 3 of Pub.L. 106-181, set out as a note under section 106 of this title.

LIBRARY REFERENCES

American Digest System

Master and Servant ☞30(6.35).

Key Number System Topic No. 255.

NOTES OF DECISIONS

Contractors within section 1
Exhaustion of remedies 3
Preemption 2

1. Contractors within section

Certified repair station that overhauled and repaired generators for use in commercial and military aircrafts was "contractor" within meaning of Whistleblower Protection Program (WPP) in Airline Deregulation Act (ADA), and WPP thus provided station employee with potential remedy for his claim he was terminated for complaining about his employer's violation of Federal Aviation Regulations. Tucker v. Hamilton Sundstrand Corp., Inc., S.D.Fla.2003, 268 F.Supp.2d 1360. Master And Servant ☞ 30(6.35)

2. Preemption

Employees' wrongful discharge claims based on allegation that employer, an airline, retaliated against whistleblowers, were not preempted by provision of Airline Deregulation Act (ADA) prohibiting state's enforcement of any law related to price, route, or service of an air carrier, or by Whistleblower Protection Program (WPP) added to ADA; employee's whistleblower claims had little if anything to do with frequency and scheduling of transportation or selection of markets for which transportation would be provided, claims were based on retaliation that occurred after and was logically separate from on-the-job conduct that caused or had capacity to cause a delay in employer's operations, and there was no reference to preemption in WPP which simply added additional remedy for employees who raised safety concern to advance retaliatory discharge claim. Fadaie v. Alaska Airlines, Inc., W.D.Wash.2003, 293 F.Supp.2d 1210. States ☞ 18.49

3. Exhaustion of remedies

Employee who filed pre-termination whistleblower claims, alleging that he was discriminated against by employer, an airline, for raising safety concerns, failed to exhaust his administrative remedies, even though procedures for filing complaint of discrimination with administrative agency under Whistleblower Protection Program (WPP) of Airline Deregulation Act (ADA) were not mandatory; employee chose remedy once he initiated administrative complaint process with Occupational Safety and Health Administration (OSHA) and obtained final decision, and was obligated to complete administrative process by seeking hearing before administrative law judge (ALJ) and direct appeal to Court of Appeals rather than collaterally attacking ruling by filing civil action in district court. Fadaie v. Alaska Airlines, Inc., W.D.Wash.2003, 293 F.Supp.2d 1210.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 42121

49 U.S.C.A. § 42121, 49 USCA § 42121

Current through P.L. 109-40, approved 07-28-05.

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Tab E

**U.S. Department of Labor**
Office of Administrative Law Judges
O'Neill Federal Building – Room 411
10 Causeway Street
Boston, MA 02222

(617) 223-9355
(617) 223-4254 (FAX)



Issue Date: **07 September 2005**

CASE NO.:     2005-SOX-00087

In the Matter of

**JANICE WILSON STEVENSON**
     Complainant

          v.

**NEIGHBORHOOD HOUSE CHARTER SCHOOL**
     Respondent

Appearances:

Janice Wilson Stevenson,
Cambridge, Massachusetts, *pro se*

Ilene Robinson Sunshine and Beth L. Jacobson,
(Sullivan & Worcester, L.L.P.),
Boston, Massachusetts, for the Respondent

Before:          Daniel F. Sutton
                 Administrative Law Judge

### DECISION AND ORDER GRANTING SUMMARY DECISION
### AND DISMISSING COMPLAINT

     This case arises out of a complaint of discrimination filed by Janice Wilson Stevenson ("Complainant") against Neighborhood House Charter School ("NHCS" or "Respondent") pursuant to the employee protection (whistleblower) provisions of Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("Sarbanes-Oxley" or the "Act"). The Complainant filed a complaint with the Occupational Safety and Health Administration of the U.S. Department of Labor ("OSHA") on July 1, 2005, claiming that she was terminated as a result of a report she made to her employer regarding suspected fraudulent activity.

     OSHA dismissed the Sarbanes-Oxley complaint without investigation based on a determination that the Respondent is not subject to the provisions of 18 U.S.C. Section 1514A of the Act. OSHA No. 1-1270-05-013 (July 8, 2005). On July 24, 2005, the Complainant appealed

OSHA's determination to the Office of Administrative Law Judges ("OALJ"), requesting a formal hearing. The matter is before me on NHCS's motion for summary decision and the Complainant's response in opposition.[1] Upon consideration of the matter, I have concluded for the reasons set forth below that no genuine issue of material fact exists and that NHCS is therefore entitled to summary decision in its favor.

## I. Background

The Complainant was employed by NHCS as an "independent contractor" from May 2004 to June 2005 through TuckNT, a consulting firm. Respt. Mot. Sum. Dec. at 3 (August 15, 2005); Compl. at 2 (July 1, 2005). On May 27, 2005, the Complainant reported her concerns about Dean Jagdish Chokshi's use of petty cash and the NHCS ATM/credit card to Robert Melzer, a member of NHCS's Board finance committee and Vice President of NHCS's Board of Trustees. Compl. at 1 (July 1, 2005); Compl. Amend. Resp. Mot. Sum. Dec., Att. 4 (Aug. 30, 2005). Although the Complainant thought that her report was anonymous, she claims that Dean Chokshi became aware of her concerns on June 1, 2005. Compl. at 2 (July 1, 2005). Dean Chokshi terminated the Complainant on June 3, 2005. *Id.*

## II. Motion for Summary Decision

NHCS supports its Motion for Summary Decision with two claims: (1) NHCS is not covered by Section 806 the Act; and (2) The Complainant cannot establish that her reports of alleged fraudulent activity are protected activity under the Act. Respt. Mot. Sum. Dec. at 2-3 (Aug. 15, 2005).[2] NHCS asserts that it is not an employer subject to the provisions of Sarbanes-Oxley, which covers "any company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l) and any company required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d))." 18 U.S.C. § 1514A(a). Respt. Mot. Sum. Dec. at 2 (Aug. 15, 2005). Further, NHCS contends that the Complainant has failed to prove that she reasonably believed that the alleged wrongful acts violated Sections 1341, 1343, 1344, or 1348 of 18 U.S.C., as the actions do not fall under any of

---

[1] In addition, the Complainant has filed a motion to remove and impeach an affidavit by Kevin Andrews submitted on behalf of the Respondent. Compl. Mot. For Removal (Sept. 2, 2005). However, as the Complainant has not raised any question of fact in this motion that is material to the issue of Sarbanes-Oxley jurisdiction, it is unnecessary for me to rule on the Complainant's motion.

[2] In addition, NHCS contends that the Complainant is not an employee for purposes of the Act, as she is an independent contractor working for NHCS through TuckNT. Respt. Mot. Sum. Dec. at 3 (Aug. 15, 2005). In view of my conclusion that NHCS is not a company covered by Sarbanes-Oxley's whistleblower anti-discrimination provisions, it is unnecessary to address this alternative defense. However, it is noted that the Act's implementing regulations define "employee" as "an individual presently or formerly working for a company or company representative, an individual applying to work for a company or company representative, or an individual whose employment could be affected by a company or company representative." 29 C.F.R. § 1980.101 (2004). It appears that that the Complainant would likely be considered an employee under this definition, as her employment could be, and ultimately was affected by NHCS and its representatives. Further, the court has upheld that an employee of a private subsidiary company was within the definition of an employee of the public parent company because her employment could be affected by the officers of the parent company. *See Collins v. Beazer Homes USA, Inc.,* 334 F. Supp.2d 1365, 1374 n.7 (N.D. Ga. 2004).

the categories of protected activity covered by Sarbanes-Oxley. Respt. Mot. Sum. Dec. at 3
(Aug. 15, 2005).

### III. The Complainant's Opposition

The Complainant responds to NHCS's motion for summary decision by claiming that
NHCS is an employer within the meaning of Sarbanes-Oxley, that she had a reasonable belief
that fraudulent activity was occurring, and that she has been discriminated against for making
reports of suspected fraudulent activity to her employer. Compl. Amend. Resp. (Aug. 30,
2005).[3]  The Complainant asserts that NHCS is an employer within the meaning of Sarbanes-
Oxley, even though it is not a publicly traded company, because NHCS's pension plan is subject
to the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29
U.S.C.A. § 1001, and because the trustee of the pension plan, MFS Investments, is required to
file periodic reports with the Securities and Exchange Commission pursuant to Section 15(d) of
the Securities Exchange Act. *Id.* at 3.  Further, she argues that Sarbanes-Oxley applies to private
companies because it imposes sanctions on employer pension plan sponsors and fiduciaries for
willful violations of ERISA's financial statement and other reporting and disclosure
requirements, and pursuant to Sections 302 (15 U.S.C. § 7241) and 404 (15 U.S.C § 7262) of
Sarbanes-Oxley which require corporate responsibility and the application of Internal Control
Procedures to pension and benefit expenses. Compl. Amend. Resp. at 3-4 (Aug. 30, 2005).  She
also suggests that NHCS has violated Section 401 (15 U.S.C. § 7261) and Section 406 (15
U.S.C. § 7264)  of the Act because the Employer engages in (1) underreporting of wages to the
extent that fraud is being perpetrated; (2) underreporting of its pension expenses by denying
eligible employees participation; and (3) understatement of payroll tax liabilities. Compl.
Amend. Resp. at 4-5 (Aug. 30, 2005).  She further argues that because NHCS has public debt in
the form of Qualified Zone Academy Bonds ("QZAB"), the Employer is subject to required
reporting under Rule 10b5 (17 C.F.R. § 240.15c-2-12) and Rule15c2-12 (17 C.F.R. § 240.10b-5)
under the Securities Exchange Act of 1934. Compl. Amend. Resp. at 6 (Aug. 30, 2005).
Finally, the Complainant asserts that NHCS receives funds from both private donors and public
corporations and she advances a rather creative argument that such donors, as well as the QZAB
holders, are much like the shareholders of a publicly traded company. Thus, the Complainant
contends that she has established that NHCS is an employer subject to Section 806 of Sarbanes-
Oxley and that her case should be heard on the merits.

### IV. Discussion, Findings of Fact and Conclusions of Law

The issues presented by the motion for summary decision are whether NHCS is a covered
employer under Sarbanes-Oxley and whether the Complainant's reports of suspected fraudulent
activity to her employer constitute protected activity under the Act.  If NHCS can show that the
answer to either of these questions is in the negative, the Employer is entitled to summary
decision in its favor.

---

[3] The Complainant also claims that the Secretary of Labor deprived her of procedural due process as a result of the
investigator's failure to investigate her complaint. Compl. Amend. Resp. at 2 (Aug. 30, 2005).  While OSHA
declined to investigate the merits of the complaint, it did fully consider and investigate the Complainant's
allegations relating to Sarbanes-Oxley jurisdiction.

Under the Rules for Practice and Procedure for Administrative Hearings, "any party may...move with or without supporting affidavits for a summary decision on all or any part of the proceeding." 29 C.F.R. § 18.40(a). An administrative law judge "may enter summary judgment for either party if . . . there is no genuine issue as to any material fact and [the] party is entitled to summary decision." 29 C.F.R. § 18.40(d). To demonstrate that it is entitled to summary decision, "the moving party must either...produce affirmative evidence which negates an essential element of the nonmovant's complaint...or show...that the nonmovant has no evidence to support an element of the complaint." *Eash v. Roadway Express, Inc.*, ARB No. 00-061, slip op. at 4, 2002 WL 31932545 (December 31, 2002), citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-158 (1970); *Celotex Corp. v. Catrett*, 477 U.S. 317 at 325 (1986). In ruling on a motion for summary decision, "the judge does not weigh the evidence or determine the truth of the matters asserted, but only determines whether there is a genuine issue for trial . . . In making this determination, the ALJ is to view all the evidence and factual inferences in the light most favorable to the non-moving party." *Stauffer v. Wal-Mart Stores, Inc.*, USDOL/OALJ Reporter (HTML), ARB No. 99-107, OALJ No. 1999-STA-00021 slip op. at 6 (ARB November 30, 1999), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Adickes v. Kress & Co.*, 398 U.S. 144, 158-9 (1970); Miller and Kane § 2725 at 425-28. If the nonmoving party "produces enough evidence to create a genuine issue of material fact," it defeats the motion for summary decision. *Eash v. Roadway Express, Inc.*, ARB No. 00-061, slip op. at 4, 2002 WL 31932545 (December 31, 2002), citing *Celotex Corp. v. Catrett*, 477 U.S. 317 at 322 (1986). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there is no genuine issue of material fact and the moving party is entitled to summary decision. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

Section 806 of the Sarbanes-Oxley Act states in relevant part:

(a) WHISTLEBLOWER PROTECTION FOR EMPLOYEES OF PUBLICLY TRADED COMPANIES - No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass or in any other manner discriminate against an employee in the terms or conditions of employment because of any lawful act done by the employee--

(1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by--

(A) a Federal regulatory or law enforcement agency;

(B) any Member of Congress or any committee of Congress; or

(C) a person with supervisory authority over the employee...; or

(2) to file, cause to be filed...or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal Law relating to fraud against shareholders.

18 U.S.C. § 1514A. Section 806 of the Act offers protection for employees of publicly traded companies who provide information or participate in an investigation of violations including frauds and swindles (18 U.S.C. § 1341), fraud by wire, radio, or television (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), securities fraud (18 U.S.C. § 1348), rules and regulations of the Securities and Exchange Commission, and any other provision of Federal law relating to fraud against shareholders. *Hopkins v. ATK Tactical Systems*, USDOL/OALJ Reporter (HTML), ALJ No. 2004-SOX-19 slip op. at 5 (ALJ May 27, 2004). The Congressional Record states that the purpose of Section 806 of the Act is to "provide whistleblower protection to employees of publicly traded companies . . . when they take lawful acts to disclose information or otherwise assist criminal investigators, federal regulators, Congress, their supervisors (or other proper people within a corporation), or parties in a judicial proceeding in detecting and stopping actions which they reasonably believe to be fraudulent," and to "protect those who report fraudulent activity that can damage innocent investors in publicly traded companies." 148 Cong. Rec. S7420, 2002 WL 1731002 (daily ed. July 26, 2002).

The first question presented by NHCS's motion for summary decision is whether NHCS is an employer subject to Section 806 of Sarbanes-Oxley. There has been no showing that NHCS is a company "with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l), or one that is required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(d))." 18 U.S.C. § 1514A(a). Although the Complainant asserts that NHCS is covered by Sarbanes-Oxley because it has a retirement plan with benefits subject to reporting and disclosure requirements under ERISA, the requirements of ERISA are irrelevant in determining whether or not a company is covered by Sarbanes-Oxley, which is determined solely by whether the company has a class of stock registered under Section 12 of the Securities Exchange Act of 1934 or whether it is required to make reports pursuant to Section 15(d). *See Flake v. New World Pasta Co.*, ARB Case No. 03-126, 2004 WL 384738*3 (Feb. 25, 2004). Nothing in the language of Sarbanes-Oxley or in its legislative history suggests that being subject to reporting requirements under one federal law, such as ERISA, automatically extends coverage of any other federal legislation, such as Sarbanes-Oxley, to a company. The Complainant's assertion that NHCS is subject to the provisions of Sections 302, 401, 404 and 406 of the Sarbanes-Oxley, and Rules 10b5 and 15c2-12 promulgated under the Securities Exchange Act of 1934 is also irrelevant in determining whether NHCS is covered by Sarbanes-Oxley's whistleblower provisions because none of these rules and provisions subject NHCS to the reporting requirements of Section 15(d) of the Securities Exchange Act. Therefore, I conclude that NHCS is not a covered employer under Section 806.

Likewise, nothing in the language of the Sarbanes-Oxley extends coverage of Section 806 to a private company simply because it receives funds from private donors or public companies. Although the Complainant likens NHCS's private and public donors and QZAB holders to stockholders, there is no indication that Congress intended for a private company to fall within the purview of Sarbanes-Oxley simply because it receives funds from private donors or public companies. To the contrary, this administrative law judge has held that even when a company is a contractor or subcontractor of publicly traded companies, "there is nothing in the language of Sarbanes-Oxley or its legislative history that suggests that Congress intended to bring the employees of non-public contractors, subcontractors and agents under the protective aegis of Section 806." *Minkina v. Affiliated Physicians Group*, USDOL/OALJ Reporter (HTML), ALJ No. 2005-SOX-00019, slip op. at 8 (ALJ February 22, 2005). Similarly, administrative law judges have held that subsidiaries of publicly traded companies are also not covered under Sarbanes-Oxley when the parent company is not named in the complaint. *See, e.g., Dawkins v. Shell Chemical, LP*, USDOL/OALJ Reporter (HTML), ALJ No. 2005-SOX-41 (ALJ May 16 , 2005) (dismissing a complaint brought against a non-publicly traded subsidiary of a publicly traded company because the parent company was not named in the complaint); *Powers v. Pinnacle Airlines Inc.*, USDOL/OALJ Reporter (HTML), ALJ No. 2003-SOX-18 (ALJ March 5, 2003) (dismissing a complaint because the named respondent was not a publicly traded company, even though the respondent's parent company was publicly traded). *Cf. Gonzalez v. Colonial Bank*, USDOL/OALJ Reporter (HTML), ALJ No. 2004-SOX-39 (ALJ Aug. 20, 2004) (denying summary decision when the employee of a non-publicly traded subsidiary had named both the publicly traded parent company and the non-publicly traded subsidiary in the complaint, holding that the remedial purposes of Sarbanes-Oxley called for a broad interpretation of what constitutes a covered employer).

Since NHCS is neither a publicly traded company nor a subsidiary of a publicly traded company, it is clear that it cannot be found to be a covered employer under the Whistleblower protection provisions of Section 806 of the Sarbanes-Oxley Act. Consequently, the complaint must be dismissed for lack of jurisdiction.[4]

## V. Order

The Respondent's motion for summary decision is GRANTED, and the complaint is DISMISSED in its entirety.

**SO ORDERED.**

**DANIEL F. SUTTON**
Administrative Law Judge

Boston, Massachusetts

---

[4] In view of this determination, it is unnecessary to reach NHCS's alternative argument that the Complainant cannot establish that she engaged in any activity protected by the Act.

- 6 -

**NOTICE OF APPEAL RIGHTS:** To appeal, you must file a Petition for Review ("Petition") with the Administrative Review Board ("Board") within ten (10) business days of the date of the administrative law judge's decision. *See* 29 C.F.R. § 1980.110(a). The Board's address is: Administrative Review Board, U.S. Department of Labor, Room S-4309, 200 Constitution Avenue, NW, Washington, DC 20210. Your Petition is considered filed on the date of its postmark, facsimile transmittal, or e-mail communication; but if you file it in person, by hand-delivery or other means, it is filed when the Board receives it. *See* 29 C.F.R. § 1980.110(c). Your Petition must specifically identify the findings, conclusions or orders to which you object. Generally, you waive any objections you do not raise specifically. *See* 29 C.F.R. § 1980.110(a).

At the time you file the Petition with the Board, you must serve it on all parties as well as the Chief Administrative Law Judge, U.S. Department of Labor, Office of Administrative Law Judges, 800 K Street, NW, Suite 400-North, Washington, DC 20001-8002. The Petition must also be served on the Assistant Secretary, Occupational Safety and Health Administration and the Associate Solicitor, Division of Fair Labor Standards, U.S. Department of Labor, Washington, DC 20210.

If no Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 29 C.F.R. § 1980.109(c). Even if you do file a Petition, the administrative law judge's decision becomes the final order of the Secretary of Labor unless the Board issues an order within thirty (30) days after the Petition is filed notifying the parties that it has accepted the case for review. *See* 29 C.F.R. §§ 1980.109(c) and 1980.110(a) and (b).

