FILED

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANICE STEVENSON, | )  ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 05-CV-11584-DPW ) |
| NEIGHBORHOOD HOUSE CHARTER SCHOOL, | ) ) ) |
| Defendant. | ) ) |

## PLAINTIFF"S RESPONSE TO DEFENDANT'S FIRST SET
## REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and subject to the following objections, Plaintiff Janice W. Stevenson ("Plaintiff") hereby submits the following Responses to Defendant Neighborhood House Charter School Requests for Production. Plaintiffs response that it will produce a particular category of documents requested does not constitute a representation that any such documents exist and indicates only that Plaintiff will produce if there are any such documents with Plaintiff's possession, custody, or control.

Furthermore, most of the documents requested are custodial documents for employers. The Defendant is attempting to shift production of employer custodial documents onto the employee.

REQUEST 1 and 2

1. Any and all documents concerning or relating to your relationship with and/or the initiation, formation, or establishment of your relationship with the School.

2. Any and all documents concerning or relating to your relationship with and/or the initiation, formation, or establishment of a business, employment, or work relationship with any company, other than the School, since January 1, 2000.

Plaintiff does not possess any such documents.

## REQUESTS 3 THROUGH 6

3.  Any and all documents concerning or relating to the initiation, formation, or

establishment of TuckNT.

4.  Any and all documents concerning or relating to your relationship with TuckNT.

5.  Any and all documents concerning or relating to the relationship between

TuckNT and the School.

6.  Any and all documents concerning the advertising or business development

activities of TuckNT, including but not limited to copy for ads placed by or on behalf of

TuckNT, web sites maintained by or on behalf of TuckNT, and any other solicitations made by

or on behalf of TuckNT.

Plaintiff does not possess any such documents.  Plaintiff also objects to this request as
seeking information that is irrelevant and bears no relations to the claims before the court.
The Plaintiff is non-exempt employee of Defendant, **covered** by the minimum wage and
overtime provisions of the Act.  Plaintiff and does not meets the executive,
administrative, or professional criteria, or a combination of those criteria, as defined in 5
CFR 551.205-207 based on actual duties performed for Defendant.

## REQUESTS 7 THROUGH 9

7.  Any and all documents that relate or refer to any activities or services performed

by you for the School, or performed by any individuals who assisted you in any manner or

capacity with your performance of activities or services for the School, including but not limited

to, any and all documents concerning or relating to the means and methods by which you or your

assistants performed such activities or services.

8.  Any and all documents concerning or relating to any expenses you incurred

relative to any activity in which you engaged concerning or relating to the services performed by

you or TuckNT for the School, irrespective of whether you or TuckNT were reimbursed by the

School for those expenses.

9.  All documents in any way concerning or relating to any investment or expenditure

made by you in relation to any business for which you performed services at any time from

January 1, 2000, to the present.

See document 1 attached.

REQUEST 10

10.    Any and all documents that contain any information concerning or relating to

hours allegedly worked by you for the School, including but not limited to any documents

concerning or relating to your allegations in paragraph 14 of the Complaint that you "worked

approximately 676 hours of overtime" between August 2004 and June 2005.

Plaintiff does not possess any such documents.  This information is in the possession of
the US DOL-Boston Office.

See document 2 attached.

REQUESTS 11 THROUGH 15

11.    Any and all documents reflecting tasks, activities or services in which you

engaged while providing services to the School.

12.    Any and all diaries, calendars, notebooks or other documents containing

information about activities you engaged in to earn wages, profits or other earnings from January

1, 2000, through the present.

13.    To the extent permitted by law, federal and state tax returns and documents

prepared and/or filed with any state or federal tax collection or assessment agency by you or on

your behalf since January 1, 2000, including but not limited to all W-2 and 1099 forms received

by you since January 1, 2000.

14.    Any and all documents concerning or relating to your claim that you now are or at

any time since January 1, 2000, were an employee of the School.

15.    Any and all documents concerning or relating to your claims against the School

under the overtime compensation provisions of the Fair Labor Standards Act and/or

Massachusetts law.

See document 3 attached

REQUEST 16 and 17

16.   Any and all documents concerning or relating to your relationship with Ace Employment Agency.

17.   Any and all documents concerning or relating to the services you provided to the School while you were affiliated with Ace Employment Agency or as a result of being placed at the School by Ace Employment Agency.

These documents are in the Defendant's HR and Account Payable files. Plaintiff does not possess any such documents.

REQUESTS 18 THROUGH 20

18.   Any and all documents concerning or relating to your relationship with any other temporary agency, employment agency, "head hunter," or any other person or entity in the business of finding employment for individuals and/or finding employees for businesses betwee January 1, 2000, and the present.

19.   Any and all documents concerning or relating to Lynn Clark, including but not limited to documents concerning or relating to your allegations about the employment of Ms. Clark in paragraph 12 of the Complaint.

20.   Any and all documents concerning or relating to your claim that the School violated Mass. Gen. Laws ch. 149, § 52C.

Plaintiff does not possess any such documents.

REQUEST 21

21.   Any and all documents that you have provided to and/or received from any federal, state, and/or local entity or agency that relate in any manner to your relationship with the School and/or the services that you have performed for the School from January 1, 2000, to the present.

These documents are in the Defendant's HR and Account Payable files. Plaintiff does not possess any such documents.

REQUEST 22 and 23

22. All statements and/or documents prepared by persons other than yourself that relate to the facts and claims alleged in your Complaint.

23. Any and all documents concerning or relating to your claims for damages including, but not limited to, your claims for alleged unpaid wages, alleged unpaid overtime compensation, alleged unpaid or denied benefits, other compensatory damages, attorneys' fees and liquidated or punitive damages.

These documents are in the Defendant's HR and Account Payable files. Plaintiff does not possess any such documents.

REQUEST 24 THROUGH 27

24. Any and all documents concerning or relating to your claim in paragraph 22 of the Complaint that the School failed to pay you wages owed pursuant to the Fair Labor Standards Act "willfully."

25. Any and all documents in any way concerning or relating to any communication between any person and you concerning or relating to any allegation in your Complaint and/or any incidents, events, facts, or occurrences that support or relate to said allegations and/or your alleged damages.

26. Any and all documents, including any transcripts of testimony, concerning or relating to any other charges, lawsuits or grievances to which you were or are a party.

27. Any and all documents provided to or received from an expert witness in connection with your Complaint and any report and all other documents prepared, edited, authored or drafted by such expert witness.

See Document 4 attached.

## REQUESTS 24 THROUGH 28

24. Any and all documents concerning or relating to your claim in paragraph 22 of the Complaint that the School failed to pay you wages owed pursuant to the Fair Labor Standards Act "willfully."

25. Any and all documents in any way concerning or relating to any communication between any person and you concerning or relating to any allegation in your Complaint and/or any incidents, events, facts, or occurrences that support or relate to said allegations and/or your alleged damages.

26. Any and all documents, including any transcripts of testimony, concerning or relating to any other charges, lawsuits or grievances to which you were or are a party.

27. Any and all documents provided to or received from an expert witness in connection with your Complaint and any report and all other documents prepared, edited, authored or drafted by such expert witness.

28. All documents concerning or relating to any relationship that you had with any other entity, whether as an independent contractor or as an employee, to provide financial, administrative, or human resources services to other than the School, including but not limited to any documents concerning your pay and disbursements made to you by that entity.

29. Any other documents, not previously requested, relating to your claims against the School, including those relating to or identified in or that you relied upon in preparing your answers to Defendant's First Set of Document Requests to Plaintiff.

Plaintiff does not possess any such documents.

## REQUEST 30

30. All documents that relate to other employment or business activities you may have had during any and all time periods that you provided services to the School, including but

not limited to contracts you entered into in connection with providing services to other entities;
checks for payment of services rendered; agreements; correspondence; brochures; letters; other
documents that evidence your business, employment, or work relationship with any entity; bank
records, balance sheets or other financial records that would evidence self-employment; and
business records of any kind relating to your provision of services to any entity.

Plaintiff does not possess any such documents.

    31.    All documents not already produced in response to the above requests that relate
to, bear upon, or provide evidence concerning the matters and allegations set forth in the
Complaint.

