UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JANICE STEVENSON,
Plaintiff,

v.

NEIGHBORHOOD HOUSE CHARTER
SCHOOL, Defendant                     CIVIL ACTION NO. 05-CV-11584-DPW

PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO
RULE 11 SANCTIONS AND VACATION PAY OBJECTIONS

## ISSUE

Neighborhood House Charter School's (defendant) attorneys want this Honorable Court to narrowly focus its attention away for their conduct. The issue underlying all counts of my complaint is the fact that I worked and did not receive wages for work that has already been performed.

The attorneys cannot stand before this Honorable Court and present payroll records that the Defendant is in compliance with Massachusetts wage and hour law. In Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961), the Supreme Court directed courts to look at "economic reality" rather than "technical concepts" to determine employment status under the FLSA. Has defendant's discovery attempted to determine whether they (1) had the power to hire and fire the Plaintiff, (2) supervised and controlled Plaintiff's work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[1] Attachment 1 is direct evidence from the defendant's own records that demonstrate these four (4) tests. The final and determinative question must be whether the total of the testing establishes the

---

[1] Henthorn v. Department of Navy, 29 F.3d 682, 684 (D.C. Cir. 1994).

Plaintiff is so dependent upon the Defendant that she comes within the protection of the FLSA. Nevertheless, "[a]ny subsidiary factual issues leading to this conclusion are, of course, questions of fact for the jury." [2]

## Supplemental Jurisdiction

This Honorable Court can hear a claim that would normally come under the jurisdiction of a state court if it is related to a claim already before that court. Plaintiff contends that this Honorable Court has supplementary jurisdiction over Plaintiff's Motion to Compel for Vacation Pay which will allow this Honorable Court to resolve all claims between Plaintiff and Defendant in one forum.

## Background

The attorneys have been aware that their client was guilty of willful violation of FLSA and the Massachusetts wage and hour laws. From the moment, they filed an answer to Plaintiff's complaint. The attorneys had full knowledge that the Defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."[3] Payroll issues are not isolated.

The attorneys are trying to distract this Honorable Court with contrived motions and depositions. The defendant's discovery requests were made for the improper purpose of intimidating plaintiff to withdraw her lawsuit and forgo her legal rights to recover unpaid wages for work already performed. Defendant claims Plaintiff was an administrative employee exempt from FLSA. The information defendant has requested is irrelevant to determining that claim and is sought by the defendant for the improper purpose of intimidating Plaintiff. The information Defendant is requesting not discoverable, because

---

[2] Castillo, 704 F.2d at 185 n.9.
[3] 486 U.S. at 133; 108 S.Ct. at 1681.

it is irrelevant to the subject matter of the suit: unpaid FLSA wages; and to any defenses available to defendant.

The purpose of the email that the attorneys categorize as redacted is ***emphasis:*** defendant's business code of conduct is summarized in their own words: *"the DOL won't know if we're [Neighborhood House Charter School] is in compliance around some things and even if they do know, the penalties are not that bad; ie I'm [Neighborhood House Charter School is] risking the cost (penalties) for the benefit of saving time or money or frustration or whatever."*

Defendant contends this statement is in response to an isolated, unrelated issue. It is rare than an employer is violating wage and hour laws with respect to one employee only. Wage and hour violations generally occur in the context of a uniform payroll system. Similarly, the exempt/non-exempt determination is generally a company policy applicable to all employees with a certain job title.

The Massachusetts Payment of Wages Act, M.G.L. c. 149, §148 (the "Wage Act") is a broad statute with harsh penalties. Massachusetts' wage and hour laws pre-date the Fair Labor Standards Act (FLSA) by 26 years and, in some areas, they create greater responsibilities for Massachusetts employers. Employers in Massachusetts must comply with all applicable federal and state wage and hours laws in operating their businesses. Defendant's attorneys are aware that a violation of the Massachusetts law governing the timely and appropriate payment of wages to employees could result in severe penalties, including sanctions.

In fact, a recent decision by a Massachusetts superior court held that even a corporation's outside investor could be considered an "employer" and, therefore, individually liable for the corporation's failure to pay wages.(See O'Leary v. Henn, Mass. Lawyer's Weekly No. 12-170-05.) The O'Leary decision put all on notice that this

powerful statute is applicable to many different individuals: corporate executives, directors and officers, payroll department employees, human resources department employees, venture capitalist firms, investors, stockholders, members of a corporation's board of directors or compensation committee, and any other individual who may play a role in the corporation's wage payments could all be individually responsible for a violation of the Massachusetts Wage Act. The liability these individuals face as an "employer" violating the statute is significant. First, the statute limits the defenses an "employer" may raise in response to a claim for violating the statute: a lack of funds, a simple mistake, and a dispute over the amount owed are not viable defenses. Second, the penalties are severe. The employee may seek damages corresponding to lost wages and benefits. This damage amount will be tripled before being awarded to the employee. Further, an employee prevailing under this statute will be able to recover the costs incurred to bring and prosecute the claim, including all reasonable attorneys' fees. Thus, a violation of this statute can be extremely costly.

