UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JANICE STEVENSON       CIVIL ACTION NO.
Plaintiff,

V.

NEIGHBORHOOD HOUSE CHARTER
SCHOOL, Defendant.

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION TO AMEND SCHEDULING ORDER

Plaintiff Janice Stevenson ("Plaintiff") opposes the Defendant's Motion to Amend Scheduling Order and in support thereof states the following:

**Background.**

1. Defendant Neighborhood House Charter School ("Defendant") declared that they had enough discoveries to issue a summary judgment at the first mediation session before Magistrate Judge Collings commenced on September 27, 2006.
2. Now the Defendant petitions this Honorable Court to amend the scheduling order.
3. Plaintiff dutifully undertook to complete her discovery efforts during the period of time provided by the Court.
4. Plaintiff cooperated fully in discovery through production of documents within my control.
5. Plaintiff provided adequate written responses to the best of her abilities.

**Records To Be Kept By Employers.**

6. Plaintiff cannot produce records required by the FLSA of employers.
7. Defendant is represented by attorneys from: 1) Sullivan and Worcester and 2) Seyfarth Shaw.
8. These attorneys submit to various state and federal agencies documents.
9. These attorneys of the Defendant have not given each other copies of these documents.
10. Barry Miller, Seyfarth Shaw, wants Plaintiff to produce documents submitted by Sullivan and Worcester attorneys to various state and federal agencies for NHCS.
11. Defendant wants Plaintiff to produce documents owned by the Defendant.
12. The FLSA contains a recordkeeping component. Defendant is architecting a scenario under discovery to shift blame for its irresponsibility regarding recordkeeping.

**Records To Be Kept By Employers (continued).**

13. The Defendant employer has attempted, through both sets of attorneys, to manufacture an exemption for Plaintiff under the Act.
14. Defendant attorneys have left conflicting records describing Plaintiff job duties.
15. As early as August 1, 2005, Defendant employer maintained that Plaintiff primary job duty "was primarily responsible for enrolling new employee in the School's Plans" **[Attachment I]**.
16. As this Honorable Court can see, the document was signed by an attorney from Sullivan and Worcester for the Defendant.
17. This is one of the documents Barry Miller, Seyfarth Shaw, wants this Honorable Court to compel from Plaintiff.
18. The document is in the possession and control of the Defendant.
19. Even though the document was in response to a request for plan documents under ERISA, the Defendant employer's *excitable utterance* is an early declaration by the Defendant of Plaintiff's true responsibilities while employed by Neighborhood House Charter School.

**Defendant Cannot Produce 'Clear And Affirmative' Evidence Per Attachment I and II**

20. Accordingly, Defendant have been afforded an opportunity to present evidence of any efforts undertook to secure reliable assurances that its pay practices complied with the FLSA. This evidence is within the Defendant employer files.
21. Defendant urges this Honorable to compel these documents from Plaintiff.
22. Defendant employer claims that Plaintiff employee is exempt from FLSA because of her job duties. Section 213(a)'s exemptions from FLSA's requirements are to be narrowly construed against the employers seeking to assert them, and their application limited to those Defendant employers plainly and unmistakably within their terms and spirit. Arnold v. Ben Kanowsky, Inc. (1960), 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393, 396.
23. The burden of proving these exemptions is upon the Defendant employer, and if the record is unclear as to some exemption requirement, the Defendant employer will be held not to have satisfied its burden. Idaho Sheet Metal Works, Inc. v. Wirtz (1966), 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694, 703.
24. The employer has the burden of proving that an employee satisfies any exemptions under the FLSA, and exemptions under the FLSA are narrowly construed against the employer. *Takacs v. Hahn Auto. Corp.*, 246 F.3d 776, 779 (6th Cir.), *cert. denied*, - - U.S. - -, 122 S. Ct. 202 (2001) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).
25. In this instance, Defendant employer has maintained different versions of Plaintiff employee's job duties. In a letter dated August 1, 2005, Defendant employer states Plaintiff "was primarily responsible for enrolling new employees in the School's Plans..." **[Attachment I]**

