# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JANICE STEVENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.  05-CV-11584-DPW |
| v. | ) | |
| | ) | |
| NEIGHBORHOOD HOUSE CHARTER SCHOOL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S  RESPONSE TO PLAINTIFF'S OBJECTIONS TO ORDER OF THE MAGISTRATE JUDGE

Defendant Neighborhood House Charter School ("Defendant," "NHCS" or the "School") hereby responds to Plaintiff's Motion of Objections to the Majistrate's [sic] Proposed Order and Findings (docket entry no. 50) ("Plaintiff's Objections") and renews its request for sanctions against Plaintiff Janice Stevenson ("Plaintiff" or "Stevenson") for her continuing pattern of dilatory, bad faith filings intended to harass the School and squander its resources.

## BACKGROUND

This lawsuit is only one component of a comprehensive campaign of harassment that Plaintiff commenced against NHCS after the School terminated its relationship with her company, TuckNT.  She has commenced frivolous proceedings against the School in at least ten (10) different fora, and she has threatened to commence still further baseless litigation against

the School and its constituents.[1]  *See* Defendant's Memorandum Regarding Ancillary

Administrative Proceedings (docket entry no. 25).[2]

The manner in which Stevenson has conducted herself in litigating this matter reflects her

intention to pursue the case as nuisance litigation.  She has filed numerous motions seeking relief

that is procedurally inappropriate and wholly without a basis in the law.  *See, e.g.*, Plaintiff's

Motion to Compel Payment of Vacation Wages (docket entry no. 35) and Plaintiff's Motion for

Rule 11 Sanctions (docket entry no. 37).  Stevenson has also refused to cooperate in discovery,

and thereby forced NHCS to expend considerable resources in filing motions to compel.  She has

refused to produce centrally relevant documents responsive to NHCS's proper requests with no

valid basis.[3]  *See* Defendant's Motion to Compel Production of Documents and for Sanctions

(docket entry no. 32).  She also refused to participate in her deposition, asserting inapplicable

constitutional privileges, refusing to testify regarding subjects that she believed would be

harmful to her case, and refusing even to look at documents placed in front of her as exhibits.

*See* Defendant's Motion for Terminating Sanctions, or in the Alternative, to Compel Deposition

Testimony (docket entry no. 41).

---

[1] At her deposition in this matter, Stevenson threatened to file suit against NHCS for defamation and threatened to sue the School's counsel for inconveniencing her by taking her deposition.  *See* Excerpted Transcript of Deposition of Janice Stevenson, 84:21 – 85:18, 423:6 – 425:3, 466:2-19, attached hereto as Exhibit A.

[2] Since filing its brief regarding the proceedings that Stevenson has commenced against the School, NHCS has learned that she has filed charges or claims against the School with the U.S. Bankruptcy Court for the District of Massachusetts, U.S. Department of Labor's ("USDOL") Employee Benefits Security Administration, USDOL's Wage and Hour Division, the Massachusetts Department of Revenue, the Massachusetts Appellate Tax Board, and the Massachusetts Attorney General's Office, in addition to this case and the three proceedings listed in the School's brief.

[3] A prime example of Stevenson's obstinance in this regard is her refusal to produce copies of her income tax returns, which she has admitted to exist.  Hearing Trans. 12:1-11, 15:19-23.  She has also failed and refused to produce journals that she claims to contain contemporaneous accounts of the hours she spent providing services to the School.  *See* Hearing Trans. 5:18-24.  Moreover, as detailed below, Plaintiff has continued to attach relevant and responsive documents that she has not produced to NHCS in this matter to her filings with various other courts and agencies.

2

On November 6, 2006, Magistrate Judge Alexander held a hearing on all pending motions in this action.  A transcript of the hearing is attached as Exhibit B.  After affording Plaintiff a full opportunity to be heard, Magistrate Judge Alexander found that Plaintiff had engaged in an "apparently deliberate failure to respond to legitimate discovery requests" and that her inability to defend the motions she had filed substantiated Defendant's contention that Stevenson has acted in "frivolous and dilatory manner."  Order, p. 4; *see also* Hearing Trans., 26:12 – 27:4 ("you have used dilatory tactics, you have refused to give information, you have clearly submitted frivolous motions, and your behavior, while the Court always should give a *pro se* plaintiff some leeway and some room, you've had a house.").  Magistrate Judge Alexander's Order went on to state expressly that the Court will impose harsh sanctions on Plaintiff, including monetary penalties and the dismissal of her case, if she engages in further misconduct. Order, pp. 4-5.

Undeterred by Magistrate Judge Alexander's Order, Plaintiff proceeded to escalate her campaign of harassment and dilatory gamesmanship.  Immediately after receiving a notice for her continued deposition, as Ordered by the Court, Plaintiff sent an e-mail to NHCS's counsel taking the ludicrous position that she could not appear at the offices of Seyfarth Shaw for her deposition (as she had done twice before) and requesting that her deposition be taken in various other Boston neighborhoods, some of which were mere blocks from Seyfarth Shaw's offices in the Seaport District.  A copy of the November 8, 2006 e-mail exchange between Plaintiff and NHCS's counsel is attached as Exhibit C.  In the same message, Plaintiff also purported to serve additional document requests on NHCS in violation of Local Rule 26.1, after the School's counsel had previously informed Plaintiff that she had exceeded her allotted number of requests.

3

Plaintiff then augmented her obstructionist tactics in this action by filing a motion with the U.S. Bankruptcy Court for the District of Massachusetts requesting relief related to discovery issues in this case.  On November 13, 2006, Plaintiff filed a "Motion and Memorandum in Support to Quash Subpoena" asking the Bankruptcy Court to take action against NHCS for serving a subpoena seeking bank records that she maintained on behalf of herself and TuckNT, the entity through which she provided services to the School.  A copy of Stevenson's filing (redacted to exclude highly confidential and irrelevant information) is attached as Exhibit D.  In those papers, she offered the indefensible argument that, merely by taking discovery in this matter, NHCS had violated the automatic bankruptcy stay and engaged in prohibited discrimination and retaliation against her.  To compound her procedurally inappropriate and meritless attack, Stevenson attached to her public filing a document containing highly confidential information regarding NHCS's employees (*i.e.*, the proposed salaries for the School's entire staff), which bears no relation whatsoever to any issue pending before the Bankruptcy Court.[4]

### ARGUMENT

Stevenson objections provide no coherent basis for the Court to modify the Magistrate Judge's Order and her continued frivolous filings only serve to justify the imposition of further sanctions against her.

---

[4] Stevenson's transgression in this regard is made all the more intolerable by the fact that, in defense of her failure to produce any documents in this matter, she had just one week earlier averred in open Court that she had no documents whatsoever pertaining to NHCS.  Hearing Trans. 13:4 – 14:15.  Plaintiff's continuing to attach such documents to her submissions to various courts and agencies leaves no room for doubt as to the propriety of Magistrate Judge Alexander's Order on Defendant's Motion to Compel Production of Documents.

**I.    The Court's Should Amend the Magistrate Judge's Order Only Upon a Showing of Clear Error**

The scope of the Court's review of the Magistrate Judge's Order in this matter is limited because the Order pertains only to non-dispositive motions.  *See* Fed.R.Civ.P. 72(a); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (District Judge is to reconsider non-dispositive matter submitted to Magistrate Judge only where it has been shown that Magistrate's Order is "clearly erroneous or contrary to law"); 12 Wright & Miller, Fed. Prac. & Proc. § 3069 (2d ed. 1997) ("it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge.").  Magistrate Judge Alexander expressly limited her Order to non-dispositive matters, and she declined to rule on one pending motion on the grounds that it was properly considered to be a dispositive motion.  Order, p. 2 ("Plaintiff's Motion to Compel Payment of Vacation Wages will not be heard by this Court as it is not a discovery motion but one that is dispositive in nature.").  The Court should, therefore, reject Plaintiff's request for a *de novo* review of the motions addressed by the Magistrate Judge's Order.

**II.    Stevenson's Objections Are Misplaced and Incoherent**

Stevenson has provided no valid basis to modify the Magistrate Judge's Order, regardless of the standard of review that the Court applies.  Many of the statements in Plaintiff's Objections are simply incoherent.  From the statements that NHCS is able to interpret, it appears that Stevenson's objections are based on a fundamental misinterpretation of the Magistrate's Order.  For example, Plaintiff's Objections make reference to "issue-preclusion sanctions" and "issue-establishment sanctions" and claim that the Magistrate Judge failed to apply the proper standard for such relief.  *See* Plaintiff's Objections, p. 2, ¶ 7.  In fact, the Magistrate Judge's Order is far more limited and simply requires that Plaintiff promptly produce documents responsive to

NHCS's requests and states that Plaintiff will not be allowed later to rely on documents that she fails to produce in the course of discovery.

In addition to misconstruing the terms of the Magistrate's Order, Plaintiff's Objections also rely on assertions of fact that are demonstrably false.  For example, Plaintiff claims that NHCS's motions to compel are procedurally improper because NHCS did not fulfill the meet and confer requirements of Fed.R.Civ.P. 37.  *See* Plaintiff's Objections, p. 2, ¶ 6.  In fact, both NHCS's motion to compel production of documents and the School's motion to compel deposition testimony are supported by certificates of compliance with the applicable rules and documentation of conferences between NHCS's counsel and Stevenson.[5]

Still other statements in Plaintiff's Objections constitute a misunderstanding of the discovery process.  In some cases, Plaintiff attempts to assert inapplicable privileges that provide no basis for modifying the Magistrate Judge's Order.  For example, Plaintiff appears to argue (for the first time) that her income tax returns are subject to the protections of the work product doctrine.[6]  *See* Plaintiff's Objections, p. 2, ¶¶ 8-9.  Similarly, Plaintiff argues that NHCS should not be allowed to take discovery regarding both her status as an independent contractor and her status as an FLSA-exempt administrative employee because such discovery is "unfocused."  *See* Plaintiff's Objections, p. 2.  These arguments are entirely misplaced and serve only to squander the resources of the Court.

---

[5] Attached as Exhibit 3 to Defendant's Memorandum in Support of It's Motion to Compel Production of Documents (docket entry no. 32) is correspondence reflecting attempts by NHCS's counsel to confer with Stevenson regarding her discovery obligations and making express reference to Local Rule 37.1.  Similarly, Defendant's Motion for Terminating Sanctions, or in the Alternative, to Compel Deposition Testimony (docket entry no. 41) is supported by on-the-record conferences between NHCS's counsel and Stevenson regarding Plaintiff's refusal to cooperate in discovery and NHCS's intent to seek relief from the Court.

[6] Such an objection is plainly flawed in that there is no suggestion that such documents were prepared in anticipation of litigation, and in any event, any privileges applicable to the document would have been waived when she filed them with state and federal tax authorities.

6

In sum, Plaintiff's Objections fail to identify any arguable error of law in the Magistrate's Order and provide no basis for amending that Order.

### III.    The Court Should Deny Plaintiff's Request to Certify this Matter for a Discretionary Interlocutory Appeal

In addition to her misplaced objections, Plaintiff requests that the Court certify the matters raised by the Magistrate Judge's Order for interlocutory appeal. This request is also completely without support. Interlocutory appeals of the type that Stevenson now seeks are reserved for orders involving "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of the case. . ." 28 U.S.C. § 1292(b). The matters addressed by Magistrate Judge Alexander's Order are limited to the resolution of prosaic discovery disputes, and they implicate no substantive questions of law whatsoever, much less do they raise a unique question on which immediate appellate guidance is necessary. *U.S. v. Salter*, 421 F.2d 1393, 1394 (1st Cir. 1970) (discovery matters typically involve no controlling question of law and are not suited for interlocutory appeal). The Court should, therefore, deny Plaintiff's request to certify this matter for interlocutory appeal.

### IV.    Stevenson's Objections Substantiate The Magistrate Judge's Order and Illustrate the Need for Further Sanctions Against Plaintiff

Plaintiff's Objections, like her prior filings in this case, serve no purpose other than to cause undue distraction and expense to the School and to squander the resources of this Court. The incoherent nature of Plaintiff's arguments and her misconstruction of the Magistrate Judge's Order reflect that her objections are not submitted in good faith. Moreover, Plaintiff has sought to evade the terms of the Order and engaged in further vexatious conduct by dragging a discovery dispute arising out of this case into the Bankruptcy Court and publishing confidential and highly sensitive information regarding the School's employees. The Court should not

7

continue to tolerate Stevenson's intractable pattern of misconduct or her blatant disregard for its procedures, and it should levy the harshest sanctions against her, including the dismissal of her claims with prejudice.

