**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANICE STEVENSON, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  05-CV-11584-DPW |
| ) | |
| NEIGHBORHOOD HOUSE ) | |
| CHARTER SCHOOL, ) | |
| Defendant. ) | |

## DEFENDANT'S  MOTION TO DISMISS AND FOR SANCTIONS

Defendant Neighborhood House Charter School ("NHCS" or the "School") submits this Motion to Dismiss and For Sanctions pursuant to Fed.R.Civ.P. 37(d) and 41(b), seeking relief from a continuing and incorrigible pattern of discovery abuses and other vexatious conduct by Plaintiff Janice Stevenson ("Plaintiff" or "Stevenson").  The Court and counsel for NHCS have gone to extraordinary lengths to give Stevenson every opportunity to comply with her discovery obligations and curb her pattern of calamitous conduct in this matter.  In willful defiance of the Court's repeated warnings, Stevenson has continued to obstruct and evade NHCS's discovery efforts.  Her conduct has necessitated numerous rounds of motion practice, resulting in an unjustifiable waste of the Court's resources and imposing a truly oppressive and disproportionate burden on NHCS, an eleemosynary institution.  Stevenson's open contempt for this Court cannot be tolerated further, and the Court should dismiss her claims in this matter with prejudice and order her to pay the costs and attorneys' fees NHCS has incurred in responding to her vexatious tactics.

## BACKGROUND

Since Stevenson filed this action in July 2005, she has consistently endeavored to derail any prospect of sane or balanced proceedings in this matter.  At every opportunity, she has done

her utmost to frustrate and obstruct NHCS's efforts to take discovery, and it is now apparent that Stevenson's conduct has rendered any orderly resolution of this case on its merits impossible.

### A.     Stevenson's Misconduct at the First Two Sessions of Her Deposition

NHCS initially commenced Stevenson's deposition in this matter in September 2006.  In the first two sessions of her deposition, Stevenson willfully refused to cooperate by declining to answer questions without any cognizable basis, asserting facially inapplicable constitutional objections, and refusing even to look at documents that were marked as exhibits and placed before her.  NHCS's counsel went to great lengths to reason with Stevenson and attempt to secure her cooperation, by among other things, marking a copy of the applicable Rules of Civil Procedure and explaining in detail the reasons that her behavior was inappropriate.[1]  Stevenson persisted in her refusals to cooperate, and NHCS was forced to file a motion seeking relief from the Court for Stevenson's misconduct.  *See* Defendant's Motion for Terminating Sanctions, or in the Alternative, to Compel Deposition Testimony, filed September 22, 2006 (docket entry no. 41).

On November 6, 2006, Magistrate Judge Joyce London Alexander held a hearing on NHCS's Motion for Terminating Sanctions, in addition to several other motions.  *See* electronic docket entry dated Nov. 6, 2006.  At that hearing, Magistrate Judge Alexander made it unmistakably clear to Stevenson that her behavior at the prior sessions of her deposition was inappropriate and unacceptable, and she Ordered Stevenson to appear for continued deposition on December 20 and to respond to all questions posed to her in that proceeding.  *See* Transcript of Nov. 6, 2006 Hearing, a copy of which is attached at Tab A, at 24:12-24, 26:12-16, 27:5-15. The Magistrate Judge then reinforced her clear instructions to Stevenson regarding her obligation

---

[1] NHCS's counsel's efforts in this regard are recorded in the transcript of the first session of Stevenson's deposition, which is appended to the School's Motion for Terminating Sanctions (docket no. 41) at 107:13 – 111:24.

to participate in the deposition in good faith with a written Order.  *See* Order dated November 7, 2006 (docket no. 48), p. 3 ("Plaintiff may assert any appropriate objection she wishes at the deposition . . . , but she is hereby ORDERED to answer every question posed to her in an honest, clear, concise and coherent manner.")

### B.     Stevenson's Deliberate Violation of the Magistrate Judge's Order

Stevenson failed to appear for her deposition on December 20, and she offered no plausible justification or excuse for her willful disregard of the Court's Order.  In fact, at the time that Stevenson was to appear for deposition pursuant to the Court's Order, she instead traveled to the Clerk's office, a few hundred yards from the offices where her deposition was to take place, and filed two additional dilatory and frivolous motions in this matter.[2]

In response to Stevenson's failure to appear for her deposition, NHCS sought leave to file a supplemental brief in support of its Motion for Order to Show Cause Why Plaintiff Should Not Be Held in Contempt, detailing Stevenson's refusals to comply with the Magistrate Judge's Order.[3]  *See* Defendant's Motion for Leave to File Supplemental Brief (docket no. 54).

The Court held a hearing in this matter on January 23, 2007, at which it addressed several pending motions, including Defendant's Motion for Order to Show Cause.  At the hearing, the Court observed that this matter "has been transformed into a mess because of various actions that [Stevenson had] taken."  Transcript of Jan. 23, 2007 Hearing, a copy of which is attached at Tab B, at 7:24 – 8:1.  The Court gave Stevenson a clear and stern warning that her failure to appear for deposition was in violation of the Magistrate Judge's Order, and that it was within the Court's discretion to dismiss Stevenson's claims as a sanction for her misconduct.  *Id*., 13:5 –

---

[2] *See* Transcript of January 23, 2007 Hearing, Ex. B, at 13:9-21.

[3] NHCS initially filed its Motion for Order to Show Cause (docket no. 53) on December 11, 2006, in response to Stevenson's failure to produce specified documents in advance of her deposition, as the Magistrate Judge had Ordered her to do.

14:11.  Rather than dismissing this action or entering other sanctions against Stevenson, the

Court gave her "one more chance" and Ordered her to appear for deposition on February 22,

2007.  *Id*. 15:10-13.

### C.    Stevenson's Outrageous and Obstructionist Behavior at Her Continued Deposition

Stevenson appeared at the offices of Defendant's counsel on February 22, but she grossly

and willfully failed to participate in her deposition.  Instead, Stevenson engaged in a range of

outrageous behavior that was designed to obstruct NHCS counsel's ability to take testimony

from her.

Stevenson appeared in heavy winter garb that included a hood that covered her ears and a

scarf wrapped tightly around the lower half of her face, covering her mouth.  *See* Affidavit of

Barry J. Miller, Esq. in Support of Defendant's Motion to Dismiss and For Sanctions, filed

contemporaneously herewith, ("Miller Aff."), ¶ 4; Transcript of February 22, 2007 Deposition of

Janice Stevenson ("Depo. Trans."), 791:6 – 792:13.[4]  Despite the fact that the conference room

in which the deposition was to occur was heated to 75 degrees Fahrenheit, Stevenson stubbornly

refused to remove her outerwear and insisted on mumbling her testimony through her scarf.  *See*

Miller Aff., ¶¶ 5, 8; Depo. Trans., 797:5-23, 799:1-10, 814:8-16, 818:24 – 819:4, 899:22 – 900:2.

Stevenson also refused to sit next to the court reporter and insisted on sitting near the opposite

end of the conference room table from the court reporter and NHCS's counsel.  Miller Aff., ¶¶ 6,

8; Depo. Trans. 791:6-16, 809:6-8.  NHCS's counsel repeatedly explained to Stevenson that it

was necessary for the court reporter to be able to hear her testimony clearly, and that the scarf

over mouth, together with the fact that she was sitting at a distance from the court reporter,

---

[4] A copy of the transcript of the February 23, 2007 session of Stevenson's deposition is appended to the Miller Affidavit at Tab B.

served as a serious impediment to the proceedings. Miller Aff., ¶¶ 7, 11; Depo. Trans. 820:10-17, 899:5-12. Stevenson persisted in her refusals to cooperate, at one point stating, "Okay. Half [of what I say] will be on the reporter's transcript." Depo. Trans. 825:2-5.

Notwithstanding Stevenson's obstinate behavior, NHCS's counsel attempted to continue the deposition. Miller Aff., ¶ 9; Depo. Trans. 806:12-20. When it became clear that the communication between Stevenson and NHCS's counsel was impaired by the covering over Stevenson's mouth and her refusal to sit within a reasonable conversational distance, Stevenson abruptly left the room and came back with two pieces of paper. Miller Aff., ¶ 11; Depo. Trans. 807:11-22. She then constructed cue cards reading "YES" and "NO," and proceeded to answer the questions put to her by waiving the cards. Miller Aff., ¶ 12; Depo. Trans. 807:19 – 808:5. Despite NHCS's counsel's explaining to Stevenson that she needed to give spoken testimony for the transcribed record, Stevenson continued to respond with her cue cards, in addition to or in lieu of spoken responses, throughout the proceedings. Miller Aff., ¶ 13; Depo. Trans. 814:2-6, 817:13-15, 819:10-19, 897:12-14, 901:5-7.

After Stevenson constructed her cue cards, her intransigence escalated even further. She turned her back to the court reporter, retrieved a copy of a daily newspaper from her tote bag, and began to read the newspaper, rather than listening to questions from Defendant's counsel or looking at the exhibits placed in front of her. Miller Aff., ¶ 15; Depo. Trans. 828:2-9, 831:11-13. NHCS's counsel requested that Stevenson put the newspaper away and participate in the deposition proceedings, but she refused. Miller Aff., ¶ 16; Depo. Trans. 830:15-20, 834:5-17, 843:12 – 844:15.

In addition to the antics described above, Stevenson obstructed NHCS's efforts to take her deposition by combatively arguing with NHCS's counsel, repeatedly interrupting NHCS's

counsel, refusing to review documents marked as exhibits, refusing to acknowledge that she was under oath, and refusing to respond to many of the questions put to her.  Miller Aff., ¶¶ 10, 14, 21; Depo. Trans. 792:6-24, 832:5 – 834:2, 837:19 – 843:10, 853:15 – 861:18, 903:7 – 910:21.

In response to Stevenson's conduct, NHCS's counsel repeatedly informed her that, in NHCS's view, her failure to participate in her deposition was inappropriate and in violation of both the Magistrate Judge's Order of November 8, 2006 and the Court's Order of January 23, 2007.  Miller Aff., ¶¶ 17, 20; Depo. Trans. 811:11 – 812:9, 819:20 – 820:6, 873:17 – 874:7.  In response to NHCS's counsel's warnings, Stevenson stated, "What are you whining about?  I'm here. What do you want?"  Depo. Trans., 884:14-15.  At the same time, Stevenson claimed to have no memory of the Court Orders requiring her to appear for and participate in her deposition. Miller Aff., ¶ 18; Depo. Trans. 853:6-14, 856:12-14, 871:5-12, 883:21 – 886:9, 900:13-23. When NHCS's counsel marked copies of the Court's Orders and placed them in front of her, Stevenson then claimed that the Orders were not binding on her.  Depo. Trans. 859:8 – 860:7, 865:3-7, 867:1-16, 875:2 – 876:23, 878:16 – 879:19.

