# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANICE STEVENSON, )<br>                Plaintiff, )<br>)<br>v. )<br>)<br>NEIGHBORHOOD HOUSE CHARTER )<br>SCHOOL, )<br>                Defendant. )<br>) | CIVIL ACTION NO.  05-CV-11584-DPW |

## AFFIDAVIT OF BARRY J. MILLER, ESQ.
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND FOR SANCTIONS

I, Barry J. Miller, under oath, depose and say as follows based on personal knowledge:

1.      I am an attorney admitted to practice law in the Commonwealth of Massachusetts and am employed by the firm of Seyfarth Shaw LLP.  Lynn A. Kappelman, Esq. ("Kappelman"), a partner in the firm of Seyfarth Shaw LLP, and I represent Defendant Neighborhood House Charter School ("NHCS") in the above-captioned matter.

2.      By Order dated January 23, 2007, the Court directed Plaintiff Janice Stevenson ("Stevenson") to appear for continued deposition in the above-captioned matter at the offices of Seyfarth Shaw on Thursday, February 22, 2007.

3.      On or about Monday, February 19, 2007, I sent an e-mail message to Stevenson reminding her that the Court had Ordered her to appear for her continued deposition on the following Thursday, and asking that she plan to be at our offices for the day.  A true and accurate copy of my February 19, 2007 message to Stevenson is attached hereto at Tab A.

4.      Stevenson appeared at the offices of Seyfarth Shaw on February 22, 2007.  When she arrived, she was dressed in heavy winter garb, including a coat, a hood that covered her head,

a scarf around her neck, and another scarf or muffler that was wrapped tightly over the lower half of her face and covered her mouth.

5.      Before the deposition commenced, I invited Stevenson to remove her winter garb and hang up her coat, but she declined.

6.      When Stevenson entered the conference room in which her deposition was to take place, the court reporter was sitting one end of a rectangular table, and I had prepared to take a seat immediately to the right of the court reporter.  I asked Stevenson to sit in a chair immediately to the left of the court reporter, but she refused and instead sat in a chair near the opposite end of the table from the court reporter.

7.      Before the deposition began, I repeatedly asked Stevenson to remove the scarf that covered her face and to sit next to the court reporter.  I explained to Stevenson that these measures were necessary to ensure that the court reporter could hear her testimony clearly.  The court reporter also emphasized to Stevenson that it was important for her to be able to hear Stevenson clearly.

8.      Stevenson refused to remove any of her winter garb, including the scarf covering her face, and she refused to sit closer to the court reporter and me, as the court reporter and I had requested.

9.      Notwithstanding Stevenson's refusals to cooperate, I attempted to continue her deposition.

10.      From the first moments of the proceedings, Stevenson was exceptionally combative and hostile.  She repeatedly attempted to interrupt my questions and statements, beginning with my efforts to explain the ground rules of the deposition proceedings to her.  She

continued by arguing with me and berating me, rather than responding to even the most simple questions put to her.

11.     After I explained to Stevenson that her refusals to remove the scarf covering her mouth and sit near the court reporter and me were impairing our ability to hear her responses, she abruptly left the room.  She returned with two pieces of paper that she had apparently retrieved from the receptionist in the lobby, and she sat down and wrote the word "YES' on one piece of paper and the word "NO" on the other.

12.     After Stevenson had returned to the room and created the signs described above, I again attempted to resume her deposition.  Still muffled by the scarf covering her mouth and still sitting near the opposite end of the table from the court reporter and me, Stevenson then proceeded to respond to my questions and statements by waving the signs she had made, instead of or in addition to spoken responses.

13.     I informed Stevenson that her use of signs to respond to my questions was inappropriate and that she needed to give audible, spoken responses to my questions.  Stevenson nonetheless persisted to respond to questions with her signs, in addition to or instead of spoken responses.

14.     Stevenson also continued to argue with me and otherwise to refuse to answer questions posed to her.

15.     After a period of time, and while the deposition was still on the record and in process, Stevenson retrieved a copy of a newspaper from her tote bag.  She then turned her back to the court reporter and began reading the newspaper, rather than participating in the deposition.

16.     I implored Stevenson to put her newspaper away and participate in the deposition, emphasizing that the parties were engaged in an official court proceeding and that she needed to

act accordingly.  Stevenson refused to put the newspaper back in her bag, and continued to review it, rather than responding to questions or reviewing exhibits placed before her.

17.     I repeatedly told Stevenson that her behavior was inappropriate and that NHCS and I believed that her refusal to cooperate in the deposition constituted contempt of the two Court Orders requiring her to appear for and participate in her deposition.  I also informed Stevenson that NHCS would apprise the Court of her continuing refusal to participate in her deposition and seek further relief, including the dismissal of her claims in this matter and the imposition of sanctions.

18.     Stevenson initially claimed that she did not recall any Court Order requiring her to appear for and participate in her deposition.  I then marked as exhibits the November 7, 2006 Order of the Court and the transcript of the January 23, 2007 hearing in this matter.  After debating the authenticity of the documents, Stevenson claimed that the Court had erred in ordering her to appear for deposition or that the Court's Orders were not binding on her.

19.     During the lunch break in the deposition, I telephoned the Court Clerk and left a voicemail message seeking guidance as to how the Court would prefer that NHCS respond to Stevenson's misconduct at the deposition.

20.     When the deposition resumed after the break, I apprised Stevenson that NHCS had called the Court seeking emergency relief for her misconduct, and I undertook to give Stevenson yet another opportunity to cooperate in the deposition process.  As she had in the morning session, Stevenson obstructed the proceedings by interrupting me and arguing with me, rather than answering the questions posed to her.  Stevenson also continued in her refusal to remove the scarf covering her mouth, continued in her refusal to sit near the court reporter and

me, and continued to purport to answer questions posed to her with the signs she had made, in addition to or instead of spoken responses.

21.     A few minutes prior to 1:30 p.m., the Court Clerk returned my call.  She apprised me that the Court would hold a hearing to address NHCS's representations regarding Stevenson's failure to cooperate in the deposition that afternoon at 2:15 p.m.  The Court Clerk then asked to speak with Stevenson, so that she could apprise Stevenson of the hearing.  I attempted to hand the telephone receiver to Stevenson, but she stated that she was unwilling to speak to the Court Clerk on my firm's telephone.  The Court Clerk then requested that I give her telephone number to Stevenson, ask Stevenson to call the Clerk, and tell Stevenson that the Court would hold a hearing in the case that afternoon  at 2:15 p.m.

22.     I then wrote down the Court Clerk's phone number on a piece of paper and handed it to Stevenson.  I told Stevenson that the Court Clerk had requested that Stevenson call her, and I told Stevenson that the Court would hold a hearing in the case that afternoon at 2:15 p.m.  Stevenson responded with words to the effect that she did not intend to appear at the hearing because she had other things to do.

23.     Stevenson thereafter left the offices of Seyfarth Shaw, and the deposition proceedings were suspended.

BO1 15831727.1

24.    A true an accurate copy of the transcript of the February 22, 2007 deposition proceedings in this matter as taken by the court reporter is attached hereto at Tab B.  True and accurate copies of the exhibits referenced at the February 22, 2007 deposition proceedings in this matter are attached at Tabs C, D, E, and F respectively.

Signed under the penalties of perjury this 6th day of March, 2007.


    /s/ Barry J. Miller

Barry J. Miller


| CERTIFICATE OF SERVICE |
| --- |
| I hereby certify that this document was filed through the Court's ECF system and that a true copy of the above document was served on Plaintiff *pro se* Janice Stevenson by e-mail to janicestevensonus@gmail.com and by first class U.S. mail to P.O. Box 400372, Cambridge, MA 02140 on March 6, 2007.<br><br>    /s/ Barry J. Miller<br>Barry J. Miller |

BO1 15831727.1

**Miller, Barry**

| | |
|---|---|
| **From:** | Miller, Barry |
| **Sent:** | Monday, February 19, 2007 8:54 PM |
| **To:** | 'Stevenson Janice' |
| **Subject:** | NHCS v. Stevenson |

Ms. Stevenson,

This is a reminder that the District Court has Ordered you to appear for your continued deposition on Thursday, February 22.  Please arrive at our offices a few minutes before 10:00 am and plan to be here for the day.  Please also remember to bring your glasses to facilitate your review of documents and other exhibits.


Regards,

Barry J. Miller
*Seyfarth Shaw LLP*
Two Seaport Lane, Suite 300
Boston, MA 02210
office phone: (617) 946-4800
direct phone: (617) 946-4806
office fax: (617) 946-4801
direct fax: (617) 790-6753

1

Page 788

Volume:   IV

Pages:    788-915

Exhibits: 47-49


UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


C.A. No. 05-CV-11584-DPW

- - - - - - - - - - - - - - - - - - - - - - x

JANICE STEVENSON,

            Plaintiff

vs.

NEIGHBORHOOD HOUSE CHARTER SCHOOL,

            Defendant

- - - - - - - - - - - - - - - - - - - - - - x


CONTINUED DEPOSITION OF JANICE L. STEVENSON

Thursday, February 22, 2007 - 10:19 a.m.

Seyfarth Shaw

World Trade Center East

Two Seaport Lane - Suite 300

Boston, Massachusetts

- - - - - - - - -

Reporter:  Maureen J. Manzi, CSR, CLR

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Page 789

1  APPEARANCES:
2  *** JANICE L. STEVENSON - PRO SE
3
4  *** SEYFARTH SHAW
5        (BY BARRY J. MILLER, ESQ.)
6              and
7        (CATHERINE V. MEEK, ESQ.)
8        World Trade Center East
9        Two Seaport Lane - Suite 300
10       Boston, Massachusetts  02210
11       (617) 946-4800
12       Counsel for the Defendant
13
14
15
16
17
18
19
20
21
22
23
24

Page 790

1              I N D E X
2  JANICE L. STEVENSON
3  BY MR. MILLER          791
4
5
6
7
8              E X H I B I T S
9  Exhibit 47, errata sheet of Janice L.
10 Stevenson.................................. 818
11 Exhibit 48, transcript of the January 23,
12 2007 hearing.............................. 871
13 Exhibit 49, Notice of Appeal................ 903
14
15
16
17
18
19
20
21
22
23
24  *Original exhibits retained by Attorney Miller.

Page 791

1        P R O C E E D I N G S
2        JANICE L. STEVENSON, duly sworn by the
3  Notary Public was examined and testified as follows:
4        DIRECT EXAMINATION, CONT.
5  BY MR. MILLER:
6    Q. Before we get started Ms. Stevenson, I want
7  to put on the record the fact that I've asked you to
8  sit next to the court reporter and you've denied to
9  do that. Is that right. Ms. Stevenson? Can you
10 hear me? For the record I've also asked Ms.
11 Stevenson to remove a scarf and muffler so the court
12 reporter and I can understand her responses and her
13 testimony. She's declined to do that. Is that
14 right, Ms. Stevenson? Do you understand the
15 question? For the record Ms. Stevenson has given no
16 verbal response.
17        I'll ask again. Ms. Stevenson, can you
18 hear me? Do you understand what I'm saying to you?
19 I need you to give verbal responses to my questions.
20 That's not a verbal response. For the record Ms.
21 Stevenson has made a gesture. I'm not sure what she
22 means by it. But as we discussed at previous
23 sessions of your deposition, Ms. Stevenson, the
24 court reporter is here to take down everything that

Page 792

1  I say and everything that you say. That's the
2  purpose of this proceeding. So you need to respond
3  to my questions and you need to respond verbally
4  using words. Do you understand that?
5    A. Did you hear me before?
6    Q. I didn't and I've asked you to take the
7  muffler off.
8    A. You heard.
9    Q. Don't tell me.
10   A. Didn't she just swear me in. Did you hear
11 my response?
12   Q. I heard your response to that.
13   A. Then why would you ask a stupid question?
14   Q. Ms. Stevenson, your job here is not to
15 critique my questions. Your job is to respond --
16   A. Move on. Move on.
17   Q. Ms. Stevenson, you're not going to tell
18 me --
19   A. Move on.
20   Q. -- which questions to ask. You
21 understand --
22   A. You hear me now. Don't you hear me?
23   Q. Yes. Can you hear me?
24   A. Then move on.

Merrill Legal Solutions
(617) 542-0039

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 793

1    Q. I'm not going to move on, and I'm not going
2  to let you tell me which questions to ask.
3    A. Are we having a conversation or an argument,
4  whichever way you want to clarify that? You hear
5  me? You understand me, so does she.
6    Q. All right. So you represent for the record
7  you can hear me?
8    A. Did you represent you could hear me?
9    Q. When you speak, I can. When you make
10 gestures, I cannot.
11   A. Did you hear me?
12   Q. I'm not here to answer your questions, Ms.
13 Stevenson.
14   A. Did you hear me?
15   Q. Ms. Stevenson, stop.
16   A. Well, let the record reflect that you will
17 not respond to me.
18   Q. I will not respond to your questions.
19 That's not the purpose of this proceeding.
20   A. Well, can you hear me?
21   Q. Ms. Stevenson, I can hear you when you talk.
22   A. That's fine.
23   Q. And I've asked you to take off --
24   A. I don't have to if you hear me.

Page 794

1    Q. I've asked you to take off the muffler.
2  I've asked you to sit next to the reporter.
3    A. I don't have --
4    Q. Ms. Stevenson, stop interrupting me. Ms.
5  Stevenson, you know from our prior proceedings --
6    A. Why would you hold up your own deposition?
7  You hear me. I'm not going to take it off.
8    Q. Ms. Stevenson, your job here is not to argue
9  with me, you know that.
10   A. This is not a trial. I'm telling you, I'm
11 not going to take it off because I'm uncomfortable
12 in this room.
13   Q. It's not cold in here.
14   A. To you.
15   Q. That's right.
16   A. I'm telling you how I feel.
17   Q. Well, I'll point out that the thermostat
18 reflects that it's 75 degrees in this room and
19 you're sitting in there in a winter coat and a
20 muffler and you're telling me you're cold.
21   A. Yes.
22   Q. So as I tried to start this off. I want to
23 represent for the record that I've asked you to sit
24 next to the court reporter, and you've declined to

Page 795

1  do that; is that right? Do you understand the
2  question?
3    A. No.
4    Q. You don't understand?
5    A. No.
6    Q. Okay. Let me take it as slow as I possibly
7  can. You understand that I've asked you to sit next
8  to the court reporter; is that right? Ms.
9  Stevenson. For the record Ms. Stevenson has again
10 elected again not go give a verbal response. Ms.
11 Stevenson, I've asked you to sit next to the court
12 reporter. Do you understand that?
13   A. Do you hear me?
14   Q. You need to respond to my questions, Ms.
15 Stevenson.
16   A. Can you hear me?
17   Q. I can hear you when you speak loud enough.
18 I asked you to take the muffler off but you refused
19 to do that.
20   A. But can you hear me?
21   Q. I'm not going to answer your questions, Ms.
22 Stevenson. You need to understand that the
23 proceeding --
24   A. But can you hear me?

Page 796

1    Q. Stop interrupting me.
2    A. But can you hear me? And she can hear me.
3    Q. Ms. Stevenson, I'm not going to answer your
4  questions.
5    A. And she can hear me.
6    Q. Ms. Stevenson, stop it.
7    A. And the reason you wanted me to move here is
8  so she can hear me. So she can hear me.
9    Q. She can hear you better if --
10   A. If I sit over here --
11   Q. Your job is not to argue with me here, Ms.
12 Stevenson.
13   A. She can hear me.
14   Q. That's not the point. Your job is only to
15 respond to my questions. My first question is --
16   A. But she can hear me.
17   Q. Ms. Stevenson --
18   A. Can you hear me?
19   Q. -- stop it. My first question is --
20   A. Can you hear me?
21   Q. I'm not going to respond to your questions.
22   A. Can you hear me?
23   Q. My first question is --
24   A. Can you hear me?

3 (Pages 793 to 796)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Page 797

1    Q. Stop interrupting me, Ms. Stevenson.
2    A. Am I audible in this room?
3    Q. Not very well, you're muffled because you're
4  wearing a scarf over your mouth.
5    A. Am I audible in this room?
6    Q. Not very well, no.
7    A. I'm responding.
8    Q. What?
9    A. Yes.
10   Q. What?
11   A. Yes.
12   Q. You're answering your own questions now, is
13  that what you're trying to do?
14   A. No, I'm asking you a question.  You said
15  what?
16   Q. I'm having trouble understanding you because
17  you have a scarf over your mouth.
18   A. No, no, you don't.
19   Q. You're telling me whether or not I have
20  trouble understanding you?
21   A. You're talking.
22   Q. I can hear about half of what you say with
23  that scarf over your mouth.
24   A. I'm going to say one word yes or no.

Page 798

1    Q. All right.  We're starting over.  Ms.
2  Stevenson, you understand that I've asked you to sit
3  in the chair --
4    A. No.
5    Q. Stop interrupting.  All right.  First, we'll
6  go through the ground rules.  We've done this twice
7  before and I know you know these rules but we'll
8  cover them again for the benefit of the record and
9  for your benefit.
10   A. What rules?
11   Q. Listen and I'll explain them to you.  The
12  purpose of this proceeding is for me to ask you
13  questions and for you to respond those questions.
14  Do you understand that?
15   A. Can you hear me?
16   Q. That is not responsive to what I just said
17  to you.  Respond to what I'm saying.  The purpose of
18  this proceeding --
19   A. What did I just say?
20   Q. Stop interrupting me, Ms. Stevenson.  The
21  first ground rule --
22   A. What did I just say?
23   Q. I have no idea what you're saying.  You're
24  very muffled.  The first ground rule --

Page 799

1    A. I can't hear you.
2    Q. You can't hear me because you've got a hood
3  on.  Take the hood off and you'll have a good chance
4  of hearing me.
5    A. I'm cold.
6    Q. Excuse me?  Excuse me?  What did you say?
7  You're now representing that you're having trouble
8  hearing me because you're sitting there in a hood
9  and a scarf.  This would all go much more smoothly
10  if you would take that off but you're refused.  So
11  we're going to try this again.  I'm going to explain
12  the ground rules.
13        The first ground rule is, that we have a
14  court reporter here who is taking down everything I
15  say and to the extent she can with your muffled
16  speech everything you say.  For the record to be
17  clear we need to talk one at a time -- stop right
18  there.
19   A. She never said I can't hear you.
20   Q. It's not her job to say that.  Her job is to
21  just take it down as best she can.
22   A. I think in a deposition --
23   Q. What you think is irrelevant.  I'm telling
24  you that her job is not to tell --

Page 800

1    A. In a courtroom if they can't understand you,
2  they say, oh, can you repeat that.  She hasn't said
3  anything since.
4    Q. And I'm telling you that understanding you
5  just represented is inaccurate.  It's not her job
6  to interrupt these proceedings.
7    A. Are you speaking for her?
8    Q. That's right.  I'm telling you what her role
9  here is.
10   A. Are you hearing for her?
11   Q. What?
12   A. Are you typing for her?
13   Q. Ms. Stevenson, stop arguing with me.  The
14  first ground rule of this proceeding is that we
15  can't interrupt each other.  So when I'm talking,
16  when I'm making a statement, when I'm asking you a
17  question, you need to sit there and listen to what I
18  say and let me finish so that the court reporter can
19  take everything down and then you respond.  Okay, do
20  you understand that?
21   A. I've answered the question.
22   Q. That's not responsive.  Your job is not to
23  tell me what you --
24   A. I've answered the question.