## SERVICE SHEET

Case Name: **STEVENSON JANICE WILSON v. NEIGHBORHOOD HOUSE CHARTER SCHOOL**

Case Number: **2005SOX00087**

Document Title: **DECISION AND ORDER GRANTING SUMMARY DECISION AND DISMISSING COMPLAINT**

I hereby certify that a copy of the above-referenced document was sent to the following this 7th day of September, 2005:

*Deneen Davis*

**DENEEN DAVIS**
LEGAL ASSISTANT

Regional Administrator
Region 1
U. S. Department of Labor, OSHA
Room E340
JFK Federal Building
Boston, MA 02203
        *{Hard Copy - Regular Mail}*

Directorate of Enforcement Programs
U. S. Department of Labor, OSHA
Room N-3603, FPB
200 Constitution Ave., N.W.
Washington, DC 20210
        *{Hard Copy - Regular Mail}*

Associate Solicitor
Division of Fair Labor Standards
U. S. Department of Labor
Room N-2716, FPB
200 Constitution Ave., N.W.
Washington, DC 20210
        *{Hard Copy - Regular Mail}*

Deputy Director
Division of Enforcement
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
        *{Hard Copy - Regular Mail}*

Janice W Stevenson
PO Box 400372
Cambridge, MA 02140
        *{Hard Copy - Regular Mail}*

Jagdish Chokshi, Dean
Neighborhood House Charter School
197A Centre Street
Dorchester, MA 02124
        *{Hard Copy - Regular Mail}*

Marthe B Kent
US Department of Labor - OSHA
Room E-340
JFK Federal Bldg
Boston, MA 02203
        *{Hard Copy - Regular Mail}*

**SERVICE SHEET** continued (2005SOX00087 Case Decision)     Page: 2

Ilene Sunshine, Esq
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
        *{Hard Copy - Regular Mail}*

Deputy Director
Division of Enforcement
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
        *{Hard Copy - Regular Mail}*

# Tab F

September 11, 2005
P.O. Box 400372
Cambridge, MA  02140


Administrative Review Board
U.S. Department of Labor
Room S-4309
200 Constitution Avenue, NW
Washington, DC  20210


CASE NO 2005-SOX-00087

In the Matter of

JANICE WILSON STEVENSON
Complainant

     v.

NEIGHBORHOOD HOUSE CHARTER SCHOOL
Respondent


<div align="center">PETITION FOR REVIEW</div>

The relationship between Section 806, Section 1107, and Section 3b of the SOX Act was
designed to prevent the type of analysis presented by the ALJ findings, conclusions and
order dated September 7, 2005.  The criminal prohibition against whistleblower
retaliation also directly relates back to the civil employee protection provision and the
SEC's regulatory authority.

Therefore the ALJ findings, conclusions and order dated September 7, 2005 must be
reversed in favor of Complainant and the ARB should issue a preliminary order to grant
all relief necessary to make the Complainant whole, including

      (a) reinstatement with all seniority rights,
      (b) back pay with interest, and
      (c) any "special damages" incurred, including reasonable attorney fees,
          expert witness fees and other "litigation costs."

In support thereof, Complainant states:

I am taking exception to the entire findings, conclusions and order issued by the ALJ
dated September 7, 2005 against my appeal dated July 24, 2005, my response dated
August 30, 2005; and motion dated September 2, 2005; the Regional Investigator's

decision dated July 8, 2005, against Complainant's original and amended complaints filed on July 1, 2005.

The Regional Investigator of the Department of Labor and the ALJ did not (1) act within the scope of authority, (2) comply with prescribed procedures, and (3) took action that was either arbitrary and capricious, or an abuse of discretion. Wyo. Farm Bureau Fed'n v. Babbitt, 199 F.3d 1224, 1231 (10th Cir. 2000) (citation omitted).

<div align="center">SPECIFIC OBJECTIONS TO ALJ ORDER:</div>

Background

Correction: in May 2004, Mary Nee, Deputy Headmaster, in NHCS' development office, employed me as temporary employee, through Ace Employment. During September 2004, I was hired as the Finance Manager at NHCS with human resources, payroll, account payable, account receivable, and public funding job duties.

Discussion, Findings of Fact and Conclusions of Law

    a. Complainant filed two complaints: 1) Original complaint pursuant to Section 806 and 1107 and 2) Amended Complaint pursuant to Section 806, in case, Section 1107 did not provide a cause of action, if Section 1107 did provide a cause of action I wanted it included as part of my complaint [see fax cover sheet]. In the attached letter, dated July 24, 2005, to my ALJ appeal, I stated, "Two sections of the Sarbanes-Oxley Act of 2002 apply to all companies, public and nonpublic." This clearly demonstrates that I was referring to my original complaint pursuant to Section 806 and Section 1107.

    b. I was entitled to discovery and was not allowed to conduct discovery.

    c. I was entitled to an on-the-record hearing before the DOL's Office of Administrative Law Judges (OALJ) did not have one.

    d. The ALJ should have considered my motion to impeachment the respondent's witness, Kevin Andrews, as creating a genuine issue of material fact. This person was not directly involved in my day-to-day work activities. In addition, I submitted direct evidence that Kevin Andrews is lying and obstructing justice in violation of Section 1107.

    e. The ALJ narrow interpretation of SOX Section 806 negates the criminal prohibition against whistleblower retaliation that also directly relates back to the civil employee protection provision. The SOX amended the federal obstruction of justice statute and criminalized retaliation against whistleblowers who provide "truthful information" to a "law enforcement officer" about the "commission or possible commission of any Federal offense. This provision of the SOX was not limited in its application to

publicly traded corporations; it covers every employer nationwide, as reference in my attached letter dated July 24, 2005.

   f.  The ALJ analysis of the issues did not consider the two provisions that cover every employer nationwide. The issues presented by the motion for summary decision are 1) whether NHCS is a covered employer under Sarbanes-Oxley and 2) whether the Complainant's reports of suspected fraudulent activity to her employer constitute protected activity under the Act. In light of (e), referenced above, the ALJ should have

       1.  granted all relief necessary to make the Complainant whole," including
          (a) reinstatement with all seniority rights,
          (b) back pay with interest, and
          (c) any "special damages" incurred, including reasonable attorney fees, expert witness fees and other "litigation costs."

## QUESTIONS

1. Is Sarbanes-Oxley limited to:

     a.  securities-related offenses or
     b.  employees of public companies?

2. Did Congress, intentionally or unintentionally, create a special class: whistleblowers at public companies, and left all others with unequal protection under Sarbanes-Oxley, a federal law?

3. Can retaliation occur against any person at private companies, including interfering with that person's employment, for providing truthful information to law enforcement officers relating to the possible commission of *any* federal offense?

## DUE PROCESS PROCEDURAL DEFICIENCIES

1. No discovery by complainant was allowed.
2. Complainant was not given procedural due process benefits a complainant with an attorney would have received.
3. My motion for impeachment of NHCS' witness' affidavit should have been considered by the ALJ during his against NHCS' motion for summary judgment in conjunction with was not ruled on. I felt that it was material to the case and my opposition to NHCS motion for summary judgment.

## I. REQUIREMENTS OF SARBANES-OXLEY FOR PRIVATE COMPANIES

A private company is a company that is not a public company.
en.wikipedia.org/wiki/Private_company

Private companies and entities such as NHCS have not entirely escaped the reach of Sarbanes-Oxley. Sarbanes-Oxley already contains important provisions that apply directly to them as well as to public companies.

- Notice of blackout periods under defined contribution plans.
  Sarbanes-Oxley Act § 1107 (amending 18 U.S.C. § 1513).

- Criminal liability for retaliation against informants.
  Sarbanes-Oxley Act § 1107 (amending 18 U.S.C. § 1513).

- Other criminal provisions.
  Sarbanes-Oxley adds other criminal penalties and remedies, including criminal liability for altering or destroying documents to impede any federal investigation or bankruptcy case, [Sarbanes-Oxley Act §§ 802, 1102 (amending 18 U.S.C. §§ 1519, 1512, respectively).] and enhanced liability for white collar crimes and securities fraud, whether involving public or private companies. [Titles IX, XI of Sarbanes-Oxley Act of 2002, also referred to as "White-Collar Crime Penalty Enhancement Act of 2002" and "Corporate Fraud Accountability Act of 2002," respectively.]

- Issuers of Public Debt. Many provisions of Sarbanes-Oxley expressly apply to private companies that have registered debt securities. School Districts raise funds by issuing debt in the municipal market [QZAB, Bonds]. Investors make loans to School Districts by purchasing the debt (Bonds). The Bonds are subject to the securities fraud rules in the Exchange Act and the SEC's Rule 10b-5 thereunder, and SEC's Rule 15c2-12 to mandate continuing disclosure for many bonds which are sold publicly.

The Regional Investigator of the Department of Labor and the ALJ rulings illegally limits the scope of Sarbanes-Oxley, thus, their decisions are erroneous. Complainant insists the focus of her appeals is that Sarbanes-Oxley has a provision that is not limited to securities-related offenses or to employees of public companies. This point may not have been artfully pleaded in my appeal as an attorney would have pleaded, but I insist it is the focus of my appeals:

> *Sarbanes-Oxley has a provision that is not limited to securities-related offenses or to employees of public companies.*

Sarbanes-Oxley criminalizes retaliation against any person, including interfering with that person's employment, for providing truthful information to law enforcement officers relating to the possible commission of *any* federal offense. Based on the Regional Investigator of the Department of Labor and the ALJ's interpretation of the Act,

Congress, through Sarbanes-Oxley, created a provision to protect whistleblowers of one type of company, pubic, and left unprotected all others whistleblowers.

The Regional Investigator of the Department of Labor and the ALJ rulings may suggest their utilization of the Act's gatekeeping function. However, the rulings of the Regional Investigator of the Department of Labor and the ALJ reflect tendencies of regionalism: to protect an area's politically and economically well off: in this case, the Board of Trustees of NHCS.


## BACKGROUND

I was an employee of Neighborhood House Charter School [NHCS]. Sarbanes-Oxley implementing regulations define "employee" as "an individual presently or formerly working for a company or company representative, an individual applying to work for a company or company representative, or an individual whose employment could be affected by a company or company representation". 29 C.F.R. Sec 1980.101 (2004).

I personally observed suspected fraudulent accounting practices by Jagdish Chokshi. I reported suspected fraudulent accounting practices by Jagdish Chokshi:

> a) As fast as money came in the front door from the parents and classroom fundraisers, money was going out the back door and allegedly into the pocket of Jagdish Chokshi's intern and girlfriend, Lynn Clark, and

> b) Jagdish Chokshi's unauthorized use of the NHCS ATM/credit card. In retaliation for reporting my concerns that I personally observed and heard from Jagdish Chokshi. Jagdish Chokshi terminated me.

NHCS may fill an important niche in a high poverty, black neighborhood; however, there is poor management, some of it criminal. There are non-minority employees retained by NHCS, despite illegal drug use which neither NHCS nor the board report to the police. In addition, non-minorities are retained despite the lack of credentials for the positions they are employed.

I know of three instances of adverse personnel actions at NHCS: ALL were against African Americans within a twelve-month period.

1. Sylvia Hampton, Director of Development
2. Darol Ware, Technologist
3. Janice Stevenson, Finance Manager.

I relished the challenge to assist NHCS in its business processes transition from a third party administrator, but had been stunned to find far more problems than I anticipated. There were lapses in reconciling petty cash, bank statements, and mislaid bills. I believe

there is wider malfeasance but had not had the opportunity to document it because of my termination. NHCS' board of trustees and senior management did not have appropriate internal controls.

The Regional Investigator of the Department of Labor and the ALJ refused to investigate my complaint and/or to allow discovery. The Regional Investigator of the Department of Labor and the ALJ decision may meet the letter of the law, but not the spirit of the law - to gain trust through a grassroots standard of accountability. The difference means a shift from top-level auditing to a meaningful cultural change of management by distributing responsibility and empowering employees to participate in the process. The public has been so shaken by managerial malfeasance. The intent of Sarbanes-Oxley means culture change, not just accounting change.

This Board should reverse the findings, conclusion, and order of the ALJ, dated September 7, 2005 and grant all relief necessary to make the Complainant whole," including (a) reinstatement with all seniority rights, (b) back pay with interest, and (c) any "special damages" incurred, including reasonable attorney fees, expert witness fees and other "litigation costs".

Respectfully Submitted,

*Janice W. Stevenson*

Janice Wilson Stevenson

## CERTIFICATE OF SERVICE

I certify that a copy of the Petition for Review was sent via facsimile to all parties listed in the cc section on September 11, 2005.

Respectfully submitted,

*Janice W. Stevenson*

Janice Wilson Stevenson
P.O. Box 400372
Cambridge, MA  02140
 617-721-2638 – p
 413-638-7997 – f, v


Cc
Administrative Review Board
Room S-4309
200 Constitution Avenue, N.W.
Washington, D.C. 20210
Telephone: (202) 693-6200
Fax: (202) 693-6220

Chief Administrative Law Judge
Office of Administrative Law Judges
United States Department of Labor
Suite 400 North
800 K Street, NW
Washington, DC 20001-8002
(202) 693-7542
(202) 693-7365 (FAX)

Assistant Secretary
OSHA
Division of Fair Labor Standards
U.S. Department of Labor
Room N-2716, FPB
200 Constitution Avenue, N.W.
Washington, DC 20210
 (202) 693-2000 - p
 (202) 693-2106 - f

Howard M. Radzely
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
Room N-2716, FPB
200 Constitution Avenue, N.W.
Washington, DC 20210
202-693-5260 - p
202-693-5538 - f

Ilene Sunshine
Sullivan & Worcester, LLP
One Post Office Square
Boston, MA  02109
617-338-2880 - p
617-338-2883 – f

NHCS
197A Centre Street
Dorchester, MA 02140
(617) 474-1103 - f

# Tab G

**U.S. Department of Labor**        Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C. 20210



In the Matter of:

JANICE WILSON STEVENSON,              ARB CASE NO.  05-156

        COMPLAINANT,                ALJ CASE NO.  2005-SOX-87

   v.                                DATE: SEP **2 6** 2005

NEIGHBORHOOD HOUSE CHARTER
SCHOOL,

      RESPONDENT.

BEFORE:    THE ADMINISTRATIVE REVIEW BOARD

## NOTICE OF APPEAL
### AND
### ORDER ESTABLISHING BRIEFING SCHEDULE

The Complainant has filed a petition for review of the Decision and Order Granting Summary Decision and Dismissing Complaint issued by Daniel F. Sutton on September 7, 2005. The following briefing schedule is established in this case. The Complainant may file an initial brief, not to exceed thirty (30) double-spaced typed pages, on or before **October 24, 2005.** If the Complainant fails to file the initial brief on time, the Board may dismiss the Complainant's appeal. *See, e.g.*, *McQuade v. Oak Ridge Operations* Office, ARB No. 02-087, ALJ Nos. 1999-CAA-7 to 10 (ARB Oct. 18, 2002); *Pickett v. TVA*, ARB No. 02-076, ALJ No. 2001-CAA-18 (ARB Oct. 9, 2002). The Respondent may file a reply brief, not to exceed thirty (30) double-spaced typed pages, on or before **November 23, 2005.** The Complainant may file a rebuttal brief, exclusively to the reply brief and not to exceed ten (10) double-spaced typed pages, on or before **December 8, 2005.**

**All motions and other requests for extraordinary action by the Board (including, but not limited to, requests for extensions of time or expansion of page limitations) shall be in the form of a motion appropriately captioned, titled, formatted and signed, consistent with customary practice before a court.** *See, e.g.*, **Fed. R. Civ. P. 7(b).**

**All pleadings, briefs and motions should be prepared in Courier (or typographic scalable) 12 point, 10 character-per-inch type or larger, double-spaced with minimum**

one inch left and right margins and minimum 1.25 inch top and bottom margins, printed on 8½ by 11 inch paper, and are expected to conform to the stated page limitations unless prior approval of the Board has been granted. If a party fails to file a brief that complies with the requirements of this briefing order, the Board may refuse to file the brief, and if the brief is an initial brief, the Board may dismiss the appeal. *See, e.g., Powers v. Pinnacle Airlines, Inc.,* ARB No. 04-102, ALJ No. 2004-AIR-6 (ARB Dec. 30, 2004).

An original and four copies of all pleadings and briefs shall be filed with the Administrative Review Board, U.S. Department of Labor, 200 Constitution Avenue, N.W., Room S-4309, Washington, D.C., 20210.

**FOR THE ADMINISTRATIVE REVIEW BOARD:**

Janet R. Dunlop
General Counsel

Note:    Questions regarding any case pending before the Board should be directed to the Board's legal assistant, Tisa McRae.    Telephone:  (202) 693-6200
                                                                                          Facsimile:  (202) 693-6220

# Tab H



**U.S. Department of Labor**     Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C. 20210

In the Matter of:

JANICE WILSON STEVENSON,     ARB CASE NO. 05-156

      COMPLAINANT,     ALJ CASE NO. 2005-SOX-87

    v.     DATE: NOV 2 9 2005

NEIGHBORHOOD HOUSE CHARTER
SCHOOL,

    RESPONDENT.

BEFORE:     THE ADMINISTRATIVE REVIEW BOARD

Appearances:

*For the Complainant:*
    Janice W. Stevenson, pro se, *Cambridge, Massachusetts*

## FINAL DECISION AND ORDER DISMISSING APPEAL

This case arose when the Complainant, Janice W. Stevenson, filed a complaint with the Department of Labor's Occupational Safety and Health Administration (OSHA) alleging that the Respondent, Neighborhood House Charter School (NHCS), discriminated against her in violation of the whistleblower protection provisions of Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002.[1]  Stevenson alleged that NHCS terminated her

---

[1]     18 U.S.C.A § 1514A (West 2002).  Section 806 covers companies with a class of securities registered under section 12 of the Securities Exchange Act of 1934, 15 U.S.C § 78l, and companies required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 780(d)), or any officer, employee, contractor, subcontractor, or agent of such companies.  Section 806 protects employees who provide information to a covered employer or a Federal agency or Congress relating to alleged violations of 18 U.S.C. 1341, 1343, 1344, or 1348, or any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.  In addition, employees are protected against discrimination when they have filed, testified in, participated in, or otherwise assisted in a proceeding filed or about to be filed against one of the above companies relating to any such violation or alleged violation.  68 FR 31864 (May 28, 2003).

2

employment in retaliation for a report that she made to her employer regarding suspected fraudulent activity.

OSHA dismissed Stevenson's complaint without investigation because it found that NHCS is not a covered SOX employer. Stevenson requested a hearing before a Department of Labor Administrative Law Judge (ALJ).[2] NHCS filed a motion for summary decision arguing that: (1) NHCS is not a covered employer and (2) Stevenson did not engage in protected activity. The ALJ agreed with NHCS that it was not a covered employer and that accordingly, NHCS was entitled to summary decision because Stevenson alleged no genuine issue of material fact for the ALJ's determination.[3]

Stevenson filed a petition for review with the Administrative Review Board.[4] The Secretary of Labor has delegated her authority to issue final agency decisions under the SOX to the Board.[5] On September 26, 2005, the Board issued a Notice of Appeal and Order Establishing Briefing Schedule. The Order provided:

> The Complainant may file an initial brief, not to exceed thirty (30) double-spaced typed pages, on or before **October 24, 2005.** If the Complainant fails to file the initial brief on time, the Board may dismiss the Complainant's appeal. *See, e.g., McQuade v. Oak Ridge Operations* Office, ARB No. 02-087, ALJ Nos. 1999-CAA-7 to 10 (ARB Oct. 18, 2002); *Pickett v. TVA*, ARB No. 02-076, ALJ No. 2001-CAA-18 (ARB Oct. 9, 2002).