    32.    Any and all documents concerning or relating to the School.

Plaintiff does not possess any such documents.

DATE:  July 27, 2006

Respectfully submitted,

Janice W Stevenson

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on Defendant by
electronic mail to BMiller@seyfarth.com and LKappelman@seyfarth.com on July 27,
2006 and first class postage to Seyfarth Shaw LLP, World Trade Center East, Two
Seaport Lane, Suite 300, Boston, MA 02210-2028.

Janice W. Stevenson

DOCUMENT 1

## The Neighborhood House Charter School
### Statements in Response to Division of Unemployment Assistance Inquiry
### regarding Janice Stevenson (SSN 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)

Item 1.a. Description of Organization's Business. The Neighborhood House Charter School
("NHCS" or the "School") is a nonprofit charter school organized pursuant to Mass.
Gen. L. c. 71 § 89 that serves children in the Dorchester neighborhood of Boston,
Massachusetts, in grades pre-kindergarten to eighth grade. A charter school is a public
school that is granted a special charter under Massachusetts law to operate
independently of the central public school administration of the municipality in which it
is located. To supplement the public funds it receives, NHCS requests contributions
and grants from public agencies, philanthropic entities, and individuals.

Item 2.b. Work Performed by Worker. Ms. Stevenson ("Worker") had been performing services
at NHCS through Ace Employment Agency, a temporary employment agency ("Ace").
In that capacity, she provided some basic accounting services as well as various office
administration services.

By August of 2004, NHCS was looking for help with finance, payroll, and human
resources services, as well as assistance with the preparation of grant applications, at
least on a temporary basis.[1] The existing staff of NHCS did not have sufficient
capacity to handle this work. NHCS publicly posted a job opening for a grants
manager, and Worker indicated her desire to provide that service, as well as the other
administrative services for which the School sought assistance. Ms. Stevenson held
herself out as being experienced in these areas (she has described herself as, for
example, a human resources professional) and informed NHCS that her company,
TuckNT, was able to provide the services that NHCS needed. NHCS, therefore,
engaged TuckNT, P.O. Box 400342, Cambridge, Massachusetts 02140 (TIN 20-
1513588[2]). NHCS entered into a direct engagement with TuckNT for services
beginning August 20, 2004. NHCS viewed the arrangement with TuckNT as
temporary.

The services that TuckNT provided to NHCS subsequently expanded to cover more
general accounting and administrative tasks, including: assistance with the preparation
of NHCS's financial records (by processing and arranging for payment of accounts
receivable and accounts payable); assistance with human resources matters (including,
for example, setting up human resources systems, maintaining personnel records, and
overseeing compliance with applicable Federal and state laws, such as worker
classification and assessing whether a particular employee should be considered exempt
or non-exempt for overtime purposes); administration of employee benefits (enrolling

---

[1] The School previously had received accounting, payroll, benefit administration, and human resources
support through a contract with another entity. By the Summer of 2004, the School had decided to sever that
relationship and thus was in the process of building its own internal systems in these areas.

[2] Worker entered this TIN for TuckNT into the School's computer system for processing accounts payable
and it is assumed to be accurate.

{B0511257; 3}

The Neighborhood House Charter School
Statement in Response to Division of Unemployment Assistance Inquiry
Regarding Janice Stevenson (SSN 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)
Page 2

employees and performing various research tasks[3]); and payroll administration and processing. The accounts payable and payroll administration tasks included arranging for the preparation and filing of IRS Forms 1099-MISC for payments to vendors and contractors and IRS Forms W-2 for payments of wages to employees. By January or February of 2005, TuckNT also was involved in the preparation of documentation to allow NHCS to receive payment of state allocation grants from the Commonwealth of Massachusetts.

Virtually all of the tasks described above, all of which are tangential to the School's core mission of education, required minimal oversight by the Dean of Administration, who oversaw the relationship with TuckNT. As a consultant with expertise in these areas, NHCS expected that only the most minimal training or supervision would be required. The Dean of Administration imposed few (if any) limits on how the assigned tasks were performed. TuckNT treated the tasks it performed for NHCS as discrete "projects" to be completed.

Item 3.e. Documentation. There is (was) no written contract between NHCS and TuckNT/Ms. Stevenson. TuckNT provided services to NHCS pursuant to an oral contract.

Item 4.f. Placement. As indicated, TuckNT is not an employment agency but rather is the consulting business established by Ms. Stevenson. The relationship was between NHCS and TuckNT, which NHCS understood to be a legitimate consulting business.

Item 5.c. Payments and Information Return Reporting. TuckNT charged an agreed upon fee per time period for services based on the length of the time period and the type of project. Invoices were submitted on TuckNT letterhead. (A sample invoice, prepared and submitted to NHCS by TuckNT, is attached at Tab A.) Ms. Stevenson prepared "Neighborhood House Charter School Check Request" forms, which forms were approved, generally, by the Dean of Administration. A check was then issued to TuckNT.

As indicated in Item 1.b. above, TuckNT was responsible for the preparation and filing of IRS Forms 1099-MISC and W-2 on behalf of NHCS. It was discovered after the end of TuckNT's relationship with NHCS that Ms. Stevenson failed to issue to TuckNT (or herself) a Form 1099-MISC (or Form W-2) to report payments NHCS made to TuckNT for the services it provided to the School. Upon discovery of this failure, NHCS issued a Form 1099-MISC to TuckNT for 2004; NHCS also issued a Form 1099-MISC to TuckNT for 2005.

---

[3] Note that if Worker had been an employee, Worker would have been eligible to enroll herself in the School's benefit plans. The fact that she failed to do so during the August, 2004 through June, 2005 service period clearly reflects her view of the relationship between TuckNT, herself, and the School (at least prior to the termination of the relationship between TuckNT and NHCS).

The Neighborhood House Charter School
Statement in Response to Division of Unemployment Assistance Inquiry
Regarding Janice Stevenson (SSN 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)
Page 3

Item 6.a. <u>Training Provided to Worker</u>. No organized training was provided because Ms.
Stevenson held herself out as an expert, and NHCS had no internal expertise in the
areas with respect to which TuckNT was retained to provide services. (*See*, for
example, the pages from the TuckNT website attached at Tab B.) Worker did attend a
number of conferences and seminars during the period between August of 2004 and
June of 2005, which the School believes she did to keep up with legal and other
developments. Most of those conferences and seminars were not paid for by the
School, although it did reimburse her for the cost of one such program. Worker also
received training from Ceridian in how to work with the computerized payroll
administration system for NHCS. Such training on the idiosyncrasies of the system for
the School would of course be necessary regardless of whether the person operating the
system was an independent contractor or an employee of the School.

Item 5.a. <u>Tools, Equipment, and Supplies</u>. NHCS provided Worker with office space, a
dedicated telephone extension (so third parties could contact Worker directly), the use
of a computer, and basic office supplies. Other supplies and materials were neither
necessary nor required. Ms. Stevenson also maintained a home office on behalf of
TuckNT at which she performed some of the services that TuckNT provided to NHCS.
NHCS provided no equipment or supplies for the office that Ms. Stevenson maintained
on behalf of TuckNT.

Item 6.b. <u>Expenses Incurred by Worker</u>. To the School's knowledge, Worker did not incur
expenses for services performed at the offices of NHCS. While she may have incurred
expenses in maintaining her home office, any such expenses were not reimbursed by
NHCS.

Item 7.a. <u>Personal Services</u>. Worker provided personal services to TuckNT, which provided the
various services described above in Item 1.b. to the School. There was no requirement
that Worker be the representative of TuckNT providing services to NHCS. NHCS has
no knowledge as to whether or not TuckNT provided services to other clients using
Worker personally or any other service provider, but understands that TuckNT at least
actively solicited contracts with other entities.

Item 9.a. <u>Eligibility for pensions, bonuses, paid vacation, sick pay, etc.</u> As indicated above,
because there was no employment relationship between the School and Ms. Stevenson,
Ms. Stevenson was not eligible for these employee benefits. Nevertheless, NHCS now
understands (from other contexts) that Ms. Stevenson considered the compensation she
received as a result of some payments that NHCS made to TuckNT to be some form of
paid leave. NHCS considered all payments it made to TuckNT to be for services
rendered pursuant to the governing contract, and NHCS never made any payments
directly to Ms. Stevenson.