The attorneys for this defendant have never advised their client to review the practices and procedures defendant's organization uses to (1) pay its employees, (2) calculate amounts earned by employees, (3) calculate deductions taken from employee paychecks, and (4) pay out unused vacation time to ensure statutory compliance.

**Vacation Payments Are Wages**

> *Employers who choose to provide paid vacation to their employees must treat those payments like any other wages under G.L. c. 149, § 148. See Massachusetts v. Morash, 490 U.S. 107 (1989). Like wages, the vacation time promised to an employee is compensation for services which vests as the employee's services are rendered. Upon separation from employment, employees must be compensated by their employers for vacation time earned "under an oral or written*

agreement." *G.L. c. 149, § 148. Withholding vacation payments is the equivalent of withholding wages and, as such, is illegal.*[4]

As evidence of the violation of number 4, the memo of Attachment 1 is dated June 2005.[5] I, Janice W. Stevenson, the Plaintiff, affirm I have never been paid the vacation wages *which vested as my services were rendered* per agreement with the Defendant, Neighborhood House Charter School.

THEREFORE, Plaintiff requests this Honorable Court to deny all motions by the defendant and GRANT Plaintiff's Motion to Compel Vacation Pay, per Massachusetts wage and hour statute, and schedule this case for a jury trial.

Respectfully submitted by,

*/s/ Janice W. Stevenson*

Janice Wilson Stevenson
P.O. Box 400372
Cambridge, MA 02140
617-721-2638 - ph
866-838-4286 - fax

CERTIFICATE OF SERVICE

I hereby certify that this document was served on NEIGHBORHOOD HOUSE CHARTER SCHOOL by email to:
Lynn A. Kappelman (BBO # 642017) and Barry J. Miller (BBO # 661596)
SEYFARTH SHAW LLP, World Trade Center East, Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Telecopier: (617) 946-4801

*/s/ Janice W. Stevenson*

---

[4] ADVISORY 99/1, An Advisory from the Attorney General's Fair Labor and Businesss Practices Division on Vacation Policies

[5] *Massachusetts v. Morash,* 490 U.S. 107 (1989).

# ATTACHMENT 1



*The Neighborhood House*

CHARTER SCHOOL

**NHCS**

Date: June 3, 2005
To: Janice Stevenson
From: Jug Chokshi
Re: Termination of your contract

Effective June 3, 2005, I am terminating your company's (TUCKNT) contract for the roles and responsibilities of the Finance and Operations Manager at the Neighborhood House Charter School.

I am terminating the contract because this contractual relationship is not in the best interest of the school; additionally, over the last two months, I have observed your behavior to be insubordinate. Here, I will provide three examples:

- On May 22, 2005 Kevin Andrews and I instructed you to perform a salary analysis (which I had actually asked you to prepare the week prior) and you refused. We restated the urgency and importance of this task, asked you to "drop everything else and put it on the back burner" so that this task could be completed immediately, and again you refused.
- On May 23, I sent you an email instructing you to do several things in preparation for my return from my vacation on June 1 (such as prepare the payroll for my review, order food for the June 1 Finance Committee meeting, prepare an update of billing for FY05 public funding, etc.) and upon my return on June 1, I found that you had not done any of these things.
- On June 1, we had a conversation about that week's payroll. I had instructed you to pay all salaried employees regardless of whether we had received a time sheet from them and you refused.

We had verbally negotiated your contract, as an "at-will" contract. As of January 2005, I had agreed to pay you a rate of $52k per year. I also agreed to provide 10 sick days, 20 vacation days and 3 personal days.

Although you have taken many days off, or partial days off, over the course of your contract, I am not counting that against your balance. However, for the two weeks in early May for which you were absent from your daily responsibilities at the school, I am counting 3 personal days and 7 vacation days, leaving you with a balance of 15 vacation days. Since we have prepaid your contract for the entire month of June, I consider your compensation to be fully paid as of June 3, 2005. Please keep in mind that we don't pay out for unused personal or sick days. Also, even though we haven't yet completed a full year of this contract, I have accrued the time-off on a year-long basis.

I expect that any files or materials related to the school that you may have at your home or anywhere else will be returned to my attention no later than June 8, 2005.

*[signature]*

197A Centre Street, Dorchester, MA 02124 p: 617-825-0703 f: 617-825-1829 website: www.NHCSonline.org