**Defendant Cannot Produce 'Clear And Affirmative' Evidence Per Attachment I and II (continued)**

26. On a Massachusetts Department of Unemployment Assistance form dated April 6, 2006, Defendant presents another version of Plaintiff employee's job duties. **[Attachment II]**
27. Defendant is attempting to allege Plaintiff's is exempt from the FLSA overtime pay requirements because she is an "employee employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a) (1).
28. Because, under the substantive law at issue, the burden of proving an exemption is shifted to the Defendant employer, the Plaintiff employee who claims a violation of FLSA's overtime pay requirements is entitled to summary judgment against the employer unless the latter can produce evidence which at least creates a genuine issue of material fact as to whether the employee meets each and every element of the exemption.
29. If the employer fails to proffer such evidence, summary judgment must be granted in favor of Plaintiff. *Martin v. Indiana-Michigan Power Co.* (6th Cir. 2004), 381 F.3d 574, 578.
30. Generally under the FLSA, an employer must pay an employee overtime pay at one and one-half times the employee's regular rate of pay for all hours worked in a given week in excess of forty hours. *See* 29 U.S.C. § 207(a) (1).
31. The FLSA does not define the "administrative" exemption, but regulations issued by the Department of Labor do.
32. Generally, these regulations "are entitled to judicial deference, and are the primary source of guidance for determining the scope and extent of exemptions to the FLSA." *Spradling v. City of Tulsa*, 95 F.3d 1492, 1495 (10th Cir. 1996) (citation omitted).
33. Exemptions to the FLSA are to be narrowly construed, and the burden of proving an exemption is on the employer. *See id.; Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir. 1995).
34. Moreover, the employer's burden is heightened beyond the usual preponderance standard, such that the employer must show that the employee fits **"plainly and unmistakably"** within the exemption's terms. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *see also Aaron*, 54 F.3d at 657 ("An employer must prove that the employee is exempt by **'clear and affirmative'** evidence.") (quotation omitted).

**Long and Short Test**

35. The FLSA provides both a "long" and a "short" test for determining whether an employee falls within the administrative exemption. *See* 29 C.F.R. § 541.2; *see generally Shaw v. Prentice Hall Computer Publ'g, Inc.*, 151 F.3d 640, 642 (7th Cir. 1998); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 8 (1st Cir. 1997); *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997).
36. Because it is undisputed that Plaintiff was paid more than $250 a week **[Attachment III]**, the short test applies here. *See, e.g., John Alden*, 126 F.3d at 8; *Douglas*, 113 F.3d at 70.

### Long and Short Test (continued)

37. Under the short test, the employer must prove (1) that the employee's primary duty consists of the "performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers," 29 C.F.R. § 541.2(a)(1); (2) that the employee "customarily and regularly exercises discretion and independent judgment," *id.* § 541.2(b); and (3) that it paid the employee on a "salary or fee basis," *id.* § 541.2(e)(1). *See also Shaw*, 151 F.3d at 642-43; *Douglas*, 113 F.3d at 70-71.
38. Dividing the short test further, the first two requirements are generally referred to as the "duties" test, and the third as the "salary" test.

### Duties First Test

39. If the Court turn to the duties test first, Defendant acknowledged in a letter dated August 1, 2005, Plaintiff **"was primarily responsible for enrolling new employees in the School's Plans..."**.
40. This Honorable Court should note that Defendant description of Plaintiff's duties are not identical to an example provided in the regulations of an exempt administrative consultant whose duties were directly related to the employer's business operations, as required by the duties test. This work does not fall in the category of exempt work described in § 541.2.