WHEREFORE, Defendant Neighborhood House Charter School requests that the Court affirm and adopt the Magistrate Judge's Order (docket entry no. 48) and enter further sanctions against Plaintiff Janice Stevenson including the dismissal of her claims in this matter with prejudice and a substantial monetary sanction.

Respectfully submitted,

NEIGHBORHOOD HOUSE
CHARTER SCHOOL,
By its attorneys,

_____/s/ Barry J. Miller_____
Lynn A. Kappelman (BBO # 642017)
Barry J. Miller (BBO # 661596)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
DATED:  November 20, 2006          Telecopier:     (617) 946-4801

CERTIFICATE OF SERVICE
I hereby certify that this document was filed through the Court's ECF system
and that a true copy of the above document was served
on Plaintiff *pro se* Janice Stevenson by first class U.S. mail to P.O. Box 400372,
Cambridge, MA 02140 on November 20, 2006.

_____/s/ Barry J. Miller_____
Barry J. Miller

BO1 15812360.1

Janice L. Stevenson                                    09/07/2006

Page 1

09:56:32

VOLUME: I

PAGES: 1 to 407

EXHIBITS: See Index

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - x

JANICE STEVENSON

          Plaintiff       Civil Action

      v.               No. 05-CV-11584-DPW

NEIGHBORHOOD HOUSE CHARTER SCHOOL

          Defendant

- - - - - - - - - - - - - - - - - x

DEPOSITION of JANICE L. STEVENSON

Thursday, September 7, 2006

10:30 a.m.

Seyfarth Shaw LLP

Two Seaport Lane

Boston, Massachusetts

Michelle Keegan, Court Reporter

eb2827ab-6285-4fb1-b765-9962caa2bd64

Janice L. Stevenson                                    09/07/2006

| Page 82 |
| --- |

11:42:01 1    have in mind? You just told me you have in mind
11:42:03 2    some sort of lawsuit you're contemplating
11:42:06 3    initiating; is that right?
11:42:06 4        A. No. It's more like getting my money.
11:42:08 5        Q. From whom?
11:42:09 6        A. Your client.
11:42:14 7        Q. You've already initiated several proceedings
11:42:16 8    against the school, right?
11:42:18 9        A. You haven't paid my Social Security. You
11:42:20 10   know that, right?
11:42:21 11       Q. So you're talking about filing some sort of
11:42:23 12   complaint that would relate to payment of Social
11:42:26 13   Security taxes?
11:42:27 14       A. Yes. As my employer you're responsible for
11:42:29 15   reporting that.
11:42:30 16       Q. And with whom do you contemplate filing this
11:42:34 17   complaint?
11:42:35 18       A. Well, it's the IRS, isn't it? Aren't they
11:42:39 19   responsible for Social Security? It's the IRS,
11:42:41 20   right?
11:42:41 21       Q. You've already filed one lawsuit with the
11:42:44 22   IRS pertaining to the school, right? Do you recall
11:42:47 23   that you filed a Form SS-8?
11:42:49 24       A. That doesn't have to do with my Social

| Page 83 |
| --- |

11:42:51 1    Security. It's unreported because my wages against
11:42:54 2    my taxes don't reflect what Social Security has.
11:42:59 3        Q. So your testimony is that you're
11:43:00 4    contemplating initiating some sort of proceeding in
11:43:03 5    which you would seek -- Let me get the question out
11:43:05 6    please.
11:43:05 7        Your testimony is that you're
11:43:07 8    contemplating initiating some sort of proceeding
11:43:09 9    that would have the goal of compelling the school to
11:43:14 10   pay Social Security contribution?
11:43:16 11       A. Yes.
11:43:16 12       Q. Okay. And you're contemplating filing that
11:43:20 13   with the IRS, right?
11:43:21 14       A. Yes.
11:43:23 15       Q. Any other proceedings that you're
11:43:27 16   contemplating filing against any person or entity at
11:43:30 17   this time?
11:43:31 18       A. I don't know.
11:43:35 19       Q. You don't know if you're contemplating any
11:43:39 20   other --
11:43:40 21       A. Stuff crosses your mind, like lawyers who
11:43:43 22   jack you off, take your money, bad counsel,
11:43:51 23   malpractice, stuff like that.
11:43:52 24       Q. Is there a lawyer who you believe you may

| Page 84 |
| --- |

11:43:55 1    have a malpractice claim against?
11:43:57 2        A. Yeah.
11:43:58 3        Q. Who is that?
11:43:59 4        A. My last attorney.
11:44:02 5        Q. Are you referring to Mr. Davis?
11:44:03 6        A. Yeah. Waste of my time.
11:44:07 7        Q. What do you believe that he did that
11:44:11 8    constituted malpractice?
11:44:13 9        A. That settlement agreement.
11:44:18 10       Q. What about the settlement agreement did he
11:44:20 11   do that you believe constituted --
11:44:22 12       A. First, I think it was illegal.
11:44:24 13       Q. In what respect?
11:44:25 14       A. I think it violated the law, I think it was
11:44:28 15   against IRS code, and I think it was totally biased
11:44:35 16   against me. If I signed, I felt like I would have
11:44:43 17   been lying to the Internal Revenue.
11:44:47 18       Q. Okay. Anything else that you believe that
11:44:49 19   Mr. Davis did that constitutes malpractice?
11:44:51 20       A. That's it.
11:44:56 21       Q. Okay. So we've covered your contemplated
11:45:00 22   claims involving Mr. Davis and we've covered the
11:45:02 23   Social Security issue you may have with NHCS. Are
11:45:05 24   you contemplating any other legal filings?

| Page 85 |
| --- |

11:45:07 1        A. Beyond my claim, probably defamation or
11:45:17 2    slander by your client.
11:45:18 3        Q. By my client you're referring to NHCS?
11:45:23 4        A. Yes.
11:45:23 5        Q. What would be the nature of the defamation
11:45:25 6    claim you're seeking?
11:45:25 7        A. For one thing, the letters written by their
11:45:28 8    attorney saying I'm harassing them for wanting my
11:45:30 9    unemployment. And I can't see the state legislature
11:45:38 10   having an agency that harasses employers because if
11:45:45 11   I ask for a hearing saying I'm owed unemployment
11:45:49 12   wages or compensation or benefits and I initiate
11:45:54 13   that proceeding under state law, or whatever, and I
11:46:01 14   have an attorney who says I'm harassing them, I
11:46:05 15   think that's defamation of character and slander.
11:46:08 16       Q. Okay. Any other claims that you contemplate
11:46:11 17   filing against any person or entity?
11:46:13 18       A. NHCS.
11:46:22 19       Q. So we've now exhausted the claims that
11:46:24 20   you're considering filing at this point, right?
11:46:26 21       A. There is no exhaust.
11:46:29 22       Q. With you I believe that.
11:46:31 23       Other than the few that you've just told
11:46:33 24   me about, you're not contemplating at this time any

LegaLink Boston, a Merrill Communications Company
(617) 542-0039

eb2827ab-6285-4fb1-b765-9962caa2bd64

Page 408

VOLUME: II

PAGES: 408 to 786

EXHIBITS: See Index


UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - x

JANICE STEVENSON

          Plaintiff       Civil Action

    v.                  No. 05-CV-11584-DPW


NEIGHBORHOOD HOUSE CHARTER SCHOOL

          Defendant

- - - - - - - - - - - - - - - - - - x


CONTINUED DEPOSITION of JANICE L. STEVENSON

Thursday, September 14, 2006

10:37 a.m.

Seyfarth Shaw LLP

Two Seaport Lane

Boston, Massachusetts


Michelle Keegan, Court Reporter

6f17292b-b5fb-4467-9523-0d9097f86c8a

Janice L. Stevenson, Vol. 2                               09/14/2006

Page 421

10:45:45 1   that had anything to do with NHCS. Do you recall
10:45:48 2   that?
10:45:48 3      A. I recall that.
10:45:49 4      Q. And have you searched your files and assured
10:45:52 5   yourself that you have no additional documents
10:45:54 6   responsive to NHCS?
10:45:56 7      A. I don't have any more files other than what
10:46:03 8   we discussed last time.
10:46:05 9      Q. And did you search through your e-mail
10:46:08 10  account as we discussed last time?
10:46:10 11     A. Not really.
10:46:15 12     Q. Okay. You'll recall you testified last time
10:46:18 13  that it's your practice to scan documents that you
10:46:21 14  deem to be important and preserve them in your
10:46:23 15  g-mail account; is that right?
10:46:24 16     A. Well, this is true, but I also just stated
10:46:28 17  if I -- Say, for instance, I had my unemployment
10:46:31 18  coming up and I thought there were e-mails pertinent
10:46:34 19  to my unemployment claim, then I will scan -- I
10:46:39 20  would search that because I had to try to produce
10:46:44 21  some -- for monetary stuff or to prove employment
10:46:50 22  services, but I don't see how I could correlate that
10:46:54 23  to this.
10:46:55 24     Q. What we've asked you to do is to go through

Page 422

10:46:57 1   your g-mail account, look through it, conduct any
10:47:00 2   searches that may bring up documents that pertain to
10:47:03 3   NHCS, TuckNT, the services that TuckNT provided to
10:47:08 4   NHCS or anything else that bears on your claims in
10:47:14 5   this matter in any way. Do you understand that?
10:47:14 6      A. Yeah. We talked about it, but I don't have
10:47:20 7   anything that -- unless I were to have given it to
10:47:26 8   you, that I see correlates to my wage claim here.
10:47:33 9      Q. So is it your testimony that other than the
10:47:35 10  documents that you marked last time that constitute
10:47:38 11  your document production, you have no other
10:47:39 12  documents that bear on --
10:47:41 13     A. I don't think I do.
10:47:41 14     Q. -- NHCS -- Let me get the question out --
10:47:45 15  that bear on NHCS, TuckNT, the relationship between
10:47:48 16  TuckNT and NHCS or any other fact that might be
10:47:52 17  related to this lawsuit?
10:47:53 18     A. I don't think so.
10:47:55 19        Know the exhibits you sent me last time?
10:47:57 20  When I left -- Something just dawned on me when I
10:48:04 21  was out the other day. Can I get copies of some of
10:48:07 22  those exhibits?
10:48:07 23     Q. They've all been mailed to you. They'll
10:48:11 24  probably be in your P.O. box today.

Page 423

10:48:13 1      A. Really? Every one of them?
10:48:16 2      Q. All the documents we had at your last
10:48:18 3   deposition.
10:48:19 4      A. Great.
10:48:19 5      Q. You remember last time we talked about --
10:48:23 6      A. Can I ask you another question?
10:48:26 7      Q. What do you have to say?
10:48:27 8      A. You know, when I filed this lawsuit, an
10:48:33 9   attorney filed it, right?
10:48:34 10     Q. Are you referring to Mr. Davis?
10:48:37 11     A. Yeah. I need to know, who is your
10:48:39 12  registered agent or person for service of process
10:48:43 13  for the school?
10:48:45 14     Q. I'm not sure I understand your question.
10:48:48 15     A. Who am I serving -- If I want to initiate
10:48:51 16  another claim unrelated to this, who do I serve it
10:48:55 17  on? I'm not sure.
10:48:56 18     Q. It would depend. And you would have to have
10:48:58 19  an attorney that advises you.
10:49:00 20     A. I don't have an attorney. I'm asking you.
10:49:01 21     Q. I can't give you legal advice,
10:49:03 22  Ms. Stevenson.
10:49:04 23     A. You're this client's attorney. I'm asking
10:49:07 24  you to whom when I serve that.

Page 424

10:49:09 1      Q. It would depend on the nature of the claim.
10:49:11 2      A. I told you, it's against the school.
10:49:13 3      Q. Right. It would depend on the nature of the
10:49:15 4   claim.
10:49:15 5      A. Are there different people for different
10:49:17 6   claims?
10:49:17 7      Q. Potentially. I don't know what you have in
10:49:19 8   mind.
10:49:19 9      A. Can you give me a list?
10:49:21 10     Q. I can't give you a list. Let's have this
10:49:23 11  discussion off the record, and that way we can deal
10:49:25 12  with it in an efficient way. Okay? When we take a
10:49:29 13  break we'll discuss that.
10:49:29 14     A. Why can't we discuss it now?
10:49:31 15     Q. It takes up space on the record and it's not
10:49:34 16  productive.
10:49:35 17     A. Well, it's productive to me.
10:49:36 18     Q. You understand, Ms. Stevenson, that the
10:49:38 19  purpose of this deposition and the purpose of this
10:49:40 20  transcript is for me to ask you questions about the
10:49:42 21  claims you've asserted in this lawsuit. It's not
10:49:45 22  for you to ask me questions of any kind and to deal
10:49:49 23  with administrative matters like service of process.
10:49:52 24  Okay?