### D.    Stevenson's Refusal To Appear at the February 22 Hearing

In response to Stevenson's obstructionist behavior at the February 22 deposition, NHCS's counsel left a message for the Court Clerk by telephone during the lunch break seeking guidance as to whether and how the Court would address Stevenson's behavior.  Miller Aff., ¶ 19.  The Clerk returned the call from NHCS's counsel at approximately 1:30 p.m., and she apprised Defendant's counsel that the Court would hold a hearing in this matter at 2:15 p.m. that day, February 22, 2007.  Miller Aff., ¶ 21.  The Clerk also asked to speak with Stevenson, so that she could apprise her of the hearing.  *Id.*  Stevenson declined to talk to the Clerk on the phone provided by Defendant's counsel, and asked that she be allowed to speak with the Clerk on her own phone.  *Id.*  At the Clerk's request, Defendant's counsel provided Stevenson with the

Clerk's telephone number and informed her that the Court would hold a hearing that afternoon at 2:15 p.m., or in roughly 45 minutes from the time of the call. Miller Aff., ¶ 22; Depo. Trans. 913:10-16. Despite the fact that Stevenson had been informed that her deposition (which was suspended for the hearing) was scheduled to last all day on February 22, 2007, she stated to Defendant's counsel that she was not available for the afternoon hearing, and she left Defendant's counsel's offices without further discussion. Miller Aff., ¶¶ 3, 22-23.

<u>ARGUMENT</u>

Stevenson has gone to remarkable lengths to impede NHCS's discovery efforts and she has shown an open and flagrant disregard for the Orders of the Court. Moreover, her misconduct in this matter on February 22 was only one component in Stevenson's longstanding and consistent pattern of vexatious conduct in this case. She has received more than ample warnings regarding the consequences of her continued misconduct, and the Court should now dismiss Stevenson's claims with prejudice and impose harsh monetary sanctions against her.

**A.    Stevenson's Conduct At Deposition Warrants the Dismissal of Her Claims and the Imposition of Sanctions**

There can be no question that Stevenson's antics at her deposition are sufficient grounds for the dismissal of her claims. It is within the Court's inherent powers to dismiss a Plaintiff's claims as a sanction for her discovery abuses. *See Torres-Vargas v. Pereira*, 431 F.3d 389, 392 (1st Cir. 2005) (collecting authorities); Fed.R.Civ.P. 37(b)(2)(C) (listing party's failure to provide or permit discovery among grounds for sanctions, including dismissal). Courts in the First Circuit have recognized that a party's refusal to participate in good faith in a deposition is a well established ground for dismissal of her claims. *See, e.g., Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003) (refusal to comply with Court Order to appear for and participate in deposition valid basis for dismissal); *Guex v. Allmerica Fin. Life Ins. & Annuity Co.*, 146 F.3d 40, 42-43

BO1 15830843.1

(1st Cir. 1998) (plaintiff's failure to appear deposition without justification or excuse warranted

dismissal of complaint); *The Stop & Shop Cos., Inc. v. Interstate Cigar Co.*, 110 F.R.D. 105, 108

(D. Mass. 1986) (Court may dismiss plaintiff's claims for refusal to answer deposition questions,

even in the absence of an order compelling responses).

In this case, Stevenson previously failed to appear for her deposition as Ordered on

December 20, 2006, without justification or excuse.  Rather than dismissing Stevenson's claims

for her deliberate violation of the Magistrate Judge's Order, the Court showed lenience and

provided Stevenson with "one more chance" to comply.  Stevenson abused the Court's clemency

in grandiose fashion by engaging in childish behavior at her deposition on February 22 that

precluded NHCS from taking any useful testimony.  The Court should, therefore, substantiate the

final warning that it gave to Stevenson at the January 23 hearing in this matter and dismiss her

claims with prejudice.

### B.    Stevenson's Refusal to Appear at the February 22 Hearing Also Supports the Dismissal of Her Claims

Stevenson's refusal to appear at the February 22, 2007 hearing that the Court called to

address her misconduct at deposition constitutes further grounds for the dismissal of her claims.

A party's deliberate failure to attend a hearing as directed is sufficient to justify the dismissal of

the action.  *See, e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1968) (dismissal warranted

where "it could reasonably be inferred from [the] absence, as well as from the drawn-out history

of the litigation . . . that [the plaintiff] had been deliberately proceeding in dilatory fashion.");

*Morgan v. Mass. Gen. Hosp.*, 901 F.2d 186, 195 (1st Cir. 1990) (dismissal appropriate where the

"case reflects a persistent pattern of disregarding or disobeying the requirements of the Federal

Rules of Civil Procedure, the Local Rules of the . . .  District Court and explicit court orders");

Fed.R.Civ.P. 41(b) (failure of plaintiff to comply with applicable rules or any order of the Court

is grounds for dismissal with prejudice). There is every indication that Stevenson's failure to attend the February 22 hearing was deliberate, and any claim that Stevenson was not available to attend the February 22 hearing is facially implausible. She had been Ordered to appear for her deposition on February 22, and she was told that the proceeding would last the entire day. *See* p. 6, above. That deposition was suspended for the purpose of allowing the parties to attend the hearing. *Id.* Stevenson had ample notice and was within walking distance of the Courthouse at the time she was informed of the hearing.[5] Stevenson's failure to appear at the hearing was, therefore, yet another instance of her flagrant disregard for the Orders and instructions of the Court.

Stevenson has been given a more than reasonable number of last and final chances to curb her abuses, and she has demonstrated that she will not respond to any measure short of the termination of her claims. It is time for the Court to put an end to Stevenson's abuses, and to do so, it must dismiss this action with prejudice.

**C.    Stevenson's Misconduct in this Matter Warrants the Imposition of Harsh Monetary Sanctions**

Stevenson's conduct at the most recent session of her deposition and her refusal to appear at the February 22 hearing is part of an expansive pattern of misconduct that has prevented any progress in this case and has imposed a massive burden on NHCS in responding to Stevenson's various forms of misconduct.

Stevenson's behavior at the first two sessions of her deposition, her failure to appear for her deposition on December 20, 2006, and her antics at her deposition on February 22, 2007

---

[5] In fact, Stevenson had only minutes before walked over to the Courthouse from Defendant's counsel's office to file documents in this matter with the Clerk. Depo. Trans. 909:10-13

have needlessly caused the School to expend many thousands of dollars in attorneys' fees and stenographers' fees for no productive purpose.

In addition to expenses related to its efforts to take Stevenson's deposition, the School has been forced to file numerous motions in attempting to secure Stevenson's compliance with her discovery obligations in this matter, including a motion to compel production of documents (docket no. 32), a motion to compel deposition testimony (docket no. 41), a motion for order to show cause for Stevenson's failure to produce documents as Ordered (docket no. 53), a brief regarding Stevenson's failure to attend her deposition as Ordered (docket no. 54), a motion regarding Stevenson's misrepresentations to the Court regarding the documents she had produced (docket no. 61), and the present motion.

The School has also been forced to expend many thousands of dollars in responding to a litany of baseless motions that Stevenson has filed, including her grossly premature motion for summary judgment (*see* docket no. 11), a "Motion to Compel Payment of Vacation Wages" (docket no. 35), a motion for Rule 11 sanctions based on NHCS's asserting defenses to her claims in this matter (docket nos. 37, 40), meritless objections to the Magistrate Judge's Order requiring her to produce documents and appear for deposition (docket no. 50), and a motion for Order to show cause – again for NHCS's asserting defenses to her claims in this matter (docket no. 56).  The Court has summarily denied all of these motions as lacking any substantial basis in the law and has characterized them as "misplaced," "frivolous," and "dilatory."  *See, e.g.*, Ex. A at 20:7-17; Nov. 7, 2006 Order (docket no. 48), p. 4.  Moreover, this proceeding is but one component of a massive campaign of harassment that Stevenson has waged against NHCS, including claims she has filed against the School in *ten separate forums*.  *See* NHCS's Brief

10

Regarding Ancillary Administrative Proceedings (docket no. 25).[6]  The massive quantity of resources that Stevenson has diverted from NHCS's educational mission through her misconduct is entirely unconscionable.

There can be no serious question that Stevenson's behavior in this case, including her efforts to obstruct discovery, her overt and intentional violation of the Court's Orders, and her filing a multitude of frivolous pleadings are sufficient to vest the Court with discretion to enter sanctions against her in the amount of NHCS's attorneys' fees.  *See, e.g.*, *Dubois v. U.S. Dept. of Agric.,* 270 F.3d 77, 80 (1st Cir. 2001) (District Court may, under its inherent equitable powers, award attorneys' fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons.") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991)); *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4-6 (1st Cir. 1993) (award of attorneys' fees appropriate sanction against party who behaved in a "general non-cooperative and often contentious manner" in course of litigation).  Indeed, the Rules of Civil Procedure create a strong presumption in favor of imposing monetary sanctions on a party who violates the Court's discovery Orders, as Stevenson clearly has.  *See* Fed.R.Civ.P. 37(b) ("the court shall require the party failing to obey the order . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust").  Given her extended pattern of serious and deliberate abuses in the face of clear and repeated warnings from the Court, Stevenson's *pro se* status does not shield her from the imposition of such sanctions.  *See Unanue-Casal v. Unanue-Casal*, 898 F.2d 839,

---

[6] Since NHCS filed its brief regarding Stevenson's ancillary findings, the School has learned that Stevenson has filed claims or complaints against it in at least the following venues, in addition to this Court: the U.S. Bankruptcy Court for the District of Massachusetts, the U.S. Department of Labor's ("USDOL") Occupational Safety and Health Administration, the USDOL's Employee Benefits Security Administration, the USDOL's Wage and Hour Division, the U.S. Internal Revenue Service, the Massachusetts Division of Unemployment Assistance, the Massachusetts Department of Revenue, the Massachusetts Appellate Tax Board, and the Massachusetts Attorney General's Fair Labor and Business Practices Division.

843-44 (1st Cir. 1990) (imposition of sanctions against *pro se* party permissible and warranted for bad faith litigation conduct). At this juncture, it is plainly apparent that Stevenson has pursued this litigation against NHCS for the improper and malicious purpose of causing undue expense and distraction to the School. The Court should, therefore, require Stevenson to pay the costs, including attorneys' fees, that NHCS has incurred in this matter as a sanction for her misconduct.

12

## CONCLUSION

WHEREFORE, Defendant Neighborhood House Charter School requests that this Court dismiss Plaintiff Janice Stevenson's claims in this matter with prejudice and enter sanctions against Plaintiff Janice Stevenson ordering her to pay the costs, including attorneys' fees, that Defendant has incurred in responding to her improper conduct.

Respectfully submitted,
NEIGHBORHOOD HOUSE
CHARTER SCHOOL,
By its attorneys,

/s/ Barry J. Miller
Lynn A. Kappelman (BBO # 642017)
Barry J. Miller (BBO # 661596)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
DATED:  March  6, 2007        Telephone:     (617) 946-4800
Telecopier:    (617) 946-4801

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULES 7.1 AND 37.1

I hereby certify that I attempted in good faith to resolve or narrow the issues presented by this motion by conferring with *pro se* Plaintiff Janice Stevenson.  During Plaintiff's deposition, on February 22, 2007, I engaged in on-the-record conversations with Plaintiff and informed her that Defendant believed her refusal to answer questions and otherwise to participate in the deposition was inappropriate and grounds for sanctions, including the dismissal of her claims in this matter.  I also repeatedly stated to Plaintiff that Defendant intended to seek relief from the Court for her intransigence. Plaintiff continued to refuse to cooperate or to in the deposition in good faith.

/s/ Barry J. Miller
Barry J. Miller

### CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the Court's ECF system and that a true copy of the above document was served on Plaintiff *pro se* Janice Stevenson by e-mail to janicestevensonus@gmail.com and by first class U.S. mail to P.O. Box 400372, Cambridge, MA 02140 on March 6, 2007.