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 801

1    Q.  Ms. Stevenson --
2    A.  I've answered it how many times now.
3    Q.  Well, you continue to interrupt me --
4    A.  Three.
5    Q.  -- so I have to continue to ask.
6    A.  I've answered your question.
7    Q.  Ms. Stevenson, your job is not to dissect
8  the record, it's not to tell me what questions
9  you've been asked and what questions you've
10 answered.
11   A.  It's been answered.
12   Q.  Stop interrupting me.  And I'll tell you
13 right now, that your representation that you think
14 that you've answered a question before is not a
15 basis to answer it again.  And we're going to mark
16 some exhibits with the instructions that the court
17 has given to you in this matter and your objections
18 and your protestations and your arguments are
19 improper.
20   A.  I've answered the question.
21   Q.  There's no question pending.
22   A.  Yes, there was.
23   Q.  Ms. Stevenson, I'm explaining to you --
24   A.  Because I've answered it, that's why it's

Page 802

1  not pending.
2    Q.  Ms. Stevenson, I'm explaining to you the
3  rules of this proceeding.
4    A.  I've answered your question.
5    Q.  There is no question.  I'm explaining some
6  rules to you.  I've explained to you the first
7  ground rule of this proceeding, that that is you and
8  I cannot talk at the same time.  That means you
9  can't interrupt me when I'm talking.  Do you
10 understand that?  It's a yes or no question.
11   A.  I've answered your question.
12   Q.  That's fine.  Answer it again.  Do you
13 understand it, yes or no?
14   A.  You didn't ask me this question.  I answered
15 the question before.
16   Q.  I didn't hear what you just said.
17   A.  Yes.
18   Q.  Yes, you understand that you can't talk
19 while I'm talking?
20   A.  Yes, I asked you a question.
21   Q.  Ms. Stevenson, that's totally inappropriate.
22 You need to just answer the questions I've asked you
23 without going into --
24   A.  I've just answered you.

Page 803

1    Q.  You've just interrupted me again.  You need
2  to answer the questions --
3    A.  I've answered the question.
4    Q.  Ms. Stevenson, stop interrupting me.
5    A.  I've answered your question.
6    Q.  You have not answered the question, and even
7  if you have --
8    A.  I have answered the question.
9    Q.  Ms. Stevenson, you need to understand that
10 she --
11   A.  Three questions.
12   Q.  You have to stop interrupting.
13   A.  Three questions.
14   Q.  Ms. Stevenson, your job is not it interject.
15 Your job is to sit there and answer the questions
16 I've asked you.
17   A.  I've answered three questions.
18   Q.  Stop making statements.  I haven't asked you
19 anything.  There's nothing pending.
20   A.  You asked me three questions.
21   Q.  Your job is to sit there and --
22   A.  You asked me three questions and I've
23 answered them.
24   Q.  We're going to start over and we're going to

Page 804

1  go through this methodically.  You're going to
2  answer each question so that it's clear what you're
3  responding to.  The first question -- strike that.
4  The first instruction as to how this proceeding is
5  to take place is that you and I cannot talk at the
6  same time.  The court reporter can't take down both
7  of us talking at once.  So you need to not interrupt
8  me.  You need to let me get out my question or my
9  statement to you and then I'll let you respond.  Do
10 you understand that?  Do you understand the
11 question?
12   A.  I've answered the question.
13   Q.  I don't care if you've answered it.  Answer
14 it again so that the record is clear.  Do you
15 understand --
16   A.  Didn't I say yes to that question?
17   Q.  Stop asking questions.  Ms. Stevenson,
18 you're making this far more difficult than it has to
19 be.
20   A.  It is not difficult.
21   Q.  You're arguing with me is difficult.
22   A.  I'm not arguing with you.
23   Q.  You're not arguing about me whether you're
24 arguing with me.  Your simple job is to sit there

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Page 805

1  and answer yes or no to the questions I've asked
2  you.
3      A. You've asked me three questions. One of
4  them you asked twice and I've answered twice. So
5  out of three questions you asked me twice I've
6  answered twice. So what's the issue here?
7      Q. The issue --
8      A. You want there to be an issue.
9      Q. The issue is you're not cooperating in this
10 deposition. The court has been very --
11     A. What have I not answered?
12     Q. Ms. Stevenson, stop interrupting me. The
13 question has been very clear in this matter.
14     A. Stop banging at me. You're angry.
15     Q. Ms. Stevenson, the court has been very
16 clear.
17     A. You're angry.
18     Q. Ms. Stevenson, your misconduct in this
19 matter is a matter of record.
20     A. You're angry.
21     Q. The court has been very clear --
22     A. You are angry. You are angry.
23     Q. Stop interrupting me, Ms. Stevenson. Your
24 interpretation of my mood is completely irrelevant.

Page 806

1      A. Well, you're banging on the desk.
2      Q. Ms. Stevenson, you need to understand the
3  purpose of this proceeding.
4      A. If I was banging on the desk, would you have
5  her record that?
6      Q. I can't understand what you're saying with
7  the muffler on.
8      A. You're banging on the desk.
9      Q. Fine. You just need to sit there.
10     A. You're angry.
11     Q. That's fine. You just need to sit there and
12 listen. Ms. Stevenson. For the record Ms.
13 Stevenson is now facing away from the court reporter
14 which is going to make this transcript even more
15 difficult. For the record I've asked Ms. Stevenson
16 to sit next to the court reporter. She's refused.
17 I've asked her to remove the hood and scarf that are
18 covering her ears and her mouth, most of her face.
19 She's refused. So we're going to try and get
20 through this.
21         Ms. Stevenson, I will represent to you
22 that the court could not have been more clear that
23 you have engaged in serious misconduct in this case
24 and in this deposition. There are orders on the

Page 807

1  record instructing you to appear in this proceeding
2  and to cooperate in it. To comply with those orders
3  you need to respond to my questions and you need to
4  not interrupt me and you need it allow this
5  questioning to go forward. Do you understand that?
6      A. I've answered the question. I keep saying
7  yes. You keep asking me the same question over and
8  over again.
9      Q. That's not responsive to what I've asked
10 you.
11     A. Excuse me one minute. One minute. One
12 minute.
13     Q. You want to take a break? For the record
14 Ms. Stevenson's leaving the room.
15         (Brief recess held.)
16     Q. Let me know when you're ready. For the
17 record Ms. Stevenson has left the room, retrieved
18 paper and she's writing notes on pieces of paper
19 that she's brought with her. She's showing me one
20 with the word that says "yes". She's now written
21 "no" on the separate piece of paper that she brought
22 in.
23         Ms. Stevenson, you need to understand
24 that the court reporter here can only take down

Page 808

1  spoken responses. Ms. Stevenson, that's
2  inappropriate. She's waiving a piece of paper that
3  says "yes" at me. That's categorically
4  inappropriate. You need to give verbal responses to
5  each and every question that I ask you.
6      A. Yes.
7      Q. Waiving those pieces of paper does not
8  accomplish anything. You need to verbally respond
9  to my questions.
10     A. Yes.
11     Q. You understand that?
12     A. Yes.
13     Q. Now, Ms. Stevenson, we've had a great deal
14 of difficulty getting started here today. I'm going
15 to represent for the record --
16     A. No.
17     Q. Ms. Stevenson, stop interrupting me. We've
18 had a great deal of difficulty getting started here
19 today. I'm going to represent again for the?
20 record --
21     A. No.
22     Q. -- that I've asked you to sit next to the
23 court reporter. You refused to do that. I've asked
24 you to remove the scarf that's covering your mouth

6 (Pages 805 to 808)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                02/22/2007

Page 809

1    and the hood that's covering your ears and you've
2    refused to do that.  Is that correct?
3        A.  No.
4        Q.  You have not refused to do that?
5        A.  No.
6        Q.  I'll ask you again.  Will you please take
7    the seat next to the court reporter?
8        A.  No.
9        Q.  What's the basis for your refusing to sit
10   next to the court reporter?
11       A.  I'm audible.
12       Q.  Ms. Stevenson, that's not for you to judge.
13   The court reporter is professional --
14       A.  Yes.
15       Q.  Ms. Stevenson, stop it.
16       A.  Yes.
17       Q.  There's no question pending.  Ms. Stevenson,
18   the court reporter is a professional.  She needs to
19   take down the most precise transcript that she can.
20   For her to do that you need to sit next to her.  Do
21   you understand that?
22       A.  Yes.
23       Q.  So I'd ask that you take the seat next to
24   the court reporter.

Page 810

1        A.  She understands me.
2        Q.  Ms. Stevenson, that's not for you to judge.
3    Please take the seat next to the court reporter.
4        A.  Is that your judgment?
5        Q.  Yes, Ms. Stevenson, it is my judgement.
6        A.  So you hear me.
7        Q.  I can hear parts --
8        A.  I told you.
9        Q.  I can hear part of what you're saying, Ms.
10   Stevenson.  The fact that you're not completely
11   inaudible does not mean that you're not being
12   reasonable, in fact, far from it.  I'm going to ask
13   you one last time.  Will you take the seat next to
14   the court reporter?  I need a verbal response.  For
15   the record Ms. Stevenson is holding up the piece of
16   paper that she labeled "no" and she is apparently
17   declining to sit next to the court reporter.  Is
18   that right, Ms. Stevenson?  There's a question
19   before you, Ms. Stevenson.
20       A.  No.
21       Q.  You haven't refused to sit next to the court
22   reporter --
23       A.  No.
24       Q.  -- is that your testimony?

Page 811

1        A.  No.
2        Q.  You understand that you're, in fact, not
3    sitting in the chair next to the court reporter?
4        A.  You understand, in fact, you can hear me?
5        Q.  Ms. Stevenson, this is not about what I can
6    hear.  I've asked you to sit next to the court --
7        A.  Is that what the issue is?
8        Q.  Stop it.
9        A.  You said sit next to her so she can hear
10   you.
11       Q.  Ms. Stevenson, your behavior here is
12   entirely inexcusable.  And I'm going to represent to
13   you that given the court's statements regarding your
14   misconduct in this case up to this point, you are
15   risking serious sanctions by behaving this way.  And
16   I'm going to ask you one more time.  Will you please
17   take the seat immediately next to the court report?
18   For the record Ms. Stevenson has given no verbal
19   response and she continues to sit across the room
20   from the court reporter.
21            Ms. Stevenson, I'm also going to ask you
22   again to remove your hood and your muffler so that
23   you can hear me and that the court reporter and I
24   can hear you.  Will you do that?  For the record Ms.

Page 812

1    Stevenson has given a sigh but no verbal response.
2            Well, Ms. Stevenson, I will tell you
3    once again that your behavior here today is
4    completely inexcusable.  It's obstructionist and we
5    do intend to bring it to the attention of the court,
6    and if necessary we will seek sanctions including
7    the dismissal of this case and order requiring you
8    to pay Neighborhood House's attorney's fees in this
9    matter.  I'm going again to try to explain the
10   ground rules of this proceeding to you, and I know
11   you understand this but the fact that you have
12   engaged in this sort of obstructionist misconduct
13   forces me to put this on the record again.
14            The purpose of this deposition here
15   today which is a continuation of prior proceedings
16   from September of 2006 is for me to ask questions
17   and seek testimony from you regarding the claims
18   that you have asserted against Neighborhood House
19   Charter School.  Do you understand that?  For the
20   record Ms. Stevenson has given no verbal response.
21   So I'll pose the question again.  The purpose of
22   this proceeding is very limited.  Your only reason
23   for being here today is to respond truthfully to the
24   questions that I ask you against the claims you've

7 (Pages 809 to 812)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 813

1   asserted against Neighborhood House Charter School.
2   Do you understand that?
3       A.  Yes.
4       Q.  Okay.  And the purpose of this proceeding is
5   not for you to argue with me or attempt to debate
6   with me about what testimony you might have given in
7   the past or to make speeches about your claims
8   against the school.  Your only job and the only
9   thing that you are allowed to do is to answer my
10  questions truthfully and substantively.  Do you
11  understand that?
12      A.  No.
13      Q.  What about that do you not understand?
14      A.  Your question is not clear.
15      Q.  We'll get to that.  I want you to understand
16  that your only rule --
17      A.  I don't understand the question.
18      Q.  Okay.  We'll get to that.  I want you to
19  understand that your only reason for being here is
20  to respond to my questions truthfully and
21  substantively.  If at some point I ask you a
22  question that you don't understand, you let me know
23  and I will either restate it or attempt to clarify
24  it for you.  Okay?

Page 814

1       A.  Yes.
2       Q.  Okay.  And for the record Ms. Stevenson has
3   continued to engage in this behavior where she's
4   showing us these cue cards that she's made rather
5   than removing her muffler so that we can hear her
6   spoken testimony.  You also need to understand, Ms.
7   Stevenson, that I'm asking you questions --
8       A.  It's cold in here.  Can you turn that up?
9       Q.  Ms. Stevenson, it's 75 degrees in here.
10      A.  It's cold in here.  This isn't the first
11  time I've complained about this.
12      Q.  Well, you have been here all of 20 minutes.
13  I will attempt to turn the heat up, but I'll
14  represent to you that it's a digital thermostat on
15  the wall and it says it's 75 degrees.
16      A.  Can you put it on 80?
17      Q.  Now, Ms. Stevenson, you understand that
18  you're here to give testimony and that in response
19  to the questions that I ask you your obligation is
20  to give me your best memory of events that
21  transpired.  Do you understand that?
22      A.  Yes.
23      Q.  And do you understand that you have to make
24  a diligent effort to remember information that may

Page 815

1   be responsive to my questions and you cannot just
2   decline to answer because you don't want to remember
3   the answer to a question?  Do you understand that?
4       A.  I don't understand.
5       Q.  All right.  I'll explain it again.  Your job
6   is to use your best efforts to remember information
7   that may be responsive to any question I ask you.
8       A.  What is the best effort?
9       Q.  You don't understand what it means to make a
10  best effort?
11      A.  Yeah.
12      Q.  You don't understand what that means?
13      A.  Yes.
14      Q.  That means you need to try as hard as you
15  can to remember information that may be responsive
16  to my questions.  Do you understand that?
17      A.  Yeah, but even after best effort I can't,
18  then what?
19      Q.  Then you can tell me that that's your best
20  memory.  If the answer to some of my questions is I
21  don't remember, that's an acceptable response.  But
22  you have to undertake your best effort to remember
23  information that might be responsive to my
24  questions.  Do you understand that?

Page 816

1       A.  So what is a process to undertake a best
2   effort?
3       Q.  You don't know how to remember things that
4   have happened to you, is that what you're telling
5   me?
6       A.  Well, I will try to remember and if I can't
7   and you don't accept it, then how can I show you I
8   am making my best effort.
9       Q.  I'm not going to ask you to show me
10  anything.  I'm going to ask you a series of
11  questions about the claims you've asserted against
12  NHCS.  In response to each of those questions you
13  need to think to yourself and try to the best of
14  your ability to remember information that is
15  responsive to my questions.  Do you understand that?
16      A.  I think so.
17      Q.  Is there anything about that instruction
18  that's ambiguous to you?
19      A.  Yes.
20      Q.  What's that?
21      A.  You make it subjective.
22      Q.  And what's ambiguous about that?
23      A.  Because if I said I can't remember and you
24  think it's not my best effort --

Merrill Legal Solutions
(617) 542-0039

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Page 817

1    Q. We're not talking about --
2    A. -- and I can't do any better than just put
3  forth my best effort.
4    Q. That's all I'm going to ask you to do, is
5  put forth your best effort. And we're not talking
6  about my estimation of how hard you're trying. I'm
7  just asking you whether you understand your
8  obligations in giving testimony here today. Your
9  obligation in giving testimony here today is to try
10  to remember as best you can information that's
11  responsive to my questions. Do you understand that?
12    A. Yes.
13    Q. And for the record Ms. Stevenson has
14  continued to use her cue cards and giving muffled
15  responses. And as we've discussed, Ms. Stevenson,
16  if at some point I ask you any question that you
17  don't understand, your obligation to is to let me
18  know that you haven't understood the question. Do
19  you understand that?
20    A. Yes.
21    Q. And if you answer a question that I've asked
22  you, we will assume and the court will assume that
23  you understood it. Do you understand that?
24    A. Yes.

Page 818

1    Q. Now, if at any point you would like to take
2  a break, to use the restroom or for any other
3  purpose, please let me know and I'll finish up the
4  line of questioning I'm on and we'll take a break.
5  Do you understand that?
6    A. Yes.
7    Q. And after your deposition in this matter is
8  finished, just as with the two prior sessions of
9  your deposition that you actually attended, you'll
10  have an opportunity to review the transcript that
11  the court reporter has prepared of your testimony.
12  Do you understand that?
13    A. Yes.
14    Q. And you understand that if you do not review
15  your testimony and make proposed corrections to it,
16  you will have been deemed to have adopted your
17  testimony as transcribed? Do you understand that?
18    A. Yes.
19       (Marked, Exhibit 47, errata sheet of
20  Janice L. Stevenson.)
21    Q. Ms. Stevenson, I'm showing you a document
22  marked as Exhibit 47. I'll ask you to review it,
23  take a look at it and let me know when you've had an
24  opportunity to do so. In the meantime I'll also

Page 819

1  note for the record in response to your complaint
2  that this room is cold, I've turned the heat up as
3  high as it goes in this room, and the thermostat at
4  this moment reads 75 degrees.
5       Ms. Stevenson, have you had an
6  opportunity to review the document marked Exhibit
7  47? Ms. Stevenson. Have you had an opportunity to
8  review that document?
9    A. Yes.
10    Q. Ms. Stevenson has I want to note for the
11  record continued to use her cue cards to respond to
12  these questions. And I just want you to understand,
13  Ms. Stevenson --
14    A. What is this?
15    Q. Hold on. Let me get out what I'm telling
16  you. Don't write on the document, please. Ms.
17  Stevenson has elected to continue to use the cue
18  cards that she's prepared rather than giving clear
19  verbal answers. And I just want you to understand,
20  Ms. Stevenson, that your antics here are making this
21  progress much slower than it normally would and
22  certainly much slower than it would. And if you
23  continue to do that, there's every likelihood that
24  we're not going to be able to finish this deposition

Page 820

1  here today and that we're going to have to resume
2  another session of your deposition. Do you
3  understand what I've said to you?
4    A. No.
5    Q. Again Ms. Stevenson has answered with her
6  cue card.
7    A. Who is this?
8    Q. Ms. Stevenson, you need to respond to the
9  questions I've asked you. We'll get to the document
10  in a moment. What I've told is your behavior here,
11  your refusal to take your scarf off, your refusal to
12  take your hood off, your refusal to sit next to the
13  court reporter, your continuing to argue with me,
14  your using cue cards to respond to the questions
15  that I've asked you, they all make this proceeding
16  take much much longer than is reasonable or
17  necessary. And if you continue to behave that
18  way -- let me get out my statement. If you continue
19  to behave that way, this is going to take forever.
20  We're not going to finish today and we're going to
21  have to resume another session of your deposition.
22  Do you understand that?
23    A. No.
24    Q. What about that do you not understand?

9 (Pages 817 to 820)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Page 821

1    A. Who is this?
2    Q. Ms. Stevenson, don't worry about the
3 document for a minute. You need to listen to what
4 I'm saying to you and you need to respond to the
5 question --
6    A. Who is this? I'm asking about the document.
7 Can you just answer me?
8    Q. And I'm telling you, Ms. Stevenson, we're
9 not focused on the document.
10    A. I don't understand this.
11    Q. I'm not asking you anything about the
12 document. I'll take this back just so it's clear.
13 What I'm saying to you has nothing to do with any
14 document.
15    A. I don't understand that document. Yes, you
16 did.
17    Q. No, Ms. Stevenson, I have not, and we'll get
18 back to that in a minute. The only thing I asked
19 you about the document is whether you had a chance
20 to review it and you gave no response. Now, what
21 I'm telling you --
22    A. I asked you about the document. I've
23 questioned the document.
24    Q. That has nothing to do with what I'm about

Page 822

1 to tell you. You need to if this is going to move
2 forward sit there and listen the what I'm --
3    A. I've answered the question.
4    Q. Ms. Stevenson, stop interrupting. You need
5 to sit there --
6    A. Who's that?
7    Q. Ms. Stevenson, stop it.
8    A. Who's that?
9    Q. Ms. Stevenson, you need to sit there --
10    A. Who's that?
11    Q. Ms. Stevenson, you're interrupting me again.
12    A. Well, who is that?
13    Q. For the record I'm joined by my colleague
14 Catherine Meek. She's another attorney with my
15 firm.
16    A. Okay. Why is she in here?
17    Q. That is none of your business.
18    A. Yes, it is.
19    Q. It certainly is not.
20    A. It is.
21    Q. Stop interrupting.
22    A. It is.
23    Q. Ms. Stevenson, NHC can staff its defense of
24 this matter in any way that it sees fit.