Stevenson did not file an opening brief on or before October 24, 2005, in compliance with the Board's briefing schedule. On November 1, 2005, Stevenson filed a Motion for Extension of Time requesting the Board to permit her to file her brief on or before December 8, 2005. Stevenson indicated that she had learned on October 13, 2005, that NHCS's attorney "is threatening accelerated discovery to Complainant's attorney on another legal proceeding" and indicated that she could not afford to hire an attorney in this case but she offered no explanation for her failure to either timely file her opening brief, pro se, or a timely motion for an extension of time.

---

[2]     29 C.F.R. § 1980.106 (2005).

[3]     Decision and Order Granting Summary Decision and Dismissing Complaint (D. & O.) at 6.

[4]     29 C.F.R. § 1980.110(a).

[5]     *See* Secretary's Order 1-2002 (Delegation of Authority and Responsibility to the Administrative Review Board), 67 Fed. Reg. 64272 (Oct. 17, 2002). *See also* 29 C.F.R. § 1980.110.

3

Accordingly, because Stevenson was aware of the consequences of failing to timely file her brief, but nevertheless ignored the Board's briefing schedule and failed to proffer, much less establish, a persuasive justification for her failure to either timely file her opening brief or a motion for extension of time, we **DISMISS** her appeal.

**SO ORDERED.**

M. CYNTHIA DOUGLASS
Chief Administrative Appeals Judge

WAYNE C. BEYER
Administrative Appeals Judge

## ADMINISTRATIVE REVIEW BOARD

### Certificate of Service

**ARB CASE NAME:**  *Janice Wilson Stevenson v. Neighborhood House Charter School*

**ARB CASE NO.  :**  **05-156**

**ALJ CASE NO.  :**  **2005-SOX-87**

**DOCUMENT  :**  **Final Decision and Order Dismissing Appeal**

A copy of the above referenced document was sent to the following persons on
NOV **2 9** 2005

*Lisa McRae*

**CERTIFIED MAIL:**

Janice Wilson Stevenson
P.O. Box 400372
Cambridge, MA  02140

Ilene Sunshine, Esq.
Sullivan & Worcester, LLP
One Post Office Square
Boston, MA  02109

NHCS
197A Centre Street
Dorchester, MA  02140

2

**REGULAR MAIL:**

Steven J. Mandel, Esq.
Associate Solicitor
U.S. Department of Labor/SOL
200 Constitution Avenue, NW
Room N-2716, FPB
Washington, DC 20210

Howard Radzely, Esq.
Solicitor of Labor
U.S. Department of Labor
200 Constitution Ave., NW
Room S-2002
Washington, DC 20210

Directorate of Enforcement Programs
U.S. Department of Labor/OSHA
200 Constitution Avenue, NW
Room N-3603, FPB
Washington, DC 20210

Hon. John M. Vittone
Chief Administrative Law Judge
Office of Administrative Law Judges
800 K Street, NW, Suite 400
Washington, DC 20001-8002

Hon. Daniel F. Sutton
District Chief Administrative Law Judge
Office of Administrative Law Judges
O'Neill Federal Building – Room 411
10 Causeway Street
Boston, MA 02222

# Tab I

In the Matter of:

JANICE WILSON STEVENSON,            ARB CASE NO.  05-156

    COMPLAINANT,                   ALJ CASE NO.  2005-SOX-87

    V.                             DATE:  SEP 26, 2005

NEIGHBORHOOD HOUSE CHARTER SCHOOL,

    RESPONDENT,

BEFORE:  THE ADMINISTRATIVE REVIEW BOARD


Motion for Extension of Time
[Order to Show Cause]

Complainant respectfully submits this motion to request an extension of time [Order to Show Cause] to file her initial brief on or before December 8, 2005.  In support thereof the complainant states:

1. On or around October 13, 2005, Complainant learned that Respondent's attorney [Seyfarth and Shaw] is threatening accelerated discovery to Complainant's attorney on another legal proceeding against Respondent that Complainant is involved in (1:05-CV-11584-DPW, Stevenson v. Neighborhood House Charter School, filed 07/28/05) in US District Court.

2. Complainant has not listed an attorney in regards to the appeal before this Honorable Board and Complainant does not know why Respondent contacted

Mr. John W. Davis, Esq, and spoke to him regarding the matter before this Honorable Administrative Review Board.

3. Complainant cannot afford to hire another attorney to pursue her OSHA administrative complaint and appeal.

4. If this Honorable Administrative Review Board does not grant an extension, then Complainant will feel compelled to not file her initial brief in this matter and this Honorable Administrative Review Board will dismiss her appeal.

5. Respondent's actions are retaliatory to Complainant for exercising her rights under federal law.

Respectfully submitted,

*Janice W. Stevenson*

Janice Wilson Stevenson
P.O. Box 400372
Cambridge, MA  02140

CERTIFICATE OF SERVICE

I certify that a copy of the Motion for Extension of Time
[Order to Show Cause] was sent via facsimile, electronic,
or regular mail to all parties listed below on October 31,
2005.

Respectfully submitted,

*Janice W. Stevenson*

Janice Wilson Stevenson
P.O. Box 400372
Cambridge, MA  02140
Cc
Administrative Review Board
Room S-4309
200 Constitution Ave, N.W.
Washington, D.C. 20210
Telephone: (202) 693-6200
Fax: (202) 693-6220

Chief ALJ, OALJ
USDOL, Suite 400 North
800 K Street, NW
Washington, DC 20001-8002
(202) 693-7542
(202) 693-7365 (FAX)

Assistant Secretary
OSHA, Div FLSA
USDOL, Room S-2002
200 Constitution Ave, N.W.
Washington, DC 20210
(202) 693-2000 - p
(202) 693-1340- f

Howard M. Radzely
Associate Solicitor
Division   of   Fair   Labor
Standards
U.S. Department of Labor
Room N-2716, FPB
200 Constitution Ave, N.W.

Washington, DC 20210
202-693-5260 - p
202-693-5538 - f

MR. RICHARD E FAIRFAX, DEP
U.S. DDOL/OSHA)Room: N-3119
200 Constitution Ave, N.W.
Washington, D.C. 20210
(202) 693-2100 Phone
(202) 693-1681 FAX

Honorable Daniel F. Sutton
District Chief ALJ
OALJ
O'Neill Federal Building -
Room 411
10 Causeway Street
Boston, MA 02222
(617) 223-9335 - phone
(617) 223-4254 - fax

Lynn A. Kappelman
Seyfarth & Shaw
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02110-2028
617-946-4800 - phone
617-946-4801 - fax

Ilene Sunshine
Sullivan & Worcester, LLP
One Post Office Square
Boston, MA  02109
617-338-2880 - p
617-338-2883 - f

NHCS
197A Centre Street
Dorchester, MA 02140
(617) 474-1103 - f

# Tab J



**SULLIVAN & WORCESTER**

Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

T 617 338 2800
F 617 338 2880
www.sandw.com

August 19, 2005

CERTIFIED MAIL NO. 7004 0550 0000 4959 4633
RETURN RECEIPT REQUESTED
AND BY FACSIMILE

Ms. Sharon Tetrault
Internal Revenue Service
SB/SE, Compliance
BIRSC, SS-8 Unit
Department of the Treasury
40 Lakemont Road
Newport, Vermont 05855-1555

Form:       SS-8
Case #:     41957
Re:         Janice Stevenson (SSN 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)

Dear Ms. Tetrault:

     I am writing in response to your letter dated July 21, 2005 and enclose the following materials:

    Tab A:    A copy of your letter dated July 21, 2005[1];

    Tab B:    A copy of the completed Form SS-8, as requested and including attachments;

    Tab C:    Responses to the "Additional Information Required for a Determination" request;

    Tab D:    A copy of my letter to the Internal Revenue Service relating to Form 4598 dated August 5, 2005, with attachments; and

    Tab E:    A copy of Form 2848 authorizing me to represent the Neighborhood House Charter School ("NHCS" or the "School") in connection with this matter.

---

[1] Mr. Cabot, the former Chairman of the Board of Trustee of the School, has passed away. Please direct future correspondence to Kevin Andrews, Headmaster.

    And in the interest of full disclosure, I would like to point out that I am a Trustee of the School, and also a partner in Sullivan & Worcester LLP, a law firm that provides substantial *pro bono* services to the School.

Internal Revenue Service
August 19, 2005
Page 2

As further detailed in the attached materials, Ms. Stevenson was assigned to NHCS through her company TuckNT, to provide various services to NHCS, including human resources and payroll administration. In that capacity, Ms. Stevenson's duties included providing advice to NHCS on precisely the issue of employee vs. independent contractor classification and ensuring that the School's payroll and information return reporting obligations complied with the law. Ms. Stevenson was content with her treatment as an independent contractor to NHCS and never took any steps to enter herself on the School's employee payroll or recordkeeping system. She also neglected to have NHCS file with the IRS any information return for payments NHCS made to TuckNT. Ms. Stevenson only began to allege misclassification after her relationship with the School ended.

Immediately after the School terminated its relationship with TuckNT in June of 2005, Ms. Stevenson commenced an aggressive campaign of defamation and harassment against the School. Her claim of worker misclassification is part of this campaign. As described in this submission, the facts support that Ms. Stevenson was properly classified as an independent contractor of the School, and that even she does not believe that the classification was erroneous. Thus, for example, during her period of service to the School, she described herself as an "independent contractor" in several written communications that she authored, and only began referring to herself as a "common law employee" after her Company's services were terminated.

I can only hope that the Service quickly recognize this case for what it is – an attempt by a disgruntled former service provider to disrupt the operations of the school – and conclude, based on the facts contained herein, that the relationship between the School and TuckNT was a legitimate business relationship and that Ms. Stevenson was never an employee of the School.

If you have any further questions, please feel free to contact me at (617) 338-2938.

Sincerely,

David A. Guadagnoli

Enclosures

cc: Kevin Andrews, Headmaster

Under penalties of perjury, I declare that I have examined this submission, including accompanying documents and, to the best of my knowledge and belief, they contain all the relevant facts relating to the request, and such facts are true, correct, and complete.

NEIGHBORHOOD HOUSE CHARTER SCHOOL

By: Jagdish Chokshi
Its: Dean of Administration

{B0433237; 3}

**Internal Revenue Service**
SB/SE, Compliance
BIRSC, SS-8 Unit

**Department of the Treasury**
40 Lakemont Road
Newport, VT 05855-1555

July 21, 2005

Charles C. Cabot
Neighborhood House Charter School
197A Center Street
Dorchester, MA 02124

Form: SS-8

Person to Contact:
**Sharon Tetrault 03-00103**

Telephone Number: 802-751-4423
Facsimile Number: 802-751-4455

Refer Reply to: Case # 41957
Re: Janice Stevenson
SSN: 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

Dear Mr. Cabot:

Please direct this letter to the person who has authority to interact with the Internal Revenue Service on behalf of this firm. The person signing for a corporation must be an officer of the corporation who has personal knowledge of the facts. The person signing for a trust, a state law partnership, or a limited liability company must be, respectively, a trustee, general partner, or member-manager who has personal knowledge of the facts.

We have received a request from the above-named worker to determine her correct tax status for services rendered to you in tax years: 2004 and 2005.

It is our usual procedure in cases of this type to give each party at interest an opportunity to present a statement of the facts since any decision reached by us will affect the employment tax status of all parties involved.

Please complete the enclosed Form SS-8 and furnish the information requested in the enclosed Additional Information Required for a Determination. A fill-in form is also available on-line at www.irs.gov that allows you to enter information and print the completed Form SS-8. Provide information for ALL years the worker provided services for you, whether or not they are the focus of this request. Determinations are based on the entire work relationship between the parties involved. If any of the answers are unknown, or the questions are not applicable, please mark either "Unknown" or "Not Applicable" (N/A) for those items. Also, please submit copies of any 1099-MISC or W-2 forms you may have issued to the worker for each tax year the worker provided services to you. If both forms were issued to the worker over the course of time, please attach a statement explaining whether the worker's services changed when the income was reclassified by you. Finally, please print or type your name as well as signing the SS-8 form.

Your expeditious response would be appreciated. You may respond by either mailing or faxing the requested information to this office. However, should we not receive your Form SS-8 within 30 days from the date of this letter, we will issue a determination or information letter to you and the worker based on the information available to us. Additionally, we may provide an information report pertaining to this matter to the IRS office having examination jurisdiction for your area for whatever action they deem necessary.

As this administrative process is not related to an IRS examination, the relief provisions of section 530 of the 1978 Revenue Act will not be considered in the course of this process, and the resulting determination letter will not constitute a notice of determination under the provisions of section 7436 of the Internal Revenue Code.

If you realize that you misclassified the worker after reviewing the enclosed information, you may correct at this time, rather than completing Form SS-8 and waiting for us to render a determination. This would involve correcting the pay documents issued to the worker and filing/amending your employment tax returns. Reduced tax rates are available to firms that meet certain criteria. Please call this office for information/instructions on pursuing this option.

If you have any questions, please call this office at the telephone number shown above and have your case number available. Your case number is 41957. If the telephone number is outside your local calling area, there will be a long-distance charge to you. Upon your request, we can return the call. Thank you for your cooperation and prompt response.

Sincerely,

*Sharon Sofranus*

for Gail Lontine
Employment Tax Manager

Enclosures:   Form SS-8
              Add'l Information Required for a Determination
              Return Envelope
              Publication 1779

Letter 3897 (CG) (Rev. 9-2003)
Catalog Number 36877Z

## ADDITIONAL INFORMATION REQUIRED FOR A DETERMINATION

1. A description of your business operations to include the size of the business and the numbers and occupations of workers engaged.

2. If the firm is a limited liability company (LLC), please inform us as to whether it is a single-member LLC or a multi-member LLC. Please inform us if the entity has elected to be taxed as a corporation.

3. A list of the names, Social Security numbers, addresses, and telephone numbers of all workers performing the same work referred to in the SS-8 determination request.

4. A complete statement of the business reason for your classification of the worker and any advice, law, pending legislation, or legal precedent on which you relied.

5. Provide copies of all related documents, i.e., contracts, wills, deeds, lease agreements, and other instruments and documents, and a description of their bearing on your classification of the worker.

6. Have you been involved in any litigation involving this worker or this worker's occupation? If so, please describe the circumstances, dates, and outcome.

7. Has your business undergone an IRS examination in the past? Please indicate the tax years involved, the type of examination, and whether this issue was addressed. Provide a copy of any resulting closing agreement, granting of section 530 relief, or other closing documents.

8. Have there been any previous rulings on the same or similar issue for you, a predecessor entity, or a related business, i.e., family members, parent/subsidiary, common parent corporation, affiliated group, etc? If so, please describe and provide copies of any closing agreements.

9. Have you previously submitted a request concerning this issue and then withdrawn it? Please specify the date requested, date withdrawn, and the reason for withdrawal.

10. Has this issue been submitted to or considered by the Social Security Administration or the Railroad Retirement Board? Please specify the date requested and provide a copy of the finding or other outcome.

If any information and/or documentation is submitted subsequent to the Form SS-8 submission, it must be accompanied by the following declaration: "**Under penalties of perjury, I declare that I have examined [insert type of submission, as appropriate] including accompanying documents and, to the best of my knowledge and belief, it/they contain(s) all the relevant facts relating to the request, and such facts are true, correct, and complete.**" This declaration must be signed and dated by the taxpayer, <u>not</u> the taxpayer's representative.

Form **SS-8**
(Rev. June 2003)
Department of the Treasury
Internal Revenue Service

## Determination of Worker Status
## for Purposes of Federal Employment Taxes
## and Income Tax Withholding

OMB No. 1545-0004

| Name of firm (or person) for whom the worker performed services | Worker's name |
|---|---|
| The Neighborhood House Charter School | Janice W. Stevenson (doing business as TuckNT) |

| Firm's address (include street address, apt. or suite no., city, state, and ZIP code) | Worker's address (include street address, apt. or suite no., city, state, and ZIP code) |
|---|---|
| 197A Centre Street<br>Dorchester, Massachusetts 02124 | P.O. Box 400372<br>Cambridge, Massachusetts 02140 |

| Trade name | Telephone number (include area code) | Worker's social security number |
|---|---|---|
| same | ( 617 ) 721-2638 | 437 : 04 : 7512 |

| Telephone number (include area code) | Firm's employer identification number | Worker's employer identification number (if any) |
|---|---|---|
| ( 617 ) 825-0703 | 04 : 3288541 | 20 : 1513588 |

If the worker is paid by a firm other than the one listed on this form for these services, enter the name, address, and employer identification number of the payer. **See attached statement.**

### Important Information Needed To Process Your Request

We must have your permission to disclose your name and the information on this form and any attachments to other parties involved with this request. Do we have your permission to disclose this information? . . . . . . . ☑ Yes ☐ No
If you answered "No" or did not mark a box, we will not process your request and will not issue a determination.

**You must answer ALL items OR mark them "Unknown" or "Does not apply." If you need more space, attach another sheet.**

**A** This form is being completed by: ☑ Firm ☐ Worker; for services performed ___**August 20, 2004**___ to ___**June 3, 2005**___ .
(beginning date)          (ending date)

**B** Explain your reason(s) for filing this form (e.g., you received a bill from the IRS, you believe you received a Form 1099 or Form W-2 erroneously, you are unable to get worker's compensation benefits, you were audited or are being audited by the IRS). ------------------
**See attached statement.**
------------------------------------------------------------
------------------------------------------------------------

**C** Total number of workers who performed or are performing the same or similar services ___**0**___ .

**D** How did the worker obtain the job? ☐ Application ☐ Bid ☐ Employment Agency ☑ Other (specify) **see attached**

**E** Attach copies of all supporting documentation (contracts, invoices, memos, Forms W-2, Forms 1099, IRS closing agreements, IRS rulings, etc.). In addition, please inform us of any current or past litigation concerning the worker's status. If no income reporting forms (Form 1099-MISC or W-2) were furnished to the worker, enter the amount of income earned for the year(s) at issue $_____ .

**F** Describe the firm's business. **See attached statement.** ------------------------------------------
------------------------------------------------------------
------------------------------------------------------------
------------------------------------------------------------

**G** Describe the work done by the worker and provide the worker's job title. **See attached statement.** ------------------
------------------------------------------------------------
------------------------------------------------------------
------------------------------------------------------------

**H** Explain why you believe the worker is an employee or an independent contractor. **See attached statement.** ------------
------------------------------------------------------------
------------------------------------------------------------
------------------------------------------------------------

**I** Did the worker perform services for the firm before getting this position? . . . . . . . . . ☑ Yes ☐ No ☐ N/A
If "Yes," what were the dates of the prior service? **See attached statement.** ------------------------------------
If "Yes," explain the differences, if any, between the current and prior service. ------------------------------------
**See attached statement.**
------------------------------------------------------------
------------------------------------------------------------
------------------------------------------------------------

**J** If the work is done under a written agreement between the firm and the worker, attach a copy (preferably signed by both parties). Describe the terms and conditions of the work arrangement. **No written agreement.** ------------------------------
------------------------------------------------------------

For Privacy Act and Paperwork Reduction Act Notice, see page 5.          Cat. No. 16106T          Form **SS-8** (Rev. 6-2003)

Form SS-8 (Rev. 6-2003)                                                                                                                    Page **2**

**Part I**    **Behavioral Control**

1    What specific training and/or instruction is the worker given by the firm?  **See attached statement.**

2    How does the worker receive work assignments?  **See attached statement.**

3    Who determines the methods by which the assignments are performed?  **See attached statement.**

4    Who is the worker required to contact if problems or complaints arise and who is responsible for their resolution?
     **See attached statement.**

5    What types of reports are required from the worker? Attach examples.
     **See attached statement.**

6    Describe the worker's daily routine (i.e., schedule, hours, etc.).
     **See attached statement.**

7    At what location(s) does the worker perform services (e.g., firm's premises, own shop or office, home, customer's location, etc.)?
     **See attached statement.**

8    Describe any meetings the worker is required to attend and any penalties for not attending (e.g., sales meetings, monthly meetings, staff
     meetings, etc.).  **See attached statement.**

9    Is the worker required to provide the services personally? . . . . . . . . . . . . . . . . . □ Yes  ☑ No

10   If substitutes or helpers are needed, who hires them?  **N/A**

11   If the worker hires the substitutes or helpers, is approval required?  **N/A** . . . . . . . . . □ Yes  □ No
     If "Yes," by whom?  **N/A**

12   Who pays the substitutes or helpers?  **N/A**

13   Is the worker reimbursed if the worker pays the substitutes or helpers?  **N/A** . . . . . . . □ Yes · □ No
     If "Yes," by whom?