Item 10.b. <u>Similar Services for Others</u>. The TuckNT website (see copies of printed web pages
attached) indicates that TuckNT held itself out to others. The website claims that
"TuckNT is a multi-functional [sic], cross-cultural consulting Organization

{B0511257; 3}

The Neighborhood House Charter School
Statement in Response to Division of Unemployment Assistance Inquiry
Regarding Janice Stevenson (SSN 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)
Page 4

providing HR Generalist services, Payroll Analysis and Setup, Public Funding administration." It also claims that "TuckNT can assist all companies with their Supply chain management services, HR Generalist services, Web-based payroll setup and processing services, Accounts payable, Accounts receivables [sic], and Public funding reporting and proposal development." Such statements reinforce Worker's independence, expertise, and availability to many clients besides NHCS, all of which are hallmarks of contractor (rather than employment) status. NHCS is aware that TuckNT made a proposal to design accounting systems for another Boston-based nonprofit organization (the identity of which can be supplied if helpful). NHCS does not know whether TuckNT ultimately was retained for this project.

In addition, NHCS has found in its records an IRS Form 5213, Election to Postpone Determination as to Whether the Presumption Applies That an Activity is Engaged in for Profit, apparently filled out by Worker, using the employer identification number NHCS believes is of TuckNT, and describing the business in terms that are similar to the description of TuckNT's services on its website. (A copy of the Form is attached at Tab C.) It indicates that the first year of the activity is 2004. The Form is apparently signed and dated by Worker on October 19, 2004. NHCS has no knowledge why this form is in its files, and does not know if it was ever filed with the IRS. If, as it appears, Worker filled out this form, it is yet another indication that she viewed her services to the School as a consulting business, not as employment by the School.

{B0511257; 3}

DOCUMENT 2

| Date | Day | Description of Transaction | Overtime Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|---------------------------|--------------------|---------------|---------|
| 9/19/2004 | Sunday | Finance Office | 0.0 | | | |
| 9/20/2004 | Monday | Finance Office | 5.0 | | | |
| 9/21/2004 | Tuesday | Finance Office | 5.0 | | | |
| 9/22/2004 | Wednesday | Finance Office | 5.0 | | | |
| 9/23/2004 | Thursday | Finance Office | 5.0 | | | |
| 9/24/2004 | Friday | Finance Office | 1.0 | | | |
| 9/25/2004 | Saturday | Finance Office | 0.0 | 21.0 | $37.50 | $787.50 |
| 9/26/2004 | Sunday | Finance Office | 0.0 | | | |
| 9/27/2004 | Monday | Finance Office | 0.0 | | | |
| 9/28/2004 | Tuesday | Finance Office | 5.0 | | | |
| 9/29/2004 | Wednesday | Finance Office | 5.0 | | | |
| 9/30/2004 | Thursday | Finance Office | 5.0 | | | |
| 10/1/2004 | Friday | Finance Office | 5.5 | | | |
| 10/2/2004 | Saturday | Finance Office | 0.0 | 20.5 | $37.50 | $768.75 |
| 10/3/2004 | Sunday | Finance Office | 0.0 | | | |
| 10/4/2004 | Monday | Finance Office | 5.0 | | | |
| 10/5/2004 | Tuesday | Finance Office | 5.0 | | | |
| 10/6/2004 | Wednesday | Finance Office | 5.0 | | | |
| 10/7/2004 | Thursday | Finance Office | 5.0 | | | |
| 10/8/2004 | Friday | Finance Office | 5.0 | | | |
| 10/9/2004 | Saturday | Finance Office | 5.5 | 30.5 | $37.50 | $1,143.75 |
| 10/10/2004 | Sunday | Finance Office | 0.0 | | | |
| 10/11/2004 | Monday | Finance Office | 5.5 | | | |
| 10/12/2004 | Tuesday | Finance Office | 6.0 | | | |
| 10/13/2004 | Wednesday | Finance Office | 4.0 | | | |
| 10/14/2004 | Thursday | Finance Office | 5.5 | | | |
| 10/15/2004 | Friday | Finance Office | 3.0 | | | |
| 10/16/2004 | Saturday | Finance Office | 5.0 | 29.0 | $37.50 | $1,087.50 |

| Date | Day | Description of Transaction | Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|---|---|---|---|---|---|---|
| 10/17/2004 | Sunday | Finance Office | 6.0 | | | |
| 10/18/2004 | Monday | Finance Office | 4.0 | | | |
| 10/19/2004 | Tuesday | Finance Office | 2.0 | | | |
| 10/20/2004 | Wednesday | Finance Office | 4.0 | | | |
| 10/21/2004 | Thursday | Finance Office | 5.0 | | | |
| 10/22/2004 | Friday | Finance Office | 1.5 | | | |
| 10/23/2004 | Saturday | Finance Office | 5.0 | 27.5 | $37.50 | $1,031.25 |
| 10/24/2004 | Sunday | Finance Office | 0.0 | | | |
| 10/25/2004 | Monday | Finance Office | 5.0 | | | |
| 10/26/2004 | Tuesday | Finance Office | 5.0 | | | |
| 10/27/2004 | Wednesday | Finance Office | 5.0 | | | |
| 10/28/2004 | Thursday | Finance Office | 6.0 | | | |
| 10/29/2004 | Friday | Finance Office | 5.5 | | | |
| 10/30/2004 | Saturday | Finance Office | 0.0 | | | |
| 10/31/2004 | Sunday | Finance Office | 0.0 | 25.5 | $37.50 | $956.25 |
| 11/1/2004 | Monday | Finance Office | 5.5 | | | |
| 11/2/2004 | Tuesday | Finance Office | 5.5 | | | |
| 11/3/2004 | Wednesday | Finance Office | 5.5 | | | |
| 11/4/2004 | Thursday | Finance Office | 5.5 | | | |
| 11/5/2004 | Friday | Finance Office | 5.5 | | | |
| 11/6/2004 | Saturday | Finance Office | 0.0 | | | |
| 11/7/2004 | Sunday | Finance Office | 0.0 | 27.5 | $37.50 | $1,031.25 |
| 11/8/2004 | Monday | Finance Office | 5.5 | | | |
| 11/9/2004 | Tuesday | Finance Office | 5.5 | | | |
| 11/10/2004 | Wednesday | Finance Office | 5.5 | | | |
| 11/11/2004 | Thursday | Finance Office | 5.5 | | | |
| 11/12/2004 | Friday | Out | 0.0 | | | |
| 11/13/2004 | Saturday | Finance Office | 0.0 | 22.0 | $37.50 | $825.00 |

| Date | Day | Description of Transaction | overtime? Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|---|---|---|---|---|---|---|
| 11/14/2004 | Sunday | Finance Office | 0.0 | | | |
| 11/15/2004 | Monday | Finance Office | 5.5 | | | |
| 11/16/2004 | Tuesday | Finance Office | 5.5 | | | |
| 11/17/2004 | Wednesday | Finance Office | 5.5 | | | |
| 11/18/2004 | Thursday | Finance Office | 5.5 | | | |
| 11/19/2004 | Friday | Finance Office | 5.5 | | | |
| 11/20/2004 | Saturday | Finance Office | 0.0 | 27.5 | $37.50 | $1,031.25 |
| 11/21/2004 | Sunday | Finance Office | 0.0 | | | |
| 11/22/2004 | Monday | Finance Office | 0.0 | | | |
| 11/23/2004 | Tuesday | Finance Office | 0.0 | | | |
| 11/24/2004 | Wednesday | Finance Office | 0.0 | | | |
| 11/25/2004 | Thursday | Finance Office | 0.0 | | | |
| 11/26/2004 | Friday | Finance Office | 0.0 | | | |
| 11/27/2004 | Saturday | Finance Office | 0.0 | 0.0 | $37.50 | $0.00 |
| 11/28/2004 | Sunday | Finance Office | 0.0 | | | |
| 11/29/2004 | Monday | Finance Office | 5.5 | | | |
| 11/30/2004 | Tuesday | Finance Office | 5.5 | | | |
| 12/1/2004 | Wednesday | Finance Office | 5.5 | | | |
| 12/2/2004 | Thursday | Finance Office | 5.5 | | | |
| 12/3/2004 | Friday | Finance Office | 5.5 | | | |
| 12/4/2004 | Saturday | Finance Office | 4.0 | 31.5 | $37.50 | $1,181.25 |
| 12/5/2004 | Sunday | Finance Office | 2.0 | | | |
| 12/6/2004 | Monday | Finance Office | 5.5 | | | |
| 12/7/2004 | Tuesday | Finance Office | 2.0 | | | |
| 12/8/2004 | Wednesday | Finance Office | 5.5 | | | |
| 12/9/2004 | Thursday | Finance Office | 4.5 | | | |
| 12/10/2004 | Friday | Finance Office | 4.0 | | | |
| 12/11/2004 | Saturday | Finance Office | 0.0 | 23.5 | $37.50 | $881.25 |