### Duties Second Test

Plaintiff did not "customarily and regularly exercises discretion and independent judgment," *id.* § 541.2(b); Plaintiff performed purely mechanical or routine work which does not qualify for exemption. **[Attachment IV]**

### Salary Test

41. The pay statements fail to indicate that Plaintiff was paid any predetermined amount for each pay period. NHCS failed to meet its burden of showing **"plainly and unmistakably"** that it paid Plaintiff on a salary basis and therefore qualified for the administrative exemption.
42. The statements do not separate the regular, minimum required hours for which NHCS contends Plaintiff was being paid, i.e., 40 hours per week, from any overtime hours. All hours are lumped together and multiplied by the hourly rate to arrive at her gross pay. Moreover, considering time worked and holiday pay, Plaintiff was never paid for fewer than what apparently was the regular, minimum required hour per pay period.
43. In short, the only thing the pay statements necessarily show is that Plaintiff's gross pay each period was based on her compensable hours times her hourly rate. They do not show that her regular pay was a "predetermined amount . . . not

subject to reduction because of variations in the . . . quantity of the work performed." 29 C.F.R. § 541.118(a).

## Conclusion

WHEREFORE, Plaintiff Janice Stevenson requests that the Court to deny: 1) Defendant's Motion to amend the Scheduling Order in the above-captioned matter, (2) NHCS's motions to compel, and (3) any Order compelling further information in the discovery process.

DATED: October 26, 2006

Respectfully submitted,

*/s/ Janice Stevenson*

Janice Stevenson
P.O. Box 400372,
Cambridge, MA 02140

Certificate of Compliance with Local Rule 7.1

## CERTIFICATE OF SERVICE

I hereby certify that this that a true copy of the above document was served on Lynn A. Kappelman (BBO # 642017); Barry J. Miller (BBO # 661596); SEYFARTH SHAW LLP, World Trade Center East, Two Seaport Lane, Suite 300; Boston, MA 02210-2028; Telephone: (617) 946-4800, Telecopier: (617) 946-4801 on October 27, 2006.

*/s/ Janice Stevenson*

# ATTACHMENT I



Sullivan & Worcester LLP  
One Post Office Square  
Boston, MA 02109

T 617 338 2800  
F 617 338 2880  
www.sandw.com

August 1, 2005

Janice Stevenson  
P.O. Box 400372  
Cambridge, Massachusetts 02140

Re: Request for Documents

Dear Ms. Stevenson:

On behalf of the Plan Administrator of the Neighborhood House Charter School's various pension and welfare benefit plans subject to ERISA (the "Plans"), I am writing in response to your various requests for documents under Section 104(b)(4) of ERISA, copies of which are attached.

As the person who was primarily responsible for enrolling new employees in the School's Plans, you are doubtless aware of the fact that non-employee contractors are ineligible for benefits under those arrangements. Because you were a non-employee contractor of the School, and was therefore never eligible to participate in any of the Plans, the Plan Administrator is not required to provide the requested documents.

Sincerely,

David A. Guadagnoli

DAG:djb  
Enclosures

cc: Kevin Andrews

BOSTON   NEW YORK   WASHINGTON, DC  
{B0427447; 2}



THE COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF WORKFORCE DEVELOPMENT
DIVISION OF UNEMPLOYMENT ASSISTANCE

MITT ROMNEY
GOVERNOR

KERRY HEALEY
LT. GOVERNOR

JANE C. EDMONDS
DIRECTOR, DEPARTMENT OF
WORKFORCE DEVELOPMENT

EDWARD MALMBORG
ACTING DIRECTOR

Neighborhood House Charter School
21 Queen Street
Dorchester, MA 02124

April 6, 2006
Status Determination Unit
Telephone: 617.626.5026

Dear Employer:

The issue of whether an employer/employee relationship exists between your organization and Janice W. Stevenson, FEIN: 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, has arisen. In order to assist us in resolving this issue, please complete the following questionnaire with regards to the services performed for your organization, and return it within five (5) days.