LegaLink Boston, a Merrill Communications Company
(617) 542-0039

6f17292b-b5fb-4467-9523-0d9097f86c8a

Janice L. Stevenson, Vol. 2                    09/14/2006

Page 425

10:49:52 1    A. I think it's important.
10:49:53 2    Q. I'm happy to deal with it off the record.
10:49:55 3  Okay?
10:49:58 4         You recall at the first session of your
10:50:00 5  deposition we talked about the fact that you have an
10:50:05 6  open bankruptcy case; is that right?
10:50:06 7    A. Yes.
10:50:07 8    Q. And how many times in your life have you
10:50:12 9  filed for bankruptcy?
10:50:13 10   A. How many times have I filed for bankruptcy?
10:50:20 11   Q. That's the question.
10:50:21 12   A. Okay. I didn't know there were numerous
10:50:28 13  times you can file.
10:50:29 14   Q. Is it your testimony you've only once in
10:50:31 15  your life filed for bankruptcy?
10:50:32 16   A. Yeah. Are you telling me there's other --
10:50:35 17   Q. I'm not telling you anything. My purpose
10:50:37 18  here is just to ask you questions.
10:50:39 19   A. Are you implying I can do more?
10:50:41 20   Q. I'm not implying anything. All you have to
10:50:42 21  do is answer questions. You don't have to look
10:50:44 22  behind them, you don't have to argue with me.
10:50:46 23   A. If your questions generate questions, come
10:50:48 24  on.

Page 426

10:50:48 1    Q. Your job is not to ask me questions here.
10:50:51 2  Your job is just to respond to my questions. Okay?
10:50:53 3  Do you understand that?
10:50:54 4    A. Not really, but if I have a question, I
10:50:57 5  can't ask you a question?
10:50:57 6    Q. That's not the purpose here today.
10:50:59 7    A. But if it clarifies your question.
10:51:01 8    Q. If you don't understand my question, let me
10:51:02 9  know and I'll rephrase it.
10:51:04 10   A. But you won't answer my question if I don't
10:51:07 11  understand your question?
10:51:07 12   Q. I won't answer your questions.
10:51:11 13   A. There's some fuzzy answers.
10:51:13 14   Q. If you don't understand my questions, feel
10:51:15 15  free to tell me you don't understand.
10:51:20 16        To be clear, your testimony is you filed
10:51:22 17  for bankruptcy once in your life; is that right?
10:51:23 18   A. Yes.
10:51:35 19        MR. MILLER: Let's mark this as the next
10:51:37 20  exhibit.
10:52:02 21        (Exhibit Number 14
10:52:02 22        marked for identification)
10:52:02 23   Q. Ms. Stevenson, I'm showing you a document
10:52:07 24  that the court reporter has marked as Exhibit 14.

Page 427

10:52:09 1  Do you recognize that document?
10:52:09 2    A. I don't have my glasses.
10:52:14 3    Q. I would have to ask you to read it.
10:52:17 4    A. Didn't I just say I don't have my glasses?
10:52:19 5    Q. You do not have your glasses with you?
10:52:23 6    A. I'll try. Is this the -- 0312304. Okay.
10:52:36 7    Q. Do you know what that document is?
10:52:38 8    A. It's a printout, isn't it? What does it
10:52:42 9  have on it?
10:52:43 10   Q. If I were to represent to you that that's
10:52:46 11  the docket from a bankruptcy filing to which you're
10:52:48 12  a party, would you agree with that?
10:52:50 13   A. I have one bankruptcy.
10:52:53 14   Q. Exactly. Is that the docket from your
10:52:55 15  bankruptcy file?
10:52:56 16   A. Is that a docket?
10:52:57 17   Q. I'm asking you.
10:52:58 18   A. If you say that's a docket, that's a docket.
10:53:00 19   Q. The purpose is not for me to testify here.
10:53:02 20  My purpose is to get your understanding.
10:53:05 21   A. You just handed me this document. You said
10:53:08 22  it's a printout of a bankruptcy.
10:53:10 23   Q. I invite you to look at it.
10:53:12 24   A. I have one bankruptcy. If you print out

Page 428

10:53:14 1  that bankruptcy, then this is it.
10:53:16 2    Q. I want you to take a look at it --
10:53:19 3    A. If I could see this. I can't read up close.
10:53:21 4    Q. Do you have your glasses here today?
10:53:23 5    A. No.
10:53:23 6    Q. What kind of glasses do you need? Reading
10:53:25 7  glasses?
10:53:26 8    A. No. I have prescription glasses.
10:53:27 9    Q. And you didn't bring them with you here
10:53:30 10  today?
10:53:30 11   A. No. I'm answering questions.
10:53:35 12   Q. Okay. So you have no basis to dispute that
10:53:39 13  that's the docket from your bankruptcy filing?
10:53:41 14   A. If it says "bankruptcy," I can't dispute it.
10:53:45 15   Q. And that case, as we discussed, is still
10:53:52 16  open; is that right?
10:53:52 17   A. Yeah.
10:53:53 18        Hey, you know those exhibits? Can you
10:53:56 19  kind of send them to me in digital form?
10:53:58 20   Q. I don't have them in digital form. I can
10:54:00 21  provide you in hard copy, which we've done.
10:54:25 22        MR. MILLER: Let's mark that as 15,
10:54:27 23  please.
10:54:27 24

LegaLink Boston, a Merrill Communications Company
(617) 542-0039

6f17292b-b5fb-4467-9523-0d9097f86c8a

Janice L. Stevenson, Vol. 2                                      09/14/2006

Page 465

11:33:15 1    Q. Ms. Stevenson, are you going to refuse to
11:33:17 2  answer questions?
11:33:19 3    A. Ask me questions about --
11:33:21 4    Q. You will not --
11:33:22 5    A. Ask me questions about my time at
11:33:24 6  Neighborhood House Charter School.
11:33:25 7    Q. Ms. Stevenson, you will not tell me what
11:33:28 8  questions to ask. I will ask the questions that I
11:33:30 9  deem relevant.
11:33:31 10    A. I want to resolve.
11:33:32 11    Q. You're here to --
11:33:33 12    A. No. I want to resolve this case and move
11:33:35 13  on.
11:33:35 14    Q. What you want is not material. You're here
11:33:38 15  to respond as a party in litigation to a valid
11:33:40 16  discovery request.
11:33:41 17    A. Seyfarth Shaw doesn't want to resolve this
11:33:44 18  case. You just want to fight. That's what you want
11:33:46 19  to do.
11:33:47 20    Q. Are you done making speeches?
11:33:48 21    A. It's not a speech.
11:33:49 22    Q. What is it?
11:33:50 23    A. Observation. That's what the last attorney
11:33:52 24  said.

Page 466

11:33:52 1    Q. That's --
11:33:53 2    A. That's your reputation. So if you just want
11:33:56 3  to fight this out, don't bring me in here and waste
11:34:00 4  my time. I've lost a job behind you. You're
11:34:03 5  interfering with my employment relationships. I'm
11:34:05 6  going to sue you.
11:34:06 7    Q. Ms. Stevenson, you understand that I've
11:34:08 8  marked as Exhibit 20 a document?
11:34:13 9    A. I don't think this deposition is going
11:34:13 10  anywhere.
11:34:15 11    Q. Ms. Stevenson, the reason it's not going
11:34:15 12  anywhere is because you refuse to answer my
11:34:18 13  questions.
11:34:18 14    A. Your questions that have nothing to do with
11:34:19 15  my claim.
11:34:20 16    Q. You understand that as a party to litigation
11:34:22 17  you have to respond to my questions. That's your
11:34:24 18  obligation. Do you understand that?
11:34:25 19    A. I'm taking the Fifth.
11:34:29 20    Q. You're taking the Fifth as to what? There's
11:34:32 21  no question on the table.
11:34:33 22    A. You objected last time, too. Just put the
11:34:36 23  Fifth out there.
11:34:38 24    Q. You're pleading the Fifth as to what?

Page 467

11:34:40 1    A. I'm not answering that question. And the
11:34:42 2  Fourteenth and the Seventh and the Ninth.
11:34:44 3    Q. What question are you refusing to answer?
11:34:46 4    A. Nonwage-related questions.
11:34:48 5    Q. Well, if you're going to assert an
11:34:51 6  objection, you need to assert it to a specific
11:34:53 7  question.
11:34:53 8    A. End, end, end.
11:34:56 9    Q. So for the record, you're going to refuse to
11:34:58 10  answer questions about a document marked as Exhibit
11:35:00 11  20; is that right?
11:35:00 12    A. How can I answer questions if I don't
11:35:04 13  remember it?
11:35:06 14    Q. I'm inviting you to take a look at the
11:35:08 15  document.
11:35:09 16    A. You want me to read it to you?
11:35:10 17    Q. I'm asking you to look at it and read it to
11:35:13 18  yourself.
11:35:13 19    A. If I'm looking at a document and I can't
11:35:16 20  recall it, what --
11:35:17 21    Q. Because I asked you to read it. That's your
11:35:19 22  obligation as a witness.
11:35:20 23    A. I'm not going to read it.
11:35:21 24    Q. I've asked you to read a one-page document,

Page 468

11:35:24 1  and you're going to refuse?
11:35:25 2    A. Have you read it?
11:35:26 3    Q. I'm not going to answer your questions.
11:35:28 4  Your job here is not to debate with me. It's to
11:35:31 5  answer questions. Will you read the document,
11:35:32 6  please.
11:35:33 7    A. I don't remember the document.
11:35:33 8    Q. You haven't looked at it yet. I'm asking
11:35:36 9  you to read it to yourself. Ms. Stevenson, I'm
11:35:38 10  asking you to read the document to determine what
11:35:40 11  questions are appropriate to ask you.
11:35:42 12    A. Okay. Ask me the questions.
11:35:43 13    Q. I'm asking you to read the document to
11:35:45 14  yourself first.
11:35:46 15    A. But I don't remember it.
11:35:48 16    Q. How can you know you don't remember it if
11:35:51 17  you've refused to look at it?
11:35:52 18    A. Because you told me what it was.
11:35:53 19    Q. When did I tell you what it was?
11:35:55 20    A. You said it's something about me versus the
11:35:57 21  United States and something about Paul. Paul
11:36:00 22  Revere.
11:36:01 23    Q. For the record, the case is captioned "Paul
11:36:03 24  Brown, U.S. District Judge."

16 (Pages 465 to 468)

6f17292b-b5fb-4467-9523-0d9097f86c8a

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JANICE STEVENSON                      .CIVIL ACTION NO. 05-11584-DPW
       Plaintiff                     .
                                     .
      V.                              .BOSTON, MASSACHUSETTS
NEIGHBORHOOD HOUSE CHARTER SCHOOL .NOVEMBER 6, 2006
       Defendant                     .
. . . . . . . . . . . . . . . . . .


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE JOYCE LONDON ALEXANDER
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the plaintiff:                    Janice Stevenson, pro se
                                          P.O. Box 400372
                                          Cambridge, MA 02140
                                          617-721-2638


For the defendant:                    Barry J. Miller, Esquire
                                          Seyfarth Shaw, LLP
                                          Two Seaport Lane
                                          Suite 300
                                          Boston, MA 02210
                                          617-946-4800


Court Reporter:


Proceedings recorded by digital sound recording, transcript
produced by transcription service.

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

1                          **I N D E X**

2    Proceedings                                                   3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           P R O C E E D I N G S

2       (Court called into session)

3               THE CLERK:  In the matter of Janice Stevenson v.

4       Neighborhood House Charter School, Civil Action 05-11584.  Will

5       the parties please identify themselves for the record?

6               MS. STEVENSON:  I'm Janice Stevenson the plaintiff.

7               MR. MILLER:  Barry Miller of Seyfarth Shaw for

8       defendant, Neighborhood House Charter School, Your Honor.

9               THE COURT:  You may be seated.

10              I'll hear defendant's motion to compel production of

11      documents and for sanctions.