/s/ Barry J. Miller
Barry J. Miller

BO1 15830843.1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JANICE STEVENSON                              .CIVIL ACTION NO. 05-11584-DPW
      Plaintiff                              .
 
                        .
      V.                              .BOSTON, MASSACHUSETTS
NEIGHBORHOOD HOUSE CHARTER SCHOOL .NOVEMBER 6, 2006
      Defendant                              .
. . . . . . . . . . . . . . . .


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE JOYCE LONDON ALEXANDER
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the plaintiff:                    Janice Stevenson, pro se
                                      P.O. Box 400372
                                      Cambridge, MA 02140
                                      617-721-2638


For the defendant:                    Barry J. Miller, Esquire
                                      Seyfarth Shaw, LLP
                                      Two Seaport Lane
                                      Suite 300
                                      Boston, MA 02210
                                      617-946-4800




Court Reporter:



Proceedings recorded by digital sound recording, transcript
produced by transcription service.

---

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

I-2

1                          <u>I N D E X</u>

2    Proceedings                                            3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2    (Court called into session)

3              THE CLERK:  In the matter of Janice Stevenson v.

4    Neighborhood House Charter School, Civil Action 05-11584.  Will

5    the parties please identify themselves for the record?

6              MS. STEVENSON:  I'm Janice Stevenson the plaintiff.

7              MR. MILLER:  Barry Miller of Seyfarth Shaw for

8    defendant, Neighborhood House Charter School, Your Honor.

9              THE COURT:  You may be seated.

10             I'll hear defendant's motion to compel production of

11   documents and for sanctions.

12             MR. MILLER:  Your Honor, to provide some factual

13   background to give context to the various motions before the

14   Court, Ms. Stevenson, through her company, Tuck NT, which she

15   formed prior to her relationship with Neighborhood House

16   Charter School, provided administrative services to the school,

17   including accounts payable, human resources and other similar

18   functions.  When the school terminatied its contract with

19   Ms. Stevenson's company, she then proceeded to file a number of

20   administrative complaints and lawsuits against the school and

21   its constituents, including this lawsuit.  In this lawsuit she

22   claims that she was not an independent contractor as the fact

23   that she operated her own company would suggest, but that she

24   was in fact an employee of the school and that she was a

25   non-exempt employee of the school, and she seeks overtime wages

 1  under the Federal Fair Labor Standards Act.  The

 2  school--

 3           THE COURT:  Who did the school hire?

 4           MR. MILLER:  The school had a contract with

 5  Ms. Stevenson's company, Tuck NT.

 6           THE COURT:  All right.

 7           MR. MILLER:  The school maintains in this lawsuit as

 8  it has in various other fora that Ms. Stevenson has filed

 9  charges in, that she was in fact an indpendent contractor and

10  the Fair Labor Standards Act did not apply to the services she

11  provided for the school.  The school further contends that even

12  if she had been an employee, the nature of the services that

13  she provided were such that she would have been an exempt

14  employee and not eligible for overtime pay under the statute.

15  In the course of these proceedings and others, Ms. Stevenson

16  has filed a number of motions that are dilatory in nature and

17  serve no purpose other than to harrass and cause undue burden

18  to a publicly funded charitable charter school.

19           The motion to compel production of documents relates

20  to Ms. Stevenson's refusal to participate in discovery.

21  Neighborhood House initially served document requests on

22  Ms. Stevenson's counsel in November of 2005 when she was

23  represented in this matter by Attorney John Davis.  The parties

24  agreed to hold discovery in abeyance while they conducted

25  preliminary settlement negotiations.  Eventually, those

I-5

1   negotiations broke down.  Mr. Davis withdrew and

2   Judge Woodlock asked us to re-serve our document request on

3   Ms. Stevenson.  We did that.  In response, she grouped the

4   requests that we had issued and essentially gave non-responses

5   to each of our document requests.  She produced a total of four

6   documents, each of which is almost perfectly irrelevant.  She

7   failed to produce documents that are centrally relevent to her

8   claims in this matter and that she has admitted to exist.

9   Primary among these are her tax returns.  It is the school's

10  contention that she was an indpendent contractor.  It is the

11  school's understanding that she solicited and perhaps performed

12  similar services for other entities aside from Neighborhood

13  House Charter School.  Ms. Stevenson conceded at deposition

14  that her tax returns are available to her and she has not

15  produced them.  Similarly, Ms. Stevenson produced after her

16  engagement or her company's engagement with the school, she

17  prepared a document that lists the hours she claims to have

18  worked in performing services for the school.  At deposition

19  she explained that she created that document after her

20  engagement with the school, her company's engagement with the

21  school and that it was based on primary documents, journals

22  that she kept contemporaneous with the services she performed.

23  She admitted at deposition that those documents are also

24  available to her and she has not produced them.  She has not

25  produced any documents whatsoever relating to her company,

I-6

1   Tuck NT, which she established roughly six months before the

2   school engaged that company.  She has admitted at deposition

3   that she maintained bank accounts on behalf of this entity and

4   that they're, and she requested a federal employer

5   identificaiton number on behalf of this entity and she's

6   produced no documents whatsoever that relate to those matters.

7   Those are critically important to defendant's defenses in this

8   matter because we believe those documents will reflect that the

9   nature of Ms. Stevenson's employment, the nature of the

10  services that she performed for this school and other entities

11  was that of an independent contractor.  Similarly, she has

12  given no substantial basis for her refusal to produce documents

13  or to participate in her deposition, which is subject to

14  another motion that's before this Court.

15       She has articulated certain concerns about privacy

16  and she has claimed that we have overstepped our bounds and

17  engaged in all sorts of unethical and scandalous behavior.

18  There's absolutely no basis for that whatsoever.  She's accused

19  us of race discrimination.  She's accused us of lying to the

20  court, and we can demonstrate that in fact ever representaiton

21  we've made to the Court was entirely true and it's not pattern

22  of behavior that has caused us to request sanctions not only on

23  our motion to compel production of documents, but also in

24  conjunction with the motion we filed that relates to Ms.

25  Stevenson's behavior at deposition and the other motions that

I-7

1    she's filed in this matter including a completely frivolous

2    motion for Rule 11 sanctions against the school essentially for

3    mounting a defense in this case.

4            THE COURT:  I'll hear you on your--

5            MS. STEVENSON:  Well, Your Honor--

6            THE COURT:  --opposition to the motion.

7            MS. STEVENSON:  I'm sorry, say that again?

8            THE COURT:  I'll hear you on your opposition to the

9    motion.

10            THE CLERK:  Will you please stand.

11            MS. STEVENSON:  Stand up?

12            THE CLERK:  Please.

13            MS. STEVENSON:  Your Honor, my opposition to the

14    defendant's motions for sanctions or in the alternative to

15    compel discovery is - when I went to work for Neighborhood

16    House Charter School back in 2004, I went to work there as a

17    temporary employee for another agency.  During that period of

18    time, the head hired a new dean of administration, Jack Shoushy

19    (ph), and in my communications and observations of Dean

20    Shoushy, it was adamant that the school was not going to pay

21    overtime.  I have submitted several, I have submitted

22    documentation from another employee where the school is forcing

23    him to work overtime but not paying him.  When I went there as

24    a temporary employee for another agency, I immediately started

25    to work for the deputy director, Mary Lee, and there was a lot

1   of overtime, and so they were subject - because I did not

2   work for them, they had to pay overtime against my wages

3   through Ace employement.

4           At the end of, around August, I went there in May,

5   May 2004, August 2004, the dean, and they was paying this

6   company $18.95 an hour for my services.  Dean--

7           THE COURT:  What was the name of the company?

8           MR. STEVENSON:  Ace Employment.

9           THE COURT:  That's not the company you work for, the

10  defendant contracted with?

11          MS. STEVENSON:  Yes.  When I first got there, yes.

12          THE COURT:  And is that the, is that your company?

13          MS. STEVENON:  No, ma'am, that was not my company.

14          THE COURT:  Is that what the defendant is asserting

15  is the plaintiff's company?

16          MR. MILLER:  No, Your Honor.

17          THE COURT:  Okay.  I'll hear you on this.  Continue.

18          MS. STEVENSON:  Okay.  In August 2004, I was there,

19  and I'm trying to remember, and the dean and I spoke and he was

20  saying, you know, I could work independently.

21          THE COURT:  So right now, we're on the motion to

22  compel--

23          MS. STEVENSON:  Yes, ma'am.

24          THE COURT:  --production--

25          MS. STEVENSON:  Yes, ma'am.

1        THE COURT:   --documents and sanctions.

2        MS. STEVENSON:   Yes, ma'am.  I'll give you some

3    context.

4        THE COURT:   Just let me finish my statement.  The

5    defendant has stated that you will not produce documents

6    regarding a, your tax returns and documents regarding the

7    company that it contracted with which provided your services,

8    which was your company.  Are you saying that was not who the

9    defendant contracted with?

10       MS. STEVENSON:   No, ma'am.  We did not have a formal

11   agreement, and I told him in discovery, I have no formal papers

12   on this company.  It was name that had--

13       THE COURT:   Just a moment.  Was that your company

14   that the defendant is talking about?

15       MS. STEVENSON:   The Tuck NT?

16       THE COURT:   Yes.  That's the company, is that

17   correct?

18       MR. MILLER:   Yes, Your Honor.

19       THE COURT:   Now, the defendant has said that it wants

20   you to produce documents regarding that cmopany because you are

21   are who actually was that company; is that correct?

22       MR. MILLER:   She was the only employee of the

23   company.

24       THE COURT:   And that's who the defendant had an

25   agreement with and that the defendant can show it had an

1   agreement for your consulting or you employment with that

2   company.  The plaintiff is saying, I mean, the defendant is

3   saying it can show, it can prove that.

4            MS. STEVENSON:  There was no written agreement.

5            THE COURT:  There's no written agreement?

6            MS. STEVENSON:  In accordance--

7            THE COURT:  Just one moment.

8            MR. MILLER:  It was an oral agreement, Your Honor,

9   and our motion is directed at other documents that may be

10  related to the formation of the company or any other--

11           THE COURT:  So you're saying there was an oral

12  agreement?

13           MR. MILLER:  That's stipulated.

14           THE COURT:  The plaintiff is saying there was no oral

15  agreement, and what does plaintiff show that would say to the

16  Court there was an agreement with someone else and not your

17  company?

18           MS. STEVENSON:  I don't understand your question.

19           THE COURT:  You're saying, you're saying--

20           MS. STEVENSON:  See--

21           THE COURT:  No, if you don't understand then let me

22  explain.  You're saying that it was not your company.

23           MS. STEVENSON:  No, I'm saying we didn't have a

24  written agremeent and that the agreement--

25           THE COURT:  Right.  But they, but you may not have

I-11

1    had a written agreement, you may have only had an oral

2    agreement and the defendant is saying but that oral agreement

3    was with you and, what's the acronym for the company?

4              MR. MILLER:  Tuck NT, Your Honor.  Tuck NT.

5              THE COURT:  Tuck NT?  That's who the agreement was

6    with, Tuck NT and you were Tuck NT.  That's who the defendant

7    is saying that they agreed to employ.

8              MS. STEVENSON:  Well, Your Honor--

9              THE COURT:  And do you say yes or no?

10             MS. STEVENSON:  I am saying that is not the way it

11   transpired on campus between the dean and I.