Page 823

1    A. Well, I'm objecting.
2    Q. Object, that's fine. As Magistrate Judge
3 Alexander told you, any objections you have to
4 render in these proceedings, you can make for the
5 record.
6    A. What's her name again?
7    Q. Ms. Stevenson, you need to stop interrupting
8 me.
9    A. What's her name.
10    Q. You need to stop interrupting.
11    A. What's her name?
12    Q. My colleague's name is Catherine Meek.
13    A. Spell it.
14    Q. I'm not going to do that for you.
15    A. Spell it.
16    Q. No.
17    A. Yes.
18    Q. For the record, Ms. Stevenson, the antics
19 that you --
20    A. What is the spelling of her name?
21    Q. Stop interrupting me and stop asking me
22 questions.
23    A. Give me a spelling.
24    Q. It's not going to happen.

Page 824

1    A. I want a spelling.
2    Q. Well, you can want all you want. It's not
3 going to happen.
4    A. I want a spelling.
5    Q. I'm not going to let you take control of
6 this deposition.
7    A. Please give me a spelling.
8    Q. I'm not going to do that unless and until
9 you participate in this proceed.
10    A. Give me a spelling.
11    Q. I'm not going to do that.
12    A. Give me a spelling.
13    Q. At a break I can give you a copy of Ms.
14 Meek's business card.
15    A. I don't want a business card. I want a
16 spelling.
17    Q. I can guarantee you that her name is spelled
18 on the business card.
19    A. I guarantee you can spell it now. Don't you
20 know how to spell her name?
21    Q. Ms. Stevenson, stop it. This misconduct is
22 ridiculous. All right. The court has been very
23 clear.
24    A. I asked you who it was. You didn't want to

10 (Pages 821 to 824)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                02/22/2007

Page 825

1  identify it.
2      Q.  Ms. Stevenson, your question has been
3  answered.
4      A.  Spell her name.
5      Q.  Ms. Stevenson, your conduct here is
6  completely inexcusable.  You need to stop
7  interrupting me.
8      A.  Give me the spelling.  I'm being reasonable.
9      Q.  You are being as far from reasonable as is
10  humanly possible.  Now, I'm trying to explain to you
11  that the behavior you've engaged in here this
12  morning by refusing to sit next to the court
13  reporter, by refusing to remove your hood, by
14  refusing to remove your scarf, by attempting to
15  answer my questions with cue cards is --
16      A.  Do you want to end this?
17      Q.  -- obstructionist conduct.
18      A.  Do you want to end this?
19      Q.  Ms. stevenson --
20      A.  Do you want to end it?
21      Q.  I'm not sure what you're talking about.
22  What I want to do is finish taking your deposition.
23      A.  We have had a conversation for maybe
24  half-an-hour, hour.  You claim you don't understand

Page 826

1  me.
2      Q.  I can understand about half of what you're
3  saying.
4      A.  Okay.  Half will be on the reporter's
5  transcript.
6      Q.  And it's not sufficient.  It is her job to
7  take down everything that is --
8      A.  I want a spelling.  I want a spelling.  Then
9  why don't you stop it.  Why don't you stop it.
10      Q.  Ms. Stevenson, you are the one who --
11      A.  Why are you paying for something you can't
12  understand?
13      Q.  I would like nothing better than to be able
14  to understand what you say but you've refused to
15  participate.
16      A.  I want the spelling of her name.
17      Q.  Ms. Stevenson, you need to understand --
18      A.  I need a spelling which is courteous.
19      Q.  You're not going to get it.  You're not
20  going to take control of these proceedings.
21      A.  You didn't inform me that someone else was
22  going to sit in.
23      Q.  I have no obligation to do that.
24      A.  You didn't inform me.

Page 827

1      Q.  I have no obligation to inform you of who is
2  going to be here.
3      A.  I want a spelling.
4      Q.  Ms. Stevenson, you will get a copy of Ms.
5  Meek's business card at a break.
6      A.  I want a spelling.  What's that exhibit
7  number.
8      Q.  Ms. Stevenson, you need to stop interrupting
9  me.
10      A.  What's the exhibit number?
11      Q.  You need to listen to what I'm asking to
12  you.
13      A.  What is the exhibit number?
14      Q.  And you need to respond to what I'm saying
15  to you.  You need to stop trying to take control of
16  this proceeding.
17      A.  What is the exhibit number?
18      Q.  You need to stop trying to take control of
19  this proceeding and respond to what I'm asking you.
20      A.  I'm asking what was the exhibit number.
21      Q.  Your job here is not to ask questions, Ms.
22  Stevenson.  Your job here is to answer my questions.
23  That is your only job and that is all you are
24  permitted to do.  You've already said that you

Page 828

1  understood that with your cue card.  Now, you need
2  to participate in this deposition and you need to
3  put your copy of the daily paper down so that you
4  can listen to what I'm saying and respond to my
5  questions.  For the record Ms. Stevenson has
6  declined to participate in this deposition.  She's
7  now sitting at the opposite end of the room from the
8  court reporter and she's reading what appears to be
9  the daily paper.  Now, Ms. Stevenson --
10      A.  Now you're lying.  I'm on the table one
11  chair from her.
12      Q.  You're not where I've asked you to sit.
13      A.  One chair from her.
14      Q.  Can we agree that you're not where I've
15  asked you to sit?
16      A.  And the way you're posing me is I'm way
17  across the room.  There is no across the room in
18  here.  Don't lie.
19      Q.  For the record the court reporter is at one
20  end of the table, you are near the other end.
21      A.  No, I'm not near the other end.  I'm a chair
22  from her.
23      Q.  You're right.  There's one chair between you
24  and the court reporter.

11 (Pages 825 to 828)

Merrill Legal Solutions
(617) 542-0039

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                02/22/2007

Page 829

1    A. Okay.
2    Q. There's also seven feet between you and the
3  court reporter.
4    A. The way you're posing me, you're saying like
5  I'm over in the corner.
6    Q. You are farther from the court reporter than
7  you reasonably should be.
8    A. No. That's what you want me to be. You
9  don't control this.
10   Q. I do control this.
11   A. No, you don't. I want the spelling of her
12  name.
13   Q. Ms. Stevenson, you're not in control of this
14  proceeding.
15   A. I want the spelling of her name.
16   Q. This is an official court proceeding.
17   A. I want to know about the exhibit because
18  there's something on it unfamiliar to me.
19   Q. Ms. Stevenson, we'll get to that.
20   A. And I do not agree with the exhibit.
21   Q. There's nothing for you to agree with.
22  There's no question pending.
23   A. You asked me was it familiar.
24   Q. Your job here is as a witness.

Page 830

1    A. You asked me was something familiar --
2    Q. You are to respond to my questions only.
3    A. -- to that exhibit and it's not. I've asked
4  you a question. I've posed a question. I've
5  directly shown you a specific part of that exhibit
6  and you refuse to answer the question about the
7  first exhibit.
8    Q. That's right, Ms. Stevenson. I'm not here
9  to answer your questions.
10   A. So I cannot cooberate the first exhibit.
11   Q. I haven't asked you to do that.
12   A. Yes, you did.
13   Q. We'll get back to that exhibit in a minute.
14   A. Yes, you did.
15   Q. And for the record Ms. Stevenson has again
16  tried to read her daily paper rather than
17  participate in these proceedings. Ms. Stevenson, I
18  will represent to you that your behavior this
19  morning constitutes contempt of two separate court
20  orders. You have been ordered by two separate
21  judges at the Federal bench to appear for deposition
22  and to cooperate in good faith in those proceedings.
23  You are utterly failing to do that, and you have
24  done everything you can to obstruct this deposition.

Page 831

1  And as I tried to say to you before you started
2  interrupting me, your behavior here has made this
3  take far longer than is reasonable and far longer
4  than is normal, and as such, if you continue to
5  refuse to participate in this deposition, there is
6  no chance that we're going to conclude this
7  proceeding here today, we're going to bring your
8  misconduct before the court and in all likelihood we
9  will have to attempt to continue your deposition on
10  another occasion. I've made that representation to
11  you. I assume you understand me despite the fact
12  that you're sitting with your back to the court
13  reporter and reading the daily paper. With that
14  understanding we'll move on.
15       Ms. Stevenson, you've registered some
16  sort of complaint about the document that the court
17  reporter has marked as Exhibit 47. I've made this
18  available to you previously and you've had several
19  minutes to review it. For the record it's a
20  one-page document with less than ten lines of text.
21  I've placed it before you again as you've asked me
22  to do. Would you like an opportunity to review it
23  further?
24   A. I asked what is this? Who is this?

Page 832

1    Q. Ms. Stevenson, your job is not to ask
2  questions. Your job is to answer questions. The
3  question is, do you recognize this document --
4    A. No.
5    Q. You don't recognize the document --
6    A. No.
7    Q. -- marked as Exhibit 47?
8    A. No.
9    Q. Do you see a signature at the bottom of that
10  page?
11   A. No, I don't recognize it.
12   Q. That's not the question. The question is,
13  do you see a signature?
14   A. Didn't I just say no?
15   Q. No, you said I don't recognize the document.
16   A. You said is there a signature at the bottom
17  of the page.
18   Q. And your response is no, I don't recognize
19  the document.
20   A. I don't recognize the document.
21   Q. That's not the question. The question --
22   A. That's the answer.
23   Q. No, it's not.
24   A. Yes, it is.

12 (Pages 829 to 832)

Merrill Legal Solutions
(617) 542-0039

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                02/22/2007

Page 833

1    Q. It's not responsive, Ms. Stevenson --
2    A. Yes, it is.
3    Q. -- and it's totally inappropriate.
4    A. Yes, it is.
5    Q. The question --
6    A. I answered it, no, I don't recognize the
7  document.
8    Q. Okay. I understand your testimony that you
9  don't recognize the document. That question has
10 been asked, answered and we're moving on. The next
11 question is. Do you see a signature on the document
12 marked as Exhibit 47?
13   A. No.
14   Q. You don't see a signature on that page?
15   A. I don't recognize the document.
16   Q. That's not the question. We've established
17 that you claim not to recognize this document which
18 bears your signature. The question now is. Looking
19 at the document, do you see a signature on the
20 paper?
21   A. I'm not looking at the document so I don't
22 see it.
23   Q. Ms. Stevenson, look at the document.
24   A. I have a question about this document, its

Page 834

1  authenticity. I don't think this is a document and
2  I think it's a forgery.
3    Q. You think that's a forgery of your
4  signature? For the record Ms. Stevenson is
5  continuing to look at what appears to be the fashion
6  section of the daily paper rather than the exhibit
7  placed in front of her. Now, Ms. Stevenson, I'm
8  going to ask you to put the paper down. Will you do
9  that?
10   A. What paper?
11   Q. The newspaper sitting in your lap. I'm
12 going to ask you put that away.
13   A. It's in my lap. I thought we was in a
14 deposition.
15   Q. We are in a deposition.
16   A. Then why you concerned about what's in my
17 lap?
18   Q. Because this is an official court proceeding
19 and you need to pay attention to what's going on in
20 rather than reading the paper.
21   A. Didn't I answer the question?
22   Q. No, you didn't.
23   A. Yes, I did.
24   Q. Ms. Stevenson --

Page 835

1    A. I said I don't believe this is an authentic
2  document that was presented to me whenever, whatever
3  was supposed to have been done to it.
4    Q. Okay. I understand what you've said.
5    A. I think it's a forgery.
6    Q. I understand what you've said.
7    A. I need you to authenticate it.
8    Q. It's not my job to authenticate anything.
9    A. Well, I don't recognize anything about this.
10 I don't think it's valid. I don't think it's real.
11   Q. I understand what you say. Now, what I'm
12 asking you to do is put the newspaper away. Will
13 you do that?
14   A. Sure.
15   Q. Please do. And put it back in your bag
16 where you got it.
17   A. Here. I'll put it right here.
18   Q. Put it back in your bag where you got it.
19 Now, Ms. Stevenson, I've placed before you an
20 exhibit marked as No. 47. Please take a look at it.
21   A. I did.
22   Q. Do you see a signature on that page?
23   A. No.
24   Q. You don't see a signature in the bottom

Page 836

1  center of the page?
2    A. No.
3    Q. Will you look at the document?
4    A. I've looked at the document.
5    Q. You're not looking at it now. I'm going to
6  direct your attention specifically to the bottom
7  center of this page.
8    A. Um-hmm.
9    Q. Please look where I'm pointing to it.
10   A. Um-hmm.
11   Q. You're not doing what I asked you to do.
12   A. I've looked at the document and I've raised
13 my objections.
14   Q. You can raise your objections, but as has
15 been made clear to you. You can make whatever
16 objection you want and then you must respond to the
17 question.
18   A. I just did.
19   Q. No, you did not. The question is. Look at
20 where I'm pointing on the document.
21   A. Um-hmm.
22   Q. Will you do that? You're not looking at the
23 document. You're looking at me.
24   A. Um-hmm.

13 (Pages 833 to 836)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                    02/22/2007

Page 837

1    Q. Do you see a signature there?
2    A. Uh-uh.
3    Q. You don't see a signature?
4    A. Uh-uh.
5    Q. So for the record Ms. Stevenson has
6  testified under oath that she doesn't see a document
7  -- strike that. Ms. Stevenson has testified under
8  oath that she doesn't see a signature in the center
9  of the document that we've marked as Exhibit 47.
10  That's your testimony under oath, you don't see a
11  signature?
12    A. I don't see a signature.
13    Q. Well, I'll represent for the record that, in
14  fact, this is an errata sheet that was prepared to
15  the first session of Ms. Stevenson's deposition and,
16  in fact, the jurat reads, "Signed under the pains
17  and penalties of perjury this 4th day of October
18  2006," and under that appears the signature of
19  Janice L. Stevenson. Now, Ms. Stevenson, you
20  understand that your statements here today are made
21  under oath; is that right?
22    A. No.
23    Q. You don't understand that you are under
24  oath?

Page 838

1    A. No.
2    Q. You recall the court reporter swearing you
3  in?
4    A. Yes.
5    Q. And she told you that the statements you
6  make here today you are swearing to the truth, the
7  whole truth --
8    A. Yes.
9    Q. -- and nothing but the truth?
10    A. Yes.
11    Q. So you do understand that you're under oath?
12    A. I understand, and I just told you I had a
13  question about this sheet of paper.
14    Q. Ms. Stevenson, you're being completely
15  obstructionist. That's fine. I understand your
16  testimony. We're moving on to another subject.
17    A. And it's a forgery.
18    Q. We're moving on to another subject.
19    A. It's a forgery.
20    Q. It's a forgery?
21    A. Yes.
22    Q. But you say you see no signature at all?
23    A. I don't see my signature.
24    Q. That's not what I asked you.

Page 839

1    A. Then who's signature is this?
2    Q. I'm not here to answer you question, Ms.
3  Stevenson. The question pending to you was --
4    A. Why should I verify someone else's
5  signature? -
6    Q. Your job is to answer any question I pose to
7  you. That's your purpose for being here.
8    A. Then whose is it?
9    Q. Ms. Stevenson, your job is not to ask me
10  questions. Your job, your only job and the only
11  thing you are permitted to do here today is to
12  answer my questions. It's not to ask questions of
13  me. It's not to debate with me. It's not to engage
14  in any of this other misconduct. This can be go
15  very smoothly, very quickly if you cooperate. Now,
16  I'm going to give you an opportunity to do this
17  again. Do you understand that the statements you
18  make here today are made under oath?
19    A. No.
20    Q. You don't understand that?
21    A. No.
22    Q. What about that do you not understand?
23    A. I don't believe I should be lying.
24    Q. You understand that you have been sworn in

Page 840

1  by the court reporter; is that right?
2    A. I thought you asked me another question.
3    Q. I'm trying to clarify your testimony.
4    A. Yes.
5    Q. You understood that you were sworn in by the
6  court reporter?
7    A. Yes.
8    Q. And you understood that by giving you that
9  oath --
10    A. I'm not going to lie.
11    Q. And the statements you make here are made
12  under oath and subject to the pains and penalties of
13  perjury?
14    A. Yeah.
15    Q. You do understand that?
16    A. Yeah.
17    Q. So you do understand that the statements you
18  make here today are made under oath?
19    A. Okay.
20    Q. You do understand that, yes?
21    A. Okay.
22    Q. I'm going to need a yes or no response. You
23  do understand that the statements you're making here
24  are made under oath?

14 (Pages 837 to 840)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 841

1    A. I've answered the question.
2    Q. I don't care if you've answered the
3  question. You need to answer --
4    A. I've answered the question.
5    Q. That's not responsive.
6    A. Yes, it is.
7    Q. No. Ms. Stevenson, you need to answer --
8    A. I've answered the question.
9    Q. That's not a proper objection.
10   A. I've answered the question. It's not an
11 objection. I've answered the question.
12   Q. And you need to answer it again. If I pose
13 the same question to you twice --
14   A. I've answered the question.
15   Q. You have not answered the question.
16   A. I've answered the question.
17   Q. To the extent that you've responded to it,
18 you've given inconsistent responses.
19   A. I've answered the question.
20   Q. You need to stop interrupting.
21   A. I've answered the question.
22   Q. You have not answered.
23   A. It is the answer.
24   Q. All right. I'm going to make the record

Page 842

1  clear. I'm going to give you an opportunity to do
2  this one more time.
3    A. I've answered the question.
4    Q. Then you need to answer it again.
5    A. I do not recognize this sheet of paper.
6    Q. That's not the question.
7    A. I cannot verify anything on this paper.
8    Q. What I'm asking you, Ms. Stevenson --
9    A. I cannot verify.
10   Q. I haven't asked you to verify anything.
11   A. Yes, you are.
12   Q. Don't ask me what I'm asking you, Ms.
13 Stevenson.
14   A. You asked me to verify this.
15   Q. It's unresponsive to the question.
16   A. That's my understanding.
17   Q. It's unresponsive to the question.
18   A. That's my understanding. You want me to
19 verify this piece of paper.
20   Q. And I'm telling you that your understanding
21 is false, it's wrong. That's not what I'm asking
22 you to do.
23   A. Then what do you want me to do? I see it.
24   Q. Okay. You see the paper?

Page 843

1    A. I see the paper.
2    Q. But we need to back up a little bit because
3  you've given some inconsistent responses.
4    A. No, no. I've given answer you don't want on
5  the record.
6    Q. No, I want a clear record.
7    A. I've answered the question.
8    Q. You don't even know what the question is.
9    A. I've answered it. You keep asking the same
10 one.
11   Q. Which is entirely my right to do if you keep
12 giving inconsistent responses. Now, Ms. Stevenson,
13 I've asked you to put the paper away. You keep
14 looking at this newspaper.
15   A. No, I'm not. I'm looking at this.
16   Q. What is that?
17   A. These are my cue cards. You say you can't
18 hear me. You say you don't understand me.
19   Q. I've asked you to put the newspaper away in
20 your bag. You refuse to do that; is that right?
21   A. The newspaper is not a factor here.
22   Q. The newspaper is a factor here.
23   A. This exhibit it. This is a forgery.
24   Q. All right. Ms. Stevenson, I've asked you to

Page 844

1  put the newspaper away. You've declined to do that;
2  is that right?
3    A. No.
4    Q. It's still sitting on the table.
5    A. I have put it away.
6    Q. I'm going to ask you to put it in your bag.
7    A. No, I'm not going to put it my bag. It's
8  away.
9    Q. It's away. It's on the table in front of
10 you ane you --
11   A. No, it's not in front of me. The exhibit is
12 in front of me.
13   Q. For the record the exhibit is immediately in
14 front of Ms. Stevenson, the newspaper is in front of
15 her left arm by about 12 inches. Is that right?
16   A. Is this about the exhibit?
17   Q. No, Ms. Stevenson. I'm trying to back up so
18 that we can proceed through this in a reasonable
19 and --
20   A. You keep backing up. You keep on about
21 being behind.
22   Q. Ms. Stevenson, the reason we're behind is
23 because your conduct here is completely inexcusable
24 and obstructionist.