**Part II**    **Financial Control**

1    List the supplies, equipment, materials, and property provided by each party:
     The firm  **See attached statement.**
     The worker  **See attached statement.**
     Other party

2    Does the worker lease equipment? . . . . . . . . . . . . . . . . . . . . . . □ Yes  ☑ No
     If "Yes," what are the terms of the lease? (Attach a copy or explanatory statement.)  **See attached statement.**

3    What expenses are incurred by the worker in the performance of services for the firm?  **See attached statement.**

4    Specify which, if any, expenses are reimbursed by:
     The firm  **See attached statement.**
     Other party

5    Type of pay the worker receives:  □ Salary    □ Commission    □ Hourly Wage    □ Piece Work
     □ Lump Sum ·    ☑ Other (specify)  **See attached statement.**
     If type of pay is commission, and the firm guarantees a minimum amount of pay, specify amount  $ _____  **N/A**

6    Is the worker allowed a drawing account for advances? . . . . . . . . . . . . . . . □ Yes  ☑ No
     If "Yes," how often?
     Specify any restrictions.

7    Whom does the customer pay?  **See attached statement.** . . . . . . . □ Firm         □ Worker
     If worker, does the worker pay the total amount to the firm?  □ Yes    □ No    If "No," explain.  **See attached statement.**

8    Does the firm carry worker's compensation insurance on the worker? . . . . . . . . . . . □ Yes  ☑ No

9    What economic loss or financial risk, if any, can the worker incur beyond the normal loss of salary (e.g., loss or damage of equipment,
     material, etc.)?  **See attached statement.**

Form **SS-8** (Rev. 6-2003)

Form SS-8 (Rev. 6-2003)                                                                                                           Page **3**

**Part III**  Relationship of the Worker and Firm

1  List the benefits available to the worker (e.g., paid vacations, sick pay, pensions, bonuses).  See attached statement.
.........................................................................................................................................

2  Can the relationship be terminated by either party without incurring liability or penalty? . . . . . . . . . ☑ Yes  ☐ No
If "No," explain your answer. ....................................................................................................

3  Does the worker perform similar services for others? . . See attached statement. . . . . . . . . . ☐ Yes  ☐ No
If "Yes," is the worker required to get approval from the firm? See attached statement. . . . . . . . . ☐ Yes  ☑ No

4  Describe any agreements prohibiting competition between the worker and the firm while the worker is performing services or during any later
period. Attach any available documentation.  No such agreements. ..........................................................
...........................................................................................................................................

5  Is the worker a member of a union? . See attached statement. . . . . . . . . . . . . ☐ Yes  ☑ No

6  What type of advertising, if any, does the worker do (e.g., a business listing in a directory, business cards, etc.)? Provide copies, if applicable.
See attachments to attached statement.

7  If the worker assembles or processes a product at home, who provides the materials and instructions or pattern? N/A ...................
...........................................................................................................................................

8  What does the worker do with the finished product (e.g., return it to the firm, provide it to another party, or sell it)? N/A ................
...........................................................................................................................................

9  How does the firm represent the worker to its customers (e.g., employee, partner, representative, or contractor)? N/A ...................

10  If the worker no longer performs services for the firm, how did the relationship end? See attached statement. ........................
...........................................................................................................................................

**Part IV**  For Service Providers or Salespersons—Complete this part if the worker provided a service directly to
customers or is a salesperson. N/A -- Part IV is not applicable to this worker.

1  What are the worker's responsibilities in soliciting new customers? ....................................................................
...........................................................................................................................................

2  Who provides the worker with leads to prospective customers? ........................................................................

3  Describe any reporting requirements pertaining to the leads. ..........................................................................
...........................................................................................................................................

4  What terms and conditions of sale, if any, are required by the firm? ..................................................................

5  Are orders submitted to and subject to approval by the firm? . . . . . . . . . . . . . . ☐ Yes  ☐ No

6  Who determines the worker's territory? ..............................................................................................

7  Did the worker pay for the privilege of serving customers on the route or in the territory? . . . . . . . . ☐ Yes  ☐ No
If "Yes," whom did the worker pay? ...................................................................................................
If "Yes," how much did the worker pay? . . . . . . . . . . . . . . . . . . . . $ _____ .

8  Where does the worker sell the product (e.g., in a home, retail establishment, etc.)? ...................................................
...........................................................................................................................................

9  List the product and/or services distributed by the worker (e.g., meat, vegetables, fruit, bakery products, beverages, or laundry or dry cleaning
services). If more than one type of product and/or service is distributed, specify the principal one. ....................................
...........................................................................................................................................

10  Does the worker sell life insurance full time? . . . . . . . . . . . . . . . . . . . ☐ Yes  ☐ No

11  Does the worker sell other types of insurance for the firm? . . . . . . . . . . . . . . . ☐ Yes  ☐ No
If "Yes," enter the percentage of the worker's total working time spent in selling other types of insurance. _____ %

12  If the worker solicits orders from wholesalers, retailers, contractors, or operators of hotels, restaurants, or other similar
establishments, enter the percentage of the worker's time spent in the solicitation. . . . . . . . . . _____ %

13  Is the merchandise purchased by the customers for resale or use in their business operations? . . . . . . . ☐ Yes  ☐ No
Describe the merchandise and state whether it is equipment installed on the customers' premises. ......................................
...........................................................................................................................................

**Part V**  Signature (see page 4)

Under penalties of perjury, I declare that I have examined this request, including accompanying documents, and to the best of my knowledge and belief, the facts
presented are true, correct, and complete.

Signature ▶ _____  Title ▶ DEAN OF ADMINISTRATION  Date ▶ AUG 19, 2005
(Type or print name below)

Form **SS-8** (Rev. 6-2003)

**The Neighborhood House Charter School (TIN 04-3288541)
Statements for IRS Form SS-8 regarding Janice Stevenson (SSN 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)
Case Number 41957**

<u>Attached Statements to Form SS-8</u>

<u>Worker paid by a firm other than the one listed.</u>  It is believed that Ms. Stevenson (the "Worker") was being compensated by her company, TuckNT, P.O. Box 400342, Cambridge, Massachusetts 02140 (TIN 20-1513588[1]).

B.  <u>Reason(s) for filing this Form.</u>  The IRS has requested that NHCS complete this Form, apparently due to an assertion by Worker that she was a common law employee of NHCS.

D.  <u>How did the Worker obtain the job?</u>  Worker had been performing services at NHCS through Ace Employment Agency, a temporary employment agency ("Ace").  In that capacity, she provided some basic accounting services as well as various office administration services.

By August of 2004, NHCS was looking for help with finance, payroll, and human resources services, as well as assistance with the preparation of grant applications, at least on a temporary basis.[2]  The existing staff of NHCS did not have sufficient capacity to handle this work.  NHCS publicly posted a job opening for a grants manager, and Worker indicated her desire to provide those services.  Since Worker held herself out as being experienced in these areas (she has described herself as, for example, a "human resource [sic] professional"), NHCS agreed to retain her services, at which point Worker ended her arrangement with Ace and, at Worker's insistence, had NHCS engage her through what she described as her company, TuckNT.  NHCS entered into a direct engagement with TuckNT for Worker's services starting August 20, 2004.  NHCS viewed the arrangement with TuckNT as temporary.

E.  <u>Supporting Documentation, etc.</u>

- There is no written contract between NHCS and TuckNT.

- A representative invoice from TuckNT for services rendered by Worker (and presumably prepared by Worker) is attached with the materials at Tab D.

- Worker has recently filed a suit in Federal District Court alleging, among other things, that she was improperly characterized as an independent contractor by the School.

- As discussed further below, TuckNT was retained to perform, among other things, payroll administration for NHCS.  In that capacity, TuckNT and/or Worker were

---

[1] Worker entered this TIN for TuckNT into the School's computer system for processing accounts payable and it is assumed to be accurate.
[2] The School previously had received accounting, payroll, benefit administration, and human resources support through a contract with another entity.  By the summer of 2004, the School had decided to sever that relationship and thus was in the process of building its own internal systems in these areas.

The Neighborhood House Charter School (TIN 04-3288541)
IRS Form SS-8 regarding Janice Stevenson (SSN 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)
Case Number 41957
Page 2

primarily responsible for arranging for the filing of information returns through Ceridian, the payroll and information return reporting service used by NHCS. Worker failed to prepare and issue an information return to TuckNT (or herself) for 2004. Upon the recent discovery of this oversight, the School promptly filed a Form 1099-MISC with the IRS and sent a copy to TuckNT. (*See* materials at Tab D.)

F. Description of Firm's Business. NHCS is a nonprofit charter school organized pursuant to Mass. Gen. L. c. 71 § 89 that serves children in the Dorchester neighborhood of Boston, Massachusetts, in grades pre-kindergarten to eighth grade. A charter school is a public school that is granted a special charter under Massachusetts law to operate independently of the central public school administration of the municipality in which it is located. To supplement the public funds it receives, NHCS requests contributions and grants from public agencies, philanthropic entities, and individuals.

G. Work Performed and Worker's Title. Initially, the Worker assisted with the processing of grant applications but shortly after severing her relationship with Ace, her role expanded to cover more general accounting and administrative tasks, including: assistance with the preparation of NHCS's financial records (by processing and arranging for payment of accounts receivable and accounts payable); assistance with human resources matters (including, for example, setting up human resources systems, maintaining personnel records, and overseeing compliance with applicable Federal and state laws, such as worker classification and assessing whether a particular employee should be considered exempt or non-exempt for FLSA purposes); administration of employee benefits (enrolling employees and performing various research tasks[3]); and payroll administration and processing. The accounts payable and payroll administration tasks included arranging for the preparation and filing of IRS Forms 1099-MISC for payments to vendors and contractors and IRS Forms W-2 for payments of wages to employees. By January or February of 2005, TuckNT and/or Worker also were involved in the preparation of documentation to allow NHCS to receive payment of state allocation grants from the Commonwealth of Massachusetts.

Worker had no fixed title, and both NHCS and Worker tended to use any appropriate title based on the type of function Worker was performing (for example, "Finance and Operations Manager" when performing accounting tasks, "HR Manager" when dealing with human resources administration or "Public Funding Administrator" when preparing reports for state allocation grants).

Virtually all of the tasks described above required minimal oversight by the Dean of Administration, who oversaw the relationship with TuckNT and Worker. As a consultant with expertise in these areas, NHCS expected that only the most minimal training or supervision would be required. The Dean of Administration imposed few (if any) limits on how the assigned tasks were performed. And TuckNT and/or Worker viewed tasks as "projects" to be completed.

---

[3] Note that as an employee, Worker would have been eligible to enroll herself in the School's benefit plans, and she failed to do so during the August, 2004 through June, 2005 service period.

The Neighborhood House Charter School (TIN 04-3288541)
IRS Form SS-8 regarding Janice Stevenson (SSN 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)
Case Number 41957
Page 3

H.  Explanation of Why the Firm Believes Worker is an Independent Contractor.  The staff of
NHCS did not have sufficient capacity to attend adequately to the areas of payroll and human
resources administration, and had limited capacity in the finance area.  These administrative
matters were tangential to the School's primary mission – education.  Accordingly, it sought
outside help on what was intended to be a time-limited basis, and ultimately engaged TuckNT to
provide advice on establishing and administering payroll and human resources systems,
attending to the details of implementation, and providing other assistance in finance areas as
needed.

As the individual at the School responsible for non-teaching matters, the Dean of Administration
had the right not to accept the advice that Worker provided, and Worker was required to act in
accordance with the decisions of the Dean of Administration.  However, NHCS looked to
Worker, acting on behalf of TuckNT, to utilize her expertise in payroll and human resources
administration to aid the School.  As a result, Worker had significant influence over how NHCS
performed its payroll and human resources administration.  And, as indicated above, virtually all
of the tasks TuckNT/Worker performed required and received only minimal oversight by the
Dean of Administration.

A visit to the TuckNT website (see copies of printed web pages attached[4]) is indicative of how
Worker presented herself to NHCS.  The website claims that "TuckNT is a multi-funcational
[sic], cross-cultural consulting firm providing HR Generalist services, Payroll Analysis and
Setup, Public Funding administration."  It also claims that "TuckNT can assist all companies
with their Supply chain management services, HR Generalist services, Web-based payroll setup
and processing services, Accounts payable, Accounts receivables [sic], and Public funding
reporting and proposal development."  Such statements clearly promote Worker's independence,
expertise, and availability to many clients besides NHCS.

In addition, NHCS has found in its records an IRS Form 5213, Election to Postpone
Determination as to Whether the Presumption Applies That an Activity is Engaged in for Profit,
apparently filled out by Worker, using the employer identification number NHCS believes is of
TuckNT, and describing her activity in terms which are similar to the description of TuckNT's
services on its website (see copy attached).  It indicates the first year of the activity is 2004.  The
form is apparently signed and dated by Worker on October 19, 2004.  NHCS has no knowledge
why this form is in its files, and does not know if it was ever filed with the IRS.  If, as it appears,
Worker filled out this form, it is an indication that she viewed her services as a business rather
than as employment.

Given the School's limited expertise in this area, and the purported expertise of TuckNT and/or
Worker, which was being paid to draw a spotlight on precisely such compliance issues, there was
little reason to doubt the nature of the relationship as that of one of independent contractor, and

---

[4] In recent attempts to gain access to it, the TuckNT website has at times been inaccessible, but is still generally
accessible for your own perusal.

{B0432131; 7}

The Neighborhood House Charter School (TIN 04-3288541)
IRS Form SS-8 regarding Janice Stevenson (SSN 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)
Case Number 41957
Page 4

the School believes that based on the record, the relationship between TuckNT and/or Worker was in fact that of independent contractor rather than employee.

I.  Prior Performance of Services for the Firm.  As stated above, Worker provided services to NHCS through Ace from May 11, 2004 until August 19, 2004.  During her time at NHCS while employed by Ace, she generally performed administrative duties for NHCS.  While she was a temporary employee, NHCS was still under a contract to have another entity provide finance and human resources administration services.

Part I.  Behavioral Control

1.  Training and Instruction Provided to Worker by Firm.  No organized training was provided because Worker held herself out as an expert, and NHCS had no internal expertise in the areas with respect to which TuckNT was retained to provide services.  (See, for example, the attached pages from the TuckNT website.)  Worker did attend a number of conferences and seminars during the period between August of 2004 and June of 2005 (the "Service Period"), which the School believes she did to keep up with legal and other developments.  Most of those conferences and seminars were not paid for by the School, although it did reimburse her for the cost of one such program.  Worker also received training from Ceridian in how to work with the computerized payroll administration system for NHCS.  Such training on the idiosyncrasies of the system for the School would of course be necessary regardless of whether the person operating the system was an independent contractor or an employee of the School.

2.  How Work Assignments Received.  To the extent required, Worker received assignments directly from the Dean of Administration.  Most duties were routine and ongoing in nature (for example, payroll processing).

3.  Who Determines Methods by Which Assignments are Performed?  The Dean of Administration would advise Worker on the goals and results he wanted TuckNT to accomplish, but did not provide instruction as to how Worker was to achieve those results, except in those instances when Worker required specific information regarding an internal NHCS process or procedure.

4.  Person to Contact if Problems or Complaints Arose.  Worker would contact the Dean of Administration.  In that her duties included human resources administration, it is interesting to note that the Employee Handbook for the School includes a grievance procedure, whereby complaints may be registered with the Headmaster (the equivalent of the President of the School).  Worker never registered a complaint with the Headmaster concerning any issue, including her classification (or apparently now alleged misclassification) as an independent contractor.

5.  Reports Required from Worker.  NHCS did not require specific reports regarding the nature of Worker's tasks although given her duties, Worker was required to produce an array of internal

The Neighborhood House Charter School (TIN 04-3288541)
IRS Form SS-8 regarding Janice Stevenson (SSN 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)
Case Number 41957
Page 5

reports (relating to bookkeeping, payroll administration, and human resources administration) for use by NHCS staff.

Invoices were submitted by TuckNT for services performed for the School. A representative copy of such an invoice is attached.

6. <u>Worker's Daily Routine</u>. Worker was generally present at the offices of NHCS from 9 a.m. to 5 p.m. from Monday through Friday, and she generally performed her tasks during that time. Occasionally she would work on weekdays from her home office. She would also sometimes work after hours or on weekends either at the offices of NHCS or from her home office.

7. <u>Location Where Services Performed</u>. Although Worker generally performed her tasks at the offices of NHCS, she sometimes did so from a home office, from which she could access NHCS email and NHCS's Ceridian payroll management system.

8. <u>Meetings</u>. The Dean of Administration had requested that Worker attend staff meetings, but she did so only when there was an issue of finance or human resources to be discussed. Given her limited role at the School, there were no consequences for her failing to attend such meetings.

9. <u>Requirement to Provide Services Personally</u>. There was no explicit requirement that Worker be the representative of TuckNT providing services to NHCS. NHCS has no knowledge as to whether or not TuckNT provided services to other clients using Worker personally or any other service provider.

<u>Part II. Financial Control</u>.

1. <u>Supplies, Equipment, Etc.</u> NHCS provided Worker with office space, a dedicated telephone extension (so third parties could contact Worker directly), the use of a computer, and basic office supplies. Other supplies and materials were neither necessary nor required. Worker provided her own equipment and supplies at her home office.

2. <u>Does the Worker Lease Equipment?</u> Worker did not lease any equipment located at the offices of NHCS. NHCS does not know whether she leased any equipment for use in her home office, nor was NHCS responsible in any way for her home office equipment.

3. <u>Expenses Incurred by Worker in Performance of Services</u>. To the School's knowledge, Worker did not incur expenses for services performed at the offices of NHCS. While she may have incurred expenses in maintaining her home office, any such expenses were not reimbursed by NHCS.

4. <u>Specific Reimbursed Expenses</u>. Worker was reimbursed for some incidental expenses, and, of course, for the purchase of any supplies NHCS needed to establish its own internal accounting

{B0432131; 7}

The Neighborhood House Charter School (TIN 04-3288541)
IRS Form SS-8 regarding Janice Stevenson (SSN 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)
Case Number 41957
Page 6

and human resources management systems, such as the cost of OSHA and Department of Labor informational posters and check printing.

5. Type of Pay. TuckNT charged an agreed fee per time period for services based on the length of time period and the type of project. There was no arrangement for any pay on commission.

Worker prepared her own "Neighborhood House Charter School Check Request" forms, which forms were approved, generally, by the Dean of Administration.

7. Whom Does Customer Pay? NHCS has students, not customers. Tuition and other fees are received by the School, not by TuckNT or Worker. Worker's services related to the internal administration of NHCS so there would be no reason for any payment to be made to TuckNT or Worker by a "customer."