| Date | Day | Description of Transaction | Overtime Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|---|---|---|---|---|---|---|
| 12/12/2004 Sunday | | Finance Office | 0.0 | | | |
| 12/13/2004 Monday | | Finance Office | 4.0 | | | |
| 12/14/2004 Tuesday | | Finance Office | 5.0 | | | |
| 12/15/2004 Wednesday | | Finance Office | 5.0 | | | |
| 12/16/2004 Thursday | | Finance Office | 5.0 | | | |
| 12/17/2004 Friday | | Finance Office | 5.0 | | | |
| 12/18/2004 Saturday | | Finance Office | 0.0 | 24.0 | $37.50 | $900.00 |
| 12/19/2004 Sunday | | Finance Office | 0.0 | | | |
| 12/20/2004 Monday | | Finance Office | 1.0 | | | |
| 12/21/2004 Tuesday | | Finance Office | 1.0 | | | |
| 12/22/2004 Wednesday | | Finance Office | 1.0 | | | |
| 12/23/2004 Thursday | | Finance Office | 1.0 | | | |
| 12/24/2004 Friday | | Finance Office | 0.0 | | | |
| 12/25/2004 Saturday | | Finance Office | 0.0 | 4.0 | $37.50 | $150.00 |
| 12/26/2004 Sunday | | Finance Office | 0.0 | | | |
| 12/27/2004 Monday | | Finance Office | 1.0 | | | |
| 12/28/2004 Tuesday | | Finance Office | 1.0 | | | |
| 12/29/2004 Wednesday | | Finance Office | 1.0 | | | |
| 12/30/2004 Thursday | | Finance Office | 1.0 | | | |
| 12/31/2004 Friday | | Finance Office | 1.0 | | | |
| 1/1/2005 Saturday | | Finance Office | 0.0 | 5.0 | $37.50 | $187.50 |
| 1/2/2005 Sunday | | Finance Office | 0.0 | | | |
| 1/3/2005 Monday | | Finance Office | 0.0 | | | |
| 1/4/2005 Tuesday | | Finance Office | 5.0 | | | |
| 1/5/2005 Wednesday | | Finance Office | 5.0 | | | |
| 1/6/2005 Thursday | | Finance Office | 5.0 | | | |
| 1/7/2005 Friday | | Finance Office | 5.0 | | | |
| 1/8/2005 Saturday | | Finance Office | 0.0 | 20.0 | $37.50 | $750.00 |

| Date | Day | Description of Transaction | Overtime Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|---|---|---|---|---|---|---|
| 1/9/2005 Sunday | | Finance Office | 0.0 | | | |
| 1/10/2005 Monday | | Finance Office | 5.0 | | | |
| 1/11/2005 Tuesday | | Finance Office | 5.0 | | | |
| 1/12/2005 Wednesday | | Finance Office | 5.0 | | | |
| 1/13/2005 Thursday | | Finance Office | 5.0 | | | |
| 1/14/2005 Friday | | Finance Office . | 3.0 | | | |
| 1/15/2005 Saturday | | Finance Office | 0.0 | 23.0 | $37.50 | $862.50 |
| 1/16/2005 Sunday | | Finance Office | 0.0 | | | |
| 1/17/2005 Monday | | Finance Office | 0.0 | | | |
| 1/18/2005 Tuesday | | Finance Office | 5.5 | | | |
| 1/19/2005 Wednesday | | Finance Office | 5.5 | | | |
| 1/20/2005 Thursday | | Finance Office | 4.5 | | | |
| 1/21/2005 Friday | | Finance Office | 3.0 | | | |
| 1/22/2005 Saturday | | Finance Office | 0.0 | 18.5 | $37.50 | $693.75 |
| 1/23/2005 Sunday | | Finance Office | 0.0 | | | |
| 1/24/2005 Monday | | Finance Office | 4.0 | | | |
| 1/25/2005 Tuesday | | Finance Office | 4.0 | | | |
| 1/26/2005 Wednesday | | Finance Office | 4.0 | | | |
| 1/27/2005 Thursday | | Finance Office | 4.0 | | | |
| 1/28/2005 Friday | | Finance Office | 4.0 | | | |
| 1/29/2005 Saturday | | Finance Office | 0.0 | 20.0 | $37.50 | $750.00 |
| 1/30/2005 Sunday | | Finance Office | 0.0 | | | |
| 1/31/2005 Monday | | Finance Office | 4.0 | | | |
| 2/1/2005 Tuesday | | Finance Office | 5.0 | | | |
| 2/2/2005 Wednesday | | Finance Office | 5.0 | | | |
| 2/3/2005 Thursday | | Finance Office | 5.0 | | | |
| 2/4/2005 Friday | | Finance Office | 5.0 | | | |
| 2/5/2005 Saturday | | Finance Office | 5.0 | 29.0 | $37.50 | $1,087.50 |

| Date | Day | Description of Transaction | Overtime Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|---|---|---|---|---|---|---|
| 2/6/2005 | Sunday | Finance Office | 0.0 | | | |
| 2/7/2005 | Monday | Finance Office | 4.0 | | | |
| 2/8/2005 | Tuesday | Finance Office | 4.5 | | | |
| 2/9/2005 | Wednesday | Finance Office | 4.5 | | | |
| 2/10/2005 | Thursday | Finance Office | 4.5 | | | |
| 2/11/2005 | Friday | Finance Office | 3.0 | | | |
| 2/12/2005 | Saturday | Finance Office | 0.0 | 20.5 | $37.50 | $768.75 |
| 2/13/2005 | Sunday | Finance Office | 0.0 | | | |
| 2/14/2005 | Monday | Finance Office | 0.0 | | | |
| 2/15/2005 | Tuesday | Finance Office | 5.0 | | | |
| 2/16/2005 | Wednesday | Finance Office | 5.0 | | | |
| 2/17/2005 | Thursday | Finance Office | 4.5 | | | |
| 2/18/2005 | Friday | Finance Office | 3.0 | | | |
| 2/19/2005 | Saturday | Finance Office | 0.0 | 17.5 | $37.50 | $656.25 |
| 2/20/2005 | Sunday | Finance Office | 0.0 | | | |
| 2/21/2005 | Monday | Finance Office | 1.0 | | | |
| 2/22/2005 | Tuesday | Finance Office | 1.0 | | | |
| 2/23/2005 | Wednesday | Finance Office | 1.0 | | | |
| 2/24/2005 | Thursday | Finance Office | 1.0 | | | |
| 2/25/2005 | Friday | Finance Office | 1.0 | | | |
| 2/26/2005 | Saturday | Finance Office | 0.0 | 5.0 | $37.50 | $187.50 |
| 2/27/2005 | Sunday | Finance Office | 0.0 | | | |
| 2/28/2005 | Monday | Finance Office | 4.5 | | | |
| 3/1/2005 | Tuesday | Finance Office | 4.5 | | | |
| 3/2/2005 | Wednesday | Finance Office | 4.0 | | | |
| 3/3/2005 | Thursday | Finance Office | 4.5 | | | |
| 3/4/2005 | Friday | Finance Office | 2.0 | | | |
| 3/5/2005 | Saturday | Finance Office | 0.0 | 19.5 | $37.50 | $731.25 |