1. a. Describe the organization's business:
   See attached statement.

   b. Describe the work done by the worker(s):
   See attached statement.

   c. Who recruits / screens the workers for the client company?
   Hiring of academic and certain adminstrative staff is performed by the School's Headmaster; other members of the administrative staff are hired by the Dean of Administration, with final approval of the Headmaster.

   d. Are there any restrictions, conditions, and / or fees applied to the client if the client hires the worker after the temporary assignment has ended?  ☐ Yes  ☒ No

   e. Please provide copies of the following documents if used:
      · Agreement between the Agency and the Client
      · Agreement between the Agency and the Worker

   f. When a job assignment ends, does the Agency attempt to place the worker with another client?

2. a. If the work is done under a written agreement between the organization and the worker, please attach a copy.
   See attached statement, Item 1.e.

   b. If the agreement is not in writing, describe the terms and conditions of the work arrangement.
   See attached statement, Item 1.b.

CHARLES F. HURLEY BUILDING • 19 STANIFORD STREET • GOVERNMENT CENTER • BOSTON, MA 02114

04/17/06 15:25 FAX 617 338 2880   SULLIVAN & WORCESTER LLP                                 ☒ 005
04/10/2006 MON 17:52  FAX                                                                     ☒ 003/005
Case 1:05-cv-11584-DPW   Document 46-2   Filed 10/27/2006   Page 4 of 14

    c. What agreement was made with the worker about how payments would be made?

       · Was a paystub, W-2, or 1099 issued?  ☐ Yes ☒ No

       · If not, why? _See attached statement._

3. a. Was the worker given training by the organization? See attached statement. ☐ Yes ☐ No

     · If "yes", what kind? _____

     · How often? _____

  b. Does the operation of the organization's business require that the worker be supervised or controlled in the performance of the service? ☐ Yes ☒ No

    Explain: _All financial matters are under the ultimate control of the School, but the Worker did not otherwise require supervision or control._

4. a. The organization engaged the worker to:

    ☒ Perform and complete a particular job only.

    ☐ Work at a job for an indefinite period of time.

    Please explain: _See attached statement, Item 1.b._

  b. Is the worker required to follow a routine or a schedule established by the organization? ☐ Yes ☒ No

  c. Does the worker furnish a time record to the organization? ☐ Yes ☒ No
    If "yes", attach copies of time records.

5. a. State the kind and value of tools, equipment, and supplies furnished by the worker:
    _See attached statement._

  b. What expenses are incurred by the worker in the performance of services for the organization? Does the firm reimburse the worker for any expenses? Please explain.
    _See attached statement_

6. a. Will the worker perform the services personally? · See attached statement. ☐ Yes ☐ No

  b. Does the worker have helpers? ☐ Yes ☒ No

    If "yes", were the helpers hired by: ☐ Organization ☐ Worker

  c. If hired by the worker, is the organization's approval necessary? ☐ Yes ☐ No

  d. Who pays the helper? ☐ Organization ☐ Worker

  e. Are social security taxes and federal income taxes withheld from helpers' wages? ☐ Yes ☐ No

  f. If "Yes", who reports and pays these taxes? ☐ Organization ☐ Worker

Case 1:05-cv-11584-DPW   Document 46-2   Filed 10/27/2006   Page 4 of 14

2

7.  At what location are the services performed?                    ☒ Organization  ☒ Worker

8.  a. Type of pay worker received: ☐ Salary  ☐ Commission  ☐ Hourly Wage

    ☐ Piecework  ☐ Lump Sum  ☒ Other (specify) __Fee based on submitted invoice.__

    b. Does the organization guarantee a minimum amount of pay to the worker?    ☐ Yes  ☒ No

9.  a. Is the worker eligible for a pension, bonuses, paid vacation, sick pay, etc.? See attached  ☐ Yes  ☒ No
       statement.
       If "yes", specify: _____.

    b. Does the organization carry worker's compensation insurance on the worker?  ☐ Yes  ☒ No

    c. Does the organization deduct social security tax from amount paid to the worker?  ☐ Yes  ☒ No

    d. Does the organization deduct federal income taxes from the amount paid to the worker?  ☐ Yes  ☒ No