12              MR. MILLER:  Your Honor, to provide some factual

13      background to give context to the various motions before the

14      Court, Ms. Stevenson, through her company, Tuck NT, which she

15      formed prior to her relationship with Neighborhood House

16      Charter School, provided administrative services to the school,

17      including accounts payable, human resources and other similar

18      functions.  When the school terminatied its contract with

19      Ms. Stevenson's company, she then proceeded to file a number of

20      administrative complaints and lawsuits against the school and

21      its constituents, including this lawsuit.  In this lawsuit she

22      claims that she was not an independent contractor as the fact

23      that she operated her own company would suggest, but that she

24      was in fact an employee of the school and that she was a

25      non-exempt employee of the school, and she seeks overtime wages

1 under the Federal Fair Labor Standards Act.  The

2 school--

3          THE COURT:  Who did the school hire?

4          MR. MILLER:  The school had a contract with

5 Ms. Stevenson's company, Tuck NT.

6          THE COURT:  All right.

7          MR. MILLER:  The school maintains in this lawsuit as

8 it has in various other fora that Ms. Stevenson has filed

9 charges in, that she was in fact an indpendent contractor and

10 the Fair Labor Standards Act did not apply to the services she

11 provided for the school.  The school further contends that even

12 if she had been an employee, the nature of the services that

13 she provided were such that she would have been an exempt

14 employee and not eligible for overtime pay under the statute.

15 In the course of these proceedings and others, Ms. Stevenson

16 has filed a number of motions that are dilatory in nature and

17 serve no purpose other than to harrass and cause undue burden

18 to a publicly funded charitable charter school.

19          The motion to compel production of documents relates

20 to Ms. Stevenson's refusal to participate in discovery.

21 Neighborhood House initially served document requests on

22 Ms. Stevenson's counsel in November of 2005 when she was

23 represented in this matter by Attorney John Davis.  The parties

24 agreed to hold discovery in abeyance while they conducted

25 preliminary settlement negotiations.  Eventually, those

I-5

1   negotiations broke down.  Mr. Davis withdrew and

2   Judge Woodlock asked us to re-serve our document request on

3   Ms. Stevenson.  We did that.  In response, she grouped the

4   requests that we had issued and essentially gave non-responses

5   to each of our document requests.  She produced a total of four

6   documents, each of which is almost perfectly irrelevant.  She

7   failed to produce documents that are centrally relevent to her

8   claims in this matter and that she has admitted to exist.

9   Primary among these are her tax returns.  It is the school's

10  contention that she was an indpendent contractor.  It is the

11  school's understanding that she solicited and perhaps performed

12  similar services for other entities aside from Neighborhood

13  House Charter School.  Ms. Stevenson conceded at deposition

14  that her tax returns are available to her and she has not

15  produced them.  Similarly, Ms. Stevenson produced after her

16  engagement or her company's engagement with the school, she

17  prepared a document that lists the hours she claims to have

18  worked in performing services for the school.  At deposition

19  she explained that she created that document after her

20  engagement with the school, her company's engagement with the

21  school and that it was based on primary documents, journals

22  that she kept contemporaneous with the services she performed.

23  She admitted at deposition that those documents are also

24  available to her and she has not produced them.  She has not

25  produced any documents whatsoever relating to her company,

1  Tuck NT, which she established roughly six months before the

2  school engaged that company.  She has admitted at deposition

3  that she maintained bank accounts on behalf of this entity and

4  that they're, and she requested a federal employer

5  identificaiton number on behalf of this entity and she's

6  produced no documents whatsoever that relate to those matters.

7  Those are critically important to defendant's defenses in this

8  matter because we believe those documents will reflect that the

9  nature of Ms. Stevenson's employment, the nature of the

10  services that she performed for this school and other entities

11  was that of an independent contractor.  Similarly, she has

12  given no substantial basis for her refusal to produce documents

13  or to participate in her deposition, which is subject to

14  another motion that's before this Court.

15         She has articulated certain concerns about privacy

16  and she has claimed that we have overstepped our bounds and

17  engaged in all sorts of unethical and scandalous behavior.

18  There's absolutely no basis for that whatsoever.  She's accused

19  us of race discrimination.  She's accused us of lying to the

20  court, and we can demonstrate that in fact ever representaiton

21  we've made to the Court was entirely true and it's not pattern

22  of behavior that has caused us to request sanctions not only on

23  our motion to compel production of documents, but also in

24  conjunction with the motion we filed that relates to Ms.

25  Stevenson's behavior at deposition and the other motions that

1  she's filed in this matter including a completely frivolous

2  motion for Rule 11 sanctions against the school essentially for

3  mounting a defense in this case.

4         THE COURT:  I'll hear you on your--

5         MS. STEVENSON:  Well, Your Honor--

6         THE COURT:  --opposition to the motion.

7         MS. STEVENSON:  I'm sorry, say that again?

8         THE COURT:  I'll hear you on your opposition to the

9  motion.

10        THE CLERK:  Will you please stand.

11        MS. STEVENSON:  Stand up?

12        THE CLERK:  Please.

13        MS. STEVENSON:  Your Honor, my opposition to the

14 defendant's motions for sanctions or in the alternative to

15 compel discovery is - when I went to work for Neighborhood

16 House Charter School back in 2004, I went to work there as a

17 temporary employee for another agency.  During that period of

18 time, the head hired a new dean of administration, Jack Shoushy

19 (ph), and in my communications and observations of Dean

20 Shoushy, it was adamant that the school was not going to pay

21 overtime.  I have submitted several, I have submitted

22 documentation from another employee where the school is forcing

23 him to work overtime but not paying him.  When I went there as

24 a temporary employee for another agency, I immediately started

25 to work for the deputy director, Mary Lee, and there was a lot

1  of overtime, and so they were subject – because I did not

2  work for them, they had to pay overtime against my wages

3  through Ace employement.

4         At the end of, around August, I went there in May,

5  May 2004, August 2004, the dean, and they was paying this

6  company $18.95 an hour for my services.  Dean--

7         THE COURT:  What was the name of the company?

8         MR. STEVENSON:  Ace Employment.

9         THE COURT:  That's not the company you work for, the

10  defendant contracted with?

11        MS. STEVENSON:  Yes.  When I first got there, yes.

12        THE COURT:  And is that the, is that your company?

13        MS. STEVENON:  No, ma'am, that was not my company.

14        THE COURT:  Is that what the defendant is asserting

15  is the plaintiff's company?

16        MR. MILLER:  No, Your Honor.

17        THE COURT:  Okay.  I'll hear you on this.  Continue.

18        MS. STEVENSON:  Okay.  In August 2004, I was there,

19  and I'm trying to remember, and the dean and I spoke and he was

20  saying, you know, I could work independently.

21        THE COURT:  So right now, we're on the motion to

22  compel--

23        MS. STEVENSON:  Yes, ma'am.

24        THE COURT:  --production--

25        MS. STEVENSON:  Yes, ma'am.

1          THE COURT:   --documents and sanctions.

2          MS. STEVENSON:   Yes, ma'am.   I'll give you some

3   context.

4          THE COURT:   Just let me finish my statement.   The

5   defendant has stated that you will not produce documents

6   regarding a, your tax returns and documents regarding the

7   company that it contracted with which provided your services,

8   which was your company.   Are you saying that was not who the

9   defendant contracted with?

10          MS. STEVENSON:   No, ma'am.   We did not have a formal

11   agreement, and I told him in discovery, I have no formal papers

12   on this company.   It was name that had--

13          THE COURT:   Just a moment.   Was that your company

14   that the defendant is talking about?

15          MS. STEVENSON:   The Tuck NT?

16          THE COURT:   Yes.   That's the company, is that

17   correct?

18          MR. MILLER:   Yes, Your Honor.

19          THE COURT:   Now, the defendant has said that it wants

20   you to produce documents regarding that cmopany because you are

21   are who actually was that company; is that correct?

22          MR. MILLER:   She was the only employee of the

23   company.

24          THE COURT:   And that's who the defendant had an

25   agreement with and that the defendant can show it had an

1    agreement for your consulting or you employment with that

2    company.  The plaintiff is saying, I mean, the defendant is

3    saying it can show, it can prove that.

4            MS. STEVENSON:  There was no written agreement.

5            THE COURT:  There's no written agreement?

6            MS. STEVENSON:  In accordance--

7            THE COURT:  Just one moment.

8            MR. MILLER:  It was an oral agreement, Your Honor,

9    and our motion is directed at other documents that may be

10   related to the formation of the company or any other--

11           THE COURT:  So you're saying there was an oral

12   agreement?

13           MR. MILLER:  That's stipulated.

14           THE COURT:  The plaintiff is saying there was no oral

15   agreement, and what does plaintiff show that would say to the

16   Court there was an agreement with someone else and not your

17   company?

18           MS. STEVENSON:  I don't understand your question.

19           THE COURT:  You're saying, you're saying--

20           MS. STEVENSON:  See--

21           THE COURT:  No, if you don't understand then let me

22   explain.  You're saying that it was not your company.

23           MS. STEVENSON:  No, I'm saying we didn't have a

24   written agremeent and that the agreement--

25           THE COURT:  Right.  But they, but you may not have

1   had a written agreement, you may have only had an oral

2   agreement and the defendant is saying but that oral agreement

3   was with you and, what's the acronym for the company?

4            MR. MILLER:  Tuck NT, Your Honor.  Tuck NT.

5            THE COURT:  Tuck NT?  That's who the agreement was

6   with, Tuck NT and you were Tuck NT.  That's who the defendant

7   is saying that they agreed to employ.

8            MS. STEVENSON:  Well, Your Honor--

9            THE COURT:  And do you say yes or no?

10           MS. STEVENSON:  I am saying that is not the way it

11  transpired on campus between the dean and I.

12           THE COURT:  But, okay, but this is--

13           MS. STEVENSON:  So this is where he--

14           THE COURT:  This - see you're getting ahead of

15  yourself.  Defendant is saying that Tuck NT is you.

16           MS. STEVENSON:  Yeah, that's the name that was used

17  on the pay documents.

18           THE COURT:  Right.  Okay.  And it is saying you

19  won't, and this is the only issue, you won't produce any

20  documents relating to that company and you, tax returns,

21  information regarding that company, you won't produce.

22           MS. STEVENSON:  There are none, and I told him that.

23  There are none.  There was nothing filed and--

24           THE COURT:  Do you have any tax returns?

25           MS. STEVENSON:  Not in Tuck NT.

I-12

1    THE COURT:  Do you have personal tax returns?

2    MS. STEVENSON:  I have personal tax returns for me

3    but nothing that points out Tuck NT.

4    THE COURT:  Okay.

5    MS. STEVENSON:  I have no letters, no papers of

6    formation or incorporation and we've gone over this.  I don't

7    have that paperwork.  If whatever he's looking for--

8    THE COURT:  Okay.  Then let's start with that.

9    Plaintiff has said she has no documents that relate to the

10   formation or otherwise actions or otherwise of this company,

11   Tuck NT.

12   MR. MILLER:  Your Honor--

13   THE COURT:  It is now on the record.  What do you

14   respond.

15   MR. MILLER:  She has also on the record at deposition

16   admitted that her tax returns are available to her.  The income

17   that--

18   THE COURT:  Tax returns she does have.

19   MR. MILLER:  Her personal tax returns--

20   THE COURT:  Her own, right.

21   MR. MILLER:  --which she apparently reported the

22   revenue she received from--

23   THE COURT:  Right, I know.  We've heard her.

24   MR. MILLER:  Yes, Your Honor.

25   THE COURT:  So, with respect to the company, she says

1   she has no documents.

2           MR. MILLER:  She also said at deposition, Your Honor,

3   that she maintained business banking accounts.

4           THE COURT:  But she's now saying to the Court I have

5   no documents.  Do you understand what that means?

6           MR. MILLER:  Yes, Your Honor.

7           THE COURT:  And do you understand what that means?

8   That means, that means that if you say as you have just said

9   you have no documents, then as of this date, you cannot use any

10  documents related to that company on your behalf in the future

11  if they emerge because you have just said I don't have them.

12  So you understand that?

13          MS. STEVENSON:  Okay.  In terms of incorporation

14  papers?

15          THE COURT:  Right.

16          MS. STEVENSON:  And that's what you wanted,

17  incorporation--

18          THE COURT:  Anything, anything related to that,

19  anything that he has requested, that you've seen requested as

20  the defendnat did--

21          MS. STEVENSON:  Yeah.  Because I think he--

22          THE COURT:  You've got to provide those documents.

23  If you don't provide those documents, let this Court state for

24  you now, you can't use them against them later.  You will not.

25  You have to provide every document they have asked for in the

1    request for production of documents period.