12             THE COURT:  But, okay, but this is--

13             MS. STEVENSON:  So this is where he--

14             THE COURT:  This - see you're getting ahead of

15   yourself.  Defendant is saying that Tuck NT is you.

16             MS. STEVENSON:  Yeah, that's the name that was used

17   on the pay documents.

18             THE COURT:  Right.  Okay.  And it is saying you

19   won't, and this is the only issue, you won't produce any

20   documents relating to that company and you, tax returns,

21   information regarding that company, you won't produce.

22             MS. STEVENSON:  There are none, and I told him that.

23   There are none.  There was nothing filed and--

24             THE COURT:  Do you have any tax returns?

25             MS. STEVENSON:  Not in Tuck NT.

I-12

1          THE COURT:  Do you have personal tax returns?

2          MS. STEVENSON:  I have personal tax returns for me

3   but nothing that points out Tuck NT.

4          THE COURT:  Okay.

5          MS. STEVENSON:  I have no letters, no papers of

6   formation or incorporation and we've gone over this.  I don't

7   have that paperwork.  If whatever he's looking for--

8          THE COURT:  Okay.  Then let's start with that.

9   Plaintiff has said she has no documents that relate to the

10  formation or otherwise actions or otherwise of this company,

11  Tuck NT.

12         MR. MILLER:  Your Honor--

13         THE COURT:  It is now on the record.  What do you

14  respond.

15         MR. MILLER:  She has also on the record at deposition

16  admitted that her tax returns are available to her.  The income

17  that--

18         THE COURT:  Tax returns she does have.

19         MR. MILLER:  Her personal tax returns--

20         THE COURT:  Her own, right.

21         MR. MILLER:  --which she apparently reported the

22  revenue she received from--

23         THE COURT:  Right, I know.  We've heard her.

24         MR. MILLER:  Yes, Your Honor.

25         THE COURT:  So, with respect to the company, she says

1  she has no documents.

2          MR. MILLER:  She also said at deposition, Your Honor,

3  that she maintained business banking accounts.

4          THE COURT:  But she's now saying to the Court I have

5  no documents.  Do you understand what that means?

6          MR. MILLER:  Yes, Your Honor.

7          THE COURT:  And do you understand what that means?

8  That means, that means that if you say as you have just said

9  you have no documents, then as of this date, you cannot use any

10 documents related to that company on your behalf in the future

11 if they emerge because you have just said I don't have them.

12 So you understand that?

13         MS. STEVENSON:  Okay.  In terms of incorporation

14 papers?

15         THE COURT:  Right.

16         MS. STEVENSON:  And that's what you wanted,

17 incorporation--

18         THE COURT:  Anything, anything related to that,

19 anything that he has requested, that you've seen requested as

20 the defendnat did--

21         MS. STEVENSON:  Yeah.  Because I think he--

22         THE COURT:  You've got to provide those documents.

23 If you don't provide those documents, let this Court state for

24 you now, you can't use them against them later.  You will not.

25 You have to provide every document they have asked for in the

I-14

 1   request for production of documents period.

 2          MS. STEVENSON:  Okay.  From my understanding from

 3   their request in regard to Tuck NT, when I told them I did not

 4   have those documents, that's my understanding from what he

 5   asked and from what I understand he's asking for, I don't have

 6   them.  There was nothing elaborate about--

 7          THE COURT:  You can't, don't come back later and say

 8   you've got them because you can't use them.

 9          MS. STEVENSON:  Well, I don't have them.

10          THE COURT:  Okay, fine.

11          MS. STEVENSON:  Okay.

12          THE COURT:  Did you hear her, did you hear her say

13   it?

14          MR. MILLER:  I did, Your Honor.

15          THE COURT:  Okay.

16          MS. STEVENSON:  Okay.  Because all we have her is

17   what he's--

18          THE COURT:  Tax returns?

19          MS. STEVENSON:  No, these aren't, these aren't tax

20   returns.

21          THE COURT:  No, tax returns.  Your personal tax

22   returns?

23          MS. STEVENSON:  Yeah.

24          THE COURT:  They can get them.

25          MS. STEVENSON:  No, no, no, no.  I said the only

1  thing he has in regard to, is, is, that company is invoices

2  or time sheets.  Is that what you talking about because he has

3  those.

4         THE COURT:  You can read what he wants.  You know

5  what he wants.

6         MS. STEVENSON:  But I told him I don't have them.

7         THE COURT:  You're a very intelligent person.  You

8  can see what he wants by what he asks for, and you give him

9  every document that he has asked for, every document that he

10  has asked for, period.  There's no issue here.  There's no

11  issue in this case.

12         MS. STEVENSON:  I just want to make sure you're not

13  wiping out documents they already have.

14         THE COURT:  Oh, documents they already have they

15  don't need to have again.  Any other documents--

16         MS. STEVENSON:  I don't have anything what--

17         THE COURT:  You don't have anything else, that's

18  fine.

19         MS. STEVENSON:  I don't have any tax returns that say

20  Tuck NT on them.

21         THE COURT:  If you have personal tax returns--

22         MS. STEVENSON:  I have personal?

23         THE COURT:  --you produce them, period.

24         Now, let's move on to the next issue.  You have no

25  documents with Tuck NT but you have personal tax returns,

1    produce them.

2              MS. STEVENSON:  But they had no--

3              THE COURT:  They're correct.

4              MS. STEVENSON:  --they don't show Tuck NT.

5              THE COURT:  It doesn't matter.  Those personal tax

6    returns will show your income in other matters that are

7    discoverable, that the defendnat is entitled to.  So that is

8    this Court's rule.

9              Now, let's go onto the next motion.  The next motion

10   is your motion for Rule 11 sanctions.  You may be heard on

11   that.  You may be heard on that motion.

12             MS. STEVENSON:  Okay, my Rule 11 sanctions.  Oh, I

13   don't have it in front of me here, but basically what my

14   concern is that the defendant - Rule 11.

15             THE COURT:  Argue it.  That's why you're here for a

16   hearing on all of these motions.

17             MS. STEVENSON:  Can we skip that and go to the - I'm

18   trying to recall what Rule 11 is.  Would you read it to me?

19             THE COURT:  Do you want me to tell you what your

20   motion said?  Okay.

21             MS. STEVENSON:  No, no, no.  What does Rule 11--

22             THE COURT:  No, here is what your motion says.  Your

23   motion is against the defendant claiming that the defense

24   counsel knowingly lied to the Court in defending their client,

25   and basically you should know this because you filed it.  It

1   says that they lied to the Court in defending their client

2   because they knew their client willfully violated the law.

3           MS. STEVENSON:  Oh, yes.  Yes, and I filed some

4   attachments there with it--

5           THE COURT:  Uh-huh.

6           MS. STEVENSON:  --because, the attachment will show

7   that the defendant, my ex-employer had, willingly knew or did

8   not care and stated openly that they did not care about any

9   federal laws or state regulations in regard to employees or

10  compliance, and--

11          THE COURT:  Okay.  Go on.

12          MS. STEVENSON:  --and in that also there are

13  documents that shows that, and I have some of them here from

14  the defendant's own files and they're the same files I

15  received, is that when I was paid, even though they paid me

16  under the name of Tuck NT, my wages were charged just as other

17  employees' wages were, and my vacation was accrued just like

18  other employees' vacation was accrued, and sick time was

19  allotted and personal days were allotted, and my, my contention

20  is, you know, they may say independent contractor, but they

21  treated me and I was an employee.  There are two documents I

22  have here that is a final letter that I got from the dean and

23  that was the first time I ever knew of any issues in terms of

24  performance over the last day of my employment, but the day

25  after that he sent out a letter to the staff.  He never

1   mentioned that Janice was an independent contractor and that

2   her company is no longer with the school.  So, you know, the

3   attorneys say one thing, but they also know from their client's

4   actions that it could not be true.

5           THE COURT:  Thank you.  I'll hear from the - you can

6   be seated.  Let me hear from the defendant.

7           MR. MILLER:  Your Honor, as reflected in our papers,

8   we believe that the Rule 11 motion Ms. Stevenson has filed is

9   utterly without merit and she does, in fact, essentailly seek

10  sanctions against us for defending our client.  It is our

11  contention that she was an independent contractor of the

12  school.  We believe that's supported by the documentary record.

13  It's also our contention that had she been an employee of the

14  school, she would have been exempt under the white color

15  exemptions to the statute.  There's nothing asserted in bad

16  faith.  And in fact, it's Ms. Stevenson's motion that's

17  asserted in the utmost bad faith.  The documents that she

18  referred to that she attached to her motion, she

19  surreptitiously altered.  In submitting to this Court, she

20  redacted a line from the email that she attached as Exhibit 1,

21  and the full copy is attached as an exhibit to our oppposition

22  to her motion, in attempts to deceive this Corut about the

23  nature of the conversations that she just referred to, and we

24  believe that this motion was filed essentially in retaliation

25  for our efforts to secure discovery from Ms. Stevenson and that

1   it is a plain waste of this Court's time and it's abusive to

2   the school and it's caused us to expend additional completely

3   unnecesary resources and deprived the school of funds that

4   should be devoted to its charitable mission.

5            MS. STEVENSON:  Your Honor, may I respond?

6            THE COURT:  You may.

7            MS. STEVENSON:  Your Honor, there is no one person

8   who's on the payroll in error and that's what he's saying, and

9   that email I say was my employer's attitude.  You know, we,

10  this employer routinely classified employees where they would

11  not receive overtime, just like they did me, but every

12  mechanism they use in order to scurt the law as the dean said

13  or to make, or to make it easier for the school to operate with

14  less money, that's what they did.  That email was not redacted.

15  That is the codified policy of that school.  The penalties

16  aren't that great.  The penalties aren't that bad because they

17  had lawyers.  They had Sullivan Worcester who sits on their

18  board or make them hire a number of lawyers who can defend them

19  because they know with these lawyers there's not going to be a

20  lot of penalties that they're going to have to pay or be

21  assessed against.  And, you know, this is, that's common

22  knowledge to me.  So when I have an attorney who can look at

23  the record, and they're not unexperienced attorneys, but when

24  you have attorneys who can look at the paperwork under a

25  federal law such as the FLSA, and then say they did no wrong, I

1    know better than that.  I know I personaly, I know I

2    personally sat in the dean's office and we did not, the people

3    would bring the time sheets up that had overtime on it.  He

4    would send it back to them and say fill out a new one.

5                THE COURT:  Ms. Stevenson?

6                MS. STEVENSON:  Yes, ma'am.

7                THE COURT:  I understand that you're pro se, but

8    you're motion is totally, totally misplaced.  It is not only

9    misplaced, as counsel says, you're bringing a Rule 11 motion,

10   and from what the Court gleans from reading what you said, you

11   clearly must not understand Rule 11 because your motion is not

12   only misplaced, it is prodedurally defective.  You didn't give

13   counsel 21 days notice, which you were supposed to do under

14   Rule 11, but more than that, you bring this motion because

15   counsel is representing one thing and you're representing

16   another.  You can't do that.  This motion, I mean, you brought

17   this action against them.

18                MS. STEVENSON:  Yes.

19                THE COURT:  Rule 11 says, talks about the

20   frivolousness of an action.  You brought the action against –

21   their defense isn't, if you wanted to say their defense is not

22   frivolous, but you didn't give them, first and foremost, it was

23   procedurally defected.  Secondly – because you didn't give them

24   21 days.  Do you understand that?  You didn't give them 21

25   days.