15 (Pages 841 to 844)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                    02/22/2007

Page 845

1    A.  No, the reason we're behind is because I've
2   answered this question.  You keep asking me the --
3    Q.  You won't even let me get the question out.
4    A.  You asked me.  I've answered it.  You keep
5   asking the same thing.  It's the same answer.
6    Q.  All right.  So let's go through this one
7   last time to make sure the record ask clear.  Do you
8   understand that you are under oath here today?
9    A.  Yes.
10    Q.  So you understand that statements you make
11   here in this proceeding are subject to the pains and
12   penalties of perjury?
13    A.  Yes.
14    Q.  Now, I'm asking you to take a look at the
15   document that we marked as Exhibit 47.
16    A.  Didn't I examine that already?
17    Q.  I'm setting it in front of you so you can
18   refer to it to the extent you see fit.  Okay.  I've
19   placed before you the document marked as Exhibit 47.
20   Your testimony is that you don't recognize this
21   document?
22    A.  That's right.
23    Q.  Now, I'm directing your attention to the
24   bottom center of the page.

Page 846

1    A.  Okay.
2    Q.  Do you see a signature here?
3    A.  I see something.  I cannot verify what it is
4   or whose is it.
5    Q.  Do you see a handwritten name?
6    A.  No handwritten name.
7    Q.  Where I'm pointing right there.
8    A.  That's a signature.
9    Q.  I just asked you if it was a signature and
10   you told me --
11    A.  You said a handwritten name.
12    Q.  A handwritten name is a signature for
13   purposes of my --
14    A.  No.  A handwritten name is a handwritten
15   name.
16    Q.  Stop it.  So we've established that there is
17   a signature at the bottom of Exhibit 47; is that
18   right?
19    A.  I guess we have.
20    Q.  And, so in fact, that signature reads Janice L.
21   Stevenson, right?
22    A.  I can't verify that.
23    Q.  You can't tell me what that says?
24    A.  I can't verify the signature.

Page 847

1    Q.  I'm not asking you to verify the --
2    A.  Yes, you have.
3    Q.  Ms. Stevenson, I'll tell you what the
4   questions are.
5    A.  This is how I see it.  It is, it is my
6   perception -- you want me to lie?
7    Q.  No, Ms. Stevenson.  I want you to cooperate
8   in this deposition.
9    A.  Because if I say yes, it will be a lie and
10   I've taken an oath.  You want me to perjure purger
11   myself?
12    Q.  Ms. Stevenson, you've already perjured
13   yourself --
14    A.  When?
15    Q.  -- throughout this proceeding.
16    A.  When?  When?  I've never lied.
17    Q.  You have repeatedly perjured yourself and
18   it's established on the record.
19    A.  Show me the record.  Show me the record.
20   You just said I perjured myself?
21    Q.  That's right.
22    A.  I take my oath seriously.
23    Q.  All right.
24    A.  Now why are you calling me a liar?

Page 848

1    Q.  We have established --
2    A.  Stop it.
3    Q.  We have established --
4    A.  Stop it.
5    Q.  -- that there's a signature at the bottom of
6   Exhibit 47.
7    A.  That's what you tell me.
8    Q.  Now, that was your testimony.
9    A.  No.
10    Q.  Ms. Stevenson, you testified a few moments
11   ago --
12    A.  No, no, no.  I answered your question.  You
13   testified and --
14    Q.  I'm not here to testify.  My only job is to
15   ask questions.  The question I asked of you a few
16   minutes ago was whether you see a signature written
17   at the bottom center of Exhibit 47, and you
18   testified that you did.  Do you recall that?
19    A.  I recall that.
20    Q.  Okay.  So we've established that there's a
21   signature at the bottom center of this page?
22    A.  Now you want me to verify it.
23    Q.  I haven't asked you to do anything.
24    A.  Yes, you did.

16 (Pages 845 to 848)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                   02/22/2007

Page 849

1    Q.  You can't jump ahead of my questions.  You
2  need to respond --
3    A.  No, I'm jumping back.
4    Q.  -- only to what I'm ask you.  I'm the one
5  that controls the pace of this proceeding.  I'm the
6  one that poses the questions --
7    A.  Well, you keep going back.
8    Q.  -- and your only job -- which is my right to
9  do.  Now, Ms. Stevenson, we've established the
10  signature in the bottom --
11    A.  Who is this?
12    Q.  Ms. Stevenson, your job is to -- for the
13  record --
14    A.  See, I keep asking about Exhibit 47.
15    Q.  For the record I'm going to try to explain
16  to you what's going on here and I'm going to
17  represent to you that it's not my job here to answer
18  your questions.  My job here is to take your
19  testimony under oath, and you're interfering with
20  that to a remarkable degree.  And as far as
21  Neighborhood House is concerned, you are in
22  continued contempt of two separate Court Orders.
23  But as part of an effort to move this forward, I'm
24  going to explain to you the issue that you've

Page 850

1  pointed out with Exhibit 47.
2    A.  Why don't you just --
3    Q.  Ms. Stevenson, stop it.  Exhibit 47 is
4  marked with a sticker supplied by the court
5  reporter.  That's what makes it an exhibit.  It has
6  your name, exhibit number, No. 47 and a date below
7  and the letters MJ Manzi are the letters of the
8  court reporter.  Do you understand that?
9    A.  Okay.
10    Q.  So does that answer your question?
11    A.  Yes.  Why didn't you just answer --
12    Q.  It's not my job to answer your questions.
13    A.  You answered it now.
14    Q.  I'm answering it in a good faith effort to
15  try to move this forward.  I'm not going to answer
16  your question.  I'm not --
17    A.  No, you're not.
18    Q.  Now, please just participate in this
19  proceeding and we can try to move this along.
20    A.  Can she verify whose signature this is?
21    Q.  Ms. Stevenson, your job here is not to ask
22  me questions.
23    A.  Can she verify whose signature this is?
24    Q.  I don't know how other to tell you that I'm

Page 851

1  not going to respond to your questions.  Your job is
2  to listen to my questions and answers them.
3    A.  I did.
4    Q.  You certainly did not.
5    A.  I did.
6    Q.  Now, we've established that there's a
7  signature in the bottom center of this page.
8    A.  I can't verify it for you.
9    Q.  I haven't asked you to verify the accuracy
10  of this signature.
11    A.  I can't verify even if it's the person whose
12  name is written above.
13    Q.  And, in fact, the person whose name is typed
14  on this document is you; is that right?
15    A.  That's --
16    Q.  This is Janice Stevenson.  Do you see that?
17    A.  I see the typewritten information.
18    Q.  And, in fact, it says Janice L. Stevenson;
19  is that right?
20    A.  I see the typewritten information.
21    Q.  That's not responsive to my question.
22    A.  Yes, it is.
23    Q.  No.  My question is.  The typewritten
24  information that you see says Janice L. Stevenson;

Page 852

1  is that right?
2    A.  I see it.
3    Q.  I'm not asking you what you see.  I need you
4  to respond yes or no.
5    A.  Yes, I see it.
6    Q.  You see it and it says Janice L. Stevenson?
7    A.  Yes, I see it.
8    Q.  I'm not asking you if you see it.
9    A.  That's the answer.
10    Q.  That is not the answer.
11    A.  That is the answer.
12    Q.  Ms. Stevenson, you are being extraordinarily
13  evasive for no reason whatsoever.
14    A.  It's not evasive.
15    Q.  It is evasive.
16    A.  It is not.  You want me to lie.
17    Q.  No, Ms. Stevenson.
18    A.  You want me to lie.
19    Q.  I want you to cooperate.
20    A.  You want me to verify something.
21    Q.  I haven't asked you to verify anything.
22    A.  You asked me to verify and I can't.
23    Q.  I am not asking you to verify anything.
24    A.  Yes.  That's my perception as a reasonable

17 (Pages 849 to 852)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                    02/22/2007

Page 853

1 person.
2     Q. Ms. Stevenson, you are so far from
3 reasonable now it's beyond explanation. Your
4 behavior here --
5     A. You were banging on the desk.
6     Q. Ms. Stevenson, your behavior here is
7 completely inexcusable.
8     A. You are banging.
9     Q. You are in contempt of two separate Court
10 Orders.
11     A. I don't remember those.
12     Q. You don't remember the Court Orders that you
13 appear --
14     A. Do you have a copy?
15     Q. Ms. Stevenson, your job is not to engage in
16 a debate with me.
17     A. Do you have a copy?
18     Q. I'm not going to answer your questions. I'm
19 not going to let you take control of this
20 proceeding.
21     A. Can you verify this for me?
22     Q. I'm not verifying anything for you, Ms.
23 Stevenson. My job here is to ask you questions.
24     A. These are unverified exhibits.

Page 854

1     Q. I understand your statement. It's not my
2 job to present verified documents for you. Your --
3     A. So can you present false documents in a
4 deposition?
5     Q. Ms. Stevenson, I can set anything I want in
6 front of you. You're here as a witness.
7     A. You want me to agree to it?
8     Q. Ms. Stevenson, all I can do is show you
9 documents --
10     A. And --
11     Q. Stop interrupting. All I can do is show you
12 documents. Stop interrupting me, Ms. Stevenson.
13     A. Am I yelling?
14     Q. No, you're talking over me.
15     A. I'm not talking over you.
16     Q. You are. You are interrupting me repeatedly
17 and you need to stop. And as we established. You
18 need to let me get what I'm saying out before you
19 respond.
20     A. You've changed the mood of this deposition
21 from the moment you banged on that desk.
22     Q. I'm not going to respond to that, Ms.
23 Stevenson.
24     A. Well, you're banging.

Page 855

1     Q. I haven't banged on anything.
2     A. The record will reflect you're banging.
3     Q. The record will reflect only spoken
4 statements.
5     A. You banged at me.
6     Q. Are you done?
7     A. Are you going to be angry?
8     Q. Ms. Stevenson, I'm just here to take your
9 deposition.
10     A. Then take it. Don't be angry.
11     Q. Ms. Stevenson --
12     A. You don't have to have an attitude to take a
13 deposition.
14     Q. Ms. Stevenson, I'm going to take a
15 deposition how I see fit.
16     A. Attitude, anger, your belligerent banging,
17 that's not valid. Would you be doing that if I was
18 a man?
19     Q. Ms. Stevenson, I'm not going to let you
20 control this proceeding. I'm not going to let you
21 control the pace of it. I'm not going to let you
22 control the tone of it. I'm going to ask the
23 questions as I see fit --
24     A. Oh, oh. But you can interject in an angry

Page 856

1 tone.
2     Q. Ms. Stevenson, I'm going to ask the
3 questions the way that I see fit and the way that I
4 see fit happening.
5     A. No. I'm going to object.
6     Q. You can object and that's all you can do.
7 You can object and move on.
8     A. I'm going to file a complaint.
9     Q. Ms. Stevenson, you're in contempt of two
10 separate Court Orders and --
11     A. You're not a judge.
12     Q. Ms. Stevenson, you've already been ruled in
13 contempt of Court Orders.
14     A. No.
15     Q. I'm going to try and move this forward
16 because you've asked to see the Court Orders
17 pertaining to your appearance here today. I'm
18 showing you a document that was marked as Exhibit 45
19 at a prior session of your deposition for which you
20 failed to appear.
21     A. Then how do I know what happened at the
22 deposition?
23     Q. That's not relevant. I'm just telling you
24 why the document is marked 45.

18 (Pages 853 to 856)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                          02/22/2007

Page 857

1     A.  Then why you give me 45 -- this is 47.
2     Q.  That's right.  And the reason that this
3  document is marked 45, an earlier number than 47 is
4  because we marked it at the last session of your
5  deposition for which you failed to appear.
6     A.  I wasn't here.
7     Q.  That's what I just said.
8     A.  Then how can I verify a document when I
9  wasn't there?
10    Q.  I'm not asking you to verifying anything
11  that happened there.
12    A.  Well, I can't review documents for a
13  deposition I wasn't there.
14    Q.  The only thing that's pertinent to the
15  session of your deposition that you didn't show up
16  on is why this is numbered 45.  You've asked why
17  this is numbered 47, the document that we marked
18  today.
19    A.  46.
20    Q.  We'll get to that, Ms. Stevenson.
21    A.  Is this still regarding the deposition when
22  I wasn't there?
23    Q.  Yes, we marked two exhibits.
24    A.  I can't review documents at a deposition

Page 858

1  when I wasn't there.
2     Q.  Well, you couldn't review them when you
3  weren't there.  You can review them now.
4     A.  Well, I wasn't there.
5     Q.  That's right.  Now, I'm placing before you a
6  document marked Exhibit 45.
7     A.  But I wasn't there.
8     Q.  I put it before you.  Understood.
9     A.  Then how can I verify something when I
10  wasn't there?
11    Q.  I'm not asking you to verify anything about
12  what happened there.
13    A.  How can I if I wasn't there?
14    Q.  I'm not asking you ab out what happened
15  there.
16    A.  You said a deposition.
17    Q.  I'm telling you that's when the No. 45 was
18  affixed to that document.
19    A.  But I wasn't there.
20    Q.  Fine.  We've established that.
21    A.  But I can't verify something when I wasn't
22  there.
23    Q.  I haven't asked you to verify anything.  Ms.
24  Stevenson, I've placed before you a document marked

Page 859

1  as Exhibit 45.
2     A.  Well, if there was no one was at that
3  deposition but attorneys --
4     Q.  Ms. Stevenson, stop asking me questions.  It
5  serves no purpose.  Your job here is to just sit
6  there and answer the questions I ask you.  You're
7  not allowed to ask me questions and I'm not going to
8  answer them.  Now, I've placed before you an exhibit
9  marked as No. 45.  I'll represent to you that it's a
10  Court Order in this matter.  Please take your time
11  and take a look at it.
12    A.  Well, what is it about?
13    Q.  I'm not going to give you any information.
14  My job is not to testify here today.  I've placed
15  the document before you.  It's a Court Order in this
16  proceeding --
17    A.  Oh, so this Court Order isn't final?
18    Q.  That's not the question, Ms. Stevenson.
19    A.  It's pending review.
20    Q.  No, Ms. Stevenson.  I'm not going to
21  entertain your legal debate with me.
22    A.  Yes, it is.
23    Q.  Your only job is to look at the document
24  I've placed before you.

Page 860

1     A.  I don't recognize it.
2     Q.  You don't recognize the order of the court
3  placed before you, that's your testimony?
4     A.  No, because it's under review.
5     Q.  How do you know it's under review if you
6  don't recognize it?
7     A.  I don't recognize it.
8     Q.  Then how do you know it's under review?
9     A.  Because it's the last thing filed in this
10  claim.  Whose order is this?  Is it Woodlock's?
11    Q.  Ms. Stevenson, take your time and review the
12  document --
13    A.  Who signed it?
14    Q.  -- it will answer all your questions.  Let
15  me know when you've had a chance to review it.
16    A.  There's no signature on this.
17    Q.  Let me know when you've had a chance to
18  review the document.
19    A.  I don't understand this.
20    Q.  I haven't asked you to understand anything.
21    A.  I haven't finished reviewing it.  I don't
22  understand it.
23    Q.  Take your time to review it to the --
24    A.  Can I take it with me?

19  (Pages 857 to 860)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                     02/22/2007

---

Page 861

1    Q. I'll send you a copy of it after this
2    proceeding just as I've done with all the other
3    exhibits.
4      A. I'd like to review it over night.
5      Q. Ms. Stevenson, it's a five page document in
6    double spaced type. Take your time and review it
7    now.
8      A. It's going to take me an hour.
9      Q. It's going to take you an hour to read a
10   five page document?
11     A. Well, didn't you ask me to review it?
12     Q. Take your time.
13     A. Review, familiarize, that's a long time.
14     Q. Take a look at it sufficient to determine
15   whether or not you recognize it and let me know when
16   you've done that.
17     A. Can I go sit out there?
18     Q. No.
19     A. You're going to stay here and look at me?
20     Q. Yes.
21     A. 12/20. And who is MD O'Connor?
22     Q. Ms. Stevenson, I'm not going to answer your
23   questions. That's not the purpose of this
24   proceeding. I've marked the document that you need

---

Page 862

1    to review. Let me know when you've done that. And
2    for the record Exhibit 45 is Magistrate Judge
3    Alexander's order of November 7, 2006. It's a five
4    page double spaced document.
5      A. See, I don't understand this. What do they
6    mean by "none of which may be adequately -- "none of
7    which may adequately be described as routine"? What
8    does that mean?
9      Q. That's Magistrate Judge Alexander's
10   representation that you have engaged in misconduct
11   in this matter by filing frivolous motions. And I'm
12   not going to go through here and explain Magistrate
13   Judge Alexander's order to you. The question on the
14   table is. Have you had enough chance to familiarize
15   yourself with the document sufficient to determine
16   whether or not you've seen it before?
17     A. No.
18     Q. All right. You need more time to review the
19   document; is that right?
20     A. So you're saying --
21     Q. I'm not saying anything.
22     A. Yes, you did. You just said it.
23     Q. The question is --
24     A. It's on the record. I'm going to have her

---

Page 863

1    read it back.
2      Q. You're not going to have her do anything,
3    Ms. Stevenson.
4      A. Yeah. You're saying something you're not
5    remembering. That's scary.
6      Q. Ms. Stevenson --
7      A. You said, "none of which may adequately be
8    described as routine." The judge is saying, that
9    means I'm behaving misconduct and other trifle --
10     Q. I'm not going to engage in a debate with
11   you.
12     A. It's not a debate.
13     Q. I'm not going to have a discussion with you
14   about the meaning of Magistrate Judge Alexander's
15   order.
16     A. Do you understand what I'm saying then?
17     Q. Ms. Stevenson, I'm not here to respond to
18   your questions. The only thing you have to do right
19   now is take a look at that document --
20     A. You told me to review it.
21     Q. That's right.
22     A. Okay. I'm reviewing it.
23     Q. And when you've had a chance to do that
24   sufficiently --

---

Page 864

1      A. If I have questions, who am I going to ask?
2      Q. No one. Take a look at it and when you've
3    had a chance to familiarize yourself with it
4    sufficient to tell whether or not --
5      A. I can't --
6      Q. Stop interrupting me. When you've had a
7    chance to review the document, I will --
8      A. Will you listen to me?
9      Q. I will let you speak when I get my statement
10   out.
11     A. I haven't finished.
12     Q. You need to stop interrupting me.
13     A. Because every time you make a statement and
14   I have a question, you don't want to hear my
15   questions.
16     Q. It's not my job to answer your questions.
17   I'm not going to do that.
18     A. But if I have a question about this, who's
19   going to answer it before I can truthfully without
20   perjury respond to it?
21     Q. Ms. Stevenson, none of my questions are
22   going to call you to commit any kind of perjury.
23     A. You wanted me to last time.
24     Q. The questions I'm going to ask you relate to

---

20 (Pages 861 to 864)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 865

1  your familiarity with the document.
2      A. I'm not familiar. I'm reading it now.
3      Q. All right. Take a look at it and let me
4  know when you've gotten a chance to familiarize
5  yourself with it.
6      A. This is review. I objected to whatever that
7  woman said.
8      Q. Let me know when you've had a chance to
9  review the document.
10     A. What does this mean?
11     Q. I'm not going to answer your questions, Ms.
12 Stevenson. Your job is to review that document and
13 let me know when you've had a chance to take a look
14 at it.
15     A. Can I mark this --
16     Q. No, don't mark the document.
17     A. Can I get a copy?
18     Q. I will send you a copy of the document.
19 We've already established it's an order of the
20 court. Ms. Stevenson, your only job is to review
21 the document.
22     A. What does this mean?
23     Q. Ms. Stevenson, I'm not going to answer your
24 questions and I don't know how many times I'm going

Page 866

1  to have to tell you this. Your only job is to read
2  the document and tell me whether you've seen it
3  before.
4      A. This is a lot to read. Can we take a break?
5      Q. Why don't we try to get through a few
6  questions and then I'll take a break.
7      A. The questions I have?
8      Q. I'm not going to answer any of your
9  questions. I just want to establish some very
10 basic. For the record Exhibit 45 is a five page
11 double spaced document. You've had more than 15
12 minutes to review it. It's a document you've seen
13 before. It's an order of the court that's been
14 brought to your attention not only at the Magistrate
15 Judge proceedings but again by Judge Woodlock at a
16 hearing of January 23rd.
17     A. Yes, and I've objected to and raised
18 portions which no one has answered.
19     Q. Well, Ms. Stevenson, I'll just represent to
20 you that we understand that you filed objections to
21 the Magistrate Judges's order.
22     A. No one answered it, and I don't think that's
23 fair.
24     Q. Ms. Stevenson, it is our possession that --

Page 867

1      A. I don't think I have access to court like
2  attorneys do. Maybe it's a race thing, but I don't
3  have the same access.
4      Q. Ms. Stevenson, we understand that you
5  filed --
6      A. How can you understand I have access?
7      Q. Ms. Stevenson, let me get this statement
8  out. We understand that you have filed objections
9  to the Magistrate Judge's order. It is our position
10 that Judge Woodlock took up those objections at the
11 January 23rd hearing and overruled them.
12     A. Well, he was wrong in doing that.
13     Q. Well, I'm sure he'll be happy to hear your
14 views on that.
15     A. Yeah, and I'm appealing that. I haven't
16 finished. I haven't finished.
17     Q. I just want to bring your attention to a
18 specific document so we can move on.
19     A. Do you want me to read it?
20     Q. I'm going to give you an opportunity to do
21 that. You asked to take a break. You've had this
22 five page document for probably 15 minutes now. But
23 I want you to look at a specific section of the
24 document so that we can try and move this thing

Page 868

1  forward. I want you to look at page 3 of the
2  document. For the record I've turned the document
3  to page 3 for Ms. Stevenson. And I want you to look
4  at paragraph 4 of the Magistrate Judge's order.
5  Have you had a chance to review that page?
6      A. I'm reading.
7      Q. Okay. Now, I want you to take a look at
8  paragraph 4 where it states that "Plaintiff's
9  deposition will continue." Do you see that?
10     A. Okay. Right here?
11     Q. Do you see that, "Plaintiff's deposition
12 will continue"?
13     A. Um-hmm.
14     Q. You understand that Magistrate Judge
15 Alexander in response to our Motion to Compel
16 ordered you to appear for further deposition
17 proceedings?
18     A. Um-hmm.
19     Q. You understand that to be the significance
20 of that language?
21     A. Under 4? You mean the paragraph language?
22     Q. You understand that Magistrate Judge
23 Alexander ordered you to appear for further
24 deposition; is that right?