9. Economic Loss/Financial Risk. TuckNT and/or Worker bore the risk of economic loss in the sense that the School could terminate the relationship at any time. Because TuckNT and/or Worker were providing services, there was little else in the way of financial risk (it was not necessary, for example, for TuckNT and/or Worker to purchase tools or equipment or construct something that might never be paid for by the School). In addition, Worker bore the costs of maintaining her home office, and has paid to maintain, at least for a period of time, a website to advertise the availability of TuckNT's services.

Part III. Relationship of the Worker and Firm.

1. Benefits Available to Worker. Worker was not eligible to, and did not, participate in any of NHCS' benefit plans or programs. TuckNT's fixed fee arrangement with NHCS allowed Worker some flexibility regarding her schedule. The Dean of Administration and Worker colloquially referred to the flexibility as "vacation and sick time," although Worker was not eligible to receive either, and did not.

Had Worker properly believed herself to be an employee of the school, she would have been eligible for the School's benefit programs (and of course would have borne only a portion of the Social Security and Medicare tax burdens). She intentionally did not enroll herself in any such programs, notwithstanding that such enrollments were one of the specific duties performed by TuckNT and/or Worker, presumably to keep herself available to provide services to other businesses. The relationship with the School was through TuckNT.

3. Similar Services for Others. NHCS is aware that TuckNT and/or Worker made a proposal to design accounting systems for another Boston-based nonprofit organization (the identity of which can be supplied if helpful). NHCS does not know whether TuckNT and/or Worker ultimately were retained for this project.

The Neighborhood House Charter School (TIN 04-3288541)
IRS Form SS-8 regarding Janice Stevenson (SSN 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)
Case Number 41957
Page 7

The TuckNT website indicates that TuckNT is available to perform services for any entity desiring its services. NHCS believes it had no right, and never asserted any right, to prohibit TuckNT or Worker from providing services to others.

5. <u>Union Membership</u>. NHCS is not aware that Worker was a member of a union during the Service Period.

6. <u>Advertising</u>. NHCS is only aware of the TuckNT website.

10. <u>End of Relationship</u>. NHCS terminated the engagement with TuckNT on June 3, 2005. NHCS and the Worker/TuckNT disagree over the precise reason for the termination.











## A Socially Responsible Company

**Multi-Platofrm, Cross-Cultural Consulting Company**

TuckNT can assist all companies with their

- ➕  Supply chain management services ,
- ➕  HR Generalist services,
- ➕  Web-based payroll setup and processing services,
- ➕  Accounts payable,
- ➕  Account receivables, and
- ➕  Public funding reporting and proposal development

TuckNt has 25+ years of experience in the business, finance and supply chain management areas. Call 617-721-2638 for an analysis of your company's work processes.

Please visit my associated website: http://www.shaklee.net/tucknt.











### About My Business

TuckNT was started after I noticed that companies work processes and applications were disjointed, unconnected, and underdeveloped.

I gained my experience in corporate America starting in 1976. I have worked at Western Electric, AT&T, General Motors, General Electric. Then I moved to the public sector in Texas and Massachusetts.

What I discovered is that the small public, non-profits companies lacked collaboration among their work applications and processes. These small public, non-profits companies current practices fell below state and federal law compliance and/or best industry practices.

TuckNT will assist your company in establishing five-star processes and procedures. TuckNT stresses extreme customer services toward internal and external customers.

Please visit my associated website: http://www.shaklee.net/tucknt.

Contact Us





## Request More Information

Use this form to contact me to get more information about my company, products, or services.  Please visit my associated website at  www.shaklee.net/tucknt.

Your Name:

Your E-mail Address:

Your Phone Number:

Comments:

Submit          Reset





Services                                                          Page 1 of 1





### TuckNT Services

TuckNT is a multi-funcational, cross-cultural consulting firm providing HR Generalist services, Payroll Analysis and Setup, Public Funding administration.

TuckNT will set up the work processes for your organization to sustain its own self-administration.

TuckNT methods are nonintrusive and integrates your present employees, unless it becomes apparent that this will be infeasible to achieve your goals.

Please visit my associated website: http://www.shaklee.net/tucknt.

- Web-based Payroll Setup Services
- Public Funding Reporting and Development
- HR Generalist - Strategy and Administration







TuckNT A Socially Responsible Company, 617-721-2638



# Shaklee
### Independent Distributor

Member Login • ☒ View Cart • Search: [ ]

⌾ Contact Me   ☒ Email this page

## TuckNT
**A Socially Responsible Company, 617-721-2638**

I was introduced to Shaklee by a member named Leslie. I bought the Alfafa supplements to give her a sale. I then put the bottle in a drawer.

Leslie persuaded me ... read more

PRODUCT PACKS

NUTRITION

WEIGHT MANAGEMENT

PERSONAL CARE

BEST WATER

HOME CARE

AIR PURIFICATION




**GREAT HEALTH STARTS HERE!**

**BREAKTHROUGH IMMUNE PROTECTION**




**#1 SCOVER THE NUMBER ONE HOME BUSINESS IN THE HEALTH & WELLNESS REVOLUTION »**

ROGER BARNETT
SHAKLEE CHAIRMAN & CEO

**OPPORTUNITY**

**FAST way START a Shaklee Business**   START HERE »

"When Nature speaks — we listen."
- Dr Forrest C, Shaklee

What Shaklee products are right for you

Discover the Shaklee Difference

Join with a special NutriFeron™ Share It or Share It Plus pack and your Membership is FREE. Save $19.95 today and 15% everyday on all products. **SIGN UP NOW! »**

My Product Picks
Where to start?

Try My Shaklee Favorites!



For Nutrition, Personal & Home Care products*

Form **5213**
(Rev. July 2000)
Department of the Treasury
Internal Revenue Service

## Election To Postpone Determination as To Whether the Presumption Applies That an Activity Is Engaged in for Profit
▶ To be filed by individuals, estates, trusts, partnerships, and S corporations.

OMB No. 1545-0195

Name(s) as shown on tax return
**Janice W. Stevenson**

Identifying number as shown on tax return
**20-1513588**

Address (number and street, apt. no., rural route) (or P.O. box number if mail is not delivered to street address)
**P.O. Box 400372**

City, town or post office, state, and ZIP code
**Cambridge, MA  02140-0004**

The taxpayer named above elects to postpone a determination as to whether the presumption applies that the activity described below is engaged in for profit. The determination is postponed until the close of:

- The 6th tax year, for an activity that consists mainly of breeding, training, showing, or racing horses or
- The 4th tax year for any other activity,

after the tax year in which the taxpayer first engaged in the activity.

**1**  Type of taxpayer engaged in the activity (check the box that applies):

☑ Individual  ☐ Partnership  ☐ S corporation  ☐ Estate or trust

**2a**  Description of activity for which you elect to postpone a determination

Advise and establish finance policies, procedures and/or work processes for principals who transition from third party administrators to an in-house finance operation; including but not limited to supply chain managment, A/P, A/R, HR, facilities, inventory of assets and their management.

**2b**  First tax year you engaged in activity described in 2a
**2004**

Under penalties of perjury, I declare that I have examined this election, including accompanying schedules, and to the best of my knowledge and belief, it is true, correct, and complete.

_Janice W. Stevenson_
(Signature of taxpayer or fiduciary)

_10/19/2004_
(Date)

_____
(Signature of taxpayer's spouse, if joint return was filed)

_____
(Date)

_____
(Signature of general partner authorized to sign partnership return)

_____
(Date)

_____
(Signature and title of officer, if an S corporation)

_____
(Date)

For Privacy Act and Paperwork Reduction Act Notice, see instructions on back.    Cat. No. 42361U    Form **5213** (Rev. 7-2000)

The Neighborhood House Charter School (TIN 04-3288541)
IRS Form SS-8 regarding Janice Stevenson (SSN 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)
Case Number 41957

<u>Additional Information Required for a Determination</u>

1.    <u>Description of Business Operations, including Numbers and Occupations of Workers
Engaged.</u>  The Neighborhood House Charter School ("NHCS" or the "School") is a publicly
funded nonprofit school for children from pre-kindergarten to eighth grade which operates
independently of the local municipal school administration under a charter granted by the
Commonwealth of Massachusetts.  For the fiscal year ended June 30, 2005, its gross revenues
were approximately $3,800,000.  It has about 62 full-time employees.

NHCS believes that it has properly classified its various service providers as employees or
independent contractors.  Teachers and the administrative staff, for example, are all classified as
employees.  Due to its limited administrative staff and resources, NHCS must obtain specialized
services from outside vendors.  One expedient is to use a temporary employment agency.  (As
indicated in the response to Form SS-8, this was the case with Worker prior to August of 2004.)

In the case of the services of a school nurse, NHCS is under agreement with a local health center.
The health center retains control over the nurse, is responsible for the services provided, and a
fee is paid to the health center.  As another example, NHCS contracts with a nonprofit
organization which provides a teaching fellow to run the NHCS drama program.  NHCS also has
contracts with a special education specialist/consultant and an occupational therapist, and often
enters into short-term contracts for accounting and development (fundraising) services.

2.    <u>LLC Status.</u>  Not Applicable; NHCS is not an LLC.

3.    <u>Other Workers Performing the Same Work.</u>  There was no other worker performing the
same payroll, human resources, and benefit services as Worker.  Other employees of the School
and other contractors performed accounting functions unrelated to Worker's functions.

4.    <u>Business Reason/Legal Authority for Classification of Worker.</u>  Please refer to Items G
and H of Form SS-8.

There was no particular business reason for NHCS to classify Worker as an independent
contractor.  She represented to NHCS that she was providing services through her company,
TuckNT.  Since NHCS was in part relying on Worker's expertise in payroll and human resources
administration, NHCS had no reason to question her own classification of herself.  And Worker
only changed her self-described characterization as it became convenient (please refer to the
cover letter accompanying this submission).

5.    <u>Related Documents Attached.</u>  See Form SS-8 and attachment.

6.    <u>Litigation Involving Worker.</u>  See Form SS-8 and attachment.  Worker has also filed a
claim with the Department of Labor alleging that she was discharged for complaining of

{B0433242; 4}

The Neighborhood House Charter School (TIN 04-3288541)
Additional Information regarding Janice Stevenson (SSN 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)
Case Number 41957
Page 2

activities at NHCS in violation of the Sarbanes-Oxley Act. The Department of Labor dismissed the claim since that Act applies only to public companies (and the School is not a public company). She has brought an internal appeal to that dismissal but no decision on appeal has yet been reached.

7.     Previous IRS Examinations.  None.

8.     Previous Rulings on Same or Similar Issue for NHCS or Related Party.  None.

9.     Previous Requests on this Issue.  None.

10.    Has this Issue been Submitted to or Considered by the Social Security Administration or the Railroad Retirement Board?  No.

{B0433242; 4}



SULLIVAN &
WORCESTER

Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

T 617 338 2800
F 617 338 2880
www.sandw.com



August 5, 2005

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

Internal Revenue Service
Cincinnati, Ohio 045999

Re:    Neighborhood House Charter School (EIN 04-3288541)
<u>IRS Form 4598 Received Regarding Janice Stevenson (SSN 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)</u>

Dear Sir or Madam:

Enclosed please find a copy of IRS Form 4598, Form W-2, 1098, or 1099 Not Received, Incorrect or Lost, addressed to the Neighborhood House Charter School (the "School") and concerning Janice Stevenson. The Form implies a conclusion that the School was the employer of Ms. Stevenson, and that the School should have filed a Form W-2 for amounts paid for her services. On behalf of the School, I am writing to clarify the nature of the School's relationship with Ms. Stevenson.

Prior to August of 2004, Ms. Stevenson was employed by a company that provided the School with various support services. In August of 2004 Ms. Stevenson convinced the administration of the School, a small educational institution, to terminate its use of the other company and to use the services of her company, TuckNT. Ms. Stevenson represented to the School that she would personally provide the financial, human resources and payroll administration services required of the School for TuckNT. There was no written agreement between the School and either TuckNT or Ms. Stevenson. TuckNT sent periodic invoices to the School. Those invoices were paid to TuckNT and Ms. Stevenson entered the employer identification number of TuckNT into the payables system (see copy enclosed at Tab 1 of a representative invoice).

Since Ms. Stevenson was being hired in part to fill deficiencies in the School's human resources and payroll administration areas, the School had no reason to question her designation of TuckNT as "her company" and as the proper recipient of payments for her services. (As evidenced by the enclosed printouts of pages from its website (Tab 2), the School had no reason to believe that TuckNT was anything but a perfectly legitimate company whose owners and/or employees provided on its behalf precisely the services the School needed.)

The School became dissatisfied with the services provided by TuckNT, and terminated the relationship as of June 3, 2005. Since then, the School has become aware of the fact that Ms. Stevenson now claims that she was a common law employee of the School, notwithstanding

Internal Revenue Service
August 5, 2005
Page 2

the fact (1) that at her own request, services were provided through her company TuckNT, (2) that TuckNT invoices were provided to the School, and the invoices were paid to TuckNT, (3) that the need for human resources consulting services, covering such topics as employee classification, was one of the primary reasons for retaining TuckNT, (4) that she never indicated to the executives at the School that she should be characterized as an employee of the School, and (5) that she never enrolled herself in employee benefit arrangements, treated herself as being on the payroll of the School (she was primarily responsible for payroll processing) or issued to herself a Form W-2.

Although the School recognizes that the question of whether an individual is an employee or an independent contractor is a matter of specific facts and circumstances, the School does not consider Ms. Stevenson to have been its employee, and does not at this time consider it appropriate to file a IRS Form W-2 for payments made to her during 2004. It has, however, come to the School's attention that Form 1099-MISC should have been issued to TuckNT and the School has just filed that Form for 2004. A copy is attached at Tab 3.

If you have any further questions, please feel free to contact me at (617) 338-2938. A Power of Attorney authorizing me to represent the School in connection with this matter is attached at Tab 4.

Sincerely,

David A. Guadagnoli

Enclosures

cc: Kevin Andrews, Headmaster

Provides:

er for your mailpiece
rary kept by the Postal Servic

fers:
ay ONLY be combined with Fi
not available for any class of
E COVERAGE IS PROVID
e consider Insured or Registe

d fee, a Return Receipt may b
n Return Receipt service, plea
m 3811) to the article and ad
ilpiece "Return Receipt Requit
n receipt, a USPS® postmark

nal fee, delivery may be a
horized agent. Advise the cle
restricted Delivery".

the Certified Mail receipt is
office for postmarking. If a
ded, detach and affix label

e this receipt and present
to delivery information is
Os and FPOs.

625536; 3]

*TuckNT; Janice W. Stevenson; P.O. Box 400372; Cambridge, MA  02140*

Invoice No.                    105

# INVOICE

| Customer | |
|---|---|
| Name | Neighborhood House Charter School |
| Address | 197A Centre Street |
| City | Dorchester |
| Phone | 617-721-2638 |

State MA          ZIP 02124

| Misc | |
|---|---|
| Date | 9/29/2004 |
| Order No. | N/A |
| Rep | J. Chokshi |
| FOB | N/A |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | Contract No. 0430-510320-9050-02<br>Finance, Operations and Development on 09/27/2004-10/01/2004<br><br>I. Finance<br>Manage the day-to-day finance functions.  Prepare check vouchers, research A/P discrepancies, track all income that comes into the organization. Generate pledge A/R letters per schedule.<br><br>II. Special Projects<br>1. Approval Application for two (2) Proposed Board Members<br>2.  Inventory of NHCS Assests<br>3.  In-house install of A/P records w/ consultants<br><br>III. Financial Reporting<br>Prepare monthly financial reports | $1,000.00 | $      1,000.00 |

| Payment | Check |
|---|---|

Comments  Check P/U 10/08/04

| Name | |
|---|---|
| CC # | |
| Expires | |

Tax Rate(s)

| SubTotal | $ | 1,000.00 |
|---|---|---|
| Shipping | | |
| TOTAL | $ | 1,000.00 |

Office Use Only

*Make check payable to: TuckNT; Janice W. Stevenson; P.O. Box 400372; Cambridge, MA  02140*

*TuckNT - A Socially Responsible Company*







## A Socially Responsible Company

**Multi-Platofrm, Cross-Cultural Consulting Company**

TuckNT can assist all companies with their

- Supply chain management services ,
- HR Generalist services,
- Web-based payroll setup and processing services,
- Accounts payable,
- Account receivables, and
- Public funding reporting and proposal development

TuckNT has 25+ years of experience in the business, finance and supply chain management areas. Call 617-721-2638 for an analysis of your company's work processes.



h Product



Please visit my associated website: http://www.shaklee.net/tucknt.







### About My Business

TuckNT was started after I noticed that companies work processes and applications were disjointed, unconnected, and underdeveloped.

I gained my experience in corporate America starting in 1976. I have worked at Western Electric, AT&T, General Motors, General Electric. Then I moved to the public sector in Texas and Massachusetts.



What I discovered is that the small public, non-profits companies lacked collaboration among their work applications and processes. These small public, non-profits companies current practices fell below state and federal law compliance and/or best industry practices.

TuckNT will assist your company in establishing five-star processes and procedures. TuckNT stresses extreme customer services toward internal and external customers.



Please visit my associated website:  http://www.shaklee.net/tucknt.



## Contact Us

### Request More Information

Use this form to contact me to get more information about my company, products, or services. Please visit my associated website at www.shaklee.net/tucknt.

Your Name:

Your E-mail Address:

Your Phone Number:

Comments:



Services



### TuckNT Services

TuckNT is a multi-funcational, cross-cultural consulting firm providing HR Generalist services, Payroll Analysis and Setup, Public Funding administration.

TuckNT will set up the work processes for your organization to sustain its own self-administration.

TuckNT methods are nonintrusive and integrates your present employees, unless it becomes apparent that this will be infeasible to achieve your goals.

Please visit my associated website:  http://www.shaklee.net/tucknt.

    🔲 Web-based Payroll Setup Services
    🔲 Public Funding Reporting and Development
    🔲 HR Generalist - Strategy and Administration







6969

**1096**
Department of the Treasury
Internal Revenue Service

## Annual Summary and Transmittal of U.S. Information Returns

OMB No. 1545-0108

20**04**

FILER'S name
Neighborhood House Charter School

Street address (including room or suite number)
197a Centre Street

City, state, and ZIP code
Dorchester, MA .02124

Name of person to contact
Jagdish Chokshi

Telephone number
( 617 825-0703

Email address
jchokshi@theNHCS.org

Fax number
( 617 825-1829

**For Official Use Only**

| 1 Employer identification number | 2 Social security number | 3 Total number of forms | 4 Federal income tax withheld | 5 Total amount reported with this Form 1096 |
|---|---|---|---|---|
| 04-3288541 | | 1 | $ | $ 17000.00 |

Enter an "X" in only one box below to indicate the type of form being filed.   If this is your final return, enter an "X" here ▶ ☐

| W-2G 32 | 1098 81 | 1098-E 84 | 1098-T 83 | 1099-A 80 | 1099-C 85 | 1099-CAP 73 | 1099-DIV 91 | 1099-G 86 | 1099-H 71 | 1099-INT 92 | 1099-LTO 93 | 1099-MISC 95 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| 1099-MSA 94 | 1099-OID 96 | 1099-PATR 97 | 1099-Q 31 | 1099-R 98 | 1099-S 75 | 5498 28 | 5498-ESA 72 | 5498-MSA 27 |
|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Return this entire page to the Internal Revenue Service. Photocopies are not acceptable.**

Under penalties of perjury, I declare that I have examined this return and accompanying documents, and, to the best of my knowledge and belief, they are true, correct, and complete.