| Date | Day | Description of Transaction | Overtime Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|---|---|---|---|---|---|---|
| 3/6/2005 | Sunday | Finance Office | 0.0 | | | |
| 3/7/2005 | Monday | Finance Office | 4.0 | | | |
| 3/8/2005 | Tuesday | Finance Office | 4.0 | | | |
| 3/9/2005 | Wednesday | Finance Office | 4.0 | | | |
| 3/10/2005 | Thursday | Finance Office | 4.0 | | | |
| 3/11/2005 | Friday | Finance Office | 4.0 | | | |
| 3/12/2005 | Saturday | Finance Office | 0.0 | 20.0 | $37.50 | $750.00 |
| 3/13/2005 | Sunday | Finance Office | 0.0 | | | |
| 3/14/2005 | Monday | Finance Office | 5.0 | | | |
| 3/15/2005 | Tuesday | Finance Office | 0.0 | | | |
| 3/16/2005 | Wednesday | Finance Office | 5.0 | | | |
| 3/17/2005 | Thursday | Finance Office | 0.0 | | | |
| 3/18/2005 | Friday | Finance Office | 0.0 | | | |
| 3/19/2005 | Saturday | Finance Office | 0.0 | 10.0 | $37.50 | $375.00 |
| 3/20/2005 | Sunday | Finance Office | 0.0 | | | |
| 3/21/2005 | Monday | Finance Office | 3.0 | | | |
| 3/22/2005 | Tuesday | Finance Office | 3.0 | | | |
| 3/23/2005 | Wednesday | Finance Office | 3.0 | | | |
| 3/24/2005 | Thursday | Finance Office | 3.0 | | | |
| 3/25/2005 | Friday | Finance Office | 3.0 | | | |
| 3/26/2005 | Saturday | Finance Office | | 15.0 | $37.50 | $562.50 |
| 3/27/2005 | Sunday | Finance Office | 0.0 | | | |
| 3/28/2005 | Monday | Finance Office | 4.0 | | | |
| 3/29/2005 | Tuesday | Finance Office | 3.0 | | | |
| 3/30/2005 | Wednesday | Finance Office | 2.5 | | | |
| 3/31/2005 | Thursday | Finance Office | 3.0 | | | |
| 4/1/2005 | Friday | Finance Office | 3.0 | | | |
| 4/2/2005 | Saturday | Finance Office | 0.0 | 15.5 | $37.50 | $581.25 |

| Date | Day | Description of Transaction | CV ergins Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|------|-----|---------------------------|------------------------------|--------------------|---------------|---------|
| 4/3/2005 Sunday | | Finance Office | 0.0 | | | |
| 4/4/2005 Monday | | Finance Office | 0.0 | | | |
| 4/5/2005 Tuesday | | Finance Office | 5.0 | | | |
| 4/6/2005 Wednesday | | Finance Office | 6.0 | | | |
| 4/7/2005 Thursday | | Finance Office | 3.0 | | | |
| 4/8/2005 Friday | | Finance Office | 3.0 | | | |
| 4/9/2005 Saturday | | Finance Office | 0.0 | | | |
| 4/10/2005 Sunday | | Finance Office | 0.0 | 17.0 | $37.50 | $637.50 |
| 4/11/2005 Monday | | Finance Office | 5.0 | | | |
| 4/12/2005 Tuesday | | Finance Office | 5.0 | | | |
| 4/13/2005 Wednesday | | Finance Office | 5.0 | | | |
| 4/14/2005 Thursday | | Finance Office | 5.0 | | | |
| 4/15/2005 Friday | | Finance Office | 5.0 | | | |
| 4/16/2005 Saturday | | Finance Office | 0.0 | | | |
| 4/17/2005 Sunday | | Finance Office | 0.0 | 25.0 | $37.50 | $937.50 |
| 4/18/2005 Monday | | OUT | 0.0 | | | |
| 4/19/2005 Tuesday | | OUT | 0.0 | | | |
| 4/20/2005 Wednesday | | OUT | 0.0 | | | |
| 4/21/2005 Thursday | | OUT | 0.0 | | | |
| 4/22/2005 Friday | | OUT | 0.0 | | | |
| 4/23/2005 Saturday | | | 0.0 | | | |
| 4/24/2005 Sunday | | | 0.0 | 0.0 | $37.50 | $0.00 |
| 4/25/2005 Monday | | | 4 | | | |
| 4/26/2005 Tuesday | | | 4 | | | |
| 4/27/2005 Wednesday | | | 4 | | | |
| 4/28/2005 Thursday | | | 4 | | | |
| 4/29/2005 Friday | | | 4.5 | | | |
| 4/30/2005 Saturday | | | 0 | 20.5 | $37.50 | $768.75 |

| Date | Day | Description of Transaction | Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|---|---|---|---|---|---|---|
| 5/1/2005 | Sunday | | 0 | | | |
| 5/2/2005 | Monday | | 0 | | | |
| 5/3/2005 | Tuesday | | 0 | | | |
| 5/4/2005 | Wednesday | | 0 | | | |
| 5/5/2005 | Thursday | | 0 | | | |
| 5/6/2005 | Friday | | 0 | | | |
| 5/7/2005 | Saturday | | 0 | 0.0 | $37.50 | $0.00 |
| 5/8/2005 | Sunday | | 0 | | | |
| 5/9/2005 | Monday | | 0 | | | |
| 5/10/2005 | Tuesday | | 0 | | | |
| 5/11/2005 | Wednesday | | 0 | | | |
| 5/12/2005 | Thursday | | 0 | | | |
| 5/13/2005 | Friday | | 0 | | | |
| 5/14/2005 | Saturday | | 0 | 0.0 | $37.50 | $0.00 |
| 5/15/2005 | Sunday | | 0 | | | |
| 5/16/2005 | Monday | | 0 | | | |
| 5/17/2005 | Tuesday | | 0.0 | | | |
| 5/18/2005 | Wednesday | | 0.0 | | | |
| 5/19/2005 | Thursday | | 0.0 | | | |
| 5/20/2006 | Friday | | 0.0 | | | |
| 5/21/2006 | Saturday | | 0.0 | 0.0 | $37.50 | $0.00 |
| 5/22/2005 | Sunday | | 0.0 | | | |
| 5/23/2005 | Monday | | 2.0 | | | |
| 5/24/2005 | Tuesday | | 0.0 | | | |
| 5/25/2005 | Wednesday | | 0.0 | | | |
| 5/26/2005 | Thursday | | 0.0 | | | |
| 5/27/2005 | Friday | | 3.0 | | | |
| 5/28/2005 | Saturday | | 0.0 | 5.0 | $37.50 | $187.50 |

| Date | Day | Description of Transaction | Overtime Daily Hours Total | Weekly Hours Total | Overtime Rate | Balance |
|---|---|---|---|---|---|---|
| 5/29/2005 | Sunday | | 0.0 | | | |
| 5/30/2005 | Monday | | 0.0 | | | |
| 5/31/2005 | Tuesday | | 0.0 | | | |
| 6/1/2005 | Wednesday | | 0.0 | | | |
| 6/2/2005 | Thursday | | 0.0 | | | |
| 6/3/2005 | Friday | | 0.0 | 0.0 | $37.50 | $0.00 |
| | | TOTAL OVERTIME HOURS AND OVERTIME PAY | | 672.0 | $37.50 | $25,200.00 |

DOCUMENT 3

Case 1:05-cv-11584-DPW    Document 31-2    Filed 07/28/2006    Page 18 of 28

Mass. Dept. of Revenue - TIR 05-11: Effect of New Employee Classification Requirements under G.L. c. 149, § 148B on With...    Page 1 of 4

**Mass.**<sup></sup>

| Mass.Gov Home Page | State Government | State Online Services |

Search DOR
All DOR Info    Go

**Home    Contact us**

COMMONWEALTH OF MASSACHUSETTS
**Department of Revenue**

About DOR
Forms & Publications
News and Reports
Guide to MA Taxes
Legal Library
Workshops & Seminars
Links to Other Sites
Site Map
Privacy Statement