10. a. Approximately how many hours a day does the worker perform services for the organization? approx.
                                                                                                  40/week
    b. Does the worker perform similar services for others?  See attached statement.  ☐ Yes  ☐ No

11. Is a license necessary for the work?                                              ☐ Yes  ☒ No

    If "yes", what kind of license is required? _____

12. a. Does the worker assemble or process a product at home or away from your place
       of business?                                                                   ☐ Yes  ☒ No

       If "yes", who furnishes materials or goods used by the worker?  ☐ Organization  ☐ Worker

    b. Is the worker furnished a pattern or given instructions to follow in making the product?  ☐ Yes  ☐ No

    c. Is the worker required to return the finished product to the organization or to someone
       designated by the organization?                                                ☐ Yes  ☒ No

13. a. Are leads to prospective customers furnished by the organization?              ☐ Yes  ☒ No

    b. Is the worker required to pursue or report on leads?                           ☐ Yes  ☐ No

    c. Is the worker required to adhere to prices, terms, and conditions of the sale established
       by the organization?                                                           ☐ Yes  ☐ No

    d. Are orders submitted to and subject to approval of the organization?           ☐ Yes  ☐ No

    e. Is the worker expected to attend sales meetings?                               ☐ Yes  ☐ No

       If "yes", is the worker subject to any kind of penalty for failing to attend?  ☐ Yes  ☐ No

    f. Does the organization assign a specific territory to the worker?  ☐ Does not apply  ☐ Yes  ☐ No

    g. How does the worker obtain new customers? Explain fully, showing whether the new customers call the
       organization for services, or are the customers solicited by the worker, or both.

    _____

    _____

3

Please furnish this agency with any other pertinent information that you feel is necessary. This questionnaire should be returned as soon as possible. If no response is received, the determination will be based on statements available.

Mail to:

Division of Unemployment Assistance
Revenue Service
Status Determination Section, 5th Floor
19 Staniford Street
Boston, MA 02114

Or Fax to:

(617) 727-8221

Signed: _____

Title: _____

Contact Phone No: _____

Please feel free to call me if you require any additional information at (617) 626-5038.

Sincerely,

Stephen Chawner, Status Analyst
Contributions Department

4

# The Neighborhood House Charter School
## Statements in Response to Division of Unemployment Assistance Inquiry
### regarding Janice Stevenson (SSN 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)

Item 1.a. <u>Description of Organization's Business</u>. The Neighborhood House Charter School ("NHCS" or the "School") is a nonprofit charter school organized pursuant to Mass. Gen. L. c. 71 § 89 that serves children in the Dorchester neighborhood of Boston, Massachusetts, in grades pre-kindergarten to eighth grade. A charter school is a public school that is granted a special charter under Massachusetts law to operate independently of the central public school administration of the municipality in which it is located. To supplement the public funds it receives, NHCS requests contributions and grants from public agencies, philanthropic entities, and individuals.

Item 2.b. <u>Work Performed by Worker</u>. Ms. Stevenson ("Worker") had been performing services at NHCS through Ace Employment Agency, a temporary employment agency ("Ace"). In that capacity, she provided some basic accounting services as well as various office administration services.

By August of 2004, NHCS was looking for help with finance, payroll, and human resources services, as well as assistance with the preparation of grant applications, at least on a temporary basis.[1] The existing staff of NHCS did not have sufficient capacity to handle this work. NHCS publicly posted a job opening for a grants manager, and Worker indicated her desire to provide that service, as well as the other administrative services for which the School sought assistance. Ms. Stevenson held herself out as being experienced in these areas (she has described herself as, for example, a human resources professional) and informed NHCS that her company, TuckNT, was able to provide the services that NHCS needed. NHCS, therefore, engaged TuckNT, P.O. Box 400342, Cambridge, Massachusetts 02140 (TIN 20-1513588[2]). NHCS entered into a direct engagement with TuckNT for services beginning August 20, 2004. NHCS viewed the arrangement with TuckNT as temporary.