2            MS. STEVENSON:  Okay.  From my understanding from

3    their request in regard to Tuck NT, when I told them I did not

4    have those documents, that's my understanding from what he

5    asked and from what I understand he's asking for, I don't have

6    them.  There was nothing elaborate about--

7            THE COURT:  You can't, don't come back later and say

8    you've got them because you can't use them.

9            MS. STEVENSON:  Well, I don't have them.

10           THE COURT:  Okay, fine.

11           MS. STEVENSON:  Okay.

12           THE COURT:  Did you hear her, did you hear her say

13   it?

14           MR. MILLER:  I did, Your Honor.

15           THE COURT:  Okay.

16           MS. STEVENSON:  Okay.  Because all we have her is

17   what he's--

18           THE COURT:  Tax returns?

19           MS. STEVENSON:  No, these aren't, these aren't tax

20   returns.

21           THE COURT:  No, tax returns.  Your personal tax

22   returns?

23           MS. STEVENSON:  Yeah.

24           THE COURT:  They can get them.

25           MS. STEVENSON:  No, no, no, no.  I said the only

1    thing he has in regard to, is, is, that company is invoices

2    or time sheets.  Is that what you talking about because he has

3    those.

4              THE COURT:  You can read what he wants.  You know

5    what he wants.

6              MS. STEVENSON:  But I told him I don't have them.

7              THE COURT:  You're a very intelligent person.  You

8    can see what he wants by what he asks for, and you give him

9    every document that he has asked for, every document that he

10   has asked for, period.  There's no issue here.  There's no

11   issue in this case.

12             MS. STEVENSON:  I just want to make sure you're not

13   wiping out documents they already have.

14             THE COURT:  Oh, documents they already have they

15   don't need to have again.  Any other documents--

16             MS. STEVENSON:  I don't have anything what--

17             THE COURT:  You don't have anything else, that's

18   fine.

19             MS. STEVENSON:  I don't have any tax returns that say

20   Tuck NT on them.

21             THE COURT:  If you have personal tax returns--

22             MS. STEVENSON:  I have personal?

23             THE COURT:  --you produce them, period.

24             Now, let's move on to the next issue.  You have no

25   documents with Tuck NT but you have personal tax returns,

1    produce them.

2              MS. STEVENSON:  But they had no--

3              THE COURT:  They're correct.

4              MS. STEVENSON:  --they don't show Tuck NT.

5              THE COURT:  It doesn't matter.  Those personal tax

6    returns will show your income in other matters that are

7    discoverable, that the defendnat is entitled to.  So that is

8    this Court's rule.

9              Now, let's go onto the next motion.  The next motion

10   is your motion for Rule 11 sanctions.  You may be heard on

11   that.  You may be heard on that motion.

12             MS. STEVENSON:  Okay, my Rule 11 sanctions.  Oh, I

13   don't have it in front of me here, but basically what my

14   concern is that the defendant - Rule 11.

15             THE COURT:  Argue it.  That's why you're here for a

16   hearing on all of these motions.

17             MS. STEVENSON:  Can we skip that and go to the - I'm

18   trying to recall what Rule 11 is.  Would you read it to me?

19             THE COURT:  Do you want me to tell you what your

20   motion said?  Okay.

21             MS. STEVENSON:  No, no, no.  What does Rule 11--

22             THE COURT:  No, here is what your motion says.  Your

23   motion is against the defendant claiming that the defense

24   counsel knowingly lied to the Court in defending their client,

25   and basically you should know this because you filed it.  It

1   says that they lied to the Court in defending their client

2   because they knew their client willfully violated the law.

3         MS. STEVENSON:  Oh, yes.  Yes, and I filed some

4   attachments there with it--

5         THE COURT:  Uh-huh.

6         MS. STEVENSON:  --because, the attachment will show

7   that the defendant, my ex-employer had, willingly knew or did

8   not care and stated openly that they did not care about any

9   federal laws or state regulations in regard to employees or

10  compliance, and--

11        THE COURT:  Okay.  Go on.

12        MS. STEVENSON:  --and in that also there are

13  documents that shows that, and I have some of them here from

14  the defendant's own files and they're the same files I

15  received, is that when I was paid, even though they paid me

16  under the name of Tuck NT, my wages were charged just as other

17  employees' wages were, and my vacation was accrued just like

18  other employees' vacation was accrued, and sick time was

19  allotted and personal days were allotted, and my, my contention

20  is, you know, they may say independent contractor, but they

21  treated me and I was an employee.  There are two documents I

22  have here that is a final letter that I got from the dean and

23  that was the first time I ever knew of any issues in terms of

24  performance over the last day of my employment, but the day

25  after that he sent out a letter to the staff.  He never

I-18

1  mentioned that Janice was an independent contractor and that

2  her company is no longer with the school.  So, you know, the

3  attorneys say one thing, but they also know from their client's

4  actions that it could not be true.

5         THE COURT:  Thank you.  I'll hear from the - you can

6  be seated.  Let me hear from the defendant.

7         MR. MILLER:  Your Honor, as reflected in our papers,

8  we believe that the Rule 11 motion Ms. Stevenson has filed is

9  utterly without merit and she does, in fact, essentailly seek

10 sanctions against us for defending our client.  It is our

11 contention that she was an independent contractor of the

12 school.  We believe that's supported by the documentary record.

13 It's also our contention that had she been an employee of the

14 school, she would have been exempt under the white color

15 exemptions to the statute.  There's nothing asserted in bad

16 faith.  And in fact, it's Ms. Stevenson's motion that's

17 asserted in the utmost bad faith.  The documents that she

18 referred to that she attached to her motion, she

19 surreptitiously altered.  In submitting to this Court, she

20 redacted a line from the email that she attached as Exhibit 1,

21 and the full copy is attached as an exhibit to our oppposition

22 to her motion, in attempts to deceive this Corut about the

23 nature of the conversations that she just referred to, and we

24 believe that this motion was filed essentially in retaliation

25 for our efforts to secure discovery from Ms. Stevenson and that

1   it is a plain waste of this Court's time and it's abusive to

2   the school and it's caused us to expend additional completely

3   unnecesary resources and deprived the school of funds that

4   should be devoted to its charitable mission.

5          MS. STEVENSON:  Your Honor, may I respond?

6          THE COURT:  You may.

7          MS. STEVENSON:  Your Honor, there is no one person

8   who's on the payroll in error and that's what he's saying, and

9   that email I say was my employer's attitude.  You know, we,

10  this employer routinely classified employees where they would

11  not receive overtime, just like they did me, but every

12  mechanism they use in order to scurt the law as the dean said

13  or to make, or to make it easier for the school to operate with

14  less money, that's what they did.  That email was not redacted.

15  That is the codified policy of that school.  The penalties

16  aren't that great.  The penalties aren't that bad because they

17  had lawyers.  They had Sullivan Worcester who sits on their

18  board or make them hire a number of lawyers who can defend them

19  because they know with these lawyers there's not going to be a

20  lot of penalties that they're going to have to pay or be

21  assessed against.  And, you know, this is, that's common

22  knowledge to me.  So when I have an attorney who can look at

23  the record, and they're not unexperienced attorneys, but when

24  you have attorneys who can look at the paperwork under a

25  federal law such as the FLSA, and then say they did no wrong, I

1  know better than that.  I know I personaly, I know I

2  personally sat in the dean's office and we did not, the people

3  would bring the time sheets up that had overtime on it.  He

4  would send it back to them and say fill out a new one.

5          THE COURT:  Ms. Stevenson?

6          MS. STEVENSON:  Yes, ma'am.

7          THE COURT:  I understand that you're pro se, but

8  you're motion is totally, totally misplaced.  It is not only

9  misplaced, as counsel says, you're bringing a Rule 11 motion,

10  and from what the Court gleans from reading what you said, you

11  clearly must not understand Rule 11 because your motion is not

12  only misplaced, it is prodedurally defective.  You didn't give

13  counsel 21 days notice, which you were supposed to do under

14  Rule 11, but more than that, you bring this motion because

15  counsel is representing one thing and you're representing

16  another.  You can't do that.  This motion, I mean, you brought

17  this action against them.

18          MS. STEVENSON:  Yes.

19          THE COURT:  Rule 11 says, talks about the

20  frivolousness of an action.  You brought the action against –

21  their defense isn't, if you wanted to say their defense is not

22  frivolous, but you didn't give them, first and foremost, it was

23  procedurally defected.  Secondly – because you didn't give them

24  21 days.  Do you understand that?  You didn't give them 21

25  days.

1          MS. STEVENSON:  But, Your Honor--

2          THE COURT:  No, you didn't give them 21 days.  You

3  didn't.

4          MS. STEVENSON:  But, Your Honor, when they--

5          THE COURT:  If you wanted to bring a Rule 11, you had

6  to do that and you didn't do it.

7          MS. STEVENSON:  But, Your--

8          THE COURT:  But number two, number two, it's totally

9  misplaced.

10          MS. STEVENSON;  But, Your Honor, I think Rule 11 says

11  if there's, like they're making a false statement.

12          THE COURT:  Wrong, denied.

13          Motion for terminating sanctions or in the

14  alternative to compel deposition testimony.  Let me hear from

15  defendant.

16          MR. MILLER:  Your Honor, that motion, as I mentioned

17  earlier, relates to Ms. Stevenson's utter and stubborn refusal

18  to participate in her depsotion which we believe is her

19  culmination of her refusal to participate in this case and

20  warrants the dismissal of this action along with her other

21  frivolous filings.  In addition to flatly refusing to answer

22  simply background questions, icnluding questinos about her

23  residential address, she, for example, told me she didn't know

24  whether she had a home.  She didn't know where she had slept

25  the night before.  She didn't know how she had gotten to my

I - 22

1    office.  She refused to tell me where she went to high

2    school because she said she didn't want me investigating her

3    background.  That's the beginning of it, and I thinkt he first

4    25--

5            THE COURT:  Well, where she went to high school, what

6    does that have to do with it?

7            MR. MILLER:  Well, her education is relevant to her--

8            THE COURT:  I mean, that's one question.  If you're

9    going to talk about some depsotion questions, let's talk about

10   some serious deposition quesitons.

11           MR. MILLER:  You're right, Your Honor.  That's just

12   one example.  The ones that are the most serious for purposes

13   of this case relate to the services that she performed for the

14   school and where and how she performed them.  She refused to

15   tell me whether or not she owned a computer during the period

16   of time her company was engaged by Neighborhood House Charter

17   School.  She refused to tell me whether or not she had internet

18   access in her residence at that time.  She refuses to tell me

19   whether she had performed work for the school from her home,

20   all of which is relevant to her indpendent contractor status

21   and to the hours she claims to have worked for the school.

22           In addition, she completley refused to look at

23   documents that I placed before her as exhiibts to her

24   depsotion.  She refused even to set eyes on them and cut off

25   entire lines of questionning that related to, among other

1  things, her attendance at law school, which is centrally

2  relevant to this case because she was providing legal

3  compliance advice to the school among other things, and she

4  simply refused to participate.  She asserted completely

5  inapplicable constitutional priviledges, which I explained the

6  school's position that those had no bearing.  She claimed that

7  the information that we were seeking was irrelevant.  I went so

8  far because of her pro se status as to mark a copy of Rule 30

9  and talk her through the appropriate scope of an objection and

10 the fact that testimony is taken at deposition subject to the

11 objections and she could not refuse to testify based on

12 relevance.  And she persisted and she cut off entire areas of

13 discovery that are centrally relevant to this case, again,

14 causing the school to expend thousands and thousands of dollars

15 in resources and utterly blocking us from mounting an effective

16 defnese in this matter.  It's not even such that we can ask the

17 Court to give us the inference that might be had based on her

18 assertion of inapplicable priviledges because we can't even get

19 at the underlying basic information about for example her

20 educationsal history, the tools she used to do the services

21 that she performed for the school and such.  The cases that are

22 cited in our motion establish that it is well within #3:43:05

23 of the Court to dismiss the plaintiff's claim for misconduct

24 that is much less serious, and to dismiss the claim of a pro se

25 plaintiff in similar circumstances.  And we would certianly ask

1   that if the Court is disinclined, notwithstanding the

2   Stevenson's long pattern of misconduct in this case, the Court

3   is disinclined to dismiss the claim that she be ordered to pay

4   substantial monetary sanctions to the school because as I've

5   mentioned a couple of times, she's caused unbelievable

6   distraction and expense to a public resource, and the only way

7   that she will be deterred from continuing this patern, which

8   has gone on not only in this court but in the bankruptcy court

9   and in seven adminsitrative agencies, is if she is forced to be

10  accountable for her actions and the expense that she's causing

11  the school.