1              MS. STEVENSON:  But, Your Honor--

2              THE COURT:  No, you didn't give them 21 days.  You

3    didn't.

4              MS. STEVENSON:  But, Your Honor, when they--

5              THE COURT:  If you wanted to bring a Rule 11, you had

6    to do that and you didn't do it.

7              MS. STEVENSON:  But, Your--

8              THE COURT:  But number two, number two, it's totally

9    misplaced.

10             MS. STEVENSON;  But, Your Honor, I think Rule 11 says

11   if there's, like they're making a false statement.

12             THE COURT:  Wrong, denied.

13             Motion for terminating sanctions or in the

14   alternative to compel deposition testimony.  Let me hear from

15   defendant.

16             MR. MILLER:  Your Honor, that motion, as I mentioned

17   earlier, relates to Ms. Stevenson's utter and stubborn refusal

18   to participate in her depsotion which we believe is her

19   culmination of her refusal to participate in this case and

20   warrants the dismissal of this action along with her other

21   frivolous filings.  In addition to flatly refusing to answer

22   simply background questions, icnluding questinos about her

23   residential address, she, for example, told me she didn't know

24   whether she had a home.  She didn't know where she had slept

25   the night before.  She didn't know how she had gotten to my

1  office.  She refused to tell me where she went to high

2  school because she said she didn't want me investigating her

3  background.  That's the beginning of it, and I thinkt he first

4  25--

5          THE COURT:  Well, where she went to high school, what

6  does that have to do with it?

7          MR. MILLER:  Well, her education is relevant to her--

8          THE COURT:  I mean, that's one question.  If you're

9  going to talk about some depsotion questions, let's talk about

10  some serious deposition quesitons.

11          MR. MILLER:  You're right, Your Honor.  That's just

12  one example.  The ones that are the most serious for purposes

13  of this case relate to the services that she performed for the

14  school and where and how she performed them.  She refused to

15  tell me whether or not she owned a computer during the period

16  of time her company was engaged by Neighborhood House Charter

17  School.  She refused to tell me whether or not she had internet

18  access in her residence at that time.  She refuses to tell me

19  whether she had performed work for the school from her home,

20  all of which is relevant to her indpendent contractor status

21  and to the hours she claims to have worked for the school.

22          In addition, she completley refused to look at

23  documents that I placed before her as exhiibts to her

24  depsotion.  She refused even to set eyes on them and cut off

25  entire lines of questionning that related to, among other

1  things, her attendance at law school, which is centrally

2  relevant to this case because she was providing legal

3  compliance advice to the school among other things, and she

4  simply refused to participate.  She asserted completely

5  inapplicable constitutional priviledges, which I explained the

6  school's position that those had no bearing.  She claimed that

7  the information that we were seeking was irrelevant.  I went so

8  far because of her pro se status as to mark a copy of Rule 30

9  and talk her through the appropriate scope of an objection and

10  the fact that testimony is taken at deposition subject to the

11  objections and she could not refuse to testify based on

12  relevance.  And she persisted and she cut off entire areas of

13  discovery that are centrally relevant to this case, again,

14  causing the school to expend thousands and thousands of dollars

15  in resources and utterly blocking us from mounting an effective

16  defnese in this matter.  It's not even such that we can ask the

17  Court to give us the inference that might be had based on her

18  assertion of inapplicable priviledges because we can't even get

19  at the underlying basic information about for example her

20  educationsal history, the tools she used to do the services

21  that she performed for the school and such.  The cases that are

22  cited in our motion establish that it is well within #3:43:05

23  of the Court to dismiss the plaintiff's claim for misconduct

24  that is much less serious, and to dismiss the claim of a pro se

25  plaintiff in similar circumstances.  And we would certianly ask

1  that if the Court is disinclined, notwithstanding the

2  Stevenson's long pattern of misconduct in this case, the Court

3  is disinclined to dismiss the claim that she be ordered to pay

4  substantial monetary sanctions to the school because as I've

5  mentioned a couple of times, she's caused unbelievable

6  distraction and expense to a public resource, and the only way

7  that she will be deterred from continuing this patern, which

8  has gone on not only in this court but in the bankruptcy court

9  and in seven adminsitrative agencies, is if she is forced to be

10  accountable for her actions and the expense that she's causing

11  the school.

12          THE COURT:   Questions on the deposition,

13  Ms. Stevenson, you know you are to answer questions on a

14  deposition.  You may make an objection but you answer the

15  question, you make an objection and then you bring those

16  objections to the Court at the appropriate time, but not, you

17  can't refuse to answer question at a deposition.

18          MS. STEVENSON:   Well, Your Honor, the case in – well,

19  this is an overtime payment case, and my, when I went to the

20  deposition, I thought they wanted to get to the heart of the

21  deposition, and as I told him, when I went to work for my

22  ex-employer, you know, there was no background check.  There

23  was no, or address verification check, but they didn't care

24  where, they didn't ask well, where do you live?  Do you have

25  the necessary tools to do overtime?  And that is what I told

1   him.  I says, if I went up to Lasser University and used

2   their computer room to finish my work, or I went over to the

3   women's center in Cambridge, or I used another public access

4   computer, Neighborhouse didn't care.  They didn't question it.

5   I did it when it was, if I had some work to do and I took it

6   home--

7          THE COURT:  But those questions, those kinds of

8   questions merit and warrant an answer.  Well, I went to such

9   and such and I used their, this is where I got--

10         MS. STEVENSON:  I told him that, but when he, when he

11  wanted to know - I told him this, wherever, if I worked off

12  site or I worked over, if I worked off site or after hours, I

13  was saying that when I came back Monday the work was done and

14  no one--

15         THE COURT:  But if he said, well, what did you do,

16  you can answer that question.

17         MS. STEVENSON:  I did.  I told him if I did payroll

18  because I was--

19         THE COURT:  give me an example of what she didn't

20  answer?

21         MR. MILLER: Your Honor, in that vain, she refused to

22  tell me whether she had access for example to payroll

23  information from her residence.  Essentially questions that are

24  targeted at the resources she aintained at her home to provide

25  sservices like the services shed provide ffor the school, and

1  that is directly relevant--

2            THE COURT:  You're supposed to answer that question.

3            MS. STEVENSON:  No, ma'am.  It's broad based--

4            THE COURT:  Did you just tell me no?

5            MS. STEVENSON:  Yes, ma'am.  Yes, ma'am.  I told him,

6  he says did you acess from home?  It's a web based program.

7  You can access it from anywhere in the world.  I can go up to,

8  if I had access right now, we could access--

9            THE COURT:  Did you tell him what the web based

10  system was?

11            MS. STEVENSON:  I assume he knew?

12            THE COURT:  No, don't assume anything.  Don't assume

13  anything.  When, from now on, you go back to that deposition

14  and when the defendnat asks you the question, you answer it.

15  You don't assume anything.  You answer, you answer the

16  question.

17            MS. STEVENSON:  Well, let me ask you this, Your

18  Honor—

19            THE COURT:  No, we don't need to, we don't need to be

20  asking the court question.  You need to – let me tell you,

21  Ms. Stevenson, in reading this and in reading the papers in

22  this case, the district judge didn't dismiss this case at this

23  point, and there will be a point when you can file, I

24  understand you tried to mediate it and didn't, that's too bad,

25  because this, from what this Court has seen, you have used

1   dilatory tactics, you have refused to give information, you

2   have clearly submitted frivolous motions, and your behavior,

3   while the Court always should give a pro se plaintiff some

4   leeway and some room, you've had a house.  You had a house.

5   You have tried in every instance that the defendant has asked

6   for information, you haven't given it to them because you, as

7   you said, I assume they knew.  I don't like this question.  I

8   don't think they ought to have this.  Yes, they should. Once yu

9   have decided this case is going forward, as you have, then you

10  object, you can sit at the depsotion, you can say, I don't like

11  this question, high school, I don't like this questin, I

12  object, but I'll answer it.  I object.  You can object as much

13  as you please, but you must answer the question.  That's the

14  rule.  You must answer the question, and if you do that, this

15  case will move faster.  If you provide the infromation that you

16  haven't provided, it will move faster, because you must

17  understand that if you refuse to give information that the

18  plaintiff (sic) asks for, then you can't later on come back and

19  say, well I have this document, which is the document they

20  requested.  You can't use it because you didn't give it to them

21  when they asked for it.

22         So I will issue and order and I will write everything

23  out so you'll understand, and you need to within 14 days of

24  today, so that we won't have any question about when you need

25  to give information, testimony or documents, you have 14 days

1  from today to provide any documents you haven't produced,

2  you have 14 days from today to answer any interrogatory

3  questions, and the Court is going to take the issue of

4  sanctions under advisement.  I'll issue an opinion on sanctions

5  in this case, but that's the, that's where the Court, where the

6  Court is on this.  Your motion, for example, to compel payment

7  of vacation wages is ultimately your dispostive motion.  It's

8  like a motion for summary judgment.  It isn't a discover

9  motion.

10          MS. STEVENSON:  Vut no it's not a discovery motion at

11  all.

12          THE COURT:  No, but you presented it.  It's not so -

13  the Court won't even, won't even, we won't even deal with that

14  because it's not a discovery motion.  It is a--

15          MS. STEVENSON:  It wasn't intended to be a discovery

16  motion.

17          THE COURT:  --dispositive motion, but in terms of—

18          MS. STEVENSON:  What do you mean dispositive?

19          THE COURT:  --in terms of - the Court is not dealing

20  with it because that's treated as a motion for summary

21  judgment.

22          MS. STEVENSON:  oh.

23          THE COURT:  That's what dispositive means.  But in

24  terms of the other motions in this case, production of

25  documents, which the Court allows, the motion for Rule 11

1  sanctions, which the Court denies, and deposition testimony,

2  which you will answer, so the Court allows.  Do you have a date

3  for your deposition scheduled?

4         MR. MILLER:  I don't, Your Honor.  What I would

5  propose is if she's going to have 14 days to produce documents

6  that we be given a reasonable period of time thereater to

7  prepare.

8         THE COURT:  You need to do that today.  You need to

9  do that while we're in here.  You need to figure out a day--

10        MR. MILLER:  You want to schedule the deposition?

11        THE COURT:  --when you can do this, continue this

12  deposition.

13        MS. STEVENSON:  If he can put these in writing and I

14  can just fill in the blanks and send them back to him.

15        THE COURT:  No, he's taking a deposition.  He has

16  every right to do that.  No.

17        MS. STEVENSON:  Oh, oh, the questions I didn't

18  answer?

19        THE COURT:  Right.

20        MS. STEVENSON:  Well, let me ask you this, he also

21  wants me to produce documents from the other attorney and, but

22  it's the same defendant.  It's the defendant's papers.  We have

23  been in several adminsitrative proceedings together and you had

24  one set of attorneys filing papers and from those proceedings I

25  go and I'd get to file--

1          THE COURT:  Well, you get any documents you might

2    have given someone else?

3          MS. STEVENSON:  No.  They're all from this Sullivan

4    and Worcester.

5          THE COURT:  Did you give them any documents?

6          MS. STEVENSON:  I didn't give them anything.  It's

7    information, # date and I asked for information and they got it

8    from them and I use it in my proceedings but we have, this is

9    their paperwork.  He says they don't talk to each other, but he

10   wants me to produce.