21 (Pages 865 to 868)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

---

Page 869

1    A. It says here -- it gives a date though.
2    Q. That's right. She ordered you to appear on
3  a certain date. Do you understand that?
4    A. I read that.
5    Q. And, in fact, you failed to show up on that
6  date; is that right?
7    A. Yeah, but we discussed this already.
8    Q. What we discussed already is of no
9  importance but we'll move on. You understand that
10  Magistrate Judge Alexander ordered you to appear,
11  and she goes on to state in her written order that
12  "Plaintiff may assert any appropriate objections she
13  wishes during the deposition, and the court will
14  liberally interpret the validity of any objection or
15  lack thereof based on her pro se status, but is
16  hereby ordered to answer every question posed by
17  defendant in an honest clear, concise and coherent
18  manner." Do you see that?
19    A. Yeah. I've lived up to that.
20    Q. Ms. Stevenson, you have done nothing of the
21  kind.
22    A. Stop it. See, you're accusing me.
23    Q. What you're doing right now is an example.
24  That's right, Ms. Stevenson. You have engaged in

---

Page 870

1  serious misconduct in the prior sessions of
2  depositions.
3    A. Not I've been honest.
4    Q. You've been obstructionist.
5    A. I've been honest.
6    Q. I'm going to instruct you --
7    A. And I'm going to re-represent --
8    Q. Are you done? I'm going to represent to you
9  that the Magistrate Judge has ordered you to respond
10  to, and I quote, every question posed --
11    A. I have.
12    Q. -- in this matter.
13    A. I have.
14    Q. You can't refuse to answer on the grounds
15  that you think you've answered some question before
16  or because --
17    A. Well, she didn't say I had to reanswer. She
18  said every question posed.
19    Q. That's right, every question.
20    A. And I've answered.
21    Q. Well, Ms. Stevenson, I will represent to you
22  that NHC's interpretation of this order and of Judge
23  Woodlock's order --
24    A. I am a reasonable person.

---

Page 871

1    Q. If you are a reasonable person, you have
2  certainly engaged in unreasonable behavior.
3    A. And I have reasonably complied with the
4  directions.
5    Q. Well, Ms. Stevenson, in fact, Judge Woodlock
6  told you at the January 23rd hearing in this matter
7  that you had failed to comply with those
8  instructions and that you were in contempt of court.
9  Do you recall that?
10    A. No.
11    Q. You don't recall that?
12    A. You got a transcript of that?
13    Q. Let's mark that.
14      (Marked, Exhibit 48, transcript of the
15  January 23, 2007 hearing.)
16    Q. For the record Ms. Stevenson has testified
17  that she does not recall Judge Woodlock instructing
18  her that she was, in fact, in contempt of Magistrate
19  Judge Alexander's order?
20    A. No, I don't recall her exact words and you
21  say you were quoting her exact words.
22    Q. And Ms. Stevenson has asked for a transcript
23  of those proceedings. We've marked that transcript
24  as Exhibit 48. And I would direct your attention,

---

Page 872

1  Ms. Stevenson, to the top of page 14 where Judge
2  Woodlock said to you, and I quote, "You're in
3  violation of a Court Order," and you responded --
4    A. And I --
5    Q. Let me get the question out. And you
6  responded, "Well, no, sir." And he responded to
7  you, "Yes, you are in violation of a Court Order.
8  Judge Magistrate Alexander was clear. You have an
9  obligation to appear before a deposition. You don't
10  get to make your own choices about whether or not
11  you appear or don't appear. You are ordered to
12  appear and you didn't." I'm going to show you that
13  in the transcript at the top of page 14.
14    A. Where did you get this from?
15    Q. Ms. Stevenson, I'm not going to answer your
16  questions. That's not my job here. For this to
17  move forward at all, and I will tell you, we've made
18  no progress here today, you need to cooperate in
19  response to my questions rather than trying to pick
20  apart everything I set in front of you.
21      Ms. Stevenson, have you had an
22  opportunity to review page 14 of that transcript?
23    A. I was reading it, trying to get --
24    Q. What I want you to do is take a look at page

---

22 (Pages 869 to 872)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 873

1   14.
2       A. You're taking it out of context.
3       Q. I'm not asking you to take anything out of
4   context. I'm asking you if you can rea the text
5   that I read to you.
6       A. Yeah, but I don't know what he said before
7   that.
8       Q. Ms. Stevenson, you're not here to give me
9   instructions. I'm going to give you a few minutes
10  to review that transcript. But I'm telling you that
11  the purpose of my placing it before you is --
12      A. Am I going to get a copy of this?
13      Q. Ms. Stevenson, you will get a copy of all
14  the exhibits to your deposition at the end of the
15  day. We'll mail them to your post office box. I
16  want to tell you, that the purpose of me setting
17  that transcript before you is very limited. You
18  have been twice ordered by the court to appear for
19  and cooperate in this deposition. You have failed
20  to do that. You failed to do it by refusing to
21  appear on December 20th. And as Judge Woodlock told
22  you at the January 23rd hearing, by doing that you
23  are in contempt of Magistrate Judge Alexander's
24  order. I am telling you now that your behavior here

Page 874

1   today refusing to answer the questions that I've
2   asked you and interrupting me constantly and not
3   allowing us to take measures that would provide a
4   clear transcript is further contempt of both
5   Magistrate Judge Alexander's order --
6       A. See --
7       Q. -- and Judge Woodlock's order.
8       A. If you can back up. You're not in violation
9   of the order because reasonably there are no more
10  triable issues.
11      Q. Ms. Stevenson, I'm not asking for your
12  opinion and I'm not interested in it.
13      A. Well, it's not an opinion. That's what I
14  said.
15      Q. Ms. Stevenson, Judge Woodlock told you that
16  you are in contempt of an order. Those words appear
17  in the transcript. Do you see them? It's the first
18  line of page 14.
19      A. I was reading down. Can I get a copy of
20  this?
21      Q. Ms. Stevenson, I've told you at the end of
22  the day I will mail a copy of all the exhibits of
23  your deposition to your post office box just like
24  I've done every other time.

Page 875

1       A. Can you send this to me PDF?
2       Q. No. I want you to understand that Judge
3   Woodlock told you that you were, in fact, in
4   contempt of Magistrate Judge Alexander's order. Do
5   you understand that?
6       A. No.
7       Q. You don't understand that's what he said?
8       A. I'm not in violation.
9       Q. I'm not asking you if you're in violation.
10  I'm asking you do you understand that Judge Woodlock
11  told you you're in violation of a Court Order?
12      A. It's kind of iffy.
13      Q. It's not iffy in the lease. I want you to
14  look at the first line of page 14 of that
15  transcript.
16      A. Well, look at the context.
17      Q. I want you to look at the first line of page
18  14.
19      A. Look at the context.
20      Q. Ms. Stevenson, I'm familiar with the entire
21  transcript.
22      A. Well, I'm not.
23      Q. I want you to look at the first line of page
24  14.

Page 876

1       A. Well, look at the context.
2       Q. I'm not going to do that, Ms. Stevenson.
3   I'm not going to let you take control of this
4   deposition. I want you to look at the first line of
5   page 14.
6       A. I cannot agree to that.
7       Q. Then I'm going to say to you, that the first
8   line, page 14 line 1 reads, "THE COURT: You are in
9   violation of a Court Order." Do you see those words
10  on the page?
11      A. I see them.
12      Q. Do you now understand that Judge Woodlock
13  told you that you were in violation of Magistrate
14  Judge Alexander's order?
15      A. I don't agree with that.
16      Q. I'm not asking if you agree with that. I'm
17  asking if you understand what he told you?
18      A. No.
19      Q. You don't understand what he told you?
20      A. No.
21      Q. What about that is unclear to you?
22      A. Because I think as a matter of law I was
23  not.
24      Q. So you disagree with him substantively?

23 (Pages 873 to 876)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 877

1    A. Yeah.
2    Q. But you understand his state of view, his
3  rule, his statement to you --
4    A. It wasn't a ruling.
5    Q. -- his statement to you was that you were in
6  violation of a Court Order?
7    A. We were in a hearing and I made a, you know,
8  that I could not have been in violation. As a
9  matter of law I'm not in violation.
10    Q. I'm not asking you that. What you're
11 telling me is you disagree with Judge Woodlock's
12 representation here; is that right, is that what
13 you're telling me?
14    A. Say that again.
15    Q. You disagree with Judge Woodlock's statement
16 that you're in violation of the Court Order?
17    A. I said no, sir.
18    Q. And he said in response to that, "Yes, you
19 are in violation of a Court Order"; is that right?
20    A. I said no, sir.
21    Q. I understand. I'm not asking you what you
22 said. I'm asking you what you said. I'm asking
23 you. Do you understand --
24    A. And he went to you --

Page 878

1    Q. I don't need you to read the transcript in
2  the record. Ms. Stevenson, the question is very
3  simple and you're being unreasonably evasive.
4  There's no need to drag this out.
5    A. Who's being evasive?
6    Q. You're not answering the question.
7    A. It's right here.
8    Q. Ms. Stevenson, stop it. Listen.
9    A. My last statement.
10    Q. I'm not asking you about your statement.
11 I'm asking about what Judge Woodlock told you at the
12 January 23rd --
13    A. I'm part of this hearing here. My
14 statements matter.
15    Q. Well, that's something that we can disagree
16 about. But the question pending is. Judge Woodlock
17 told you that you were in contempt of a Court Order;
18 is that right? Do you understand that?
19    A. No, not really.
20    Q. You don't understand that he said those
21 words to you?
22    A. See, at the time I stated my legal position
23 and my last statement was no, I'm not in violation.
24 At the point in time any party can move to end a

Page 879

1  lawsuit or trial if there are no more genuine issues
2  of -- you know, issues, and that's what I believe.
3    Q. I'm not asking you what you believe.
4    A. But that's what I told them.
5    Q. I understand what you told them and that's
6  not what I'm asking.
7    A. That's what I still believe.
8    Q. I don't care what you believe. My question
9  is --
10    A. And I don't see what you're saying --
11    Q. Ms. Stevenson, you're not responding to the
12 questions.
13    A. The answer is no.
14    Q. You don't understand despite the transcript
15 sitting before you that Judge Woodlock told you that
16 you were in violation of the Court Order?
17    A. I don't understand that.
18    Q. That's your testimony?
19    A. Yes.
20    Q. You don't understand that he said those
21 words to you?
22    A. I don't understand that I'm in violation --
23 yeah, I don't understand that because I'm not.
24    Q. Okay. It is your belief that he, in fact,

Page 880

1  said those words to you; is that right?
2    A. No.
3    Q. You don't know?
4    A. It's not my belief.
5    Q. So despite this transcript sitting before
6  you wherein Judge Woodlock has recorded to have said
7  to you you're in violation of a Court Order --
8    A. And Ms. Stevenson --
9    Q. Stop nit.
10    A. No, sir, I really --
11    Q. I'm not asking you for your legal
12 interpretation.
13    A. It's not a legal interpretation. It's in
14 black and white there. Then he goes on to post
15 another felony date.
16    Q. That's right. In fact, in response to your
17 statement, "Well, no, sir --
18    A. What page are you on now?
19    Q. Ms. Stevenson, stop it. In response to your
20 statement "Well, no, sir, I really" on page 14,
21 Judge Woodlock said to you, "Yes, you are in
22 violation of a Court Order. Magistrate Judge
23 Alexander was clear." Do you see those words?
24    A. What page are you on now?

24 (Pages 877 to 880)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 881

1    Q. I want you to look at page 14 now.
2    A. 13.
3    Q. I just want you to look at page 14.
4    A. 13.
5    Q. No, I'm not asking you anything about page
6  13 now.
7    A. But it relates back to this.
8    Q. I'm not asking you --
9    A. But it gives a true picture.
10    Q. I'm not asking for any sort of true picture.
11    A. You don't want a true picture?
12    Q. No, Ms. Stevenson.
13    A. I'm not going to lie.
14    Q. I haven't asked you to lie.
15    A. I'm not going to commit perjury.
16    Q. You've already done that?
17    A. I have not.
18    Q. But that's not the point.
19    A. See how agitated you get me.
20    Q. Ms. Stevenson, you understand that Judge
21  Woodlock said to you that you are in violation of
22  Magistrate Judge Alexander's order?
23    A. If I was in violation of the order.
24    Q. I'm not asking you whether you were in

Page 882

1  violation of the order.
2    A. I'm just being reasonable.
3    Q. You're certainly not. The question before
4  you is. Do you understand that Judge Woodlock told
5  you that you were in violation of a Court Order,
6  whether or not you agree with his conclusion on that
7  point?
8    A. I'm sorry. Say that again? I was reading
9  something else.
10    Q. Do you understand that Judge Woodlock told
11  you that you were in violation of a Court Order?
12    A. I don't believe I was.
13    Q. That's not the question.
14    A. But I don't think -- no, I didn't think he
15  meant it that way.
16    Q. That's not the question either. I'm not
17  asking you whether his conclusion was legally
18  correct. I'm asking you a very simple and very
19  discrete question.
20    A. I don't get it.
21    Q. Do you recall him saying to you --
22    A. I don't recall it.
23    Q. Do you understand that he, in fact, did say
24  it to you based on the transcript sitting before

Page 883

1  you?
2    A. But I don't agree with the transcript.
3    Q. You think the transcript is inaccurate?
4    A. Yes.
5    Q. So your testimony is that you believe Judge
6  Woodlock, in fact, did not tell you that you were in
7  violation of a Court Order?
8    A. I believe that he did not tell me that. I
9  believe that I was not. I would not violate an
10  order unless I had allowed procedure that says what
11  can overrule that.
12    Q. Well, Ms. Stevenson, this transcript
13  reflects that whether or not you agree with his
14  conclusion, Judge Woodlock informed you that you
15  were in violation of a Court Order. You lodged the
16  same protestation at the January 23rd hearing that
17  you just put on the record now. He told you that
18  that protestation was misplaced and that you were,
19  in fact, in violation of a Court Order. And he
20  explained to you that you have an obligation to
21  appear for and cooperate in this deposition. I
22  can't make it any more clear for you, just as Judge
23  Woodlock couldn't make it any more clear for you,
24  just as Magistrate Judge Alexander couldn't make it

Page 884

1  any more clear for you.
2          Now, I'm going to have to seek relief
3  from the court based on your refusal to participate
4  in this deposition. It is my view and it is the
5  view of Neighborhood House Charter School, that you
6  are in contempt of not only Magistrate Judge
7  Alexander's order that I placed before you as
8  Exhibit 45 which directed you to cooperate in this
9  deposition by answering every question clearly and
10  concisely and limiting your objections only to
11  statements.
12    A. I don't get that.
13    Q. What is it that you don't understand?
14    A. What are you whining about? I'm here. What
15  do you want?
16    Q. You are here but you are not participating
17  in this deposition.
18    A. I just answered the question.
19    Q. You have refused to answer nearly every
20  question I've posed to you. You have interrupted me
21  repeatedly. You have refused to sit near the court
22  reporter. You have refused to uncover your mouth.
23  You have refused to uncover your head. You have
24  attempted to answer questions with cue cards. That

25 (Pages 881 to 884)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 885

1  sort of behavior in our view --
2      A. No.
3      Q. -- constitutes continued contempt of both
4  Magistrate Judge Alexander's --
5      A. No.
6      Q. -- orders and Judge Woodlock's orders.
7      A. No.
8      Q. I'm telling you our view.  I'm not asking
9  you any questions.
10     A. No.
11     Q. And I'm telling you that, based on your
12  continued contempt of those Court Orders we will be
13  forced to seek further relief from the court.  Now,
14  you have gotten warnings that were entirely clear
15  from both Magistrate Judge Alexander and from Judge
16  Woodlock that your continued misconduct in this
17  matter would result in the imposition of sanctions
18  against you including a dismissal of this case.
19     A. I think if you go back prior too many times,
20  it doesn't have an assessment.  I've never never
21  never done what you've said I've done.
22     Q. Well, the court found to the contrary, Ms.
23  Stevenson.
24     A. I've never done it.