Signature ▶ Kevin Bel        Title ▶ HEADMASTER        Date ▶ July 29, 2005

## Instructions

**Purpose of form.** Use this form to transmit paper Forms 1099, 1098, 5498, and W-2G to the Internal Revenue Service. Do not use Form 1096 to transmit electronically or magnetically. For magnetic media, see **Form 4804,** Transmission of Information Returns Reported Magnetically; for electronic submissions, see **Pub. 1220,** Specifications for Filing Forms 1098, 1099, 5498, and W-2G Electronically or Magnetically.

**Who must file.** The name, address, and TIN of the filer on this form must be the same as those you enter in the upper left area of Forms 1099, 1098, 5498, or W-2G. A filer includes a payer; a recipient of mortgage interest payments (including points) or student loan interest; an educational institution; a broker; a barter exchange; a creditor; a person reporting real estate transactions; a trustee or issuer of any individual retirement arrangement, a Coverdell ESA, an Archer MSA (including a Medicare+Choice MSA); certain corporations; and a lender who acquires an interest in secured property or who has reason to know that the property has been abandoned.

**Preaddressed Form 1096.** If you received a preaddressed Form 1096 from the IRS with Package 1099, use it to transmit paper Forms 1099, 1098, 5498, and W-2G to the Internal Revenue Service. If any of the preprinted information is incorrect, make corrections on the form.

If you are not using a preaddressed form, enter the filer's name, address (including room, suite, or other unit number), and TIN in the spaces provided on the form.

**When to file.** File Form 1096 with Forms 1099, 1098, or W-2G by February 28, 2005. File Form 1096 with Forms 5498, 5498-ESA, and 5498-MSA by May 31, 2005.

### Where To File

Send all information returns filed on paper with Form 1096 to the following:

| If your principal business, office or agency, or legal residence in the case of an individual, is located in | Use the following Internal Revenue Service Center address |
|---|---|
| Alabama, Arizona, Florida, Georgia, Louisiana, Mississippi, New Mexico, North Carolina, Texas, Virginia | Austin, TX 73301 |
| Arkansas, Connecticut, Delaware, Kentucky, Maine, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, West Virginia | Cincinnati, OH 45999 |
| Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Wisconsin | Kansas City, MO 64999 |

For more information and the Privacy Act and Paperwork Reduction Act Notice, see the 2004 General Instructions for Forms 1099, 1098, 5498, and W-2G.

41-0852411        Form **1096** (2004)

DETACH BEFORE MAILING
MANUFACTURED IN U.S.A. ON RECYCLED OCR BOND PAPER USING HEAT RESISTANT INKS

® Printed on Recycled Paper

5100

9595    ☐ VOID    ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| Neighborhood House Charter School 197a Centre Street Dorchester, MA 02124 Telephone: 617-825-0703 | $ | **2004** | **Miscellaneous Income** |
| | 2 Royalties $ | Form **1099-MISC** | |
| | 3 Other Income $ | 4 Federal income tax withheld | **Copy A For Internal Revenue Service Center** |

| PAYER'S Federal Identification number 04-3288541 | RECIPIENT'S Identification number 20-1513588 | 5 Fishing boat proceeds | 6 Medical and health care payments | **File with Form 1096.** |
|---|---|---|---|---|
| RECIPIENT'S name TuckNT | | 7 Nonemployee compensation 17000.00 | 8 Substitute payments in lieu of dividends or interest $ | **For Privacy Act and Paperwork Reduction Act Notice, see the** |
| Street address (including apt. no.) P.O. Box 400372 | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds $ | **2004 General Instructions for Forms 1099,** |
| City, state, and ZIP code Cambridge, MA 02140 | | 11 | 12 | **1098, 5498,** |
| Account number (optional) | 2nd TIN not. ☐ | 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney | **and W-2G.** |
| 15 | | 16 State tax withheld $ | 17 State/Payer's state no. | 18 State Income $ |

Form **1099-MISC**    41-0852411    Department of the Treasury - Internal Revenue Service

**Do Not Cut or Separate Forms on This Page  —  Do Not Cut or Separate Forms on This Page**

9595    ☐ VOID    ☐ CORRECTED

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1 Rents | OMB No. 1545-0115 | |
|---|---|---|---|
| | $ | **2004** | **Miscellaneous Income** |
| | 2 Royalties $ | Form **1099-MISC** | |
| | 3 Other Income $ | 4 Federal income tax withheld | **Copy A For Internal Revenue Service Center** |

| PAYER'S Federal Identification number | RECIPIENT'S Identification number | 5 Fishing boat proceeds | 6 Medical and health care payments | **File with Form 1096.** |
|---|---|---|---|---|
| RECIPIENT'S name | | 7 Nonemployee compensation $ | 8 Substitute payments in lieu of dividends or interest $ | **For Privacy Act and Paperwork Reduction Act Notice, see the** |
| Street address (including apt. no.) | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ ☐ | 10 Crop insurance proceeds | **2004 General Instructions for Forms 1099,** |
| City, state, and ZIP code | | 11 | 12 | **1098, 5498,** |
| Account number (optional) | 2nd TIN not. ☐ | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney | **and W-2G.** |
| 15 | | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State Income $ $ |

Form **1099-MISC**    41-0852411    Department of the Treasury - Internal Revenue Service

DETACH BEFORE MAILING
MANUFACTURED IN U.S.A. ON RECYCLED OCR-LASER BOND PAPER USING HEAT RESISTANT INKS

Ⓐ Printed on Recycled Paper

5110
FORM

# Tab K

**Internal Revenue Service**

SB/SE, Compliance
BIRSC, SS-8 Unit

December 29, 2005

Kevin Andrews, Headmaster
Neighborhood House Charter School
197A Centre Street
Dorchester, MA  02124-2331-976

**Department of the Treasury**

40 Lakemont Road
Newport, VT  05855-1555

Form: SS-8

Person to Contact:
Laramie Bliven, #03-00292

Telephone Number: 802-751-4424
Facsimile Number:  802-751-4455

Refer Reply to: Case # 41957

Dear Mr. Andrews:

This is in response to a Form SS-8 that was submitted to request a determination of employment status for Federal employment tax purposes, between Neighborhood House Charter School, hereafter referred to as the school, and Janice W. Stevenson, hereafter referred to as the worker, for services performed in 2004 and 2005.

We hold the worker to have been an employee of the school.  In the rest of this letter, we will explain the facts, law, and rationale that form the basis for this finding.

Information submitted indicated that the school is a nonprofit public charter school that serves children in grades pre-kindergarten to eighth grade.  The worker was initially engaged by the school to provide the processing of grant applications but shortly thereafter her role expanded to cover more general accounting and administrative tasks including human resources, payroll, and employee benefits.  Prior to this arrangement, the worker performed accounting and administrative duties for the school through an employment agency.  The school publicly posted a job for a grants manager.  The worker expressed an interest in the position and the school agreed to retain her so she ended her relationship with the employment agency.  The school stated that the worker insisted that she be retained and paid through her own company as an independent contractor.  The worker disagreed and said that the school encouraged her to open a business that included a website for validity as the services she was going to provide would be treated as contracted services.  The worker acknowledged she agreed with this arrangement and felt that this might be something she could develop for her future. The school stated that the arrangement with the worker was temporary.

The worker received her assignments from the Dean of Administration.  The school utilized her expertise and only minimal oversight was needed.  The worker was required

to act in accordance with the decisions of the Dean and reported to him with any problems that occurred. The worker was sent by the school to conferences and seminars and was also trained in the payroll system used. She was responsible for providing many internal reports that were used by the school's staff. She worked a substantially full-time schedule at the school's location. The school stated that she also occasionally performed services from her home. The worker performed her services personally and attended staff meetings when it related to finance or human resource matters.

All materials and supplies the worker needed at the school were provided. The worker was reimbursed for incidental expenses she incurred for the school. She incurred no other expenses. The worker was paid a set weekly amount by the school. She submitted invoices for her services which were approved by the Dean of Administration before payment was issued. The checks were issued to the worker under her business name. The worker did not receive any benefits although the school stated she was allowed some flexibility in her schedule. The school further stated in its response that the Dean and the worker colloquially referred to the flexibility as "vacation and sick time". The worker had a website that advertised her company. She stated that this was done upon the request of the school to legitimize her business presence. The school said she did this on her own and the school just utilized the services she was offering to the public. No other evidence of advertising was submitted. The website is no longer available. The worker performed her services full-time for the firm and stated she did not have time to perform any services for others. Either party could have terminated the relationship without liability.

Section 3121(d)(2) of the Internal Revenue Code provides that the term "employee" means any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of employee.

The question of whether an individual is an independent contractor or an employee is one of fact to be determined upon consideration of the facts and the application of the law and regulations in a particular case. Guides for determining the existence of that status are found in three substantially similar sections of the Treasury Regulations. They are sections 31.3121(d)-1, 31.3306(i)-1, and 31.3401(c)-1 relating to the Federal Insurance Contributions Act (FICA), the Federal Unemployment Tax Act (FUTA), and Federal income tax withholding on wages at source, respectively.

Section 31.3121(d)-1(c)(2) of the regulations provides that generally, the relationship of employer and employee exists when the person for whom the services are performed has the right to control and direct the individual who performs the services not only as to the results to be accomplished by the work, but also as to the details and means by which the result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done, but also as to how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which services are performed; it is sufficient if he or she has the right to do so. In general, if an individual is subject to the control or direction of another merely as

to the result to be accomplished and not as to the means and methods for accomplishing the result, he or she is an independent contractor.

In determining whether an individual is an employee or an independent contractor under the common law, all evidence of both control and lack of control or autonomy must be considered. In doing so, one must examine the relationship of the worker and the business. Facts that illustrate whether there is a right to direct or control how the worker performs the specific tasks for which he or she is hired, whether there is a right to direct or control how the financial aspects of the worker's activities are conducted, and how the parties perceive their relationship provide evidence of the degree of control and autonomy.

Section 31.3121(d)-1(a)(3) of the regulations provides that if the relationship of an employer and employee exists, the designation or description of the parties as anything other than that of employer and employee is immaterial. Thus, if an employer-employee relationship exists, any contractual designation of the employee as a partner, coadventurer, agent, or independent contractor must be disregarded.

We have applied the law, regulations, and principles as cited above to the information submitted. As is the case in almost all worker classification cases, some facts point to an employment relationship while other facts indicate independent contractor status. The determination of the worker's status, therefore, rests on the weight given to the factors under the common law, keeping in mind that no one factor is determinative of a worker's status. The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed. In weighing the evidence, careful consideration has been given to the factors outlined below.

Under the common law, the relationship of employer and employee exists when the person for whom the services are performed has the right to control not only what is done, but also how it is done. Evidence of control generally falls into three categories: behavioral controls, financial controls, and relationship of the parties, which are collectively referred to as the categories of evidence.

Factors that illustrate whether there is a right to control how a worker performs a task include training and instructions. In this case, the school retained the right to change the worker's methods and to direct the worker to the extent necessary to protect its financial investment. A worker who is required to comply with another person's instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the right to require compliance with instructions. Some employees may work without receiving instructions because they are highly proficient and conscientious workers or because the duties are so simple or familiar to them. Furthermore, the instructions that show how to reach the desired results may have been oral and given only once at the beginning of the relationship. See, for example, Revenue Ruling 68-598, 1968-2 C.B. 464, and Rev. Rul. 66-381, 1966-2 C.B. 449. The worker was provided with training and given daily instruction by the school. The worker performed

4

her services personally and devoted substantially full-time to the school and, therefore, was restricted from doing other gainful work. She received her assignments from the Dean of Administration and reported to him with any problems she encountered. These factors show that the school exercised its right to direct and control the worker in the performance of her services.

Factors that illustrate whether there is a right to direct and control the financial aspects of the worker's activities include significant investment, unreimbursed expenses, the methods of payment, and the opportunity for profit or loss. In this case, the worker did not invest capital or assume business risks, and therefore, did not have the opportunity to realize a profit or incur a loss as a result of her services. A person who can realize a profit or suffer a loss as a result of his or her services is generally an independent contractor, while the person who cannot is an employee. See Rev. Rul. 70-309, 1970-1 C.B. 199. "Profit or loss" implies the use of capital by a person in an independent business of his or her own. The risk that a worker will not receive payment for his or her services, however, is common to both independent contractors and employees and, thus, does not constitute a sufficient economic risk to support treatment as an independent contractor. If a worker loses payment from the firm's customer for poor work, the firm shares the risk of such loss. Control of the firm over the worker would be necessary in order to reduce the risk of financial loss to the firm. The opportunity for higher earnings or of gain or loss from a commission arrangement is not considered profit or loss. The school provided all the materials and supplies the worker needed to perform her services. She was reimbursed both incidental expenses that she incurred and for the purchase of any supplies for the school. The worker received a set weekly amount from the school for the services she performed. These factors show the school maintained financial control over the worker.

Factors that illustrate how the parties perceive their relationship include the intent of the parties as expressed in written contracts; the provision of, or lack of employee benefits; the right of the parties to terminate the relationship; the permanency of the relationship; and whether the services performed are part of the service recipient's regular business activities. In this case, the worker was not engaged in an independent enterprise, but rather the services performed by the worker were a necessary and integral part of the school. Both parties retained the right to terminate the work relationship at any time without incurring a liability. Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business. The worker's administrative services were a necessary part of keeping the school operational. While the worker performed her services she was under the complete direction and control of the school.

In evaluating the facts in this case, it is clear that the worker performed services in a manner consistent with an employer-employee relationship. Applying the law, regulations, and principles set forth in various revenue rulings and court cases noted

above, as well as the categories of evidence outlined above, we conclude that the worker was an employee of the school for Federal employment tax purposes, and not an independent contractor engaged in her own trade or business. Although there was evidence submitted to suggest the worker had a business of her own, she did not perform any services of an independent nature for the school.

Many religious, charitable, educational, or other nonprofit organizations are exempt from Federal income tax. However, they must withhold Federal income tax from their employees' pay and report each employee's compensation on Form W-2. If an employee is paid $100 or more during a calendar year, his/her wages are also subject to FICA taxes (social security and Medicare). Payments for services performed by an employee of a nonprofit organization described in section 501(c)(3) are not subject to FUTA taxes.

Section 530 of the 1978 Revenue Act established a safe haven from an employer's liability for employment taxes arising from an employment relationship. This relief may be available to employers who have misclassified workers if they meet certain criteria. This is explained more fully in the enclosed fact sheet.

If you think you are not eligible for section 530 relief, section 3509 of the Code provides that if an employer fails to deduct and withhold any tax under chapter 24 (income tax withholding) or subchapter A of Chapter 21 (employee portion of FICA tax) with respect to any employee by reason of treating an employee as not being an employee, the employer's liability is 1.5 percent of the employee's wages plus 20 percent of the **employee's** portion of the FICA tax. The employer's liability is doubled in cases where the employer failed to meet the reporting requirements of sections 6041(a) or 6051 consistent with the treatment of the employees as independent contractors. You must pay the full amount of the **employer's** share of FICA taxes.

Section 3509(c) provides that the reduced rates of section 3509 do not apply in cases of an employer's intentional disregard of the requirement to deduct and withhold such tax.

This determination is based on the application of law to the information presented to us and/or discovered by us during the course of our investigation; however, we are not in a position to personally judge the validity of the information submitted. This ruling is directed only to the taxpayer to whom it is addressed, however, it may be applicable to any other individuals engaged by the firm under similar circumstances. Section 6110(k)(3) of the Code provides it may not be used or cited as precedent.

You are responsible for complying with this determination by filing/amending your employment tax returns accordingly. You will <u>not</u> be receiving a bill from this office. Your immediate handling of this correction and your prompt payment of the tax may reduce any related interest and penalties. For information regarding your tax liabilities, your eligibility for section 3509 rates, and instructions concerning the filing/amendment of your employment tax returns, please see the enclosed Information Guide,

"Frequently Asked Questions When IRS Reclassifies Workers as Employees." However, if you deem that your firm would meet the criteria for section 530 relief as outlined in the enclosure, and you do not want to jeopardize this potential relief for any tax periods, both prior and future, you should <u>NOT</u> amend your returns at this time. Alternatively, you may abide by this determination and reclassify your worker to employee status now, from this time forward, without jeopardizing any relief for prior tax periods, if qualified. Note that once you begin treating a worker in this class as an employee, section 530 relief will not be available to you for any future periods for this class of workers.

If you need further assistance in filing/amending your employment tax returns due to the reclassification of your worker, please call the IRS help line at 1-800-829-4933. Call 1-866-455-7438 for assistance in preparing or correcting Forms W-2, W-3, 1099, 1096, or other information returns.

Internal Revenue Code section 7436 concerns reclassifications of worker status that occur during IRS examinations. As this determination is not related to an IRS audit, it does not constitute a notice of determination under the provisions of section 7436.

Sincerely,

Peggy D'Amico
Operations Manager

Enclosures:   Section 530 Fact Sheet
              Notice of IRS Compliance Expectations
              Information Guide
              Forms: 941 and 941c
              2004: 1099-MISC, 1096, W-2, W-3
*To order forms and publications, please call 1-800-TAX-FORM or visit us online at www.irs.gov.

cc: Janice W. Stevenson

Letter 3711(CG) (Rev. 9-2003)
Catalog Number 36629P

# Tab L

04/10/2006 MON 17:32 FAX ☑002/005



### THE COMMONWEALTH OF MASSACHUSETTS
### DEPARTMENT OF WORKFORCE DEVELOPMENT
### DIVISION OF UNEMPLOYMENT ASSISTANCE

JANE C. EDMONDS
DIRECTOR, DEPARTMENT OF
WORKFORCE DEVELOPMENT

**MITT ROMNEY**
GOVERNOR

EDWARD MALMBORG

**KERRY HEALEY**
LT. GOVERNOR

ACTING DIRECTOR

Neighborhood House Charter School
21 Queen Street
Dorchester, MA 02124

April 6, 2006
Status Determination Unit
Telephone: 617.626.5026

Dear Employer:

The issue of whether an **employer/employee relationship exists** between your organization and **Janice W. Stevenson, FEIN: 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,** has arisen.   In order to assist us in resolving this issue, please complete the following questionnaire with regards to the services performed for your organization, and return it within five (5) days.

1.  a. Describe the organization's business:

_____

_____

_____

   b. Describe the work done by the worker(s):

_____

_____

_____

   c. Who recruits / screens the workers for the client company?

_____

_____

   d. Are there any restrictions, conditions, and / or fees applied to the client if the client hires the worker after the temporary assignment has ended?         ☐ Yes    ☐ No

   e. Please provide copies of the following documents if used:
      · Agreement between the Agency and the Client
      · Agreement between the Agency and the Worker

   f. When a job assignment ends, does the Agency attempt to place the worker with another client?

2.  a. If the work is done under a written agreement between the organization and the worker, please attach a copy.

   b. If the agreement is not in writing, describe the terms and conditions of the work arrangement.

_____

_____

c. What agreement was made with the worker about how payments would be made?

   · Was a paystub, W-2, or 1099 issued?        ☐ Yes    ☐ No

   · If not, why? _____

3. a. Was the worker given training by the organization?       ☐ Yes    ☐ No

   · If "yes", what kind? _____

   · How often? _____

b. Does the operation of the organization's business require that the worker be supervised or controlled in the performance of the service?       ☐ Yes    ☐ No

   Explain: _____

4. a. The organization engaged the worker to:

   ☐ Perform and complete a particular job only.

   ☐ Work at a job for an indefinite period of time.

   Please explain: _____

b. Is the worker required to follow a routine or a schedule established by the organization?    ☐ Yes    ☐ No

c. Does the worker furnish a time record to the organization?    ☐ Yes    ☐ No
   If "yes", attach copies of time records.