Governor:
Mitt Romney

Lieutenant Governor:
Kerry Healey

Commissioner of Revenue:
Alan LeBovidge

**TIR 05-11: Effect of New Employee Classification Requirements under G.L. c. 149, § 148B on Withholding of Tax on Wages under G.L. c. 62B**

**I. Introduction**

On July 19, 2004, the Massachusetts Legislature enacted an emergency law that amended chapter 149 of the General Laws. See St. 2004, c. 193, "An Act Further Regulating Public Construction in the Commonwealth" ("Act"). In pertinent part, the Act repealed G.L. c. 149, § 148B, "Employee Status; Exceptions; Penalties" and replaced it with new section 148B. See St. 2004, c. 193, § 26, effective July 19, 2004. The new law affects the classification of employees and independent contractors for purposes of G.L. chs. 149 (Labor and Industries) and 151 (Minimum Fair Wages) and provides criminal and civil penalties for improper classification under these chapters. The Massachusetts Attorney General is responsible for administering the provisions of G.L. c. 149. See G.L. c. 149, § 2. The Commissioner of Revenue is charged with administering the Massachusetts wage withholding laws under chapter 62B. See G.L. c. 14, § 6(1); G.L. c. 62C, § 3.

The purpose of this Technical Information Release is twofold. First, it announces that the amendments to chapter 149, § 148B do not change the statutory definitions of "employer" or "employee" found in chapter 62B of the General Laws. Accordingly, for wage withholding purposes under chapter 62B, the status of workers as employees or independent contractors is governed by section 3401 of the Internal Revenue Code and the applicable regulations promulgated pursuant to that provision. This TIR summarizes the differences in the general rules for determining employee/independent contractor status under chapters 149 and 62B. Second, this TIR announces that the Commissioner will accept determinations of employee or independent contractor status, as described in this TIR, by the Internal Revenue Service for purposes of identifying income tax withholding obligations under chapter 62B.

**II. Applicable Laws**

**A. Chapter 149, § 148B (Employer Status; Exceptions; Penalties)**

**1. Presumption of employee status**

Chapter 149, § 148B as amended, creates a presumption that, for purposes of chapters 149 (Labor and Industries) and 151 (Minimum Fair Wage Law), an individual performing any service, except as authorized under G.L. c. 149, shall be considered an employee under those chapters unless a company can establish that each of the following three factors is present:

1. The individual is free from control and direction in connection with the performance of a service, both under the individual's contract for the performance of service and in fact; and
2. The service is performed outside the usual course of business of the employer; and
3. The individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

See G.L. c. 149, § 148B(a)(1)-(3), inclusive.

## 2. Penalties for violation of chapter 149

The amendment also provides for various penalties for failure to properly classify individuals according to chapter 149, § 148B. See G.L. c. 149, § 148B(d). Whoever fails to classify individuals in accordance with this section, and in so doing fails to comply with chapter 149 or chapter 151, §§ 1, 1A, 1B, 2B, 15, or 19, or chapter 62B, is subject to all of the criminal and civil remedies, including debarment from public works projects, as provided in G.L. c. 149, § 27C. Furthermore, whoever fails to classify an employee under G.L. c. 149, § 148B, and in so doing violates chapter 152 (Workers' Compensation), is subject to criminal penalties provided in G.L. c. 152, § 14, as well as all of the civil remedies, including debarment, provided in G.L. c. 149, § 27C. Liability for these violations extends to any entity and the president and treasurer of a corporation, and any officer or agent having the management of the corporation or entity. See G.L. c. 149, § 148B(d).

## B.    Chapter 62B:   Withholding of Tax on Wages

### 1. The Commissioner generally follows federal definitions of employer, employee, and wages

The Massachusetts statute governing income tax withholding of tax on wages is found in G.L. c. 62B. Chapter 62B requires every employer making payment to employees of wages subject to Massachusetts income tax under G.L. c. 62 to deduct and withhold taxes upon such wages.

In contrast to G.L. c. 149, chapter 62B adopts the federal definitions of "employer" found in section 3401(d) of the Internal Revenue Code, as amended and in effect for the applicable year, the definition of "employee" found in section 3401(c) of the Code, except full time students engaged in seasonal, temporary or part-time employment whose estimated annual income would not exceed two thousand dollars and, with certain modifications as provided in G.L. c. 62B, § 1[(1)], and the definition of "wages" found in section 3401(a) of the Code. See G.L. c. 62B, § 1.

Neither chapter 62B nor the federal regulations promulgated pursuant to section 3401(a), (c) and (d)

Mass. Dept. of Revenue - TIR 05-11: Effect of New Employee Classification Requirements under G.L. c. 149, § 148B on With....    Page 3 of 4

contain a specific definition of "independent contractor." For purposes of distinguishing an employee relationship from other types of relationships (e.g., independent contractor) for withholding purposes, the Commissioner follows federal Treasury regulation § 31.3401(c) – 1. The Internal Revenue Service has issued Rev. Rul. 87-41, which provides guidance in the form of 20 factors that are used to determine whether an employee/employer relationship exists for federal employment tax purposes. These factors, in addition to common law elements of direction and control, are therefore relevant for purposes of determining whether a person is an employer obligated to withhold income tax on the wages of an employee for Massachusetts withholding purposes. These factors are as follows:

1. Worker compliance with instructions required.
2. Training.
3. Integration of worker's services into the business;
4. Services are rendered personally;
5. Ability to hire, supervise, and pay assistants;
6. A continuing relationship;
7. Set hours of work are established;
8. Full time is required;
9. Work performed on business premises;
10. Services performed in a set order or sequence;
11. Oral or written reports required;
12. Payment by the hour, week or month;
13. Payment of business and/or travel expenses;
14. Furnishing of tools and materials;
15. Worker's investment in facilities used in performing services;
16. Worker's realization of a profit or loss;
17. Worker performs services for more than one business at a time;
18. Worker makes services available to the general public;
19. Business has the right to discharge worker; and
20. Worker has the right to terminate the relationship

As a result of differences in determining employee/independent contractor status under the two Massachusetts statutes, the classification of certain persons as employees or independent contractors for purposes of chapter 149 does not govern the status of such persons for purposes of chapter 62B. Moreover, even if a person qualifies as an employee for purposes of chapter 62B, withholding is required, with certain exceptions, only with respect to remuneration for services that qualifies as "wages" paid by an employer under G.L. c. 62B. (2)

## 2. The Commissioner will accept IRS determinations of worker status for Massachusetts withholding purposes

The Internal Revenue Service issues formal determinations regarding the status of workers as employees and independent contractors for purposes of determining federal withholding obligations. These determinations are made in response to requests submitted on IRS Form SS-8 (Determination

of Employee Work Status for Purposes of Federal Employment Tax Obligations). The Commissioner does not issue formal determinations in this area. The Commissioner will accept a copy of that IRS determination and will treat the parties in accordance with that determination for Massachusetts withholding purposes. If a person has not obtained an IRS determination, the person may request one in accordance with the instructions on Form SS-8, which is available on the IRS website. In the absence of an IRS determination, the Commissioner will apply federal law for purposes of determining whether a company must deduct and withhold Massachusetts income taxes from monies paid to its workers.

/s/Alan LeBovidge
Alan LeBovidge
Commissioner of Revenue

AL:LEM:wrd
186567

September 13, 2005

TIR 05-11

1. For Massachusetts withholding purposes, "wages" also include periodic payments and nonperiodic distributions as defined in I.R.C. § 3405 and subject to federal withholding; contributions paid by governmental units and free public libraries on behalf of the employee pursuant to G.L. c. 32, § 22(10) or payment by governmental units for retirement pay of judges pursuant to G.L. c. 32, § 65D(i) and not otherwise included as wages in G.L. c. 62B, § 1.

2. For rules regarding withholding of tax by persons other than employers (e.g., promoters making payments as compensation for personal services of performers including athletes and entertainers), taxpayers should refer to G.L. c. 62B, § 2, as amended by St. 2004, c. 262, § 21. The Commissioner will amend regulation 830 CMR 62B.2.1, Withholding of Taxes on Wages, in 2005 to explain these requirements in further detail.