The services that TuckNT provided to NHCS subsequently expanded to cover more general accounting and administrative tasks, including: assistance with the preparation of NHCS's financial records (by processing and arranging for payment of accounts receivable and accounts payable); assistance with human resources matters (including, for example, setting up human resources systems, maintaining personnel records, and overseeing compliance with applicable Federal and state laws, such as worker classification and assessing whether a particular employee should be considered exempt or non-exempt for overtime purposes); administration of employee benefits (enrolling

---

[1] The School previously had received accounting, payroll, benefit administration, and human resources support through a contract with another entity. By the Summer of 2004, the School had decided to sever that relationship and thus was in the process of building its own internal systems in these areas.

[2] Worker entered this TIN for TuckNT into the School's computer system for processing accounts payable and it is assumed to be accurate.

{B0511257; 3}

The Neighborhood House Charter School
Statement in Response to Division of Unemployment Assistance Inquiry
Regarding Janice Stevenson (SSN 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)
Page 2

employees and performing various research tasks[3]); and payroll administration and processing. The accounts payable and payroll administration tasks included arranging for the preparation and filing of IRS Forms 1099-MISC for payments to vendors and contractors and IRS Forms W-2 for payments of wages to employees. By January or February of 2005, TuckNT also was involved in the preparation of documentation to allow NHCS to receive payment of state allocation grants from the Commonwealth of Massachusetts.

Virtually all of the tasks described above, all of which are tangential to the School's core mission of education, required minimal oversight by the Dean of Administration, who oversaw the relationship with TuckNT. As a consultant with expertise in these areas, NHCS expected that only the most minimal training or supervision would be required. The Dean of Administration imposed few (if any) limits on how the assigned tasks were performed. TuckNT treated the tasks it performed for NHCS as discrete "projects" to be completed.

Item 3.e. Documentation. There is (was) no written contract between NHCS and TuckNT/Ms. Stevenson. TuckNT provided services to NHCS pursuant to an oral contract.

Item 4.f. Placement. As indicated, TuckNT is not an employment agency but rather is the consulting business established by Ms. Stevenson. The relationship was between NHCS and TuckNT, which NHCS understood to be a legitimate consulting business.

Item 5.c. Payments and Information Return Reporting. TuckNT charged an agreed upon fee per time period for services based on the length of the time period and the type of project. Invoices were submitted on TuckNT letterhead. (A sample invoice, prepared and submitted to NHCS by TuckNT, is attached at Tab A.) Ms. Stevenson prepared "Neighborhood House Charter School Check Request" forms, which forms were approved, generally, by the Dean of Administration. A check was then issued to TuckNT.

As indicated in Item 1.b. above, TuckNT was responsible for the preparation and filing of IRS Forms 1099-MISC and W-2 on behalf of NHCS. It was discovered after the end of TuckNT's relationship with NHCS that Ms. Stevenson failed to issue to TuckNT (or herself) a Form 1099-MISC (or Form W-2) to report payments NHCS made to TuckNT for the services it provided to the School. Upon discovery of this failure, NHCS issued a Form 1099-MISC to TuckNT for 2004; NHCS also issued a Form 1099-MISC to TuckNT for 2005.

---

[3] Note that if Worker had been an employee, Worker would have been eligible to enroll herself in the School's benefit plans. The fact that she failed to do so during the August, 2004 through June, 2005 service period clearly reflects her view of the relationship between TuckNT, herself, and the School (at least prior to the termination of the relationship between TuckNT and NHCS).