12          THE COURT:   Questions on the deposition,

13  Ms. Stevenson, you know you are to answer questions on a

14  deposition.  You may make an objection but you answer the

15  question, you make an objection and then you bring those

16  objections to the Court at the appropriate time, but not, you

17  can't refuse to answer question at a deposition.

18          MS. STEVENSON:   Well, Your Honor, the case in - well,

19  this is an overtime payment case, and my, when I went to the

20  deposition, I thought they wanted to get to the heart of the

21  deposition, and as I told him, when I went to work for my

22  ex-employer, you know, there was no background check.  There

23  was no, or address verification check, but they didn't care

24  where, they didn't ask well, where do you live?  Do you have

25  the necessary tools to do overtime?  And that is what I told

1   him.   I says, if I went up to Lasser University and used

2   their computer room to finish my work, or I went over to the

3   women's center in Cambridge, or I used another public access

4   computer, Neighborhouse didn't care.   They didn't question it.

5   I did it when it was, if I had some work to do and I took it

6   home--

7          THE COURT:   But those questions, those kinds of

8   questions merit and warrant an answer.   Well, I went to such

9   and such and I used their, this is where I got--

10         MS. STEVENSON:   I told him that, but when he, when he

11  wanted to know - I told him this, wherever, if I worked off

12  site or I worked over, if I worked off site or after hours, I

13  was saying that when I came back Monday the work was done and

14  no one--

15         THE COURT:   But if he said, well, what did you do,

16  you can answer that question.

17         MS. STEVENSON:   I did.   I told him if I did payroll

18  because I was--

19         THE COURT:   give me an example of what she didn't

20  answer?

21         MR. MILLER: Your Honor, in that vain, she refused to

22  tell me whether she had access for example to payroll

23  information from her residence.   Essentially questions that are

24  targeted at the resources she aintained at her home to provide

25  sservices like the services shed provide ffor the school, and

1  that is directly relevant--

2          THE COURT:  You're supposed to answer that question.

3          MS. STEVENSON:  No, ma'am.  It's broad based--

4          THE COURT:  Did you just tell me no?

5          MS. STEVENSON:  Yes, ma'am.  Yes, ma'am.  I told him,

6  he says did you acess from home?  It's a web based program.

7  You can access it from anywhere in the world.  I can go up to,

8  if I had access right now, we could access--

9          THE COURT:  Did you tell him what the web based

10 system was?

11         MS. STEVENSON:  I assume he knew?

12         THE COURT:  No, don't assume anything.  Don't assume

13 anything.  When, from now on, you go back to that deposition

14 and when the defendnat asks you the question, you answer it.

15 You don't assume anything.  You answer, you answer the

16 question.

17         MS. STEVENSON:  Well, let me ask you this, Your

18 Honor—

19         THE COURT:  No, we don't need to, we don't need to be

20 asking the court question.  You need to – let me tell you,

21 Ms. Stevenson, in reading this and in reading the papers in

22 this case, the district judge didn't dismiss this case at this

23 point, and there will be a point when you can file, I

24 understand you tried to mediate it and didn't, that's too bad,

25 because this, from what this Court has seen, you have used

1  dilatory tactics, you have refused to give information, you

2  have clearly submitted frivolous motions, and your behavior,

3  while the Court always should give a pro se plaintiff some

4  leeway and some room, you've had a house.  You had a house.

5  You have tried in every instance that the defendant has asked

6  for information, you haven't given it to them because you, as

7  you said, I assume they knew.  I don't like this question.  I

8  don't think they ought to have this.  Yes, they should. Once yu

9  have decided this case is going forward, as you have, then you

10 object, you can sit at the depsotion, you can say, I don't like

11 this question, high school, I don't like this questin, I

12 object, but I'll answer it.  I object.  You can object as much

13 as you please, but you must answer the question.  That's the

14 rule.  You must answer the question, and if you do that, this

15 case will move faster.  If you provide the infromation that you

16 haven't provided, it will move faster, because you must

17 understand that if you refuse to give information that the

18 plaintiff (sic) asks for, then you can't later on come back and

19 say, well I have this document, which is the document they

20 requested.  You can't use it because you didn't give it to them

21 when they asked for it.

22       So I will issue and order and I will write everything

23 out so you'll understand, and you need to within 14 days of

24 today, so that we won't have any question about when you need

25 to give information, testimony or documents, you have 14 days

1   from today to provide any documents you haven't produced,

2   you have 14 days from today to answer any interrogatory

3   questions, and the Court is going to take the issue of

4   sanctions under advisement.  I'll issue an opinion on sanctions

5   in this case, but that's the, that's where the Court, where the

6   Court is on this.  Your motion, for example, to compel payment

7   of vacation wages is ultimately your dispostive motion.  It's

8   like a motion for summary judgment.  It isn't a discover

9   motion.

10          MS. STEVENSON:  Vut no it's not a discovery motion at

11   all.

12          THE COURT:  No, but you presented it.  It's not so -

13   the Court won't even, won't even, we won't even deal with that

14   because it's not a discovery motion.  It is a--

15          MS. STEVENSON:  It wasn't intended to be a discovery

16   motion.

17          THE COURT:  --dispositive motion, but in terms of—

18          MS. STEVENSON:  What do you mean dispositive?

19          THE COURT:  --in terms of - the Court is not dealing

20   with it because that's treated as a motion for summary

21   judgment.

22          MS. STEVENSON:  oh.

23          THE COURT:  That's what dispositive means.  But in

24   terms of the other motions in this case, production of

25   documents, which the Court allows, the motion for Rule 11

I-29

1   sanctions, which the Court denies, and deposition testimony,

2   which you will answer, so the Court allows.  Do you have a date

3   for your deposition scheduled?

4           MR. MILLER:  I don't, Your Honor.  What I would

5   propose is if she's going to have 14 days to produce documents

6   that we be given a reasonable period of time thereater to

7   prepare.

8           THE COURT:  You need to do that today.  You need to

9   do that while we're in here.  You need to figure out a day--

10          MR. MILLER:  You want to schedule the deposition?

11          THE COURT:  --when you can do this, continue this

12  deposition.

13          MS. STEVENSON:  If he can put these in writing and I

14  can just fill in the blanks and send them back to him.

15          THE COURT:  No, he's taking a deposition.  He has

16  every right to do that.  No.

17          MS. STEVENSON:  Oh, oh, the questions I didn't

18  answer?

19          THE COURT:  Right.

20          MS. STEVENSON:  Well, let me ask you this, he also

21  wants me to produce documents from the other attorney and, but

22  it's the same defendant.  It's the defendant's papers.  We have

23  been in several adminsitrative proceedings together and you had

24  one set of attorneys filing papers and from those proceedings I

25  go and I'd get to file--

1  THE COURT:  Well, you get any documents you might

2  have given someone else?

3  MS. STEVENSON:  No.  They're all from this Sullivan

4  and Worcester.

5  THE COURT:  Did you give them any documents?

6  MS. STEVENSON:  I didn't give them anything.  It's

7  information, # date and I asked for information and they got it

8  from them and I use it in my proceedings but we have, this is

9  their paperwork.  He says they don't talk to each other, but he

10  wants me to produce.

11  THE COURT:  No, they don't.

12  MR. MILLER:  Your Honor--

13  MS. STEVENSON:  And I don't think that's right.

14  MR. MILLER:  --I think the point of confusion is

15  this, Ms. Stevenson has commenced a number of administrative

16  proceedings against the school, roughly seven, in addition to a

17  lawsuit and she's attempted to implead us in her bankruptcy.  I

18  asked her at depsotion to produce documents that she had filed

19  with various courts and adminsitrative agencies—

20  THE COURT:  Right.

21  MR. MILLER:  --and she, because Sullivan and

22  Worcester was party to some of those, didn't want to produce

23  them again, but in fact, many of the documents that she's

24  submitted, she submitted ex parte, and we don't even know what

25  she submitted, so we just asked--

1       THE COURT:  If she, have I made this clear, this

2   case will stand or fall as Ms. Stevenson needs to know today on

3   her keeping information from you that she has in her

4   possession, custody or control.  If, for example, she provided

5   documents and then doesn't give them or says I didn't and did

6   or says later here I found them, no, not admissible against

7   you.

8       MR. MILLER:  Our concern, Your Honor, is that the

9   burden of proof is ours on the administrative exemption.

10      THE COURT:  Well, counsel, I'm sure you know better

11  than anyone needs to tell you how to defend a case.

12      MR. MILLER:  Certainly, Your Honor.

13      THE COURT:  Okay.

14      MR. MILLER:  But much of the information--

15      THE COURT:  And I understand that this case has been

16  very difficult, but Ms. Stevenson can't win a case either if

17  she can't, she has the burden of proving this case, so let's

18  not get, let's not let this thing have everybody upsidedown.  I

19  will write an order.  I will take the issue of sanctions,

20  because this Court considers sanctions in this case to be

21  really serious, to be really serious.  There's gamesmanship

22  going on here.  Not legal gamesmanship.  There's games going on

23  in this case.  I can see it and the Court will talk about it.

24      MS. STEVENSON:  Your Honor, may I also say something

25  else?

1          THE COURT:  About what?

2          MS. STEVENSON:  Discovery.

3          THE COURT:  No, you are to produce whatever it is

4  that the defendant asked for, period, period.

5          MS. STEVENSON:  Ma'am, but if we were--

6          THE COURT:  Period.

7          MS. STEVENSON:  --parties in the same administrative

8  proceedings, why is it on me to give him the same, the

9  documents we were in there together.

10          THE COURT:  That's what happens when you have, when

11  you have a case.

12          MS. STEVENSON:  But we were there together.

13          THE COURT:  That's what happens.

14          MS. STEVENSON:  It's their documents.

15          THE COURT:  That's what happens.  They're not asking

16  for their documents.  They're asking for documents that you had

17  produced, period.  They're not asking for their own documents.

18  They are asking for documents you produced.  As the Court has

19  just indicated, the Court will take the matter under, the

20  matter for snactions under advisement.  The Court has issued

21  with respect to the defendant's motion to amend, the Court will

22  allow the motion to amend this case, given the mediation

23  sessions and given all of the rulings, and so the Court will

24  amend the scheduling order.  Defendant should submit an amended

25  order.

1    What the Court, however, does want to do before we

2  leave here is to have a date for the depsotion.

3        MR. MILLER:  And Your Honor said that Ms. Stevenson

4  is to produce documents with 14 days?

5        THE COURT:  14 days.

6        MR. MILLER:  Today being the 6th--

7        MS. STEVENSON:  And that's just the tax documents,

8  right?

9        THE COURT:  Please be seated everyone.  All the

10  information that the defendant has requested that you haven't

11  produced.

12        MS. STEVENSON:  Well, Your Honor, this is what I'm

13  trying to tell you, when I went back to get some documents they

14  wanted--

15        THE COURT:  Please be seated.

16        MS. STEVENSON:  --the  #3:56:11 gave me some

17  documents they say aren't admissible.  I can't present these

18  to--

19        THE COURT:  No, you can present whatever the

20  defendant has asked for, period, period.  Now, when are we

21  going to do this depsotion?

22        MR. MILLER:  I would prpose December 8th, Your Honor.

23        THE COURT:  December 8th, Ms. Stevenson?

24        MS. STEVENSON:  I don't know.  I don't have a

25  calendar.

1          THE COURT:  Well, let me say then right now,

2    December 8th.  That is when your deposition will be taken--

3          MS. STEVENSON:  No.

4          THE COURT:  --which is Friday, December 8th.

5          MS. STEVENSON:  No, we have bankruptcy that day,

6    don't we?  No it's a Thursday.  Not it's the 14th, I believe.

7          THE COURT:  Okay.  So it's December 8th.  Okay.

8          THE CLERK:  Court is adjourned.

9    (Court adjourned)

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

## Miller, Barry

**From:** Stevenson, Janice W. [janicestevensonus@gmail.com]
**Sent:** Wednesday, November 08, 2006 10:56 PM
**To:** Miller, Barry
**Subject:** RE: Stevenson v. NHCS

I don't understand your email. Can you rephrase your statement? Did you get my email?