11         THE COURT:  No, they don't.

12         MR. MILLER:  Your Honor--

13         MS. STEVENSON:  And I don't think that's right.

14         MR. MILLER:  --I think the point of confusion is

15   this, Ms. Stevenson has commenced a number of administrative

16   proceedings against the school, roughly seven, in addition to a

17   lawsuit and she's attempted to implead us in her bankruptcy.  I

18   asked her at depsotion to produce documents that she had filed

19   with various courts and adminsitrative agencies—

20         THE COURT:  Right.

21         MR. MILLER:  --and she, because Sullivan and

22   Worcester was party to some of those, didn't want to produce

23   them again, but in fact, many of the documents that she's

24   submitted, she submitted ex parte, and we don't even know what

25   she submitted, so we just asked--

1    THE COURT:  If she, have I made this clear, this

2   case will stand or fall as Ms. Stevenson needs to know today on

3   her keeping information from you that she has in her

4   possession, custody or control.  If, for example, she provided

5   documents and then doesn't give them or says I didn't and did

6   or says later here I found them, no, not admissible against

7   you.

8    MR. MILLER:  Our concern, Your Honor, is that the

9   burden of proof is ours on the administrative exemption.

10    THE COURT:  Well, counsel, I'm sure you know better

11   than anyone needs to tell you how to defend a case.

12    MR. MILLER:  Certainly, Your Honor.

13    THE COURT:  Okay.

14    MR. MILLER:  But much of the information--

15    THE COURT:  And I understand that this case has been

16   very difficult, but Ms. Stevenson can't win a case either if

17   she can't, she has the burden of proving this case, so let's

18   not get, let's not let this thing have everybody upsidedown.  I

19   will write an order.  I will take the issue of sanctions,

20   because this Court considers sanctions in this case to be

21   really serious, to be really serious.  There's gamesmanship

22   going on here.  Not legal gamesmanship.  There's games going on

23   in this case.  I can see it and the Court will talk about it.

24    MS. STEVENSON:  Your Honor, may I also say something

25   else?

1          THE COURT:  About what?

2          MS. STEVENSON:  Discovery.

3          THE COURT:  No, you are to produce whatever it is

4    that the defendant asked for, period, period.

5          MS. STEVENSON:  Ma'am, but if we were--

6          THE COURT:  Period.

7          MS. STEVENSON:  --parties in the same administrative

8    proceedings, why is it on me to give him the same, the

9    documents we were in there together.

10         THE COURT:  That's what happens when you have, when

11   you have a case.

12         MS. STEVENSON:  But we were there together.

13         THE COURT:  That's what happens.

14         MS. STEVENSON:  It's their documents.

15         THE COURT:  That's what happens.  They're not asking

16   for their documents.  They're asking for documents that you had

17   produced, period.  They're not asking for their own documents.

18   They are asking for documents you produced.  As the Court has

19   just indicated, the Court will take the matter under, the

20   matter for snactions under advisement.  The Court has issued

21   with respect to the defendant's motion to amend, the Court will

22   allow the motion to amend this case, given the mediation

23   sessions and given all of the rulings, and so the Court will

24   amend the scheduling order.  Defendant should submit an amended

25   order.

1    What the Court, however, does want to do before we

2  leave here is to have a date for the depsotion.

3         MR. MILLER:  And Your Honor said that Ms. Stevenson

4  is to produce documents with 14 days?

5         THE COURT:  14 days.

6         MR. MILLER:  Today being the 6th--

7         MS. STEVENSON:  And that's just the tax documents,

8  right?

9         THE COURT:  Please be seated everyone.  All the

10  information that the defendant has requested that you haven't

11  produced.

12         MS. STEVENSON:  Well, Your Honor, this is what I'm

13  trying to tell you, when I went back to get some documents they

14  wanted--

15         THE COURT:  Please be seated.

16         MS. STEVENSON:  --the  #3:56:11 gave me some

17  documents they say aren't admissible.  I can't present these

18  to--

19         THE COURT:  No, you can present whatever the

20  defendant has asked for, period, period.  Now, when are we

21  going to do this depsotion?

22         MR. MILLER:  I would prpose December 8th, Your Honor.

23         THE COURT:  December 8th, Ms. Stevenson?

24         MS. STEVENSON:  I don't know.  I don't have a

25  calendar.

1          THE COURT:  Well, let me say then right now,

2   December 8th.  That is when your deposition will be taken--

3          MS. STEVENSON:  No.

4          THE COURT:  --which is Friday, December 8th.

5          MS. STEVENSON:  No, we have bankruptcy that day,

6   don't we?  No it's a Thursday.  Not it's the 14th, I believe.

7          THE COURT:  Okay.  So it's December 8th.  Okay.

8          THE CLERK:  Court is adjourned.

9   (Court adjourned)

10  //

11  //

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

## STEVENSON V. NEIGHBORHOOD HOUSE CHARTER SCHOOL>

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

* * * * * * * * * * * * * * * *

JANICE STEVENSON
                    Plaintiff

        VERSUS                          CA-05-11584-DPW

NEIGHBORHOOD HOUSE CHARTER
    SCHOOL

                    Defendant

* * * * * * * * * * * * * * * *

BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

UNITED STATES DISTRICT COURT JUDGE

STATUS CONFERENCE

JANUARY 23, 2007

APPEARANCES:

JANICE STEVENSON, Post Office Box 400372, Cambridge,
Massachusetts  02140, in proper person

BARRY J. MILLER, ESQ., Seyfarth, Shaw, LLP, Two Seaport
Lane, Suite 300, Boston, Massachusetts  02210, on
behalf of the Defendant

                        Courtroom No. 1 - 3rd Floor
                        1 Courthouse Way
                        Boston, Massachusetts  02210
                        10:15 A.M. - 10:45 A.M.

            Pamela R. Owens - Official Court Reporter
            John Joseph Moakley District Courthouse
                1 Courthouse Way - Suite 3200
                Boston, Massachusetts  02210

1224d3e8-d8aa-4fee-aa71-63e20aa285df

## STEVENSON V. NEIGHBORHOOD HOUSE CHARTER SCHOOL>

Page 2

1    THE COURT: Well, I have a series of motions here.
2  But I want to step back a bit first and understand from both
3  parties' perspectives what's going to be necessary to get this
4  to judgment here. Mr. Davis, is it?
5    MR. MILLER: Mr. Davis has withdrawn, Your Honor.
6  He was Ms. Stevenson's former counsel.
7    THE COURT: I'm sorry.
8    MR. MILLER: I'm Barry Miller here for Neighborhood
9  House Charter School.
10   It is our position, Your Honor, that this case has
11 become an intractable mess because of Ms. Stevenson's pattern
12 of misconduct in this matter and in several related matters.
13 And we believe that Magistrate Judge Alexander's order of
14 November 7th served as last and final warning to Ms. Stevenson
15 that her conduct up to that point had been inexcusable and
16 would not be tolerated further. And starting days after
17 Magistrate Judge Alexander entered that order, Ms. Stevenson
18 not only continued her pattern of behavior, but actually
19 escalated her antics. She continued to file frivolous motions
20 against the school in this forum and in the Bankruptcy Court
21 because she knew she had worn out her welcome here. She
22 disregarded Magistrate Judge Alexander's clear instruction that
23 she produce specifically designated documents and she willfully
24 failed to appear for her deposition.
25   THE COURT: I understand that larger position. But

Page 3

1  assume that this is going to be resolved on the merits. What
2  needs to be done?
3    MR. MILLER: Your Honor, in order for us to respond
4  to the substance of the claims that Ms. Stevenson has asserted,
5  we have to be able to take discovery. We have to get a
6  meaningful document production from her. She's in control of
7  most of the documents relating to the case. Because one of the
8  central issues here is whether her company through which she
9  provided services to Neighborhood House Charter School was an
10 independent contractor or whether she was, in fact, an employee
11 directly of the school.
12   THE COURT: But is it simply discovery from her and
13 the associated document requests -- that is, document requests
14 from her? Is there anything else? Is it all focused on
15 Ms. Stevenson?
16   MR. MILLER: It's almost entirely focused on
17 Ms. Stevenson, including deposition testimony which she has
18 refused to give up to this point.
19   THE COURT: All right. Ms. Stevenson?
20   MS. STEVENSON: Before I address that, I've been
21 trying to obtain the transcript from the hearing the Magistrate
22 had. And on the docket, it referred to a phone number and
23 person. And I've been trying to contact that person to get a
24 copy of the transcript. And I believe they're within this
25 court. Can you tell me how I can get a transcript of that

Page 4

1  hearing? I sent the E-mail to Ms. Rowland. So, I wanted to
2  bring that up. But in regards to --
3    THE COURT: Magistrate Judge Alexander was pretty
4  clear on what she ordered.
5    MS. STEVENSON: Well, no. I want the transcript of
6  the --
7    THE COURT: Well, that's fine. You can go get the
8  transcript. And Ms. Rynne will help you, although I think it's
9  pretty clear how one goes about ordering a transcript. But
10 that's immaterial at this point.
11   MS. STEVENSON: Yeah. But --
12   THE COURT: The question is whether or not you're
13 going to comply with Judge Alexander's orders.
14   MS. STEVENSON: Your Honor, I have submitted
15 documents and I have tried to bring to this Court's attention
16 and the Bankruptcy Court's attention that the documents they
17 request I don't have. And the ones I have, I have given to
18 them.
19   THE COURT: So let me be clear about this. Your
20 position is that there are no other documents?
21   MS. STEVENSON: The ones she ordered, I have
22 submitted to this Court and to them.
23   THE COURT: All right. So that's her position.
24 What do you say? Is there anything else?
25   MR. MILLER: Your Honor, she made that same

Page 5

1  representation to Magistrate Judge Alexander. And she has
2  since attached documents to her filings in this matter and in
3  other matters that are directly responsive to our request that
4  she had not prior produced. She attached documents to her
5  motion for summary judgment that she filed in this Court on the
6  day that she was supposed to be sitting for her deposition.
7  And attached to that pleading were documents that were
8  responsive --
9    THE COURT: Okay. Well, let's just pause for a
10 moment. Are there any other documents -- any other documents?
11 Because if there is another document and it's produced late or
12 I'm shown that there is another document, I'm going to hold you
13 in contempt. So, think long and hard. Are there any other
14 documents responsive to Judge Alexander's order that you have
15 not yet produced?
16   MS. STEVENSON: I think -- I feel like I have
17 produced everything she's --
18   THE COURT: I'm taking that as your representation,
19 there are no other documents.
20   MS. STEVENSON: Yeah, because she only wanted three
21 documents -- tax forms, the calendar, and I forgot what the
22 other one is. But I produced three.
23   THE COURT: I don't really care what --
24   MS. STEVENSON: But the point is this.
25   THE COURT: -- you've produced in the past. Let me