Page 886

1      Q. That's not relevant to anything that's going
2  on today.  The court has --
3      A. You're right, it's irrelevant.  There's
4  nothing going on here today.
5      Q. Well, Ms. Stevenson, I've told you our
6  position.  I've told you that we intend to renew our
7  request that this proceeding being dismissed based
8  on your misconduct which you have continued in this
9  proceeding today.
10     A. Then how are you going to overcome your
11  claim?
12     Q. Ms. Stevenson, I'm not going to answer any
13  questions for you.  I'm telling you --
14     A. Because if you can't overcome your claim --
15     Q. Ms. Stevenson, I'm not going to listen to --
16     A. -- can't that over time be dismissed because
17  you can't overcome your claim?
18     Q. Ms. Stevenson, I'm going to tell you what
19  Judge Woodlock said, and I need you to understand
20  the seriousness --
21     A. No, I think that's a matter of law.
22     Q. Ms. Stevenson, I think you need to
23  understand the seriousness --
24     A. Did you want information or did you just

Page 887

1  want it dismissed?  The burden is on you.
2      Q. Ms. Stevenson, you need to quit interrupting
3  me.  Now, Judge Woodlock has told you that that
4  reasoning that you just tried to put into the
5  record --
6      A. Right.
7      Q. -- that you don't need to cooperate in
8  discovery in this matter is because you have reached
9  the conclusion that your claims are meritorious --
10     A. No.
11     Q. -- are false and that you are required to
12  participate in this deposition?
13     A. It's a matter of law.  I didn't research a
14  conclusion.
15     Q. Ms. Stevenson, you have just stated your
16  view of the law.
17     A. No.
18     Q. Judge Woodlock told you that view is wrong.
19     A. No, he didn't say it was wrong.
20     Q. Judge Woodlock will dismiss this case if you
21  engage in further misconduct.
22     A. No.  He says he'd probably dismiss it, give
23  me sanctions if I don't come.
24     Q. So it's your understanding that you're only

Page 888

1  required to appear here but you don't have to
2  cooperate, that's what you're telling me?
3      A. Is that what you want?
4      Q. I'm asking for your understanding, that your
5  only obligation is to appear here today.
6      A. No.  I told you what I understood.
7      Q. That your only obligation is to appear
8  today?
9      A. No.  He says I have to appear on this date.
10     Q. And you understand from Magistrate Judge
11  Alexander's order to which Judge Woodlock referenced
12  in making his orders of January 23rd, that your
13  obligation is not to just show up here in a muffler
14  and a hat and refuse to answer questions, you have
15  to participate in this deposition in good faith, you
16  have to listen to the questions that I ask you and
17  you have to answer them fairly and concisely?  Do
18  you understand that?
19     A. I'm sorry.  What did you just say?
20     Q. You have represented -- and I'll take this
21  out of your way.  Ms. Stevenson, you have to let me
22  take the exhibit back.
23     A. I didn't read it.
24     Q. I haven't asked you to read anything more of

26 (Pages 885 to 888)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Page 889

1   it. Ms. Stevenson, you have stated or I understood
2   you to have stated that you believe the Court Order
3   in this matter requires you only to appear for this
4   deposition on this specified date. I'm telling you
5   as Judge Woodlock told you and as Magistrate Judge
6   Alexander told you, that is not the extent of your
7   obligation. Your obligation is to participate in
8   this proceeding in good faith. That includes
9   allowing us to take measures that allow for a clear
10  transcript so the court reporter can hear you. It
11  includes not interrupting me, not arguing with me,
12  not asking me questions every time I try to get
13  testimony from you, and it includes giving concise
14  and truthful and fair responses to the questions
15  that are posed to you. You have failed to do that
16  entirely. And it is our position that you are still
17  in contempt of the Court Order. You asked me what I
18  meant. I've attempted to clarify it for you. I
19  don't know what more I can do.
20      A. I still don't understand. You keep going
21  back over stuff we clarified.
22      Q. Because you continue to engage in this
23  conduct.
24      A. Why --

Page 890

1       Q. Ms. Stevenson, it's not your job to try to
2   pick apart my examination of you.
3       A. But you're confusing me.
4       Q. Ms. Stevenson --
5       A. You are confusing me.
6       Q. Ms. Stevenson --
7       A. This is your deposition. Why would you be
8   confusing me?
9       Q. That's right, Ms. Stevenson, this is my
10  deposition. I'm the one that asks the questions.
11      A. I never said it wasn't.
12      Q. I'm the one that asks the questions.
13      A. But you're confusing me.
14      Q. That's my explicit job.
15      A. To confuse me?
16      Q. Ms. Stevenson, I've done nothing to confuse
17  you. You have engaged in all kinds of
18  obstructionist and evasive conduct, and it's in the
19  utmost bad faith and we're going to have no choice
20  but to bring this back before the court. Now, I'm
21  willing to try to proceed with this and try and get
22  your testimony on the record. Are you willing to
23  try to do that?
24      A. You've gone through 47 exhibits. What was

Page 891

1   unclear to you?
2       Q. Ms. Stevenson, your job is not to debate me.
3   It's not to criticize my examination of you.
4       A. I'm puzzled.
5       Q. I'm a professional. I do this every day.
6       A. You do depositions every day?
7       Q. Ms. Stevenson, your job is not to question
8   my technique. It's not to question my defense of
9   Neighborhood House Charter School. Your job is of
10  the utmost simplicity. Your job is to sit there, to
11  listen to the questions that I've put to you and to
12  respond to them in substance fairly and truthfully.
13  You have failed to do that and you have refused to
14  do that.
15      A. Show me --
16      Q. Now I'm going to give you another chance.
17      A. Show me what I have failed to do.
18      Q. You just did it right now. You have done it
19  in response to every question I've asked of you this
20  morning. You have taken apart the Exhibit 47 and
21  refused to respond to the most basic representations
22  and questions. And you have engaged in --
23      A. You want me to say yes to something that's
24  unclear to me? That's perjury.

Page 892

1       Q. All right. I want to try and give you
2   another opportunity to participate in this
3   deposition. I've told you our interpretation of the
4   Court Orders. I've told you that in our view you
5   are in violation of them.
6       A. But if they're written down, why are we
7   interpreting them?
8       Q. Because I want you to have an understanding
9   of the consequences of your misconduct here today.
10  Both Magistrate Judge Alexander --
11      A. If you keep saying misconduct because you
12  want it to be misconduct, there's nothing I can do.
13      Q. The court has found that you engaged in
14  misconduct.
15      A. No, because I didn't come to the --
16      Q. No. Magistrate Judge Alexander found --
17      A. I didn't come to the --
18      Q. Judge Woodlock explains to you that you are
19  in contempt because you failed to appear for the
20  December 20th hearing.
21      A. No, it's not contempt.
22      Q. He told you twice --
23      A. It doesn't matter.
24      Q. -- in the clearest possible terms.

27 (Pages 889 to 892)

Janice L. Stevenson, Vol. 4                    02/22/2007

Page 893

1    A.  I don't remember that.
2    Q.  I've shown you the transcript.  That's all I
3  can do.
4    A.  It doesn't say the word contempt.  I don't
5  recall that.
6    Q.  I'm undertaking every possible opportunity
7  here to give you a chance to participate in this
8  deposition and to do so fairly.  I'm showing you
9  Exhibit 48 yet again.
10    A.  Don't throw it.  Don't throw it.
11    Q.  I'm not throwing anything.
12    A.  Don't throw it.
13    Q.  Ms. Stevenson, don't give me instructions
14  like that.  That's completely inappropriate.  I
15  haven't thrown anything at you.  This document has
16  not left my hand.  It's completely ridiculous.
17    A.  You've been rude to me since you walked in
18  here.  You've been rude since I'm been in here.
19    Q.  Ms. Stevenson, you have utterly refused to
20  participate.
21    A.  There's no need to be mean or rude.
22    Q.  I haven't done the least thing that's been
23  mean or rude to you.
24    A.  I'm a reasonable person.

Page 894

1    Q.  You are the person who has behaved with the
2  utmost lack of civility in this proceeding.
3    A.  I have not been uncivil.  Objections shall
4  be noted by the court.
5    Q.  That's right, that's the extent of your
6  ability --
7    A.  Okay, I object.
8    Q.  You can object and then you can move on.
9    A.  I'm moving on.  Let's go.
10    Q.  Now, Ms. Stevenson, I'm showing you, again
11  giving you every opportunity to participate in this
12  proceeding.  You told me that you don't recall Judge
13  Woodlock telling you you're in contempt?
14    A.  I don't remember the words contempt.
15    Q.  I'm showing you Exhibit 48.  I'm showing you
16  page 14.  I'm showing you line 1.  You're in
17  violation of a Court Order.  Do you see that?
18    A.  I don't see the word contempt.
19    Q.  So your quibble is with the word contempt
20  versus violation?
21    A.  No.  You just said -- he said you was in
22  contempt.
23    Q.  So you understand that Judge Woodlock told
24  you that you are in violation of a Court Order, do

Page 895

1  you understand that?
2    A.  No.
3    Q.  I just sat the document in front of you, Ms.
4  Stevenson.
5    A.  You don't understand.  I gave you a truthful
6  answer, no.
7    Q.  I asked you if you understand what he said.
8    A.  No.
9    Q.  Let's take a break.  For the record we
10  initially went off the record to take a 10-15 break
11  just for everyone's comfort.  Ms. Stevenson asked we
12  take a lunch break, and she asked that she be given
13  an hour-and-a-half to go file papers with the court.
14  Is that right, Ms. Stevenson?
15    A.  In the court, yes.
16    Q.  In which court?
17    A.  I want an hour-and-a-half lunch break,
18  please.
19    Q.  That isn't the question.  The question is.
20  In which court do you intend to go file papers?
21  You're going to refuse to respond to that?
22    A.  I just want to go to have an hour-and-a-half
23  lunch.
24    Q.  That's not the question, Ms. Stevenson.  You

Page 896

1  told me you needed an hour-and-a-half long lunch
2  which is a long lunch break for a deposition because
3  you need to go file court papers.
4    A.  Um-hmm.
5    Q.  I'm asking you.  What court do you need to
6  file papers with?
7    A.  I want to file papers in both Superior and
8  Federal Court, I want to.
9    Q.  You want to do that on your lunch break?
10    A.  Yeah.
11    Q.  Well, I'll represent to you that that kind
12  of lunch break is inappropriate for a proceeding
13  like this.  We need to get through this if we go
14  back on the record.
15    A.  So what's appropriate?
16    Q.  I think an hour is a reasonable lunch break.
17    A.  Okay.
18    Q.  You want to take an hour lunch break and
19  meet back at 1:00.
20    A.  It's 12:00?
21    Q.  It's 12:00.
22    A.  It's lunch anyway.
23    Q.  The question is.  Do you want to take an
24  hour lunch break and meet back here at 1:00?

28 (Pages 893 to 896)

Merrill Legal Solutions
(617) 542-0039

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                              02/22/2007

Page 897

1    A.  Sure.  I may be a few minutes late just in
2  case.
3         (Lunch recess.)
4              AFTERNOON SESSION
5    Q.  Are you ready, Ms. Stevenson?  Let me know
6  when you're ready.  You ready?
7    A.  Um-hmm.
8    Q.  We're back on the record.  Ms. Stevenson, do
9  you understand the oath you've taken this morning is
10  still in effect?
11    A.  Yes.
12    Q.  For the record Ms. Stevenson has again
13  elected to respond to questions with the cue cards
14  she's created?  Ms. Stevenson, when we convened this
15  morning I asked that you take the chair next to the
16  court reporter and remove your hood and scarf, and
17  for the record you've continued to sit in the chair
18  further down the table than that and to wear the
19  hood and scarf.  So I'll ask you again if you would
20  please move to the chair next to the court reporter.
21  For the record Ms. Stevenson has given no verbal
22  response.  Do you understand what I've said to you?
23    A.  Do you have a card for me?
24    Q.  Do you understand what I've said to you?

Page 898

1    A.  Do you have a card for me?
2    Q.  Mr. Stevenson, I'm not going to allow you to
3  control the pace of these proceedings.
4    A.  Do you have a card for me?
5    Q.  Ms. Stevenson, I will give you what I see
6  fit to give you when I see fit to give it to you.
7    A.  Do you have a card for me?
8    Q.  Your job here is to answer questions for me.
9    A.  Do you have a card for me?
10    Q.  Do you understand what I'm saying?
11    A.  What's the temperature here?
12    Q.  Ms. Stevenson, you need to cooperate in this
13  deposition.  I'm asking if you will move to the
14  chair next to the court reporter.
15    A.  I've answered the question.
16    Q.  And the answer is no, you're going to refuse
17  to do that?
18    A.  I've answered that question.
19    Q.  Well, I've told you enumerable times that
20  your protestation is that you answer the question is
21  not a sufficient basis --
22    A.  I've answered the question.
23    Q.  -- not to answer the question.
24    A.  I've answered the question.

Page 899

1    Q.  I'll ask you to answer it again.
2    A.  I've answered the question.
3    Q.  For the record --
4    A.  It's a matter of record.
5    Q.  For the record Ms. Stevenson has refused or
6  failed to move closer to the court reporter.  I'll
7  ask again that you remove the scarf so that I can
8  hear you and that the record is clear.
9    A.  You can hear me.  I'm audible.
10    Q.  I'm telling you that, in fact, you're not
11  and your speech is inaudible.
12    A.  I will not, yes.
13    Q.  You will remove the scarf?
14    A.  I'm audible.
15    Q.  That's not the question.
16    A.  You can hear me.
17    Q.  Ms. Stevenson, that's not for you to judge.
18    A.  You can hear me.  What's the temperature?
19    Q.  So, Ms. Stevenson, you're not going to
20  remove the scarf?
21    A.  What's the temperature?
22    Q.  For the record Ms. Stevenson has declined to
23  remove the scarf.  And for the record the thermostat
24  reads 75 degrees for this conference room and no one

Page 900

1  else here is wearing any sort of outerwear that
2  would be necessary in cold temperature.
3         Ms. Stevenson, I told you that when we
4  convened this morning I would give you a card with
5  Ms. Meek's name on it.  I've presented that to you
6  for --
7    A.  All you had to do was spell it.
8    Q.  Ms. Stevenson, that sort of interjection and
9  interruption does nobody any good.  I've given you
10  the card.  We're moving on.
11    A.  What is she?
12    Q.  Ms. Stevenson, I'm not going to answer any
13  of your questions.  Now, when we broke this morning,
14  I undertook to explain to you that your role here is
15  only to answer questions, and that your failure to
16  do so in Neighborhood House Charter School's view
17  and in the view that the court has twice expressed
18  is that that is not in compliance with either
19  Magistrate Judge Alexander's order or Judge
20  Woodlock's order at the January 23rd conference in
21  this matter.  We have put a call into the court and
22  requested emergency relief based on your continued
23  refusal to participate here today, but I want to
24  give you one last chance to participate in this

Merrill Legal Solutions
(617) 542-0039

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 901

1   proceeding. Are you willing to answer the questions
2   posed to you without interrupting me, without
3   arguing with me?
4        A. What questions have I interrupted you on?
5        Q. For the record Ms. Stevenson is holding up
6   her cue card that says "yes".
7        A. But you said you can't hear me.
8        Q. Your obligation, Ms. Stevenson, is to
9   provide verbal responses to each of my questions.
10  Now, what I've asked you is --
11       A. You stated to me to the best memory make a
12  diligent effort, think to yourself. When I have
13  questions in regard to your questions, you don't
14  want to hear them. When I have -- when I'm not sure
15  of any exhibits or questions you've asked me and
16  I've stated so, you still don't want to --
17       Q. That's right, Ms. Stevenson.
18       A. You still call it obstruction. So there's
19  nothing I can do.
20       Q. Ms. Stevenson, as I've explained to you far
21  more times than is reasonable. Your obligation and
22  your role is to be --
23       A. May I ask you something?
24       Q. No, you may not. Stop interrupting.

Page 902

1        A. Is this being videographed? Is this being
2   videoed? Is this being videoed.
3        Q. I'm not responding to your questions. Ms.
4   Stevenson --
5        A. You know, for the length of time this trial
6   has gone on, I've received no employer wage
7   information in regard to you paying me to
8   substantiate your claim. I have nothing. I've
9   asked for that. I have nothing. You stalled. The
10  only thing you've gone to this court is misconduct
11  in a deposition.
12       Q. In fact, our request for relief from the
13  court of course are broader than your misconduct at
14  this deposition.
15       A. You know --
16       Q. Stop interrupting me.
17       A. It is broader.
18       Q. Ms. Stevenson, you cannot do this.
19       A. It is broader. It is much broader than
20  that, and I just seem to posed before the court,
21  maybe it will resolved in an appeal, maybe.
22       Q. Ms. Stevenson, are you done making speeches?
23       A. It's not a speech.
24       Q. It is a speech, Ms. Stevenson. It's not

Page 903

1   responsive to any question I've asked you. It's a
2   completely unsolicited statement, and it has no
3   place in a deposition. Now, we are bending over
4   backwards to try to give you an opportunity --
5        A. No, you haven't.
6        Q. -- to avoid contempt sanctions in this
7   matter. For the record Ms. Stevenson has passed
8   across to the table to me a document captioned
9   Notice of Appeal. Is it your intent, Ms. Stevenson,
10  to serve this document on me by passing that across
11  the table? For the record Ms. Stevenson has given
12  no verbal response.
13       A. Yes.
14       Q. Can the court reporter mark that as the next
15  in order.
16            (Marked, Exhibit 49, Notice of Appeal.)
17       Q. Ms. Stevenson, I'm placing back before you
18  the document that you handed across the table to me
19  captioned Notice of Appeal. It's marked as Exhibit
20  49. Will you verify that that is, in fact, the
21  document you handed to me?
22       A. I just gave it to you.
23       Q. That's what I am asking you. Will you
24  verify that the document marked Exhibit 49 is the

Page 904

1   document you just handed me across the table?
2        A. Yeah, I just gave it to you.
3        Q. And, in fact, on the second page of this
4   document it states "Certificate of Service. I,
5   Janice Stevenson, can certify that copy of the
6   Notice of Appeal was sent to the parties listed
7   below by electronic mail or facsimile on February
8   20, 2007" below listing my name and Ms. Kappelman's
9   name of this firm; is that correct?
10       A. Well, today is the 22nd.
11       Q. It's a simple question. Is that what the
12  document says?
13       A. Yes, that's what the document says.
14       Q. And, in fact, that certification is false,
15  you have not previously served this document on me
16  prior to today, have you?
17       A. Yeah.
18       Q. When did you serve that document on me?
19       A. Today.
20       Q. The question is. Prior to today have you
21  served that document on me?
22       A. Yeah.
23       Q. When?
24       A. Today.

30 (Pages 901 to 904)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 905

1    Q. Prior to today on some date earlier than
2  this have you served that document on me?
3    A. On the 22nd.
4    Q. And the certification, in fact, reads
5  February 20th; is that right?
6    A. It was the 20th when the computer was on.
7    Q. So the certification is inaccurate?
8    A. No, I gave it to you.
9    Q. You gave it to me on February 22nd not on
10  February 20th.
11   A. I gave it to you.
12   Q. So the certification is inaccurate; is that
13  correct?
14   A. No.  Everything is correct.  You have the
15  document.
16   Q. Did you give this to me on February 20?
17   A. I e-mailed it to you.
18   Q. You e-mailed this document to me?
19   A. I faxed it to you.
20   Q. You faxed this document to me on February
21  20th?
22   A. On the day I faxed it.
23   Q. That's not the question.  Of course you
24  faxed it on the day you faxed it.  The question is.

Page 906

1  Did you --
2    A. Which is the date I indicated?
3    Q. You faxed this document to me on February
4  20th.
5    A. Because I'm on the assumption that today is
6  the 20th.
7    Q. You're under the assumption that today is
8  the 20th of February?
9    A. Yes.
10   Q. You understand that you were ordered to
11  appear here for your deposition?  Do you understand
12  that?
13   A. What do you mean?
14   Q. You are here pursuant to a Court Order.  Do
15  you understand that?
16   A. I'm in a deposition.
17   Q. Pursuant to a Court Order; is that right?
18   A. From January?
19   Q. You understand that the court ordered you to
20  appear here on a date certain; is that right?
21   A. Say that again?
22   Q. You understand that Judge Woodlock who is
23  presiding in this matter ordered you to appear for
24  deposition on a date certain; is that correct?

Page 907

1    A. On a date what?
2    Q. On a specific date.
3    A. I guess, I guess I understand what you're
4  saying.
5    Q. And that specific date was February 22nd,
6  was it not?
7    A. I don't know.
8    Q. You don't know.
9    A. Today is the 20th.
10   Q. You believe today is February 20th?
11   A. When I woke up, I thought it was the 20th.
12   Q. Well, I will represent to you that today is,
13  in fact --
14   A. February 20th.
15   Q. I'm showing you again the document that you
16  handed to me marked as Exhibit 49.
17   A. February 20th, that is what I believe today
18  is.
19   Q. Let me get the questions out, Ms. Stevenson.
20  I'm passing you the document that you handed me
21  across the table which we marked as Exhibit 49.
22   A. I've answered the question.
23   Q. You don't know what the question is yet.
24   A. February the 20th.

Page 908

1    Q. Ms. Stevenson, let me get the questions out.
2  I'm passing you the document that you handed me
3  across the table.  It bears a stamp from the Clerk's
4  Office, does it not?
5    A. I didn't know --
6    Q. It's a simple question.  Does it bear a
7  stamp from the Clerk's Office or not?
8    A. I guess.
9    Q. You guess.  Did you, in fact, just walk this
10  document over to the Clerk's Office?
11   A. Which document, this one?
12   Q. The one sitting in front of you.
13   A. No.  I gave you the original.
14   Q. But you had this document stamped at the
15  Clerk's Office at the same time; is that right?  You
16  see the ink stamped on the paper here?
17   A. Yeah.
18   Q. You had this document stamped at the Clerk's
19  Office?
20   A. They do that.
21   Q. Did you have this document stamped at the
22  Clerk's Office?
23   A. They did it.
24   Q. It's a yes or no answer.