5. a. State the kind and value of tools, equipment, and supplies furnished by the worker:

_____

_____

_____

b. What expenses are incurred by the worker in the performance of services for the organization? Does the firm reimburse the worker for any expenses? Please explain.

_____

_____

_____

6. a. Will the worker perform the services personally?        ☐ Yes    ☐ No

b. Does the worker have helpers?        ☐ Yes    ☐ No

   If "yes", were the helpers hired by:      ☐ Organization    ☐ Worker

c. If hired by the worker, is the organization's approval necessary?    ☐ Yes    ☐ No

d. Who pays the helper?        ☐ Organization    ☐ Worker

e. Are social security taxes and federal income taxes withheld from helpers' wages?    ☐ Yes    ☐ No

f. If "Yes", who reports and pays these taxes?      ☐ Organization    ☐ Worker

2

7.  At what location are the services performed?                    ☐ Organization    ☐ Worker

8.  a.  Type of pay worker received: ☐ Salary   ☐ Commission   ☐ Hourly Wage

     ☐ Piecework   ☐ Lump Sum   ☐ Other (specify) _____

     b.  Does the organization guarantee a minimum amount of pay to the worker?    ☐ Yes    ☐ No

9.  a.  Is the worker eligible for a pension, bonuses, paid vacation, sick pay, etc.?    ☐ Yes    ☐ No

     If "yes", specify: _____

     b.  Does the organization carry worker's compensation insurance on the worker?    ☐ Yes    ☐ No

     c.  Does the organization deduct social security tax from amount paid to the worker?    ☐ Yes    ☐ No

     d.  Does the organization deduct federal income taxes from the amount paid to the worker?    ☐ Yes    ☐ No

10.  a.  Approximately how many hours a day does the worker perform services for the organization? _____

     b.  Does the worker perform similar services for others?    ☐ Yes    ☐ No

11.  Is a license necessary for the work?    ☐ Yes    ☐ No

     If "yes", what kind of license is required? _____

12.  a.  Does the worker assemble or process a product at home or away from your place of business?    ☐ Yes    ☐ No

     If "yes", who furnishes materials or goods used by the worker?    ☐ Organization    ☐ Worker

     b.  Is the worker furnished a pattern or given instructions to follow in making the product?    ☐ Yes    ☐ No

     c.  Is the worker required to return the finished product to the organization or to someone designated by the organization?    ☐ Yes    ☐ No

13.  a.  Are leads to prospective customers furnished by the organization?    ☐ Yes    ☐ No

     b.  Is the worker required to pursue or report on leads?    ☐ Yes    ☐ No

     c.  Is the worker required to adhere to prices, terms, and conditions of the sale established by the organization?    ☐ Yes    ☐ No

     d.  Are orders submitted to and subject to approval of the organization?    ☐ Yes    ☐ No

     e.  Is the worker expected to attend sales meetings?    ☐ Yes    ☐ No

     If "yes", is the worker subject to any kind of penalty for failing to attend?    ☐ Yes    ☐ No

     f.  Does the organization assign a specific territory to the worker?    ☐ Does not apply    ☐ Yes    ☐ No

     g.  How does the worker obtain new customers?  Explain fully, showing whether the new customers call the organization for services, or are the customers solicited by the worker, or both.

_____

_____

_____

3

04/10/2006 MON 17:33 FAX                                                    @005/005

Please furnish this agency with any other pertinent information that you feel is necessary. This questionnaire should be returned as soon as possible. If no response is received, the determination will be based on statements available.

**Mail to:**

Division of Unemployment Assistance
Revenue Service
Status Determination Section, 5th Floor
19 Staniford Street
Boston, MA 02114

**Or Fax to:**

(617) 727-8221

Signed: _____

Title: _____

Contact Phone No: _____

Please feel free to call me if you require any additional information at (617) 626-5038.

Sincerely,

Stephen Chawner, Status Analyst
*Contributions Department*

4

# Tab M



SULLIVAN & WORCESTER

Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

T 617 338 2800
F 617 338 2880
www.sandw.com

April 17, 2006



CERTIFIED MAIL
RETURN RECEIPT REQUESTED
AND BY FACSIMILE (617-727-8221)

Mr. Stephen Chawner
Division of Unemployment Assistance
Revenue Service
Status Determination Section, 6th Floor
19 Stanford Street
Boston, Massachusetts  02114

     Re:    Janice Stevenson (SSN 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)

Dear Mr. Chawner:

     I am writing in response to your letter dated April 6, 2006, which the Neighborhood House Charter School received on April 10. By a telephone conversation on April 11, you agreed to an extension of time to respond.

     Enclosed please find the School's response, consisting of a completed copy of your April 6, 2006 letter along with a supplemental document and attachments.

     By way of background and as further detailed in the attached materials, NHCS entered into a contract with a company known as TuckNT to provide various services to NHCS, including human resources and payroll administration. TuckNT, primarily through Ms. Stevenson, provided advice to NHCS on employee vs. independent contractor classification issues, and helped to ensure that the School's payroll, information return reporting and related filing obligations complied with the law. As the person charged with helping the School comply with these laws, Ms. Stevenson obviously believed herself to be in a contractual (rather than employment) position with the School since she never took any steps to enter herself into the School's employee payroll or recordkeeping system and never enrolled herself in any of the School's benefit programs. (Of course, she also neglected to have NHCS file with the IRS any information return for payments NHCS made to TuckNT, an error that has since been remedied.). Ms. Stevenson only began to allege misclassification of her status – the latest evidence of which is apparently a claim for unemployment benefits – after her company's relationship with the School ended.

     Immediately after the School terminated its relationship with TuckNT in June of 2005, Ms. Stevenson commenced an aggressive, and it turns out long, campaign of defamation and

Mr. Stephen Chawner
Division of Unemployment Assistance
April 17, 2006
Page 2

harassment against the School. Her claim for unemployment benefits, nearly 10 months after the end of the relationship, is only the latest round in this campaign. Further, a settlement of, and release with respect to, all issues arising out of the relationship among the School, Ms. Stevenson, and TuckNT was reached several months ago. Counsel for the School are seeking judicial recognition and enforcement of that settlement in litigation that Ms. Stevenson commenced against the School in federal court. The School anticipates that the Court's enforcement of the settlement will resolve all outstanding matters, including any claim Ms. Stevenson has asserted for unemployment benefits.

I can only hope that the Division will quickly recognize this case for what it is – a misguided and bad faith attempt to disrupt the operations of the School – and conclude, based on the facts contained herein, that the relationship between the School and TuckNT was a legitimate business relationship and that Ms. Stevenson was never an employee of the School and, therefore, is not entitled to unemployment benefits.

If you have any further questions, please feel free to contact me at (617) 338-2938.

Sincerely,

David A. Guadagnoli

Enclosures

cc: Kevin Andrews, Headmaster

{B0511254; 2}

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

18102.0010

| | | |
|---|---|---|
| Postage | $ | 1.35 |
| Certified Fee | | 2.40 |
| Return Receipt Fee (Endorsement Required) | | 1.85 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | $5.60 |

Postmark Here

STAR MADAGNOLI

JUN 1 2 2006

SS

Sent To  Mr. Stephen Chawner
Street, Apt. No.; Division of Unemployment
or PO Box No.  19 Stanford Street
City, State, ZIP+4  Boston, MA 02114

7005 2570 0001 4829 0051

PS Form 3800, June 2002    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Stephen Chawner
Division of Unemployment Assist
Revenue Service
Status Determination Section
19 Stanford Street
Boston, MA 02114

RETURN RECEIPT REQUESTED

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  *Michael Pivirotto*    □ Agent
                          □ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   ☒ Certified Mail    □ Express Mail
   □ Registered        □ Return Receipt for Merchandise
   □ Insured Mail      □ C.O.D.

4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number
   (Transfer from service label)

7005 2570 0001 4829 0051

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

04/10/2006 MON 17:32 FAX                                                    ☒002/005



THE COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF WORKFORCE DEVELOPMENT
DIVISION OF UNEMPLOYMENT ASSISTANCE

JANE C. EDMONDS
DIRECTOR, DEPARTMENT OF
WORKFORCE DEVELOPMENT

**MITT ROMNEY**
GOVERNOR

**KERRY HEALEY**
LT. GOVERNOR

EDWARD MALMBORG

ACTING DIRECTOR

Neighborhood House Charter School
21 Queen Street
Dorchester, MA 02124

April 6, 2006
Status Determination Unit
Telephone: 617.626.5026

Dear Employer:

The issue of whether an **employer/employee relationship exists** between your organization and **Janice W. Stevenson,** FEIN: 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, has arisen.   In order to assist us in resolving this issue, please complete the following questionnaire with regards to the services performed for your organization, and return it within five (5) days.

1.  a. Describe the organization's business:
    See attached statement.

    b. Describe the work done by the worker(s):
    See attached statement.

    c. Who recruits / screens the workers for the client company?
    Hiring of academic and certain adminstrative staff is performed by the School's
    Headmaster; other members of the administrative staff are hired by the Dean
    of Administration, with final approval of the Headmaster.

    d. Are there any restrictions, conditions, and / or fees applied to the client if the client hires the worker
       after the temporary assignment has ended?                                    ☐ Yes    ☒ No

    e. Please provide copies of the following documents if used:
       · Agreement between the Agency and the Client
       · Agreement between the Agency and the Worker

    f. When a job assignment ends, does the Agency attempt to place the worker with another client?

2.  a. If the work is done under a written agreement between the organization and the worker, please attach a copy.
       See attached statement, Item 1.e.
    · b. If the agreement is not in writing, describe the terms and conditions of the work arrangement.
       See attached statement, Item 1.b.

CHARLES F. HURLEY BUILDING ● 19 STANIFORD STREET ● GOVERNMENT CENTER ● BOSTON, MA 02114

c. What agreement was made with the worker about how payments would be made?

· Was a paystub, W-2, or 1099 issued?                                    ☐ Yes   ☒ No

· If not, why?  See attached statement.

3. a. Was the worker given training by the organization?    See attached statement.    ☐ Yes   ☐ No

· If "yes", what kind? _____

· How often? _____

b. Does the operation of the organization's business require that the worker be supervised or controlled in the performance of the service?    ☐ Yes   ☒ No

Explain:  All financial matters are under the ultimate control of
the School, but the Worker did not otherwise require supervision or control.

4. a. The organization engaged the worker to:

☒ Perform and complete a particular job only.

☐ Work at a job for an indefinite period of time.

Please explain:  See attached statement, Item 1.b.

b. Is the worker required to follow a routine or a schedule established by the organization?    ☐ Yes   ☒ No

c. Does the worker furnish a time record to the organization?    ☐ Yes   ☒ No
If "yes", attach copies of time records.

5. a. State the kind and value of tools, equipment, and supplies furnished by the worker:
See attached statement.

b. What expenses are incurred by the worker in the performance of services for the organization? Does the firm reimburse the worker for any expenses? Please explain.
See attached statement.

6. a. Will the worker perform the services personally?  ·  See attached statement.    ☐ Yes   ☐ No

b. Does the worker have helpers?    ☐ Yes   ☒ No

If "yes", were the helpers hired by:    ☐ Organization   ☐ Worker

c. If hired by the worker, is the organization's approval necessary?    ☐ Yes   ☐ No

d. Who pays the helper?    ☐ Organization   ☐ Worker

e. Are social security taxes and federal income taxes withheld from helpers' wages?    ☐ Yes   ☐ No

f. If "Yes", who reports and pays these taxes?    ☐ Organization   ☐ Worker

2

7.  At what location are the services performed?            ☒ Organization   ☒ Worker

8.  a.  Type of pay worker received: ☐ Salary   ☐ Commission   ☐ Hourly Wage

    ☐ Piecework   ☐ Lump Sum   ☒ Other (specify) _Fee based on submitted invoice._

    b.  Does the organization guarantee a minimum amount of pay to the worker?       ☐ Yes   ☒ No

9.  a.  Is the worker eligible for a pension, bonuses, paid vacation, sick pay, etc.?  See attached   ☐ Yes   ☒ No
                                                                            statement.

    If "yes", specify: _____

    b.  Does the organization carry worker's compensation insurance on the worker?    ☐ Yes   ☒ No

    c.  Does the organization deduct social security tax from amount paid to the worker?  ☐ Yes   ☒ No

    d.  Does the organization deduct federal income taxes from the amount paid to the worker?  ☐ Yes   ☒ No

10. a.  Approximately how many hours a day does the worker perform services for the organization?  approxim.
                                                                                            40/week.
    b.  Does the worker perform similar services for others?   See attached statement.  ☐ Yes   ☐ No

                                                                            ☐ Yes   ☒ No

11. Is a license necessary for the work?

    If "yes", what kind of license is required? _____

12. a.  Does the worker assemble or process a product at home or away from your place   ☐ Yes   ☒ No
        of business?

    If "yes", who furnishes materials or goods used by the worker?   ☐ Organization   ☐ Worker

    b.  Is the worker furnished a pattern or given instructions to follow in making the product?  ☐ Yes   ☐ No

    c.  Is the worker required to return the finished product to the organization or to someone   ☐ Yes   ☒ No
        designated by the organization?

13. a.  Are leads to prospective customers furnished by the organization?             ☐ Yes   ☒ No

    b.  Is the worker required to pursue or report on leads?                          ☐ Yes   ☐ No

    c.  Is the worker required to adhere to prices, terms, and conditions of the sale established  ☐ Yes   ☐ No
        by the organization?

    d.  Are orders submitted to and subject to approval of the organization?          ☐ Yes   ☐ No

    e.  Is the worker expected to attend sales meetings?                              ☐ Yes   ☐ No

        If "yes", is the worker subject to any kind of penalty for failing to attend?  ☐ Yes   ☐ No

    f.  Does the organization assign a specific territory to the worker?   ☐ Does not apply   ☐ Yes   ☐ No

    g.  How does the worker obtain new customers?  Explain fully, showing whether the new customers call the
        organization for services, or are the customers solicited by the worker, or both.

    _____

    _____

    _____

3

Please furnish this agency with any other pertinent information that you feel is necessary. This questionnaire should be returned as soon as possible. If no response is received, the determination will be based on statements available.

<u>Mail to:</u>

Division of Unemployment Assistance
Revenue Service
Status Determination Section, 5th Floor
19 Staniford Street
Boston, MA 02114

<u>Or Fax to:</u>

(617) 727-8221

Signed: _____

Title: _____

Contact Phone No: _____

Please feel free to call me if you require any additional information at (617) 626-5038.

Sincerely,

Stephen Chawner, Status Analyst
*Contributions Department*

4

**The Neighborhood House Charter School**
**Statements in Response to Division of Unemployment Assistance Inquiry**
**regarding Janice Stevenson (SSN 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)**

Item 1.a. <u>Description of Organization's Business</u>.  The Neighborhood House Charter School
("NHCS" or the "School") is a nonprofit charter school organized pursuant to Mass.
Gen. L. c. 71 § 89 that serves children in the Dorchester neighborhood of Boston,
Massachusetts, in grades pre-kindergarten to eighth grade.  A charter school is a public
school that is granted a special charter under Massachusetts law to operate
independently of the central public school administration of the municipality in which it
is located.  To supplement the public funds it receives, NHCS requests contributions
and grants from public agencies, philanthropic entities, and individuals.

Item 2.b. <u>Work Performed by Worker</u>.  Ms. Stevenson ("Worker") had been performing services
at NHCS through Ace Employment Agency, a temporary employment agency ("Ace").
In that capacity, she provided some basic accounting services as well as various office
administration services.

By August of 2004, NHCS was looking for help with finance, payroll, and human
resources services, as well as assistance with the preparation of grant applications, at
least on a temporary basis.[1]  The existing staff of NHCS did not have sufficient
capacity to handle this work.  NHCS publicly posted a job opening for a grants
manager, and Worker indicated her desire to provide that service, as well as the other
administrative services for which the School sought assistance.  Ms. Stevenson held
herself out as being experienced in these areas (she has described herself as, for
example, a human resources professional) and informed NHCS that her company,
TuckNT, was able to provide the services that NHCS needed.  NHCS, therefore,
engaged TuckNT, P.O. Box 400342, Cambridge, Massachusetts 02140 (TIN 20-
1513588[2]).  NHCS entered into a direct engagement with TuckNT for services
beginning August 20, 2004.  NHCS viewed the arrangement with TuckNT as
temporary.

The services that TuckNT provided to NHCS subsequently expanded to cover more
general accounting and administrative tasks, including:  assistance with the preparation
of NHCS's financial records (by processing and arranging for payment of accounts
receivable and accounts payable); assistance with human resources matters (including,
for example, setting up human resources systems, maintaining personnel records, and
overseeing compliance with applicable Federal and state laws, such as worker
classification and assessing whether a particular employee should be considered exempt
or non-exempt for overtime purposes); administration of employee benefits (enrolling

---

[1] The School previously had received accounting, payroll, benefit administration, and human resources
support through a contract with another entity.  By the Summer of 2004, the School had decided to sever that
relationship and thus was in the process of building its own internal systems in these areas.

[2] Worker entered this TIN for TuckNT into the School's computer system for processing accounts payable
and it is assumed to be accurate.

{B0511257; 3}

The Neighborhood House Charter School
Statement in Response to Division of Unemployment Assistance Inquiry
Regarding Janice Stevenson (SSN 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)
Page 2

employees and performing various research tasks[3]); and payroll administration and processing. The accounts payable and payroll administration tasks included arranging for the preparation and filing of IRS Forms 1099-MISC for payments to vendors and contractors and IRS Forms W-2 for payments of wages to employees. By January or February of 2005, TuckNT also was involved in the preparation of documentation to allow NHCS to receive payment of state allocation grants from the Commonwealth of Massachusetts.

Virtually all of the tasks described above, all of which are tangential to the School's core mission of education, required minimal oversight by the Dean of Administration, who oversaw the relationship with TuckNT. As a consultant with expertise in these areas, NHCS expected that only the most minimal training or supervision would be required. The Dean of Administration imposed few (if any) limits on how the assigned tasks were performed. TuckNT treated the tasks it performed for NHCS as discrete "projects" to be completed.

Item 3.e. <u>Documentation</u>.  There is (was) no written contract between NHCS and TuckNT/Ms. Stevenson.  TuckNT provided services to NHCS pursuant to an oral contract.

Item 4.f. <u>Placement</u>.  As indicated, TuckNT is not an employment agency but rather is the consulting business established by Ms. Stevenson.  The relationship was between NHCS and TuckNT, which NHCS understood to be a legitimate consulting business.

Item 5.c. <u>Payments and Information Return Reporting</u>.  TuckNT charged an agreed upon fee per time period for services based on the length of the time period and the type of project. Invoices were submitted on TuckNT letterhead.  (A sample invoice, prepared and submitted to NHCS by TuckNT, is attached at Tab A.)  Ms. Stevenson prepared "Neighborhood House Charter School Check Request" forms, which forms were approved, generally, by the Dean of Administration.  A check was then issued to TuckNT.

As indicated in Item 1.b. above, TuckNT was responsible for the preparation and filing of IRS Forms 1099-MISC and W-2 on behalf of NHCS.  It was discovered after the end of TuckNT's relationship with NHCS that Ms. Stevenson failed to issue to TuckNT (or herself) a Form 1099-MISC (or Form W-2) to report payments NHCS made to TuckNT for the services it provided to the School.  Upon discovery of this failure, NHCS issued a Form 1099-MISC to TuckNT for 2004; NHCS also issued a Form 1099-MISC to TuckNT for 2005.

---

[3] Note that if Worker had been an employee, Worker would have been eligible to enroll herself in the School's benefit plans.  The fact that she failed to do so during the August, 2004 through June, 2005 service period clearly reflects her view of the relationship between TuckNT, herself, and the School (at least prior to the termination of the relationship between TuckNT and NHCS).