DOCUMENT 4



**MASSACHUSETTS
DIVISION OF
UNEMPLOYMENT
ASSISTANCE**

HEARINGS DEPARTMENT
GREATER BOSTON REGION
CHARLES F. HURLEY BUILDING
19 STANIFORD STREET
BOSTON, MA 02114-0000

JANICE W STEVENSON
PO BOX 400372
CAMBRIDGE, MA 02140-0000

Phone:    (617) 626-6561
Fax:      (617) 727-9329
TDD:      (800) 438-0471

APPEAL RESULTS

| Docket: | 439920 | Mail Date: | June 06, 2006 |
|---|---|---|---|
| Appellant: | CLAIMANT | Local Office: | 27-0 |



00000112

| Claimant JANICE W STEVENSON PO BOX 400372 CAMBRIDGE, MA 02140-0000 | | |
|---|---|---|
| | Date of Determination: | 03/07/06 |
| | Hearing Request Filed: | 03/20/06 |
| | Hearing Date: | 05/30/06 |
| SSN: 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 | Location of Hearing: | BOSTON |

| Employer: | Original Determination : | |
|---|---|---|
| | AFFIRMED | [ ] |
| | OVERTURNED | [ ] |
| | OTHER | [X] |
| EMP# : | | |

Appearance:

| Claimant: | [X] | Employer: | [ ] | | |
|---|---|---|---|---|---|
| Claimant's Rep/Attorney: | [ ] | Employer's Rep/Attorney: | [ ] | Interpreter: | [ ] |

**************************************************************************************
**You may Appeal this Decision to the Board of Review.
The last date to file an Appeal is 7/6/2006**
**************************************************************************************

Commonwealth of Massachusetts
Mitt Romney, Governor                Jane C. Edmonds, Director, Department of Workforce Development
Kerry Healey, Lt. Governor           John P. O'Leary, Director, Division of Unemployment Assistance



MASSACHUSETTS
DIVISION OF
UNEMPLOYMENT
ASSISTANCE

Hearings Department
Greater Boston Regional Office
19 Staniford St., 1ˢᵗ Floor
Boston, MA 02114
Phone:  617-626-6561
Fax: 617-727-9329
TDD:  1-800-438-0471

## DECISION

### DOCKET NUMBER: 439920

### I.   STATUTORY PROVISION(S) AND ISSUE(S) OF LAW:

MGL Chapter 151A, §§24(a) & 1(a) & 1(s) - Whether the claimant was paid sufficient wages in the base period to be eligible for benefits.

### II.   FINDINGS OF FACT:

1. The claimant filed a claim for benefits on October 20, 2005. The effective date of the claim is October 16, 2005.

2. The Primary Base Period of the claimant's claim is October 1, 2004 through September 30, 2005.

3. The Alternate Base Period of the claim is January 1, 2005 through October 15, 2005.

4. During the base period of her claim, the claimant worked for three employers: a professional staffing organization, an employment services agency, and a school.

5. For the calendar quarter beginning October 1, 2004 and ending December 31, 2004 the claimant was paid wages from the school in the amount of $13,410.73. The claimant was not paid wages by any other employer during the fourth quarter of 2004.

6. Under the claimant's employment agreement with the employing school for 2005, the claimant was to be compensated by annual salary of $52,000.00, paid bi-weekly.

7. For the calendar quarter beginning January 1, 2005 and ending March 31, 2005, the claimant was paid wages from the school in the amount of $12,000.00. The claimant was not paid wages by any other employer during the first quarter of 2005.

8. For the calendar quarter beginning April 1, 2005 and ending June 30, 2005, the claimant was paid wages from the employment services agency in the amount of $519.75. During that same quarter, the claimant was also paid wages from the school in the amount of $14,000.04.

Mitt Romney, Governor                          Jane C. Edmonds, Director, Department of Workforce Development
Kerry Healey, Lt. Governor                     John P. O'Leary, Director, Division of Unemployment Assistance

**DUA** MASSACHUSETTS
DIVISION OF
UNEMPLOYMENT
ASSISTANCE

**DOCKET NUMBER: 439920**

The claimant provided direct testimony, supported by documentary evidence and accepted by this review examiner, that she had an annual salary of $52,000 paid bi-weekly from the employing school. Considering the school wages in addition to those of the professional staffing organization and the employment services agency, the claimant was paid wages of $45,103.77 in the Primary Base Period, within which for the two highest quarters she received wages of $13,410.73 in fourth quarter 2004 and of $14,519.79 in second quarter 2005.

As such, the determination of monetary eligibility with a weekly benefit rate of $110.00 must be modified in this case.

## IV.    DECISION:

The determination is modified.

The claimant is monetarily eligible for benefits as sufficient wages were paid to her during the base period, and the claimant's wages shall be updated.

**N.B. to Local Office: Please update the claimant's wages, as noted in findings of fact five (5), seven (7) and nine (9). Please recompute the claimant's weekly benefit rate and take necessary action to pay her any benefits owed.**

**HEARINGS DEPARTMENT**

**BY:    Cheryl Lynch**

**REVIEW EXAMINER**

**COPIES TO:**

Claimant
Local Office
File
amc

Commonwealth of Massachusetts

Mitt Romney, Governor                    Jane C. Edmonds, Director, Department of Workforce Development
Kerry Healey, Lt. Governor               John P. O'Leary, Director, Division of Unemployment Assistance

**MASSACHUSETTS**
**DUA**
**DIVISION OF**
**UNEMPLOYMENT**
**ASSISTANCE**

**DOCKET NUMBER: 439920**

9. The claimant's total wages paid in the second quarter of 2005 was $14,519.79.

10. The school cancelled the claimant's employment contract on June 3, 2005, after having paid her in full for the month of June 2005.

11. For the calendar quarter beginning July 1, 2005 and ending September 30, 2005, the claimant was paid wages from the employment services agency in the amount of $3,473.25 and from the professional staffing organization in the amount of $1,700.00.

12. The claimant's total wages paid in the third quarter of 2005 was $5,173.25.

13. For the period beginning October 1, 2005 and ending October 15, 2005, the claimant was paid wages from the professional staffing organization in the amount of $544.00.

14. The total amount of the claimant's Primary Base Period wages is $45,103.77. The total amount of the claimant's Alternate Base Period wages is $32,237.04.

15. On March 7, 2006, the Division of Unemployment Assistance issued the claimant a benefit determination on the claimant's claim indicating that the claimant's weekly benefit rate had been determined to be $110.00, using the Alternate Base Period.

## III.   CONCLUSIONS & REASONING:

The claimant, the appellant, attended the hearing.

To be monetarily eligible for benefits, Section 24(a) of the Law requires that a claimant be **paid** gross wages of at least $3000 in the base period, and that such base period wages must amount to at least thirty times the weekly benefits rate of the claimant.

In order to be eligible to collect benefits based on the Alternate Base Period wages, there must be a benefit credit increase of ten percent or more from the benefit credit of the Primary Base Period.

In this case, the claimant was paid gross wages of more than $3,000 in the Primary Base Period of her claim.   Further, it was established that the claimant's base period wages were more than thirty times her weekly benefit rate. Therefore, the claimant is monetarily eligible for benefits based on the wages in the base period of her claim.