{B0511257; 3}

The Neighborhood House Charter School
Statement in Response to Division of Unemployment Assistance Inquiry
Regarding Janice Stevenson (SSN 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)
Page 3

Item 6.a. <u>Training Provided to Worker</u>. No organized training was provided because Ms. Stevenson held herself out as an expert, and NHCS had no internal expertise in the areas with respect to which TuckNT was retained to provide services. (*See*, for example, the pages from the TuckNT website attached at Tab B.) Worker did attend a number of conferences and seminars during the period between August of 2004 and June of 2005, which the School believes she did to keep up with legal and other developments. Most of those conferences and seminars were not paid for by the School, although it did reimburse her for the cost of one such program. Worker also received training from Ceridian in how to work with the computerized payroll administration system for NHCS. Such training on the idiosyncrasies of the system for the School would of course be necessary regardless of whether the person operating the system was an independent contractor or an employee of the School.

Item 5.a. <u>Tools, Equipment, and Supplies</u>. NHCS provided Worker with office space, a dedicated telephone extension (so third parties could contact Worker directly), the use of a computer, and basic office supplies. Other supplies and materials were neither necessary nor required. Ms. Stevenson also maintained a home office on behalf of TuckNT at which she performed some of the services that TuckNT provided to NHCS. NHCS provided no equipment or supplies for the office that Ms. Stevenson maintained on behalf of TuckNT.

Item 6.b. <u>Expenses Incurred by Worker</u>. To the School's knowledge, Worker did not incur expenses for services performed at the offices of NHCS. While she may have incurred expenses in maintaining her home office, any such expenses were not reimbursed by NHCS.

Item 7.a. <u>Personal Services</u>. Worker provided personal services to TuckNT, which provided the various services described above in Item 1.b. to the School. There was no requirement that Worker be the representative of TuckNT providing services to NHCS. NHCS has no knowledge as to whether or not TuckNT provided services to other clients using Worker personally or any other service provider, but understands that TuckNT at least actively solicited contracts with other entities.

Item 9.a. <u>Eligibility for pensions, bonuses, paid vacation, sick pay, etc.</u> As indicated above, because there was no employment relationship between the School and Ms. Stevenson, Ms. Stevenson was not eligible for these employee benefits. Nevertheless, NHCS now understands (from other contexts) that Ms. Stevenson considered the compensation she received as a result of some payments that NHCS made to TuckNT to be some form of paid leave. NHCS considered all payments it made to TuckNT to be for services rendered pursuant to the governing contract, and NHCS never made any payments directly to Ms. Stevenson.

Item 10.b. <u>Similar Services for Others</u>. The TuckNT website (see copies of printed web pages attached) indicates that TuckNT held itself out to others. The website claims that "TuckNT is a multi-funcational [sic], cross-cultural consulting Organization

{B0511257;3}

The Neighborhood House Charter School
Statement in Response to Division of Unemployment Assistance Inquiry
Regarding Janice Stevenson (SSN 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)
Page 4

providing HR Generalist services, Payroll Analysis and Setup, Public Funding administration." It also claims that "TuckNT can assist all companies with their Supply chain management services, HR Generalist services, Web-based payroll setup and processing services, Accounts payable, Accounts receivables [sic], and Public funding reporting and proposal development." Such statements reinforce Worker's independence, expertise, and availability to many clients besides NHCS, all of which are hallmarks of contractor (rather than employment) status. NHCS is aware that TuckNT made a proposal to design accounting systems for another Boston-based nonprofit organization (the identity of which can be supplied if helpful). NHCS does not know whether TuckNT ultimately was retained for this project.

In addition, NHCS has found in its records an IRS Form 5213, Election to Postpone Determination as to Whether the Presumption Applies That an Activity is Engaged in for Profit, apparently filled out by Worker, using the employer identification number NHCS believes is of TuckNT, and describing the business in terms that are similar to the description of TuckNT's services on its website. (A copy of the Form is attached at Tab C.) It indicates that the first year of the activity is 2004. The Form is apparently signed and dated by Worker on October 19, 2004. NHCS has no knowledge why this form is in its files, and does not know if it was ever filed with the IRS. If, as it appears, Worker filled out this form, it is yet another indication that she viewed her services to the School as a consulting business, not as employment by the School.