**From:** Miller, Barry [mailto:BMiller@seyfarth.com]
**Sent:** Wednesday, November 08, 2006 3:13 PM
**To:** Stevenson Janice
**Cc:** Kappelman, Lynn
**Subject:** RE: Stevenson v. NHCS

Ms. Stevenson,

Your suggestion that you cannot appear at our Boston offices for your deposition is implausible. As an initial matter, you have twice appeared at our offices for previous sessions of your deposition, and you testified that you took public transportation to the World Trade Center T station that is directly across the street from our offices to do so. We also refer you to Local Rule 30.1, which states that any location in the City of Boston is deemed as a matter of law to be a convenient place for the taking of a deposition for any person who resides in the counties of Suffolk, Bristol, Essex, Middlesex, Norfolk, Plymouth or Worcester. Though you have improperly refused in prior sessions of your deposition to tell us where you reside, it is clear from your testimony and from the many judicial and administrative proceedings that we have known you to attend that you spend a significant amount of time in Cambridge and Boston, both of which are well within the territory described by the applicable Rule. We will not incur the expense or inconvenience of securing an alternative space within the City of Boston in which to take your deposition, and we will expect you to appear at our offices at or before 10:00 am on December 20, 2006.

Your most recent set of document requests is also wholly inappropriate. Despite your captioning it as your second set of document requests, it is in fact the fourth set of requests you have served on the School. You served three (3) separate sets of requests on NHCS by e-mail on June 22, 2006, to which we responded on July 24, 2006. We notified you both by correspondence dated June 26, 2006 and in our substantive responses to your first three sets of requests that you had exceeded the number of document requests allowed by Local Rule 26.1 (C). Your continuing to serve discovery requests without leave of court is in further derogation of that Rule. We, therefore, request that you withdraw your most recent set of document requests immediately, and we reserve the right to seek a protective order and sanctions from the Court if you have not done so prior to the close of business on Wednesday, November 15.

The representations in your message below about documents to which you claim to be entitled by statute are also entirely specious. As you know, it is (and consistently has been) NHCS's position that you were never an employee of the School for purposes of state or federal wage and hour law. The record keeping provisions of the Fair Labor Standards Act and the provisions of Mass. Gen. Laws ch. 149, § 52C have no application to independent contractors. The gravamen of the case you have initiated against the School is a dispute regarding your status as a putative employee, rather than an independent contractor. As we have informed you many times to impute additional statutory obligations to NHCS.

, you cannot rely on your assumption that you may ultimately prevail on the merits of this case
In light of the foregoing considerations, we are concerned that you have missed the central point of Magistrate Judge Alexander's Order of November 8. Your message below constitutes exactly the sort of behavior that the Court has clearly stated it will no longer tolerate. If you persist with these tactics, we will be forced to file a motion for further relief with the Court.

Regards,

Barry J. Miller

*Seyfarth Shaw LLP*
Two Seaport Lane, Suite 300
Boston, MA 02210
office phone: (617) 946-4800
direct phone: (617) 946-4806
office fax: (617) 946-4801
direct fax: (617) 790-6753

-----Original Message-----
**From:** Stevenson, Janice W. [mailto:janicestevensonus@gmail.com]
**Sent:** Wednesday, November 08, 2006 1:16 PM
**To:** Miller, Barry
**Subject:** RE: Stevenson v. NHCS

Mr. Miller:

The order states:

# Plaintiff's deposition will continue on

## December 20, 2006 at a time and place to be agreed to by the parties.

Because of my limited financial resources, we need to agree to a location that
is more accessible by me or I can walk to.  A possible location could be near
Dudley station (Roxbury), China Town, or downtown crossing.

In addition,

1) Should Plaintiff wish to submit further discovery motions, Plaintiff must first

discuss the merits and necessity of such motion with defense counsel and

attempt to come to a resolution before filing said motion.

As you are aware, the School, my previous employer, has a statutory duty to maintain time records and employee records.

Since these records are mandatory under FLSA and essential to my claim, I am submitting further request for production of the School's documents.  In addition the School received a request for document production from John Davis, my previous attorney over a year ago on or around August 2005.  Please forward me my personnel records ASAP.

There are Recordkeeping Requirements Under the Fair Labor Standards Act (FLSA).  The FLSA's recordkeeping Regulations are in 29 CFR Part 516.

What About Timekeeping?: Employers may use any timekeeping method they choose. For

example, they may use a time clock, have a timekeeper keep track of employee's work hours, or tell their workers to write their own times on the records. Any timekeeping plan is acceptable as long as it is complete and accurate.

The following is a sample timekeeping format employers may follow but are not required to do so:

| DAY | DATE | IN | OUT | TOTAL HOURS |
|------|------|------|------|------|
| Employee Name: | | | | |
| Sunday | 5/2/93 | | -------- | |
| Monday | 5/3/93 | 8:00 | 12:02 | |
| | | 1:00 | 5:03 | 8 |
| Tuesday | 5/4/93 | 7:57 | 11:58 | |
| | | 1:00 | 5:00 | 8 |
| Wednesday | 5/5/93 | 8:02 | 12:10 | |
| | | 1:06 | 5:05 | 8 |
| Thursday | 5/6/93 | | -------- | |
| Friday | 5/7/93 | | -------- | |
| Saturday | 5/8/93 | | -------- | |
| Total Workweek Hours | | | | 24 |

How Long Should Records Be Retained: Each employer shall preserve for at least three years payroll records, collective bargaining agreements, sales and purchase records. Records on which wage computations are based should be retained for two years, i.e., time cards and piece work tickets, wage rate tables, work and time schedules, and records of additions to or deductions from wages. These records must be open for inspection by the Division's representatives, who may ask the employer to make extensions, computations, or transcriptions. The records may be kept at the place of employment or in a central records office.

```
-----Original Message-----
From: Miller, Barry [mailto:BMiller@seyfarth.com]
Sent: Tuesday, November 07, 2006 4:12 PM
To: Stevenson, Janice W.
Subject: Stevenson v. NHCS

Ms. Stevenson,

As discussed in my e-mail to you of earlier this afternoon, attached is
a notice of your deposition for December 20 at our offices.  You may
disregard the notice issued for December 8.
```

```
Regards,

Barry J. Miller
Seyfarth Shaw LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
office phone: (617) 946-4800
direct phone: (617) 946-4806
office fax: (617) 946-4801
direct fax: (617) 790-6753


  <<Dec20depo.pdf>>
_____
Any tax information or written tax advice contained herein (including any
attachments) is not intended to be and cannot be used by any taxpayer for the
purpose of avoiding tax penalties that may be imposed on the taxpayer. (The
foregoing legend has been affixed pursuant to U.S. Treasury Regulations
governing tax practice.)

This email may contain privileged or confidential information and is for the
sole use of the intended recipient(s). If you are not the intended recipient,
any disclosure, copying, distribution, or use of the contents of this
information is prohibited and may be unlawful. If you have received this
electronic transmission in error, please reply immediately to the sender that
you have received the message in error, and delete it. Thank you.
```

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and delete it. Thank you.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re: JANICE STEVENSON          )
         SSN: XXX-XX-7512         )      Chapter 13
                                  )
                     Debtor,      )      Case No. 03-12304-JNF
                                  )

## MOTION AND MEMORANDUM IN SUPPORT TO QUASH SUBPOENA

**NOW** comes Janice W. Stevenson ("Debtor") and respectfully requests that this

Court quash the subpoenas [**Attachment I**] purportedly served upon Wainwright Bank

by Neighborhood House Charter School's ("Employer" or "NHCS") on November 08,

2006, or in the alternative declare that no valid subpoena has properly been served upon

the Debtor. Debtor also states that NHCS has violated this Court's automatic stay against

Debtor's bankruptcy assets and issued subpoenas. Debtor requests this Honorable Court

to quash employer's subpoena and in support thereof states:

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b) (1). The

purpose of the automatic stay is to protect Debtors and their estate. The Employer has

violated the automatic stay of the Debtor's bankruptcy.   The Employer has issued a

subpoena against assets of the Debtor's bankruptcy estate.

The automatic stay provision of the Bankruptcy Code is found in 11 U.S.C.

362(a), which provides in relevant part:

> *[A] petition filed under [the Bankruptcy Code] operates as a stay,*
> *applicable to all entities, of ...*
> > *3) any act to obtain possession of property of the estate or of*
> > *property from the estate or to exercise control over*
> > *property of the estate . . . .*

The Employer continues to retaliate against the Debtor for disclosure of and filing of an unpaid overtime wage claim. The subpoena the Employer has sent to Wainwright Bank violates the automatic stay provision, anti-discrimination provision of the Bankruptcy Code, and the anti-retaliation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

**BACKGROUND – FLSA Burden of Proof**

The Employer owes the Debtor unpaid wages. The Employer is aware Debtor has filed and is currently in bankruptcy. Yet the Employer has issued a subpoena that violates the automatic stay and Section 525.

The production of plaintiffs' bank statement is clearly not relevant in determining liability for unpaid wages for the reason that it is the duty of the Employer, not the employee, to report earned wages to the federal Wage and Hour Division. 29 U.S.C 211(c). Further, by operation of 29 C.F.R 516.2, all records of employment must be maintained and preserved by the Employer. Accordingly, the amount of wages earned by plaintiffs as reported to the appropriate federal agencies, including the Social Security Administration, would have been reported by defendant, not the plaintiff. Because this information is known to The School and within their possession, the subpoena is irrelevant to the purpose ordered.

The issue underlying all counts of the complaint was "the fact that the plaintiff worked and did not receive wages for work that has already been performed. Debtor argues bank accounts are not relevant in determining the amount of unpaid wages for work already performed.

**THEREFORE,** Debtor prays this Honorable Court will quash NHCS' subpoena.

DATED:   November 10, 2006

Respectfully submitted

*[signature: Janice W. Stevenson]*

Janice W. Stevenson
P.O. Box 400372
Cambridge, MA 02140
617-721-2638 - ph

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

In re: JANICE STEVENSON )
    SSN: XXX-XX-7512 )    Chapter 13
     )
                Debtor, )    Case No. 03-12304-JNF
     )

## ORDER TO APPEAR AND SHOW CAUSE FOR VIOLATION OF AUTOMATIC STAY AND CONTINUED VIOLATION OF SECTION 525

**COMES NOW** the debtor, Janice Stevenson, and move the Court as follows:

1. On January 17, 2003, the above-captioned debtor (the "Debtor") filed a petition for relief under Chapter 13 of the United States Bankruptcy Code.

2. This Court entered an Order confirming the Debtor's plan on March 1, 2003.

3. Neighborhood House Charter School is a previous employer, who is also a party in a civil case pending in federal district court with the Debtor.

4. The employer is aware of the filing of this case and the effect of the automatic stay order.

5. On November 8, 2006, NHCS issued a subpoena on the debtors' bank account. This action was in violation of the automatic stay.

6. Debtor request that the court issue an order to NHCS to show cause, as to why it should not be tried and punished for contempt of court in violating the automatic stay order entered in this case. Debtors further request an order to quash the subpoena which was issued by NHCS, that the court impose an appropriate fine against NHCS which the debtors suggest should be in the amount of $11,250.00.

## BACKGROUND - Section 362

"Section 362 of the Bankruptcy Code provides that filing a bankruptcy petition operates as an automatic stay of 'the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Debtor. ...' 11 U.S.C. Sect. 362(a)(1). The stay is designed to

preserve the status quo by precluding and nullifying postpetition judicial or nonjudicial

actions against the Debtor and property of the estate in nonbankruptcy forums. ... while

giving the Debtor some breathing room. The automatic stay also ensures that the assets of

a Debtor are not reduced or disturbed and protects the bankruptcy court's exclusive

jurisdiction over the Debtor and its property. ... [1]

An individual injured by any willful violation of a stay shall recover actual

damages, including costs and attorneys' fees, and, in appropriate circumstances, may

recover punitive damages.

## BACKGROUND – Anti-Discrimination Provision of The Bankruptcy Code

My employment ended on June 3, 2005 after I reported suspected fraudulent

financial activity by Dean Jagdish Chokshi to the Vice President of the Board of

Trustees, Robert Melzer on May 27, 2005 [**Attachment II**]; and I unknowingly advised

Dean Jagdish Chokshi of a pending meeting with Mr. Melzer.

The Board of Trustees was made aware of my termination; however, their

reaction was to protect NHCS, refuse my request for my unpaid wages, and threaten me

to stop publicly complaining.