JANUARY 23, 2007>

1224d3e8-d8aa-4fee-aa71-63e20aa285df

## STEVENSON V. NEIGHBORHOOD HOUSE CHARTER SCHOOL>

**Page 6**

1  be clear about this, Ms. Stevenson. Now the time has come. If
2  you tell me that you have complied fully with Magistrate Judge
3  Alexander's orders, that all the documents have been produced,
4  then I'll accept that representation. If I find that that
5  representation is wrong and the defendants can show to me
6  either that there are documents that you didn't produce or you
7  continue to produce in some other forum or even in this forum
8  documents that were responsive, I'm going to hold you in
9  contempt.
10      MS. STEVENSON: Okay.
11      THE COURT: Do you understand?
12      MS. STEVENSON: I understand.
13      THE COURT: Okay. So --
14      MS. STEVENSON: But I --
15      THE COURT: Just a moment. Now, no extra
16  discussion about it.
17      MS. STEVENSON: It's not a discussion. I want to
18  know why on the documents I produced that has determined
19  that -- I really feel there is no other issue involved if --
20      THE COURT: We're going to get to that, but we're
21  going step by step. And the first step is the documents. You
22  tell me and you've represented to me on pains that I will hold
23  you in contempt and I should add enforce as sanction the
24  dismissal of the case if new documents appear.
25      MS. STEVENSON: Well, Your Honor, if you're going

**Page 7**

1  to dismiss the case on documents that show that the defendant
2  had never ascertained their claim that I was an independent
3  contractor, doesn't that go against what the overtime wage law
4  stands for?
5      THE COURT: You're talking about something entirely
6  different.
7      MS. STEVENSON: I am? I think we're talking about
8  the same thing. Because in my mind --
9      THE COURT: Ms. Stevenson --
10      MS. STEVENSON: -- to me --
11      THE COURT: Ms. Stevenson, let me be clear. I'm
12  going to go step by step.
13      The first step is the documents, whether or not you
14  have produced all of the documents. That's all we're talking
15  about right now. I'm going to go to the next step.
16      MS. STEVENSON: Okay. Well, why -- may I --
17      THE COURT: Are you going to listen to me or not?
18      MS. STEVENSON: Well, I --
19      THE COURT: Are you going to listen to me or not?
20  No. Please step back. Are you going to listen to me or not?
21      MS. STEVENSON: I'm listening.
22      THE COURT: Okay. I've just told you the first
23  step. You will have adequate opportunity to address me on
24  other matters. But this case has been transformed into a
25  mess. And it has been transformed into a mess because of

**Page 8**

1  various actions that you have taken. Now, I intend -- as
2  Magistrate Judge Alexander did -- to clarify this so that we
3  can get to the merits so that the respective positions of the
4  parties may be fairly evaluated. But I'm not going to let
5  somebody interfere with that process. And I want to be as
6  clear as I can what the consequences are.
7      First, the documents. So, that's where we stand on
8  the documents.
9      MR. MILLER: Your Honor --
10      THE COURT: You understand --
11      MR. MILLER: Yes, Your Honor.
12      THE COURT: -- that you're going to have to
13  demonstrate to me that there were documents produced afterwards
14  or you have a basis for believing that there are other
15  documents that she has not produced.
16      MR. MILLER: If I could clarify, Your Honor, she
17  has apparently -- and I haven't seen them. But it's my
18  understanding that she filed documents with the Court,
19  including her tax returns and perhaps some journals that were
20  at issue in the case that we don't yet have.
21      THE COURT: Have you provided them for defendant?
22      MS. STEVENSON: Yes, sir. And I have proof that I
23  sent them to him. I sent them electronically.
24      THE COURT: No. There were a large number of
25  documents.

**Page 9**

1      MS. STEVENSON: Yes. When they sent me the E-mail
2  after they received this document, they never told me -- and I
3  have the E-mail here with it. They never told me after they
4  received this document that there was some missing. I didn't
5  know about their alleged missing documents until they wanted to
6  file a supplemental brief. And I have that E-mail here with me
7  from them.
8      THE COURT: The docket reports as follows with
9  respect to your motion for summary judgment: "Motion for
10  summary judgment by Janice Stevenson. Exhibits voluminous and
11  unscanned," which means that they weren't sent by electronic --
12      MS. STEVENSON: No, no, no, no, no. I brought
13  those in here, because I don't have access to what attorneys
14  do. But they can --
15      THE COURT: Did you provide them to --
16      MS. STEVENSON: Yes.
17      THE COURT: -- the defendants? You provided those
18  documents to the defendants?
19      MS. STEVENSON: Yes. I E-mailed him those
20  documents.
21      THE COURT: You E-mailed the documents to the
22  defendants?
23      MS. STEVENSON: I E-mailed all of them. Everything
24  I have sent to him has been by E-mail.
25      MR. MILLER: Your Honor, she did send me a series

3  (Pages 6 to 9)

1224d3e8-d8aa-4fee-aa71-63e20aa285df

STEVENSON V. NEIGHBORHOOD HOUSE CHARTER SCHOOL>

Page 10

1   of six E-mails attaching essentially the same thing over and
2   over again. As I understand it, what she has sent to me is
3   some small fraction of what she filed with her papers.
4        THE COURT: When you say as you understand, what's
5   the basis for that understanding?
6        MR. MILLER: When she filed those papers, I had a
7   discussion with Ms. Rynne about what was filed because it was
8   clear that what she served on me was different from what she
9   had served on the Court. And we had concerns about some of the
10  specific documents that we thought she may have filed because
11  she was, in fact, sanctioned by the Bankruptcy Court from
12  filing those specific documents because they are confidential.
13  And as I understand it -- and, again, I have not seen what she,
14  in fact, filed with the Court and it's not available online.
15  But as I understand it, the documents she produced to the Court
16  or filed with the Court include some journals that she
17  submitted to the U.S. Department of Labor and various other
18  materials. What she has produced to me are her tax returns and
19  only in part and excluding the documents that are most relevant
20  to her claim in this case, including Forms W-2, Forms 1099, and
21  things like that. We don't have the journals and we don't have
22  the various other documents she was ordered to produce.
23       THE COURT: All right. So you go look at the court
24  file. That's how you're going to get access and make the
25  determination of whether or not she actually served on you all

Page 11

1   of the materials that she said she did. She says that she
2   served on you by E-mail all the documents that were produced in
3   connection with the motion for summary judgment. I take that
4   as a representation. If it's inaccurate, it will be grounds
5   for contempt. Do you understand?
6        MS. STEVENSON: Yes. I have the E-mail.
7        THE COURT: No, no. What's going to happen is
8   counsel is going to look at what's on file in this Court.
9        MS. STEVENSON: Yes.
10       THE COURT: And then he's going to show, if he can,
11  that there is some difference. And you'll have an opportunity
12  to respond. But you don't get to say things in this Court
13  without consequences. And you have represented to me that
14  everything that is on file in connection with the Motion for
15  Summary Judgment was served on the other side.
16       MS. STEVENSON: That's right, electronically.
17       THE COURT: Okay. I heard what you had to say.
18       MS. STEVENSON: That's right.
19       THE COURT: And I've told you what the consequences
20  will be if you have been inaccurate.
21       MS. STEVENSON: Well, I know what you sent to him I
22  left here. That's all I can say.
23       THE COURT: Okay. Well, you've said it. Now that
24  deals with the documents.
25       Now the question of her deposition?

Page 12

1        MR. MILLER: Yes, Your Honor. Magistrate Judge
2   Alexander specifically ordered Ms. Stevenson to appear for
3   deposition having found that she unjustifiably failed and
4   refused to participate in the first two sessions of her
5   deposition. She ordered it for date certain for December 20th
6   after accommodating Ms. Stevenson's schedule and allowing her
7   to reschedule it for a date that she had not been available on.
8   Ms. Stevenson failed to appear without justification, notice,
9   or excuse. And in fact, it appears that she was at this
10  courtroom filing documents on the day that she should have been
11  in our offices a few hundreds yards from here sitting for her
12  deposition. And as a result, my client, which is a charitable
13  educational organization, has been forced to expend thousands
14  more dollars on top of the tens of thousands of dollars that
15  it's already extended in this case for no justifiable reason.
16  And we believe that that alone stands for grounds for a
17  significant sanction against Ms. Stevenson.
18       THE COURT: Okay. Why didn't you show up for the
19  deposition?
20       MS. STEVENSON: Your Honor, I came across documents
21  and I produced documents that, according to the law, if you can
22  produce evidence with affidavits that show there is no issues
23  of fact that can be -- that could no longer -- that the
24  defendant can no longer claim and I came to the Court and I
25  submitted those documents because there is no issue now if they

Page 13

1   claim I was independent contractor -- and the issue is was I
2   depending on this person as an employer -- and I show through
3   my documents and my affidavit that I truly was dependent, I had
4   no other income -- outside of my employment with this --
5        THE COURT: Let me cut you short, because you've
6   got to answer my question: Why didn't you show up for the
7   deposition? You were ordered to show up for the deposition by
8   Judge Alexander. Why didn't you show up?
9        MS. STEVENSON: I did not show up, Your Honor,
10  because I had also informed him after the -- after he notified
11  me that I could no longer financially incur those costs of
12  going back and forth to the deposition. If he could move it
13  closer --
14       THE COURT: What costs of going back and forth?
15       MS. STEVENSON: The transportation costs.
16       THE COURT: But you were here in court filing on
17  that day.
18       MS. STEVENSON: Yes, sir.
19       THE COURT: Now, the transportation costs are the
20  same to get to this court as to get to the offices just down
21  the street.
22       MS. STEVENSON: Well, Your Honor, I made the cost
23  to come here to file it hopefully that it would grant -- that
24  the documents would show that there can be no more -- that
25  there are no more issues.

4  (Pages 10 to 13)

JANUARY 23, 2007>

1224d3e8-d8aa-4fee-aa71-63e20aa285df

STEVENSON V. NEIGHBORHOOD HOUSE CHARTER SCHOOL>

Page 14

1    THE COURT: You're in violation of a court order.
2    MS. STEVENSON: Well, no, sir. I really --
3    THE COURT: Yes, you are in violation of a court
4    order. Magistrate Judge Alexander was clear. You have an
5    obligation to appear before a deposition. You don't get to
6    make your own choices about whether or not you appear or don't
7    appear. You were ordered to appear and you didn't.
8    Now, the question for me is what the sanction
9    should be. I'm going to give you one more chance -- one more
10   chance. I'm going to fix the date for deposition and you're
11   going to appear.
12   So, what date do you want? What dates do you want?
13   MR. MILLER: Your Honor, we would like some time to
14   review the court file and make sure we have documents
15   available.
16   THE COURT: What dates do you want?
17   MR. MILLER: We're probably looking at a date in
18   late February if that's acceptable to the Court.
19   THE COURT: Okay. We'll fix a date in late
20   February. Ms. Stevenson, when are you available?
21   MS. STEVENSON: I don't have a calendar in front of
22   me, Your Honor.
23   THE COURT: Well, you're going to have to tell me
24   right now.
25   MS. STEVENSON: Well, I don't know.