31 (Pages 905 to 908)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 909

1     A.  The Clerk did it.  Whether or the Clerk did.
2  I don't know who the Clerk is.
3     Q.  Today, you did this today; is that right?
4     A.  Yeah.
5     Q.  You did it just now over the lunch break; is
6  that right?
7     A.  What's your question?
8     Q.  That is the question.
9     A.  Oh.
10     Q.  Did you just take this document to the
11  Clerk's Office and have it stamped over the lunch
12  break?
13     A.  Yeah.
14     Q.  And what does that date stamp read on the
15  document?
16     A.  I don't know.
17     Q.  Take a look.  It's right there in front of
18  you.
19     A.  Today is Thursday, February 20th.
20     Q.  That's not the question.  The question is.
21  I want you to take a look at the document in front
22  of you and read the date stamp to me on the front
23  page.
24     A.  This is the date February 20th, 2007.

Page 910

1     Q.  That's what you're reading from your
2  Certificate of Service?
3     A.  Yes.
4     Q.  I want you to look at the first page of the
5  document where the Clerk has stamped the document.
6     A.  I just told you when I typed this it was
7  February --
8     Q.  That's not responsive to anything I've
9  asked.
10     A.  -- the 20th.
11     Q.  So you typed this today?
12     A.  Yeah.
13     Q.  You typed this document today?
14     A.  Yeah.
15     Q.  And you believe today is still February
16  20th?
17     A.  That's what the computer when it was on
18  said.
19     Q.  And I want you to look at the stamp from the
20  Clerk's Office.
21     A.  I don't know.  Maybe hers is wrong.
22     Q.  I'm not asking you to -- Ms. Stevenson, I'm
23  not asking you to speculate about anything.  I'm
24  going you to look at the document in front of you.

Page 911

1  What does the Clerk from the Clerk's Office say the
2  date is?
3     A.  It's kind of blurry.
4     Q.  It is not the least bit blurry.  It's
5  actually very clear.  I want you to take a look at
6  the document.  What does it say?
7     A.  It's blurry.  I can't.
8     Q.  You can't that out?
9     A.  No.
10     Q.  You can't tell what that date says?
11     A.  No.
12     Q.  That's your testimony?
13     A.  Yeah.
14     Q.  Under oath?
15     A.  Can you see it?
16     Q.  Yes.
17     A.  What's it say?
18     Q.  That's not mine to say.  I'm asking you.
19     A.  If I can't see it and you can see it --
20     Q.  You can see the February 20th clearly; is
21  that right?
22     A.  I typed it February the 20th.
23     Q.  And you pointed to it and it says February
24  20th, right?

Page 912

1     A.  I know what it says because I typed it this
2  morning.  It's February 20th.
3     Q.  Can you see it clearly?  Can you see
4  February 20th typed there clearly?
5     A.  I don't have a date clear.
6     Q.  I'm asking you what you have to do.  I'm
7  asking you what you can do because you told me that
8  you can't see.
9     A.  It's the 20th.  I didn't say I couldn't see.
10  I said it was blurry.
11     Q.  Where it says February 20th as you pointed
12  out for me, is blurred?
13     A.  Yeah, that's the date.
14     Q.  I'm not asking you.  I'm asking you if the
15  type reading February 20th is blurred?
16     A.  Kind of like the first one.
17     Q.  But you can read it?
18     A.  No, because I typed it February the 20th,
19  2007.
20     Q.  Do you have some problem with your vision?
21     A.  Yes, that's why I wear glasses.
22     Q.  With glasses can you see?
23     A.  It depends.
24     Q.  Can you see to read?

Merrill Legal Solutions
(617) 542-0039

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

Janice L. Stevenson, Vol. 4                                    02/22/2007

Page 913

1      A.  Sometimes.
2      Q.  Ms. Stevenson, it's your testimony that you
3   have filed this Notice of Appeal with the District
4   Court in these matters; is that right?  Let's go off
5   the record?
6          (Off the record.)
7      Q.  Let's take a break, Ms. Stevenson.  If you
8   can excuse us.
9          (Recess held.)
10         MR. MILLER:  For the record we received
11  a call from Judge Woodlock's Clerk informing us that
12  the court will hear the parties in this matter this
13  afternoon at 2:15.  Ms. Stevenson has left.  She
14  stated that she's not available, but we have
15  apprised her that the court will hold a hearing at
16  2:15 and so we are suspended.
17         (Whereupon, at 1:32 p.m., the deposition
18  of Janice L. Stevenson suspended.)
19
20
21
22
23
24

Page 915

1   COMMONWEALTH OF MASSACHUSETTS
2   MIDDLESEX, ss.
3       I, Maureen J. Manzi, Certified Shorthand
4   Reporter and Notary Public, CSR #135093, and CLR,
5   duly commissioned and qualified in and for the
6   Commonwealth of Massachusetts, do hereby certify
7   that there came before me on the 22nd day of
8   February, 2007 the person hereinbefore named, who
9   was by me duly sworn to testify to the truth and
10  nothing but the truth of their knowledge touching
11  and concerning the matters in controversy in this
12  cause; that they were thereupon examined upon their
13  oath, and their examination reduced to typewriting
14  under my direction and that the deposition is a true
15  record of the testimony given by the deponent.
16      In Witness Whereof, I have hereunto set my
17  hand and affixed my seal this 24th day of February
18  2007.
19
20
21
22      Notary Public
23      My Commission Expires:
24      January 17, 2008

Page 914

1          E R R A T A  S H E E T
2       I, JANICE L. STEVENSON, do hereby certify that
3   I have read the foregoing transcript of my
4   testimony, and further certify that it is a true and
5   accurate record of my testimony (with the exception
6   of the corrections listed below):
7   Page    Line        Correction
8   _____   _____    _____
9   _____   _____    _____
10  _____   _____    _____
11  _____   _____    _____
12  _____   _____    _____
13  _____   _____    _____
14  _____   _____    _____
15  _____   _____    _____
16  _____   _____    _____
17  _____   _____    _____
18  _____   _____    _____
19
20  Signed under the pains and penalties of perjury this
21  _____ day of _____, 2007
22
23      _____
24      JANICE L. STEVENSON

33 (Pages 913 to 915)

03c1413a-1383-4db6-a4dc-6ea0c3a5c552

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS



CIVIL ACTION NO. 05-CV-11584-DPW

JANICE STEVENSON

Plaintiff

v.

NEIGHBORHOOD HOUSE CHARTER SCHOOL

Defendant

**ORDER ON**

**DEFENDANT'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND FOR SANCTIONS**
*(Docket # 32)*

**PLAINTIFF'S MOTION TO COMPEL PAYMENT OF VACATION
WAGES - INCLUDING DEFENDANT'S CROSS-MOTION FOR
SANCTIONS**
*(Docket ## 35 and 39)*

**PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS - INCLUDING
DEFENDANT'S CROSS-MOTION FOR SANCTIONS**
*(Docket ## 37 and 38)*

**DEFENDANT'S MOTION FOR TERMINATING SANCTIONS, OR IN
THE ALTERNATIVE, TO COMPEL DEPOSITION TESTIMONY**
*(Docket # 41)*

**and**

**DEFENDANT'S MOTION TO AMEND SCHEDULING ORDER**
*(Docket # 44)*

ALEXANDER, M.J.

The Court is presented with a variety of motions, none of which may adequately be described as routine. A hearing was held on November 6, 2006 where the parties presented additional argument on each motion, the Court providing every opportunity for the parties to be heard. During the hearing, the Court issued the following orders:

1) Defendant's Motion to Compel Production of Documents is ALLOWED. Plaintiff is directed to answer each interrogatory and provide all documents requested by Defendant, to the extent they are within her possession, custody, or control, and specifically including, but not limited to, her requested personal tax returns, journals evidencing time worked with regard to her business relationship with Defendant, and any documents regarding the entity TuckNT. These documents and answers to interrogatories must be provided by Plaintiff to Defendant on or before November 20, 2006. Further, Plaintiff is hereby PRECLUDED from affirmatively using any documents or information in the prosecution of this action which she had in her possession, custody, or control on or before November 20, 2006 and did not provide to Defendant by that date.

2) Plaintiff's Motion to Compel Payment of Vacation Wages will not be heard by this Court as it is not a discovery motion but one that is dispositive in nature.

2

3)    Plaintiff's Motion for Rule 11 Sanctions is DENIED.

4)    Defendant's Motion for Terminating Sanctions is DENIED, however, the
      Court hereby GRANTS Defendant leave to resurrect this motion after
      December 8, 2006 should the Plaintiff engage in further frivolous and dilatory
      tactics in direct disregard of this Court's instant order. Additionally, combined
      in this motion is Defendant's Motion in the Alternative to Compel Deposition
      Testimony, which is ALLOWED. Plaintiff's deposition will continue on
      December 20, 2006 at a time and place to be agreed to by the parties. Plaintiff
      may assert any appropriate objection she wishes during the deposition, and the
      Court will liberally interpret the validity of any objection or lack-there-of based
      on her *pro se* status, but is hereby ORDERED to answer every question posed
      by Defendant in an honest, clear, concise, and coherent manner. Plaintiff is
      free to bring any objections to the Court's attention at trial.

5)    Defendant's Motion to Amend Scheduling Order is ALLOWED. Defendant
      is directed to submit to the Court a proposed Amended Scheduling Order with
      dates certain.

      In addition to the above rulings made by the Court during the hearing, the
Court took Defendant's motions for sanctions under advisement. One of the reasons
that the Court seriously entertains Defendant's motions for sanctions is Plaintiff's

3

apparently deliberate failure to respond to legitimate discovery requests, whether by way of document production or deposition. Such obstinance was evidenced by Plaintiff's retort to the Court regarding the ordered continuation of her deposition when she asked whether Defendant's could "simply put any questions they had for her in writing so that she could fill in the blanks," avoiding a deposition altogether. Further, Plaintiff's unfathomable questioning of the Court, i.e. asking the Court to read and explain Rule 11, when Plaintiff was the party who filed the motion for Rule 11 sanctions, highlights Defendant's assertion that Plaintiff is acting in a frivolous and dilatory manner. While the Court recognizes that a *pro se* litigant is to be given room, this Plaintiff attempts to take an entire house.

Accordingly, with regard to Defendant's multiple motions for sanctions, the Court issues the following Orders:

1)    Should Plaintiff wish to submit further discovery motions, Plaintiff must first discuss the merits and necessity of such motion with defense counsel and attempt to come to a resolution before filing said motion.

2)    Should Plaintiff file a discovery motion after consultation with defense counsel, Defendant will not be required to respond either orally or in writing unless and until the Court so advises.

3)    Should Plaintiff either file a discovery motion without first consulting with

4

defense counsel or file a motion such that the Court deems frivolous, Plaintiff will be subjected to monetary sanctions and the possibility of terminating sanctions, dismissing her case with prejudice.

SO ORDERED.

11/7/06
Date



5

Janice L. Stevenson        09/07/2006

406

1     E R R A T A  S H E E T

2     I, JANICE L. STEVENSON, do hereby certify that I

3    have read the foregoing transcript of my testimony,

4    and further certify that said transcript is a true

5    and accurate record of my testimony (with the

6    exception of the following corrections listed

7    below):

8    Page   Line        Correction

*[Exhibit stamp: Stevenson / EXHIBIT NO. 47 / 2/22/07 / M.J. MANZI]*

9

10

11

12

13

14

15

16

17

18

19

20

21     Signed under the pains and penalties of perjury

22    this 4th day of October, 2006.

23            *Janice L. Stevenson*

24    JANICE L. STEVENSON

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

JANICE STEVENSON

               Plaintiff

     VERSUS            CA-05-11584-DPW

NEIGHBORHOOD HOUSE CHARTER
   SCHOOL

              Defendant

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Stevenson

EXHIBIT NO. 46
2/23/07
M.J./MANZI

BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

UNITED STATES DISTRICT COURT JUDGE

STATUS CONFERENCE

JANUARY 23, 2007

APPEARANCES:

JANICE STEVENSON, Post Office Box 400372, Cambridge,
Massachusetts 02140, in proper person

BARRY J. MILLER, ESQ., Seyfarth, Shaw, LLP, Two Seaport
Lane, Suite 300, Boston, Massachusetts 02210, on
behalf of the Defendant

                     Courtroom No. 1 - 3rd Floor
                     1 Courthouse Way
                     Boston, Massachusetts 02210
                     10:15 A.M. - 10:45 A.M.

           Pamela R. Owens - Official Court Reporter
         John Joseph Moakley District Courthouse
            1 Courthouse Way - Suite 3200
            Boston, Massachusetts 02210

## Page 2

1    THE COURT: Well, I have a series of motions here.
2  But I want to step back a bit first and understand from both
3  parties' perspectives what's going to be necessary to get this
4  to judgment here. Mr. Davis, is it?
5    MR. MILLER: Mr. Davis has withdrawn, Your Honor.
6  He was Ms. Stevenson's former counsel.
7    THE COURT: I'm sorry.
8    MR. MILLER: I'm Barry Miller here for Neighborhood
9  House Charter School.
10    It is our position, Your Honor, that this case has
11  become an intractable mess because of Ms. Stevenson's pattern
12  of misconduct in this matter and in several related matters.
13  And we believe that Magistrate Judge Alexander's order of
14  November 7th served as last and final warning to Ms. Stevenson
15  that her conduct up to that point had been inexcusable and
16  would not be tolerated further. And starting days after
17  Magistrate Judge Alexander entered that order, Ms. Stevenson
18  not only continued her pattern of behavior, but actually
19  escalated her antics. She continued to file frivolous motions
20  against the school in this forum and in the Bankruptcy Court
21  because she knew she had worn out her welcome here. She
22  disregarded Magistrate Judge Alexander's clear instruction that
23  she produce specifically designated documents and she willfully
24  failed to appear for her deposition.
25    THE COURT: I understand that larger position. But

## Page 3

1  assume that this is going to be resolved on the merits. What
2  needs to be done?
3    MR. MILLER: Your Honor, in order for us to respond
4  to the substance of the claims that Ms. Stevenson has asserted,
5  we have to be able to take discovery. We have to get a
6  meaningful document production from her. She's in control of
7  most of the documents relating to the case. Because one of the
8  central issues here is whether her company through which she
9  provided services to Neighborhood House Charter School was an
10  independent contractor or whether she was, in fact, an employee
11  directly of the school.
12    THE COURT: But is it simply discovery from her and
13  the associated document requests -- that is, document requests
14  from her? Is there anything else? Is it all focused on
15  Ms. Stevenson?
16    MR. MILLER: It's almost entirely focused on
17  Ms. Stevenson, including deposition testimony which she has
18  refused to give up to this point.
19    THE COURT: All right. Ms. Stevenson?
20    MS. STEVENSON: Before I address that, I've been
21  trying to obtain the transcript from the hearing the Magistrate
22  had. And on the docket, it referred to a phone number and
23  person. And I've been trying to contact that person to get a
24  copy of the transcript. And I believe they're within this
25  court. Can you tell me how I can get a transcript of that

## Page 4

1  hearing? I sent the E-mail to Ms. Rowland. So, I wanted to
2  bring that up. But in regards to --
3    THE COURT: Magistrate Judge Alexander was pretty
4  clear on what she ordered.
5    MS. STEVENSON: Well, no. I want the transcript of
6  the --
7    THE COURT: Well, that's fine. You can go get the
8  transcript. And Ms. Rynne will help you, although I think it's
9  pretty clear how one goes about ordering a transcript. But
10  that's immaterial at this point.
11    MS. STEVENSON: Yeah. But --
12    THE COURT: The question is whether or not you're
13  going to comply with Judge Alexander's orders.
14    MS. STEVENSON: Your Honor, I have submitted
15  documents and I have tried to bring to this Court's attention
16  and the Bankruptcy Court's attention that the documents they
17  request I don't have. And the ones I have, I have given to
18  them.
19    THE COURT: So let me be clear about this. Your
20  position is that there are no other documents?
21    MS. STEVENSON: The ones she ordered, I have
22  submitted to this Court and to them.
23    THE COURT: All right. So that's her position.
24  What do you say? Is there anything else?
25    MR. MILLER: Your Honor, she made that same

## Page 5

1  representation to Magistrate Judge Alexander. And she has
2  since attached documents to her filings in this matter and in
3  other matters that are directly responsive to our request that
4  she had not prior produced. She attached documents to her
5  motion for summary judgment that she filed in this Court on the
6  day that she was supposed to be sitting for her deposition.
7  And attached to that pleading were documents that were
8  responsive --
9    THE COURT: Okay. Well, let's just pause for a
10  moment. Are there any other documents -- any other documents?
11  Because if there is another document and it's produced late or
12  I'm shown that there is another document, I'm going to hold you
13  in contempt. So, think long and hard. Are there any other
14  documents responsive to Judge Alexander's order that you have
15  not yet produced?
16    MS. STEVENSON: I think -- I feel like I have
17  produced everything she's --
18    THE COURT: I'm taking that as your representation,
19  there are no other documents.
20    MS. STEVENSON: Yeah, because she only wanted three
21  documents -- tax forms, the calendar, and I forgot what the
22  other one is. But I produced three.
23    THE COURT: I don't really care what --
24    MS. STEVENSON: But the point is this.
25    THE COURT: -- you've produced in the past. Let me

JANUARY 23, 2007>

1224d3e8-d8aa-4fee-aa71-63e20aa285df

## Page 6

1 be clear about this, Ms. Stevenson. Now the time has come. If
2 you tell me that you have complied fully with Magistrate Judge
3 Alexander's orders, that all the documents have been produced,
4 then I'll accept that representation. If I find that that
5 representation is wrong and the defendants can show to me
6 either that there are documents that you didn't produce or you
7 continue to produce in some other forum or even in this forum
8 documents that were responsive, I'm going to hold you in
9 contempt.
10     MS. STEVENSON: Okay.
11     THE COURT: Do you understand?
12     MS. STEVENSON: I understand.
13     THE COURT: Okay. So --
14     MS. STEVENSON: But I --
15     THE COURT: Just a moment. Now, no extra
16 discussion about it.
17     MS. STEVENSON: It's not a discussion. I want to
18 know why on the documents I produced that has determined
19 that -- I really feel there is no other issue involved if --
20     THE COURT: We're going to get to that, but we're
21 going step by step. And the first step is the documents. You
22 tell me and you've represented to me on pains that I will hold
23 you in contempt and I should add enforce as sanction the
24 dismissal of the case if new documents appear.
25     MS. STEVENSON: Well, Your Honor, if you're going

## Page 7

1 to dismiss the case on documents that show that the defendant
2 had never ascertained their claim that I was an independent
3 contractor, doesn't that go against what the overtime wage law
4 stands for?
5     THE COURT: You're talking about something entirely
6 different.
7     MS. STEVENSON: I am? I think we're talking about
8 the same thing. Because in my mind --
9     THE COURT: Ms. Stevenson --
10     MS. STEVENSON: -- to me --
11     THE COURT: Ms. Stevenson, let me be clear. I'm
12 going to go step by step.
13     The first step is the documents, whether or not you
14 have produced all of the documents. That's all we're talking
15 about right now. I'm going to go to the next step.
16     MS. STEVENSON: Okay. Well, why -- may I --
17     THE COURT: Are you going to listen to me or not?
18     MS. STEVENSON: Well, I --
19     THE COURT: Are you going to listen to me or not?
20 No. Please step back. Are you going to listen to me or not?
21     MS. STEVENSON: I'm listening.
22     THE COURT: Okay. I've just told you the first
23 step. You will have adequate opportunity to address me on
24 other matters. But this case has been transformed into a
25 mess. And it has been transformed into a mess because of

## Page 8

1 various actions that you have taken. Now, I intend -- as
2 Magistrate Judge Alexander did -- to clarify this so that we
3 can get to the merits so that the respective positions of the
4 parties may be fairly evaluated. But I'm not going to let
5 somebody interfere with that process. And I want to be as
6 clear as I can what the consequences are.
7     First, the documents. So, that's where we stand on
8 the documents.
9     MR. MILLER: Your Honor --
10     THE COURT: You understand --
11     MR. MILLER: Yes, Your Honor.
12     THE COURT: -- that you're going to have to
13 demonstrate to me that there were documents produced afterwards
14 or you have a basis for believing that there are other
15 documents that she has not produced.
16     MR. MILLER: If I could clarify, Your Honor, she
17 has apparently -- and I haven't seen them. But it's my
18 understanding that she filed documents with the Court,
19 including her tax returns and perhaps some journals that were
20 at issue in the case that we don't yet have.
21     THE COURT: Have you provided them for defendant?
22     MS. STEVENSON: Yes, sir. And I have proof that I
23 sent them to him. I sent them electronically.
24     THE COURT: No. There were a large number of
25 documents.