{B0511257; 3}

The Neighborhood House Charter School
Statement in Response to Division of Unemployment Assistance Inquiry
Regarding Janice Stevenson (SSN 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)
Page 3

Item 6.a. <u>Training Provided to Worker</u>. No organized training was provided because Ms. Stevenson held herself out as an expert, and NHCS had no internal expertise in the areas with respect to which TuckNT was retained to provide services. (*See*, for example, the pages from the TuckNT website attached at Tab B.) Worker did attend a number of conferences and seminars during the period between August of 2004 and June of 2005, which the School believes she did to keep up with legal and other developments. Most of those conferences and seminars were not paid for by the School, although it did reimburse her for the cost of one such program. Worker also received training from Ceridian in how to work with the computerized payroll administration system for NHCS. Such training on the idiosyncrasies of the system for the School would of course be necessary regardless of whether the person operating the system was an independent contractor or an employee of the School.

Item 5.a. <u>Tools, Equipment, and Supplies</u>. NHCS provided Worker with office space, a dedicated telephone extension (so third parties could contact Worker directly), the use of a computer, and basic office supplies. Other supplies and materials were neither necessary nor required. Ms. Stevenson also maintained a home office on behalf of TuckNT at which she performed some of the services that TuckNT provided to NHCS. NHCS provided no equipment or supplies for the office that Ms. Stevenson maintained on behalf of TuckNT.

Item 6.b. <u>Expenses Incurred by Worker</u>. To the School's knowledge, Worker did not incur expenses for services performed at the offices of NHCS. While she may have incurred expenses in maintaining her home office, any such expenses were not reimbursed by NHCS.

Item 7.a. <u>Personal Services</u>. Worker provided personal services to TuckNT, which provided the various services described above in Item 1.b. to the School. There was no requirement that Worker be the representative of TuckNT providing services to NHCS. NHCS has no knowledge as to whether or not TuckNT provided services to other clients using Worker personally or any other service provider, but understands that TuckNT at least actively solicited contracts with other entities.

Item 9.a. <u>Eligibility for pensions, bonuses, paid vacation, sick pay, etc.</u> As indicated above, because there was no employment relationship between the School and Ms. Stevenson, Ms. Stevenson was not eligible for these employee benefits. Nevertheless, NHCS now understands (from other contexts) that Ms. Stevenson considered the compensation she received as a result of some payments that NHCS made to TuckNT to be some form of paid leave. NHCS considered all payments it made to TuckNT to be for services rendered pursuant to the governing contract, and NHCS never made any payments directly to Ms. Stevenson.

Item 10.b. <u>Similar Services for Others</u>. The TuckNT website (see copies of printed web pages attached) indicates that TuckNT held itself out to others. The website claims that "TuckNT is a multi-funcational [sic], cross-cultural consulting Organization

The Neighborhood House Charter School
Statement in Response to Division of Unemployment Assistance Inquiry
Regarding Janice Stevenson (SSN 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)
Page 4

providing HR Generalist services, Payroll Analysis and Setup, Public Funding administration." It also claims that "TuckNT can assist all companies with their Supply chain management services, HR Generalist services, Web-based payroll setup and processing services, Accounts payable, Accounts receivables [sic], and Public funding reporting and proposal development." Such statements reinforce Worker's independence, expertise, and availability to many clients besides NHCS, all of which are hallmarks of contractor (rather than employment) status. NHCS is aware that TuckNT made a proposal to design accounting systems for another Boston-based nonprofit organization (the identity of which can be supplied if helpful). NHCS does not know whether TuckNT ultimately was retained for this project.

In addition, NHCS has found in its records an IRS Form 5213, Election to Postpone Determination as to Whether the Presumption Applies That an Activity is Engaged in for Profit, apparently filled out by Worker, using the employer identification number NHCS believes is of TuckNT, and describing the business in terms that are similar to the description of TuckNT's services on its website. (A copy of the Form is attached at Tab C.) It indicates that the first year of the activity is 2004. The Form is apparently signed and dated by Worker on October 19, 2004. NHCS has no knowledge why this form is in its files, and does not know if it was ever filed with the IRS. If, as it appears, Worker filled out this form, it is yet another indication that she viewed her services to the School as a consulting business, not as employment by the School.

A

RECYCLED

*TuckNT; Janice W. Stevenson; P.O. Box 400372; Cambridge, MA  02140*

Invoice No.          105

## INVOICE

| Customer | | Misc | |
|----------|---|------|---|
| Name | Neighborhood House Charter School | Date | 9/29/2004 |
| Address | 197A Centre Street | Order No. | N/A |
| City | Dorchester | Rep | J. Chokshi |
| Phone | 617-721-2638          State MA          ZIP 02124 | FOB | N/A |

| Qty | Description | Unit Price | TOTAL |
|-----|-------------|-----------|-------|
| 1 | Contract No. 0430-510320-9050-02 | $1,000.00 | $          1,000.00 |
| | Finance, Operations and Development on 09/27/2004-10/01/2004 | | |
| | **I. Finance** | | |
| | Manage the day-to-day finance functions.   Prepare check vouchers, research A/P discrepancies, track all income that comes into the organization. Generate pledge A/R letters per schedule. | | |
| | **II. Special Projects** | | |
| | 1. Approval Application for two (2) Proposed Board Members | | |
| | 2. Inventory of NHCS Assets | | |
| | 3. In-house install of A/P records w/ consultants | | |
| | **III. Financial Reporting** | | |
| | Prepare monthly financial reports | | |

| Payment | Check | | SubTotal | $          1,000.00 |
|---------|-------|---|----------|---------------------|
| | | | Shipping | |
| Comments Check P/U 10/08/04 | | Tax Rate(s) | | |
| Name | | | | |
| CC # | | | TOTAL | $          1,000.00 |
| Expires | | | | |

*Make check payable to:  TuckNT; Janice W. Stevenson; P.O. Box 400372; Cambridge, MA  02140*

*TuckNT - A Socially Responsible Company*

B



Home                                                                    Page 1 of 1





### A Socially Responsible Company

**Multi-Platofrm, Cross-Cultural Consulting Company**

TuckNT can assist all companies with their



- Supply chain management services ,
- HR Generalist services,
- Web-based payroll setup and processing services,
- Accounts payable,
- Account receivables, and
- Public funding reporting and proposal development

TuckNt has 25+ years of experience in the business, finance and
supply chain management areas. Call 617-721-2638 for an
analysis of your company's work processes.



h Product

Please visit my associated website:  http://www.shaklee.net/tucknt.







### About My Business

TuckNT was started after I noticed that companies work processes and applications were disjointed, unconnected, and underdeveloped.

I gained my experience in corporate America starting in 1976. I have worked at Western Electric, AT&T, General Motors, General Electric. Then I moved to the public sector in Texas and Massachusetts.

What I discovered is that the small public, non-profits companies lacked collabration among their work applications and processes. These small public, non-profits companies current practices fell below state and federal law compliance and/or best industry practices.

TuckNT will assist your company in establishing five-star processes and procedures. TuckNT stresses extreme customer services toward internal and external customers.

Please visit my associated website:  http://www.shaklee.net/tucknt.







Contact Us

**Request More Information**

Use this form to contact me to get more information about my company, products, or services.  Please visit my associated website at  www.shaklee.net/tucknt.

Your Name:

Your E-mail Address:

Your Phone Number:

Comments:







## TuckNT Services

TuckNT is a multi-funcational, cross-cultural consulting firm providing HR Generalist services, Payroll Analysis and Setup, Public Funding administration.

TuckNT will set up the work processes for your organization to sustain its own self-administration.

TuckNT methods are nonintrusive and integrates your present employees, unless it becomes apparent that this will be infeasible to achieve your goals.

Please visit my associated website:  http://www.shaklee.net/tucknt.

- Web-based Payroll Setup Services
- Public Funding Reporting and Development
- HR Generalist - Strategy and Administration





C

| Form **5213** (Rev. July 2000) Department of the Treasury Internal Revenue Service | **Election To Postpone Determination as To Whether the Presumption Applies That an Activity Is Engaged in for Profit** ▶ To be filed by individuals, estates, trusts, partnerships, and S corporations. | OMB No. 1545-0195 |
|---|---|---|

| Name(s) as shown on tax return Janice W. Stevenson | Identifying number as shown on tax return 20-1513588 |
|---|---|

Address (number and street, apt. no., rural route) (or P.O. box number if mail is not delivered to street address)
P.O. Box 400372

City, town or post office, state, and ZIP code
Cambridge, MA  02140-0004

The taxpayer named above elects to postpone a determination as to whether the presumption applies that the activity described below is engaged in for profit. The determination is postponed until the close of:

- The 6th tax year, for an activity that consists mainly of breeding, training, showing, or racing horses or
- The 4th tax year for any other activity,

after the tax year in which the taxpayer first engaged in the activity.

**1** Type of taxpayer engaged in the activity (check the box that applies):

☑ Individual    ☐ Partnership    ☐ S corporation    ☐ Estate or trust

**2a** Description of activity for which you elect to postpone a determination

Advise and establish finance policies, procedures and/or work processes for principals who transition from third party administrators to an in-house finance operation; including but not limited to supply chain managment, A/P, A/R, HR, facilities, inventory of assets and their management.

**2b** First tax year you engaged in activity described in 2a
2004

Under penalties of perjury, I declare that I have examined this election, including accompanying schedules, and to the best of my knowledge and belief, it is true, correct, and complete.

*Janice W. Stevenson*
(Signature of taxpayer or fiduciary)        10/19/2004 (Date)

_____        _____ (Date)
(Signature of taxpayer's spouse, if joint return was filed)

_____        _____ (Date)
(Signature of general partner authorized to sign partnership return)

_____        _____ (Date)
(Signature and title of officer, if an S corporation)

For Privacy Act and Paperwork Reduction Act Notice, see instructions on back.        Cat. No. 42361U        Form **5213** (Rev. 7-2000)

# Tab N



THE COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF WORKFORCE DEVELOPMENT
DIVISION OF UNEMPLOYMENT ASSISTANCE

JANE C. EDMONDS
DIRECTOR, DEPARTMENT OF
WORKFORCE DEVELOPMENT

EDWARD T. MALMBORG
ACTING DIRECTOR

MITT ROMNEY
GOVERNOR

KERRY HEALEY
LT. GOVERNOR

Neighborhood House Charter School
21 Queen Street
Dorchester, MA   02124

April 20, 2006
Status Determination Unit
Telephone: 617.626.5050
**Employer #:78-506380**

Dear Employer:

Based on information received by this Division, it has been determined that the services performed by:

**Name: Janice W. Stevenson       sS# 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**

And others similarly employed, **does** constitute "employment" within the meaning of Section 2 of the Massachusetts Unemployment Insurance Law.  It appears that you retained sufficient right to direct and control the performance of services to make her your employee and not an independent contractor.

Therefore, you are required to report her wages and pay contributions thereon. Forms 0735 for this purpose are enclosed.

**THIS DETERMINATION IS FINAL UNLESS, WITHIN TEN DAYS, AFTER DATE SHOWN ON THIS LETTER, YOU REQUEST IN WRITING THAT THE DIRECTOR GRANT A HEARING FOR THE PURPOSE OF RECONSIDERING THE FACTS SUBMITTED AND TO CONSIDER ANY ADDITIONAL INFORMATION.**

You are further advised that this determination applies only to your liability under the Massachusetts Unemployment Insurance Law.  It has no bearing on your obligation under any other law, federal or state.

Please feel free to call me if you require any additional information at (617) 626-5026.

Sincerely,

Stephen Chawner, Status Analyst
*Contributions Department*

Enc:0735 ( )
(1893)

CHARLES F. HURLEY BUILDING • 19 STANIFORD STREET • GOVERNMENT CENTER • BOSTON, MA 02114

# Tab O

05/22/2006 MON 14:41 FAX

GREATER BOSTON REGION
CHARLES F. HURLEY BUILDING
BOSTON, MA.    02114
617-626-6561
TDD 1-800-438-0471
FAX 617-727-9329

Hearings Department

**Massachusetts Department of**
# Workforce
**Development**
*Division of Unemployment Assistance*

Date Mailed: **05/20/06**

## NOTICE OF HEARING

*APPEAL NOTICE*OPEN IMMEDIATELY*

NEIGHBOR HOUSE CHARTER SCHOOL
21 QUEEN ST.

DORCHESTER     MA 02124-0000

EMPLOYER: 78506380
NEIGHBOR HOUSE CHARTER SCHOOL
21 QUEEN ST.
DORCHESTER     MA 021240000

CLAIMANT:    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
JANICE    W STEVENSON
P.O. BOX 400372
CAMBRIDGE     MA 021400000

The **EMPLOYER** has appealed a determination issued on **04/20/06**.

A HEARING is now scheduled:      DOCKET NUMBER:    441582

LOCATION*:    D.U.A. HEARINGS DEPARTMENT
HURLEY BUILDING, FIRST FLOOR
19 STANIFORD STREET
BOSTON

DATE:    06/02/06      TIME:    11:00 AM EASTERN TIME

* * * ALL VISITORS TO THE HURLEY BUILDING MUST HAVE A PHOTO I.D. * * *
POSTPONEMENT REQUEST DEADLINE: 05/26/06

The ISSUES to be heard are whether:

*THE CLAIMANT PERFORMED SERVICES AS AN EMPLOYEE AND SUCH SERVICES CONSTITUTE EMPLOYMENT.
MGL 151A, S. 2

SPECIAL MESSAGES:
*PLEASE NOTIFY ANY REPRESENTATIVES AND/OR WITNESSES THAT YOU WISH TO HAVE PRESENT.
*ARRIVING AFTER 10 MINUTES RESULTS IN DEFAULT/DISMISSAL. COME EARLY TO RVIEW EXHIBITS.
*TIME ALLOWED FOR HEARING IS ONE HOUR.

*DIRECTIONS TO LOCATION OF HEARING:
FROM NORTH,SOUTH: 93 S. EXIT 26A (LEVERETT CONNECTOR), 93 N. EXIT 26, FOLLOW SIGNS TO
NORTH STATION. AT STANIFORD/CAUSEWAY ST. LIGHTS (FRIDAY'S) TURN RIGHT. 19 ON LEFT.
FROM WEST: MA PIKE TO ALLSTON/CAMBRIDGE EXIT, SIGNS TO STORROW DR. TAKE GOV'T CTR EXIT,
STRAIGHT TO CAMBRIDGE ST. LEFT AT OLD WEST CHURCH. 19 ON RIGHT. VERY LIMITED PARKING.
BY "T" LINES: GREEN-GOV'T CTR. BLUE-BOWDOIN, ORANGE-NORTH STATION, RED-CHARLES.
BY COMMUTER RAIL TO NORTH STATION.

*Commonwealth of Massachusetts*           (over)
Form 3702-M Rev. 02-22-05

05/22/2006 MON 14:41 FAX                                                    ☑003/007

GREATER BOSTON REGIONAL OFFICE
CHARLES F. HURLEY BUILDING
19 STANIFORD STREET
BOSTON, MA.              02114

   PHONE:   617-626-6561
   TDD:     1-800-438-0471

MAIL DATE:        05/18/06

**Massachusetts Department of**
# Workforce
**Development**
*Division of Unemployment Assistance*

**Hearings Department**                    47

*APPEAL NOTICE\*OPEN IMMEDIATELY*

NEIGHBOR HOUSE CHARTER SCHOOL
21 QUEEN ST.

DORCHESTER          MA
02124-0000

### HEARINGS DEPARTMENT

### APPEAL ACKNOWLEDGEMENT

| | |
|---|---|
| Docket Number: | 441582 |
| SSN: | 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 |
| Appeal Filed: | 04/28/06 |
| Appellant: | NEIGHBOR HOUSE CHARTER SCHOOL |
| Employer: | NEIGHBOR HOUSE CHARTER SCHOOL |
| Claimant: | JANICE W STEVENSON |

Your appeal has been received by the Hearings Department. A hearing will be scheduled as soon as possible and you will be notified of the date, place, and time of the hearing.

YOU MUST BEGIN PREPARATION FOR THE UPCOMING HEARING NOW.

It is important that you read the enclosed materials, which describe your rights and responsibilities in the hearing process.

*Commonwealth of Massachusetts*
Form 3712 Rev. 2-22-06

# Tab P

GREATER BOSTON REGIONAL OFFICE
CHARLES F. HURLEY BUILDING
BOSTON, MA.          02114
617-626-6561
TDD 1-800-438-0471

*Massachusetts Department of*

# Workforce
*Development*
*Division of Unemployment Assistance*

**Hearings Department**

## NOTICE OF POSTPONEMENT

### *APPEAL NOTICE*OPEN IMMEDIATELY*

**SEYFARTH SHAW LLP**
**ATTN: BARRY J. MILLER**
**TWO SEAPORT LANE   SUITE 300**
**BOSTON                  MA**
**02210-2028**

|  |  |
|---|---|
| SSN: | 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 |
| DOCKET NUMBER: | 441582 |
| CLAIMANT: | JANICE   W STEVENSON |
| EMPLOYER: | NEIGHBOR HOUSE CHARTER SCHOOL |
| HEARING DATE: | 06/02/06 |
| TIME: | 11:00 |
| PLACE: | BOSTON |
| DATE MAILED: | 05/25/06 |

THIS NOTICE IS TO INFORM YOU THAT THE ABOVE SCHEDULED HEARING WAS POSTPONED ON 05/25/06 AT THE REQUEST OF THE      EMPLOYER   . YOU WILL BE NOTIFIED OF THE DATE, PLACE, AND TIME OF THE NEW HEARING. PLEASE CALL 1-617-626-6561 FOR INQUIRIES REGARDING THE SCHEDULING OF YOUR UPCOMING HEARING.

**IMPORTANT**
This notice contains information about your rights or obligations, and should be translated immediately. If you need a translator, ask for a listing of translation services at your DUA office.

**ВАЖНОЕ СООБЩЕНИЕ**
В этом сообщении содержится информация о Ваших правах и обязанностях, и оно должно быть срочно переведено Вам.   Если Вам нужен переводчик, попросите список переводческих компаний в своем DUA офисе.

**IMPORTANTE**
Este aviso incluye información sobre sus derechos y obligaciones, y debe traducirse de inmediato. Si necesita un traductor, solicite el listado de servicios de traducción en la oficina de la DUA correspondiente.

**IMPORTANTE**
Questo avviso contiene informazioni sui Suoi diritti ed obblighi e deve essere tradotto immediatamente. Se ha bisogno di un traduttore, chieda l'elenco dei servizi di traduzione presso la DUA.

**IMPORTANTE**
Este comunicado contém informações sobre os seus direitos ou obrigações. Ele deve ser traduzido prontamente. Se precisar de um tradutor, solicite no escritório DUA mais próximo uma lista dos serviços de tradução.

**ENPÒTAN**
Nòt sa a genyen enfòmasyon sou dwa w oubyen obligasyon ke ou genyen, epi ou fèt pou ou fè tradwi l kounyè a. Si ou bezwen on moun ki pou tradwi pou ou, mande on lis ki genyen sèvis ke yo ofri pou rediksyon nan biwo DUA ke ou konn ale a.

**QUAN TRỌNG**
Thông báo này bao gồm thông tin về quyền hạn hoặc trách nhiệm của quý vị và phải được thông dịch ngay. Nếu cần một thông dịch viên, hãy yêu cầu một danh sách dịch vụ thông dịch tại văn phòng DUA của quý vị.

重要
本通知包含有關閣下權利或義務的資訊,應即刻翻譯。如果閣下需要翻譯人員,請向閣下的DUA辦事處要求一份翻譯社的名單。