Case 1:05-cv-11584-DPW    Document 26-2    Filed 06/19/2006    Page 6 of 7

| 1. | Mass. Division of Unemployment Assistance | 2. | 3. Page: | Massachusetts Department of |
|---|---|---|---|---|
| | TEL CLAIMS CTR  P.O. BOX 9694<br>BOSTON            MA 02114<br>Tel.: *877-626-6800  Fax 617-727-7837 | BENEFIT DETERMINATION<br>(PRI)<br>REVISED | 1<br>OF<br>1 | **Workforce**<br>Development<br>Division of Unemployment Assistance |

*IN AREA CODES 617, 781, 857 AND 339 CALL 617-626-6800.
REFER TO THE INSERT "HOW TO READ YOUR BENEFIT DETERMINATION" FOR AN EXPLANATION OF HOW YOUR BENEFITS ARE
CALCULATED. CALL THE NUMBER ABOVE WITH QUESTIONS. THIS IS A DETERMINATION OF MONETARY ELIGIBILITY ONLY. IT
DOES NOT NECESSARILY ENTITLE YOU TO BENEFITS. YOU HAVE THE RIGHT TO APPEAL THIS DETERMINATION.

| 4. SSA No.: XXX-XX-7512 | 7. Name and Address: | FOR D.U.A. USE ONLY |
|---|---|---|
| | JANICE   W STEVENSON | 00676 |
| 5. Date Mailed:  06-09-06 | PO BOX 400372 | |
| 6. Effective Date:  10-16-05 | CAMBRIDGE       MA 02140 | |

| 8.<br>Employer<br>Name | 9.<br>Employer<br>Identification<br>Number | 10. 11. 12.<br>Wg. Af. Sp.<br>Cd. Cd. Cd. | 13.<br>Latest<br>Separation<br>Date | 14. | BASE PERIOD WAGES PAID BY EACH EMPLOYER | | | | TOTAL BASE<br>PERIOD WAGES<br>PAID BY<br>EMPLOYER |
|---|---|---|---|---|---|---|---|---|---|
| | | | | 10-01-04<br>TO<br>12-31-04 | 01-01-05<br>TO<br>03-31-05 | 04-01-05<br>TO<br>06-30-05 | 07-01-05<br>TO<br>09-30-05 | | |
| AJILON P<br>ACE EMPL<br>NEIGHBOR<br>ACE EMPL | 83-659300<br>82-342390<br>78-506380<br>81-021780 | S Y U<br>S N Q<br>S Y U<br>B N L | 09-30-05<br>09-02-05<br>06-25-05<br>04-30-04 | 0.00<br>0.00<br>13410.73<br>0.00 | 0.00<br>0.00<br>12000.00<br>0.00 | 0.00<br>519.75<br>14519.79<br>0.00 | 1700.00<br>3473.25<br>0.00<br>0.00 | 0.00<br>0.00<br>0.00<br>0.00 | 1700.0<br>3993.0<br>39930..<br>0.0 |
| | | | | | | | | | 16.<br>TOTAL WAGE |
| 15.   TOTAL ELIGIBLE WAGES BY QUARTER ➡ | | | | | 13410.73 | 12000.00 | 15039.54 | 5173.25 | 0.00   45623.5 |

* State Law limits potential duration to 26 weeks beginning 03-10-02

| 17.  BENEFIT<br>RATE<br>547.00 | + | 18.  DEPENDENCY<br>ALLOWANCE<br>0.00 | − | 19.  WEEKLY<br>PENSION DEDUCTION<br>0.00 | = | 20.  PAY<br>RATE<br>547.00 |
|---|---|---|---|---|---|---|

| 21.* BENEFIT<br>CREDIT<br>16410 | 22.* POTENTIAL<br>DURATION<br>30.0 | 23.  EARNINGS<br>EXCLUSION<br>182.33 | 24.  TYPE COMP.<br>FORMULA<br>X | 25.  AVERAGE<br>WEEKLY WAGE<br>1095.00 |
|---|---|---|---|---|

YOU ARE MONETARILY ELIGIBLE FOR BENEFITS USING YOUR PRIMARY BASE PERIOD.   THE BASE PERIOD
ELECTION DOES NOT APPLY TO YOUR CLAIM.

| D.U.A. USE ONLY | | |
|---|---|---|
| Office #: | Claimant Name, Social Security Number: | Determination Mail Date: |
| 27 | JANICE  W STEVENSON        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 | 06-09-06 |

**IMPORTANT**

This notice contains information about your rights or obligations, and should be translated immediately. If you need a translator, ask for a listing of translation services at your DUA office.

**ВАЖНОЕ СООБЩЕНИЕ**

В этом сообщении содержатся информация о Ваших правах и обязанностях, и оно должно быть срочно переведено Вам. Если Вам нужен переводчик, попросите список переводческих компаний в своем DUA офисе.

**IMPORTANTE**

Este aviso incluye información sobre sus derechos y obligaciones, y debe traducirse de inmediato. Si necesita un traductor, solicite el listado de servicios de traducción en la oficina de la DUA correspondiente.

**IMPORTANTE**

Questo avviso contiene informazioni sui Suoi diritti od obblighi e deve essere tradotto immediatamente. Se ha bisogno di un traduttore, chieda l'elenco dei servizi di traduzione presso la DUA.

**IMPORTANTE**

Este comunicado contém informações sobre os seus direitos ou obrigações. Ele deve ser traduzido prontamente. Se precisar de um tradutor, solicite no escritório DUA mais próximo uma lista dos serviços de tradução.

**IMPÒTAN**

Nòt sa a genyen enfòmasyon sou dwa w oubyen obligasyon ke ou genyen, epi ou fèt pou ou fè tradwi l konprè a. Si ou bezwen ou moun ki pou tradwi pou ou, mande on lis ki genyen sèvis ke yo ofri pou tradiksyon nan biwo DUA ke ou konn ale a.

**QUAN TRỌNG**

Thông báo này bao gồm thông tin về quyền hạn hoặc trách nhiệm của quý vị và phải được thông dịch ngay. Nếu cần một thông dịch viên, hãy yêu cầu một danh sách dịch vụ thông dịch tại văn phòng DUA của quý vị.

**重要**

本通知包含有關閣下權利或義務的資訊, 應即刻翻譯, 如果需下需要翻譯人員, 請向閣下的DUA辦事處要求一份翻譯社的名單。

---

## HOW TO REQUEST A HEARING ON THIS DETERMINATION

This determination will become final unless:
(1) you request a hearing **WITHIN TEN CALENDAR DAYS** after the date of mailing or delivery in hand, or (2) you request a hearing within eleven to thirty 30 calendar days after the date of mailing or delivery in hand and it is established that such delay was for good cause.

You may file a request for a hearing by mail using a signed letter, or by completing the "REQUEST FOR HEARING" blank provided below. You may also request a hearing in person at any office of this Division. The hearing will be conducted in accordance with the Standard Rules of Practice and Procedure, 801 CMR 1.02 and 1.03 (Informal/Fair Hearing Rules).

If you request a hearing on this determination, you must continue to complete your weekly Benefit Claims Certification forms as instructed by your local office staff in order to protect your rights to benefits.

Although such representation is not required, any party may be represented at the hearing by counsel or agent. If you desire counsel and are unable to engage one in private practice, you may meet the criteria for obtaining assistance from the local Legal Assistance

Service, Legal Aid Society or Bar Association. Fees payable by claimant to his/her counsel or agent for representation at a hearing shall be subject to the approval of the Deputy Director.

### FORMER FEDERAL CIVILIAN EMPLOYEES

If you have had employment with a federal agency, you are advised that findings with respect to whether you performed federal service, the amount of your federal wages, and the period of your federal service are made by the federal agency.

If you wish further information regarding any of these findings, please contact your local unemployment insurance office for assistance within five calendar days of receipt of this notice.

### FORMER MILITARY PERSONNEL

If you believe any military service information on which this determination is based is incorrect or substantially incomplete, please contact your branch of service and/or the Veteran's Administration and notify your local unemployment insurance office.

**TO REQUEST A HEARING CUT ALONG THE DOTTED LINE BELOW AND MAIL TO THE OFFICE LISTED IN BLOCK #1 ON THE FRONT SIDE.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### REQUEST FOR HEARING

| Name:      (Last) | (First) | (M!) | Social Security Account Number: | |
|---|---|---|---|---|
| Mailing Address:   (P.O. Box; Number and Street) | | (City or Town) | (State) | (Zip Code) |

**Please complete the following information. Be as specific as possible.**

I REQUEST A HEARING ON THE MONETARY DETERMINATION OF MY CLAIM FOR THE FOLLOWING REASON(S):

**Please sign and mail to the office listed in block #1 on front side.**

| Signature: | Date: | Telephone Number: |
|---|---|---|

1075-8 Rev. 02-22-06