{B0511257; 3}

# ATTACHMENT III



*The Neighborhood House*

CHARTER SCHOOL

**NHCS**

Date: June 3, 2005
To: Janice Stevenson
From: Jug Chokshi
Re: Termination of your contract

Effective June 3, 2005, I am terminating your company's (TUCKNT) contract for the roles and responsibilities of the Finance and Operations Manager at the Neighborhood House Charter School.

I am terminating the contract because this contractual relationship is not in the best interest of the school; additionally, over the last two months, I have observed your behavior to be insubordinate. Here, I will provide three examples:

- On May 22, 2005 Kevin Andrews and I instructed you to perform a salary analysis (which I had actually asked you to prepare the week prior) and you refused. We restated the urgency and importance of this task, asked you to "drop everything else and put it on the back burner" so that this task could be completed immediately, and again you refused.
- On May 23, I sent you an email instructing you to do several things in preparation for my return from my vacation on June 1 (such as prepare the payroll for my review, order food for the June 1 Finance Committee meeting, prepare an update of billing for FY05 public funding, etc.) and upon my return on June 1, I found that you had not done any of these things.
- On June 1, we had a conversation about that week's payroll. I had instructed you to pay all salaried employees regardless of whether we had received a time sheet from them and you refused.

We had verbally negotiated your contract, as an "at-will" contract. As of January 2005, I had agreed to pay you a rate of $52k per year. I also agreed to provide 10 sick days, 20 vacation days and 3 personal days.

Although you have taken many days off, or partial days off, over the course of your contract, I am not counting that against your balance. However, for the two weeks in early May for which you were absent from your daily responsibilities at the school, I am counting 3 personal days and 7 vacation days, leaving you with a balance of 15 vacation days. Since we have prepaid your contract for the entire month of June, I consider your compensation to be fully paid as of June 3, 2005. Please keep in mind that we don't pay out for unused personal or sick days. Also, even though we haven't yet completed a full year of this contract, I have accrued the time-off on a year-long basis.

I expect that any files or materials related to the school that you may have at your home or anywhere else will be returned to my attention no later than June 8, 2005.

*[signature]*

# ATTACHMENT IV

Message                                                                                         Page 1 of 1

**Stevenson, Janice W.**

**From:** Stevenson, Janice W.
**Sent:** Saturday, July 09, 2005 11:23 AM
**To:**
**Subject:** FW: Next Few days
**Attachments:**

**From:** Jagdish Chokshi [mailto:jug@thenhcs.org]
**Sent:** Tuesday, May 24, 2005 9:37 PM
**To:** Janice W. Stevenson
**Cc:** Kevin Andrews
**Subject:** Next Few days

Janice
Over the next few days, while I'm gone:
1. First, while I'm gone, you should notify Kevin (as you would me) of any time off, lateness, early departures etc.
2. I'll approve Rich's timesheet and complete mine next Wed, June 1, my first day back.
3. Pls order some food and drinks for a 4 pm finance comm meeting here at the school on June 1 (8 people).
4. Pls do NOT transmit payroll for next week until I return and approve the payroll.
5. I saw a $1500 stipend for Monica L signed by Mark J; DO NOT PAY that stipend. Pls return the stipend letter to me and I will follow-up after I get back.
6. When I return I'd like to know the following CRITICAL info:
-Where do we stand with the food revenue?
-Where do we stand on other public funding for FY05 - what's left to bill?
7. Genevieve may be here next Tues, but she has keys so she should be all set.
8. As always, pls call my cell if there are any emergencies.

Thanks
Jug

*Jug Chokshi*
*Dean of Administration*
*Neighborhood House Charter School*
*197A Centre Street*
*Dorchester, MA 02124*
*t. 617.825.0703 x271*
*f. 617.474.1103*
*www.theNHCS.org*