This Debtor affirms she has not willfully or intentionally committed fraud or any

misrepresentations as to her employment status with NHCS or her assets to this Court or

the Trustee. Debtor was an employee and given the full time equivalence (FTE) of 1.0 by

NHCS since her employment began. [**Attachment III**]. *Full time equivalence* is a unit

for measuring staff resources. It is a measure as compared to a standard full-time

workload. No matter how much evidence I give to the attorneys of my employee status

---

[1] *In Re: Mohawk Greenfield Motel Corp.* (Lawyers Weekly No. 04-025-99) (20 pages) (Boroff, J.) (USBC) Paul R. Salvage for the Debtor; Laura A. Kolaitis for Stetson Management Co.; Jerrold Levinsky for MCAD (Chapter 11 Case No. 98-44133-HJB).

with NHCS, it is the attorneys who insist on misrepresenting the Debtor to various

Courts, federal agencies, and state agencies.

THEREFORE, Debtor requests this Honorable Court to issue an order to show

Cause for Violation of the Automatic Stay and Anti-Discrimination Provision of Sect 525.

Date: November 12, 2006

Respectfully submitted by:

*Janice K. Stevenson*

Janice Stevenson

CERTIFICATE OF SERVICE

I hereby certify that the Motion and Memorandum in Support to Quash Subpoena, Order to Appear and Show Cause for Violation of Automatic Stay and Continued Violation Of Section 525, and Order To Appear And Show Cause, were filed and that a true copy of the above document was served on by electronic mail or facsimile on November 13, 2006

Carolyn Bankowski
Chapter 13 Trustee
P.O. Box 8250
Boston, MA 02114
617-723-2998 – fax

Barry Miller and Lynn Kappelman
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Facsimile:      (617) 946-4801

David A. Guadagnoli (BBO# 552759)
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Telephone:     (617) 338-2800
Facsimile:      (617) 338-2880

*Janice W. Stevenson*

Janice W. Stevenson
P.O. Box 400372
Cambridge, MA 02140
617-721-2638 – phone/voice
201-622-4890 – fax
janicestevensonus@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: JANICE STEVENSON | ) |
| SSN: XXX-XX-7512 | ) Chapter 13 |
| | ) |
| Debtor, | ) Case No. 03-12304-JNF |
| | ) |

## ORDER TO APPEAR AND SHOW CAUSE

This proceeding is before the Court upon the Debtors' Motion to Show Cause filed in this case against Neighborhood House Charter School. The motion alleges a violation of the automatic stay order when NHCS issued a subpoena against the debtor's bank account.

**IT IS THEREFORE ORDERED** that a representative of NHCS show cause, if any it may have, before this Court why they intentionally violated the automatic stay order. A show cause hearing will be held before the U.S. Bankruptcy Court on the _____ day of _____, 2006.

**IT IS SO ORDERED.**

Date: November 12, 2006

Respectfully submitted by:

*Janice JWS Stevenson*

Janice Stevenson

# ATTACHMENT I

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

DISTRICT OF  Massachusetts

JANICE STEVENSON
V.
NEIGHBOHOOD HOUSE CHARTER SCHOOL

**SUBPOENA IN A CIVIL CASE**

Case Number:¹ 05-CV-11584-DPW

TO:
Keeper of the Records for Wainwright Bank & Trust Company
63 Franklin Street,  Boston, MA  02110

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please see attached Schedule A.

| PLACE<br>Please mail above records to the attention of:<br>Barry J. Miller, Esq., Seyfarth Shaw LLP, Two Seaport Lane, Boston, 02210 | DATE AND TIME<br>by Monday, November 20, 2006 |
| --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>[signature]   For Defendant Neighborhood House Charter School | DATE<br>November 8, 2006 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Barry J. Miller, Esq., Seyfarth Shaw LLP, Two Seaport Lane, Boston, MA  02210  617-946-4800

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

## Schedule A

1. All documents pertaining to any and all accounts maintained by or on behalf of Janice W. Stevenson (SSN: 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, dob: 10/24/56) from January 1, 2000 to the present, including without limitation documents reflecting the opening or closure of such accounts; all deposits to, withdrawals from, and transfers to and/or from such accounts; and any levies, attachments or other encumbrances imposed on such accounts by any agency or instrumentality of the state or federal government or by any private entity.

2. All documents pertaining to any and all accounts maintained by or on behalf of TuckNT or any other enterprise operated by or on behalf of Janice W. Stevenson from January 1, 2000 to the present, including without limitation documents reflecting the opening or closure of such accounts; all deposits to, withdrawals from, and transfers to and/or from such accounts; and any levies, attachments or other encumbrances imposed on such accounts by any agency or instrumentality of the state or federal government or by any private entity.

# ATTACHMENT II

Robert Melzer [melzer@mba1969                                    Page 1 of 2

**Stevenson, Janice W.**

**From:**    Janice W. Stevenson
**Sent:**    Monday, June 06, 2005 8:25 AM
**To:**      'melzer@mba1969.hbs.edu'
**Subject:** Robert Melzer Thank You.doc

Thank you for taking the time from you busy day to listen to my concerns.

Janice

June 6, 2005
P.O. Box 400372
Cambridge, MA  02140


Mr. Robert Melzer
Vice President of the Board of Trustees
    Of the Neighborhood House Charter School
61 Monmouth Street
Brookline, MA  02446

Dear Vice President Melzer:

Thank you for speaking with me by telephone on May 27, 2005. During that telephone call I
informed you I suspected Dean Jagdish Chokshi of misuse of NHCS' petty cash and
ATM/Credit Card. My suspicion was based on conversations and observations of Dean
Jagdish Chokshi. Both Genevieve Davis, another consultant hired by NHCS', and myself have
noted the lack of documentation of petty cash.

The ATM/Credit card was obtained for online access of NHCS' school's operating account with
Bank of America to assist administration in confirming MDOE payments, deposits, and bank
reconciliation. I was told by Dean Chokshi to never give the card's number to the staff to order
or pay for merchandise. Dean Chokshi reminded me that the card directly accessed NHCS'
monies in its operating account. However, approximately March 2005, the Dean informed me
that he had purchased a digital camera over the weekend with NHCS' ATM/credit card. He
stated, "I did not have my card on me."

There are no written internal procedures in place to deter fraud and/or insure compliance with
state and federal laws in Human Resources, Finance, Payroll, Public Funding etc. Dean
Chokshi has continually advised me verbally and in writing that he is not concerned with the
"letter of the law".

1.  I started to suspect Dean Chokshi in April 2005 of illegally using petty cash, when he
    informed me that he was paying Ms. Lynn Clark, an intern, $20 hours from petty cash.
    However, my concern is should Ms. Clark be paid through petty cash?

11/10/2006

Robert Melzer [melzer@mba1969                                    Page 2 of 2

According to Dean Chokshi, Ms. Clark, went to graduate school with him. Her current duties are to inventory the financial files. Dean Chokshi and Ms. Clark vacationed together in May 2005 in North Carolina.

One morning, Dean Chokshi stated to me that Mr. Austin Smith and you advised him to obtain additional help. This advice was the result of your observation of Dean Chokshi's lack of preparation for a BoT committee meeting.

2. Dean Chokshi has continually directed me to pay employees who did not turn in a signed timesheet to payroll. FLSA requires a timesheet for nonexempt employees and NHCS policy directs employees to turn in timesheets. NHCS currently has misclassified certain employees who are nonexempt as exempt to avoid paying overtime.

3. In addition, the master payroll file is not in compliance, human resource files are not in compliance, NHCS has unreported wages of employees L&DA over $50,000, etc.

11/10/2006

# ATTACHMENT III

NHCS
FY05 Operating Budget

Salaries
Page 1 of 4
Created by Jagdish Choksh
Monday, October 18, 2004 4:58:31 PM

| | | | FTE | Raise Amt | FY05 Approved Budget | Actual Payroll $ |
|---|---|---|---|---|---|---|
| **Management** | | | | | — | |
| Headmaster | | | 1.00 | | — | |
| Dep Headmaster | | | 0.17 | | — | |
| Dir of Development | | | 1.00 | | — | |
| Dean of Admin & Fin | | | 1.00 | | — | |
| Finance & Ops Mgr | | | 1.00 | | — | |
| Development Assoc | | | 1.00 | | — | |
| Office Mgr | | | 1.00 | | — | |
| | | | 6.17 | | — | |
| | | | | | | |
| **Instruction** | | | | | | |
| Assist. Headmaster | | | 1.00 | | — | |
| Dean of LS | | | 1.00 | | — | |
| Dean of MS | | | 1.00 | | — | |
| **Lower School** | | | | | — | |
| Grade 5 Teacher | | | 1.00 | | — | |
| Grade K2 Teacher | | | 1.00 | | — | |
| Grade 3 Teacher | | | 1.00 | | — | |
| KIDLAB Teacher | | | 0.80 | | — | |
| Grade 4 Teacher | | | 1.00 | | — | |
| Grade 2 Teacher | | | 1.00 | | — | |
| Phys Ed Teacher | | | 0.60 | | — | |
| Title 1 Teacher | | | 0.80 | | — | |

REDACTED

NHCS
FY05 Operating Budget

Salaries
Page 2 of 4
Created by Jagdish Choksh
Monday, October 18, 2004 4:58:31 PM

| | | FTE | Raise Amt | FY05 Approved Budget | Actual Payroll $ |
|---|---|---|---|---|---|
| Title 1 Teacher | | 0.00 | | . | |
| Specialist - Reading | | 0.50 | | . | |
| Grade 1 Teacher | | 1.00 | | — | |
| Grade K2 Teacher | | 1.00 | | — | |
| Grade K1 Teacher | | 1.00 | | — | |
| Grade K2 Teacher | | 1.00 | | — | |
| Grade K2 Assoc. Teacher | | 1.00 | | — | |
| Grade K1 Assoc. Teacher | | 1.00 | | — | |
| Reading First Stipends | | | | — | |
| Title 1 Math Task Force Stipend | | | | | |
| Middle School | | | | | |
| Math Teacher | | 1.00 | | — | |
| Math Teacher | | 0.50 | | — | |
| English Teacher | | 1.00 | | — | |
| Spanish Teacher | | 1.00 | | — | |
| Soc Stud Teacher | | 1.00 | | — | |
| Science Teacher | | 1.00 | | — | |
| Music Teacher | | 1.00 | | — | |
| Art Teacher | | 1.00 | | — | |
| Specialist - Writing | | 0.40 | | — | |
| Reading First Coordinator | | 1.00 | | — | |
| ?? | | 0.80 | | — | |
| Special Education | | 1.00 | | — | |

REDACTED

REDACTED

NHCS
FY05 Operating Budget

Salaries
Page 3 of 4
Created byJagdish Choksh
Monday, October 18, 2004 4:58:31 PM

| | | FTE | Raise Amt | FY05 Approved Budget | Actual Payroll $ |
|---|---|---|---|---|---|
| Special Education | | 1.00 | | | |
| Special Education OT | | 0.40 | | | |
| Special Education Intern | | | | | |
| Special Education Stipend | | | | | |
| TechLab Teacher | | 0.50 | | | |
| PSI | | | | | |
| Director | | 1.00 | | | |
| 1 | | 1.00 | | | |
| 2 | | 1.00 | | | |
| 3 | | 1.00 | | | |
| Teacher Stipend | | | | | |
| Student Support | | | | | |
| Dean of Student Support | | 1.00 | | | |
| Family Center Coordinator | | 0.50 | | | |
| HS Placement | | 1.00 | | | |
| After School Director | | 0.75 | | | |
| After School Staff | | 0.50 | | | |
| After School Staff | | 0.50 | | | |
| After School Staff | | 0.50 | | | |
| After School Stipends | | | | | |
| Summer | | | | | |
| Summer Leader | | 1.00 | | | |
| Summer Leader | | 1.00 | | | |

REDACTED    REDACTED

NHCS
FY05 Operating Budget

Salaries
Page 4 of 4
Created byJagdish Choksh
Monday, October 18, 2004 4:58:31 PM

| | | FTE | | Raise Amt | FY05 Approved Budget | Actual Payroll $ |
|---|---|---|---|---|---|---|
| Summer Teacher | | 1.00 | | | | — |
| Summer Teacher | | 1.00 | | | | — |
| Summer Teacher | | 1.00 | | | | — |
| Summer Teacher | | 1.00 | | | | — |
| Summer Teacher Assit | | 1.00 | | | | — |
| Summer Teacher Assit | | 1.00 | | | | — |
| Summer Teacher Assit | | 1.00 | | | | — |
| Summer Teacher Assit | | 1.00 | | | | — |
| Summer Teacher Assit | | 1.00 | | | | — |
| | | | | | | — |
| | | 55.22 | | | | — |
| | | 61 | | | | — |

REDACTED