Page 15

1    THE COURT: Well, I'm going to tell you when you're
2    going to appear for the deposition. What other obligations do
3    you have? Are you working?
4    MS. STEVENSON: No, but I'm looking for a job.
5    THE COURT: Okay. Well, then this date will
6    interfere with your job search. Because you're going to have
7    to appear on this date.
8    MS. STEVENSON: In this Court?
9    THE COURT: No, in the deposition at their office
10   just as Magistrate Judge Alexander told you to do. And you
11   should understand that it was within my power and it is within
12   my power to dismiss this case for your willful failure to
13   appear at the deposition, but I'm giving you one more chance.
14   MR. MILLER: Can I request February 22nd, Your
15   Honor, for the deposition?
16   THE COURT: Thursday, February 22nd. At what time?
17   MR. MILLER: 10 A.M., please.
18   THE COURT: You should take that down,
19   Ms. Stevenson. Thursday, February 22nd. I'm sorry. You don't
20   seem to be writing.
21   MS. STEVENSON: I don't have anything to write
22   with.
23   THE COURT: Okay. Well, Ms. Rynne will pass you a
24   pen so that you can write this down.
25   MS. STEVENSON: Well, suppose I get back and I have

Page 16

1    something on that date?
2    THE COURT: Well, you're going to have to make some
3    kind of motion.
4    MS. STEVENSON: But was it in another court?
5    THE COURT: You're going to have to make some kind
6    of motion.
7    MS. STEVENSON: Motion?
8    THE COURT: Motion. You know about those. You've
9    filed them. You filed a number of them. You're going to have
10   to do what you didn't do with respect to Magistrate Judge
11   Alexander's order. Ask for some sort of leave. And unless you
12   get that leave from this Court, the consequence will be the
13   dismissal of this case. February 22nd. At what time?
14   MR. MILLER: At 10 A.M., please, Your Honor.
15   THE COURT: 10 A.M. at the offices --
16   MR. MILLER: At the offices of Seyfarth, Shaw,
17   which is in the World Trade Center, a few hundred yards from
18   here.
19   THE COURT: That's where you're going to have to
20   appear. And until I issue an order that says that you don't
21   appear, you have to appear. Do you understand?
22   MS. STEVENSON: Yeah.
23   THE COURT: Now, what else?
24   MS. STEVENSON: Might I ask a question?
25   THE COURT: You'll have an opportunity. I'm asking

Page 17

1    a question of counsel first.
2    MR. MILLER: If that's all Your Honor wishes to
3    hear on our motion for order to show cause, the only remaining
4    motions before the court, I believe, include plaintiff's motion
5    for summary judgment, the two documents she filed on December
6    20th. And to the extent that Your Honor hasn't already
7    addressed it, there are objections to the Magistrate Judge's
8    order.
9    THE COURT: Now, assuming that you have the
10   deposition and you have those documents, what is your next step
11   in this case?
12   MR. MILLER: We intend to move for summary
13   judgment, Your Honor.
14   THE COURT: All right. When would you move for
15   summary judgment, Your Honor, in relation to the deposition?
16   MR. MILLER: We would ask for three weeks after her
17   deposition is completed.
18   THE COURT: Okay. Well, it can be completed in one
19   day.
20   MR. MILLER: We believe it can if she cooperates,
21   Your Honor.
22   THE COURT: Okay. So, I will permit the filing of
23   motions for summary judgment on March 16. And I will deny the
24   motion for summary judgment of the plaintiff without prejudice
25   in order to permit the full development of the record in this

JANUARY 23, 2007>

1224d3e8-d8aa-4fee-aa71-63e20aa285df

## STEVENSON V. NEIGHBORHOOD HOUSE CHARTER SCHOOL>

Page 18

1  case.
2      Now, you had some something further that you wanted
3  to say?
4      MS. STEVENSON: Yes. Why would you deny my motion
5  if it's relevant to the issues now?
6      THE COURT: Because it's not timely and because you
7  have interfered with discovery. I just set a date for summary
8  judgment.
9      MS. STEVENSON: But if I gave evidence that can
10  show there is no deposition or anything else he can produce
11  that can overcome my evidence, why would you deny it?
12      THE COURT: Well, we'll find out. You'll show up
13  at the deposition.
14      MS. STEVENSON: Okay. And what about --
15      THE COURT: Just a moment.
16      MS. STEVENSON: (Heavy sighing).
17      THE COURT: And they'll get an opportunity --
18  excuse me. Have you completed your sighing?
19      MS. STEVENSON: My sighing?
20      THE COURT: Sighing.
21      MS. STEVENSON: Well --
22      THE COURT: Have you?
23      MS. STEVENSON: -- I still have -- I still have a
24  comment. But Your Honor, I really feel like there is nothing
25  else that I can produce for them.

Page 19

1      THE COURT: That's what every lawyer and every
2  party believes about their motions for summary judgment. But
3  we have an orderly process. We have a process in which the
4  parties don't just tell us when they feel like filing their
5  motion for summary judgment. They don't just tell us that
6  they'd like to show up or don't want to show up for a
7  deposition. Both sides are to be afforded an opportunity to
8  develop the case fully and I am affording both sides that
9  opportunity.
10      And, so, I said that I am dismissing your motion
11  for summary judgment or denying it without prejudice. That is,
12  it may be renewed on March 16th after the conclusion of all of
13  the relevant discovery, but not until.
14      MS. STEVENSON: So I have to refile again?
15      THE COURT: If you want to leave it as it stands,
16  you can have it left as it stands. You can refile it as it
17  stands. But it's not going to be ripe for consideration until
18  March 16th to afford the defendant the opportunity to conduct
19  such discovery as they were permitted by order of Judge
20  Alexander. Understand?
21      MS. STEVENSON: Well, no, because I feel like this
22  is lopsided. I have asked for documents, an employer -- or he
23  should have in regards to his claim that I was an independent
24  contractor. I can't get that from them.
25      THE COURT: And that's your motion to compel which

Page 20

1  was dealt with by Magistrate Judge Alexander.
2      MS. STEVENSON: Okay. What is -- she didn't even
3  address it, did she? I mean, there was nothing. I still can't
4  get a record from --
5      THE COURT: Magistrate Judge Alexander entered an
6  order on November 7th granting the motion to compel documents
7  and for sanctions by Neighborhood House Charter School. No
8  action was taken by the court on the motion to compel by
9  Ms. Stevenson in that it's not a discovery motion or one that
10  was dispositive in nature. And consequently, she denied the
11  motion for sanctions by Janice Stevenson. She denied the
12  motion to compel for terminating sanctions in the alternative
13  by Neighborhood Schools. In short, she dealt with it.
14      MS. STEVENSON: Well, again, this seems to be
15  lopsided. It seems to be --
16      THE COURT: Well, you say it's lopsided and
17  certainly you're entitled to whatever view you have.
18      MS. STEVENSON: Yes.
19      THE COURT: But the short of it is that there has
20  been a request for discovery and an order issued you have not
21  complied with. Now I'm giving you another chance to comply
22  with it. And once that has been completed, your motion for
23  summary judgment -- which you say is uncontroverted -- will be
24  ripe for consideration.
25      So, that's how we're going to leave it.

Page 21

1      MS. STEVENSON: Okay. But what about documents I
2  need?
3      THE COURT: Why do you need the documents? You
4  told me a moment ago that there's no need for documents, that
5  it's uncontroverted?
6      MS. STEVENSON: Well, there are still documents
7  they are statutorily required to have. And I would like to see
8  copies of those.
9      THE COURT: Have you made a motion to compel?
10      MS. STEVENSON: Yes, I have.
11      THE COURT: And what happened to that motion?
12      MS. STEVENSON: They said they won't give them to
13  me.
14      THE COURT: What happened to the motion to compel?
15      MS. STEVENSON: You mean the one that you just
16  read?
17      THE COURT: Yes.
18      MS. STEVENSON: Okay. Well, they're still -- I
19  feel like this is unfair. I feel like this is a lopsided case.
20      THE COURT: Well, I understand what you have said.
21  But the short of it is that you have so managed to interfere
22  with the discovery process in this case that it's necessary now
23  for two Judges of this Court to make extraordinary rulings,
24  Judge Alexander and me. We're making these orders in order to
25  ensure that the parties have an opportunity to address the

JANUARY 23, 2007>

1224d3e8-d8aa-4fee-aa71-63e20aa285df

## STEVENSON V. NEIGHBORHOOD HOUSE CHARTER SCHOOL>

Page 22

1  question of summary judgment in an orderly fashion. You say
2  you're entitled to some additional documents.
3          MS. STEVENSON: Yes.
4          THE COURT: But you have not filed a motion to
5  compel that would permit me to order it. So, I have nothing
6  before me with respect to that.
7          We now have a schedule that you will comply with.
8  And if you fail to comply with it, the case will be dismissed.
9          MS. STEVENSON: Oh, and another thing. Have you
10 addressed my motion to withdraw? I had a request.
11         THE COURT: Right.
12         MS. STEVENSON: I wanted to put it in state court.
13         THE COURT: Whatever you want to do with the case
14 is up to you.
15         MS. STEVENSON: Okay.
16         THE COURT: If you want to file it in some other
17 court --
18         MS. STEVENSON: Make a motion.
19         THE COURT: -- I'm not going to interfere with
20 that.
21         MS. STEVENSON: Okay.
22         THE COURT: But it's withdrawn in this Court.
23         MS. STEVENSON: Okay.
24         THE COURT: And it can't be revived in this Court.
25         MS. STEVENSON: No.

Page 24

1  March 16th. Should we set a date for responses to those
2  motions?
3          THE COURT: No, the ordinary.
4          MR. MILLER: Ten days?
5          THE COURT: No, it's 14 days.
6          MR. MILLER: Fourteen days after filing. Thank
7  you, Your Honor.
8          THE COURT: Okay. All right. Anything else?
9  (No response)
10         THE COURT: I think I have been as clear as I can
11 be about this, Ms. Stevenson. I hope that this case can be
12 resolved on the merits. I hope that I don't have to dismiss it
13 because of misconduct. But I've made it as clear as I can that
14 you've got one more chance to comply with Magistrate Judge
15 Alexander's orders. If you don't, then the case will be
16 dismissed for procedural infirmities and the failure on your
17 part properly to conduct yourself in litigation with this
18 Court.
19         So, if there's nothing further, we'll be in recess.
20         RECESSED AT 10:45 A.M.
21
22
23
24
25

Page 23

1          THE COURT: Okay. So first, we deal with motion
2  number 59, Motion to Withdraw the Motion for Order to Show
3  Cause. That motion to withdraw is allowed.
4          Second, we deal with the Motion for Summary
5  Judgment filed by the plaintiff when she was expected to be at
6  the deposition. That's number 57. That is denied without
7  prejudice. The time for filing Motions for Summary Judgment in
8  this case would be March 16th.
9          Third, we deal with the Motion to Show Cause, which
10 is number 56, which was indicated has been withdrawn.
11         We deal then with motion number 54, the Motion to
12 File a Supplemental brief in Support of the Motion to Show
13 Cause. That motion is allowed.
14         Next, we deal with the Motion for an Order to Show
15 Cause by the Neighborhood Charter School. I dealt with that
16 motion by establishing that the plaintiff has asserted under
17 pains of dismissal that there are no further documents that are
18 responsive to Judge Alexander's order that have not been
19 provided to counsel in this case -- defense counsel in this
20 case; and second, that Ms. Stevenson will appear for a
21 deposition on February 22nd at 10 A.M. in the Seyfarth offices.
22         I don't believe there's anything else that needs to
23 be dealt with, is there?
24         MR. MILLER: Your Honor, if we could just clarify.
25 You stated that the summary judgment motions are to be filed by

Page 25

1
2          CERTIFICATION
3
4          I certify that the foregoing is a correct
5  transcript of the record of proceedings in the above-entitled
6  matter to the best of my skill and ability.
7
8  _____    _____
9  Pamela R. Owens              Date
10 Official Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

JANUARY 23, 2007>

1224d3e8-d8aa-4fee-aa71-63e20aa285df