## Page 9

1     MS. STEVENSON: Yes. When they sent me the E-mail
2 after they received this document, they never told me -- and I
3 have the E-mail here with it. They never told me after they
4 received this document that there was some missing. I didn't
5 know about their alleged missing documents until they wanted to
6 file a supplemental brief. And I have that E-mail here with me
7 from them.
8     THE COURT: The docket reports as follows with
9 respect to your motion for summary judgment: "Motion for
10 summary judgment by Janice Stevenson. Exhibits voluminous and
11 unscanned," which means that they weren't sent by electronic --
12     MS. STEVENSON: No, no, no, no, no. I brought
13 those in here, because I don't have access to what attorneys
14 do. But they can --
15     THE COURT: Did you provide them to --
16     MS. STEVENSON: Yes.
17     THE COURT: -- the defendants? You provided those
18 documents to the defendants?
19     MS. STEVENSON: Yes. I E-mailed him those
20 documents.
21     THE COURT: You E-mailed the documents to the
22 defendants?
23     MS. STEVENSON: I E-mailed all of them. Everything
24 I have sent to him has been by E-mail.
25     MR. MILLER: Your Honor, she did send me a series

3 (Pages 6 to 9)

JANUARY 23, 2007>

1224d3e8-d8aa-4fee-aa71-63e20aa285df

## Page 10

1  of six E-mails attaching essentially the same thing over and
2  over again. As I understand it, what she has sent to me is
3  some small fraction of what she filed with her papers.
4        THE COURT: When you say as you understand, what's
5  the basis for that understanding?
6        MR. MILLER: When she filed those papers, I had a
7  discussion with Ms. Rynne about what was filed because it was
8  clear that what she served on me was different from what she
9  had served on the Court. And we had concerns about some of the
10  specific documents that we thought she may have filed because
11  she was, in fact, sanctioned by the Bankruptcy Court from
12  filing those specific documents because they are confidential.
13  And as I understand it -- and, again, I have not seen what she,
14  in fact, filed with the Court and it's not available online.
15  But as I understand it, the documents she produced to the Court
16  or filed with the Court include some journals that she
17  submitted to the U.S. Department of Labor and various other
18  materials. What she has produced to me are her tax returns and
19  only in part and excluding the documents that are most relevant
20  to her claim in this case, including Forms W-2, Forms 1099, and
21  things like that. We don't have the journals and we don't have
22  the various other documents she was ordered to produce.
23        THE COURT: All right. So you go look at the court
24  file. That's how you're going to get access and make the
25  determination of whether or not she actually served on you all

## Page 11

1  of the materials that she said she did. She says that she
2  served on you by E-mail all the documents that were produced in
3  connection with the motion for summary judgment. I take that
4  as a representation. If it's inaccurate, it will be grounds
5  for contempt. Do you understand?
6        MS. STEVENSON: Yes. I have the E-mail.
7        THE COURT: No, no. What's going to happen is
8  counsel is going to look at what's on file in this Court.
9        MS. STEVENSON: Yes.
10        THE COURT: And then he's going to show, if he can,
11  that there is some difference. And you'll have an opportunity
12  to respond. But you don't get to say things in this Court
13  without consequences. And you have represented to me that
14  everything that is on file in connection with the Motion for
15  Summary Judgment was served on the other side.
16        MS. STEVENSON: That's right, electronically.
17        THE COURT: Okay. I heard what you had to say.
18        MS. STEVENSON: That's right.
19        THE COURT: And I've told you what the consequences
20  will be if you have been inaccurate.
21        MS. STEVENSON: Well, I know what you sent to him I
22  left here. That's all I can say.
23        THE COURT: Okay. Well, you've said it. Now that
24  deals with the documents.
25        Now the question of her deposition?

## Page 12

1        MR. MILLER: Yes, Your Honor. Magistrate Judge
2  Alexander specifically ordered Ms. Stevenson to appear for
3  deposition having found that she unjustifiably failed and
4  refused to participate in the first two sessions of her
5  deposition. She ordered it for date certain for December 20th
6  after accommodating Ms. Stevenson's schedule and allowing her
7  to reschedule it for a date that she had not been available on.
8  Ms. Stevenson failed to appear without justification, notice,
9  or excuse. And in fact, it appears that she was at this
10  courtroom filing documents on the day that she should have been
11  in our offices a few hundreds yards from here sitting for her
12  deposition. And as a result, my client, which is a charitable
13  educational organization, has been forced to expend thousands
14  more dollars on top of the tens of thousands of dollars that
15  it's already extended in this case for no justifiable reason.
16  And we believe that that alone stands for grounds for a
17  significant sanction against Ms. Stevenson.
18        THE COURT: Okay. Why didn't you show up for the
19  deposition?
20        MS. STEVENSON: Your Honor, I came across documents
21  and I produced documents that, according to the law, if you can
22  produce evidence with affidavits that show there is no issues
23  of fact that can be -- that could no longer -- that the
24  defendant can no longer claim and I came to the Court and I
25  submitted those documents because there is no issue now if they

## Page 13

1  claim I was independent contractor -- and the issue was I
2  depending on this person as an employer -- and I show through
3  my documents and my affidavit that I truly was dependent, I had
4  no other income -- outside of my employment with this --
5        THE COURT: Let me cut you short, because you've
6  got to answer my question: Why didn't you show up for the
7  deposition? You were ordered to show up for the deposition by
8  Judge Alexander. Why didn't you show up?
9        MS. STEVENSON: I did not show up, Your Honor,
10  because I had also informed him after the -- after he notified
11  me that I could no longer financially incur those costs of
12  going back and forth to the deposition. If he could move it
13  closer --
14        THE COURT: What costs of going back and forth?
15        MS. STEVENSON: The transportation costs.
16        THE COURT: But you were here in court filing on
17  that day.
18        MS. STEVENSON: Yes, sir.
19        THE COURT: Now, the transportation costs are the
20  same to get to this court as to get to the offices just down
21  the street.
22        MS. STEVENSON: Well, Your Honor, I made the cost
23  to come here to file it hopefully that it would grant -- that
24  the documents would show that there can be no more -- that
25  there are no more issues.

4  (Pages 10 to 13)

JANUARY 23, 2007>

**Page 14**

1    THE COURT: You're in violation of a court order.

2    MS. STEVENSON: Well, no, sir. I really --

3    THE COURT: Yes, you are in violation of a court

4    order. Magistrate Judge Alexander was clear. You have an

5    obligation to appear before a deposition. You don't get to

6    make your own choices about whether or not you appear or don't

7    appear. You were ordered to appear and you didn't.

8    Now, the question for me is what the sanction

9    should be. I'm going to give you one more chance -- one more

10   chance. I'm going to fix the date for deposition and you're

11   going to appear.

12   So, what date do you want? What dates do you want?

13   MR. MILLER: Your Honor, we would like some time to

14   review the court file and make sure we have documents

15   available.

16   THE COURT: What dates do you want?

17   MR. MILLER: We're probably looking at a date in

18   late February if that's acceptable to the Court.

19   THE COURT: Okay. We'll fix a date in late

20   February. Ms. Stevenson, when are you available?

21   MS. STEVENSON: I don't have a calendar in front of

22   me, Your Honor.

23   THE COURT: Well, you're going to have to tell me

24   right now.

25   MS. STEVENSON: Well, I don't know.

**Page 15**

1    THE COURT: Well, I'm going to tell you when you're

2    going to appear for the deposition. What other obligations do

3    you have? Are you working?

4    MS. STEVENSON: No, but I'm looking for a job.

5    THE COURT: Okay. Well, then this date will

6    interfere with your job search. Because you're going to have

7    to appear on this date.

8    MS. STEVENSON: In this Court?

9    THE COURT: No, in the deposition at their office

10   just as Magistrate Judge Alexander told you to do. And you

11   should understand that it was within my power and it is within

12   my power to dismiss this case for your willful failure to

13   appear at the deposition, but I'm giving you one more chance.

14   MR. MILLER: Can I request February 22nd, Your

15   Honor, for the deposition?

16   THE COURT: Thursday, February 22nd. At what time?

17   MR. MILLER: 10 A.M., please.

18   THE COURT: You should take that down,

19   Ms. Stevenson. Thursday, February 22nd. I'm sorry. You don't

20   seem to be writing.

21   MS. STEVENSON: I don't have anything to write

22   with.

23   THE COURT: Okay. Well, Ms. Rynne will pass you a

24   pen so that you can write this down.

25   MS. STEVENSON: Well, suppose I get back and I have

**Page 16**

1    something on that date?

2    THE COURT: Well, you're going to have to make some

3    kind of motion.

4    MS. STEVENSON: But was it in another court?

5    THE COURT: You're going to have to make some kind

6    of motion.

7    MS. STEVENSON: Motion?

8    THE COURT: Motion. You know about those. You've

9    filed them. You filed a number of them. You're going to have

10   to do what you didn't do with respect to Magistrate Judge

11   Alexander's order. Ask for some sort of leave. And unless you

12   get that leave from this Court, the consequence will be the

13   dismissal of this case. February 22nd. At what time?

14   MR. MILLER: At 10 A.M., please, Your Honor.

15   THE COURT: 10 A.M. at the offices --

16   MR. MILLER: At the offices of Seyfarth, Shaw,

17   which is in the World Trade Center, a few hundred yards from

18   here.

19   THE COURT: That's where you're going to have to

20   appear. And until I issue an order that says that you don't

21   appear, you have to appear. Do you understand?

22   MS. STEVENSON: Yeah.

23   THE COURT: Now, what else?

24   MS. STEVENSON: Might I ask a question?

25   THE COURT: You'll have an opportunity. I'm asking

**Page 17**

1    a question of counsel first.

2    MR. MILLER: If that's all Your Honor wishes to

3    hear on our motion for order to show cause, the only remaining

4    motions before the court, I believe, include plaintiff's motion

5    for summary judgment, the two documents she filed on December

6    20th. And to the extent that Your Honor hasn't already

7    addressed it, there are objections to the Magistrate Judge's

8    order.

9    THE COURT: Now, assuming that you have the

10   deposition and you have those documents, what is your next step

11   in this case?

12   MR. MILLER: We intend to move for summary

13   judgment, Your Honor.

14   THE COURT: All right. When would you move for

15   summary judgment, Your Honor, in relation to the deposition?

16   MR. MILLER: We would ask for three weeks after her

17   deposition is completed.

18   THE COURT: Okay. Well, it can be completed in one

19   day.

20   MR. MILLER: We believe it can if she cooperates,

21   Your Honor.

22   THE COURT: Okay. So, I will permit the filing of

23   motions for summary judgment on March 16. And I will deny the

24   motion for summary judgment of the plaintiff without prejudice

25   in order to permit the full development of the record in this

5  (Pages 14 to 17)

JANUARY 23, 2007>

1224d3e8-d8aa-4fee-aa71-63e20aa285df

## Page 18

1  case.

2  Now, you had some something further that you wanted

3  to say?

4  MS. STEVENSON: Yes. Why would you deny my motion

5  if it's relevant to the issues now?

6  THE COURT: Because it's not timely and because you

7  have interfered with discovery. I just set a date for summary

8  judgment.

9  MS. STEVENSON: But if I gave evidence that can

10  show there is no deposition or anything else he can produce

11  that can overcome my evidence, why would you deny it?

12  THE COURT: Well, we'll find out. You'll show up

13  at the deposition.

14  MS. STEVENSON: Okay. And what about --

15  THE COURT: Just a moment.

16  MS. STEVENSON: (Heavy sighing).

17  THE COURT: And they'll get an opportunity --

18  excuse me. Have you completed your sighing?

19  MS. STEVENSON: My sighing?

20  THE COURT: Sighing.

21  MS. STEVENSON: Well --

22  THE COURT: Have you?

23  MS. STEVENSON: -- I still have -- I still have a

24  comment. But Your Honor, I really feel like there is nothing

25  else that I can produce for them.

## Page 19

1  THE COURT: That's what every lawyer and every

2  party believes about their motions for summary judgment. But

3  we have an orderly process. We have a process in which the

4  parties don't just tell us when they feel like filing their

5  motion for summary judgment. They don't just tell us that

6  they'd like to show up or don't want to show up for a

7  summary judgment. Both sides are to be afforded an opportunity to

8  develop the case fully and I am affording both sides that

9  opportunity.

10  And, so, I said that I am dismissing your motion

11  for summary judgment or denying it without prejudice. That is,

12  it may be renewed on March 16th after the conclusion of all of

13  the relevant discovery, but not until.

14  MS. STEVENSON: So I have to refile again?

15  THE COURT: If you want to leave it as it stands,

16  you can have it left as it stands. You can refile it as it

17  stands. But it's not going to be ripe for consideration until

18  March 16th to afford the defendant the opportunity to conduct

19  such discovery as they were permitted by order of Judge

20  Alexander. Understand?

21  MS. STEVENSON: Well, no, because I feel like this

22  is lopsided. I have asked for documents, an employer -- or he

23  should have in regards to his claim that I was an independent

24  contractor. I can't get that from them.

25  THE COURT: And that's your motion to compel which

## Page 20

1  was dealt with by Magistrate Judge Alexander.

2  MS. STEVENSON: Okay. What is -- she didn't even

3  address it, did she? I mean, there was nothing. I still can't

4  get a record from --

5  THE COURT: Magistrate Judge Alexander entered an

6  order on November 7th granting the motion to compel documents

7  and for sanctions by Neighborhood House Charter School. No

8  action was taken by the court on the motion to compel by

9  Ms. Stevenson in that it's not a discovery motion or one that

10  was dispositive in nature. And consequently, she denied the

11  motion for sanctions by Janice Stevenson. She denied the

12  motion to compel for terminating sanctions in the alternative

13  by Neighborhood Schools. In short, she dealt with it.

14  MS. STEVENSON: Well, again, this seems to be

15  lopsided. It seems to be --

16  THE COURT: Well, you say it's lopsided and

17  certainly you're entitled to whatever view you have.

18  MS. STEVENSON: Yes.

19  THE COURT: But the short of it is that there has

20  been a request for discovery and an order issued you have not

21  complied with. Now I'm giving you another chance to comply

22  with it. And once that has been completed, your motion for

23  summary judgment -- which you say is uncontroverted -- will be

24  ripe for consideration.

25  So, that's how we're going to leave it.

## Page 21

1  MS. STEVENSON: Okay. But what about documents I

2  need?

3  THE COURT: Why do you need the documents? You

4  told me a moment ago that there's no need for documents, that

5  it's uncontroverted?

6  MS. STEVENSON: Well, there are still documents

7  they are statutorily required to have. And I would like to see

8  copies of those.

9  THE COURT: Have you made a motion to compel?

10  MS. STEVENSON: Yes, I have.

11  THE COURT: And what happened to that motion?

12  MS. STEVENSON: They said they won't give them to

13  me.

14  THE COURT: What happened to the motion to compel?

15  MS. STEVENSON: You mean the one that you just

16  read?

17  THE COURT: Yes.

18  MS. STEVENSON: Okay. Well, they're still -- I

19  feel like this is unfair. I feel like this is a lopsided case.

20  THE COURT: Well, I understand what you have said.

21  But the short of it is that you have so managed to interfere

22  with the discovery process in this case that it's necessary now

23  for two Judges of this Court to make extraordinary rulings,

24  Judge Alexander and me. We're making these orders in order to

25  ensure that the parties have an opportunity to address the

6  (Pages 18 to 21)

1224d3e8-d8aa-4fee-aa71-63e20aa285df

Page 22

1  question of summary judgment in an orderly fashion. You say
2  you're entitled to some additional documents.
3        MS. STEVENSON: Yes.
4        THE COURT: But you have not filed a motion to
5  compel that would permit me to order it. So, I have nothing
6  before me with respect to that.
7        We now have a schedule that you will comply with.
8  And if you fail to comply with it, the case will be dismissed.
9        MS. STEVENSON: Oh, and another thing. Have you
10  addressed my motion to withdraw? I had a request.
11        THE COURT: Right.
12        MS. STEVENSON: I wanted to put it in state court.
13        THE COURT: Whatever you want to do with the case
14  is up to you.
15        MS. STEVENSON: Okay.
16        THE COURT: If you want to file it in some other
17  court --
18        MS. STEVENSON: Make a motion.
19        THE COURT: -- I'm not going to interfere with
20  that.
21        MS. STEVENSON: Okay.
22        THE COURT: But it's withdrawn in this Court.
23        MS. STEVENSON: Okay.
24        THE COURT: And it can't be revived in this Court.
25        MS. STEVENSON: No.

Page 23

1        THE COURT: Okay. So first, we deal with motion
2  number 59, Motion to Withdraw the Motion for Order to Show
3  Cause. That motion to withdraw is allowed.
4        Second, we deal with the Motion for Summary
5  Judgment filed by the plaintiff when she was expected to be at
6  the deposition. That's number 57. That is denied without
7  prejudice. The time for filing Motions for Summary Judgment in
8  this case would be March 16th.
9        Third, we deal with the Motion to Show Cause, which
10  is number 56, which was indicated has been withdrawn.
11        We deal then with motion number 54, the Motion to
12  File a Supplemental brief in Support of the Motion to Show
13  Cause. That motion is allowed.
14        Next, we deal with the Motion for an Order to Show
15  Cause by the Neighborhood Charter School. I dealt with that
16  motion by establishing that the plaintiff has asserted under
17  pains of dismissal that there are no further documents that are
18  responsive to Judge Alexander's order that have not been
19  provided to counsel in this case -- defense counsel in this
20  case; and second, that Ms. Stevenson will appear for a
21  deposition on February 22nd at 10 A.M. in the Seyfarth offices.
22        I don't believe there's anything else that needs to
23  be dealt with, is there?
24        MR. MILLER: Your Honor, if we could just clarify.
25  You stated that the summary judgment motions are to be filed by

Page 24

1  March 16th. Should we set a date for responses to those
2  motions?
3        THE COURT: No, the ordinary.
4        MR. MILLER: Ten days?
5        THE COURT: No, it's 14 days.
6        MR. MILLER: Fourteen days after filing. Thank
7  you, Your Honor.
8        THE COURT: Okay. All right. Anything else?
9  (No response)
10        THE COURT: I think I have been as clear as I can
11  be about this, Ms. Stevenson. I hope that this case can be
12  resolved on the merits. I hope that I don't have to dismiss it
13  because of misconduct. But I've made it as clear as I can that
14  you've got one more chance to comply with Magistrate Judge
15  Alexander's orders. If you don't, then the case will be
16  dismissed for procedural infirmities and the failure on your
17  part properly to conduct yourself in litigation with this
18  Court.
19        So, if there's nothing further, we'll be in recess.
20        RECESSED AT 10:45 A.M.
21
22
23
24
25

Page 25

1
2        CERTIFICATION
3
4        I certify that the foregoing is a correct
5  transcript of the record of proceedings in the above-entitled
6  matter to the best of my skill and ability.
7
8
9  Pamela R. Owens           Date
10  Official Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

7  (Pages 22 to 25)

JANUARY 23, 2007>

FILED

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (BOSTON)

2007 FEB 22  P 12: 23

Case Number 1:05-cv-11584-DPW
U.S. DISTRICT COURT
DISTRICT OF MASS.

Janice Stevenson, Plaintiff



v.                                NOTICE OF APPEAL

Neighborhood House Charter School
Defendant


        Notice is hereby given that Janice Stevenson in the above named case hereby

appeals to the United States Court of Appeals for the Federal Circuit from an order

denying Summary Judgment to the Plaintiff entered in this action on January 23, 2007.



                                    Janice Stevenson
                                    Janice Stevenson
                                    P.O. Box 400372
                                    Cambridge, MA  01240
                                    617-721-2638 – ph

## CERTIFICATE OF SERVICE

I, Janice Stevenson, certify that a copy of the Notice of Appeal was sent to the

parties listed below by electronic mail or facsimile on February 20, 2007.


Barry Miller
Lynn Kappelman
Sefarth Shaw, LLP
Two Seaport Lane
Suite 300
Boston, MA 02210
617-946-4800 – phone
617-946-4801 – fax